

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

Richard L. Steer
Partner
(212) 216-8070
rsteer@tarterkrinsky.com

January 20, 2022

**VIA ECF**
Hon. Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *Edelman v. NYU Langone Health System, et al.*
            Case No. 1:21-cv-00502 (LGS)(GW)
            Defendants' Anticipated Motion for Summary Judgment

Dear Judge Schofield:

        Defendants submit this pre-motion letter, pursuant to Your Honor's Individual Rules and Procedures for Civil Cases, in advance of the pre-motion conference scheduled for February 3, 2022, concerning Defendants' anticipated motion for summary judgment seeking an Order dismissing Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 56, in its entirety with prejudice.

        Plaintiff's employment with NYU began effective December 1, 2014, when NYU assumed management of Plaintiff's private rheumatology practice as part of NYU's Faculty Group Practice ("FGP") at NYU Langone Ambulatory Care Lake Success. (Pl. Tr., Ex. 4.)  Arising from concerns about Plaintiff's clinical practices, Plaintiff was advised in December 2020 that her employment contract would not be renewed upon its expiration in May 2021. (Bates No. D00041.)  Plaintiff, thereafter, filed the instant action on January 20, 2021, alleging unequal pay under the Equal Pay Act ("EPA"), and discrimination (based on gender) and retaliation under Title VII, the New York State Human Rights Law ("SHRL") and the New York City Human Rights Law ("CHRL").

        Plaintiff is unable to sustain her initial burden of establishing a prima facie case of discrimination or retaliation.  *See Ruiz v. Cty. Of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010). Further she is unable to meet her ultimate burden of proving that discrimination or retaliation were the real reason for what occurred.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Bennett v. Health Mgmt. Sys., Inc.,* 92 A.D.3d 29, 936 N.Y.S.2d 112 (2011) (*appeal denied, Bennett v. Health Mgmt. Sys., Inc.*, 18 N.Y.3d 811, 968 N.E.2d 1001 (2012)); *Hongmian Gong v. City Univ. of New York*, Case No. 18-CV-3027 (LGS), 2020 WL 1467353 (S.D.N.Y. Mar. 25, 2020) (granting summary judgment on retaliation claim), *aff'd sub nom. Gong v. City Univ. of New York*, 846 F. App'x 6 (2d Cir. 2021).

        Plaintiff's Compensation Was Permissibly Based on Factors Other than Sex.

        Plaintiff alleges that NYU failed to pay her equal pay for equal work based on her sex in violation of the EPA. (Compl. ¶ 5.)  However, sworn testimony and documentary evidence

January 20, 2022
Page 2 of 3

demonstrates that Plaintiff's salary was set, not based on her sex, but based on a business plan for her private practice. (Swirnow Tr. 64:16.) NYU also analyzed the revenues of Plaintiff's private practice (to be paid to NYU) by Work Relative Value Units ("wRVU") (which are promulgated by Medicare). (Rubin Tr. 99:25-100:2-8.) NYU set Plaintiff's annual wRVU based on her production in private practice. (Swirnow Tr. 123:9-12.) Each physician joining NYU from private practice has different wRVU expectations, irrespective of salary. (Rubin Tr. 281:24-25.)

Under the FGP incentive compensation system, when Plaintiff came sufficiently close to her wRVU target, her compensation remained the same going forward; if she exceeded her wRVU expectation by a specific amount, she earned a bonus; if she missed the target by a set amount, her salary was reduced. (Pl. Tr., Ex. 4.) Plaintiff's allegation that male physicians were given administrative roles to justify larger salaries than Plaintiff (Compl. ¶ 6) is belied by the fact that Dr. Goldberg was hired before Plaintiff as Clinical Director NYU Langone Rheumatology (Bates No. D000793), and Dr. Porges was performing administrative duties at the request of the female Site Director before he was officially given an administrative title. (Porges Tr. 93:22-94:2-16.) These undisputed facts establish a "factor other than sex defense" which is an affirmative defense to an EPA claim as a matter of law. 29 U.S.C. § 206(d)(1)(iv). No rationale jury could find that sex was a basis for Plaintiff's compensation.

<u>Plaintiff's Claims of Disparate Treatment and Retaliation Fail as a Matter of Law.</u>

A review of the merits of Plaintiff's disparate treatment claims warrant dismissal of the Complaint as a matter of law. Plaintiff cannot meet her burden of establishing a prima facie case let alone sustain her ultimate burden of proof. Her allegations consist of nothing more than petty slights and, at most, *di minimus* interferences with her work based on nothing more than speculation that such was gender-based. *See Wade v. New York City Dept. of Ed.*, No. 11-cv-05278 (LGS), 2014 WL 941754, at *5 (S.D.N.Y. Mar. 10, 2014) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.") (citing *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)). While Plaintiff alleges that defendants Antonik and Kaplan engaged in making "inappropriate sex-based remarks" (Compl. 33), she merely testified that she inferred those statements were because of her gender. (Pl. Tr. Cont. 17:15-22.) Plaintiff also testified that defendant Kaplan did not say anything to Plaintiff specifically about her gender. (Pl. Tr. Cont. 17:15-22.) Plaintiff's speculation is not a proper basis for a discrimination claim. *Wade*, 2014 WL 941754, at *5.

Plaintiff also complains about perceived unequal treatment regarding office furniture and assignments. (Compl. ¶ 31(ii); Pl. Tr. 92:16-27.) Plaintiff's claim that she was "kicked out of her office" to accommodate a male physician (Compl. ¶ 9) or that Defendants purportedly "designated Plaintiff's office as a lactation room" (Compl. ¶49) are inflammatory mischaracterizations of legitimate requests for Plaintiff to share her office with a female physician (who also used a male employee's office) (Mehta Tr. 205:6-25, 206:27) on the days that Plaintiff was regularly and physically absent from the office (Kaplan Tr. 64:24-25, 65:4-5, 15-17; 132:13-14). Plaintiff went so far as to lock the door to prevent the office from being used. (Ruiz Tr. 32:20.) This was also the subject of her baseless complaint to HR which included buzz words about male chauvinism and gender discrimination but devoid of any substantiating facts. (Bates Nos. D00493-D00495.) Plaintiff also failed to participate in the investigation once a new HR investigator was assigned.

January 20, 2022
Page 3 of 3

(Pl. Tr., Ex. 12.)

Plaintiff makes a baseless allegation that the operator of the building's parking lot put cones in her parking space because of her gender. Compl. ¶ 31(iii). There is also no evidence supporting Plaintiff's claim that she was "marginalized" because of her gender (Compl. ¶ 30) because certain recommendations she made were not accepted by management, as recommendations made by male physicians were likewise not accepted. (Porges Decl.) While she claims that patient messages were not appearing in her electronic inbox because of retaliation or discrimination, her issue with her messages was due to her "user error" as confirmed by NYU's IT. (Pl. Tr., Ex. 11.)

Plaintiff alleges that NYU did not renew her employment contract in retaliation for her human resources complaint made over a year earlier. (Compl. ¶¶ 34, 35.) Significantly, documentary evidence and sworn testimony demonstrates that complaints about Plaintiff's clinical practices underlying the decision not to renew her contract include complaints that predate any purportedly protected activity. These include Plaintiff's counselling about her abusive interactions with managers and staff in an attempt to improve Plaintiff's performance, prior to the renewal of her second contract on November 17, 2017, and prior to her HR complaint (Pl. Tr. 153:13-15), and a patient complaint made to the female Chair of NYU's Rheumatology Department, Dr. Buyon, on February 22, 2016. (Bates No. D001132.)

Dr. Goldberg, who knew Plaintiff was a woman when he recommended that she apply to NYU when she was seeking to leave private practice (Pl. Tr. 56:9-10), is one of the two physicians who raised concerns about Plaintiff's clinical practices being inconsistent with standard practice. Dr. Goldberg had also discovered that Plaintiff had poor working relationships with physicians, managers and staff. (Goldberg Decl.) NYU was also aware that Plaintiff was female at the time it hired her. *See e.g., Muhleisen v. Wear Me Apparel LLC*, 644 F. Supp. 2d 375, 386 (S.D.N.Y. 2009) (it is difficult to impute an invidious firing motivation that would be inconsistent with a decision to hire) (citing *Jetter v. Knothe Corp.*, 324 F.3d 73, 76 (2d Cir. 2003)). Moreover, Plaintiff testified that Dr. Goldberg did not discriminate or retaliate against her. (Pl. Tr. 60:13-19.)

Dr. Porges also raised concerns about Plaintiff's clinical practices being inconsistent with standard practice based on his own observations and complaints he received (including complaints that pre-dated Plaintiff's HR complaint). (Porges Tr. 70:18-24.) Based on concerns about Plaintiff's clinical practices, her employment contract was not renewed.

There is no genuine issue as to any material fact, and no rational jury could find that Plaintiff was subject to discrimination because of her gender or retaliation. Summary judgment should be granted as a matter of law. *See* Fed. R. Civ. P. 56(c).

                Respectfully submitted,
                **TARTER KRINSKY & DROGIN LLP**
                *Attorneys for Defendants*

                By:   */s/ Richard L. Steer*
                        Richard L. Steer