**MILMAN LABUDA LAW GROUP PLLC**
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
_____

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

<u>**VIA ECF**</u>                                                                                                                January 27, 2022
United States District Court
Southern District of New York
<u>Attn</u>: Hon. Lorna G. Schofield, U.S.D.J.
40 Foley Square, Courtroom 1106
New York, NY 10007-1312

      *Re:*    **Edelman v. NYU Langone Health System,** *et al.*
              **Case No.: 1:21-cv-502 (LGS) (GWG)**
              <u>**MLLG File No.: 209-2020**</u>_____

Dear Judge Schofield:

        This firm represents the Plaintiff Dr. Sari Edelman (hereinafter "Plaintiff" or "Dr. Edelman") in the above-referenced case alleging violations of the Equal Pay Act ("EPA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), as well as its state and local analogues. Plaintiff writes pursuant to ¶ 13(b)(i) of the Third Amended Civil Case Management Plan & Scheduling Order (the "Scheduling Order") and Rule III(A)(1)[1] of this Court's Individual Rules and Procedures for Civil Cases (the "Individual Rules") to oppose Defendants' letter motion for a pre-motion conference in anticipation of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rule" or "Rules").

        Under Rule 56(c), summary judgment must be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, *i.e.*, whether it concerns facts that can affect the outcome under the applicable substantive law." <u>See</u> <u>Mitchell v. Washingtonville Cent. Sch. Dist.</u>, 190 F.3d 1, 5 (2d Cir. 1999). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." <u>See</u> Fed. R. Civ. P. 56(e). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. <u>See</u> <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997). Crucially, courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. <u>See</u> <u>Nora Beverages, Inc. v. Perrier Group of Am., Inc.</u>, 164 F.3d 736, 742 (2d Cir. 1998). For the reasons set forth below, Defendants' anticipated motion for summary judgment would result in a colossal waste of judicial resources for a case destined for trial by way of the numerous disputed issues of fact concerning Plaintiff's claims arising out of her employment with the Defendants. A summary of the material facts adduced in discovery, many of which are in dispute, follow.

---

[1] Plaintiff respectfully submits that her submission is four (4) pages in length with Defendants' consent. Plaintiff moved for leave to file excess pages, but has not received an Order at this time.

Hon. Lorna G. Schofield, U.S.D.J.
January 27, 2022
P a g e | **2**

Plaintiff commenced employment with Defendants on December 1, 2014, when Defendants assumed her largely successful private practice. D45-D56. Plaintiff's employment with Defendants was subject to an employment agreement under which she could not be terminated except for cause. Id.; D57-D60. During the course of her tenure with Defendants, Plaintiff met and exceeded all productivity goals and requirements, and was never written up or reprimanded until in or about November 2019. Pl. Tr. at 73:16-75:5. She was initially paid $207,000.00 during her first three years of employment and was required to meet or exceed 4,966 work relative value units ("wRVUs"), and thereafter paid $278,000.00 during the next three (3) years of her employment and required to meet or exceed 5,200 wRVUs. D52, D60. Plaintiff was the only full-time female rheumatologist on staff other than Dr. Kavini Mehta, with whom Plaintiff owned a private practice, and who was paid substantially the same salary as the Plaintiff. Pl. Tr. at 78:4-15, 134:24-135:12. In contrast, Plaintiff's male comparators – Drs. Goldberg, Porges, and Modi – each earned substantially more than the Plaintiff: (i) $290,000.00 for 3,481 wRVUs, then $500,000.00 for 5,850 wRVUs; (ii) *$340,000.00 for 6,524* wRVUs, then *$358,000.00 for 6,250* wRVUs; and (iii) $360,000.00 for 6,108 wRVUs, then $370,000.00 for the same wRVUs, respectively. D795, D800, D862, D879, D892, D899.[2] The decisionmakers concerning salary are Defendants Andrew Rubin and Joshua Swirnow. Rubin Tr. at 158:25-159:10, 162:19-23, 191:5-17, 244:3-25; Swirnow Tr. at 64:4-18. Plaintiff works under similar conditions and performs the same work as her male comparators, yet receives less pay. D52, D60, D795, D800, D862, D879, D892, D899; Swirnow Tr. at 167:20-168:22. In September 2019, management at Defendants – consisting of Defendants Joseph Antonik and David Kaplan – each approached Plaintiff about Defendants' decision to require her to share her office space to accommodate an incoming male rheumatology physician, to which Plaintiff refused. D556, D995-1019, D1043-D1062. Antonik and Kaplan each engaged in threats to Plaintiff related to this effort. Id. Both encounters were reported by Plaintiff to human resources as harassment complaints based on her gender. Id. Defendants' Employee Labor Relations ("ELR") Department spoke solely to Plaintiff and Antonik and decided, weeks later, that because the decision to move Plaintiff out of her office did not affect just her, there was no harm, no foul. Id. Although Plaintiff explained that her complaint was *not about the office space* but the *way she was spoken to*, Defendants did nothing despite repeated follow up correspondence from Plaintiff to ELR. Id. Beginning in November 2019, just two months after, Defendants' office manager suddenly kept a log of any issue – however trivial – concerning Plaintiff. D1100-D1131. The contents of this log were later utilized by Antonik to prepare an email that Dr. Porges was directed to send to Kaplan, which Antonik inappropriately editorialized. D1192-D1193. The correspondence concerning Plaintiff's performance was to be sent from Dr. Porges to disguise Antonik's involvement. Compare D3-D11 with D1192-D1193. Dr. Porges conceded at his deposition that he would have a lot to lose if he went against Defendants' wishes. Porges Tr. at 162:4-18. Although Defendants raised purported concerns with Plaintiff's care of patients, no one reported any such issues internally or to the Office of Professional Medical Conduct, as required by law. Id. at 164:4-168:15. Plaintiff was given notice of the non-renewal of her contract in December 2020 and *remained employed*, *of Defendants' own volition*, for an additional six (6) months through May 2021 despite purported patient care concerns and the ability to terminate her for cause effective immediately. Id. at 53:10-16; D41; D45-D56.

---

[2] These salaries are exclusively for clinical work; some of the male comparators received additional compensation for administrative or research work. Id.

Hon. Lorna G. Schofield, U.S.D.J.
January 27, 2022
P a g e | 3

The EPA prevents employers from discriminating among employees on the basis of sex by paying disparate wages for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." See Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999) (citing 29 U.S.C. § 206(d)(1)). The EPA is a strict liability statute; a plaintiff thus need not show an employer's discriminatory intent. Id. at 135-36.

To prove a violation under the EPA, a plaintiff must first establish a *prima facie* case of pay discrimination by showing: (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. See Belfi, 191 F.3d at 135. "[A] *prima facie* showing gives rise to a presumption of discrimination." Id. at 136. "A plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are 'substantially equal'" in skill, effort, and responsibility. See Lavin-McEleney v. Marist Coll., 239 F.3d 476, 480 (2d Cir. 2001). Whether different positions are "substantially equivalent" for the purposes of the EPA is usually *a question of fact to be resolved by a jury*. Id. (emphasis added).

Once a plaintiff makes a *prima facie* case, the burden shifts to the employer to justify the wage differential by showing that the disparity results from one of four sources: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on "any other factor other than sex." See Aldrich v. Randolph Center School District, 963 F.2d 520, 524 (2d Cir. 1992) (citing 29 U.S.C. § 206(d)(1)). "The burden of establishing one of the four affirmative defenses is 'a heavy one.'" See Ryduchowski v. Port Auth. of New York & New Jersey, 203 F.3d 135, 143 (2d Cir. 2000).

Once an employer establishes one of the four affirmative defenses, the burden shifts back to the plaintiff to show that the stated reason was, in fact, a pretext for sex discrimination. See Chepak v. New York City Health & Hosps. Corp., Case No. 11 Civ. 9698 (KBF), 2015 WL 509279, at *9 (S.D.N.Y. Feb. 5, 2015), aff'd, 643 Fed. Appx. 62 (2d Cir. 2016). "The appropriate inquiry to determine if the factor put forward is a pretext, is whether the employer has use[d] the factor reasonably in light of the employer's stated purpose as well as its other practices." Id. In general, *evidence that a stated reason for a pay differential is actually a pretext creates a triable issue of fact*. See Holtz v. Rockefeller & Co., 258 F.3d 62, 81 (2d Cir. 2001) (emphasis added).

The same analysis and burden-shifting approach applies to Plaintiff's Title VII claims, except that Plaintiff must establish for purposes of a *prima facie* case that: (i) she is in a protected class; (ii) she is qualified for her position; (iii) she suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See Liebowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). The plaintiff's burden at the *prima facie* stage is "minimal" or "*de minimis*." See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

Concerning her pay, Plaintiff has established she was paid less for performing equal work on jobs requiring equal skill, effort, and responsibility, under similar working conditions. The clinical work Plaintiff performed was no different than Drs. Goldberg, Porges, and Modi.

Hon. Lorna G. Schofield, U.S.D.J.
January 27, 2022
P a g e | **4**

All the male comparators are full-time rheumatologists working in the same office as Plaintiff, yet they were paid more. Bafflingly, Dr. Porges was paid *$340,000.00 for 6,524* wRVUs, then *$358,000.00 for 6,250* wRVUs. Thus, the wRVUs do not constitute a "a system which measures earnings by quantity or quality of production." To the extent it was, Defendants did not use this factor reasonably in light of its stated purpose. Indeed, while Defendants raise the wRVU system and "business plans" as a factor other than sex, there is no rhyme or reason to the calculus. Moreover, Defendants never produced Dr. Goldberg's business plan, likely because he did not have his own private practice like the Plaintiff and Dr. Porges did.

Only one fact is clear: whatever method Defendants use, male rheumatologists earn more under the system purportedly utilized by Defendants. As such, the lack of evidence that there exists *any* method to calculate a salary according to a factor other than sex to be paid to a physician – given that the wRVU system does not appear to do so, and given that there exists no business plan for Dr. Goldberg – constitutes evidence that the stated reasons for the pay differential are actually pretextual, and this issue must be decided by a jury. See Chepak, *supra*.

Similarly, Plaintiff has established a *prima facie* case of discrimination. While there is no dispute that Plaintiff, a female, is in a protected class, and that – by way of her termination – she suffered an adverse employment action, a jury is required to decide whether she was qualified for her position and whether her non-renewal occurred under circumstances giving rise to discrimination given, *inter alia*, Antonik's efforts to disguise his involvement in her termination. Crucially, there exists substantial evidence in the record that Plaintiff is an excellent doctor, and that many patients sought to continue treating her upon her separation from employment with Defendants. See P385-P456, P497-P509, P611-P612 (many patients seeking to remain with Plaintiff, with one thanking her for saving her husband's life). Accordingly, summary judgment would be denied because there exist genuine issues of material fact concerning Defendants' methodology (or lack thereof) of paying their male and female physicians for her EPA claim and because a genuine dispute exists over whether Plaintiff was qualified, an indisputably material fact, as well as whether her termination was connected to her gender or her complaint with respect to her Title VII claims. Plaintiff thanks this honorable Court for its time and attention to this case.

Dated: Lake Success, New York
       January 27, 2022                                  Respectfully submitted,

                                                         **MILMAN LABUDA LAW GROUP PLLC**

                                                         _____/s_____
                                                         Emanuel Kataev, Esq.
                                                         3000 Marcus Avenue, Suite 3W8
                                                         Lake Success, NY 11042-1073
                                                         (516) 328-8899 (office)
                                                         (516) 303-1395 (direct dial)
                                                         (516) 328-0082 (facsimile)
                                                         emanuel@mllaborlaw.com

cc: Defendants (via ECF).