**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DR. SARI EDELMAN,

        Plaintiff,

– against –

NYU LANGONE HEALTH SYSTEM, NYU LANGONE HOSPITALS, NYU LANGONE MEDICAL CENTER, NYU LANGONE NASSAU RHEUMATOLOGY, NYU SCHOOL OF MEDICINE, NYU GROSSMAN SCHOOL OF MEDICINE, NYU HOSPITALS CENTER, ANDREW T. RUBIN, DAVID KAPLAN, JOSEPH ANTONIK, and JOSHUA SWIRNOW,

        Defendants.

Case No. 1:21-cv-502 (LGS)(GWG)

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................1

    I.    THERE IS NO EVIDENCE OF AN EQUAL PAY VIOLATION ..........................1

        A.  Plaintiff Has Invented a Method of Pay Comparison that Defendants Do Not Use and Compared Herself To Others Not Similarly Situated...............................................................................................1

        B.  Plaintiff's Purported Comparators Were Not Similarly Situated to Her ...............................................................................................................3

    II.   PLAINTIFF HAS FAILED TO DEMONSTRATE THAT SHE WAS TREATED LESS WELL THAN HER MALE COLLEAGUES OR THAT SHE SUFFERED ANY DISPARATE TREATMENT ON THE BASIS OF HER GENDER ............................................5

        A.  Plaintiff's Contract Did Not Entitle Her to Exclusive Use of Her Office ..................................................................................................................5

        B.  Male Physicians Were Not Treated Preferentially............................................6

    III.  DEFENDANTS' DECISION NOT TO RENEW PLAINTIFF'S CONTRACT WAS BASED ON LEGITIMATE BUSINESS REASONS ..................................................................................................................8

        A.  The Non-Renewal of Plaintiff's Contract Was Not Retaliatory ........................8

        B.  Plaintiff Cannot Demonstrate Pretext ...............................................................9

CONCLUSION..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdul-Hakeem v. Parkinson*,
   523 Fed. Appx. 19 (2d Cir. 2013) ................................................................................................3

*Aldrich v. Randolph Cent. Sch. Dist.*,
   963 F.2d 520 (2d Cir. 1992) .........................................................................................................1

*Bennett v. Health Mgmt. Sys., Inc.*,
   92 A.D.3d 29, 936 N.Y.S.2d 112 (1st Dep't 2011), *leave to appeal denied* 18
   N.Y.3d 811 (2012) ......................................................................................................................9

*Bethlehem Steel Co. v. Turner Const. Co.*,
   2 N.Y.2d 456 (1957) ...................................................................................................................5

*Boyer v. United States*,
   No. 20-438 C, 2022 WL 11622755 (Fed. Cl. 2022) ...................................................................1

*Cadet-Legros v. N.Y. Univ. Hosp.*,
   135 A.D.3d 196 (1st Dep't 2015) ................................................................................................8

*DR. J. David Golub v. Berdon LLP*,
   No. 19-CV-10309 (JGK), 2022 WL 1228025 (S.D.N.Y. Apr. 26, 2022) ....................................2

*Gordon v. New York City Bd. of Educ.*,
   232 F.3d 111 (2d Cir. 2000) .........................................................................................................8

*Kamfar v. New World Rest. Grp., Inc.*,
   347 F. Supp. 2d 38 (S.D.N.Y. 2004) ...........................................................................................5

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*,
   906 F.2d 884 (2d Cir. 1990) .........................................................................................................6

*Ponniah Das v. Our Lady of Mercy Med. Ctr.*,
   No. 00-cv-2574, 2002 WL 826877 (S.D.N.Y. Apr. 30, 2002) ....................................................9

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) ..........................................................9

*Trinidad v. N.Y. City Dept. of Corr.*,
   423 F. Supp. 2d 151 (S.D.N.Y. 2006) .........................................................................................6

**Statutes**

29 U.S.C. § 206(d)(1) ........................................................................................................................1

Equal Pay Act ..................................................................................................................................1

New York Labor Law § 194-A................................................................................................2

**PRELIMINARY STATEMENT**

When stripped of speculation, irrelevancies, misrepresentations, and conclusory remarks, what remains in the record establishes unequivocally that: (i) Plaintiff's contract was not renewed upon its expiration and she was terminated for valid and well-documented reasons; (ii) no triable issue of gender bias has been raised; and (iii) Defendants in no way retaliated against Plaintiff for her participation in protected activity.  Plaintiff's claims have no merit and should be dismissed.

**ARGUMENT**

**I.    THERE IS NO EVIDENCE OF AN EQUAL PAY VIOLATION**

**A.    Plaintiff Has Invented a Method of Pay Comparison that Defendants Do Not Use and Compared Herself To Others Not Similarly Situated.**

In her effort to present evidence of gender-based pay disparity, Plaintiff ignores the hours of testimony devoted to explaining the gender-neutral manner in which NYU sets its practitioners' salaries.  Instead, she manufactures her own method and mode of comparison out of whole cloth.[1]

The Equal Pay Act requires the payment of equal pay for equal work unless any pay differential is based upon a reasonable factor other than sex.  *See* 29 U.S.C. § 206(d)(1).  The circuits are split as to whether "prior salary *alone*" is an acceptable such factor to qualify for that affirmative defense.  *See Boyer v. United States*, No. 20-438 C, 2022 WL 11622755 at *14-15 (Fed. Cl. 2022) (emphasis added).  Plaintiff errantly cites the Second Circuit's decision in *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520 (2d Cir. 1992) to support her contention that Defendants' use of Plaintiff's prior earnings to set her initial salary does not so qualify.  *See* Opp. Mem. at 4.  *Aldrich*, however, deals with municipal employees paid pursuant to local civil service laws.  *Id*. at 522.  It has nothing to do with the very different situation presented here: Defendants'

---

[1] Plaintiff's methodology appears to be based upon the report drafted by Plaintiff's proposed expert witness, a report that this Court explicitly excluded. (Doc. 87.)

1

analysis of the amount an individual business owner such as Plaintiff previously *paid herself*. (Pl. 9/21 Tr. 51:8-10.) ▮

▮ (Goldberg R. Decl. ¶2; Swirnow Reply Decl. ("Swirnow R. Decl.") ¶10; Porges Decl. ¶7.)

Plaintiff's refusal to acknowledge and inability to refute the protocol by which NYU sets its clinicians' salaries renders her EPA claim fatally flawed. Her allegation that for physicians coming from private practice "salaries are set according to private practice *production*" is simply wrong, as is her contention that this has *ever* been Defendants' position. (*See* Pl. Decl. ¶19) (emphasis added). As record evidence demonstrates, it has not. (Swirnow Decl. ¶¶9, 10; Swirnow R. Decl. ¶¶7, 11.) ▮



▮ (Swirnow R. Decl. ¶¶7, 11.) ▮ (*Id.* at 7.) ▮

▮ (Swirnow R. Decl. ¶11.) ▮

---

[2] Plaintiff alleges Defendants' practice constitutes a violation of New York Labor Law § 194-A. Opp. Mem. at 7. Even assuming *arguendo* that she is correct (which she is not), the law in question did not come into effect until July 2019, nearly five years after Plaintiff's hire. *DR. J. David Golub v. Berdon LLP*, No. 19-CV-10309 (JGK), 2022 WL 1228025, *3-4 (S.D.N.Y. Apr. 26, 2022).

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Rubin Decl. ¶¶8, 9.)

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.*, Swirnow R. Decl. ¶12.) Plaintiff's baseless refusal to recognize this fact renders her chart meaningless (*see* Opp. Mem. at 5), as it erroneously compares her salary to those of certain purported comparators on that basis.[3]

Plaintiff also ignores that her ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ In fact, NYU assumed responsibility for ▇▇▇▇▇▇ in outstanding small business loans taken on by Plaintiff and her business partner, Dr. Mehta – split equally between them – upon their hire. It paid off the loan in full over the course of the next three years. (Swirnow Decl. ¶11.) Plaintiff, however, misleadingly fails to mention this ▇▇▇▇▇▇ in additional compensation she received each of those years, and which created an initial salary nearly ▇▇▇▇ higher than the base salary she set for herself in private practice. (Swirnow R. Decl. ¶8.) Once considered, the increase she received over her prior salary is greater than that of either Dr. Porges or Dr. Modi, two of the three physicians with whom she seeks to be compared. (Swirnow R. Decl., Ex. 1; *see infra*.)

### B. Plaintiff's Purported Comparators Were Not Similarly Situated to Her.

Plaintiff's attempt to raise a *prima facie* case of pay discrimination is unavailing as well because she has failed to identify any similarly situated individual who received more favorable treatment. *See, e.g., Abdul-Hakeem v. Parkinson*, 523 Fed. Appx. 19, 21 (2d Cir. 2013) ("[t]he

---

[3] Even were this not the case – even if Plaintiff's chart *did* accurately reflect the manner in which NYU sets its clinician's initial salaries – Plaintiff's method *still* does not support her case. Plaintiff identifies three male clinicians – Drs. Goldberg, Porges, and Modi – as her purported comparators. None, though, are similarly situated. *See infra*. The one who comes closest is Dr. Porges, but Plaintiff's chart acknowledges that his compensation does not match her theory. *See* Opp. Mem. at 5, fn. 3 ("[W]ith the exception of Dr. Porges…"). Furthermore, Dr. Porges' initial agreement with NYU reflects that his efforts and compensation for clinical duties included pay for medical research that Plaintiff did not perform. (Porges Decl., Ex. A.) Dr. Porges maintains an administrative role that further sets him apart from Plaintiff. (*Id.*) Plaintiff dances around the inconvenient fact by claiming, upon no record evidence whatsoever, that the role in question was one of "title only." *See* Opp. Mem. at fn. 3.

standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, such that the comparator must be similarly situated to plaintiff in all material respects"). As discussed in Defendants' moving papers, clinicians hired out of private practice are offered a salary set according to a gender-neutral analysis of the ███████████████████████████████████. Given that, no comparison between them is possible, let alone appropriate. (Rubin Decl. ¶¶4, 7.) Even were that not true, however, neither Drs. Goldberg or Porges – each of whom, unlike Plaintiff, is a Fellow of the American College of Rheumatology (Goldberg Decl., Ex. A; Porges Decl., Ex. A) and each possessed years more experience – is an appropriate comparator.[4]

Dr. Goldberg, for example, was recruited not out of private practice, as was Plaintiff, but instead from academic medicine. (Goldberg Decl. ¶¶3, 4, 6.) As the first rheumatologist hired for NYU's Long Island Ambulatory Care Network, he was specifically charged with building out the network from scratch[5] – an entrepreneurial endeavor that came with significant professional risk reflected in his compensation. (Goldberg Decl. ¶7; Goldberg R. Decl. ¶¶3,4.) He was offered a ███████████████, as opposed to Plaintiff's ████████ and, as the network's Clinical Director, he also bore significant administrative responsibilities that Plaintiff did not. (Goldberg Decl., Ex. A.)

The details of Dr. Modi's hire and employment were likewise different than Plaintiff's. He was, for instance, hired in 2017, three years after Plaintiff. (Swirnow Decl., Ex. E; Swirnow R. Decl., Ex. 1.) Like Dr. Goldberg, Dr. Modi did not come from private practice. He had been the Medical Director of the Hempstead, New York office of a regional medical group for

---

[4] Space limitations preclude Defendants from presenting here a complete list of the many ways in which Plaintiff differs from her three purported comparators. A more complete recitation is set forth in the chart annexed to the Swirnow R. Decl. at Ex. 1.

[5] It is undisputed that Dr. Goldberg is the one who first suggested that Plaintiff apply for a rheumatology position at NYU.

approximately 12 years when he was recruited by NYU. (Swirnow R. Decl. ¶6.)

Although Dr. Porges was hired at roughly the same time as Plaintiff, the private practice from which he came generated significantly more revenue than Plaintiff's. (Swirnow R. Decl., Ex. 2.) The salary Dr. Porges paid himself was concomitantly higher. (Swirnow R. Decl., Exs. 1, 2.) Plaintiff's allegation that the administrative position Dr. Porges came to occupy was illusory – that it was a "'title only' position, with no substance'" (Opp. Mem. at fn. 3) – is the product of her own flawed assumptions. Plaintiff has no personal knowledge of Dr. Porges' actual responsibilities and bases her belief upon nothing more than the fact that "[h]e never did anything for me that I was aware of." (Pl. 9/20 Tr. 88:22-89:11.) The fact that Plaintiff was unaware of his responsibilities is neither surprising nor dispositive, as those responsibilities were largely confidential.[6] (Porges Decl. ¶¶10, 11.) Plaintiff is in no position to dispute them, and her inability to do so does not raise a material issue fact to be tried.

## II. PLAINTIFF HAS FAILED TO DEMONSTRATE THAT SHE WAS TREATED LESS WELL THAN HER MALE COLLEAGUES OR THAT SHE SUFFERED ANY DISPARATE TREATMENT ON THE BASIS OF HER GENDER

Plaintiff's other claims of gender-based discrimination are likewise without merit.

### A. Plaintiff's Contract Did Not Entitle Her to Exclusive Use of Her Office.

It is well settled that contract interpretation is "a matter of law for the court to decide." *Kamfar v. New World Rest. Grp., Inc.*, 347 F. Supp. 2d 38, 48-49 (S.D.N.Y. 2004) (*citing Bethlehem Steel Co. v. Turner Const. Co.*, 2 N.Y.2d 456, 460 (1957)). Furthermore, the mere fact that the parties disagree on the proper interpretation of the contract does not render the contractual

---

[6] While Plaintiff alleges in her brief that "many witnesses who testified were surprised to hear that Dr. Porges had such a role," she baselessly does so without identifying a single person or any record cite. Further, Plaintiff does not contend that any such unidentified witnesses actually testified that they were surprised.

language ambiguous. *See Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) ("Language that is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation."). Plaintiff's insistence to the contrary notwithstanding, there is nothing ambiguous about the relevant provision of her contract.

Plaintiff's initial contract unambiguously instructed only that she would be provided space in which to perform services on NYU's behalf.[7] (*See* Swirnow Decl., Ex. C.) It said nothing about that space being exclusively hers, and that was not the Parties' intent. (*Id*.) Plaintiff's extraordinary claim to the contrary is a breathtaking act of mental gymnastics.[8] (*See* Pl. Decl. ¶18.) There is no factual basis upon which the Court should give it credit.

### B.  Male Physicians Were Not Treated Preferentially.

Plaintiff's allegation that her male colleagues received preferential treatment are disposed of just as easily. Plaintiff alleges, for example, that Rubin expressed surprise, on meeting them,

---

[7] The notion that Plaintiff – or any of her purported comparators – was asked to "share" an office is a misnomer, as her office would only have been used by another physician on days that she was not present. (Antonik Decl. ¶13.)

[8] Plaintiff's allegations in this regard center around the purported actions of Antonik. (Compl. ¶34.) She admits, though, that he never mentioned her gender and that her allegations are based only upon her own (erroneous) inferences. (Pl. 11/19 Tr. 12:15-22; 13:3-11.) (Plaintiff also bases her allegation that Kaplan's subsequent behavior toward her was discriminatory on nothing more than a similarly uninformed assumption. (*See* Pl. Decl. ¶34). Perhaps to present the Court with something more "concrete," Plaintiff conveniently remembered–during her *second* day of testimony–that Antonik once muttered under his breath the word "bitch" following her refusal to share her office. (*Id*. at 17:16-19:3; Opp. Mem. at 19; Pl. Decl. ¶36.) While it is not for the Court to judge a witness's credibility on summary judgment, it is worth noting that the allegation does not appear in Plaintiff's EEOC Charge, or in her Complaint, and she did not recall it during her first day of deposition testimony. In fact, it had never before been mentioned. She testified that she "thinks" she reported it to Pacina (Pl. 11/19 Tr. at 18:7-19:10), but there is no record of it in Pacina's contemporaneous notes. (Steer Decl., Ex. G (D000556).) She admits that she "doesn't know if [the alleged comment] is considered a derogatory female comment" or if it's just "nasty." (*Id*. at 18:2-5.) Even if true, this is a classic example of an unactionable stray remark. *See Trinidad v. N.Y. City Dept. of Corr.,* 423 F. Supp. 2d 151, 167-68 (S.D.N.Y. 2006) (finding isolated incidents of defendant calling plaintiff a bitch and making sexual remarks over the course of her more than five years of employment insufficient to support a claim of discriminatory harassment).

6

that she and Dr. Mehta were female. (Pl. Decl. ¶10.) Even if it were true (which it is not), it cuts against Plaintiff's case, not for it, given that Rubin walked into the meeting in question *with her proposed offer already prepared*. (Rubin Decl. ¶12-14.) Rubin cannot have presented Plaintiff with a gender-based discriminatory offer if he believed until that point that Plaintiff was male.

Plaintiff's allegation that male physicians' private practice protocols were adopted over her own is similarly untrue. As Dr. Goldberg affirms, the protocols in question were implemented before Plaintiff moved into the Marcus Avenue rheumatology suite and did not constitute a rejection of Plaintiff's protocols and procedures. (Goldberg R. Decl. ¶12.)

Plaintiff alleges that her "suggestions for improved office procedures" were denied, but later accepted when offered by a male clinician. (Pl. Decl. ¶16.) The example of such purported preference in the record, however, is with regard to scanners she requested shortly after the practice opened for which ███████████████████. (Goldberg R. Decl. ¶15.) Months later, when Plaintiff's request was revisited, ███████████████████████████████████ and the scanners were purchased. (*Id.*)

Plaintiff alleges that male physicians were able to bring furniture with them to Marcus Avenue while she was not, but points to no male physician for whom this was actually the case.

Further, Dr. Goldberg's Reply Declaration reveals that he – a male – experienced the same sort of administrative delays about which Plaintiff complains. (Goldberg R. Decl. ¶14.)

Plaintiff alleges that she was told, during a counseling session with Rubin and Swirnow regarding her "behavioral issues," to "smile more." (Pl. Decl. ¶¶27-28.) Neither Rubin nor Swirnow recalled any such comment. (Steer Decl., Exs. I (Swirnow Tr. 48:25; 49:2-3); B (Rubin Tr. 133:7-12).) Assuming for the purposes of this motion that it was said, diligent research has failed to uncover any court that has held such a comment is discriminatory. Moreover, the New

7

York State Appellate Division First Department has refused to attribute discriminatory animus to ordinary statements neutral as to protected category. *See Cadet-Legros v. N.Y. Univ. Hosp.*, 135 A.D.3d 196, 206 (1st Dep't 2015).

### III. DEFENDANTS' DECISION NOT TO RENEW PLAINTIFF'S CONTRACT WAS BASED ON LEGITIMATE BUSINESS REASONS

#### A. The Non-Renewal of Plaintiff's Contract Was Not Retaliatory.

Defendants' decision not to renew Plaintiff's contract was made on the basis of her own failure to meet NYU's clinical standards, and there is no record evidence to the contrary.

No retaliation claim can lie without an act of protected activity. *See, e.g. Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 112 (2d Cir. 2000). Here, Pacina – the HR representative who received her call on or about September 17, 2019 – left their conversation with no reason to believe Plaintiff was complaining of gender discrimination. As Pacina's contemporaneous notes show, Pacina believed Plaintiff was complaining only of run-of-the-mill workplace conflict. (Steer Decl., Ex. G (D000556).) Later, when Plaintiff advanced claims that Pacina understood to be about "a different issue," she referred them to Rashidat Ogbara, also of Human Resources. (Steer Decl., Ex. G (Pacina Tr. 220:2-19).) Ogbara attempted to follow up on Plaintiff's complaint, but Plaintiff failed to respond. (Steer Decl., Ex. G (D001090).) Plaintiff testified that she did not receive Ogbara's email and had never "heard the person's name." (*Id.*; Steer Decl., Ex. F (Pl. 11/19 Tr. 94:15-25; 95:1-3).)

Notwithstanding Plaintiff's failure to engage in protected activity, her allegation that "a plan was quickly hatched" to terminate her employment after her purported complaint of discrimination (*see* Opp. Mem. at 1; Pl. Decl. ¶¶54-56) is a desperate, fever-dream fantasy based on no evidence and belied by the record. Plaintiff insists, for instance – absent a shred of evidence – that Antonik "directed" Ruiz to compile a list of her infractions for later use against her. (*See*

8

Opp. Mem. at 1.) Ruiz, however – a non-party – testified that she compiled the list on her own and that no one directed or requested she maintain such a spreadsheet.[9] (Ruiz Decl. ¶16.) The record is clear that *Kaplan* was directed to gather information regarding Plaintiff, and that he was not informed why. The record is just as clear that Drs. Porges and Goldberg evaluated Plaintiff's clinical performance and found it wanting, and that it was this determination that informed Rubin's decision. (Rubin Decl. ¶24.) Notably, Plaintiff has not named either Clinical Director as a defendant in this litigation.

### B. Plaintiff Cannot Demonstrate Pretext

To prove that the myriad of legitimate non-discriminatory reasons for Plaintiff's non-renewal were a pretext for discrimination, she must prove that the reasons articulated were untrue and that discrimination was the real reason for what occurred. *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29, 39, 936 N.Y.S.2d 112, 119 (1st Dep't 2011), *leave to appeal denied* 18 N.Y.3d 811 (2012) (under NYSHRL and NYCHRL). Plaintiff cannot meet this burden.

It is not for Plaintiff to determine the standard by which her performance should be measured. "What constitutes satisfactory job performance is measured by the employer's criteria, not by some hypothetical objective criteria." *Ponniah Das v. Our Lady of Mercy Med. Ctr.*, No. 00-cv-2574, 2002 WL 826877, at *8 (S.D.N.Y. Apr. 30, 2002) (citations omitted). "The fact that an employee disagrees with an employer's evaluation of [her] does not prove pretext." (*Id.* at *9.)

It is beyond dispute that Defendants received complaints about Plaintiff from patients both before and after her complaint to Human Resources, a fact that demonstrates Defendants did not manufacture them to retaliate against her. (*See* Steer Decl., Ex. G (D001132); Ruiz Decl., Ex. A;

---

[9] Ruiz is no longer employed with NYU, having voluntarily resigned in 2017.

Porges Decl. ¶¶17-21, Ex. C (D000003-D001093).) Further, Plaintiff's failure to substantively respond to NYU's emails concerning its investigation of *her own complaint* (*see supra*) demonstrates that Defendants' criticism of her in that regard was warranted.

Plaintiff has never denied that she ordered multiple x-rays or blood tests on her patients – in fact, she boasts of it. (*See* Pl. 11/21 Tr. 119:24-120:18.) Management, though, found her orders excessive and inconsistent with NYU's standards. (Porges Decl. ¶24-26; Goldberg Decl. ¶24.) Plaintiff is in no position to claim otherwise.

Plaintiff erroneously complains that she was never presented with the performance issues Defendants cite against her. (Pl. Decl. ¶46.) Plaintiff, however, ignores the fact that NYU did not employ her as a trainee, but rather as an established clinician expected to meet or exceed NYU's clinical requirements without micromanagement. (Goldberg R. Decl. ¶16.) Issues such as those set forth in Defendants' moving papers surfaced only once Drs. Porges and Goldberg were given reason to look, at which point they came independently to the conclusion that her contract should not be renewed. (Porges Decl. ¶¶17-29; Goldberg Decl. ¶¶21-26; Goldberg R. Decl. ¶¶16, 17.)

Lastly, Plaintiff's transparent claim that Defendants justified her termination with a post-hoc determination that she posed a danger to patients (*see* Opp. Mem. at 2) grossly distorts the record. In fact, Drs. Porges and Goldberg each testified that this is exactly what their investigation *did not* find. (Porges Decl. ¶27-29; Goldberg Decl. ¶23-24.) Instead, each believed Plaintiff's practice fell short of NYU's clinical standards. (*Id.*)

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that their motion for summary judgment dismissing all of Plaintiff's claims with prejudice be granted, together with such other and further relief as the Court deems proper.

Dated: New York, New York
May 6, 2022

                                                      **TARTER KRINSKY & DROGIN LLP**

                                                      By:   */s/ Richard L. Steer*
                                                             Richard L. Steer
                                                              Tara Toevs Carolan
                                                              Jonathan S. Hershberg
                                                              Ingrid J. Cardona
                                                              1350 Broadway, 11th Floor
                                                              New York, New York 10018
                                                              Tel.: (212) 216-8000
                                                              Fax: (212) 216-8001
                                                              rsteer@tarterkrinsky.com
                                                              tcarolan@tarterkrinsky.com
                                                              jhershberg@tarterkrinsky.com
                                                              icardona@tarterkrinsky.com