**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendants*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DR. SARI EDELMAN,

                       Plaintiff,

      -against-                             Case No. 1:21-cv-502 (LGS)(GWG)

NYU LANGONE HEALTH SYSTEM, NYU       **DECLARATION OF**
LANGONE HOSPITALS, NYU LANGONE       **AVRAM Z. GOLDBERG**
MEDICAL CENTER, NYU LANGONE            **IN FURTHER SUPPORT OF**
NASSAU RHEUMATOLOGY, NYU SCHOOL     **DEFENDANTS' MOTION FOR**
OF MEDICINE, NYU GROSSMAN SCHOOL      **SUMMARY JUDGMENT**
OF MEDICINE, NYU HOSPITALS CENTER,
ANDREW T. RUBIN, DAVID KAPLAN,
JOSEPH ANTONIK, and JOSHUA SWIRNOW,

                       Defendants.
-------------------------------------------------------------------x

      **AVRAM Z. GOLDBERG, M.D.** under penalties of perjury, hereby declares pursuant to 28 U.S.C. § 1746:

      1.     I am the Clinical Director of NYU Langone Rheumatology Associates – Long Island at NYU Langone Health ("NYU") and submit this Declaration in further support of Defendants' motion for summary judgment to dismiss the Complaint of Plaintiff, Sari Edelman, D.O., in its entirety.

      2.     As paragraph 10 of my Declaration in support of Defendants' Motion for Summary Judgment, executed February 17, 2022 ("Declaration in Support") reflects, my salary negotiations with NYU were predicated on my salary at North Shore. As that paragraph 10 also reflects, I

would not have left my position at North Shore without a meaningful increase to my compensation.

3. I took a substantial risk in leaving North Shore, an established medical center in Long Island, to **start** an ambulatory rheumatology practice for NYU. NYU at that time had no significant footprint on Long Island. I would have lost money, and possibly even my position, if I was not successful in leading the effort to recruit new physicians – both rheumatologists and clinicians in other specialties. The same is true if patients chose not to follow me to NYU from North Shore.

4. I was part of a five-person faculty group practice at North Shore being paid a base annual salary of ▆▆▆▆ when I was recruited to join NYU. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

5. The terms of my initial Employment Agreement with NYU, annexed at Exhibit A to my Declaration in Support, required me to achieve ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

6. My efforts to recruit new rheumatologists, including Plaintiff and her business partner, were successful. I also succeeded in the performance of my other duties, which included bringing patients to the practice.

7. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ That was their choice, not NYU's. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

8. Once I joined NYU, my duties no longer included the duties expected of a professor in academic medicine, including such things as teaching, performing clinical research, or membership on such committees as North Shore's Mortality Committee. ▆▆▆▆▆▆

████████████████████████████████████████████████████████████

████████████████████████████████████████████ Performance of those duties required substantial effort on my part. Because so much of my time was now devoted to clinical duties, and I continued to attract patients at NYU, I was incentivized to work hard and keep my production up. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████

9. ████████████████████████████████████████████████

████████████ NYU's Ambulatory Care Rheumatology Practice on Long Island had grown substantially. ████████████████████████████████████████

████████████████████████████████████

10. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████

11. The Director title that I held throughout my employment with NYU also came with significant responsibilities. These are reflected in both my ██████████████████ and my ██████████████████████████ (See Exhibit A to my Declaration in Support and Exhibit 1 hereto respectively.

12. By the time Plaintiff moved into the Marcus Avenue Rheumatology suite, Dr. Porges, Dr. Brancato, and I were all already practicing there. Protocols and procedures had already been established by the time Plaintiff moved into that suite.

13. One thing I specifically recall regarding a concern Plaintiff expressed with respect to NYU protocols and practices was that the bone density reports reflected the name of Dr. Porges' private practice on them when they were printed. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉ upon his hire and was then moved into the Marcus Avenue Rheumatology suite. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ and used by Dr. Porges' prior practice, it had then been programmed to include "Andrew Porges P.C." at the top of each report it printed. In spite of our efforts, we were unable to reprogram the machine so as to stop printing the name of his prior practice.

14. The administrative assistance that I required was frequently delayed or denied.

15. I recall Plaintiff suggesting at one point that scanners be placed at the Medical Assistants' desks to make practice operations more efficient. Although I agreed with Plaintiff and supported her idea, Leadership advised ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ at that time. Once the rheumatology practice at Marcus Avenue grew, Plaintiff's suggestion was implemented ▉▉▉▉▉▉▉▉▉▉▉▉.

### Non-Renewal of Plaintiff's Agreement

16. While Plaintiff was employed at NYU, she was not enrolled in a training program. So, no one was monitoring her day-to-day clinical practices.

17. The only way issues concerning Plaintiff's clinical practices would come to management's attention would be if a patient or staff member complained or if one of us reviewed the medical chart of one of Plaintiff's patients in the course of providing a second opinion or if seeing one of Plaintiff's patients while covering for her while she was out for vacation or sick days.

18. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

███████████████████████████████████

███████████████████████████████████

█

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██

█

19.  More importantly, ████████████████████

████████████████████████████████████

████████████████████ I reported all of these findings to Andrew Rubin and Joshua Swirnow.

20.  No one pressured me, in any way, to find fault with Plaintiff, whom I knew before I joined NYU and whom I had personally suggested join its fledgling ambulatory rheumatology practice.

All of the above testimony is true to the best of my knowledge and recollection. I have not been pressured in any way or promised anything to make the statements set forth above. I declare under penalty of perjury that the foregoing is true and correct. Executed on May 4, 2022.

*/s/ Avram Z. Goldberg*

Avram Z. Goldberg