

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

Richard L. Steer
Partner
(212) 216-8070
rsteer@tarterkrinsky.com

**VIA ECF**                                                                                                October 19, 2022

Hon. Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

          Re:    *Edelman v. NYU Langone Health System, et al.*
                   Case No. 1:21-cv-00502 (LGS)(GW)

Dear Hon. Judge Schofield:

      Defendants[1] respectfully submit this letter brief in support of their motion for reconsideration of the part of the Court's Opinion and Order, dated September 28, 2022 ("Order") (Dkt. No. 155), that denied dismissal of Plaintiff's Equal Pay Act ("EPA") claim. While Defendants do not concede that there were any violations regarding Plaintiff's other claims that survived summary judgment, they respectfully seek reconsideration of the Order denying the dismissal of the surviving EPA claims based on the Court's having overlooked undisputed facts that warrant the dismissal of these claims.

      *First,* as a business owner of her private practice, Plaintiff received a salary that **she herself set**. That salary is a reflection and approximation of her share of the profit of her private practice. Plaintiff and her female partner's establishment of their own salaries undermines any chance that the salaries they set were based on gender discrimination. NYU appropriately considered

---

[1]     Defendants in this action are NYU Langone Health System, NYU Langone Hospitals, and NYU Grossman School of Medicine, a Division of New York University, f/k/a "NYU Hospitals Center" s/h/a "NYU Langone Medical Center," "NYU Langone Nassau Rheumatology," "NYU School of Medicine," "NYU Grossman School of Medicine," and "NYU Hospitals Center" (collectively, "NYU"), and Andrew T. Rubin, David Kaplan, Joseph Antonik, and Joshua Swirnow (collectively with NYU, "Defendants"). Defendants submit this motion in accordance with Local Civil Rule 6.3 and the Court's October 4, 2022, Order (Dkt. No. 158) extending the time for Defendants to file their motion to October 19, 2022.

Plaintiff's salary she paid herself in private practice because that salary is also a reflection and approximation of the profit NYU expected Plaintiff's practice to generate once she was hired by NYU.

*Second*, the purpose of NYU's hiring Plaintiff was to absorb Plaintiff's established private practice, *i.e.*, together with its revenue, staff members and lease obligations, under the NYU organization. NYU, therefore, set Plaintiff's initial compensation in accordance with the expected economic value her private practice was expected to generate for NYU.

*Third*, in contrast, in setting renewal compensation, a different methodology is used. More specifically, NYU reviews the productivity bonuses the physicians earned in the prior contract period at NYU and incorporates such bonuses into the renewal base salaries. Thus, Plaintiff's comparison of her renewal salary with the initial salary of another physician led to an erroneous conclusion in the Order.

*Fourth*, there is no evidence, expert or otherwise, in the record supporting the methodology advocated by Plaintiff and adopted by the Court in calculating the value of wRVUs, a measure of productivity, on a dollar-per-RVU correlation in setting compensation, which further encompasses profitability. (Dkt. Nos. 87 and 145-2 (Swirnow Reply Decl., ¶ 12).)

The compensation that NYU paid Plaintiff, therefore, can only be judged based on these overlooked economic and gender-neutral facts which, when considered, warrant the dismissal of the surviving EPA claims.

## ARGUMENT

I. **LEGAL STANDARD**

Local Civil Rule 6.3 permits reconsideration if the Court overlooked a factual matter or controlling decision that "might reasonably be expected to alter the conclusion reached by the

Court." Local Rule 6.3; *Tardd v. Brookhaven Nat. Laboratory*, No. 04 Civ. 3262 (ADS), 2007 WL 1423642, at *3-*6 (E.D.N.Y. May 8, 2007) (granting reconsideration and reversing denial of defendants' summary judgment motion in §1981 race discrimination case, where court overlooked plaintiff's testimony refuting the alleged discrimination); *see also Figueroa v. City of New York*, No. 00 Civ. 7559 (SAS), 2002 WL 31163880, at *3, *6-*7 (S.D.N.Y. Sept. 27, 2002) (granting reconsideration and reversing denial of summary judgment where court overlooked plaintiff's testimony that she believed the alleged discriminatory events occurred because of a non-discriminatory reason); *Kuck v. Planet Home Lending, LLC*, 354 F. Supp. 3d 162, 165-66 (E.D.N.Y. 2018) (reconsideration granted on ground of overlooked fact); *Allendale Mutual Ins. Co. v. Excess Ins. Co., LTD.*, 992 F. Supp 271 (S.D.N.Y. 1997) (reargument granted and original opinion expanded to directly address arguments not addressed in original opinion).

## II. **FACTS OVERLOOKED**

Defendants respectfully submit that reconsideration is warranted, and the surviving EPA claims should be dismissed because the following undisputed facts were overlooked in the Order and therefore militate a different conclusion regarding gender as a factor in compensation.

### A. **Plaintiff's Starting Salary was Based on the Compensation She Herself Set in Her Private Practice**

Plaintiff testified that, when she was in private practice, she determined her compensation. (Dkt No. 122-1 (Pl. 9/21 Tr. 51; 8-13).) As shown in the business plan, based on financial data supplied by Plaintiff to NYU, the compensation that Plaintiff paid herself was in effect the net profit of her share of the private practice she had with Dr. Kavini Mehta, who along with Plaintiff, brought their practice to NYU. (Dkt No. 118-2 (Swirnow Decl., Ex. B).) In negotiating her salary, NYU relied upon the business plan that was predicated upon data that Plaintiff supplied. Inasmuch

as her compensation in her private practice is a reflection and approximation of her practice's profitability and the expected economic value and profitability she was expected to bring to NYU, NYU's decision regarding Plaintiff's compensation was unrelated to her gender.

Moreover, given that Plaintiff's prior salary was determined by her and her prior female business partner, there is no danger that NYU's consideration of that salary would entrench gender-based pay inequalities.  The Order's reliance on the Circuit decisions that are based on the premise that the use of prior salary can ingrain and entrench prior gender-based salary gaps (Order, pp. 12-13), is misplaced on these facts.  Here, in contrast, the fact that Plaintiff and her female partner in private practice determined their own salaries eliminate any chance that the prior salary was the result of gender discrimination.

The Court properly acknowledged the existence of a Circuit split on the issue of whether prior salary alone can establish a factor other than sex under the EPA.  (*Id.*)  NYU's consideration of Plaintiff's prior salary is consistent with the cases in this Circuit that salary matching is one of several permissible factors that warrant disparate pay.  *See* Order, p. 13 (citing *e.g.*, *Talwar v. Staten Island Univ. Hosp.*, No. 12-CV-0033, 2014 WL 5784626 (E.D.N.Y. Mar. 31, 2014 (finding salary matching to be a "legitimate factor other than gender" to justify difference in pay) (citing *Shieldkret v. Park Place Entm't Corp.*, No. 01-cv-5471, 2002 WL 91621, at *3 (S.D.N.Y. Jan. 23, 2002))).  Further, in *Shieldkret*, the Court noted that "salary matching–payment of a higher salary to equal or exceed that of a prior job, or a competing offer—is a reasonable business tactic to lure or retain employees and justify a wage differential."  The record here conclusively demonstrates that is what NYU did.  (*See* Dkt. Nos. 145-3 *(*Swirnow Decl, Ex. 3); 118 (Swirnow Decl., ¶ 10); 119 (Goldberg Decl., ¶ 10).)

Additionally, salary matching is also a permissible factor when it is accompanied by factors that pertain directly to job worth. *See* Order, p. 13 (citing *Husser v. New York City Dep't of Educ.*, 137 F. Supp. 3d 253 (E.D.N.Y. 2015) and *Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528 MKB, 2014 WL 4773975 (E.D.N.Y. Sept. 24, 2014)). Here, both scenarios are applicable, as NYU has established that it used other factors in addition to Plaintiff's prior salary including the facts that Plaintiff herself set her prior salary as a business owner and NYU recruited her to bring her practice to NYU.

Under these facts, which the Court overlooked, the consideration of Plaintiff's prior salary was a proper factor other than sex. Thus, any difference in pay under these facts is not a violation of the EPA.[2]

### B.  NYU Did not Just Merely Hire Plaintiff As a Physician

In recruiting and employing Plaintiff, NYU was not merely engaging her to perform clinical functions or to provide medical services to existing patients of NYU. Rather, NYU recruited Plaintiff because NYU wanted to absorb, from an economic standpoint, the private practice Plaintiff had before being employed by NYU. (Dkt. Nos. 117 (Rubin Decl., ¶¶ 5-10); 118 (Swirnow Decl., ¶¶ 9-11).) The employment of Plaintiff brought along her private practice, including its expected revenue, staff members, real estate leases, and business loans. (Dkt. No. 118 (Swirnow Decl., ¶ 11) ("When NYU hired Plaintiff and Dr. Mehta [Plaintiff's private practice

---

[2] The amendment to the New York City Human Rights Law that prohibits inquiries concerning job applicants' prior salary was not even enacted when Plaintiff first became an NYU employee in 2014 or during the renewal of her contract in 2017. Rather, that law became effective in January 2020 and cannot be a basis for any claim by Plaintiff against Defendants or that Defendant use of prior salary perpetuates the pay gap that such amendment was seeking to eliminate.

Hon. Lorna G. Schofield
October 19, 2022
Page 6 of 9

partner], NYU hired those physicians and the staff members that chose to come with them. NYU also assumed the practice's lease obligations and responsibility for its business loan.")) As a result, the compensation NYU set for Plaintiff reflects and approximates the relative success and profitability of her private practice, plus an increase over her old salary as an incentive for her to become a part of NYU.[3]

In order to set Plaintiff's compensation that would reflect the economic value of her private practice, "NYU analyzed and reviewed the private medical practice then owned by Plaintiff and her business partner in consideration of its decision to add the practice's physicians and supporting staff to our [NYU's] group." (Dkt. No. 117 (Rubin Decl., ¶ 12).) Towards that end, NYU generated a business plan that included the historical financial data of Plaintiff's private practice that she supplied, including the income and expenses of her practice. (Dkt. Nos. 118 (Swirnow Decl., ¶ 9); 118-2 (Swirnow Decl., Exh. B).) That business plan also included the expected income and expenses of Plaintiff's private practice once it becomes part of NYU. (Dkt. No. 118-2 (Swirnow Decl., Exh. B).)

Based on that analysis, NYU successfully negotiated the compensation package offered to Plaintiff. (Dkt. Nos. 117 (Rubin Decl., ¶¶ 12-14); 118 (Swirnow Decl., ¶¶ 5-11); and 118-2 (Swirnow Decl., Exh. B).) In fact, the negotiation was based solely on the financial data and

---

[3] In addition to paying Plaintiff a base salary that was higher than her compensation she received in private practice, NYU also compensated her an additional $[Redacted] annually in the form of a loan payoff over a three-year period. (Dkt. Nos. 118 (Swirnow Decl., ¶ 11); 145-3 (Swirnow Reply Decl., Exh. 3).) And when NYU renewed Plaintiff's employment contract after this initial three-year period, NYU increased her base compensation. (*Id.*) It is undisputed that the comparators used by the Court did not receive this additional economic benefit.

analysis in the business plan. Furthermore, the record shows that Plaintiff was represented by counsel in those negotiations. (Dkt No. 118-1 (Exhibit A (D000072-D000075)).)

The Court overlooked the fact that NYU recruited and hired Plaintiff because she had an established practice that she could bring to NYU. Plaintiff was not merely hiring Plaintiff to perform medical services on existing NYU patients. Thus, the overlooked purpose and economic analysis behind NYU's recruitment and employment of Plaintiff warrant the dismissal of the surviving EPA claims.

### C. Plaintiff's Renewal Compensation

The Order also overlooked the fact that, at renewal, the methodology and rationale for setting compensation for Plaintiff and other physicians are very different than when they were initially hired by NYU. At renewal, NYU reviews the productivity and related bonuses the physicians earned in the prior contract period at NYU and incorporates such productivity bonuses into the new base salaries. (Dkt No. 145-2 (Swirnow Reply Decl., ¶ 13).) Accordingly, the new base salary reflects the actual productivity of the physicians during their prior contract period at NYU. (*Id.*) This methodology and the rationale behind it demonstrate that NYU's determination of Plaintiff's renewal salary was not gender-based, but rather productivity based, like the others with whom she seeks to compare herself. (*Id.*) Thus, the comparison of Plaintiff's renewal compensation with Dr. Modi's initial compensation is not appropriate because different factors, all unrelated to her gender, were used in determining their respective salaries. Plaintiff's analysis blurs this distinction.[4]

---

[4] It has been Defendants' consistent position, as supported by the record, that Dr. Goldberg and Dr. Modi, who was a Chief of Rheumatology for national medical network (Dkt. No 145-3), were not proper comparators with Plaintiff because, among other things, their compensation was

### D. The Use of wRVU as Advanced by Plaintiff is not Supported by the Record

As demonstrated by the undisputed evidence in the record, NYU did not and does not use a dollar value per wRVU methodology in setting salaries. (Dkt No. 145-2 (Swirnow Reply Decl., ¶ 12).) As Andrew Rubin, Senior Vice President of Clinical Affairs and Ambulatory Care for NYU Langone Health, who is involved in negotiations of compensation for physicians, explained:

> WRVUs do not directly define or inform physician compensation in dollar amounts. Rather, wRVUs define the value of a service or procedure relative to all services and procedures.  In other words, NYU does not compute a dollar value per wRVU, and there is no correlation between the setting of salary and the amount of wRVUs to be generated.  A physician can have a "high" salary with a "low" wRVU target, or a "low" salary with a "high" wRVU target, depending on the manner in which their private practice operated and the nature of their clinical activities.

(Dkt. No. 117 (Rubin Decl., ¶ 9).)  There is no probative evidence in the record to dispute Rubin's explanation in this regard.

The record is clear that NYU pays a premium above each physician's salary in order to attract them to NYU.  It is undisputed that in hiring physicians from private practice, NYU hires their support staff and assumes their real estate leases and business loans. Thus, in hiring physicians from private practice, NYU must address not just their respective prior salaries but also their overhead, which makes one physician more profitable than the other.

Furthermore, there is no evidence in the record, expert or otherwise, that a dollar value per wRVU methodology in setting salaries was or should be used by NYU. Plaintiff cites no evidence that confirms that a dollar per wRVU units of production is proper in evaluating and setting initial salaries of physicians joining NYU from private practice.  Rather, the testimony that Plaintiff

---

not set based upon the salaries they set for themselves in private practice as they had no private practice. (Dkt Nos. 145-3 (Swirnow Decl., Ex. 3); 119 (Goldberg Decl., ¶10); 145-2 (Swirnow Reply Decl., ¶ 10).)   Moreover, and unlike Dr. Modi, Plaintiff did not manage the rheumatology practice of a national medical network.

attempts to rely on does not support her methodology. (Dkt No. 134 (Pl. Counterstatement ¶ 6 (citing Kataev Decl., Ex. H (Swirnow Tr., 121: 4-8) (discussing incentive compensation formulas for current employees with no discussion of any dollar-for-dollar value of wRVUs when setting initial salaries); *id*., Ex. C (Rubin Tr., 99:22-23) (discussing measuring performance of current employees with no discussion of any dollar-for-dollar value of wRVUs when setting initial salaries); *id*., (Ex. L (Porges Tr. 83:12-17) (does not discuss any dollar-for-dollar value of wRVUs when setting initial salaries) (*id*., Ex. I (Mehta Tr. 83:24-25; 84:1-2) (speculative testimony agreeing to Plaintiff's assumption if a formula exists)). Plaintiff also does not cite any evidence that correlating wRVUs on a dollar-per-RVU basis and salary is standard in the health care industry. (Pl. Counterstatement ¶ 6 (citing Kataev Decl., Ex. E (Kaplan Dep. 60:12-16) (no testimony of any dollar-for-dollar value of wRVUs when setting initial salaries at NYU or elsewhere)). Plaintiff's unsupported claim that making such a computation is standard at NYU or in the health care industry led the Court to an erroneous conclusion that should be reconsidered.

## CONCLUSION

As demonstrated above, the undisputed evidence in the record proves that any disparity in pay arose out of factors other than sex. No rational jury could find otherwise. The Court should therefore grant Defendants' motion for reconsideration and dismiss the surviving EPA claims.

                **TARTER KRINSKY & DROGIN LLP**
                *Attorneys for Defendants*

                By: */s/ Richard L. Steer*
                      Richard L. Steer