TARTER KRINSKY & DROGIN LLP
*Attorneys for Defendants*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| DR. SARI EDELMAN, | : |
| | : |
| Plaintiff, | : |
| | : Case No. 1:21-cv-502 (LGS)(GWG) |
| -against- | : |
| | : |
| | : **DECLARATION OF** |
| NYU LANGONE HEALTH SYSTEM, NYU | : **JOSHUA B. SWIRNOW** |
| LANGONE HOSPITALS, NYU LANGONE | : **IN FURTHER SUPPORT OF** |
| MEDICAL CENTER, NYU LANGONE | : **DEFENDANTS' MOTION** |
| NASSAU RHEUMATOLOGY, NYU SCHOOL | : **FOR SUMMARY JUDGMENT** |
| OF MEDICINE, NYU GROSSMAN SCHOOL | : |
| OF MEDICINE, NYU HOSPITALS CENTER, | : |
| ANDREW T. RUBIN, DAVID KAPLAN, | : |
| JOSEPH ANTONIK, and JOSHUA SWIRNOW, | : |
| | : |
| Defendants. | : |

-------------------------------------------------------------x

**JOSHUA B. SWIRNOW**, under penalties of perjury, hereby declares pursuant to 28 U.S.C. § 1746:

1. I am the Vice President of Ambulatory Care and Business Strategy at NYU Langone Health.

2. I am, in part, responsible for negotiating the terms and conditions of employment of new ambulatory network physicians upon their hire by NYU.

3. Annexed at Exhibit 1 is a chart that compares the qualifications, experience, and terms of employment for each of Plaintiff, Dr. Andrew Porges, Dr. Avram Goldberg, and Dr. Anang Modi. The chart has been created based upon records kept by NYU in the ordinary course

1

of business, together with the negotiations conducted with each of these clinicians coincident with their hire.

4. A true copy of Dr. Porges' business plan, a record developed by NYU and maintained by it in the ordinary course of business, is annexed hereto at Exhibit 2. The business plan was generated specifically for Dr. Porges by a member of NYU's FGP staff based upon financial data supplied to NYU by the private practice he owned immediately prior to joining NYU.

5. A true copy of Plaintiff's business plan is annexed at Exhibit B to my Declaration executed February 16, 2022. As with Dr. Porges' business plan, it was generated specifically for Plaintiff by a member of NYU's FGP staff based upon financial data supplied to NYU by the private practice she owned immediately prior to joining NYU.

6. Dr. Modi had been Medical Director of the Hempstead, New York office of a regional medical group for 12 years prior to being recruited by NYU. When he exited that role, he was earning approximately ▮▮▮▮▮ per year.

7. The initial salaries that NYU offered each of these physicians were based either upon what they paid themselves in private practice or the compensation paid to them by their prior employer.

8. The initial base salary NYU offered Plaintiff, together with the loan repayment amount NYU assumed upon her hire, constituted a nearly ▮▮▮▮▮ increase from the base salary Plaintiff had set for herself in private practice.

9. In comparison, the initial base salary NYU offered Dr. Porges represented a less than ▮▮▮▮▮ increase from the salary he paid himself in private practice.

10. The initial base salary NYU offered Dr. Modi upon his hire in 2017 was approximately ▇▇▇ more than that which he was paid by his prior employer. He would not have agreed to join NYU without such increase in compensation.

11. I have reviewed the chart included at page 5 of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, which reflects a supposed pay-per-RVU compensation model that NYU does not use. Plaintiff's chart ignores the fact that the initial compensation NYU offers a physician being hired out of private practice, Plaintiff included, is set based on the salary that that physician paid him or herself out of their private practice's revenue. Plaintiff's chart further ignores Plaintiff's loan repayment income when comparing clinical compensation to RVU productivity. NYU sets the initial RVU target for such an incoming physician at the same level of their historical RVU production in private practice. The initial salary set at NYU and the RVU of any such physician produced in private practice do not infer the other – both are independently based on what the physician earned and produced in private practice.

12. Plaintiff's chart is incorrect as well in that NYU also does not evaluate production in terms of dollars-per-RVU when physicians' employment contracts are up for renewal.

13. Plaintiff's renewal compensation amount was determined using the same methodology as was used for the other physicians to whom she compares herself in her chart. Dr. Goldberg grew his practice and productivity substantially between the time of his initial Agreement and his First Amended Contract in 2017. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

14. The sex of any particular physician is not considered and plays no role in NYU's determination of either their salaries or production targets, which are set according to what they paid themselves and produced in private practice, respectively.

15. Further, with respect to business expenses, there are no instances in which a physician is provided with an unlimited expense budget at NYU.

16. All of the above testimony is true to the best of my knowledge and recollection. I have not been pressured in any way or promised anything to make the statements set forth above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 29, 2022.

*[signature]*
JOSHUA B. SWIRNOW