# In the Matter Of:

Case No.: 1:21-cv-502(LGS)(GWG)

## EDELMAN

v.

## NYU LANGONE HEALTH SYSTEM, et al.

---

## Deposition of Andrew Porges

*Friday, December 10, 2021*

---

## CONFIDENTIAL



330 West 38th Street
Suite 404
New York, NY 10018
tel: 646 650 5055
www.littlereporting.com

CONFIDENTIAL

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Case No.: 1:21-cv-502 (LGS) (GWG)
-------------------------------------X
DR. SARI EDELMAN,

                    Plaintiff,

     -against-


NYU LANGONE HEALTH SYSTEM, NYU LANGONE HOSPITALS,
NYU LANGONE MEDICAL CENTER, NYU LANGONE NASSAU
RHEUMATOLOGY, NYU SCHOOL OF MEDICINE, NYU
GROSSMAN SCHOOL OF MEDICINE, NYU HOSPITALS
CENTER, ANDREW T. RUBIN, DAVID KAPLAN,
JOSEPH ANTONIK AND JOSHUA SWIRNOW,

                    Defendants.
-------------------------------------X
```

December 10, 2021
10:00 a.m.

CONFIDENTIAL

Examination before Trial of ANDREW PORGES, M.D. held pursuant to Notice, held via Zoom conference, before Ruthayn Sgaglio, a Notary Public of the State of New York.

CONFIDENTIAL

```
                                                               2
 2      A P P E A R A N C E S :

 3                  MILMAN LABUDA LAW GROUP, PLLC
                    Attorneys for Plaintiff
 4                  3000 Marcus Avenue, Suite 3W8
                    Lake Success, New York 11042
 5                  BY: EMANUEL KATAEV, ESQ.
                    emanuel@mllaborlaw.com
 6

 7                  TARTER KRINSKY & DROGIN LLP
                    Attorneys for Defendants
 8                  1350 Broadway, 11th Floor
                    New York, New York 10018
 9                  BY: RICHARD L. STEER, ESQ.
                    rsteer@tarterkrinsky.com
10

11      ALSO PRESENT:

12      Daniel T. Driesen, Esq.
```

CONFIDENTIAL

3

2      IT IS HEREBY STIPULATED AND AGREED, by
3   and between the attorneys for the respective
4   parties hereto, that this examination may be
5   sworn to before any Notary Public.

7      IT IS FURTHER STIPULATED AND AGREED that
8   the sealing and filing of the said examination
9   shall be waived.

11     IT IS FURTHER STIPULATED AND AGREED that
12  all objections to questions except as to form
13  shall be reserved for trial.

CONFIDENTIAL

53

1         A. Porges, M.D.
2         MR. STEER: Objection to form.
3    A    I would rather not speculate.
4    Q    Generally speaking, to your knowledge when
5    a physician is terminated for cause is that
6    something that is reported to the medical board or
7    the office of I believe it's OPMC?
8         MR. STEER: Objection to form.
9    A    I have no idea.
10   Q    To your knowledge, if there was a
11   determination made that patients were at risk by
12   keeping Dr. Edelman at NYU, why was Dr. Edelman kept
13   at NYU for six months during her six month
14   nonrenewal period?
15        MR. STEER: Objection to form.
16   A    I have no idea.
17   Q    Did the fact that Dr. Edelman remained at
18   NYU for six months after she was notified that her
19   contract would not be renewed cause you concern?
20        MR. STEER: Objection to form.
21   A    Dr. Edelman left with almost no notice
22   after five months, not after six months. She gave
23   us notice on Friday that she would not be there on
24   Monday. So she did not continue the six months.
25        MR. KATAEV: Move to strike as

1                    A. Porges, M.D.
2      giving him the negotiations.  Which was probably not
3      the date I joined NYU but probably January 1, 2014
4      or whatever the date we had chosen; I don't know the
5      exact date.  We did probably two years, probably
6      2012 and 2013, RVU production.
7           Q    When you were presented with that wRVU
8      target based on an average over two years, did you
9      attempt to negotiate that target up or down?
10          A    Not to my recollection at that time.
11          Q    As you sit here today -- withdrawn.
12               Is it fair to say there is a direct
13     correlation between the number of wRVUs and
14     compensation offered?
15               MR. STEER:  Objection to form.
16          A    I think there is a relationship between
17     those two things in the contracts that I have.
18          Q    Before entering into the contract that you
19     have with NYU, was there not a discussion concerning
20     wRVUs and the attended compensation?
21               MR. STEER:  Objection to form.
22               Can I have that read back, please?
23     (Whereupon, the referred to question was read back
24                    by the reporter.)
25               MR. STEER:  Objection to form.

Case 1:21-cv-00502-LGS   Document 164-12   Filed 04/08/22   Page 7 of 13

CONFIDENTIAL

```
                                                         125
 1                     A. Porges, M.D.
 2         Q    What is the name of the nurse?
 3         A    Patricia Fasolowich.
 4         Q    When did you speak to Joseph Antonik and
 5   Patricia Fasolowich about this request?
 6         A    I believe immediately upon David Kaplan
 7   giving me this deadline that I had to have it to him
 8   by that date, November 6th, within a couple of days
 9   of November 6th.
10         Q    Did you speak to Joseph Antonik on the
11   phone the day that you prepared this email with him?
12              MR. STEER:  Objection to form.
13         A    I don't recall.  I spoke to him that week.
14   I don't know if it was in person or on the phone.
15         Q    With respect to this deadline that David
16   Kaplan made, did you speak with David Kaplan about
17   the deadline over the phone?
18         A    I believe so.
19         Q    What did you say to him and what did he
20   say to you?
21         A    To the best of my recollection, I said --
22   I asked for more time to prepare the email, and to
23   the best of my recollection he said that he was
24   meeting with Andrew Rubin and Joshua Swirnow and he
25   really needed it on that date.
```

The Little Reporting Company
(646) 650-5055 | www.littlereporting.com

CONFIDENTIAL

162

1              A. Porges, M.D.
2      school at NYU, correct?
3         A    Yes.

[REDACTED]

8         Q    It would follow that you would stand to
9      lose a lot if you went against NYU, correct?
10             MR. STEER:  Objection.  You may answer.
11     Objection to form.
12        A    I don't know what you mean by go against
13     NYU.
14        Q    Take any position that is adverse to NYU.
15             MR. STEER:  Objection to form.
16        A    Potentially.  It depends on the position,
17     whether I felt it justified -- it threatened my
18     employment.
19        Q    Do you believe that the email that you
20     sent on November 6, 2020 was ethically justified
21     according to the standards that you are to act as a
22     doctor?
23             MR. STEER:  Objection to form.
24        A    Yes.
25        Q    That's despite the fact that you did not

                                                              164
1                         A. Porges, M.D.
2    terminated?
3         A    No.
4         Q    Going back to your earlier testimony today
5    that you had concerns about patient care with
6    respect to Dr. Edelman; do you recall that
7    testimony?
8              MR. STEER:  Objection to form.
9         A    I think there were multiple forms of it,
10   but yes.
11        Q    You specifically testified that you
12   believed that continuing to have Dr. Edelman present
13   at NYU would compromise patient care or create risks
14   as to patient care, correct?
15             MR. STEER:  Objection to form.
16        A    I believe so, yes.
17        Q    As a result of your concerns, were you not
18   required to report those concerns independently to
19   the office of compliance at NYU?
20        A    I reported those concerns to Andrew Rubin,
21   Joshua Swirnow and David Kaplan, and I felt that
22   fulfilled my moral and legal obligation.
23        Q    Were you under a similar ethical
24   obligation to report any such concerns to the Office
25   of Professional Medical Conduct?

CONFIDENTIAL

165

1        A. Porges, M.D.
2            MR. STEER:  Objection to form.
3            Can I have that read back, please?
4    (Whereupon, the referred to question was read back
5                   by the reporter.)
6            MR. STEER:  Objection to form.
7       A    Not to my knowledge.
8       Q    I'm going to place up on the screen one
9    final exhibit.  I believe it's number 16.
10               I will represent to you this is a
11   display of a website, a government website, New York
12   State Department of Health, which is publicly
13   available, and it's titled, Understanding New York's
14   Medical Conduct Program Physician Discipline.
15                  Do you see that?
16      A    Yes.
17   (Plaintiff's Exhibit 16, Marked for Identification.)
18           MR. STEER:  Note my objection.  Plaintiff
19      has not disclosed to us before this deposition
20      that he intended to use this exhibit.  He's not
21      produced it in discovery.
22           MR. KATAEV:  Your objection is noted.
23   BY MR. KATAEV:
24      Q    It says here under the heading, Who files
25   complaints under the third bullet point.

```
                                                            166
```

1           A. Porges, M.D.
2              MR. STEER:  Let's call the judge.
3              MR. KATAEV:  Go ahead.
4         (Whereupon a called was placed to the judge.)
5              MR. STEER:  Note for the record that we
6      have reached out to the court, that the court
7      would have to start trying to reach out to the
8      judge because it's after hours, and I spoke
9      with the judge's clerk about the idea that we
10     would mark this for a ruling rather than trying
11     to have the clerk try to start reaching out to
12     the judge and try to find her right now.
13             Please mark this for a ruling, this line
14     of questioning.
15                     (Marked for ruling.)
16  BY MR. KATAEV:
17     Q   As I was asking earlier, the third bullet
18  point under the heading Who Files Complaints which
19  I've highlighted says, All licensed health
20  professionals, including physicians -- I'm skipping
21  the remaining two, Are required by State law to
22  report colleagues whom they suspect may be guilty of
23  misconduct.  Failure to report suspected instances
24  of misconduct is in itself misconduct.
25                     Do you see that?

CONFIDENTIAL

```
                                                            167
 1                    A. Porges, M.D.
 2            MR. STEER:  Objection to form.
 3       A    I do.
 4       Q    Is it your testimony today that you
 5   believe that Dr. Edelman's actions constituted
 6   misconduct?
 7            MR. STEER:  Objection to form.  You are
 8        asking him for a legal definition of something
 9        in a --
10            MR. KATAEV:  Please don't make a speaking
11        objection.
12            MR. STEER:  I'm putting an objection for
13        the record and we've marked it already for a
14        ruling.
15            MR. KATAEV:  Very good.
16       A    I don't know.
17       Q    You testified earlier today that the
18   reasons -- withdrawn.
19            You testified earlier today that you
20   recommended to Andrew Rubin and Joshua Swirnow that
21   Dr. Edelman's contract not be renewed because you
22   were concerned about patient care, correct?
23            MR. STEER:  Objection to form.
24       A    I don't believe that's correct.
25       Q    What is correct?
```

168

1  　　　　　　　　　　A. Porges, M.D.
2  　　　A　　I testified today that I was concerned
3  about Dr. Edelman's patient care and conduct, but I
4  don't believe I testified that I told them to not
5  renew her contract.
6  　　　Q　　Based on your concerns about her patient
7  care and conduct, were you not required, according
8  to this, to report it to the Office of Professional
9  Medical Conduct?
10 　　　　　MR. STEER:  Objection to form.
11 　　　A　　I don't know.
12 　　　Q　　Are you aware as to whether you're
13 required to know these things?
14 　　　　　MR. STEER:  Objection to form.
15 　　　A　　I don't know.
16 　　　Q　　Dr. Porges, thank you very much for your
17 testimony today.  I have no further questions.
18 　　　　　MR. STEER:  I would like a rough ASCII for
19 　　　Sunday.
20 　　　　　THE COURT REPORTER:  Absolutely.
21
22 　　　　　　　　(Time noted: 5:40 p.m.)
23
24 　　　　　　　　　**************
25