| | |
|---|---|
| **From:** | Swirnow, Joshua <Joshua.Swirnow@nyulangone.org> |
| **Sent:** | Wednesday, November 18, 2020 11:43 AM |
| **To:** | Kaplan, David (FGP-Ambulatory Operations) |
| **Subject:** | RE: Dr Sari Edelman |

Give me call, will fill you in

**From:** Kaplan, David (FGP-Ambulatory Operations)
**Sent:** Wednesday, November 18, 2020 11:04 AM
**To:** Swirnow, Joshua
**Subject:** RE: Dr Sari Edelman

How did the call go with Dr. Porges?

**From:** Swirnow, Joshua <Joshua.Swirnow@nyulangone.org>
**Sent:** Wednesday, November 18, 2020 9:18 AM
**To:** Kaplan, David (FGP-Ambulatory Operations) <David.Kaplan2@nyulangone.org>
**Subject:** RE: Dr Sari Edelman

thanks

**From:** Kaplan, David (FGP-Ambulatory Operations) <David.Kaplan2@nyulangone.org>
**Sent:** Wednesday, November 18, 2020 9:09 AM
**To:** Swirnow, Joshua <Joshua.Swirnow@nyulangone.org>
**Subject:** Fwd: Dr Sari Edelman

Here you go.

Sent from my iPhone

Begin forwarded message:

> **From:** "Porges, Andrew" <Andrew.Porges@nyulangone.org>
> **Date:** November 6, 2020 at 4:31:20 PM EST
> **Subject: Dr Sari Edelman**
>
> Dear David,
>
> As we discussed, I feel it is important to update you regarding the performance of Dr Sari Edelman. A review of some specific examples of problematic behavior will be attached at the end of this email. The office staff, both clinical and administrative have come to me frequently over the past several years with concerns about Dr Edelman. Complaints have been ongoing for years, but they have somewhat escalated recently. The concerns relate to the quality of her patient care as well as to her treatment of other NYU employees in the office.

D000003

Inappropriate and abusive interactions have been reported in the office by management, colleagues as well as more junior staff such as medical assistants.

Concerns regarding patient care have been raised based upon patient complaints as well as more anecdotal observations. I have not performed a formal review of Dr Edelman's clinical notes, however I have had the opportunity to review many charts and observe her practice when seeing patients in the office for second opinions or occasionally for emergency practice coverage. Dr Edelman has a pattern of ordering lab tests in a pattern not in keeping with the usual standards of rheumatology practice. Her MA is routinely needing more than 10 tubes of blood to run a long list of obscure tests. The result of excessive testing is many false positive results, which then leads to more testing and some questionable diagnoses being pursued. In many cases, as a result of excessive testing important true positive findings have been lost for weeks or longer. Similarly, the Xray techs have come to me on many occasions expressing concern regarding excessive Xrays. I have received complaints that she is ordering xrays on more than 10 areas in a single patient visit on a frequent basis. Aside from the resultant work flow, the Xray staff are genuinely concerned about unnecessary patient Xray exposure. I, and other clinicians, upon reading her notes often find it difficult to ascertain the primary clinical issue and it seems a clear diagnosis with classic positive serology is the exception in her patients.

Please note the following issues and examples:

- 
- 
- Dr. Edelman does not read
- her Outlook emails in a timely manner
- 
- 
- 
- Dr. Edelman does not close
- her encounters in a timely manner
- 

Dr. Edelman did not report to the office for several months during Covid, from March 23 through June 10, and returned intermittently until July 7. She is still maintaining a shorter schedule to minimize her time in the office.

11.13.19 Dr. Edelman lashed out at Miriam after Miriam asked her basic questions about her schedule.

D000004

6.15.20 Patient complained that a video visit was conducted in an unprofessional manner, Edelman's daughter interrupted the visit twice.

9.8.20 Dr. Edelman created an inappropriate chart note directed at our Shields Pharmacy Liaison stating that she does not communicate through Outlook email, and that missed messages may lead to liability. This message had no place in a patient's chart.

9.9.20 Dr. Edelman was 90 minutes late to the office, did not inform the manager in a timely manner – 6 patients were waiting, this is a frequent compliant from her patients that Dr. Edelman runs late.

9.15.20 Dr. Edelman complained that the MA did not review patient's medications, the MA did on the patient in question. D.r Edelman frequently accuses staff of not doing work that was in fact done, creating unnecessary efforts and tension.

9.16.20 Pt. MRN ███████ complained that Dr. Edelman frequently runs late, and switched to another provider

10.6.20 Dr. Edelman demands that her MA takes verbal orders, and does not follow up with placing the order in EPIC

10.19.20 Dr. Edelman complained to Miriam that during the Rheum Educational Conference, the physicians were discussing politics making her uncomfortable. Witnesses to the conversation stated that there was nothing inappropriate being discussed, and this is an example of Dr. Edelman making an unfounded complaint against her colleagues.

10.20 Patient was seen in the office by a different provider an hour before her visit with Dr. Edelman; orders were entered by Rosemary Fine and had blood drawn, When the patient saw Dr. Edelman, the physician entered duplicate blood orders; the patient was upset because the patient received duplicate bloods. Had Dr. Edelman reviewed the chart, she would have seen the results.

10.28.20 Dr. Edelman complained to Miriam that a visco order was never processed, when in fact she never placed the order when she said she did.

10.28.20 During a Webex conference, Miriam asked Dr. Edelman to mute her phone, Dr. Edelman lashed out at Miriam telling her to "don't touch me, don't come near me" this was heard by all attendees and staff on the floor.

# Confidential

Below is an extended email interaction with one patient:

October 10, 2020
████ REDACTED ████
to Edelman, Sari Dawn, DO

D000005

# SARI D. EDELMAN, D.O.

## EXPERIENCE

### RHEUMATOLOGIST, NYU LANGONE RHEUMATOLOGY, LAKE SUCCESS, NEW YORK – 2014-PRESENT

Full time attending rheumatologist for NYU Langone Faculty Group Practice. Provide outpatient ambulatory care services and hospital consultations. Oversee patient care for on site infusion services. Attend and present at monthly educational seminars with rheumatology team at Lake Success. Attend seminars and conferences at NYU Langone Hospital, Manhattan.

### RHEUMATOLOGIST, RHEUMATOLOGY ASSOCIATES OF NEW YORK, LAKE SUCCESS, NEW YORK – 2008-2014

Established and operated private rheumatology practice providing outpatient and inpatient hospital consultations. Additional services included on site infusion suite, bone densitometry, sonography. As owner/director attended to all business aspects of rheumatology practice including employee hiring, training, billing, regulatory practices and ancillary patient services (educational seminars).

## EDUCATION

### WINTHROP UNIVERSITY HOSPITAL, MINEOLA, NEW YORK JULY, 2006- JUNE, 2008

- Rheumatology Fellowship
- Board Certified Rheumatology, 2008
- Board Recertification Rheumatology, 2018

### WINTHROP UNIVERSITY HOSPITAL, MINEOLA, NEW YORK JULY, 2003- JUNE, 2006

- Internal Medicine Residency
- Board Certified Internal Medicine, 2006
- Board Recertification Internal Medicine, 2016

### NEW YORK COLLEGE OF OSTEOPATHIC MEDICINE, OLD WESTBURY, NEW YORK AUGUST, 1999- JUNE, 2003

- Doctor of Osteopathic Medicine
- Honors, Dean's List

D000038

**VIA FEDERAL EXPRESS**

December 1, 2020

Sari Edelman, MD
105 Foxhunt Crescent
Syosset, NY 11791

RE:   <u>**Non-Renewal of Employment Agreement**</u>

Dear Dr. Edelman:

As you know, your employment agreement with NYU Grossman School of Medicine ("NYUGSOM") dated September 5, 2014, as amended November 17, 2017 (collectively, the "Agreement"), will expire on December 31, 2020, at which time you will become an employee at will.  NYUGSOM is hereby notifying you of its decision not to renew your employment, and providing you six (6) months' notice of termination of your employment.  Accordingly your employment with NYUGSOM will terminate on **May 31, 2021**.

Please note that pursuant to Section II (2) of the Agreement, your faculty appointment of Adjunct Assistant Professor in the Department of Medicine is co-terminus with your employment and will automatically terminate when your employment terminates on May 31, 2021, as will your medical staff privileges.

I wish you the best in your future endeavors.

Sincerely,

Andrew T. Rubin

D000041



Steven B. Abramson, MD
Chairman, Department of Medicine
Senior Vice President & Vice Dean for
Education, Faculty & Academic Affairs

September 5, 2014

Sari Edelman, DO
1991 Marcus Avenue, Suite 104
Lake Success, NY 11042

Dear Dr. Edelman:

On behalf of our colleagues at NYU School of Medicine and NYU Hospitals Center (collectively, "**NYU Langone Medical Center**"), it gives us great pleasure to make this offer for you to become an employed member of our faculty.  We are certain that you will find the environment for research, education and health care at NYU Langone Medical Center uniquely stimulating, interactive and highly beneficial.

Set forth below are general guidelines pertaining to your employment with NYU Langone Medical Center. The specific terms of your employment, including the compensation associated with your clinical, research, and/or administrative responsibilities, are set forth in **Schedule A**.

**Section I – <u>General Terms Governing Employment</u>**

**A.    <u>Policy and Procedures</u>**

1.  **<u>Policies/Practices/Faculty Handbook:</u>** Your employment is subject to all policies and practices of the NYU Langone Medical Center and New York University, including, but not limited to the New York University Faculty Handbook and other policy documents.

2.  **<u>Pre-Employment Process:</u>** This offer and your employment is contingent upon your successfully completing NYU Langone Medical Center's pre-employment process which includes, but is not limited to, reference checking, a pre-employment physical examination, a background investigation and receipt of all documentation required in accordance with Federal, State and local rules, as well as NYU Langone Medical Center human resources and New York University policies and procedures. If you have clinical responsibilities, this offer and your employment are contingent upon your obtaining, prior to the Commencement Date, medical staff privileges, and qualifying for professional liability insurance under NYU Langone Medical Center's insurance program.  In addition, if you

550 First Avenue, HCC-15, New York, NY 10016 ● tel 212.263.8003 ● fax 212.263.3297 ● stevenb.abramson@nyumc.org

D000045



D000046



D000047



D000048



D000049



D000050



D000051



D000052



D000053



D000054



D000055



Research_Conflicts_Disclosure_Affirmation_08.26.13

D000056



**NYU School of Medicine**
NYU LANGONE MEDICAL CENTER

**Steven B. Abramson, MD**
Chairman, Department of Medicine
Senior Vice President & Vice Dean for
Education, Faculty & Academic Affairs

November 17, 2017

Sari Edelman, MD
105 Foxhunt Crescent
Syosset, NY 11791

**RE:     Renewal of Employment Agreement**

Dear Dr. Edelman:

On behalf of our colleagues at NYU School of Medicine, an administrative division of
New York University and a component of NYU Langone Health, an academic medical
center comprised of the NYU School of Medicine and NYU Langone Hospitals
**(collectively referred to as "NYU Langone Health")**, it gives us great pleasure to offer
you a renewal of employment.

Your renewed employment with NYU Langone Health will be governed by your offer
letter and employment agreement dated September 5, 2014 which was effective
December 1, 2014 **("Offer Letter")** with the exception of the removal of the
Reimbursement of Business Expenses provision **Section III(a)** in your Offer Letter, and
your updated clinical compensation terms, which are detailed in **Schedule A** hereto.

Your employment continues to be subject to all policies and practices of NYU Langone
Health and New York University as stated in the New York University Faculty
Handbook and other policy documents of the NYU School of Medicine in effect at the
time of signing this renewal, and as modified from time to time, as well as all applicable
laws, rules and regulations.

Except as otherwise set forth herein, all other terms outlined in your Offer Letter remain
in full force and effect.

We are very pleased that you are continuing to be a member of the Faculty of the School
of Medicine in the Department of Medicine, Division of Rheumatology.

Sincerely yours,

Jill P. Buyon, MD
Director, Division of Rheumatology

_11/30/17_
Date

**D000057**

Sari Edelman, MD
November 17, 2017
Page 2 of 4

CONFIDENTIAL

Steven B. Abramson, MD
Senior Vice President and Vice Dean for
Education, Faculty and Academic Affairs
Chair, Department of Medicine

11/30/17
Date

Andrew W. Brotman, MD
Senior Vice President and Vice Dean
for Clinical Affairs and Strategy
Chief Clinical Officer

12/6/17
Date

Sari Edelman, MD

Date

D000058





**D000060**

# Sari D. Edelman, D.O.

## EMPLOYMENT

Rheumatology Associates of New York/NYAD
June, 2008–Present
- Practice Rheumatology in Private Care Setting

## EDUCATION

Winthrop University Hospital
Mineola, NY
July, 2006–June, 2008
- Rheumatology Fellowship
- Board Certified Rheumatology, 2008
July, 2003- June, 2006
- Internal Medicine Residency
- Board Certified Internal Medicine, 2007

New York College of Osteopathic Medicine

Old Westbury, NY
August, 1999- June, 2003
- Doctor of Osteopathic Medicine
- Honors, Dean's List

New York University
New York, NY
August, 1997–June, 1998
- Post Baccalaureate Premedical Education
- Honors

Binghamton University
Binghamton, NY
August, 1993–December, 1996
- BA Mathematics/Actuarial Science
- BA English/Creative Writing
- Magna Cum Laude

## HIGHLIGHTED PUBLICATIONS

*Atheroprotective effects of methotrexate on reverse cholesterol transport proteins and foam cell transformation in human THP-1 monocyte/macrophages.* Reiss AB, Carsons SE, Anwar K, Rao S, Edelman SD, Zhang H, Fernandez P, Cronstein BN, Chan ES. Arthritis Rheum. 2008 Dec;58(12):3675-83.

*Effect of cyclooxygenase inhibition on cholesterol efflux proteins and atheromatous foam cell transformation in THP-1 human macrophages: a possible mechanism for increased cardiovascular risk.* Chan ES, Zhang H, Fernandez P, Edelman SD, Pillinger MH, Ragolia L, Palaia T, Carsons S, Reiss AB. Arthritis Res Ther. 2007;9(1):R4.

*Recent insights into the role of prostanoids in atherosclerotic vascular disease.* Reiss AB, Edelman SD. Curr Vasc Pharmacol. 2006 Oct;4(4):395-408. Review.

## SOCIETIES

American College of Rheumatology

American College of Physicians

American Board of Internal Medicine

American College of Osteopathic Medicine

Eastern Medical Research Foundation

## REFERENCES

*Furnished upon request.  Complete list of publications upon request.*

FAX (516) 216-5284 · E-MAIL RHEUMASSOCIATESNY@GMAIL.COM

1991 MARCUS AVENUE · SUITE 104 · LAKE SUCCES, NEW YORK · 11042 · PHONE (516) 775-7200

D000193

CONFIDENTIAL

**Salesforce Notes/Comment (original date not available) System admin date 3-13-2020**

employee wants to make a complaint against Joe Antanik. at the end of patient hours yesterday, she had a conversation with Joe around 3:30-3:35 on 9/16 on in her office. she was on the office on the phone with her daughter, he came into her office and said that the directive above was that they wanted to move the rhum into 1 space and that he had a specific request - that another doctor would be using her personal consult office during Thursday and Friday. laying down the foundation - he insinuated who was moving where and he didnt dictate who made the decision. she said that she uses the office on Friday to do clinical work and he said "how often are you really here". He was sitting and he was pointing at things in her office and was intimidating. He said you really think this (office) is yours - throwing his arms and pointing at things. she stated that contractually the office is designated for her and he replied that he will bring this up to the powers that be. then he left, walked out. her heart was racing. was supposed to be calling patients back and she was very uncomfortable after this conversation. 2 new doctors are starting - they dont have a place for them but her response was is that she uses the office and so the others cannot use it. there was a schedule change request that was made last week wednesday - to move wednesday cancellations from last week to be moved to Friday of this week. miriam ruiz - regular mgr. she was working on it but she was out today. Enid pappas is covering her and asked her to double check. wanted an update/ she went into schedule and it looked like it didnt look like anything has been changed yet. she said that she was thinking about opening friday schedule for patient hours (she usually does clinical work). she received an email from enid with a reference to joe - stating that she cant approve any of the requests because it has to be approved by Joe. physicians that want to change their hours have to be approved by leadership. they cant just change day to day practice. there are contractual and financial implications thats why they needed to discuss. finance needs to weigh in and they need to verify if they have the staff in place to do that. joe told managers that whenver physicians change their schedules to notify Joe. miriam gave Joe the email about this friday's schedule today 9/18 - this can be approved but MA that is normally assigned to Dr. Edelman has another asssignment on fridays so they need to verify that they have the staff. Her take is that he shut down her requests as a result of yesterday's conversation. call with Joe - he didnt raise his arms. she doesnt come in fridays. maybe 1 friday a month for 2 hours. explained that there was a need to use the office. she defensive and snide. she said i have a contract and you can have them call my lawyers. she said that she was promised the office per her contract and he said thta he wasnt aware and that we would bring it up to the powers that to be address. if the friday are no good then what about thursday. she was unwilling and not flexible to let others use this office. it wasnt personal to her or targeted to her because this happens often. advised that i would reach out to David Kaplan and that he should meet to Dr. Edelman.

**Resolution Notes**

**System closed case date: 10-8-2019**

spoke to Tisa and David Kaplan. Dr. Edelman met with Josh Swirnow and he explained the rationale behind using her office while she wasnt at Marcus Avenue, he clarified that she wasnt the only one who's office was needed. Sent f/u email to Dr. Edelman to see if wanted to further discuss.

CONFIDENTIAL

D000793

CONFIDENTIAL

Avram Goldberg, MD
November 22, 2013
Page 9 of 11

CONFIDENTIAL



D000795

CONFIDENTIAL

D000800

CONFIDENTIAL

D000858

CONFIDENTIAL



D000862

CONFIDENTIAL

D000871

CONFIDENTIAL



D000875

CONFIDENTIAL

D000878

CONFIDENTIAL

D000879

CONFIDENTIAL

D000888

CONFIDENTIAL



D000892

CONFIDENTIAL



D000899

CONFIDENTIAL



D000905

**CONFIDENTIAL**

**From:** Rose, Claudia
**Sent:** Thursday, September 26, 2019 3:10 PM
**To:** Pacina, Kathleen
**Subject:** RE: CASE 00282382

Hi Kathleen,

Thank you. Let me know if you'd like me to review the response too.

Claudia

---

**From:** Pacina, Kathleen <Kathleen.Pacina@nyulangone.org>
**Sent:** Thursday, September 26, 2019 3:00 PM
**To:** Rose, Claudia <Claudia.Rose@nyulangone.org>
**Subject:** FW: CASE 00282382

Hi Claudia,

Sending this to you for review. Let me know if we should discuss.

Thanks,

Kathleen

---

**From:** Edelman, Sari <Sari.Edelman@nyulangone.org>
**Sent:** Wednesday, September 25, 2019 9:01 PM
**To:** Pacina, Kathleen <Kathleen.Pacina@nyulangone.org>
**Subject:** CASE 00282382

Good evening,

I am following up on our discussion from last week. Tonight our office manager David Kaplan requested to speak with me, and he apologized for Joe Antonik's behavior sta ng it was not appropriate request, and wanted to clear

This was ma er of inappropriate conduct in the workplace in mannerism with which I was treated, and I am not sure this discussion now with Joe's senior manager was even appropriate as the issue was raised with HR, and has

In addi on, he again raised request I was not in agreement with, and when stated such he said he would bring it to senior management of Joshua Smirnow, which again was done in manner to threaten any opinion I may have or professional opinion or contractual concerns. I consider this form of bullying in the workplace. I offered alternate solu on to terminate my hours in Hun ngton since the shared space they are demanding is based on my "part n me I consider an agreement of breach of my en re contract and am unwilling to risk my professional career and growth with NYU.

On comple ng my discussion with Joe he took on similar mannerisms of condescending tone, raising his voice to child like manner to placate my disagreement with his request. When I stated such, he proceeded to refer to me a pa ent care hours which I had been requested to halt for this unscheduled mee ng. Again, an a empt to corner me in conversa on to pressure me without allowing for more appropriate me frame and team to discuss a ma e conversa on, and had difficulty concentra ng on pa ent care. It took me some me to refocus in the examina on room to ensure I was providing appropriate opinions and decision making. This is my utmost concern, I need to t

As of female physician in the organiza on, I am disappointed that is 2019, approaching 2020 in a major hospital organiza on in New York, and I s ll have to contend with male chauvinism. While both Joe and David have agreed t present office space. It remains unclear to my why I am being discriminated against to accommodate another physician, par cularly a male physician who will be joining the prac ce, which is the stated reason I will be "pushed" today. I have worked with amazing men and women over the years, whom all have supported the growth and prac ce. This is the first me in all these years where I feel my growth as a physician is being deliberately infringe

I appreciate a prompt response.

Dr. Edelman

---

> **From:** "Pacina, Kathleen" <Kathleen.Pacina@nyulangone.org>
> **To:** "Rose, Claudia" <Claudia.Rose@nyulangone.org>
> **Date:** Thu, 26 Sep 2019 18:59:35 +0000
> **Subject:** FW: CASE 00282382
>
> Hi Claudia,
>
> Sending this to you for review. Let me know if we should discuss.
>
> Thanks,
>
> Kathleen

**From:** Edelman, Sari
**Sent:** Wednesday, September 25, 2019 9:01 PM
**To:** Pacina, Kathleen
**Subject:** CASE 00282382

Good evening,

I am following up on our discussion from last week. Tonight our office manager David Kaplan requested to speak with me, and he apologized for Joe Antonik's behavior sta ng it was not appropriate request, and wanted to clear

This was ma er of inappropriate conduct in the workplace in mannerism with which I was treated, and I am not sure this discussion now with Joe's senior manager was even appropriate as the issue was raised with HR, and has

In addi on, he again raised request I was not in agreement with, and when stated such he said he would bring it to senior management of Joshua Smirnow, which again was done in manner to threaten any opinion I may have or professional opinion or contractual concerns. I consider this form of bullying in the workplace. I offered alternate solu on to terminate my hours in Hun ngton since the shared space they are demanding is based on my "part n me I consider an agreement of breach of my en re contract and am unwilling to risk my professional career and growth with NYU.

On comple ng my discussion with Joe he took on similar mannerisms of condescending tone, raising his voice to child like manner to placate my disagreement with his request. When I stated such, he proceeded to refer to me a pa ent care hours which I had been requested to halt for this unscheduled mee ng. Again, an a empt to corner me in conversa on to pressure me without allowing for more appropriate me frame and team to discuss a ma e conversa on, and had difficulty concentra ng on pa ent care. It took me some me to refocus in the examina on room to ensure I was providing appropriate opinions and decision making. This is my utmost concern, I need to t

As of female physician in the organiza on, I am disappointed that is 2019, approaching 2020 in a major hospital organiza on in New York, and I s ll have to contend with male chauvinism. While both Joe and David have agreed t present office space. It remains unclear to my why I am being discriminated against to accommodate another physician, par cularly a male physician who will be joining the prac ce, which is the stated reason I will be "pushed" today. I have worked with amazing men and women over the years, whom all have supported the growth and prac ce. This is the first me in all these years where I feel my growth as a physician is being deliberately infringe

I appreciate a prompt response.

Dr. Edelman

---

> **From:** "Pacina, Kathleen" <Kathleen.Pacina@nyulangone.org>

CONFIDENTIAL

| | |
|---|---|
| **From:** | Edelman, Sari <Sari.Edelman@nyulangone.org> |
| **Sent:** | Monday, November 18, 2019 1:46 PM |
| **To:** | Pacina, Kathleen |
| **Subject:** | Re: CASE 00282382 |

I wanted to follow up as not heard response since message on 11/12. Thank you, Dr. Edelman

---

**From:** Pacina, Kathleen
**Sent:** Tuesday, November 5, 2019 6:47:41 PM
**To:** Edelman, Sari
**Subject:** RE: CASE 00282382

Hi Dr. Edelman,

I am confirming receipt of the below as I was out of office and returned today. I previously did not receive a response from email dated 10/8 (see attached) so my understanding was that the matter was closed. I will shared this with the ELR manager that now supports that FGP group and will get back to you regarding next steps.

Thanks,
Kathleen

**From:** Edelman, Sari
**Sent:** Friday, November 01, 2019 9:58 AM
**To:** Pacina, Kathleen
**Subject:** Re: CASE 00282382

Hi,

The harassment complaint was extensive detailed letter about treatment by manager using abusive and bullying behavior. While I spoke with Joshua Smirnow about the office space, I also was clear that the complaint was separate issue about treatment of females within workplace at NYU which is unacceptable moving into 2020. There was clearly implicit bias in how I was "managed" and spoken to in a manner clearly not appropriate by Joe Antonik and David Kaplan. Joshua Smirnow apologized for how they handled the situation to me directly in the phone conversation, as he was clearly aware situation was not managed properly. I am an educated female and I will not tolerate this treatment in my place of work. I do expect this to be addressed. Presently I continue to feel uncomfortable in my place of work. I need to know moving forward issues will be addressed in a professional environment without bias in order to continue practicing. Please let me know when and how this will be addressed.

As for the issue of space, this is not HR issue. Karen Oberlander and Miriam Ruiz are working with me to establish plan moving forward.

Dr. Edelman

---

**From:** Edelman, Sari
**Sent:** Wednesday, October 23, 2019 6:45 PM

1

D000995

CONFIDENTIAL

**To:** Pacina, Kathleen
**Subject:** Re: CASE 00282382

Hi

I wanted to follow up on CASE 00282382, complaint requesting investigation for workplace harassment. I have not heard any response from HR since October 8.
If I am sending these inquiries to incorrect person please let me know. I believe you are the HR contact person for this case.

Thank you,
Dr. Edelman

---

**From:** Pacina, Kathleen
**Sent:** Tuesday, October 8, 2019 10:55:43 AM
**To:** Edelman, Sari
**Subject:** RE: CASE 00282382

Hi Dr. Edelman,

I wanted to follow up with you regarding our last conversation. I understand that you met with Mr. Swirnow and he explained the rationale for office use one day week when you are not at Marcus Avenue. Please let me know if you would like to discuss further.

Thanks,
Kathleen

---

**From:** Edelman, Sari <Sari.Edelman@nyulangone.org>
**Sent:** Thursday, September 26, 2019 2:55 PM
**To:** Pacina, Kathleen <Kathleen.Pacina@nyulangone.org>
**Subject:** CASE 00282382

Hi

I wanted to follow up on email sent yesterday evening. Josh Smirnow and David Kaplan have requested phone conference call tomorrow at 1 pm. I would appreciate if you or an HR representative can be involved in this conversation.

Thank you,

Sari Edelman

D000996

CONFIDENTIAL

---

**From:** Edelman, Sari
**Sent:** Wednesday, October 23, 2019 6:45 PM
**To:** Pacina, Kathleen
**Subject:** Re: CASE 00282382

Hi

I wanted to follow up on CASE 00282382, complaint requesting investigation for workplace harassment. I have not heard any response from HR since October 8.
If I am sending these inquiries to incorrect person please let me know. I believe you are the HR contact person for this case.

Thank you,
Dr. Edelman

---

**From:** Pacina, Kathleen
**Sent:** Tuesday, October 8, 2019 10:55:43 AM
**To:** Edelman, Sari
**Subject:** RE: CASE 00282382

Hi Dr. Edelman,

I wanted to follow up with you regarding our last conversation. I understand that you met with Mr. Swirnow and he explained the rationale for office use one day week when you are not at Marcus Avenue. Please let me know if you would like to discuss further.

Thanks,
Kathleen

---

**From:** Edelman, Sari <Sari.Edelman@nyulangone.org>
**Sent:** Thursday, September 26, 2019 2:55 PM
**To:** Pacina, Kathleen <Kathleen.Pacina@nyulangone.org>
**Subject:** CASE 00282382

Hi

I wanted to follow up on email sent yesterday evening. Josh Smirnow and David Kaplan have requested phone conference call tomorrow at 1 pm. I would appreciate if you or an HR representative can be involved in this conversation.

Thank you,

Sari Edelman

2

D000998

CONFIDENTIAL

---

**From:** Edelman, Sari <Sari.Edelman@nyulangone.org>
**Sent:** Friday, November 1, 2019 9:58 AM
**To:** Pacina, Kathleen
**Subject:** Re: CASE 00282382

Hi,

The harassment complaint was extensive detailed letter about treatment by manager using abusive and bullying behavior. While I spoke with Joshua Smirnow about the office space, I also was clear that the complaint was separate issue about treatment of females within workplace at NYU which is unacceptable moving into 2020. There was clearly implicit bias in how I was "managed" and spoken to in a manner clearly not appropriate by Joe Antonik and David Kaplan. Joshua Smirnow apologized for how they handled the situation to me directly in the phone conversation, as he was clearly aware situation was not managed properly. I am an educated female and I will not tolerate this treatment in my place of work. I do expect this to be addressed. Presently I continue to feel uncomfortable in my place of work. I need to know moving forward issues will be addressed in a professional environment without bias in order to continue practicing. Please let me know when and how this will be addressed.

As for the issue of space, this is not HR issue. Karen Oberlander and Miriam Ruiz are working with me to establish plan moving forward.

Dr. Edelman

---

**From:** Edelman, Sari
**Sent:** Wednesday, October 23, 2019 6:45 PM
**To:** Pacina, Kathleen
**Subject:** Re: CASE 00282382
Hi

I wanted to follow up on CASE 00282382, complaint requesting investigation for workplace harassment. I have not heard any response from HR since October 8.
If I am sending these inquiries to incorrect person please let me know. I believe you are the HR contact person for this case.

Thank you,
Dr. Edelman

---

**From:** Pacina, Kathleen
**Sent:** Tuesday, October 8, 2019 10:55:43 AM
**To:** Edelman, Sari
**Subject:** RE: CASE 00282382
Hi Dr. Edelman,

D000999

CONFIDENTIAL

I am following up on our discussion from last week. Tonight our office manager David Kaplan requested to speak with me, and he apologized for Joe Antonik's behavior stating it was not appropriate request, and wanted to clear the air on any miscommunication.

This was matter of inappropriate conduct in the workplace in mannerism with which I was treated, and I am not sure this discussion now with Joe's senior manager was even appropriate as the issue was raised with HR, and has not been addressed as HR matter.

In addition, he again raised request I was not in agreement with, and when stated such he said he would bring it to senior management of Joshua Smirnow, which again was done in manner to threaten any opinion I may have on the matter. There was no discussion as to my concerns of the request, it was presented as matter of fact with no regard for my professional opinion or contractual concerns. I consider this form of bullying in the workplace. I offered alternate solution to terminate my hours in Huntington since the shared space they are demanding is based on my "part time" status in New Hyde Park. I stated that any request in agreement to acknowledge part-time employment when I was indeed full time I consider an agreement of breech of my entire contract and am unwilling to risk my professional career and growth with NYU.

On completing my discussion with Joe he took on similar mannerisms of condescending tone, raising his voice to child like manner to placate my disagreement with his request. When I stated such, he proceeded to refer to me as "Doctor" in an attempt to correct himself, which was further demeaning. I terminated the meeting at this time and returned to patient care hours which I had been requested to halt for this unscheduled meeting. Again, an attempt to corner me in conversation to pressure me without allowing for more appropriate time frame and team to discuss a matter which demands higher level solutions. On returning to seeing my patients I was distracted and remained upset about the conversation, and had difficulty concentrating on patient care. It took me some time to refocus in the examination room to ensure I was providing appropriate opinions and decision making. This is my utmost concern, I need to be able to work in a non-hostile environment.

As of female physician in the organization, I am disappointed that is 2019, approaching 2020 in a major hospital organization in New York, and I still have to contend with male chauvinism. While both Joe and David have agreed to "allow" me to see patients on Fridays, David again stated that space in which I would be able to do so would likely not be in my present office space. It remains unclear to my why I am being discriminated against to accommodate another physician, particularly a male physician who will be joining the practice, which is the stated reason I will be "pushed" out to another space. I have been here for five years and was one of first physicians to help build FGP to this incredible place it is today. I have worked with amazing men and women over the years, whom all have supported the my growth and practice. This is the first time in all these years where I feel my growth as a physician is being deliberately infringed on by senior male managers.

I appreciate a prompt response.

Dr. Edelman

D001009

CONFIDENTIAL

**From:**     Edelman, Sari <Sari.Edelman@nyulangone.org>
**Sent:**     Wednesday, September 25, 2019 9:01 PM
**To:**       Pacina, Kathleen
**Subject:**  CASE 00282382

Good evening,

I am following up on our discussion from last week. Tonight our office manager David Kaplan requested to speak with me, and he apologized for Joe Antonik's behavior stating it was not appropriate request, and wanted to clear the air on any miscommunication.

This was matter of inappropriate conduct in the workplace in mannerism with which I was treated, and I am not sure this discussion now with Joe's senior manager was even appropriate as the issue was raised with HR, and has not been addressed as HR matter.

In addition, he again raised request I was not in agreement with, and when stated such he said he would bring it to senior management of Joshua Smirnow, which again was done in manner to threaten any opinion I may have on the matter. There was no discussion as to my concerns of the request, it was presented as matter of fact with no regard for my professional opinion or contractual concerns. I consider this form of bullying in the workplace. I offered alternate solution to terminate my hours in Huntington since the shared space they are demanding is based on my "part time" status in New Hyde Park. I stated that any request in agreement to acknowledge part-time employment when I was indeed full time I consider an agreement of breech of my entire contract and am unwilling to risk my professional career and growth with NYU.

On completing my discussion with Joe he took on similar mannerisms of condescending tone, raising his voice to child like manner to placate my disagreement with his request. When I stated such, he proceeded to refer to me as "Doctor" in an attempt to correct himself, which was further demeaning. I terminated the meeting at this time and returned to patient care hours which I had been requested to halt for this unscheduled meeting. Again, an attempt to corner me in conversation to pressure me without allowing for more appropriate time frame and team to discuss a matter which demands higher level solutions. On returning to seeing my patients I was distracted and remained upset about the conversation, and had difficulty concentrating on patient care. It took me some time to refocus in the examination room to ensure I was providing appropriate opinions and decision making. This is my utmost concern, I need to be able to work in a non-hostile environment.

As of female physician in the organization, I am disappointed that is 2019, approaching 2020 in a major hospital organization in New York, and I still have to contend with male chauvinism. While both Joe and David have agreed to "allow" me to see patients on Fridays, David again stated that space in which I would be able to do so would likely not be in my present office space. It remains unclear to my why I am being discriminated against to accommodate another physician, particularly a male physician who will be joining the practice, which is the stated reason I will be "pushed" out to another space. I have been here for five years and was one of first physicians to help build FGP to this incredible place it is today. I have worked with amazing men and women over the years, whom all have supported the my growth and practice. This is the first time in all these years where I feel my growth as a physician is being deliberately infringed on by senior male managers.

I appreciate a prompt response.

1

CONFIDENTIAL



CONFIDENTIAL



D001101

CONFIDENTIAL



D001102

D001192



**From:** Antonik, Joseph <Joseph.Antonik@nyulangone.org>
**Sent:** Friday, November 06, 2020 4:19 PM
**To:** Porges, Andrew <Andrew.Porges@nyulangone.org>
**Cc:** Ruiz, Miriam <Miriam.Ruiz@nyulangone.org>; Fesolowich, Patricia <Patricia.Fesolowich@nyulangone.org>
**Subject:** RE: Edelman Issues


Here are notes I added to the summary

Dr. Edelman does not read her Outlook emails in a timely manner

Dr. Edelman does not close her encounters in a timely manner

Dr. Edelman did not report to the office for several months during Covid,   from March 23 through  June 10, and returned intermittently until July 7.  She is still maintaing a shorter schedule to minimize her time in the office.

11.13.19 Dr. Edelman berrated Miriam regarding aftger Miriam asked her basic questions about her schedule

6.15.20  Patient complained that a video visit was conducted in an unprofessional manner, Edelman's daughter interrupted the visit twice.

9.8.20 Dr. Edelman created an innappropriate chart note directed at our Shields Pharmacy Liaison stating that she does not communicate through Outlook email,  and that missed messages may lead to liability.  This messaeg haad no place in a patient's chart.

9.9.20 Dr. Edelman was 90 minutes late to ther office, did not inform the manager in a timely manner – 6 patients were waiting, this is a frequent compliant from her patients that Dr. Edelman runs late.

9.15.20 Dr. Edelman complained that the MA did not review patient's medications, the MA did on the patient in questions. D.r Edelman frequently accuses staff of not dfoign work that was in fact done, creating unnecessary efforts and tension.

9.16.20 Pt. MRN ███████ complained that Dr. Edelman frequently runs late, and switched to another provider

10.6.20  Dr. Edelman demands that her MA takes verbal orders, and does not follow up with placing the order in EPIC

1

D001193

10.19.20 Dr. Edelman complaiend to Miriam that during the Rheum Educational Conference, the physicians were discussing politics making her uncomfortable.  Witnesses to the conversation stated that there was nothing innappropriate being discussed, and this is an example of Dr. Edelman making an unfounded complaint against her colleagues.

10.20  Patient was seen in the office by a different provider an hour before her visit with Dr. Edelman; orders were entered by Rosemary Fine and had blood drawn, When the patient saw Dr. Edelman, the physician eneterd duplicate blood orders; patient was upset because the patient received duplicate bloods. Had Dr. Edelman reviewed the chart, she woudlhave seen the results.

10.28.20 Dr. Edelman complained to Miriam that a visco order was never processed, whern in fact she never palced the order when she said she did.

10.28.20 During a Webex conference, Miriam asked Dr. Edelman to mute her phone, Dr. Edelman lashed out at Miriam tellling her to "dont touch me, don't come near me" this was heard by all attendees and staff on the floor.

---

**From:** Antonik, Joseph
**Sent:** Friday, November 6, 2020 2:20 PM
**To:** Porges, Andrew <Andrew.Porges@nyulangone.org>
**Cc:** Ruiz, Miriam <Miriam.Ruiz@nyulangone.org>; Fesolowich, Patricia <Patricia.Fesolowich@nyulangone.org>
**Subject:** Edelman Issues

Hi Andy/Trish/Miriam –

David requested all information on Edleman to be sent to him today. We need a clear, convincing summary with examples sent.

Here is what I have from my notes. Ideally we want recent examples of innappropriate behavior and communicates between Edelman, staff and patients.

Issues with Dr. Edelman:

Dr. Edelman is routinely abusive to staff. She has created a negative work environment  in suite 306

Dr. Edelman has a history of writing inappropriate notes in patient's charts

This note was placed in a patient's chart  on 9/8/20