**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. SARI EDELMAN,<br><br>                          Plaintiff,<br><br>          – against –<br><br>NYU LANGONE HEALTH SYSTEM, NYU<br>LANGONE HOSPITALS, NYU LANGONE<br>MEDICAL CENTER, NYU LANGONE NASSAU<br>RHEUMATOLOGY, NYU SCHOOL OF MEDICINE,<br>NYU GROSSMAN SCHOOL OF MEDICINE, NYU<br>HOSPITALS CENTER, ANDREW T. RUBIN,<br>DAVID KAPLAN, JOSEPH ANTONIK, and<br>JOSHUA SWIRNOW,<br><br>                          Defendants. | Case No.: 1:21-cv-502 (LGS)(GWG)<br><br>**JOINT INITIAL**<br>**PRETRIAL ORDER** |

       Plaintiff Sari Edelman ("Plaintiff") and Defendants NYU Langone Health System, NYU

Langone Hospitals, and NYU Grossman School of Medicine, a Division of New York University,

f/k/a "NYU Hospitals Center" s/h/a "NYU Langone Medical Center," "NYU Langone Nassau

Rheumatology," "NYU School of Medicine," "NYU Grossman School of Medicine," and "NYU

Hospitals Center;" and Andrew T. Rubin, David Kaplan, Joseph Antonik, and Joshua Swirnow

(collectively, "Defendants"), through their undersigned counsel of record, having conferred among

themselves pursuant to Rule 16 of the Federal Rules of Civil Procedure, the following statements,

directions, and agreements are adopted as the Final Pretrial Order herein.

      **a)  The full caption of the action**.

*Dr. Sari Edelman v. NYU Langone Health System, NYU Langone Hospitals, NYU Langone*
*Medical Center, NYU Langone Nassau Rheumatology, NYU School of Medicine, NYU Grossman*
*School of Medicine, NYU Hospitals Center, Andrew T. Rubin, David Kaplan, Joseph Antonik, and*
*Joshua Swirnow* (Case No. 21-CV-502 (LGS)(GWG)).

**b) The names, law firms, addresses, telephone numbers and email addresses of trial counsel.**

*Attorneys for Plaintiff*
MILMAN LABUDA LAW GROUP PLLC
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042

Joseph M. Labuda
T: (516) 303-1380
joe@mllaborlaw.com

Emanuel Kataev
T: (516) 303-1395
emanuel@mllaborlaw.com

*Attorneys for Defendants*
TARTER KRINSKY & DROGIN LLP
1350 Broadway, 11th Floor
New York, NY 10018

Richard L. Steer
T: (212) 216-8070
rsteer@tarterkrinsky.com

Justin Chu
T: (212) 216-1160
jchu@tarterkrinsky.com

Ingrid J. Cardona
T: (212) 216-8032
icardona@tarterkrinsky.com

**c) A brief statement (by each party to the extent their positions differ) of the factual and legal basis for subject matter jurisdiction, including citations to statutes and relevant facts as to citizenship and amount in controversy.**

The parties respectfully submit that federal questions serve as the basis for subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because claims are being raised under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*  The parties further respectfully submit that this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 since Plaintiff's state and local discrimination claims allegedly arise out of the same common nucleus of operative facts as set forth in her Title VII claims.  Those state and local claims fall under the Equal Pay Act ("NYS EPA") under New York Labor Law § 194, the New York State Human Rights Law ("NYSHRL") under New York Executive Law § 296(1)(a), and the New York City Human Rights Law ("NYCHRL") under New York City Administrative Code § 8-107(1)(a).

002528\5\170142943.v1

**d)  A brief summary (by each party to the extent their positions differ) of the claims and defenses that remain to be tried, including citations to any relevant statute. A brief summary of claims and defenses previously asserted that are not to be tried. The summaries shall not cite any evidentiary matter and shall not be argumentative.**

*Plaintiff*

The claims to be tried by Plaintiff consist of her claims under: (i) the EPA and NYSEPA pursuant to 29 U.S.C. § 206(d) and NYLL § 194, respectively, against all corporate Defendants, Swirnow, and Rubin for unequal pay; (ii)  Title VII pursuant to 42 U.S.C. § 2000e against NYU for retaliation; (iii) the NYSHRL and NYCHRL pursuant to New York Executive Law § 296(1)(a) and  New York City Administrative Code § 8-107(1)(a), respectively, against all Defendants for retaliation; and (iv) the NYCHRL pursuant to New York City Administrative Code § 8-107(1)(a) against all Defendants for discrimination based on allegedly sexist remarks.

*Defendants*

Defendants have raised the following defenses to Plaintiff's claims:

1. **Equal pay claims under the Equal Pay Act, 29 U.S.C. § 206(d), New York State Equal Pay Act, and New York City Human Rights Law**

Dr.'s Goldberg, Porges and Modi were not proper comparators with Plaintiff for equal pay purposes.

Dr. Porges had more experience and a more lucrative private practice than Plaintiff when each was hired, and Dr. Porges provided greater value to NYU than Plaintiff.

Dr. Porges' clinical compensation included research work on clinical trials as part of his compensation.  Plaintiff's clinical compensation did not include such work, which affected Dr. Porges's initial salary.

Dr. Goldberg was the first Rheumatologist hired by NYU for ambulatory care on Long Island and had more value to NYU than Plaintiff, because he was an established medical professor in the market NYU was seeking to penetrate.  Dr. Goldberg had more value to NYU than Plaintiff.

Like Plaintiff, whose initial salary was based on what she paid herself in her own private practice business, Drs. Porges, Modi's, and Goldberg's initial salaries were negotiated based on what they made in previous positions which have not been shown to be discriminatory with regard to women.

Differences in the contracts and duties of Dr.'s Goldberg, Porges and Modi are factors other than sex that resulted in any alleged pay difference with Plaintiff.

Production targets for Plaintiff, Dr.'s Goldberg, Porges and Modi were set independent of salaries using the work Relative Value Units ("wRVUs") production from each of their previous positions. Thus, a neutral practice per physician was used in setting salaries and production targets.

Dr. Modi negotiated his initial salary at the time Plaintiff negotiated her renewal.  Dr. Modi's initial salary was based on his compensation three years after Plaintiff initial compensation was set.  Without a raise in compensation, NYU could not have attracted Drs. Goldberg, Porges, or Modi.

Dr. Modi, who was the Medical Director of a Regional Health System on Long Island, had 6,100 wRVU's of production at hire while Plaintiff had produced only 4,966 wRVU's in her private practice.  During her next three years at NYU, Plaintiff's production never exceeded approximately 5,300 wRVUs. Dr. Modi had more value to NYU than Plaintiff.

Plaintiff and her alleged comparators did not perform equal work.

Plaintiff and her alleged comparators did not perform similar work that required equal pay.

WRVU's represent reimbursement values for Current Procedural Terminology ("CPT") codes with each physician generating separate CPT codes in their own specific practices.

There is no basis in the record, or any requirement, for use of the monetary unit per wRVU method of comparing salaries that Plaintiff uses, which NYU does not use to compare or calculate pay or performance.

Factors including difference in performance, prestige, value, experience, previous salary, lucrative private practices, the medical services provided, and previous WRVU's are legitimate factors other than sex resulting in any compensation differences asserted by Plaintiff.

Any alleged equal pay violation with regard to Plaintiff was not willful.

No record evidence demonstrates that NYU implemented its salary matching practice to result in lower pay for women rather than for commercial reasons.  There is no evidence that Defendants NYU, Rubin, and Swirnow had discriminatory intent when negotiating Plaintiff's contract.

Prior salary is a legitimate factor other than sex under the Equal Pay Act.

Prior salary was a legitimate factor other than sex under the NY state and city Human Rights laws at the time Plaintiff was employed by NYU.

> **2. Discrimination and Retaliation Claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, New York State Human Rights, NY Executive  Law  § 296(1)(a), and New York City Human Rights Law, New York City Administrative Code § 8-107(1)(a)**

None of the individual defendants discriminated or retaliated against Plaintiff.

The discrimination statutes in issue do not create a general civility code.

Plaintiff was insubordinate in refusing a reasonable request to have another physician use the empty office assigned to her when she was working elsewhere.

Male physicians "shared" their empty offices with other physicians on days they worked elsewhere.

Other than Plaintiff's speculation and assumptions, there is no evidence that Joseph Antonik's statement or "gestures" were based on sex or gender.

There is no evidence that David Kaplan discriminated against Plaintiff or was uncivil to her, let alone discriminatory, when he advised her that the office assigned to her would be used by another physician when she worked elsewhere.  It was not sex/gender discrimination for David Kaplan to allegedly call Plaintiff "Doctor" or to make hand gestures when he allegedly tried to calm her when she got upset over being told she must allow another physician to use the empty office assigned to her when she was not there.

There is no evidence that David Kaplan treated Plaintiff adversely because she was a woman by making a negative sex-based comment because she was a woman.

Documentary evidence of patient complaints and inability to work cooperatively by Plaintiff with co-workers existed before the alleged incident with Joseph Antonik, and she was counselled to try to get along better with her peers and staff.

NYU's HR representative to whom Plaintiff complained was not made aware that Plaintiff was complaining about discrimination or retaliation. While Plaintiff used buzz words of discrimination/male chauvinism, she provided no facts to be investigated regarding such claim.

Dr. Porges had dealt with clinical issues concerning male physicians before he dealt with the clinical issues involving Plaintiff's practice.

When Plaintiff alleged she was retaliated against, she failed to reach out to NYU's HR representative who had reached out to her.

Miriam Ruiz, a nonparty, office manager for the office in which Plaintiff worked, testified she maintained records of patient complaints and performance issues before the incident with Joseph Antonik occurred.

Dr. Porges's and Dr. Goldberg's clinical conclusions in reviewing Plaintiff's clinical work was that Plaintiff, although not dangerous, did not meet NYU clinical standards for Rheumatology practice in light of her excessive testing, and could not be remediated.

Plaintiff's contract was not renewed, which resulted in her being given six months' notice. Plaintiff left her position with virtually no notice after five months.

Nothing required NYU to renew the contract of a physician at expiration of their contract, especially one who could not get along with her coworkers, and whose clinical practices were inconsistent with NYU's standards, and there was documentation that she was unresponsive to certain patients.

There is no evidence of pretext, i.e., that NYU's reasons for Plaintiff's nonrenewal were false and that discrimination or retaliation were a reason for her nonrenewal.

Retaliation was not a but for cause for Plaintiff's non-renewal of her contract.

Any allegation that Plaintiff lost her patients by virtue of the non-renewal of her contract arose from Plaintiff's failure to search for a position in New York City, Westchester, and other Metro New York areas and constitutes a failure to mitigate damages.

Plaintiff's damage claims are barred by her turning down an offer of employment in the New York Metropolitan area.

Other defenses to be added subject to motion *in limine*.

**e) The number of trial days needed and whether the case is to be tried with or without a jury.**

It is anticipated that 3-7 trial days are needed, and the case is to be tried with a jury.

**f) A statement whether all parties have consented to trial by a magistrate judge, without identifying which parties do or do not consent.**

The parties have not consented to trial by a magistrate judge.

**A list of trial witnesses each party genuinely intends to call in its case in chief, and a separate list "identifying those whom the party may call if the need arises" (Fed. R. Civ. P. 26(a)(3)), including a short description and estimate of the length of each witness's testimony.**

*Plaintiff*

1. **Witnesses to be called in Plaintiff's case in chief:**

    a. Dr. Sari Edelman:  will testify in person.
        i. Plaintiff will testify concerning her background, qualifications, experience in her private practice, decision to apply for employment with Defendants, negotiations with Defendants, working experience at NYU, renewal negotiations with Defendants, the discrimination and male chauvinism she experienced throughout her tenure at NYU, the discrimination and harassment she faced at the hands of Antonik and Kaplan due to her unwillingness to share her office space, the complaint she made to Human Resources about Antonik and Kaplan, the lack of any meaningful response or investigation by Human Resources despite

repeatedly clarifying the nature of her complaint, the plot by Antonik and Kaplan to retaliate against her for having the temerity to file a complaint against Antonik and Kaplan, the attempt to cover the plot up by engaging Miriam Ruiz, Dr. Porges, Swirnow, and Rubin to conceal Antonik's involvement, Plaintiff's qualifications, skills, and experience in comparison to Drs. Porges, Goldberg, and Modi, the emotional distress Plaintiff suffered, the compensatory and incidental or consequential damages Plaintiff suffered, how Plaintiff was forced to move to Florida due to Defendants' unlawful conduct and the way it upended hers and her family's life.

 ii. Estimated length of testimony: ten (10) hours.

 b. Andrew T. Rubin: will testify in person.

  i. Andrew Rubin will testify concerning his background; operational responsibility for oversight of NYU's Faculty Group Practices ("FGP"); his role in determining compensation for doctors. NYU's use of factors in setting initial compensation and compensation for contract renewals; the similarities and differences in work performed by various physicians; preparation of business plans for incoming physicians in private practice and the basis for such plans, as well as "business plans" for physicians who did not run their own practices; compensation and production targets; the measurement of physician production in terms of work Relative Value Units ("wRVUs"); the role of CPT codes in billing and compensation and their relationship to work performed; NYU's incentive compensation system; the value Plaintiff and her alleged comparators brought to NYU; facts surrounding the hiring of Plaintiff's comparators; Plaintiff's hiring and related negotiations; Plaintiff's alleged performance issues; the alleged counseling of Plaintiff; facts surrounding the non-renewal of Plaintiff's employment agreement; the roles of Joseph Antonik and David Kaplan and interactions with them, if any; attempts to assist Plaintiff once her non-renewal was contemplated and put into effect; the fact that female doctors earn less than male doctors.

  ii. Estimated length of testimony: five (5) hours.

 c. Joseph Antonik: will testify in person.

  i. Joseph Antonik will testify concerning his background and experience, oversight of the day-to-day operations of the practices at the main location where Plaintiff worked; his conversation with Plaintiff concerning office space and her complaint to Human Resources against Joseph Antonik and David Kaplan; gathering documentation

concerning complaints about Plaintiff and her interactions with staff and peers at Marcus Avenue; interactions with Miriam Ruiz, and Dr. Porges; his role in Plaintiff's non-renewal and attempt to cover up his role.

    ii.  Estimated length of testimony: five (5) hours.

d.  Dr. Andrew J. Porges, M.D.: will testify in person.

    i.  Dr. Porges will testify concerning his background and experience; negotiation of salary and assignment of production targets by NYU including compensation and production in private practice; his renewal agreements; his research duties, his compensation; appointment and duties as Medical Director during and prior to his official appointment; his observations of Plaintiff's clinical practices; whether Plaintiff's practices could reasonably be remediated; his discussions concerning Plaintiff's clinical practices; the fact he has a lot to lose if he separates from employment with NYU; his professional obligation to report any risk to patients.

    ii.  Estimated length of testimony: five (5) hours.

e.  Joshua Swirnow: will testify in person.

    i.  Joshua Swirnow is anticipated to testify concerning his background; operational responsibility for oversight of NYU Langone's Faculty Group Practices ("FGP"); interactions with David Kaplan and Joseph Antonik, if any; the facts underlying the establishment and use of NYU's compensation system used in the FGP; NYU's use of factors in setting initial compensation and compensation for contract renewals; the similarities and differences in work performed by various physicians; preparation of business plans for incoming physicians and the basis for such plans; negotiated compensation and production targets; the measurement of physician production in terms of work relative value units ("wRVUs"); the role of CPT codes in billing and compensation and relationship to work performed; NYU's incentive compensation system; the value Plaintiff and her alleged comparators brought to NYU; facts surrounding the hiring of Plaintiff's comparators; Plaintiff's hiring and related negotiations; Plaintiff's alleged performance issues; facts surrounding the non-renewal of Plaintiff's employment agreement; his role in negotiating the terms and conditions of employment of new ambulatory network physicians including Plaintiff; business plans for incoming physicians and how they are generated, as well as "business plans" for physicians who did not run their own practices; and the bases for setting salaries and wRVU targets both upon hire and at the time of any renewal; Plaintiff's alleged performance issues and related counselling; the non-renewal of Plaintiff's employment agreement. The

facts underlying the establishment and use of NYU's compensation system used in the FGP.

    ii.  Estimated length of testimony: five (5) hours.

f.  David Kaplan: will testify in person.

    i.  David Kaplan will testify with regard to his background, experience, and duties, interactions with Joseph Antonik, HR, and Plaintiff; the conversation with Plaintiff concerning her complaint against Antonik; his role concerning requesting documentation regarding complaints about Plaintiff and her interactions with staff and peers at Marcus Avenue; interactions with Miriam Ruiz, Joseph Antonik, and Dr. Porges.

    ii.  Estimated length of testimony: four (4) hours.

g.  Custodian of Epic Systems Corporation: will testify in person.

    i.  This witness will authenticate the business records of Epic Systems Corporation used by NYU in the normal course of its business.

    ii.  Estimated length of testimony: twenty (20) minutes.

    iii.  Defendants object to Plaintiff calling this witness because this witness was not disclosed in Plaintiff's Rule 26 disclosures, was not identified at any point during discovery, this witness was not previously deposed, and Defendants are unable to determine the substance of this witness's testimony based on the description Plaintiff has provided above.

Plaintiff reserves her right to supplement this list and call any witnesses listed by Defendants for her case-in-chief.

2. **Witnesses Plaintiff may call if the need arises:**

a.  Miriam Ruiz:  will testify in person.

    i.  Miriam Ruiz will testify concerning her background experience and duties at NYU; her resignation from NYU; her interactions with Joseph Antonik, her interactions with Dr. Porges; alleged complaints about Plaintiff; maintenance of records of issues/complaints about physicians, and derivation of same; gathering of information about Plaintiff; lack of input with regard to compensation and employment of physicians.

        ii.  Estimated length of testimony: five (5) hours.

b.  Dr. Kavini Mehta: will testify in person.

        i.  Dr. Mehta will testify concerning her private practice with Plaintiff; reasons for leaving private practice; salary, loans, and production in private practice; renewal of her agreement with NYU; negotiations with Joshua Swirnow concerning her and Plaintiff's initial contract with NYU; Plaintiff and her initial meeting with Andrew Rubin and Joshua Swirnow; the great disparity between her and Plaintiff's pay juxtaposed against male comparators.

        ii.  Estimated length of testimony: three (3) hours.

c.  Kathleen Pacina: will testify in person.

        i.  Kathleen Pacina will testify concerning her background, experience and duties; her lack of knowledge of basic concepts related to her duties; receipt and documentation of Plaintiff's complaint; the substance of Plaintiff's complaint; her investigation into Plaintiff's complaint; her alleged lack of understanding concerning the nature of Plaintiff's complaint; conclusion of her investigation into Plaintiff's complaint; communications with Tisa Hall and with Claudia Rose.

        ii.  Estimated length of testimony: three (3) hours.

d.  Dr. Anang Modi, M.D.

        i.  Dr. Modi will testify concerning his background experience, duties, and production at his previous position and at NYU; his recruitment; negotiation of salary and production targets, including renewals; facts concerning his decision to join NYU.

        ii.  Estimated length of testimony: four (4) hours.

e.  Dr. Avram Z. Goldberg, M.D.

        i.  Dr. Goldberg will testify concerning his background experience, duties, and production at his previous position and at NYU; his recruitment; negotiation of salary and production targets, including renewals; facts concerning his decision to join NYU; opportunities afforded to him at NYU; his recruitment of Plaintiff; his investigation into Plaintiff's performance; communications with Andrew Rubin and Joshua Swirnow; events leading up to Plaintiff's nonrenewal; that Plaintiff, although not dangerous, did not meet NYU's standards of clinical care; his professional obligation to report any risk to patients.

ii. Estimated length of testimony: five (5) hours.

Plaintiff reserves the right to supplement this list and/or call any of the above listed witnesses as rebuttal or impeachment witnesses, and to call other or additional rebuttal or impeachment witnesses as dictated by the testimony elicited at trial.

_Defendants_

1. **Witnesses to be called in Defendants' case in chief**:

   a. Andrew T. Rubin, Senior Vice President of Clinical Affairs and Ambulatory Care at NYU Langone Health

      i. Andrew Rubin will testify concerning his background; operational responsibility for oversight of NYU's Faculty Group Practices ("FGP"); the facts underlying the establishment and use of NYU's compensation system used in the FGP.  NYU's use of neutral non-sex based factors in setting initial compensation and compensation for contract renewals; the differences in work performed by various physicians; preparation of business plans for incoming physicians and the basis for such plans; compensation and production targets; the measurement of physician production in terms of work Relative Value Units ("wRVUs"); the role of CPT codes in billing and compensation and their relationship to work performed; the lack of any correlation between the setting of salaries and the amount wRVUs to be generated; NYU's incentive compensation system; the value Plaintiff and her alleged comparators brought to NYU; facts surrounding the hiring of Plaintiff's alleged comparators; Plaintiff's hiring and related negotiations; Plaintiff's performance issues; the counseling of Plaintiff; facts surrounding the non-renewal of Plaintiff's employment agreement; the roles of Joseph Antonik and David Kaplan and interactions with them, if any; attempts to assist Plaintiff once her non-renewal was contemplated and put into effect; that any alleged equal pay violation was not willful; that defendants did not recklessly disregard Plaintiff's rights; that defendants' practices for renewal compensation were not intentionally discriminatory; that defendants did not discriminate or retaliate against Plaintiff; that Plaintiff was unreasonable and insubordinate.

      ii. Estimate of length of testimony:  5 hours

   b. Joshua B. Swirnow, Vice President of Ambulatory Care and Business Strategy at NYU Langone Health

i.   Joshua Swirnow is anticipated to testify concerning his background; operational responsibility for oversight of NYU Langone's Faculty Group Practices ("FGP"); interactions with David Kaplan and Joseph Antonik, if any; the facts underlying the establishment and use of NYU's compensation system used in the FGP; NYU's use of neutral non-sex based factors in setting initial compensation and compensation for contract renewals; the differences in work performed by various physicians; preparation of business plans for incoming physicians and the basis for such plans; negotiated compensation and production targets; the measurement of physician production in terms of work relative value units ("wRVUs"); the role of CPT codes in billing and compensation and relationship to work performed; the lack of any correlation between the setting of salaries and the amount wRVUs to be generated; NYU's incentive compensation system; the value Plaintiff and her alleged comparators brought to NYU; facts surrounding the hiring of Plaintiff's alleged comparators; Plaintiff's hiring and related negotiations; Plaintiff's performance issues; facts surrounding the non-renewal of Plaintiff's employment agreement; that any alleged equal pay violation was not willful; that defendants did not act reckless disregard of Plaintiff's rights, that defendants' practices for renewal compensation was not intentionally discriminatory; his role in negotiating the terms and conditions of employment of new ambulatory network physicians including Plaintiff; business plans for incoming physicians and how they are generated; and the independent bases for setting salaries and wRVU targets both upon hire and at the time of any renewal; Plaintiff's performance issues and related counselling; the non-renewal of Plaintiff's employment agreement.  The facts underlying the establishment and use of NYU's compensation system used in the FGP. NYU's use of neutral non-sex based factors in setting compensation and contract renewals; the differences in work performed as demonstrated by CPT codes and WRVU's; that any alleged equal pay violation was not willful; that defendants did not recklessly disregard Plaintiff's rights; that defendants did not discriminate or retaliate against Plaintiff; that Plaintiff did not have exclusive use of the office assigned to her; that Plaintiff was unreasonable and insubordinate.

ii.  Estimate of length of testimony: 5 hours

c.   David Kaplan, Senior Director, Ambulatory Operations, at NYU Langone Health

i.   David Kaplan will testify with regard to his background, experience, and duties, interactions with Joseph Antonik, HR, and Plaintiff; that he had no role in setting physician compensation; use of physicians' offices assigned to other physicians due to lack of space; plans for new physicians needing offices at Marcus Avenue. The conversation with

Plaintiff concerning use of her empty office; Plaintiff did not have exclusive use of the office assigned to her; that he had no role or influence in HR investigation into Plaintiff's complaint; Plaintiff's decision to transition her patients from HMG to Marcus Avenue; his role concerning requesting documentation regarding complaints about Plaintiff and her interactions with staff and peers at Marcus Avenue; interactions with Miriam Ruiz, and Dr. Porges; David Kaplan's lack of any decision making role regarding Plaintiff's compensation, hire, continued employment or the non-renewal of her contract; that defendants did not discriminate or retaliate against Plaintiff and that he did not act in reckless disregard of Plaintiff's rights.

    ii.   Estimate of length of testimony:  4 hours

d.  Joseph Antonik, Site Director of NYU Langone Health's Ambulatory Care site at Marcus Avenue

    i.   Joseph Antonik will  testify concerning his background and experience, oversight of the day-to-day operations of the practices at the main location where Plaintiff worked; the assignment of office space and coordination of use of same in the Marcus Avenue office; Plaintiff's in-office schedule; the "sharing of offices" by male physicians on days their offices were empty; Plaintiff's refusal to permit another physician to use her empty office on days in which she was not in the office; his conversation with Plaintiff concerning use of her office when not there; Plaintiff's unreasonable position and insubordinate; that his actions and statements when meeting with Plaintiff about "sharing" her office were not sex-based; that Plaintiff did not have exclusive use of her office; the lack of space at Marcus Avenue; interactions with Miriam Ruiz and others at Marcus Avenue; that he had no role in compensation of physicians; gathering documentation concerning complaints about Plaintiff and her interactions with staff and peers at Marcus Avenue; interactions with Miriam Ruiz, and Dr. Porges; his lack of a role in any decision making regarding renewal or non-renewal of physician employment agreements including Plaintiff's; that he did not have a role or influence with regard to any decision or action taken by Human Resources to address Plaintiff's complaints; that defendants did not discriminate or retaliate against Plaintiff; that he did not act in reckless disregard of Plaintiff's rights.

    ii.   Estimate of length of testimony:  5 hours

e.  Andrew J. Porges, M.D., Medical Director of NYU Langone Ambulatory Care – Lake Success and a Clinical Assistant Professor in the Department of Medicine at NYU Grossman School of Medicine

i. Dr. Porges will testify concerning his background and experience; his private practices; his recruitment; negotiation of salary and assignment of production targets by NYU including compensation and production in private practice; his renewal agreements; the revenues generated in his private practice, size, staffing and duration of such practice; his private practice income, and research duties, his compensation; appointment and duties as Medical Director during and prior to his official appointment; evaluation and treatment of Plaintiff's patients and review of her medical charts and Plaintiff's clinical practices; patient complaints concerning Plaintiff; his observations of Plaintiff's clinical practices; whether Plaintiff's practices could reasonably be remediated; his discussions concerning Plaintiff's clinical practices.

ii. Estimate of length of testimony:  5 hours

f.  Avram Z. Goldberg, M.D., Clinical Director of NYU Langone Nassau Rheumatology and Clinical Assistant Professor in the Department of Medicine at NYU Grossman School of Medicine

i. Dr. Goldberg will testify concerning his background experience, duties, and production at his previous position and at NYU; his recruitment; negotiation of salary and production targets, including renewals; facts concerning his decision to join NYU; his recruitment of Plaintiff; facts concerning his offices at Marcus Avenue; evaluation of Plaintiff's clinical practices; whether Plaintiff could be remediated; his investigation into Plaintiff's performance; communications with Andrew Rubin and Joshua Swirnow; events leading up to Plaintiff's nonrenewal; that Plaintiff, although not dangerous, did not meet NYU's standards of clinical care.

ii. Estimate of length of testimony:  4 hours

g.  Miriam Ruiz (non-party witness)
Formerly FGP Manager, Ambulatory Care Long Island, Department of Hematology/Oncology/Rheumatology/Dermatology/Podiatry
NYU Langone Health System

i. Miriam Ruiz will testify concerning her background experience and duties at NYU; her resignation from NYU; facts concerning utilization of offices at Marcus Avenue; "sharing" of offices at Marcus Avenue; her interactions with Dr. Porges; complaints about Plaintiff; moving Plaintiff's patients from HMG to Marcus Avenue; complaints about Plaintiff; scheduling of patients; Plaintiff's interactions with physicians, staff and management; maintenance of records of issues/complaints about physicians, and derivation of same; gathering of information about Plaintiff for report to David Kaplan; lack of input with regard to

14

compensation and employment of physicians; lack of discriminate and retaliation against Plaintiff.

    ii.   Estimate of length of testimony:   5 hours

h.   Bryan Maguire, Senior Director Ambulatory Operations at NYU Langone Health.

    i.   Bryan Maguire will testify concerning his background and duties; the operations of NYU's Huntington Medical Group office at which Plaintiff worked one day per week; the assignment of office space at HMG to Plaintiff; use of offices at HMG; whether Plaintiff was required to cease working at HMG when she stopped working there in or about 2019; the timing and facts concerning moving Plaintiff's patients to the Marcus Avenue site.

    ii.   Estimate of length of testimony: 1 hour

    iii.   Plaintiff objects to Defendants calling this witness because he was not disclosed in their Rule 26 disclosures and he was not previously deposed.

i.   Kathleen Pacina
HR Business Partner
Formerly, Senior Manager Employee & Labor Relations
NYU Langone Health

    i.   Kathleen Pacina will testify concerning her background, experience and duties; receipt and documentation of Plaintiff's complaint; the substance of Plaintiff's complaint; her investigation into Plaintiff's complaint; conclusion of her investigation into Plaintiff's complaint; communications with Tisa Hall and with Claudia Rose; receipt of Plaintiff's complaint that she referred to Rashidat Ogbara, Employee & Labor Relations Manager; communications with Rashidat Ogbara.

    ii.   Estimate of length of testimony:  3 hours

j.   Rashidat Ogbara
Employee Relations Manager
NYU Langone Health

    i.   Rashidat Ogbara will testify concerning her background, experience and duties; her communications with Kathlee Pacina regarding a complaint by Plaintiff; her effort to reach Plaintiff regarding her complaint; Plaintiff's lack of response.

    ii.   Estimate of length of testimony:  ½ hour

    iii.   Plaintiff objects to Defendants calling this witness because she was not disclosed in their Rule 26 disclosures and she was not previously deposed.

  k.  Dr. Kavini Mehta, M.D.
    Staff Physician and Clinical Assistant Professor in the Department of Medicine at NYU Grossman School of Medicine

    i.   Dr. Mehta will testify concerning her private practice with Plaintiff; reasons for leaving private practice; salary, loans, and production in private practice; renewal of her agreement with NYU; assignment of a private office  that was not shared; Plaintiff was not always pleasant to work with; Plaintiff's nurse practitioner Tiffany would not speak with Plaintiff; Dr. Mehta knew Plaintiff for 15 years and did not always consider her a trustworthy person; negotiations with Joshua Swirnow concerning her and Plaintiff's initial contract with NYU; Plaintiff and her initial meeting with Andrew Rubin and Joshua Swirnow.

    ii.   Estimate of length of testimony:  3 hours

  f.  Brian Kim

    i.   Brian Kim testify concerning his background and experience; his efforts to identify the cause of the IT issue concerning Plaintiff allegedly not seeing certain Epic messages in her inbasket; and the reasons and remedy for same. Mr. Kim will also testify as to his efforts to discuss with Plaintiff the issue that she raised.

    ii.   Estimate of length of testimony: 1 hour

    iii.   Plaintiff objects to Defendants calling this witness because he was not disclosed in their Rule 26 disclosures and he was not previously deposed.

Defendants reserve the right to change the order of witnesses, to decide not to call any witnesses listed herein, to call any witnesses listed by Plaintiff for her case-in-chief, and/or to supplement this list based upon the testimony presented by Plaintiff in her case in chief. Defendants further reserve the right to call additional witnesses for rebuttal and/or

16

impeachment in response to Plaintiff's case-in-chief and to call custodian(s) of records, if

necessary, with respect to exhibits.

   **2. Witnesses Defendants may call if the need arises:**

   a.  Patricia Faslowich, RN

         i.  Patricia Faslowich will testify concerning her background and experience; her role in the Marcus Avenue office where Plaintiff worked; that Plaintiff was not criticized based on her work schedule; Plaintiff interactions with her co-workers at Marcus Avenue.

         ii.  Estimated length of testimony:  1 hour

         iii.  Plaintiff objects to Defendants calling this witness because she was not disclosed in their Rule 26 disclosures and she was not previously deposed.

   b.  Deborah Porges, MD
       Clinical Assistant Professor, Ronald O. Perelman Department of Dermatology, NYU Grossman School of Medicine

         i.  Dr. Deborah Porges will testify concerning her background and experience; "sharing her office with her husband, Dr. Andrew Porges; her treatment of a patient of Plaintiffs and her review of medical records; her report to Dr. Andrew Porges of her concerns in reviewing the medical chart of a patient Plaintiff treated.

         ii.  Estimated length of testimony:  ½ hour

         iii.  Plaintiff objects to Defendants calling this witness because she was not disclosed in their Rule 26 disclosures and she was not previously deposed.

   c.  Tisa Hall
       Director, HR Ambulatory & Clinical Affiliates at NYU Langone Health

         i.  Tish Hall will testify concerning her background, experience and duties; interaction with Kathleen Pacina concerning the investigation into Plaintiff's HR complaint, that Joseph Antonik, David Kaplan, Joshua Swirnow and Andrew Rubin, could not influence such investigation or its outcome and did not do so.

         ii.  Estimated length of testimony:  1 hour

       iii. Plaintiff objects to Defendants calling this witness because she was not disclosed in their Rule 26 disclosures and she was not previously deposed.

  d. Claudia Rose
    Human Resources Business Partner
    NYU Langone Health

       i. Claudia Rose will testify concerning her background, experience and duties; interactions with Kathleen Pacina concerning the investigation into Plaintiff's HR complaint. That Joseph Antonik, David Kaplan, Joshua Swirnow, and Andrew Rubin could not influence such investigation or its outcome.

       ii. Estimated length of testimony: 1 hour

       iii. Plaintiff objects to Defendants calling this witness because she was not disclosed in their Rule 26 disclosures and she was not previously deposed.

  g. Anang H. Modi, DO
    Staff Physician and Clinical Instructor in the Department of Medicine at NYU Grossman School of Medicine

       i. Dr. Modi will testify concerning his background experience, duties, and production at his previous position and at NYU; his recruitment; negotiation of salary and production targets, including renewals; facts concerning his decision to join NYU.

       ii. Estimated length of testimony: four (4) hours.

Defendants reserve the right to change the order of witnesses, to decide not to call any witnesses listed herein, to call any witnesses listed by Plaintiff for her case-in-chief and/or to supplement this list based upon the testimony presented by Plaintiff in her case in chief. Defendants further reserve the right to call additional witnesses for rebuttal and/or impeachment in response to Plaintiff's case-in-chief and to call custodian(s) of records, if necessary, with respect to exhibits.

**g) Designations of all deposition testimony the parties anticipate offering as part of their respective cases in chief, (ii) counter-designations of deposition testimony and (iii)**

**objections to an opponent's designated testimony, with objections not being made waived. For any deposition with disputed designations, the parties shall submit for a ruling the relevant parts of the transcript marked to show the dispute (e.g., designations and counter designations highlighted in different colors), with the basis for the objection noted in the margin (e.g., Fed. R. Evid. 801, 802 or hearsay). Deposition testimony with designations and counter designations shall be submitted as a flattened PDF. <u>A party will be permitted to introduce deposition testimony during its case in chief only if the deponent is unavailable to testify</u>. In a bench trial, for all deposition excerpts that will be offered as substantive evidence, the offering party shall submit a brief synopsis of the excerpts, not to exceed one page for each deposition, including page citations to the deposition transcript.**

*Plaintiff's*

Plaintiff's deposition testimony is attached at **Exhibit A**.

Plaintiff reserves the right to introduce prior sworn testimony of any witness, including any Defendants, for impeachment pursuant to Rule 26(a)(3)(A), rebuttal, or any other purposes permitted by the Federal Rules of Evidence.

*Defendants'*

Defendants' deposition testimony is attached at **<u>Exhibit B</u>**.

Defendants reserve the right to introduce prior sworn testimony of Plaintiff or any other witness for impeachment, rebuttal, or any other purposes permitted by the Federal Rules of Evidence.

h) **A list of all proposed exhibits and demonstrative aids for each party's case in chief, marked with one star for no authenticity objection and two stars for no objections at all; and**

i) **For exhibits with objections other than authenticity, a statement of the nature of the objection and the Federal Rule of Evidence that is the basis for the objection. Any objections not made shall be deemed waived, and any exhibits not objected to shall be deemed admissible at trial.**

*Plaintiff's*

Plaintiff designates the following as her proposed exhibits at trial and Defendants' objects ("Defendants' Objections") as follows:

| Bates Number | Description | Defendants' Objections<br>* = no authenticity objection<br>** = No objection |
|---|---|---|
| D000003-D000011 | November 6, 2020 e-mail from Dr. Porges regarding Plaintiff's alleged clinical issues, with follow-up correspondence between Swirnow & Kaplan | ** |
| D000013 | Email regarding problem with communication issue in Epic | * object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), and incomplete. |
| D00015 | Memorialization of Webex call concerning problems with patient contact and communication | ** |
| D000017-D000037 | Defendants' various employment policies | * D000017-D000028: object on the grounds of relevance (FRE 401, 402), confusing or misleading (FRE 403), not NYU Langone policy.<br><br>** D000029- D000034 |
| D000038 | Plaintiff's resume | ** |
| D000039-D000040 | Defendants' processing of non-renewal for Plaintiff | ** |
| D000041 | Defendants' notice of non-renewal of Plaintiff | ** |
| D000045-D000056 | Plaintiff's original employment agreement | ** |
| D000057-D000060 | Plaintiff's renewal employment agreement | ** |
| D000061 | Notice of Plaintiff's separation from employment | ** |
| D000071-D000075 | 2014 e-mails regarding negotiation of Plaintiff's salary and related compensation terms | ** |
| D000149-D000154 | 2017 e-mails regarding negotiation of Plaintiff's salary and related compensation terms | ** |

| D000174 | Letter in support of Plaintiff's appointment | ** |
| D000190 | Plaintiff's medical degree | ** |
| D000191-D000193 | Plaintiff's resume | ** |
| D000194 | Plaintiff's Oath to support the Constitution | * object on the grounds of relevance (FRE 401, 402), waste of time (FRE 403). |
| D000199 | Defendants' e-mails concerning Plaintiff's salary | *object on the grounds of confusing or misleading (FRE 403). |
| D000226 | Summary of patient visit log for Plaintiff | ** |
| D000227-D000414 | Patient visit log for Plaintiff | ** |
| D000417-D000422 | Calendar for Drs. Porges, Brancato, Goldberg, Li, Mehta, and Given | ** D000417-D000421<br><br>* D000422: object on the grounds of relevance (FRE 401, 402), confusing or misleading (FRE 403). |
| D000556 | Defendants' internal call notes related to Plaintiff's Human Resources complaint | ** |
| D000756-D000769 | Dr. Given's May 2019 compensation documents | ** |
| D000770-D000782 | Dr. Brancato's August 2014 compensation documents | ** |
| D000783-D000786 | Dr. Brancato's September 2019 compensation documents | ** |
| D000787-D000798 | Dr. Goldberg's November 2013 compensation documents | ** |
| D000799-D000801 | Dr. Goldberg's January 2017 compensation documents | ** |
| D000802-D000803 | Dr. Goldberg's January 2019 compensation documents | ** |
| D000804-D000816 | Dr. Li's October 2017 compensation documents | ** |
| D000817-D000818 | Dr. Li's January 2019 compensation documents | ** |
| D000819-D000823 | Dr. Li's January 2020 compensation documents | ** |

002528\5\170142943.v1

| | | |
|---|---|---|
| D000824-D000848 | Dr. Raminfard's December 2016 compensation documents | ** |
| D000849-D000853 | Dr. Raminfard's February 2020 compensation documents | ** |
| D000854-D000868 | Dr. Porges' August 2014 compensation documents | ** |
| D000869-D000872 | Dr. Porges' April 2017 compensation documents | ** |
| D000873-D000874 | Dr. Porges' March 2018 compensation documents | ** |
| D000875-D000881 | Dr. Porges' November & 2020 compensation documents | ** |
| D000882-D000894 | Dr. Modi's February 2017 compensation documents | ** |
| D000895-D000900 | Dr. June and July 2020 compensation documents | ** |
| D000901-D000912 | Dr. Mehta's September 2014 compensation documents | ** |
| D000913-D000916 | Dr. Mehta's November 2017 compensation documents | ** |
| D000917 | Dr. Mehta's February 2021 compensation documents | ** |
| D000918-D000922 | Dr. Mehta's November 2020 compensation documents | ** |
| D000925-D000926 | Dr. Goldberg's curriculum vitae | ** |
| D000929-D000931 | Dr. Mehta's curriculum vitae | ** |
| D000935 | Dr. Raminfard's curriculum vitae | ** |
| D000939 | Dr. Li's curriculum vitae | ** |
| D000943 | Dr. Given's curriculum vitae | ** |
| D000947 | Dr. Modi's curriculum vitae | ** |
| D000948-D000968 | Defendants' employment policies | ** |
| D000969-D000971 | Dr. Porges' curriculum vitae | ** |

| | | |
|---|---|---|
| D000972-D000994 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | * object on the grounds of relevance (FRE 401, 402), confusing or misleading (FRE 403), needlessly presenting cumulative evidence (FRE 403), waste of time (FRE 403), and duplicative of other exhibits. |
| D000995-D000996 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D000997-D000998 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D000999-D001000 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001001 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001002-D01003 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001006-D001007 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001008-D001009 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001010-D001011 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001012 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001013-D001014 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001015 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001016 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001017-D001019 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |

| D001020-D001031 | Plaintiff's original employment agreement | ** |
|---|---|---|
| D001032-D001035 | Plaintiff's renewal employment agreement | ** |
| D001036-D001037 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001038 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001039 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001040-D001042 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001043 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001044-D001045 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001046-D001047 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001048 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001049 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001050-D001051 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001052 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001053-D001054 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001055-D001056 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001057-D001058 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001060-D001062 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |

24

| | | |
|---|---|---|
| D001081-D001083 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001084-D001085 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001086-D001087 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001088-D001089 | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | ** |
| D001100-D001131 | Defendants' spreadsheet of "issues" with Plaintiff | ** |
| D001132 | Patient complaint while Plaintiff was on vacation | ** |
| D001192-D001195 | Antonik's November 6, 2020 e-mail regarding support for Plaintiff's termination. | ** |
| D001486-D001487 | Dr. Porges' business plan | ** |
| P1-P289 | Plaintiff's mitigation efforts | ** no objection to productions P1-P13; ** P14-P17 ; ** P18-P230; ** P231; ** P232-P249; ** P250-P253; ** P254-P289 |
| P290-P311 | Plaintiff's wRVU reports | ** P290-311; |

| | | |
|---|---|---|
| P312-P354 | Plaintiff's correspondence with Defendants regarding workplace issues | *object to Patient Names and patient information being disclosed pursuant to HIPAA.<br><br>** P312-P320<br><br>*P321: object on the grounds that prejudice outweighs the probative value (FRE 401-403).<br><br>**P322-P350<br><br>*P351-P352: object on the grounds that prejudice outweighs the probative value (FRE 401-403), relevance (FRE 401, 402).<br><br>**P353<br><br>*P354: object on the grounds that prejudice outweighs the probative value (FRE 401-403), relevance (FRE 401, 402). |
| P383-P384 | Plaintiff's resume | ** |
| P385-386 | Letter and card from patients regarding Plaintiff | P385: Letter not dated, objects on the grounds of authenticity and relevance (FRE 401-403), prejudice outweighs the probative value (FRE 401-403), hearsay FRE 801-802).<br><br>P386: Card not dated, objects on the grounds of authenticity and relevance (FRE 401-403), prejudice outweighs the probative value (FRE 401-403), and hearsay (FRE 801-802). |

| | | |
|---|---|---|
| P387-P456 | Business records maintained by Epic Systems containing communications with Plaintiff's patients | * P387-P456: object to Patient Names and patient information being disclosed pursuant to HIPAA, object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), and hearsay (FRE 801, 802) |
| P457-P458 | Plaintiff's text messages with Dr. Mehta | * P457-P458: object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), and hearsay (FRE 801, 802) |

| P459-P484 | Plaintiff's text messages with Miriam Ruiz | * P459-P460: object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), and hearsay (FRE 801, 802) *P461-P469 object to Patient Names and patient information being disclosed pursuant to HIPAA, relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), and hearsay (FRE 801, 802) ** P470; ** P471-P477 <br><br> * P478-P484: object to Patient Names and patient information being disclosed pursuant to HIPAA, relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), and hearsay (FRE 801, 802) |
| P485-P487 | Plaintiff's text messages with Dr. Porges | * P485-P487: object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403) |
| P488-P492 | Plaintiff's text messages with Dr. Mehta | * P488-P492: object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), and hearsay (FRE 801, 802) |

002528\5\170142943.v1

| P493-P495 | Screenshots of e-mails between Plaintiff and Defendants | * P493-P495: object on the grounds that prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), needlessly presenting cumulative evidence (FRE 403), incomplete email thread |
|---|---|---|
| P496-P509 | Plaintiff's text messages with patients concerning her separation from employment | *object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), needlessly presenting cumulative evidence (FRE 403), incomplete email thread, and hearsay (FRE 801, 802) |
| P510-P512 | Screenshots of e-mails between Plaintiff and Defendants | *object on the grounds that prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), needlessly presenting cumulative evidence (FRE 403), incomplete email thread |
| P513-P516 | Plaintiff's text messages with Dr. Mehta | *object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), and hearsay (FRE 801, 802), needlessly presenting cumulative evidence (FRE 403) |

002528\5\170142943.v1

| P517-P569 | Plaintiff's text messages with Miriam Ruiz | *object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), and hearsay (FRE 801, 802), needlessly presenting cumulative evidence (FRE 403) |
| P570-P575 | Plaintiff's text messages with Dr. Porges | * object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), needlessly presenting cumulative evidence (FRE 403) |
| P576-P585 | Plaintiff's text messages with Dr. Mehta | *object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), hearsay (FRE 801, 802), needlessly presenting cumulative evidence (FRE 403) |
| P586-P588 | Plaintiff's e-mail to Human Resources regarding complaint | *object on the grounds confusing or misleading (FRE 403), needlessly presenting cumulative evidence (FRE 403), incomplete email thread |
| P589-P591 | Plaintiff's e-mail to Human Resources regarding complaint | *object on the grounds confusing or misleading (FRE 403), needlessly presenting cumulative evidence (FRE 403), incomplete email thread |

| | | |
|---|---|---|
| P592-P595 | Plaintiff's text messages with patients concerning her separation from employment | *object to Patient Names patient information, and patient identifying information being disclosed pursuant to HIPAA, relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), and hearsay (FRE 801, 802) |
| P596-P599 | Plaintiff's text messages with Dr. Mehta | *object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), and hearsay (FRE 801, 802). |
| P600-P603 | Plaintiff's text messages with therapist | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), and hearsay (FRE 801, 802). |
| P604-P606 | Plaintiff's e-mails with therapist | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time (FRE 403), and hearsay (FRE 801, 802). |

002528\5\170142943.v1

| | | |
|---|---|---|
| P607-P610 | Plaintiff's text messages with therapist | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), hearsay (FRE 801, 802), and needlessly presenting cumulative evidence (FRE 403) |
| P611-P612 | Letter and card from patients regarding Plaintiff | object to Patient Names and patient information being disclosed pursuant to HIPAA, relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), and hearsay (FRE 801, 802). |
| P613 | Various screenshots and photos | *object on the grounds of relevance (FRE 401, 402). |
| P614-P623 | Various screenshots and photos | * object to Patient Names and patient information being disclosed pursuant to HIPAA, relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), and hearsay (FRE 801, 802). |

32

| | | |
|---|---|---|
| P624 | Plaintiff's text message with Tiffany | * object to Patient Names and patient information being disclosed pursuant to HIPAA, relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), and hearsay (FRE 801, 802), |
| P625-P675 | Various screenshots and photos | * P625-P673, P675 confidential patient information that does not need to be introduced into evidence, object to Patient Names and patient information being disclosed pursuant to HIPAA, object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), and hearsay (FRE 801, 802).<br><br>**P673-P674 |
| P676-P679 | Various screenshots and photos | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403). |

002528\5\170142943.v1

| | | |
|---|---|---|
| P680-P762 | Various screenshots and photos | * confidential patient information that does not need to be introduced into evidence, object to Patient Names and patient information being disclosed pursuant to HIPAA, object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), hearsay (FRE 801, 802), and needlessly presenting cumulative evidence (FRE 403). |
| P763-P912 | Various screenshots and photos | confidential patient information that does not need to be introduced into evidence, object to Patient Names and patient information being disclosed pursuant to HIPAA, object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), hearsay (FRE 801, 802), repetitive (403), needlessly presenting cumulative evidence (FRE 403). |

| | | |
|---|---|---|
| P913 | Plaintiff's notes regarding patients | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time. |
| Various summaries | Plaintiff reserves the right to utilize summaries of evidence in accordance with Rule 1006 of the Federal Rules of Evidence | *Defendants object to this reservation of rights as contrary to the Court's Order dated February 22, 2023 (Dkt. #176). |

<u>*Defendants'*</u>

Defendants designate the following as their proposed exhibits at trial[1] and Plaintiff

objects as follows:

---

[1]    Defendants reserve the right to introduce into evidence other documents for cross-examination, redirect, or for purposes of impeachment, and reserve the right to use any exhibit listed by Plaintiff.

| Bates Number | Description | Plaintiff's Objections<br>\* = no authenticity objection<br>\*\* = No objection |
|---|---|---|
| D000001 - D000002 | November 13, 2019, email thread between re Ruiz re Conversation with Dr. Edelman | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time. |
| D000003- D000011 | November 18, 2020, email thread re Dr. Edelman's performance, patient complaints, etc. | \*\* |
| D001091- D001093 | Porges email to Kaplan re Dr. Edelman's performance, patient complaints, etc.  (includes "TO" line) | \*\* |
| D000012 | August 5-6 email thread re Workflow | \*\* |
| D000015 | September 18, 2020, email from Ruiz re Dr. Edelman Webex Call (Inbasket) | \*\* |
| D000016 | Patient Complaint dated 6/15/2020 | \* object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time. |
| D000035- D000037 | NYU School of Medicine Policy for Faculty Appointments Not on the Tenure Track | \*\* |
| D000038 | Edelman curriculum vitae | \*\* |
| D000039<br><br>D000041 | December 2, 2020 email re MD Nonrenewal Edelman Sari to be processed and Non-renewal of Employment Agreement Letter | \*\* |

| | | |
|---|---|---|
| D000042- D000044 | September 17-18, 2019, email regarding matter raised by Dr. Edelman re Dr. Edelman Contracts | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time. |
| D000045- D000056 | Plaintiff's Contract dated September 5, 2014, and Plaintiff's filled out Research and Conflicts Disclosure Affirmation | ** |
| D000057- D000060 | Plaintiff's Renewal of Employment Agreement | ** |
| D000061 | April 2021 letter to NYU patients regarding Plaintiff's last day with NYU | ** |
| D000062 | September 16, 2019 email thread regarding Rheum Consolidation Updated – Edelman | ** |
| D000063 | September 25-26, 2019, email between Bryan Maguire and Swirnow regarding re Plaintiff office space in Huntington | ** |
| D000064- D000065 | October 16-17, 2019, email thread re Dr. Sari Edelman's Hours | ** |
| D000066- D000067 | March 11, 2020, email from Ruiz to Antonik and Lucca re Incident with Tiffany and Plaintiff | * object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time. |
| D000068 | September 18, 2019, email from Pacina regarding issue raised by Edelman re Antonik | ** |
| D000069- D000070 | September 2019 email thread regarding office space and Edelman complaint to ELR. | ** |
| D000072- D000075 | August 01-06, 2014, email thread re NYU negotiations with Mehta and Plaintiff re NYU employment contract | ** |

| D000076- D000132 | Plaintiff and Mehta's US Small Business Administration loan documents | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time. |
|---|---|---|
| D000133- D000148 | Plaintiff and Mehta Pro Forma; Plaintiff's RVU Analysis; Plaintiff's contract summary; Plaintiff's initial agreement. | ** |
| D000152- D000154 | November 10-16, 2017, email thread re Plaintiff's and Mehta's negotiations re their renewal agreement | ** |
| D000175- D000177 | Plaintiff's faculty file | ** |
| D000191- D000193 | Plaintiff's curriculum vitae | ** |
| D000226- D000414 | Plaintiff's patient appointment information charts | ** |
| D000417- D000421 | Porges', Brancato, Goldberg, Li, and Mehta Schedules | ** |
| D000537- D000544 | NYU Langone Ambulatory Care Lake Success website | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time. |
| D000556 | Pacina Salesforce Notes/Comments | ** |
| D000756-D000769 | Given's Employment Agreements | ** |
| D000770- D000786 | Brancato's Employment Agreements | ** |
| D000787- D000803 | Goldberg's Employment Agreements | ** |
| D000923- D000926 | Goldberg's personnel file and curriculum vitae | ** |
| D000804- D000822 | Li's Employment Agreements | ** |
| D000823- D000853 | Raminfard's Employment Agreements | ** |
| D000854- D000881 | Porges' Employment Agreements | ** |

| | | |
|---|---|---|
| D000882- D000900 | Modi's Employment Agreements | ** |
| D000901- D000922 | Mehta's Employment Agreements | ** |
| D000927- D000931 | Mehta's personnel file and curriculum vitae | ** |
| D000932- D000935 | Raminfard's personnel file and curriculum vitae | ** |
| D000936- D000939 | Li's personnel file and curriculum vitae | ** |
| D000940- D000943 | Given's personnel file and curriculum vitae | ** |
| D000944- D000947 | Modi's personnel file and curriculum vitae | ** |
| D000948- D000968 | NYU Human Resources Policies and Procedures – Chapter 4: Workplace Conduct | ** |
| D000969- D000971 | Porges' curriculum vitae | ** |
| D000995- D001089 | Email thread regarding space issue and Plaintiff's complaint | ** |
| D001090 | November 18, 2019 email from Rashidat to Plaintiff following up with Plaintiff re investigation Plaintiff's concern | object on the grounds that prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time. |
| D001094- D001095 | Brian Kim email to Plaintiff re Plaintiff not seeing messages | ** |
| D001096-D001131 | Complaint log created by Ruiz re Plaintiff patient complaints, staff issues, etc. | ** |
| D001132-D001175 | Dr. Buyon email; ARG Patient Record | * object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time. |
| D001192-D00195 | Emails from Joseph Antonik to Dr. Porges | ** |

39

| D001196-D001485 | 6 Patient Records | * object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time. |
|---|---|---|
| D001486-D001487 | Dr. Porges Business Plan | * prejudice outweighs the probative value (FRE 401-403), not disclosed during discovery. |
| P1-P13 | Plaintiff's Employment Agreement with Arthritis and Rheumatism Associates, PL | * object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time. |
| P231 | Email from Plaintiff to Max A. Gomez regarding RVU information below. | ** |
| P290-311 | Procedure Volume by CPT Code by Practice for Plaintiff | |
| P313-P315 | Email re Patient Care Compromise Needs Immediate Attention | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time. |
| P355-P382 | Plaintiff EEOC charge and complaint | Cumulative (FRE 403) |
| P461-P462 | Text messages between Ruiz and Plaintiff | ** |

002528\5\170142943.v1

| P470 | September 9, 2020 Text messages between Ruiz and Ruiz re Plaintiff running late | ** |
| Table II 2021 Medicare National Fee Schedule RVUs | 2021 Medicare national fee schedules posted on the American College of Rheumatology website (https://www.rheumatology.org/Practice-Quality/Administrative-Support/Medicare/Medicare-Fee-Schedule). <br><br> https://www.rheumatology.org/Portals/0/Files/Medicare-National-Fee-Schedule-RVU-Table2.pdf | ** |
| Dkt. # 1 | Plaintiff's Complaint | ** |
| Dkt. # 96 | First Amended Complaint | ** |
| Dkt. # 108-1 | Defendants' Confidential Rule 56.1 Statement of Material Facts | Cumulative (FRE 403); confusing or misleading (FRE 403), waste of time. |
| Dkt. # 134 | Plaintiff's Response to Defendants' Confidential Rule 56.1 Statement of Material Facts | ** |
| Dkt. # 170 | Second Amended Complaint | ** |
| Dkt. # 145-3 | Exhibit 3 to Swirnow's Reply Declaration | ** |
| Confidential Comparison Chart | Plaintiff's, Porges's, and Modi's initial and renewal compensations | ** |
| Compensation Comparison Bar Chart | Comparison of Based Salary Increases | ** |
| Confidential Comparison Chart (with Goldberg) | Comparison of 2017 Bases Compensation Increases between Porges, Goldberg, and Modi | ** |
| Confidential Comparison Graph (with Goldberg) | Comparison of 2017 Base Compensation Increases between Porges, Goldberg, and Modi | ** |
| | | |

41

    **j)**  **Admissions, interrogatory answers or other written discovery responses the parties intend to offer into evidence, together with any objections to these materials.**

*Plaintiff*

Defendants' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)

Plaintiff's Initial Disclosures

Defendants' Responses to Initial Discovery Protocols for Employment Cases Alleging Adverse Action

Defendants' Objections and Responses to Plaintiff's First Request for the Production of Documents

Defendants' Objections and Responses to Plaintiff's First Set of Interrogatories

Plaintiff's Second Request for the Production of Documents

Plaintiff's Responses and Objections to Defendants' First Request for the Production of Documents

Defendants' Declaration of Joseph Antonik in Support of Defendants' Motion for Summary Judgment

Defendants' Declaration of Avram Goldberg in Support of Defendants' Motion for Summary Judgment

Defendants' Declaration of Andrew Porges in Support of Defendants' Motion for Summary Judgment

Defendants' Declaration of Miriam Ruiz in Support of Defendants' Motion for Summary Judgment

Defendants' Declaration of Joshua Swirnow in Support of Defendants' Motion for Summary Judgment

Defendants' Declaration of Andrew T. Rubin in Support of Defendants' Motion for Summary Judgment

Defendants' Reply Declaration of Joseph Antonik in Further Support of their Motion for Summary Judgment

Defendants' Reply Declaration of Avram Z. Goldberg in Further Support of their Motion for Summary Judgment

Defendants' Reply Declaration of David Kaplan in Further Support of their Motion for Summary Judgment

Defendants' Reply Declaration of Joshua B. Swirnow in Further Support of their Motion for Summary Judgment

*Defendants*

Defendants anticipate introducing into evidence Plaintiff's Responses to Initial Discovery Protocols for Employment Cases Alleging Adverse Action; Plaintiff's Responses and Objections to Defendants' First Request For The Production Of Documents; Plaintiff's Rule 26 Disclosures; and (Dkt. # 135) Plaintiff's Declaration in Opposition to Motion for Summary Judgment.

**k)  A list of *in limine* motions.**

The parties will include their respective information on or before April 3, 2023, pursuant to the Court's Order (Dkt. #176).

002528\5\170142943.v1

**l)  Stipulations of uncontested facts.**

1.      Plaintiff was represented by counsel throughout the negotiations with NYU that resulted in her hiring and the execution of the employment agreement that governed the terms and conditions of her employment.

2.      When it hired Plaintiff, NYU also hired her business partner Dr. Mehta and assumed their former practice's lease obligations as and responsibility for the payment of their outstanding business loan.

3.       The sole reference to Plaintiff's office space in her agreement stated, "Space provided to you for your NYU: Langone Medical Center responsibilities is for performing services for the NYU Langone Medical Center only. You may not use such space for purposes of any other organization unless approved in writing by the Dean of the School of Medicine."

**m)  A statement of each element of damages and, except for intangible damages (*e.g.*, pain and suffering, mental anguish or loss of consortium), the dollar amount, including prejudgment interest, punitive damages and attorneys' fees.**

*Plaintiff*

| | |
|---|---|
| Unequal pay differential: | $1,290,000.00 |
| Liquidated damages for unequal pay: | $5,160,000.00 |
| Lost wages (back pay & front pay): | $137,400.00 |
| Emotional distress damages: | $1,252,000.00 |
| Prejudgment interest: | $948,906.00 (plus compounding interest) |
| Punitive damages: | $2,504,000.00 |
| Attorneys' fees: | $200,000.00 (to be amended based on additional work) |

44

Plaintiff reserves the right to revise and/or supplement this portion of the joint pretrial Order.

_Defendants_

Defendants' contest Plaintiff's statement of damages, and further notes that back pay and front pay are equitable remedies for determination by the Court, not the jury. Defendants further object to Plaintiff's admission of evidence concerning the above damage calculations on the basis of FRE 402, 403.

**n) Other requested relief.**

_Plaintiff_

All relief requested in the complaint, and any such other and further relief this Court deems just, equitable, and proper.

_Defendants_

Defendants' attorneys' fees and costs of this action together with any and further relief this Court deems just, equitable, and proper.

**o) A statement whether the parties consent to less than a unanimous verdict.**

The parties do not consent to less than a unanimous verdict.

## RESERVATION OF RIGHTS

Subject to the ruling of this Court, the parties, by and through counsel, reserve their respective rights, as follows:

1.      to amend and to supplement this Proposed Joint Pretrial Order (Except with regarding to the addition of the list of motions _in limine_, Defendants object to this reservation of

right as it is contrary to the Court's Order dated February 22, 2023 (Dkt. #176), the schedule for exchange for Initial Pretrial Orders between the parties, and the parties concerns about prevention of surprise at trial.);

      2.      to use any relevant and admissible exhibit identified by the opposing party in their exhibits lists whether or not the opposing party actually offers such exhibit at the time of trial;

      3.      nothing herein shall be deemed to order or modify the Court's Order dated February 22, 2023 (Dkt. #176);

      4.      to object to any of the opposing party's exhibits which have not been provided to the parties;

      5.      to offer for evidence any items, information and documents obtained pursuant to subpoena (Defendants object to this reservation of right as it is contrary to the Court's Order dated February 22, 2023 (Dkt. #176), the schedule for exchange for Initial Pretrial Orders between the parties, and the parties concerns about prevention of surprise at trial.); and

      6.      to object to the opposing party's exhibits based on relevancy or other evidentiary grounds regardless of whether a specific objection was listed in the JPTO.

Dated: March 15, 2023
       New York, New York

                                  _____
                                    **LORNA G. SCHOFIELD**
                                  **UNITED STATES DISTRICT JUDGE**

**APPROVED AS TO FORM AND SUBSTANCE**

**MILMAN LABUDA LAW GROUP PLLC**
*Attorneys for Plaintiff*

By:   */s/ Emanuel Kataev*_____

      Joseph M. Labuda

Emanuel Kataev
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899
joe@mllaborlaw.com
emanuel@mllaborlaw.com

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendants*

By:  */s/ Richard L. Steer*
      Richard L. Steer
      Justin Chu
      Ingrid J. Cardona
      1350 Broadway, 11th Floor
      New York, NY 10018
      (212) 216-8000
      rsteer@tarterkrinsky.com
      jchu@tarterkrinsky.com
      icardona@tarterkrinsky.com

002528\5\170142943.v1