**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. SARI EDELMAN,<br><br>      Dr. Edelman,<br><br>– against –<br><br>NYU LANGONE HEALTH SYSTEM, NYU LANGONE HOSPITALS, NYU LANGONE MEDICAL CENTER, NYU LANGONE NASSAU RHEUMATOLOGY, NYU SCHOOL OF MEDICINE, NYU GROSSMAN SCHOOL OF MEDICINE, NYU HOSPITALS CENTER, ANDREW T. RUBIN, DAVID KAPLAN, JOSEPH ANTONIK, and JOSHUA SWIRNOW,<br><br>      Defendants. | Case No. 1:21-cv-502 (LGS) (GWG) |

**DEFENDANTS' TRIAL MEMORANDUM OF LAW**

i

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ..................................................................................................................................... 2

   I.  THE CATCH-ALL "FACTOR OTHER THAN SEX" IS A BROAD STATUTORY
      EXCEPTION .......................................................................................................................... 2

   II. THE COURT'S DETERMINATION THAT THERE IS NO INTENTIONAL
      DISCRIMINATION IS THE LAW OF THE CASE ............................................................. 6

CONCLUSION .................................................................................................................................. 8

# **TABLE OF AUTHORITIES**

**Cases**                                                                **Page(s)**

*Christiana v. Metropolitan Life Ins. Co.*,
   839 F.Supp. 248 (S.D.N.Y. 1993) .................................................................................................. 2

*D'Iorio v. Winebow, Inc.*,
   68 F.Supp.3d 334 (E.D.N.Y. 2014) ................................................................................................ 7

*Hodgson v. Corning Glas Works*,
   474 F.2d 226, 232 (2d Cir. 1973) ................................................................................................... 2

*Husser v. N.Y.C. Dep't of Educ.*,
   137 F. Supp. 3d 253 (E.D.N.Y. 2015) ............................................................................................ 3

*Mazzella v. RCA Global Comm., Inc.*,
   642 F.Supp. 1531 (S.D.N.Y. 1986) *aff'd*. 815 F.2d 653 (2d Cir. 1987) ......................................... 2

*Osborn v. Home Depot U.S.A., Inc.*,
   518 F.Supp.2d 377 (D.Conn. 2007) ............................................................................................... 3

*Perry v. City of New York*,
   552 F.Supp.3d 433 (S.D. N.Y. 2021) ............................................................................................. 7

*Setelius v. Nat'l Grid Elec. Servs. LLC*,
   No. 11 Civ. 5528, 2014 WL 4773975 (E.D.N.Y. Sept. 24, 2014) ............................................ 2, 3

*Shieldkret v. Park Place Entm't Corp.*,
   No. 01-cv-5471, 2002 WL 91621 (S.D.N.Y. Jan. 23, 2002) .................................................... 2, 3

**Statutes**

Equal Pay Act ......................................................................................................................... 1, 2, 3, 7

NYLL 194-a ..................................................................................................................................... 3

NYLL 198(1-a) ............................................................................................................................. 7, 8

**Other Authorities**

Salary Ban – What You Need To Know (https://www.ny.gov/salary-history-ban/salary-
   history-ban-what-you-need-know) .................................................................................................. 3

**PRELIMINARY STATEMENT**

The catch-all "factor other than sex" statutory exception provided in the Equal Pay Act ("EPA") is a broad general exception designed to provide businesses with the flexibility to address legitimate business needs in paying employees differently. Courts have determined that the business practices of considering the credentials and experience of the employees, the value they bring to the organization, their past salaries, which may reflect the value of the employees and the consideration of which may be a necessary recruitment tool, in setting different compensations for different employees. Plaintiff's methodology of calculating a fixed dollar value for each wRVU in determining whether there is a violation of the EPA and its New York equivalent is not only unsupported by expert testimony or caselaw, it also effectively writes the "factor than sex" exception out of its statutory existence.

As to liquidated damages, lack of willful misconduct on the part of the Defendants have already been determined by the Court in partially granting Defendants' summary judgment motion. Specifically, this Court determined that Plaintiff has failed to establish a triable issue of fact that Defendants' conduct was motivated by discrimination. This determination is the law of the case and bars Plaintiff from contending that she suffered intentional discrimination and from recovering any damages that require Plaintiff to affirmatively establish willful conduct of Defendants, such as liquidated damages under the EPA and its New York equivalent. Accordingly, the Court should instruct the jury that Defendants' conduct was not willful.

**ARGUMENT**

I. **THE CATCH-ALL "FACTOR OTHER THAN SEX" IS A BROAD STATUTORY EXCEPTION**

In providing the catch-all "factor other than sex" exception to the prohibitions under the EPA, Congress allowed broad leeway for businesses to address the myriad of practicalities they must face. As aptly observed by the Second Circuit, three of the four exceptions provided in the statute are specific and the, fourth, *i.e.,* the "differentials based on any other factor other than sex" exclusion is a "broad general exception" to the prohibition against pay differences between women and men). *Hodgson v. Corning Glass Works*, 474 F.2d 226, 232 (2d Cir. 1973) (quoting Congressional Committee Report); *Christiana v. Metropolitan Life Ins. Co.*, 839 F.Supp. 248, 250 (S.D.N.Y. 1993) (same). Thus, this exception, if proven, "is a complete defense to conduct that would otherwise violate the statute." *Mazzella v. RCA Global Comm., Inc.*, 642 F.Supp. 1531, 1551 (S.D.N.Y. 1986) *aff'd*. 815 F.2d 653 (2d Cir. 1987).

As this Court has noted in this action (Dkt. #155), courts in this Circuit have considered the salary matching as a permissible factor that warrants disparate pay. *Id*. at p. 13. Sometimes the courts have considered salary matching in conjunction factors related to job worth. *Id.*, citing *Husser v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 253, 269 (E.D.N.Y. 2015); *Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11 Civ. 5528, 2014 WL 4773975, at *31 (E.D.N.Y. Sept. 24, 2014). Sometimes the courts have considered salary matching, and without relying on additional factors, as sufficient for proving the "factor than sex" exception defense. *Id.*, citing *Talwar v. Staten Island Univ. Hosp.*, No. 12 Civ. 33, 2014 WL 5784626, at *12 (E.D.N.Y. Mar. 31, 2014) (finding salary matching to be a "legitimate factor other than gender" to justify a difference in pay), *aff'd in part, vacated in part on other grounds,* 610 F. App'x 28 (2d Cir. 2015); *see also Shieldkret v. Park Place Entm't Corp.*, No. 01-cv-5471, 2002 WL 91621, at *3 (S.D.N.Y. Jan. 23, 2002) ("salary

matching–payment of a higher salary to equal or exceed that of a prior job, or a competing offer—is a reasonable business tactic to lure or retain employees and justify a wage differential").

While this Circuit has not determined whether salary matching alone justifies unequal pay, the majority of the Circuits that weighed in on this issue has decided in the affirmative. *Boyer v. United states*, 159 Fed. Cl. 387, 403 (2022). The Ninth Circuit is the lone exception. *Id*. Defendants respectfully submit that the determinations of the majority of the Circuits is consistent with the broad exception afforded under the EPA and its legislative purpose and history, as well as the practicalities of the business needs for recruiting and competing for talents.[1]

In addition to considering past salary, "an employer may properly decide to pay higher salaries to employees with greater experience, more advanced educational degrees, or objectively better credentials than their co-workers." *Husser v. New York City Dept. of Ed.*, 137 F.Supp.3d 253, 269 (E.D.N.Y. 2015). Moreover, "market forces, previous experience, education, and inducement to hire the best person for the job have been held to be legitimate factors justifying pay differentials under the EPA." *Osborn v. Home Depot U.S.A., Inc.*, 518 F.Supp.2d 377, 385 (D.Conn. 2007). *See also Setelius*, 2014 WL 4773975, *31 (collecting cases).

In the instant case, the record shows that the pay differential between Plaintiff and her alleged comparators are based on "factors other than sex." For example, as regarding Dr. Avram Goldberg, he was hired to help to start and grow NYU's rheumatology practice on Long Island, a market where NYU had targeted to expand. In recognition of that role, he was hired as the Clinical

---

[1] It is important to note that the law in New York barring employers from salary-matching did not take effect until January 2020, whereas NYU's consideration of Plaintiff's and her alleged male comparators compensation in 2014, when Plaintiff and two of her male comparators were hired, and in 2017, when the third alleged male comparators was hired. NYLL 194-a; Salary Ban – What You Need To Know (https://www.ny.gov/salary-history-ban/salary-history-ban-what-you-need-know). It would be unfair, and indeed improper, to judge NYU's past conduct based on a new law.

3

Director, NYU Langone Nassau Rheumatology. Prior to coming to NYU, Dr. Goldberg was a full-time Professor of Medicine at Hofstra Northshore-LIJ School of Medicine. He was also a practicing physician at the North Shore University-LIJ Medical Center, where he was the Director of Scleroderma and Raynaud's Treatment Center and a member of the Performance Improvement Committee. This background of Dr. Goldberg reflects the prestige and value that he brought to NYU's start-up rheumatology practice which NYU wished to build and expand with the help of Dr. Goldberg.

For a further example, as regarding Dr. Andrew Porges, he had a more lucrative private practice prior to joining NYU, compared to Plaintiff's private practice. Since NYU was absorbing the private practices of Dr. Porges and Plaintiff, the profitability of their respective private practices was expected to carry over to NYU once they became employees. Moreover, in addition to clinical work, Dr. Porges also did research work for well-known pharmaceutical companies while in private practice, which work he brought to NYU after he was hired. The research work generated additional revenue for NYU above and beyond his clinical practice. Defendants respectfully submit that these factors constitute legitimate business "factors other than sex." Indeed, even using the improper and unsupported method of calculating rate of pay advocated by Plaintiff, she acknowledges that she was paid more than Dr. Porges during three of the six years that Plaintiff was employed at NYU, thus negating any sex-based pay disparity.

Plaintiff's contention that each of these different physicians should be judged and compared by using a strict and unbending dollar per wRVU method of determining whether there is a violation is not only unsupported by expert testimony or court precedent, it also effectively excises the express "other than sex" exception, which is meant to be broad, entirely out of the statute. Under Plaintiff's formulation, none of the facts that Dr. Goldberg had better credentials

4

than she did, that he held more prestigious positions, that he was well-known in the medical community, and the fact that based on those and other reasons NYU hired him to help build its rheumatology practice in Lond Island, could be used by NYU in setting his salary when it was trying to hire someone who had the credentials to help to build a start-up rheumatology practice. Nor, under Plaintiff's formulation, could NYU consider the fact that Dr. Porges' owned and operated a more profitable private practice than Plaintiff's, which he brought to NYU, or the fact that he separately engaged in research for pharmaceutical companies that generated additional revenue aside from his clinical practice and continued such research after joining NYU. That additional research revenue and effort are not separately enumerated in his employment agreement, but instead is built into Dr. Porges' clinical compensation. In contrast, Plaintiff had no such additional research or revenue and was hired only as a staff physician to perform clinical duties only. Plaintiff's methodology improperly does not take into account this significant factor when comparing her clinical pay with Dr. Porges'. Nor does it take into account the credentials, experience, and credibility that Dr. Porges or Dr. Goldberg brought to NYU and on which their compensation is based, although not separately enumerated in their employment agreements.

Plaintiff's other contention that the portion of compensation unrelated to the non-clinical aspects of the employment of her alleged male comparators is ascribed with mathematical precision in their employment agreements is contrary to the facts and business realities and, in any event, is an inaccurate and incomplete reading of the agreements. First, none of the employment agreements discusses the credentials and credibility of her alleged comparators brought to NYU. Second, under Plaintiff's formulation, Dr. Goldberg's experience and prestige and Dr. Porges's more lucrative private and his research work could not be credited and, indeed, NYU's consideration of these factors would be an impermissible violation of the statute. The fixed dollar

5

per wRVU method of determining whether there has been a statutory violation as advocated by Plaintiff is therefore divorced from the business reality where highly trained professionals and executives contribute in multi-dimensional ways.

In short, adopting the methodology advocated by Plaintiff would improperly render an express statutory exception completely out of existence and without effect.

## II. THE COURT'S DETERMINATION THAT THERE IS NO INTENTIONAL DISCRIMINATION IS THE LAW OF THE CASE

In partially granting Defendants' summary judgment motion, this Court determined that Plaintiff has failed to establish a triable issue of fact that NYU's conduct was motivated by discrimination. Dkt. # 155 at 17-20, 28. First, this Court determined that: "Plaintiff has pointed to no record evidence that NYU implemented its salary-matching practice *because* it results in lower pay for women, rather than for commercial reasons. To the contrary, Plaintiff asserts that her compensation initially was set when Defendants assumed she was male, prior to the meeting at which they expressed surprise at learning her gender." *Id*. at 19. Second, this Court determined that: "Any pay disparity after Plaintiff's contract was renewed is fully explained by the initial decision about Plaintiff's compensation, and there is no evidence from which a reasonable jury could find that discrimination was a motivating factor in failing to give Plaintiff an even larger raise." *Id*. at 19-20, 28. Third, in connection with Plaintiff's claim of wrongful termination, this Court determined that: "No reasonable jury could find from such attenuated evidence that Defendants were motivated by discrimination when firing Plaintiff in 2020." *Id*. at 18, 28. Lastly, in connection with Plaintiff's contention of other alleged adverse employment actions by NYU against her, this Court determined that: "As discussed above, all of Plaintiffs' evidence of discriminatory intent is too distant in time to be probative of discrimination at the time of Plaintiff's

6

firing, and Plaintiff points to no connection between the evidence she offers and any decision to set her compensation or to require her to share an office." *Id*. at 28.

The Court's determination that there is no triable issue concerning intentional discrimination constitutes the law of the case. *Perry v. City of New York*, 552 F.Supp.3d 433, 551 (S.D. N.Y. 2021) (determination at summary judgment that "there is no genuine issue as to any material fact with regard to [a particular] issue" is law of the case and permits the court to make a judgment "as a matter of law" on that issue at trial); *D'Iorio v. Winebow, Inc.*, 68 F.Supp.3d 334, 358 (E.D.N.Y. 2014) (the law of the case doctrine "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice"). The Court should therefore instruct the jury accordingly, to wit: Defendants' conduct was not willful. *Perry*, 552 F.Supp.3d at 551 (instructing the jury that "Plaintiffs spent exchanging equipment at the end of the shift was not de minimis" because the court already found at summary judgment there is no genuine issue).

Plaintiff is therefore barred from contending that she suffered intentional discrimination and from recovering any damages that require Plaintiff to affirmatively establish willful misconduct of Defendants, such as liquidated damages under the EPA and NYLL 198(1-a). While Defendants recognize that courts in this Circuit have held that it is the burden of the employer to establish good faith to avoid certain liquidated damages, that question has not been determined by the Second Circuit. Moreover, NYLL 198(1-a) expressly provides that "liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation." Thus, the clear statutory language provides that willfulness must be established by Plaintiff, rather than disproved by Defendants.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully requests that the Court rule in favor of Defendants as to the issues addressed here.

Dated: New York, New York
      March 30, 2023

Respectfully submitted,

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendants*


By: */s/ Richard L. Steer*
    Richard L. Steer
    Justin Chu
    1350 Broadway, 11th Floor
    New York, NY 10018
    (212) 216-8000
    rsteer@tarterkrinsky.com
    jchu@tarterkrinsky.com

8