**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. SARI EDELMAN,<br><br>　　　　　　Plaintiff,<br><br>　– against –<br><br>NYU LANGONE HEALTH SYSTEM, NYU LANGONE HOSPITALS, NYU LANGONE MEDICAL CENTER, NYU LANGONE NASSAU RHEUMATOLOGY, NYU SCHOOL OF MEDICINE, NYU GROSSMAN SCHOOL OF MEDICINE, NYU HOSPITALS CENTER, ANDREW T. RUBIN, DAVID KAPLAN, JOSEPH ANTONIK, and JOSHUA SWIRNOW,<br><br>　　　　　　Defendants. | Case No. 1:21-cv-502 (LGS) (GWG)<br><br><br>**PROPOSED JOINT<br>JURY CHARGES** |

Dr. Sari Edelman ("Plaintiff") and NYU Langone Health System, NYU Langone Hospitals, and NYU Grossman School of Medicine, a Division of New York University, f/k/a "NYU Hospitals Center" s/h/a "NYU Langone Medical Center," "NYU Langone Nassau Rheumatology," "NYU School of Medicine," "NYU Grossman School of Medicine," and "NYU Hospitals Center;" and Andrew T. Rubin, David Kaplan, Joseph Antonik, and Joshua Swirnow (collectively, "Defendants" and together with the Plaintiff, the "Parties"), through their undersigned counsel of record, pursuant to Rule 51 of the Federal Rules of Civil Procedure, respectfully requests that the Court give the following instructions to the jury, and such other instructions as may be submitted hereafter in accordance with later proceedings in this action. With the Court's permission the parties wish to respectfully reserve the right to supplement these instructions at the close of the evidence if unanticipated factual issues have arisen during the course of trial.

## I.   PRELIMINARY INSTRUCTIONS

### Proposed Charge No. 1:
### Claims and Defenses

To help you follow the evidence, I will give you a brief summary of the positions of the parties: Dr. Edelman asserts five separate claims.  She is suing NYU Langone Health System, NYU Langone Hospitals, NYU Grossman School of Medicine, a Division of New York University, NYU Langone Nassau Rheumatology. I will refer to these entities as "NYU." Dr. Edelman is also suing individual NYU employees Andrew T. Rubin, David Kaplan, Joseph Antonik, and Joshua Swirnow, which I will refer to either as the "Individual Defendants" or by their names. I will refer to NYU and the Individual Defendants collectively as the Defendants.

For purposes of this case, this means you must treat Dr. Edelman, Messrs. Rubin, Kaplan, Antonik, and Swirnow, natural persons, and NYU, as equal under the law.

Dr. Edelman asserts that NYU, Mr. Rubin, and Mr. Swirnow violated the Equal Pay Act ("EPA") and the New York Labor Law § 194[1] by failing to pay her the same as three (3) male doctors performing substantially equal work as her.  She also asserts that NYU and the Individual Defendants (Messrs. Rubin, Swirnow, Kaplan, and Antonik) discriminated against her in violation of the New York City Human Rights Law on account of her gender or sex[2] based on allegedly sexist remarks.  [*Plaintiff objects to the use of the word "allegedly."*] Finally, Dr. Edelman asserts

---

[1] Dr. Edelman would prefer use to New York Labor Equal Pay Act and define it as New York Equal Pay Act. However, Defendants object to the global reference proposed by Dr. Edelman to utilize references to the "New York Equal Pay," rather than New York Labor Law § 194. "New York Equal Pay" is a commonly used shorthand among attorneys and the court, but the New York State legislature does not refer to it this way, and it could potentially bias a jury.

[2] Defendants object to using the terms "gender or sex" throughout all the charges because it may confuse the jury into believing there are two separate claims – one for sex discrimination and one for gender discrimination. Defendants submit that only the term sex should be used throughout these charges.

that NYU retaliated against her because she complained to NYU Human Resources about the
<mark>alleged</mark> way Mr. Antonik and Mr. Kaplan spoke to her and made certain gestures. [*Plaintiff objects to the highlighted word above.*]

Dr. Edelman has the burden of proving these claims.  NYU and the Individual Defendants deny those claims and asserts that, at all times, they treated Dr. Edelman in accordance with the law.  Specifically, NYU and the Individual Defendants assert that they were motivated only by legitimate business reasons.  Further, NYU and Messrs. Rubin and Swirnow assert that under the EPA and New York Labor Law Section 194, Dr. Edelman cannot properly compare herself to identified male rheumatologists who made more money than her and whose initial salaries were set based on what they allege are legitimate factors that had nothing to do with sex or gender.

Each claim is separate and distinct. That is, you may find a violation with respect to one of these claims without filing a violation with respect to another claim. For example, you may find that Defendants violated the Equal Pay Act, but not the retaliation or discrimination laws. You may also find that Defendant violated all of these laws. You should consider each of these claims separately. I will explain the law with respect to each claim.

**Proposed Charge No. 2:**
<u>**Burden of Proof & Preponderance of the Evidence**</u>

Because this is a civil lawsuit, Dr. Edelman has the burden of proving each disputed part of her claims by a preponderance of the evidence and Defendants have the burden of proving each disputed part of their affirmative defenses by a preponderance of the evidence.

I will now explain what "preponderance of the evidence means in this case." To establish a fact by a preponderance of the evidence, Dr. Edelman must prove that the fact is more likely true than not true. In other words, if you find that the credible evidence on a given issue is evenly divided between Dr. Edelman and Defendants, then you must decide that issue for Defendants. However, if Dr. Edelman proves that a fact is more likely true than not, even slightly more true than not, then you are to find that Dr. Edelman has proven the fact by a preponderance of the evidence. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

If Dr. Edelman fails to prove an issue by a preponderance of the evidence, then you must find that issue in favor of Defendants. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents presented. Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should not consider or discuss that standard in your deliberations.

For certain defenses and issues in this case, the Defendants have a <mark>higher</mark> burden of proof, specifically as to their good faith defense. I will describe that burden of proof in a few

minutes. [*Defendants object to the highlighted word above because it is inconsistent with the burden of proof at trial.  Moreover, Defendants submit that there is no such thing as the amorphous "higher burden," which lacks anything concrete for the jury to apply. Plaintiff respectfully submits that the authority set forth in footnote 26 justifies this charge.*]

Adapted from: (Dkt. #114) Jury Instructions, *Saber v. NY State Dept. of Fin. Servs.*, 15-cv 5944 (LGS)

**Proposed Charge No. 3:**
**Corporate Defendants/General Principles of Agency**

Certain of the Defendants in this action are corporations, and act through its employees. It is established law that under certain circumstances an employer may be liable for the wrongs, even willful wrongs, done by its representatives if the wrongs are committed during the scope of the employee's employment duties and in furtherance of the employer's business. An employer's liability rests upon a broad principle that if a corporation manages its affairs through others, the corporation is bound to manage them in such a way that no person shall suffer injury from a wrong done by that other while engaged upon the employer's business and acting within the scope of their employment.

The fact that an employee was not specifically authorized to commit the act or was even violating instructions which had been given to them does not relieve the corporation from liability if unlawful conduct is proven. A corporation is liable even if the employee was acting unlawfully, or out of personal animosity, if the acts were committed within the scope of his or her employment. [*Defendants object to the highlighted words above, especially since NYU has not raised as a defense that the individual defendants were not acting within the scope of their employment. Plaintiff submits that this charge is necessary because there is evidence in the record that Defendant Joseph Antonik sought to hide his role in Plaintiff's termination, which precipitated another deposition of Defendant Antonik. See ECF Docket Entry 75. As such, the jury needs to be aware that Antonik's and the other individual Defendants' conduct are imputed to the corporate Defendants. Defendants submit that this charge is further evidence that Plaintiff is merely trying to smear Antonik and merely trying to inflame the Jury. Whether Antonik allegedly hides his role in Plaintiff's termination is entirely irrelevant to the question of whether NYU is responsible for his conduct.*]

**Defendants' proposed part:** In this case, it is not disputed that the Individual Defendants were engaged in the business of NYU and were acting within the scope of their employment during the Dr. Edelman's tenure. It is strongly disputed that Defendants committed any unlawful act. It is undisputed that if any unlawful acts were committed by the Individual Defendants you might find that such acts were the result of their attempts to carry out the work that was entrusted to them by the corporation. [*Plaintiff objects to this charge and proposes the below charge instead.*]

**Plaintiff's proposed part:** In this case, it is not disputed that the individual Defendants were engaged in the business of the corporate Defendants and were acting within the scope of their employment during the Plaintiff's tenure. It is undisputed that any wrongs that you might find any of these individuals committed were the result of their attempts to carry out the work that was entrusted to them by the corporation. Therefore, I instruct you that the corporate Defendants are liable for their conduct.[3]

Now I am not suggesting that the corporate Defendants are liable. Whether or not the Plaintiff was discriminated against as she claims is a matter for you to decide in accordance with these instructions.  I am only instructing you that you must find that the corporate Defendants are legally responsible if you find that the individual Defendants or any of the corporate Respondents' other employees discriminated and or retaliated against the Plaintiff. [*Defendants object to the highlighted portion of this charge.  These charges are argumentative, will confuse the jury, and unfairly prejudice the Defendants because the charges assume that a wrongful act was committed. Plaintiff respectfully submits that the limiting instruction is sufficient to assuage Defendants' concerns.*]

---

[3] *See* Devitt & Blackmar, 3 Federal Jury Practices & Instructions, § 71.09 at 26 (4th ed. 1987); *see also Burlington Industries v. Ellerth*, 524 U.S. 742, 764 (1998).

Now I am not suggesting that the NYU is liable. Whether or not Dr. Edelman was discriminated and/or retaliated against as she claims is a matter for you to decide in accordance with these instructions.

## II.  SUBSTANTIVE CLAIMS

### Proposed Charge No. 4:
### Plaintiff's Federal Equal Pay Act[4]

Employers must pay their employees equal wages for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Congress passed the Equal Pay Act "to legislate out of existence a long-held, but outmoded societal view that a man should be paid more than a woman for the same work. The EPA required employers to pay equal wages for equal work."[5] [*Defendants' object to this highlighted part of the charge as argumentative, inflammatory, and making social commentary instead of giving instructions to the Jury as to legal principles to be applied. Plaintiff respectfully submits that Congress' statements on the law are proper to inform the jury of, both as to congressional intent behind the law as well as because it is a matter of public record.*]

In this case Dr. Edelman has made a claim under the Equal Pay Act, a statute that prohibits an employer from paying women less than men for jobs that require substantially equal work. Specifically, Dr. Edelman claims that she was paid less than (a) certain male rheumatologists even though she performed substantially equal work as a female rheumatologist.  NYU and Messrs. Rubin and Swirnow claim that Dr. Edelman's job was **not** substantially equal to the jobs performed

---

[4] Defendants' object Plaintiff's proposed Federal Equal Pay Act Charge because they are generally argumentative, incorrect statements of the law, and make social commentary instead of giving instructions to the Jury as to legal principles to be applied. Plaintiff respectfully submits that the substantial authority cited supports its charge as requested.

[5] *See* 29 U.S.C. § 206(d)(1) ("The EPA requires that employees, regardless of gender, be paid equally for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."); *see also Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) ("The purpose behind the enactment of the EPA was to legislate out of existence a long-held, but outmoded societal view that a man should be paid more than a woman for the same work. The EPA required employers to pay equal wages for equal work"); *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)).

by male employees Drs. Goldberg, Porges, and Modi. Further, NYU and Messrs. Rubin and Swirnow assert that any difference in compensation that Dr. Edelman received was based on factors other than sex. I will now instruct you more fully on the issues you must address in this case.

==The first question you must decide is whether the Defendants are legally responsible to the Plaintiff under the Equal Pay Act. The Plaintiff claims that Defendants NYU, Rubin, and Swirnow are each employers responsible for damages under the Federal and New York Equal Pay Acts.[6]==

(*Defendants objection to this highlighted part of the charge because it inaccurately reflects the Court's decision (Dkt. #155) and because it is unintelligible for lay Jury. See Defendants' proposed Charge No. 4.*)

For an individual to be an employer, there must be more than just evidence that the individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function.... Instead, to be an 'employer, an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's

---

[6] *See Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984), *holding modified by Danneskjold v. Hausrath*, 82 F.3d 37 (2d Cir. 1996), and *holding modified by Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003) (The "economic reality" test since has been refined and now is understood to include inquiries into: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records"); *see also Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983)); *Irizarry v. Catsimatidis*, 722 F.3d 99, 110-11 (2d Cir. 2013) ("For an individual to be an employer, there must be more than just "[e]vidence that [the] individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function.... Instead, to be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment. … Using this 'economic reality' test, we must decide whether [Catsimatidis] is an employer under the FLSA. *See Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 140 (2d Cir. 1999) (Is there "evidence showing his authority over management, supervision, and oversight of [Gristede's] affairs in general," as well as evidence under the *Carter* framework or any other factors that reflect Catsimatidis's exercise of direct control over the plaintiff employees?").

employment. In determining whether the individual Defendants are each employers, you can consider factors such as: (i) whether they can hire or fire employees at NYU; (ii) whether they are involved in determining the terms and conditions of employment at NYU; (iii) whether they are involved in setting wage rates for employees at NYU, and/or (iv) whether they maintain employment records at NYU. Plaintiffs do not have to prove each factor to show that an individual Defendant is an employer. These factors are meant to guide you in determining whether they are an employer based on the economic reality of each individual Defendants' relationship with Plaintiff.

For Dr. Edelman to prevail on her claim against NYU and Messrs. Rubin and Swirnow for violation of the Equal Pay Act, Dr. Edelman must prove all of the following elements by a preponderance of the evidence:

1.  NYU employed Dr. Edelman and male employees in jobs requiring substantially equal skill, effort, and responsibility;

2.  the jobs were performed under similar working conditions; and

3.  Dr. Edelman was paid lower compensation than the male doctors performing substantially equal work. [*Plaintiff objects to the order of the elements, and submits that they should be inverted, i.e., 3, 2, 1*].

The Plaintiff does not have to prove that Defendants intended to violate the EPA to prevail.[7]

In the present case, the parties do not dispute that Plaintiff was paid less in compensation than each of the alleged male comparators. You should find for the Plaintiff on this factor. "Wages," under the Equal Pay Act, include all forms of compensation, including benefits, such as

---

[7] *See Ryduchowski*, 203 F.3d at 142 ("[U]nlike Title VII, the EPA does not require a plaintiff to establish an employer's discriminatory intent").

==free tuition for children and expense reimbursements.==[8] [*Defendants object to the highlighted portions of this charge because Plaintiff's Complaint and disclosures of alleged damages never included a claim regarding tuition. Further, the inclusion of tuition if speculative because it assumes that the admissions of Plaintiff's children to NYU, that they would attend if admitted, none of which was disclosed by Plaintiff in discovery. In addition, although Defendants dispute Plaintiff's methodology, of using pay per unit of RVUs when comparing compensation, at least one male physician was being paid less than Plaintiff using such methodology. Plaintiff submits that tuition falls within the definition of compensation under the EPA, and that Defendants objections concerning the methodology is, in essence, an objection to basic math, the same math used by this Court in finding that Plaintiff was paid less by her male comparators.*]*

Under the Equal Pay Act, it is not necessary that the jobs be identical in every respect; the Equal Pay Act requires proof that the performance of the jobs demand "substantially equal" skill, effort and responsibility. It is the actual work or performance requirements of the jobs that is important. In evaluating whether the performance requirements of the jobs are substantially equal, you must consider the "skill," "effort," and "responsibility" required for these jobs. I will now tell you what is meant by these terms, "skill," "effort," and "responsibility."

---

[8] ABA Model Jury Instructions, Employment Cases § 2.04[1][b] ("As defined under the Equal Pay Act, wages include all forms of compensation, including those other than cash wages, such as fringe benefits. You should consider all evidence you have heard concerning the wages the defendant pays employees in determining whether the plaintiff has been paid a lower wage than an employee of the opposite sex."); *see also* 29 C.F.R. § 1620.10 ("Under the EPA, the term 'wages' generally includes all payments made to [or on behalf of] an employee as remuneration for employment. The term includes all forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name. Fringe benefits are deemed to be remuneration for employment").

Skill: in deciding whether the jobs require substantially equal "skill" you should consider such factors as the level of education, experience, training, and ability necessary to meet the performance requirements of the respective jobs.

Effort: in deciding whether the jobs require substantially equal "effort" you should consider the mental, physical and emotional requirements for performing the job.

"Equal effort" does not require people to use effort in exactly the same way. If there is no substantial difference in the amount or degree of effort to do the jobs, they require "equal effort." However, if the job of the male employees requires additional tasks that consume a significant amount of extra time and effort that would not be expected of Dr. Edelman, then the jobs do not require substantially equal effort. [*Plaintiff objects to the highlighted part above.*]

Effort is the "physical or mental exertion required in performing a job.[9]  The Plaintiff has to prove that her job as a female doctor and the jobs of male doctors require substantially equal effort. Effort, under the EPA, is concerned with the measurement of the physical or mental exertion needed for the performance of a job. Jobs may require equal effort in their performance even though the effort may be exerted in different ways.  Occasional or sporadic performance of an activity which may require extra physical or mental exertion is not alone sufficient to justify a finding of unequal effort. "'Effort' encompasses the total requirements of a job." Job factors which cause stress are to be considered in determining the effort required by the job. [*Defendants object to the highlighted portion above because it is misleading and likely to confuse the Jury.*]

---

[9] *See Usery v. Columbia Univ.*, 568 F.2d 953, 959 (2d Cir. 1977) ("Under the Act, 'effort' is the physical or mental exertion required in performing a job").

Responsibility: in deciding whether the jobs involve substantially equal "responsibility," you should consider the degree of accountability expected by the employer for a person filling the jobs.

Just because an employer assigns a male employee some additional duties does not automatically justify paying that employee more than a female co-worker otherwise performing "equal work on jobs requiring equal skill, effort, and responsibility."

"The crucial inquiry is "whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical."[10] Additional duties or tasks assigned to a male employee will not justify a pay differential unless the additional tasks consume a significant total of all of the employee's time.[11]  The Plaintiff has to prove that the jobs of female doctors and male doctors include substantially equal responsibilities. Responsibility under the Equal Pay Act is concerned with the "degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation."[12]

"Differences in the degree of responsibility required in the performance of otherwise equal jobs cover a wide variety of situations."[13]  Employees who perform "generally similar jobs" may

---

[10] *See Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003) ("In determining whether two jobs are equal, the crucial inquiry is "whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical").

[11] *See Usery v. Columbia Univ.*, 568 F.2d 953, 959 (2d Cir. 1977) ("Time expended on additional tasks assigned to a male employee does not justify a wage disparity if those additional tasks do not consume a significant portion of all of the employee's time").

[12] *See* 29 C.F.R. § 1620.17(a) ("The equal pay standard applies to jobs the performance of which requires equal responsibility. Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation. Differences in the degree of responsibility required in the performance of otherwise equal jobs cover a wide variety of situations").

[13] *Id.*

have "differences in responsibilities" that make the jobs unequal under the Equal Pay Act.[14]  Other differences in job responsibilities or obligations may make the jobs not substantially equal.

==You should note that "skill," "effort" and "responsibility" constitute separate tests, each of which must be met in order for the equal pay requirement to apply.== [*Plaintiff objects to the highlighted part above.*]

Similar Working Conditions: With respect to the second element of Dr. Edelman's claim, you must find that the jobs are performed under similar working conditions.

Wage Comparison: With respect to the third element of Dr. Edelman's claim, Dr. Edelman's must prove that she was paid a lower wage than male employees doing substantially equal work. In determining the respective levels of pay, you are to consider all forms of compensation, whether called wages, salary, profit sharing, expense reimbursement, ==tuition== [*See Defendants' objection to tuition above.  Moreover, the language concerning company car and gasoline is superfluous since there is no claim for them.  Plaintiff submits that tuition falls within the broad definition of compensation under the EPA*], or some other name. Fringe benefits are also included in the comparison of wages under the Equal Pay Act, such as paying off a business loan.

1. **Federal Equal Pay Act - Affirmative Defenses[15]**

---

[14] *See* 29 C.F.R. § 1620.17(b)(2) ("Other differences in responsibilities of employees in generally similar jobs may require similar conclusions. … Suppose that one employee of such a group (who may be either a man or a woman) is authorized and required to determine whether to accept payment for purchases by personal checks of customers. The person having this authority to accept personal checks may have a considerable, additional degree of responsibility which may materially affect the business operations of the employer. In this situation, payment of a higher wage rate to this employee would be permissible").

[15] Defendants object to this part of the charge for the same reasons stated in above in footnote 4 and respectfully refer the Court to Defendants' proposed charge in this regard below.

If you conclude the Dr. Edelman has proven each of the three (3) elements she must prove to establish a violation of the Equal Pay Act, you must decide whether NYU and Messrs. Rubin and Swirnow can prove the wage disparity is justified by an affirmative defense.  NYU and Messrs. Rubin and Swirnow claim that they did not violate the Equal Pay Act because the wage disparity was based on a "factor other than sex."[16]  The Defendants claim that they did not violate the Equal Pay Act because the wage disparity was based on a "factor other than sex."[17] The Defendants have the burden of proving this affirmative defense. The employer has two burdens.

First, Defendants have a "burden of persuasion" that requires them to introduce evidence that they actually relied on a "factor other than sex" in setting wages.[18]

---

[16] *See* 29 U.S.C. § 206(d)(1) ("No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.")

[17] *See* 29 U.S.C. § 206(d)(1) ("No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.")

[18] *See Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir. 1999) ("…the burden of persuasion shifts to the defendant to show that the wage disparity is justified by one of the affirmative defenses provided under the Act: … or (iv) a differential based on any other factor other than sex"); *see also*

Second, the Defendants have a "heavy burden" to prove that they actually relied on a "factor other than sex" in determining the male employee's wages.[19]  Employers relying on the "differential based on any factor other than sex" defense cannot simply claim that the factor resulting in the wage discrepancy was not sex-based. [*Defendants object to this charge because "heavy burden" is not a standard of proof for trial and there is not such standard of proof for trial purposes. Plaintiff's citation to the two Second Circuit decisions is not only inapposite, it is misleading, since both cases were deciding on summary judgment and the court was determining the standard a defendant must meet to win as a matter of law on summary judgment, rather than the standard of proof to instruct a trier of fact.*]

Employers must prove that the factor other than sex that led to the wage discrepancy was adopted and relied upon for a legitimate business purpose.[20]

---

29 U.S.C. § 206(d)(1)); *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525 (2d Cir. 1992) ("we conclude that employers cannot meet their burden of proving that a factor-other-than-sex is responsible for a wage differential by asserting use of a gender-neutral classification system without more"); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1312 (2d Cir. 1995) ("In response to Tomka's assertions, Seiler justifies Abrams' and the three account managers' higher salaries by alleging that the discrepancies resulted from "factors other than sex." Seiler contended, and the district court agreed, that Abrams' higher salary resulted from the fact that he had over ten years of experience with a Seiler competitor. While Abrams' experience may very well explain the discrepancy, Seiler has the burden of persuasion to show both that it based Abrams' higher salary on this factor and that experience is a job-related qualification for the position in question. See id. at 527. Seiler's mere assertion that Abrams' salary was based on his experience is insufficient to meet this burden, and the district court therefore erred in holding that Seiler had established its "factor other than sex" affirmative defense").

[19] *See Jamilik v. Yale Univ.*, 362 Fed. Appx. 148, 150 (2d Cir. 2009) ("This Court has previously determined that defendants face a heavy burden in establishing an affirmative defense to an EPA claim."); *see also Ryduchowski v. Port Auth. of New York & New Jersey*, 203 F.3d 135, 143 (2d Cir. 2000) ("The burden of establishing one of the four affirmative defenses is "a heavy one").

[20] *See Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir. 1999) ("Further, to successfully establish the "factor other than sex" defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential"); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 526-27 & n. 1 (2d Cir.

This means that the "factor other than sex" was adopted to serve a legitimate business goal of the company. Further, the "factor other than sex" must be related to the job itself.[21]

Finally, employers cannot prove they relied on the "factor other than sex" based solely on the fact that the male employee received a higher salary at his last position.

Because the factor other than sex must be related to the job itself, a male employee's prior pay by itself is not a job-related factor. [22]

To establish this defense, Defendants must prove that Plaintiff's sex played no part in the difference in wages.[23]

---

1992); *EEOC v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir.1988) ("[T]he 'factor other than sex' defense does not include literally any other factor, but a factor that, at a minimum, was adopted for a legitimate business reason")).

[21] *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525 (2d Cir. 1992) ("Without a job-relatedness requirement, the factor-other-than-sex defense would provide a gaping loophole in the statute through which many pretexts for discrimination would be sanctioned").

[22] *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525 (2d Cir. 1992) ("Based on this statutory history, we conclude that employers cannot meet their burden … by asserting use of a gender-neutral classification system without more"); *Rizo v. Yovino*, 950 F.3d 1217, 1226 (9th Cir.), *cert. denied*, 141 S. Ct. 189 (2020) (holding that prior pay by itself is not a "factor other than sex"); Id. at 1228 ("[P]rior pay itself is not a factor related to the work an employee is currently performing, nor is it probative of whether sex played any role in establishing an employee's pay."); *Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995) (stating that allowing prior pay as an affirmative defense "would swallow up the rule and inequality in pay among genders would be perpetuated").

[23] Third Circuit Instructions for Employment Discrimination Claims Under the Equal Pay Act (last updated Oct. 2018) § 11.2.4 at 25 ("If you find that [plaintiff] has proved each of the elements that she must establish in support of her claim under the Equal Pay Act, you must then consider [defendant's] defense. [Defendant] contends that the difference in pay between the two jobs was the result of a factor other than sex. Specifically, [defendant] claims that the difference in pay is attributable to [employee's education] [employee's experience] [training programs in which employees participate] [any other factor other than sex on which defendant has presented sufficient evidence to raise a jury question]. To establish that this defense, [defendant] must prove that [plaintiff's] sex played no part in the difference in wages").

If you conclude that the Plaintiffs proved the elements of their EPA claim, and that Defendants proved they relied on a factor other than sex, you must finally consider whether the Defendants' justification is a "pretext."

A pretext is a "false or weak reason or motive advanced to hide the actual or strong reason or motive."[24] If you conclude that Defendants' reason is false, you are allowed to conclude that it is false to cover up an illegal reason.[25]  If you conclude that Defendants' reason is pretextual, you must conclude that it failed to prove its affirmative defense.

You must also determine whether the employer has proven that its failure to comply with the law was done in good faith. This is known as a "good faith" defense.  Defendants assert they acted in good faith.  An employer has "the 'difficult' burden of establishing, by "plain and substantial" evidence, both that it acted in 'subjective good faith' and that it had objectively reasonably grounds for believing the wage disparity did not violate the law.

Indeed, proving good faith is the exception to the norm. The good faith defense has two components: subjective good faith and objective reasonableness.

First, the employer must prove that it sincerely believed the wage disparity complied with the law.

---

[24] Black's Law Dictionary (11th ed. 2019) (Pretext defined as "[a] false or weak reason or motive advanced to hide the actual or strong reason or motive").

[25] *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt'"); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 526 (2d Cir. 1992) (The plaintiff may counter the employer's claimed defenses "by offering evidence showing that the reasons sought to be proved are a pretext for sex discrimination. The question, then, is whether the justifications advanced by the defendant were "'used ... reasonably in light of the employer's stated purpose as well as other practices'" (quoting *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir.1986))).

Second, the employer must prove that its "subjective belief" was "objectively reasonable." The law requires an employer to come forward with substantial evidence that it attempted to learn the requirements of the EPA, and then took active steps to comply with it.

An employer cannot prove good faith simply by claiming that it believed its procedures complied with the law. An employer does not prove good faith simply claiming that it did not violate the EPA on purpose. If you find that Defendants failed to prove their good faith defense under the federal EPA as I have described it, you must indicate so on the verdict sheet.[26]

If you find in favor of the Plaintiff and find that she is entitled to any lost compensation, you must also determine whether Defendants willfully violated the Equal Pay Act.

---

[26] See 29 U.S.C. § 216 (b) ("Any employer who violates the provisions of section 206 [the EPA – Sec. 206(d)] or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."); *see also* 29 U.S.C. § 260 ("In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title"); Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987) ("The burden is a difficult one to meet, however, and "double damages are the norm, single damages the exception."); *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 142 (2d Cir. 1999) ("The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception."); *Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58, 70 n. 4 (2d Cir. 1997) ("Congress provided for liquidated damages as a means of compensating employees "for losses they might suffer by reason of not receiving their lawful wage at the time it was due." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir.1991)); *id.* at 71 ("Liquidated damages under the FLSA are considered compensatory rather than punitive in nature. … "Good faith" in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them. *See Cooper Elec.*, 940 F.2d at 908; *see also Williams v. Tri–County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir.1984) ("That SNET did not purposefully violate the provisions of the FLSA is not sufficient to establish that it acted in good faith").

A defendant willfully violates the Equal Pay Act if it knew or showed a reckless disregard for whether or not its conduct resulted in paying women less than men for performing substantially equal work under similar working conditions.[27]

Defendants' conduct may have been willful even if you find that Defendants did not act with an intent to violate the law.[28]

Source:

Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1); *Edelman v. NYU Langone Health Sys.*, No. 21-cv-502 (LGS), 2022 WL 4537972, at *4-*6 (S.D.N.Y. Sept. 28, 2022); *Chiaramonte v. Center*, No. 13-cv-5117 (KPF), 2016 WL 299026, at *8 (S.D.N.Y. Jan. 22, 2016); 29 C.F.R. § 1620.15; 29 C.F.R. § 1620.16; C.F.R. § 1620.17; 29 C.F.R. § 1620.14(a); 29 C.F.R. § 1620.10: *Miller v. City of New York*, No. 15CV7563, 2018 WL 2059841 (S.D.N.Y. May 1, 2018), *aff'd sub nom. Bloise v. City of New York*, 768 F. App'x 103 (2d Cir. 2019).

---

[27] *See Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 119 (2d Cir. 1997) ("A defendant's violation of the Equal Pay Act is willful or reckless within the meaning of § 255(a) if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute'") (*quoting Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir.1995) (*quoting McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

[28] *See Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 119-20 (2d Cir. 1997) ("A plaintiff need not show that an employer acted with intent to discriminate or in bad faith. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 n. 19 … (1985)...This evidence—that the New School knew that Pollis was paid less than comparable males, but did not rectify the situation—is sufficient to support the jury's finding of reckless or willful violation of the Equal Pay Act"); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 n. 19 (1985) ("Courts below have held that an employer's action may be 'willful,' within the meaning of § 16(a) of the FLSA, even though he did not have an evil motive or bad purpose. *See Nabob Oil Co. v. United States*[, 190 F.2d 478, 480 (10th Cir. 1951)]. We do not agree with TWA's argument that unless it intended to violate the Act, double damages are inappropriate under § 7(b) of the ADEA. Only one Court of Appeals has expressed approval of this position. *See Loeb v. Textron, Inc.*, 600 F.2d 1003, 1020, n. 27 (CA1 1979)").

**Proposed Charge No. 4:**
<u>**Defendants' Federal Equal Pay Act**</u>[29]

The Equal Pay Act requires that employees, regardless of gender, be paid equally for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

In order to prove a violation of the Equal Pay Act, Dr. Edelman must prove that higher-paid male employees with whom she compares herself are proper comparators. Thus, the first question for you to decide is whether Drs. Goldberg, Porges, and Modi are proper comparators.

In addition, for Dr. Edelman to prevail on her claim against NYU and Messrs. Rubin and Swirnow for violation of the Equal Pay Act, Dr. Edelman must prove all of the following elements by a preponderance of the evidence:

1. NYU employed Dr. Edelman and male employees in jobs requiring substantially equal skill, effort, and responsibility;

2. the jobs were performed under similar working conditions; and

3. Dr. Edelman was paid lower compensation than the male employees doing substantially equal work.

Under the Equal Pay Act, it is not necessary that the jobs be identical; the Equal Pay Act requires proof that the performance of the jobs demand "substantially equal" skill, effort and responsibility. It is the actual work or performance requirements of the jobs that is important. In evaluating whether the performance requirements of the jobs are substantially equal, you must consider the "skill," "effort" and "responsibility" required for these jobs. I will now tell you what is meant by these terms, "skill," "effort" and "responsibility."

---

[29] Plaintiff objects to this charge *in toto* and incorporates by reference its objections set forth *supra*.

Skill: in deciding whether the jobs require substantially equal "skill" you should consider such factors as the level of education, experience, training, and ability necessary to meet the performance requirements of the respective jobs.

Effort: in deciding whether the jobs require substantially equal "effort" you should consider the mental, physical and emotional requirements for performing the job.

"Equal effort" does not require people to use effort in exactly the same way. If there is no substantial difference in the amount or degree of effort to do the jobs, they require "equal effort." However, if the job of the male employees requires additional tasks that consume a significant amount of extra time and effort that would not be expected of Dr. Edelman, then the jobs do not require substantially equal effort.

Responsibility: in deciding whether the jobs involve substantially equal "responsibility," you should consider the degree of accountability expected by the employer for a person filling the jobs. You should also take into account such things as the level of authority delegated to Dr. Edelman as compared to the male employees, including whether Dr. Edelman and the male employees were equally expected to direct the work of others. Finally, you should consider the consequences to the employer of effective performance in the respective jobs.

You should note that "skill," "effort" and "responsibility" constitute separate tests, each of which must be met in order for the equal pay requirement to apply.

Similar Working Conditions: With respect to the second element of Dr. Edelman's claim, you must find that the jobs are performed under similar working conditions.

Wage Comparison: With respect to the third element of Dr. Edelman's claim, Dr. Edelman's must prove that she was paid a lower pay than male employees doing substantially equal work. In determining the respective levels of pay, you are to consider all forms of compensation, whether

called wages, salary, repayment of loans, or some other name. Fringe benefits are also included in the comparison of wages under the Equal Pay Act.

### 1. Federal Equal Pay Act - Affirmative Defenses

The Equal Pay Act provides several exceptions that allow for the unequal payment for men and women even when they do equal work. One of those exceptions is a broad exception that allows employers to consider factors other than sex in legally setting unequal pay.

Thus, if you conclude that Dr. Edelman has proven each of the three (3) elements she must prove to establish a violation of the Equal Pay Act, you must decide whether NYU and Messrs. Rubin and Swirnow have proven that the pay difference is justified by the factor other than sex defense that I just discussed.

The Defendants have the burden of proving the factor other than sex defense by a preponderance of the evidence. For example, Defendants may prove this defense by showing that the pay difference was due to the higher paid employee's greater experience, objectively better credentials, and held more prestigious positions, than their co-workers. Defendants may also prove this defense by showing market forces and financial inducement to hire the best person for the job. Under this defense, Defendants may also consider past salary alone or past salary with another factor such as those I have mentioned in legally setting different pay for women and men.

Source

29 U.S.C. § 206(d)(1); *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1); *Edelman v. NYU Langone Health Sys.*, No. 21-cv-502 (LGS), 2022 WL 4537972, at *4-*6 (S.D.N.Y. Sept. 28, 2022); *Chiaramonte v. Center*, No. 13-cv-5117 (KPF), 2016 WL 299026, at *8 (S.D.N.Y. Jan. 22, 2016);  29 C.F.R. § 1620.15; 29 C.F.R. § 1620.16; C.F.R. § 1620.17;  29 C.F.R. § 1620.14(a);  29 C.F.R. § 1620.10: *Miller v. City of New York*, No. 15CV7563, 2018 WL 2059841 (S.D.N.Y. May 1, 2018), *aff'd sub nom. Bloise v. City of New York*, 768 F. App'x 103 (2d Cir. 2019); *Husser v. New York City Dept. of Ed.*, 137 F.Supp.3d 253, 269 (E.D.N.Y. 2015); *Osborn v. Home Depot U.S.A., Inc.*, 518 F.Supp.2d 377, 385 (D.Conn. 2007). *See also Setelius*, 2014 WL 4773975, *31 (collecting cases); *Mazzella v. RCA Global Comm., Inc.*, 642 F.Supp. 1531, 1551 (S.D.N.Y. 1986) *aff'd*. 815 F.2d 653 (2d Cir. 1987).

**Proposed Charge No. 5:**
**New York Labor Law § 194[30]**

Dr. Edelman brings a claim under New York Labor Law Section 194. I will refer to this law as "Labor Law Section 194." As applicable here, it prohibits employers from paying men and women differently in the same establishment, except under certain circumstances, as I will explain in more detail momentarily. The Labor Law Section 194 is a strict liability statute, so to succeed a plaintiff does not need to show that an employer intentionally paid her less because she is a woman. Also, both parties bear a burden of proof on this claim; first, Dr. Edelman bears a burden to prove a violation of this section of Labor Law Section 194 by a preponderance of the evidence, and if she satisfies that burden, Defendants have the same burden to prove the same defense as I have already instructed you under the Equal Pay Act above.

Here, Dr. Edelman alleges for the purpose of her Labor Law Section 194 claim that NYU and Messrs. Rubin and Swirnow paid her less than Drs. Goldberg, Porges, and Modi.

The first question for you to determine is whether Dr. Edelman has proved that Drs. Goldberg, Porges, and Modi are comparators under Labor Law Section 194. During the time period at issue, Labor Law Section 194 made it presumptively unlawful for an employer to pay a woman less than a man for equal work on a job the performance of which requires equal skill, effort, and responsibility, and which is performed under similar working conditions, except where payment is made pursuant to a difference based on: (i) a seniority system; (ii) a merit system; (iii) a system

---

[30] Dr. Edelman would prefer use to New York Labor Equal Pay Act and define it as New York Equal Pay Act. However, Defendants object to the global reference proposed by Dr. Edelman to utilize references to the "New York Equal Pay," rather than New York Labor Law § 194. "New York Equal Pay" is a commonly used shorthand among attorneys and the court, but the New York State legislature does not refer to it this way, and it could potentially bias a jury. Plaintiff submits that the term New York Equal Pay Act is proper.

which measures earnings by quantity or quality of production; or (iv) a bona fide factor other than sex, such as education, training, or experience. Alternatively, it is presumptively unlawful for an employer to pay a woman less than a man for equal work on a job the performance of which requires substantially similar work, except where payment is made pursuant to a difference based on: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a bona fide factor other than sex, , such as education, training, or experience. Here, Defendants rely solely on the last exception, a bona fide factor other than sex. [*Defendants object to the highlighted portion because part of Defendants' factor other than sex defense how incentive compensation is paid and which is measured by the level of production.*]

Dr. Edelman must prove by a preponderance of the evidence that Drs. Goldberg, Porges, and/or Modi were performing work equal to the work she performed. Dr. Edelman can satisfy her burden if she proves by a preponderance of the evidence that Drs. Goldberg, Porges, and/or Modi were performing a job requiring equal skill, effort, and responsibility to Dr. Edelman's. This standard requires that Dr. Edelman establishes that the compared jobs entail common duties or contents, and do not simply overlap in titles or classifications. To satisfy this burden, Dr. Edelman must prove that the compared jobs have the same common core of tasks.

There must be a comparison of actual job content. In evaluating whether the work performed was substantially similar to work performed by comparable male employees, you should consider whether the work being compared required similar skill, effort, and responsibility. "Skill" under Labor Law Section 194 refers to the experience, training, education, and ability required to perform a job. "Effort" refers to the mental exertion needed to perform the job. Jobs may require equal effort in their performance even though the effort may be exerted in different

ways. "Responsibility" refers to the degree of accountability required in the performance of the job with the emphasis on the importance of the job obligation.

Finally, if you conclude that Drs. Goldberg, Porges, and/or Modi are comparators under the law that I just described, you must determine whether Dr. Edelman proved that NYU and Messrs. Rubin and Swirnow paid her less than Drs. Goldberg, Porges, and/or Modi. In determining whether NYU and Messrs. Rubin and Swirnow paid Dr. Edelman less than Drs. Goldberg, Porges, and/or Modi, you should examine all amounts earned for work performed at NYU related to clinical compensation [*Defendants object to the highlighted part as misleading and confusing to the jury. Also, Defendants objects because the use of "related to clinical compensation" ignores factors other than sex, economic realities, and the fact that employment agreements were negotiated, including the fact that, for example, research duties were built into Dr. Porges' clinical compensation. Plaintiff submits that this charge is proper, as Defendants are conflating with the clinical compensation she* earned *with the alleged non-discriminatory* reasons why she was paid less than male doctors *performing the same work*], including salary, loans repayments, and incentive compensation bonuses.

If Dr. Edelman has proved these elements, NYU and Messrs. Rubin and Swirnow can avoid liability if they have proved by a preponderance of the evidence that NYU actually paid Drs. Goldberg, Porges, and/or Modi more based on a *bona fide* factor other than sex, and that the factor was both job-related and consistent with business necessity. To meet the burden of establishing business necessity, NYU and Messrs. Rubin and Swirnow must prove by a preponderance of the evidence that the factor considered reflects a genuine business need and has a demonstrable relationship to the job in question or the successful performance of that job.

If you find in favor of Dr. Edelman and also find that Defendants did not prove a bona fide factor other than sex justified a difference in compensation you may find that Dr. Edelman is entitled to a difference in compensation that she has proven to exist. Further, you should then consider whether the Defendants violated Labor Law Section 194 "willfully."[31]

Under Labor Law Section 194, "willful" conduct means the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.[32]

Therefore, in this case, you should indicate that Defendants willfully violated the Labor Law Section 194 if Dr. Edelman has proved, by a preponderance of evidence, that Defendants either knew they were violating the law or that Defendants showed reckless disregard for whether they were violating the law with regard to the compensation NYU paid Dr. Edelman, a female doctor, in comparison to that compensation paid to male doctors. [*Defendants object to the highlighted portion of this charge as repetitive and argumentative.*]

Source:

N.Y. Labor Law § 194(1); 29 C.F.R. § 1620.13(b); *Chiaramonte v. Center*, No. 13-cv-5117 (KPF), 2016 WL 299026, at *8 (S.D.N.Y. Jan. 22, 2016); *Doroz v. Delorio's Foods*, Inc., 437 F. Supp. 3d 140 (N.D.N.Y. 2020); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988) (*citing and adopting Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S. Ct. 613, 625, 83 L. Ed. 2d 523 (1985)).

---

[31] *See* N.Y. Lab. L. § 198(1-a) ("...except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article").

[32] *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 317 (S.D.N.Y. 2011) ("The 'willful' standard under the New York Labor Law 'does not appreciably differ from the FLSA's willfulness standard' in connection with its statute of limitations. [*Kuebel v. Black Decker Inc.*, 643 F.3d 352, 366 … (2d Cir. May 1, 2011) (internal quotation marks omitted).] Under that standard, "[a]n employer willfully violates the [law] when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." [*Id.* (internal quotation marks omitted)]"); *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1015 (2d Cir. 1980) (citing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1970).

**Proposed Charge No. 6[33]:**
**Discrimination Under New York City Human Rights Law**

Separate from her Equal Pay Act and New York Labor Law Section 194 claims, Dr. Edelman brings a ==gender or sex==[34] [*Defendants object to using the terms "gender or sex" because it may confuse the jury into believing there are two separate claims – one for sex discrimination and one for gender discrimination. Defendants submit that only the term sex should be used throughout these charges.  Plaintiff submits that a charge explaining that "gender or sex" refers to a single claim would be appropriate.*] discrimination claim based on allegedly sexist remarks under the New York City Human Rights Law, which I will refer to as the City Law. Under the City Law, it is unlawful for an employer to discriminate against an employee because of ==gender or sex==.

You must determine whether Dr. Edelman has proven by a preponderance of the evidence that the alleged statements and gestures allegedly made to her by Mr. Kaplan and Mr. Antonik actually constituted sexist remarks.

==Further, keep in mind that the City Law is not a general civility code. Thus, even if Dr. Edelman establishes that allegedly sexist remarks were made to her, Defendants can still avoid liability by proving that the complained-of conduct at issue is nothing more than what a reasonable person would consider a "petty slight or trivial inconvenience."== [*Plaintiff objects to the highlighted part above.*]

---

[33] Plaintiff submits that the retaliation charges should come before the discrimination charges under the NYCHRL.

[34] Defendants object to using the terms "gender or sex" throughout all the charges because it may confuse the jury into believing there are two separate claims – one for sex discrimination and one for gender discrimination. Defendants submit that only the term sex should be used throughout these charges.  Plaintiff submits that a charge explaining that "gender or sex" refers to a single claim would be appropriate.

In determining whether Defendants discriminated against Dr. Edelman because of gender in connection with allegedly sexist remarks, you may consider a variety of factors. <mark>In making this determination, however, you may not second-guess Defendants' business judgment. In other words, you may not find discrimination simply because you think that a business decision that Defendants' made was incorrect or unwise, or because you disagree with the decision.</mark> [*Plaintiff objects to the highlighted part above.*]

Source:

N.Y.C. Admin. Code § 8-107(1); *Edelman v. NYU Langone Health Sys.*, No. 21-cv-502 (LGS), 2022 WL 4537972, at *12-14 (S.D.N.Y. Sept. 28, 2022); *Marseille v. Mount Sinai Health Sys., Inc.*, No. 18-12136, 2021 WL 3475620, at *9 (S.D.N.Y. Aug. 5, 2021); *Day v. City of New York*, No. 15-4399, 2015 WL 10530081, at *15-16 (S.D.N.Y. Nov. 30, 2015).

**Proposed Charge No. 7:**
**Title VII Retaliation Again NYU**

Dr. Edelman asserts a claim against defendant NYU of retaliation under Title VII. Retaliation is a legal theory in which a plaintiff alleges that his employer has taken an adverse employment action against her because the plaintiff engaged in some sort of lawfully protected activity.  In this claim, Dr. Edelman asserts that NYU allegedly retaliated against her because she complained to NYU Human Resources about the alleged way Mr. Kaplan and Mr. Antonik spoke to her and made certain gestures when discussing with her about allowing others to use her empty office at Marcus Avenue when she was working elsewhere. [*Plaintiff objects to the highlighted parts above as there exists evidence in the record that she utilized her office on the day Defendants sought to have others use it.*] Dr. Edelman alleges that their words and gestures constituted sexist remarks.

To establish her claims of retaliation, Dr. Edelman must prove by a preponderance of the evidence each and all of the following elements:

1.  she engaged in protected activity by complaining of discrimination in her employment. She must prove that she had a reasonable belief that NYU's conduct violated the laws forbidding discrimination and that she made her complaint in good faith [*Plaintiff objects to the highlighted part above.*] A "protected activity" includes the opposition of any unlawful employment practice or the participation in a legal proceeding against the Defendants.  Here, there is no dispute that Plaintiff opposed an unlawful employment practice when she complained to Human Resources. [*Defendants object to the highlighted language because it is inaccurate since Defendants do dispute whether the alleged discriminatory conduct about*

30

*which Dr. Edelman complained could reasonably be considered unlawful discriminatory conduct; Plaintiff submits that a plain reading of Dr. Edelman's correspondence with Human Resources leads to the inescapable conclusion that she opposed an unlawful employment practice.*];

2. NYU had knowledge of Dr. Edelman's protected activity;

3. NYU subjected Dr. Edelman to a materially adverse employment action; and

4. there was a causal connection between her protected activity and the materially adverse employment action. A causal relationship between the protected activity and the alleged adverse action can be established indirectly, by showing that Dr. Edelman filed a complaint with NYU Human Resources, the protected activity was followed closely by the alleged adverse action, or directly through evidence of retaliatory animus directed against the plaintiff by the defendant because of her complaint. However, proximity in time alone is not enough to prove retaliation. Dr. Edelman must establish by a preponderance of the evidence that NYU subjected her to the adverse employment action because of her participation in the protected activity. Where, as here, the Plaintiff had an employment contract that did not permit her to be fired except for cause, you should consider the time gap and causal connection of the alleged retaliatory termination in relation to the contract, the size and complexity of the defendant employer, and that the termination of employment may involve multiple layers of decisionmakers. In determining whether a causal connection exists between the challenged action and the alleged protected activity, you may consider: (1) timing; (2) the contractual relationship and (3) evidence of ongoing antagonism. These are not the only factors which you may consider,

however. [*Defendants object to the highlighted portions of this charge as it is misleading and confusing for to the Jury because it improperly blends the concepts of temporal proximity with retaliatory animus. It is argumentative and not a proper jury charge as it is not a statement of the law to be applied.*]

This showing creates a presumption of retaliation, which NYU may rebut by merely articulating a legitimate, non-retaliatory reason for each adverse employment action. In determining whether NYU took actions against Dr. Edelman because she opposed what she believed, in good faith, to be sex discrimination, it is important to consider whether the explanations NYU has given for its actions were untrue and that retaliation was the real reason for its actions.

If you find that the reasons NYU gave are not believable, those reasons are considered pretext. Pretext may be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Defendants' proffered reasons for its actions that a reasonable person could rationally find them unworthy of credence, and hence infer that Defendants did not act for the asserted non-discriminatory reasons. [*Defendants object to the highlighted portion as it is circular in reasoning and duplicative of the language that follows.*] In determining whether NYU's explanations for its actions were untrue, you may consider weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Defendants' proffered reasons for its actions that a reasonable person could rationally find them unworthy of credence, and hence infer that Defendants did not act for the asserted non-discriminatory reasons.[35] [*Defendants object to all of*

---

[35] *See* 42 USC §20003-3(a); *see also Littlejohn v. City of New York*, 795 F.3d 297, 315-316 (2d Cir. 2015); *Abrams v. Department of Public Safety*, 764 F.3d 244, 257 (2d Cir. 2014); *Davis v. Metro. Transp. Auth.*, 2012 WL 727696, at *10 (S.D.N.Y. Mar. 6, 2012); *Knight v. City of N.Y.*, 303 F.Supp.2d 485, 496 (S.D.N.Y. 2004); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000); *Risco v. McHugh*, 868 F.Supp.2d 75, 110 (S.D.N.Y. 2012).

*the highlighted language since none of the cases cited by Plaintiff supports this charge. The citations are apparently erroneous since none of the cases cited even touches on this instruction, let alone support it.*]

In making this determination, you should consider the reasonableness, or lack thereof, of NYU's explanation for its decisions, and any evidence that those reasons were unlikely. If you find the reasons articulated by NYU to be unbelievable you still must determine whether retaliation against Dr. Edelman for filing her complaint was the real reason for what occurred.

If you find that NYU did not have a legitimate, non-retaliatory reason for the adverse employment actions, you must find for Dr. Edelman. However, if you find that NYU did articulate a legitimate, non-retaliatory reason for each adverse employment action, then you must determine whether the adverse actions would not have occurred in the absence of a retaliatory motive, even if retaliation was not the only reason for defendant's actions. You must decide whether such actions were adverse actions, and whether Dr. Edelman has proved by a preponderance of the evidence that, in fact, NYU subjected Dr. Edelman to such actions because of a desire to retaliate against her for her participation in a protected activity, rather than the non-retaliatory reasons NYU has put forward.

In other words, you must decide whether Dr. Edelman has established by a preponderance of the evidence of the totality of the circumstances that but for NYU wanting to retaliate against Dr. Edelman for having engaged in a protected activity, Dr. Edelman would not have been subjected to the alleged adverse action even if retaliation was not NYU's only reason for its actions.

It is not your role to second-guess the decisions of NYU that are not based on retaliation. Absent retaliation, an employer such as NYU may subject an employee, such as Dr. Edelman, to an adverse employment action for a good reason, a bad reason, a reason based on erroneous fact,

==or no reason at all.== [*Plaintiff objects to the highlighted part above.*] The sole inquiry here is whether

Dr. Edelman has sustained her burden of proving by a preponderance of the evidence that NYU

subjected Dr. Edelman to an adverse employment action for having engaged in protected activity.

<u>Source:</u>

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; *Edelman v. NYU Langone Health Sys.*, No. 21-cv-502 (LGS), 2022 WL 4537972, at *11 (S.D.N.Y. Sept. 28, 2022); Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2528 (2013); Summa v. Hofstra Univ., 708 F.3d 115 (2d Cir. Feb. 2013); Irons v. Bedford-Stuyvesant Cmty. Legal Servs., No. 13-CV-4467, 2015 WL 5692860, at *17 (E.D.N.Y. Sept. 28, 2015).

**Proposed Charge No. 8:**
**Protected Activity for Retaliation**

In determining whether Defendants unlawfully retaliated against Dr. Edelman for making a complaint to Human Resources about the alleged discriminatory conduct by Messrs. Kaplan and Antonik, you must first decide whether Dr. Edelman engaged in protected activity. Dr. Edelman's complaint to Human Recourse would only be considered protected activity if she made her complaint concerning conduct that a reasonable person would have considered discriminatory based on her sex. If you find that Dr. Edelman was not reasonable in believing that the way Messrs. Kaplan and Antonik spoke with her and made certain gestures constituted sex discrimination, no matter how strongly she felt about it, you must find that her complaint was not protected activity that is was not protected from retaliation under the law. [*Plaintiff objects to the highlighted portion of this charge.*]

Source:

*Irons v. Bedford-Stuyvesant Cmty. Legal Servs.*, No. 13-CV-4467, 2015 WL 5692860, at *17 (E.D.N.Y. Sept. 28, 2015).

**Proposed Charge No. 9:**
**New York State Human Rights Law Retaliation**

Dr. Edelman has also brought a retaliation claim under the New York State Human Rights Law against all Defendants. The New York State Human Rights Law prohibits employers from retaliating against an employee for the employee's opposition to unlawful discrimination.

In order to prove her retaliation claim under the State Human Rights Law, Dr. Edelman must prove each of the following four elements by a preponderance of the evidence:

1.  that she engaged in a "protected activity," such as making a good faith complaint about unlawful discrimination;

2.  that the "protected activity" Dr. Edelman engaged in was known to the Defendants;

3.  that she suffered a "material adverse action;" and

4.  that Defendants took the material adverse action because of Dr. Edelman's "protected activity."

**A.    New York State Human Rights Law Retaliation**
**        First Element — "Protected Activity"**

The first element of a retaliation claim under the New York State Human Rights Law is that the activity Dr. Edelman engaged in that resulted in retaliation against her was an activity protected by law. An employee has a right to report and protest workplace discrimination where such discrimination has actually occurred, or where the employee reasonably believes in good faith that discrimination occurred.

"Protected activity" includes an employee's conduct in opposing in good faith unlawful discrimination by complaining about discrimination to the employer.

To prove that she engaged in protected activity, Dr. Edelman need not establish that she was correct in her complaints or that there was indeed discrimination. She need only show that she had a good faith, reasonable belief that the challenged actions by her employer violated the law.

Dr. Edelman contends that she engaged in protected activity when she reported Mr. Antonik's and Mr. Kaplan's alleged discriminatory actions and statements to NYU's Human Resources representative.

It is for you to decide whether Dr. Edelman's complaint constituted "protected activity" as I have defined that term. If you find that Dr. Edelman was not reasonable in alleging that Mr. Antonik and Mr. Kaplan had discriminated against her by allegedly the way they spoke to her and made certain gestures when discussing her refusing to allow others to use her empty office at Marcus Avenue when she was working elsewhere, then you must find for Defendants. [*Plaintiff objects to the highlighted parts above as evidence in the record establishes that her office was not empty on the day Defendants sought for her to share it with another doctor.*]

In addition, you must decide whether Dr. Edelman reported Mr. Antonik's and Mr. Kaplan's alleged statements and alleged gestures to Human Resources in good faith or whether she did so to extract a benefit from Defendants and prevent her from having to "share" her empty office. If you find that Dr. Edelman did not report her alleged discrimination claims to Human Resources in good faith you must find for Defendants.

### B.   New York State Human Rights Law Retaliation
####       Second Element — Knowledge of Protected Activity

The second element of a retaliation claim under the State Human Rights Law is that Defendants must have known that Dr. Edelman was engaging in protected activity. General corporate knowledge that Dr. Edelman engaged in a protected activity is sufficient to establish this element of a retaliation claim under the New York State Human Rights Law.

C.   **New York State Human Rights Law Retaliation**
     **Third Element — Material Adverse Action**

The third element of a retaliation claim under the State Human Rights Law is that Dr. Edelman suffered a material adverse action. Here, Dr. Edelman contends that Defendants engaged in material adverse actions when NYU did not renew her employment agreement when it expired.

An adverse action is "material" if it would dissuade a reasonable worker from making or supporting a complaint of discrimination.

==In deciding whether the conduct at issue constitutes material adverse actions, you must keep in mind that not every negative action amounts to a material adverse action. Petty slights and minor annoyances do not constitute material adverse actions. You must also keep in mind that context matters, and that the significance of any given act will depend upon the particular circumstances.== [*Plaintiff objects to the highlighted parts above.*]

D.   **New York State Human Rights Law Retaliation**
     **Fourth Element — Retaliatory Motive**

The fourth element of retaliation under the State Human Rights Law that Dr. Edelman must prove by a preponderance of the evidence is that a material adverse action was taken against her because of her protected activity as I have defined that term. For example, proximity in time between an employee's protected activity and an employer's alleged retaliation may, although does not necessarily, establish a causal link between the two.

In considering whether Dr. Edelman has proved that a material adverse action was taken against her because of protected activity she had engaged in, you must first decide whether the Defendants were in fact motivated by a desire to retaliate against her because of her complaints to Human Resources. If not, you must find in favor of Defendants.

If you conclude that Defendants were motivated by a desire to retaliate against Dr. Edelman for having engaged in protected activity, you must next consider whether Defendants also had a non-retaliatory reason for the material adverse action. If you decide that Defendants had no non-retaliatory motive for the material adverse action, and that the material adverse action was solely motivated by retaliatory animus, then you must find for Dr. Edelman on this element. [*Plaintiff objects to the highlighted parts above.*]

However, if Defendants had both retaliatory and non-retaliatory motives for taking the material adverse action against Dr. Edelman, then you must consider whether the retaliatory motive was the "but for" cause of the material adverse action taken against Dr. Edelman. In other words, you must consider whether Defendants would have taken the material adverse action against Dr. Edelman absent the retaliatory motive. [*Plaintiff objects to the highlighted part above.*] If Defendants would not have taken the material adverse action against Dr. Edelman absent a desire to retaliate against her for having engaged in protected activity, then retaliatory animus is the "but for" cause for the material adverse action taken against Dr. Edelman, and you will find in her favor on this element. [*Plaintiff objects to the highlighted parts above.*] If, on the other hand, you decide that that defendant would have taken the material adverse action against Dr. Edelman even absent his or its retaliatory intent, or if that defendants had no retaliatory motive at all, then you must find for the Defendants on this claim.

### i.    Circumstantial Evidence of Retaliatory Motive

You can see from these instructions that it is very important in this case to determine the reasons why certain actions were taken and the intent that motivated those actions. Defendants contend that there were legitimate reasons for the alleged adverse actions taken against Dr. Edelman. Dr. Edelman claims that Defendants' explanations are pretextual, that is, that they are

made up to cover the retaliatory intent, are unworthy of belief, and were not in fact motivating factors. [*Defendants object to the highlighted parts above as it is an unnecessary and prolix preamble, as well as argumentative, and may encourage the Jury to speculate rather than rely on evidence presented. Plaintiff submits that courts routinely find that there is rarely smoking gun evidence of discrimination or retaliation and that, as such, circumstantial evidence is a necessary component to proving such claims; this Court should thus instruct the jury on this issue.*]

How do juries go about deciding what was in someone's mind? The state of someone's mind presents a question of fact and it is an issue that you will have to decide in this case.

Direct proof concerning state of mind is often not available. A person's state of mind might be inferred, however, from that person's words, actions, and conduct. A person's state of mind might be established by surrounding facts and circumstances at the time an action was taken, and the reasonable inferences to be drawn from those facts and circumstances.

However, an employee who has engaged in protected activity, such as complaining about discrimination, is not entitled to special treatment. That is, she should not be in a better position than other employees solely because she made the complaint of discrimination. [*Plaintiff objects to the highlighted parts above.*]

## ii.    Non-Retaliatory Reasons

When you consider the question of retaliatory motive, you are not to judge the wisdom of a Defendants' actions, but instead, to decide whether the non-retaliatory reasons advanced by Defendants were the actual reasons for the Defendants' actions. [*Plaintiff objects to the highlighted parts above.*] An employer or supervisor is entitled to make decisions for good reasons, bad reasons, or for no reason at all, so long as the decision is not motivated by unlawful retaliation. The issue in this case is not whether you would have taken any of the alleged adverse actions

against Dr. Edelman if you were in charge. Rather, you are to determine whether the Defendant you are considering took the alleged adverse actions against Dr. Edelman because of non-retaliatory reasons, or because of her protected activity.

If you believe that the reasons offered by a Defendant for adverse actions taken against Dr. Edelman are false, you may — but are not required to — infer that that Defendant acted out of a desire to retaliate against her. However, if you find that the reasons given by a defendant for the alleged adverse actions are false, that does not necessarily mean that the true motive was the illegal, retaliatory motive argued by Dr. Edelman. [*Plaintiff objects to the highlighted part above.*]

Dr. Edelman's personal, subjective belief that she was retaliated against is not sufficient to meet her burden of proof. [*Plaintiff objects to the highlighted parts above.*]

In determining whether Dr. Edelman has carried her burden of proving retaliatory intent, you will consider all the facts and circumstances that your common sense and good judgment tell you are relevant to deciding why someone acted as they did. The central question is whether the Defendants took the alleged adverse actions against Dr. Edelman at least in part because she engaged in a protected activity, and the burden is on Dr. Edelman to prove that.

**E.    New York City Human Rights Law Retaliation Claim**

     **i.    Overview of Elements**

Dr. Edelman also asserts a retaliation claim under the New York City Human Rights Law. The elements of a retaliation claim under the City Human Rights Law are similar to those under the State Human Rights Law, but there are some important differences, which I will explain. The New York City Human Rights Law makes the Defendants liable for retaliation in any manner against Plaintiff for his opposition to Defendants' conduct. Any manner of retaliation is sufficient. For Plaintiff to prevail on this issue, she must show, by a preponderance of the evidence: (1) that

she took an action opposing his employer's discrimination, and (2) that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.

[*Defendants object to the highlighted portion of the charge because it ignores Plaintiff's burden of proof showing that the conduct complained of could reasonably be believed to be discriminatory and that her complaint was made in good faith.*]

To prevail on her retaliation claim under the New York City Human Rights Law, Dr. Edelman must prove each of the following four elements by a preponderance of the evidence:

1.  that she engaged in protected activity, such as making a complaint to her employer about unlawful discrimination;

2.  that the protected activity Dr. Edelman engaged in was known to the defendant you are considering;

3.  that the defendant you are considering engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity; and

4.  that the defendant's conduct was motivated, at least in part, by Dr. Edelman's protected activity.

### ii.      New York City Human Rights Law Retaliation
###         First Element — Protected Activity

In deciding whether Dr. Edelman engaged in protected activity under the City Human Rights Law, the instructions regarding protected activity set forth in connection with Dr. Edelman's New York State Human Rights Law retaliation claim apply with equal force.

### iii.     New York City Human Rights Law Retaliation
###         Second Element — Knowledge of Protected Activity

In deciding whether Dr. Edelman has proved that the Defendants were aware that she had engaged in protected activity, the instructions on this issue given in connection with Dr. Edelman's

New York State Human Rights Law retaliation claim apply with equal force to her City Human Rights Law retaliation claim.

      **iv.**      **New York City Human Rights Law Retaliation**
                    **Third Element — Conduct Reasonably Likely To Deter**

The third element of a retaliation claim under the City Human Rights Law is that the defendant you are considering engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity.

Here, Dr. Edelman contends that the non-renewal of her ==expiring== contract was reasonably likely to deter a person from engaging in protected activity. [*Plaintiff objects to the highlighted part above.*]

To constitute retaliatory conduct under the City Human Rights Law, a defendant's conduct need not be "materially adverse" to a plaintiff. Instead, you need only find that the conduct at issue was reasonably likely to deter a person from engaging in protected activity.

In deciding whether the conduct at issue constitutes conduct that is reasonably likely to deter a person from engaging in protected activity, you must keep in mind that not every instance of negative conduct amounts to conduct that is reasonably likely to deter a person from engaging in protected activity. ==Petty slights and minor annoyances do not constitute conduct that is reasonably likely to deter a person from engaging in protected activity. You must also keep in mind that context matters, and that the significance of any given act will depend upon the particular circumstances.== [*Plaintiff objects to the highlighted parts above.*]

      **v.**      **New York City Human Rights Law Retaliation**
                    **Fourth Element — Retaliatory Motive**

The fourth element of retaliation under the City Human Rights Law that Dr. Edelman must prove by a preponderance of the evidence is that the defendant's desire to retaliate against her for

engaging in a protected activity was a motivating factor in the decision to engage in conduct that was reasonably likely to deter a person from engaging in protected activity. Dr. Edelman contends that the Defendants took action against her because she protested discrimination by Mr. Antonik and Mr. Kaplan. Defendants claim that the actions at issue were taken because of their legitimate concerns about Dr. Edelman's job performance and her alleged failure to meet NYU's clinical standards for rheumatology practice.

In order to carry her burden as to this element, Dr. Edelman need not establish that her protected activity was the sole or principal reason for any action that a defendant took against her that constitutes conduct that would be reasonably likely to deter a person from engaging in protected activity. The City Human Rights Law is violated when retaliatory intent is a motivating factor for a defendant's action, whether or not that retaliatory motive was the sole cause for the action. If Dr. Edelman proves that there was a retaliatory motive for any action Defendants took against her that would be reasonably likely to deter a person from engaging in protected activity, this element is satisfied. Dr. Edelman may show either that the individual who made the decision to take such action was motivated in part by a desire to retaliate against her, or that an individual who was substantially motivated by retaliatory intent played a meaningful role in the decision.

The instructions I gave you in connection with Dr. Edelman's retaliation claim under the State Human Rights Law regarding circumstantial evidence of retaliatory motive and non-retaliatory reasons apply with equal force[36] to her retaliation claim under the City Human Rights Law.

### vi.    New York City Human Rights Law Retaliation

---

[36]  Plaintiff believes that it is better to repeat the original charge rather than state it applies with equal force. Defendants disagree because they believe it is a burden on the Jury to have this repetitive charge. In the event the Court determines to again deliver these portions of the charge then Defendant renew their objections made in those sections.

**Affirmative Defense**

If you find that Dr. Edelman has proved all the elements of her retaliation claim under the City Human Rights Law, you must then decide whether the defendant you are considering has proved by a preponderance of the evidence that the action taken against Dr. Edelman would have been taken on the basis of non-retaliatory reasons alone. The Defendants here claim that any action taken against Dr. Edelman that was reasonably likely to deter a person from engaging in protected activity was taken for a non-retaliatory reason.

In deciding whether the defendant you are considering has satisfied his or its burden on this issue, follow these steps: Consider whether the defendant has proved that the decision to take an action against Dr. Edelman that was reasonably likely to deter a person from engaging in protected activity was motivated by a non-retaliatory reason in addition to a retaliatory motive. If you find that the defendant you are considering was not motivated by any non-retaliatory reason, you must find for Dr. Edelman. If, however, you find that the defendant had non-retaliatory reasons for his or its action, you must determine whether the defendant has proved that he or it would have taken this action against Dr. Edelman based upon these non-retaliatory reasons alone.

Source:

N.Y.C. Admin. Code § 8-107(7); *Edelman v. NYU Langone Health Sys.*, No. 21-cv-502 (LGS), 2022 WL 4537972, *14 (S.D.N.Y. Sept. 28, 2022); *Tang v. Glocap Search LLC*, No. 14-1108, 2015 WL 5472929, at *2-*3 (S.D.N.Y. Sept. 16, 2015; *Livingston v. City of New York*, 563 F. Supp. 3d 201, *234 (S.D.N.Y. 2021); *Leroy v. Delta Air Lines, Inc.*, 36 F.4th 469, 474 (2nd Cir. 2022) (to establish a retaliation under NYCHRL, plaintiff must prove that the complaint of discrimination "was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful.").

**III. DAMAGES**

**Proposed Charge No. 10:**
**<u>Damages Generally</u>**

I will now instruct you on the measure of damages you should award to Dr. Edelman in the event you conclude that Dr. Edelman has proven her claims for unequal pay, discrimination based on sexist remark, and/or retaliation. The law permits me to charge you on damages now so that in the event you decide that Dr. Edelman is entitled to prevail on her claims and you reach the issue of damages, you will not have to file back in to listen to my charge on damages.

You should not interpret the fact that I am giving instructions about damages now as an indication that I believe that Dr. Edelman should, or should not, receive damages. It is your task and yours alone to decide whether Dr. Edelman is entitled to prevail on her claims. In other words, you should only reach the issue of what damages may be appropriate if you decide that Dr. Edelman prevails on any of her claims.

You may award only those damages that Dr. Edelman has proved by a preponderance of the evidence. Any damages that you may choose to award should be based on the evidence presented at trial.

Dr. Edelman's claims each are entitled to a separate determination of damages by the jury. I will explain each category of damages separately, but generally Dr. Edelman seeks alleged front and back pay, compensatory damages, liquidated damages, and punitive damages.

**Proposed Charge No. 11:**
**Damages –Front and Back Pay under Title VII**

Dr. Edelman has sued for retaliation under Title VII against NYU. It is for this Court alone to determine any amount of front and back pay to be awarded, if any, for any violation of Title VII that you may have found was committed. [*Plaintiff objects to the highlighted parts above.*]

Source:

*Broadnax v. City of New Haven*, 415 F.3d 265, 271 (2d Cir. 2005).

**Proposed Charge No. 12:**
**Damages – Front and Back Pay under New York State Human Rights Law and**
**New York City Human Rights Law**

The economic loss Dr. Edelman has allegedly suffered as a result of any of claims she has put forth is called "front" and "back" pay. Back pay consists of the value of not only salary, but also bonuses, expense reimbursement, tuition [*See Defendants' objection above*], and other forms of compensation and benefits that Dr. Edelman would have received if not for Defendants' unlawful conduct, if that is what you find. Front pay damages, if any, represent a plaintiff's lost salary and benefits, caused by an unlawful discharge or other adverse action, accruing from the time of trial through some point in the future. Factors to be considered in determining front pay include the age of the plaintiff and her reasonable prospects of obtaining comparable employment. If you find that Dr. Edelman found comparable alternative employment following the non-renewal of her contract, then you may not award her front-pay. [*Plaintiff objects to the highlighted portion.*]

Specifically, Dr. Edelman asserts that, because she made allegedly protected complaints of discrimination, Defendants did not renew her employment contract when it was expiring. Your job as the jury is to determine what damages, if any, Dr. Edelman has proved by a preponderance of the evidence for each claim that she has proven, if any.

If Dr. Edelman has proved a claim, she would be entitled to lost wages and benefits arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Dr. Edelman should be resolved in her favor. That said, Dr. Edelman has the burden of proving that she actually incurred a loss of front and back pay.

Please note that Dr. Edelman is only entitled to be compensated once for any alleged front or back pay that arose from her proven retaliation claims.

In giving you this charge, I am not suggesting that you find one way or the other as to whether Dr. Edelman has actually proved her retaliation claims. [*Plaintiff objects to the highlighted parts above.*]

Source:

*Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573 (S.D.N.Y. 2011); DeCurtis v. Upward Bound Intern., Inc., No. 09-5378, 2011 WL 4549412, at *3 (S.D.N.Y. Sept. 27, 2011); E.E.O.C. v. United Health Programs of Am., Inc., 350 F. Supp. 3d 199, 229 (E.D.N.Y. 2018).

**Proposed Charge No. 13:**
**<u>Damages - Compensatory Damages</u>**

If you find that Dr. Edelman has established any of her claims of gender retaliation under the City Law, you may award her compensatory damages for injuries such as emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life. Compensatory damages are an amount that will fairly compensate her for any injury she actually sustained as a result of Defendant's conduct. There is no requirement that a claim of emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damages. No expert testimony is necessary to prove such harm, and you may rest your findings solely on Dr. Edelman's testimony.

No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Rather, you may issue an award of monetary damages based on the emotional harm you determine Dr. Edelman to have suffered, based on the evidence presented and your best judgment. Any award you make should be fair in light of the evidence presented at the trial.

<u>Source:</u>

*DeCurtis v. Upward Bound Intern., Inc.*, No. 09-5378, 2011 WL 4549412, at *3 (S.D.N.Y. Sept. 27, 2011).

**Proposed Charge No. 14:**
**Statutory Damages under the Equal Pay Act**[37]

If you find that NYU and Messrs. Rubin and Swirnow violated the Equal Pay Act, Dr. Edelman is also entitled to certain statutory damages. Under the Equal Pay Act Dr. Edelman would be entitled to damages in the amount she was paid less than men for equal work.

Further, you should then consider whether the Defendants violated Labor Law Section 194 "willfully."[38]

Under Labor Law Section 194, "willful" conduct means the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.

Therefore, in this case, you should indicate that Defendants willfully violated the Labor Law Section 194 if Dr. Edelman has proved, by a preponderance of evidence, that Defendants either knew they were violating the law or that Defendants showed reckless disregard for whether they were violating the law with regard to the compensation NYU paid Dr. Edelman.

This Court has already determined that there is no triable issue concerning intentional discrimination by the Defendants. In light of such determination, I am instructing you that the Defendants' conduct did not constitute a willful violation of the law. Thus, in determining what damages might be available to Plaintiff if she were to prove her case by a preponderance of the evidence no liquidated or punitive damages could be awarded for willful violation. [*Plaintiff*

---

[37] Plaintiff objects to this charge *in toto* because it requires the jury to determine the issue of liquidated damages, and submits that the jury should make a finding solely as to willfulness and/or good faith. Moreover, should the jury make a finding of willfulness, they should not make any finding as to good faith.

[38] *See* N.Y. Lab. L. § 198(1-a) ("...except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article").

*objects to the highlighted parts above.  Defendants respectfully refer the Court to their Trial Memorandum of Law (Dkt. #191.*]

<u>Source:</u>

*Edelman v. NYU Langone Health Sys.*, No. 21-cv-502 (LGS), 2022 WL 4537972, at *9 (S.D.N.Y. Sept. 28, 2022); *Perry v. City of New York*, 552 F.Supp.3d 433, 551 (S.D. N.Y. 2021); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988) (*citing and adopting Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S. Ct. 613, 625, 83 L. Ed. 2d 523 (1985)).

**Proposed Charge No. 15:**
**Statutory Damages under New York Labor Law § 194[39]**

If you find that NYU and Messrs. Rubin and Swirnow violated Labor Law Section 194, Dr. Edelman is also entitled to certain statutory damages, unless you find that NYU and Messrs. Rubin and Swirnow acted in good faith. [*Plaintiff objects to the highlighted parts above.*]

Under the law, if you find for Dr. Edelman on liability, it is NYU, Mr. Rubin, and Mr. Swirnow's burden to demonstrate by a preponderance of the evidence that they acted in good faith. Whether they acted in good faith will impact the amount of damages you award, if any. [*Plaintiff objects to the highlighted parts above.*]

Good faith has two requirements. First, NYU and Messrs. Rubin and Swirnow must produce plain and substantial evidence of at least an honest intention to ascertain what Labor Law Section 194 requires and to comply with it. Second, NYU and Messrs. Rubin and Swirnow must demonstrate objectively reasonable grounds for believing it was in compliance with the law. Such reasonable grounds may include but are not limited to reliance on judicial decisions, the acts or opinions of a government agency, or the advice of an attorney.

Good faith generally requires an employer to take active steps to ascertain the dictates of the statute and then move to comply with it.

---

[39] Plaintiff objects to this charge *in toto* because it requires the jury to determine the issue of liquidated damages, and submits that the jury should make a finding solely as to willfulness and/or good faith. Moreover, should the jury make a finding of willfulness, they should not make any finding as to good faith. Defendants submit that, regardless of the burden of proof, it is for the jury to determine whether Defendants acted in good faith and would have to determined whether Defendants conduct was willful but for the fact that the Court has already determined that there is no intentional misconduct on the part of Defendants. See Defendants' Pre-Trial Memorandum of Law (Dkt. 191).

That a defendant did not purposefully violate the statute, or that it was merely ignorant of the law, is not sufficient to establish that it acted in good faith. Nor is good faith demonstrated by conformity with industry-wide practice.

If you find that NYU and Messrs. Rubin and Swirnow violated the Labor Law Section 194, you must also consider whether NYU's and Messrs. Rubin's and Swirnow's actions were willful. Willfulness is established if NYU and Messrs. Rubin and Swirnow knew or showed a reckless disregard for whether its unequal compensation of Dr. Edelman was prohibited by law. It is Dr. Edelman's burden to establish NYU's and Messrs. Rubin's and Swirnow's willfulness by a preponderance of the evidence. Whether NYU and Messrs. Rubin and Swirnow acted willfully will also impact the amount of damages you award, if any. [*Plaintiff objects to the highlighted parts above.*]

If you find that Dr. Edelman has proved by a preponderance of the evidence that NYU and Messrs. Rubin and Swirnow knew or showed a reckless disregard for whether or not its payment of her complied with the law, you may find that it acted willfully. You may find that NYU and Messrs. Rubin and Swirnow acted willfully even if you find that they did not act with an intent to violate the law. This is because willfulness can be shown where a defendant acts with reckless disregard for the law. Unlike the good faith standard, however, a simple ignorance of the law precludes a finding of willfulness. In other words, mere negligence is not sufficient to establish willfulness. Similarly, if you find that NYU and Messrs. Rubin and Swirnow attempted to comply with Labor Law Section 194, you may not find that it acted willfully.

As you will see on the verdict sheet, if you find NYU and Messrs. Rubin and Swirnow violated the Equal Pay Law, you must determine both whether it acted in good faith and whether its violation of the law was willful.

If you find that NYU's and Messrs. Rubin's and Swirnow's conduct was willful, you must also find that its conduct was not taken in good faith. By the same token, though, if you find that NYU's and Messrs. Rubin's and Swirnow's conduct was in good faith, you cannot find that their conduct was willful.  [*Plaintiff objects to the highlighted parts above.*]

Source:

N.Y. Lab. Law § 198(1-a); *Haifeng Xie v. Sakura Kai I Inc.*, No. 17-7509, 2019 WL 1568756, at *8 (E.D.N.Y. Apr. 11, 2019); *Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665, 678 (S.D.N.Y. 2017).

**Proposed Charge No. 16:**
**Duplicate Damages**

Dr. Edelman cannot recover more than once for the same injury.

Thus, for example, if you were to find that Dr. Edelman was paid unlawfully less than men under the Equal Pay Act and that she was also paid less than men in violation of New York Labor Law Section 194, Dr. Edelman can only recover once for that alleged lower payment.

Likewise, if you were to find that Dr. Edelman proved damages based on alleged retaliation, she could only recover once for retaliation even if the alleged retaliatory conducted violated Title VII, New York State Human Rights Law, and the New York City Human Rights Law.

Also, if you find that Dr. Edelman proved her alleged retaliation claims based on the Defendants' conduct, she would still be entitled to only a single award of damages for the alleged retaliation of all the Defendants. For example, if you were to find that all of the Defendants retaliated against Dr. Edelman, she could only be given a single award of damages for the retaliation by all of them.  [*Plaintiff objects to the highlighted parts above.*]

Source:

*Anderson v. YARP Rest., Inc.*, No. 94CIV.7543(CSH)(RLE), 1997 WL 27043, at *7 (S.D.N.Y. Jan. 23, 1997).

## Proposed Charge No. 17:
## <u>Damages - Punitive Damages</u>

If you find that Dr. Edelman prevails on any of her claims of retaliation, you may, but are not required to, award her punitive damages.

Punitive damages differ from compensatory damages in that they are intended only to address gross misbehavior or conduct that willfully or wantonly causes hurt to another. They may only be awarded for exceptional misconduct which transgresses mere negligence. They are warranted only where aggravating factors demonstrate an additional level of wrongful conduct.

Punitive damages, if awarded, are meant to punish a defendant and to set an example in order to deter the defendant and others from committing similar acts in the future. In other words, punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct. There is no exact rule by which to determine the amount of punitive damages. It is up to the jury to decide what amount is sufficient to punish the defendant.

A plaintiff may be awarded punitive damages only where she proves by a preponderance of the evidence that the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Under this standard, a defendant need not know that they were violating the law, and the plaintiff is not required to prove intentional or malicious conduct.

Even if Dr. Edelman carries her burden to prove that a particular NYU employee engaged in willful or wanton negligence, recklessness, or a conscious disregard of her rights under the City Human Rights Law, you may award punitive damages only if Dr. Edelman proves by a preponderance of the evidence that (1) the offending employee exercised managerial or supervisory responsibility, (2) NYU knew of the offending employee's discriminatory conduct and acquiesced in it or failed to take immediate and appropriate corrective action, or (3) if NYU should

have known of the offending employee's unlawful retaliatory conduct but failed to exercise reasonable diligence to prevent it.

In calculating a punitive damages award, you should consider, among other things, the (1) nature and reprehensibility (if any) of Defendants' conduct, including the character of the wrongdoing and Defendants' awareness of what harm the conduct caused or was likely to cause; (2) the amount of time Defendants engaged in the conduct (if any); and (3) Defendants' financial condition and the impact your punitive damages award will have on Defendants. If you award punitive damages, you may consider Defendants' net worth and the impact of paying that award. Keep in mind that punitive damages are not intended to, and may not be used to, compensate Dr. Edelman for her injuries. Instead, the purpose of punitive damages is to punish a defendant and to deter similar conduct in the future. Any punitive damages award should be limited to the amount reasonably necessary to achieve the goals of punishment and deterrence.

Source:

N.Y.C. Admin. Code §§ 8-107(13), 8-502; *Chauca v. Abraham*, 67 N.Y.S.3d 85 (2017).

## IV. CLOSING INSTRUCTIONS

**Proposed Charge No. 18:**
**<u>Duty to Deliberate/Unanimous Verdict</u>**

Shortly, you will go into the jury room to begin your deliberations. In order to prevail on her claims, Dr. Edelman must sustain her burden of proof as I have explained to you with respect to her claims. Defendants must carry their burden as to those areas I have likewise identified for you.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. Every juror should be heard. No one juror should hold center stage in the jury room, and no one juror should control and monopolize the deliberations. If, after listening to your fellow jurors, and if, after stating your own view, you become convinced that your view is wrong, do not hesitate to change your view. On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered. Your final vote must reflect your conscientious belief as to how the issues should be decided.

Your verdict must be unanimous. Until such time as you reach unanimous agreement, you must not reveal the standing of the jurors, that is, the split of the vote, to anyone, including the court.

Your duty is to decide the issues fairly and impartially, and to see that justice is done. Remember at all times, you are not partisans. You are judges – judges of the facts. Your sole interests are to seek the truth from the evidence in the case, and to determine whether Dr. Edelman has proved her claims and, where required, Defendants have proved their defenses by a preponderance of the evidence. Discuss and weigh your respective opinions dispassionately,

without regard to sympathy, without regard to prejudice or favor for either party, and adopt that

conclusion which in your good conscience appears to be in accordance with the truth.

**Proposed Charge No. 19:**
**<u>Right to See Exhibits and Hear Testimony; Communications with Court</u>**

Your first duty in the jury room is to elect one member of the jury as your foreperson. The foreperson has no greater voice or authority than any other juror, but is the person who will communicate with the Court when questions arise.

If during your deliberations you want to see any of the exhibits, you may request that they be sent to you in the jury room. A list of exhibits received in evidence will be forwarded to you in the jury room. If you want any of the testimony read, that can also be done and will occur here in open court.

Your requests for exhibits or testimony – in fact, any communication with the Court – should be made to me in writing, signed by your foreperson, and given to the Marshal. I will respond to any questions or requests you have as promptly as possible, by having you return to the courtroom so that I can address you in person. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

**Proposed Charge No. 20:**
**<u>Return of Verdict</u>**

After you have reached a verdict, your foreperson will fill out the jury verdict form that will be given to you, sign and date it, and advise the Marshal outside your door that you are ready to return to the courtroom.

I stress that each of you should be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court, and officially recorded, it cannot ordinarily be revoked.

I will remind you that you took an oath to render judgment impartially and fairly, without regard to prejudice or sympathy and without fear, solely upon the evidence and the applicable law. So that is your duty, and I know you will do your duty and reach a just and fair verdict.

I have just one more comment. I don't think it is necessary because it seems that even though you haven't known each other very long you have a good relationship, but it is the custom in this courthouse to say it. You should treat each other with courtesy and respect during your deliberations. All litigants stand equal in this room. All litigants stand equal before the bar of justice. Your duty is to decide between these parties fairly and impartially to see that justice is done, all in accordance with your oath as jurors. Thank you for your time and your attentiveness, and now the case is in your hands.

Dated: April 3, 2023
New York, New York

**[Intentionally left blank – see next page]**

APPROVED AS TO FORM AND SUBSTANCE

**MILMAN LABUDA LAW GROUP PLLC**
*Attorneys for Plaintiff*

By:___*/s/ Emanuel Kataev*_____
    Joseph M. Labuda
    Emanuel Kataev
    3000 Marcus Avenue, Suite 3W8
    Lake Success, NY 11042-1073
    (516) 328-8899
    joe@mllaborlaw.com
    emanuel@mllaborlaw.com

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendants*

By:___*/s/ Richard L. Steer*_____
    Richard L. Steer
    Justin Chu
    Ingrid J. Cardona
    1350 Broadway, 11th Floor
    New York, NY 10018
    (212) 216-8000
    rsteer@tarterkrinsky.com
    jchu@tarterkrinsky.com
    icardona@tarterkrinsky.com

_____
      **LORNA G. SCHOFIELD**
    **UNITED STATES DISTRICT JUDGE**