UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. SARI EDELMAN,<br><br>               Plaintiff,<br><br>    – against –<br><br>NYU LANGONE HEALTH SYSTEM, NYU LANGONE HOSPITALS, NYU LANGONE MEDICAL CENTER, NYU LANGONE NASSAU RHEUMATOLOGY, NYU SCHOOL OF MEDICINE, NYU GROSSMAN SCHOOL OF MEDICINE, NYU HOSPITALS CENTER, ANDREW T. RUBIN, DAVID KAPLAN, JOSEPH ANTONIK, and JOSHUA SWIRNOW,<br><br>               Defendants. | Case No. 1:21-cv-502 (LGS)(GWG) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S OMNIBUS MOTION *IN LIMINE* TO PRECLUDE AFFIRMATIVE DEFENSES, EXHIBITS, AND WITNESSES OFFERED BY DEFENDANTS**

**TARTER KRINSKY & DROGIN LLP**
Richard L. Steer
Justin Chu
Ingrid J. Cardona
1350 Broadway, 11th Floor
New York, NY 10018
(212) 216-8000
rsteer@tarterkrinsky.com
jchu@tarterkrinsky.com
icardona@tarterkrinsky.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

I.   PLAINTIFF'S MOTION TO EXCLUDE DEFENDANTS' DEFENSES SHOULD BE DENIED IN ITS ENTIRETY .................................................. 1

II.  DEFENDANTS' EXHIBITS SHOULD BE ADMITTED, AS PLAINTIFF HAS FAILED TO EVIDENCE ANY BASIS TO EXCLUDE THEM ........................................................................................ 6

   A.   Email Complaints about Plaintiff
        (Kataev Decl., Ex. D (D1-D2, D66-D67) (Doc. 185-4)). .......................................... 6

   B.   Patient complaints & patient records
        (Kataev Decl., Ex. E (D16, D1132-D1175, D1196-D1485) (Doc. 185-5)). ............... 7

   C.   Plaintiff's loan & mortgage documents
        (Kataev Decl., Ex. F (D76-D132) (Doc. 185-6)). ....................................................... 7

   D.   Defendants' Faculty Group Practice
        (Kataev Decl., Ex. G (D537-D544) (Doc. 185-7)). .................................................... 8

   E.   E-mail from Human Resources Representative, Rashidat Ogbara
        (Kataev Decl., Ex. H (D001090) (Doc. 185-8)). ........................................................ 8

   F.   Dr. Andrew Porges' Business Plan
        (Kataev Decl., Ex. I (D1486-D1487) (Doc. 185-9)). .................................................. 9

   G.   Plaintiff's employment agreement with subsequent employer
        (Kataev Decl., Ex. J (P1-P13) (Doc. 185-10)). ........................................................... 9

   H.   Plaintiff's EEOC Charge & related documents
        (Kataev Decl., Ex. K (P355-P382) (Doc. 185-11)). .................................................. 10

   I.   Defendants' Rule 56.1 Statement of Facts (Doc. 108-1). ......................................... 10

III. PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF "UNDISCLOSED" WITNESSES ........................................................................................11

I. **PLAINTIFF'S MOTION TO EXCLUDE DEFENDANTS' DEFENSES SHOULD BE DENIED IN ITS ENTIRETY**

Plaintiff states mere conclusions by her Counsel instead of authorities to support her motion to exclude several Defendants' defenses.[1] Plaintiff incorrectly categorizes all Defendants' defenses listed in the as-filed JTPO as "affirmative defenses."[2] A defense is "[a] defendant's stated reason why the plaintiff … has no valid case." Black's Law Dictionary (11th ed. 2019). While an affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's … claim, even if all the allegations in the complaint are true." Black's Law Dictionary (11th ed. 2019); *see also United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017) (citation omitted).) "A negating defense, in contrast to an affirmative defense, 'tends to negate the existence of the elements' that the plaintiff must prove at trial." *Bricklayers Ins. & Welfare Fund Bricklayers Pension Fund v. P.P.L. Constr. Servs. Corp.*, No. 12-CV-3940 DLI RML, 2015 WL 1443038, at *5 (E.D.N.Y. Mar. 27, 2015) (citation omitted).) Thus, Plaintiff improperly attempts to blur the distinction between "affirmative defenses" and "negating defenses."

Plaintiff has the burden of proving each disputed part of her claims. She ignores this by contending, in conclusory fashion, that Nos. 12-13, 22-25, 27-28, 30-32, and 34, are affirmative defenses that were required to be pleaded by Defendants in their Answer, even though *Plaintiff* has the burden of proof on each one of them and/or they are merely facts negating Plaintiff's claims of purported wrongdoing on the part of any of the Defendants.

---

[1] Plaintiff cites to no authority other than *Schwind v. EW & Assocs., Inc.*, 357 F. Supp. 2d 691, 697 (S.D.N.Y. 2005), and *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 176 (2d Cir. 2014), neither of which address motions in limine and only address if an affirmative defense is not plead (which is not the case here).

[2] For reference purposes, Plaintiff submitted pages 3-6 of the "as-filed JTPO" (Kataev Decl., Ex. A (Doc. 185-1) and numbered the defenses 1-38. Defendants use those references herein.

<u>EPA Claims</u>

For example, Nos. 12 and 13 (Doc. 185-1) (concerning CPT codes, their reimbursement values, and how they are used) go to Plaintiff's burden of proof on her claim for purported violations of the Equal Pay Act, as the various CPT codes have values associated with them which go to the value of the work performed by Plaintiff and the value of the work that she was performing. For Plaintiff to prevail on such claim, Plaintiff must prove all the following elements: (1) NYU employed Plaintiff and male employees in jobs requiring substantially equal skill, effort, and responsibility; (2) the jobs were performed under similar working conditions; and (3) Plaintiff was paid lower compensation than the male doctors performing substantially equal work. *See Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 580–81 (2d Cir. 2020); *Chiaramonte v. Ctr.*, No. 13 CIV. 5117 (KPF), 2016 WL 299026, at *8 (S.D.N.Y. Jan. 22, 2016).

If Plaintiff proves each of those three elements, only then must Defendants NYU and Messrs. Rubin and Swirnow prove the wage disparity is justified by an affirmative defense, such as because the wage disparity was based on a factor other than sex (which is pleaded as the Fifth Affirmative Defense (Answer ¶ 92). *Chiaramonte*, 2016 WL 299026, at *9.

<u>Labor Law Section 194 Claims</u>

Defendants have raised a defense that Drs. Goldberg, Porges, and Modi were not proper comparators with Plaintiff. (Doc. 185-1, 1.) Plaintiff allege this defense is waived because Defendants did not plead it in their Answer. However, Defendants have no burden to plead or prove this. It is rather Plaintiff's burden to prove that Drs. Goldberg, Porges, and Modi are her comparators under Section 194. *See Chiaramonte*, 2016 WL 299026, at *5, *9. In any event, Defendants' Fourteenth Affirmative Defense states "Upon information and belief, Plaintiff did not perform equal work with her alleged comparators within the meaning of the Equal Pay Act."

(Answer ¶ 100.)

New York City Human Rights Law Claims (NYCHRL)

With respect to Plaintiff's claim that Defendants failed to plead affirmative defenses in connection with her discrimination claim under the NYCHRL, it is Plaintiff's burden to prove that the statement and gestures allegedly made to her were sexist remarks. Regarding her NYU NYCHRL claim, Defendants have no burden of proof, *viz*: "[f]ollowing that minimal showing, a burden of **production** shifts to the defendant to 'put forward evidence of one or more non-discriminatory motivations for its actions.'" *Edelman v. NYU Langone Health Sys.*, No. 21-cv-502 (LGS), 2022 WL 4537972, *13 (S.D.N.Y. Sept. 28, 2022) (*emphasis added*). Defense Nos. 23, 24, and 25 (Doc. 185-1) (concerning the alleged statements and gestures) each go to Plaintiff's burden of proof that these alleged acts occurred and are not affirmative defenses that were required to be pleaded by Defendants. As noted, Plaintiff cites to no authority for her contention.

Moreover, the NYCHRL does not create a general civility code (Doc. 185-1, No. 20). *Id.*, at *14. Plaintiff's contention that the discrimination statutes do not create a general civility code should have been pleaded by Defendants as an affirmative defense is incorrect and Plaintiff cites to no authority for such contention.

Claims of Purported Retaliation

Plaintiff has the burden of proof to prove every element of her retaliation claims under Title VII, the NYSHRL, and the NYCHRL. *Edelman*, 2022 WL 4537972, at *11; *Moazzaz v. MetLife, Inc*, No. 19-CV-10531 (JPO), 2021 WL 827648, at *13(S.D.N.Y. Mar. 4, 2021).

Defendants' inclusion of No. 34 (185-1) stating "There is no evidence of pretext, *i.e.*, that NYU's reasons for Plaintiff's nonrenewal were false and that discrimination or retaliation were a reason for her nonrenewal" goes to those burdens of proof. It is not an affirmative defense that

3

Defendants were required to plead in their Answer or prove at trial.

<u>Affirmative Defenses Pleaded</u>

Plaintiff also incorrectly states that the affirmative defenses listed are not pleaded in the Answer (Doc. 171) to the Second Amended Complaint (Doc. 170) (the operative complaint).

Contrary to Plaintiff's allegations that No. 2 (Dr. Porges had more experience, a more lucrative practice, and provided greater value) (Doc. 185-1), No. 3 (Dr. Porges' clinical compensation included research), and No. 4 (Dr. Goldberg was the first hired and was an established medical professor), were not pleaded in the Answer, they were each encompassed in the pleaded Fifth, Fourteenth, Seventeenth, and Eighteenth Affirmative Defenses.

Contrary to Plaintiff's allegations that No. 7 (Doc. 185-1) (neutral practice of setting salaries and production targets), No. 8 (compensation increases necessary to attract physicians), and No. 9 (Dr. Modi's production exceeded Plaintiff's), were not pleaded in the Answer as affirmative defenses, they were each pleaded at the Fifth, Seventeenth, and Eighteenth, identified above, and Nineteenth Affirmative Defenses (Answer ¶¶ 92, 103, 104, 105). Defendants' Nineteenth Affirmative Defense states "Any differences in pay alleged by Plaintiff in her Complaint arose from differences in the quality and quantity of her production." (Answer ¶ 105.)

Contrary to Plaintiff's allegation that No. 16 (Doc. 185-1) (no evidence that salary matching practice was implemented to result in lower pay for women rather than for commercial reasons or of any discriminatory intent when negotiating Plaintiff's contract) was not pleaded in the Answer as affirmative defenses, it was not required to be plead. This is just another example of a negating defense. Nevertheless, it was encompassed in the pleaded Fifth, Seventh, Seventeenth, Eighteenth, Nineteenth, Twentieth, and Twenty-Third Affirmative Defenses.

Contrary to Plaintiff's allegation that No. 21 (Plaintiff's insubordination) (Doc. 185-1), No.

4

26 (Plaintiff's inability to work cooperatively with coworkers, patient complaints about Plaintiff, performance counseling), and No. 33 (Plaintiff could not get along with her coworkers, and her clinical practices were inconsistent with NYU's standards, and was unresponsive to certain patients), were not pleaded as affirmative defense (since they were not required to be), they are nevertheless encompassed in the Sixth Affirmative Defense which states "Plaintiff was guilty of unclean hands, which bars certain of the relief sought by Plaintiff."  (Answer ¶ 93.)

Contrary to Plaintiff allegation that Nos. 36 (Plaintiff's failed to mitigate damages) and 37 (Plaintiff's damages barred by turning down offer of employment) (Doc. 185-1), were not pleaded as affirmative defenses in the Answer, Defendants' Third Affirmative Defense states that "Upon information and belief, Plaintiff failed to mitigate her damages" (Answer ¶ 90).

Plaintiff also alleges that No. 30 (records of patient complaints and performance issues concerning Plaintiff were maintained) must be deemed waived to the extent Defendants seek to introduce records of patient complaints and performance issues for any other doctor. Such facts are not an affirmative defense required to be plead, and Defendants have, nevertheless, not identified any proposed trial exhibits containing or including "records of patient complaints and performance issues for any other doctor."

In sum, Plaintiff's motion fundamentally misunderstands the burden of proof, is based on demonstrable errors and misreading of Defendants' Answer, and, indeed, a waste of judicial resources and an unnecessarily increased the expenses of litigation.

## II. DEFENDANTS' EXHIBITS SHOULD BE ADMITTED, AS PLAINTIFF HAS FAILED TO EVIDENCE ANY BASIS TO EXCLUDE THEM

A. <u>Email Complaints about Plaintiff (Kataev Decl., Ex. D (D1-D2, D66-D67) (Doc. 185-4))</u>.

Plaintiff seeks to preclude the introduction of internal employee complaints made to NYU about Plaintiff based on relevancy, jury confusion, and undue prejudice. Plaintiff, however, cites to no case supporting their preclusion on those bases.

Moreover, while Plaintiff seeks to preclude Defendants' use of D1,[3] Plaintiff includes a duplicate copy of the same email complaint in her proposed trial exhibits at D001103 (in Plaintiff's bulk Exhibit D001100-D001131).

Contrary to Plaintiff's allegation that the complaints should be excluded as hearsay because they are emails, the emails are admissible as records of regularly conducted activity (business records), present sense impressions or excited utterances.

In Ms. Ruiz's role as FGP Manager, she acted as office manager for Marcus Avenue (where Plaintiff was employed), managing administration and addressing administrative matters. (Steer Decl., Ex. A (Ruiz Decl. 7.) Ms. Ruiz emailed Site Manager, Mr. Antonik, Assistant Site Manager, Nicole Lucca, and Practice Manager, Gloria Magen, on November 13, 2019 (D1-D2), describing Plaintiff's treatment of her including her use of "a very loud, demeaning tone. Ms. Ruiz's email dated March 11, 2020 (D66-D67), to Mr. Antonik and Ms. Lucca memorializes a complaint that Tiffany Diaz, Plaintiff's medical assistant, made about Plaintiff's conduct towards Ms. Diaz.

Ms. Ruiz's emails are covered by a hearsay exception for records of a regularly conducted activity (business records exception). Ms. Ruiz's emails are records made at or near the time by – or from information transmitted by – someone with knowledge; the record was kept in the course of a regularly conducted activity; making the record was a regular practice of that activity; the emails are

---

[3] D2 just contains Ms. Ruiz's signature block on her email.

identified in Ms. Ruiz's Declaration as business records of NYU that were maintained in the ordinary course of business; and Plaintiff does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. *Hampson v. State Farm Mutual Auto Ins.*, No. 12-cv-258, 2015 WL 12733388, at *7 (N.D.N.Y. Oct. 22, 2015).

Ms. Ruiz's emails are also present sense impressions as statements describing and explaining Plaintiff's conduct and/or the complaint she received from Ms. Diaz, made while or immediately after the declarant perceived it. *Hampson.*, 2015 WL 12733388, at *8 (citing FRE 803(1)). Ms. Ruiz's emails are also excited utterances as statements relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. *Hampson*, 2015 WL 12733388, at *8 (citing FRE 803(2)). As stated in Ms. Ruiz's email (D1-D2), Plaintiff replied to her "in a very loud, demeaning tone" and that she found her conduct to be "very unprofessional, inappropriate and demeaning." Ms. Ruiz's email (D66-D67) records an incident that was reported to her by Ms. Diaz and the fact that Ms. Diaz was "very upset, shaking and with tears in her eyes."

Furthermore, under Plaintiff's argument, her email complaints to HR must be excluded as hearsay.

B. <u>Patient complaints & patient records (Kataev Decl., Ex. E (D16, D1132-D1175, D1196-D1485) (Doc. 185-5)).</u>

Without citing to any authority, Plaintiff, in a conclusory fashion, states that exhibits related to patient complaints concerning Plaintiff (and related medical records) must be precluded as irrelevant under FRE 401. She cites to no cases supporting her contention.

C. <u>Plaintiff's loan & mortgage documents (Kataev Decl., Ex. F (D76-D132) (Doc. 185-6)).</u>

Plaintiff seeks to preclude the introduction of documents concerning and establishing NYU's assumption of Plaintiff's loan inferring that the presentation of these agreements would be confusing to the jury and that Plaintiff can testify as to the assumption of the loan. Plaintiff cites

7

to zero authority or legal basis to preclude this evidence.

    D.  <u>Defendants' Faculty Group Practice (Kataev Decl., Ex. G (D537-D544) (Doc. 185-7))</u>.

Plaintiff seeks to preclude the introduction of a printout of the NYU Langone Ambulatory Care Lake Success webpage which identifies information as the practice's locations, specialties and services provided, and providers as of August 12, 2021 (the same year in which Plaintiff commenced this action). She provides no discussion of authority supporting her contention.

    E.  <u>E-mail from Human Resources Representative, Rashidat Ogbara (Kataev Decl., Ex. H (D001090) (Doc. 185-8))</u>.

Plaintiff alleges that she never saw the email from Rashidat Ogbara dated November 18, 2019 (Kataev Decl., Ex. H (D001090)), and that it should be precluded because it is irrelevant and highly confusing to the jury pursuant to FRE 401 and 403, and that it should be precluded because she purportedly did not know who Ms. Ogbara was. However, Ms. Ogbara was identified to Plaintiff and the email from Ms. Ogbara is admissible, relevant, and an integral part of the whole picture of NYU's inquiries and responses to Plaintiff's internal complaint. FRE 401, 402.

By email dated November 5, 2019, Plaintiff was advised by Ms. Pacina of the new ELR manager that now supports the FGP group (to which Plaintiff belonged) (D000995). By email dated November 18, 2019, at 5:32 PM, from Ms. Pacina to Ms. Ogbara states "As discussed, please see below and attached in reference to Dr. Edelman" (Steer Decl., Ex. B (D001040)) as part of Plaintiff's Exhibit D001040- D001042. Ms. Ogbara emailed Plaintiff (D001090) less than an hour later at 6:14 PM, with the subject line "HR Matter." Ms. Ogbara's email signature block identifies her as Manager, Employee & Labor Relations, Human Resources. Her email states:

> *My colleague, Kathleen Pacina, informed me that you raised some concerns regarding your treatment in the workplace. I am the new ELR manager that supports FGP and will investigate your concerns.*
>
> *Are you available to speak sometime Thursday or Wednesday?*

8

Plaintiff fails to identify how an email evidencing NYU's investigation is irrelevant under FRE 401 or how an email asking Plaintiff for her availability to speak could be "highly confusing to the jury" under FRE 403. She submits no authority in support of her contentions.

Moreover, Plaintiff's failure to respond to HR's email is relevant as it demonstrates that the criticisms of Plaintiff's failure to respond to emails is not untrue and pretextual.

F. Dr. Andrew Porges' Business Plan (Kataev Decl., Ex. I (D1486-D1487) (Doc. 185-9)).

Plaintiff seeks to preclude the introduction of the business plan of Dr. Andrew Porges, who Plaintiff claims is a comparator, because business plans for other purported comparators were not produced and she did not get an opportunity to depose them about their business plans. This is disingenuous. She has no reason to believe such business plans were even shown to the physicians. Dr. Porges testified at his deposition that he made no formal business plan, NYU never showed him any business plan, and that he never reviewed any business plan in connection with the discussion of his compensation at NYU. (Porges Tr. 80:14-25 – 81:2-5.) Plaintiff did not timely seek to depose Dr. Goldberg, and her request for additional time to depose Dr. Goldberg was denied because it was "unsupported by any cause for delay let alone extraordinary circumstances." (Order, Doc. 75.) Additionally, Plaintiff never sought to depose Modi. Plaintiff's representation that Defendants refused to produce such records is further disingenuous as Plaintiff never requested a business plan for Dr. Modi, and her request for Dr. Goldberg's was untimely and, along with 35 other requests, came two months after the close of discovery which Plaintiff was not granted leave to serve. (Order, Doc. 75.)

G. Plaintiff's employment agreement with subsequent employer (Kataev Decl., Ex. J (P1-P13) (Doc. 185-10)).

Plaintiff submits that her agreement with her subsequent employer, which she produced in discovery (at P1-P13), should be precluded. However, when she produced the agreement, she made

9

no disclaimer as to whether she was taking a position as to its admissibility, and now cites to no authority as to its admissibility other than to state, in conclusory fashion, that it is cumulative and irrelevant. The agreement is relevant as it demonstrates that front pay should not be recoverable. Plaintiff cites to no authority requiring Defendants guess as to what Plaintiff may or may not testify to in determining their proposed trial exhibits.

H. Plaintiff's EEOC Charge & related documents (Kataev Decl., Ex. K (P355-P382) (Doc. 185-11)).

Plaintiff seeks to have any evidence of Plaintiff's EEOC Charge and "related documents" (produced by Plaintiff at P355-P382) precluded. Plaintiff cites to no cases supporting such preclusion and incorrectly concludes, without any authority, that the EEOC Charge is hearsay. EEOC Charges are admissible pursuant FRE 801(d)(2) as admissions. *Chisholm v. Sloan Kettering*, No. 09-cv-8211, 2011 WL 2015526, at *1 (S.D.N.Y. May 13, 2011) (citing *Mugavero v. Arms Acres, Inc.*, No. 03-cv-5724, 2009 WL 1904548, at *4 (S.D.N.Y. July 1, 2009)).[4]

Moreover, Plaintiff desperately seeks to exclude her EEOC Charge because it fails to mention anything about Mr. Antonik purportedly calling her a "bitch" when such event would have been fresher in her mind.

I. Defendants' Rule 56.1 Statement of Facts (Doc. 108-1).

In Plaintiff's "motion" to preclude Defendants from seeking to introduce their Rule 56.1 Statement of Material Facts (Doc. 108-1), Plaintiff cites to no authority for such requested preclusion. Plaintiff merely concludes that showing Defendants' Rule 56.1, alone, without Plaintiff's counterstatement may mislead or confuse the jury without any reasoning or explanation.

---

[4] Plaintiff's reliance on *United States v. Nekritin*, No. 10-CR-491 S-2 KAM, 2011 WL 2462744 (E.D.N.Y. June 17, 2011) and *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007), are not instructive, as neither case dealt with an EEOC Charge.

### III. PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF "UNDISCLOSED" WITNESSES

Plaintiff's motion to preclude testimony of Patricia Faslowich, Deborah Porges, Claudia Rose, Bryan Maguire, Rashidat Ogbara, Brian Kim, and Tisa Hall is without merit. Plaintiff disingenuously submits that she will be prejudiced by the Defendants' purported failure to identify Patricia Faslowich, Deborah Porges, Claudia Rose, Bryan Maguire, Rashidat Ogbara, Brian Kim, and Tisa Hall, because Plaintiff was "prevented from deposing these individuals and, therefore, will be unable to prepare for their trial testimony."

Plaintiff fails to advise the Court that Patricia Faslowich, Deborah Porges, Claudia Rose, and Bryan Maguire were identified in the Parties' responses served as per the Initial Discovery Protocols for Employment Cases Alleging Adverse Action (the "Protocols").[5] More specifically, Ms. Faslowich and Dr. Deborah Porges were identified in Plaintiff's Responses dated April 23, 2021, as persons "plaintiff believes to have knowledge of the facts concerning the claims or defenses at issue in this lawsuit." Ms. Rose and Mr. Maguire were identified in Defendants' Reponses dated May 14, 2021, each as an "individual believed to have knowledge of the facts concerning complaints made about Plaintiff, complaints made by Plaintiff and/or the facts underlying Defendants' defenses."

The Protocol's Statement of Purpose specifies their intention to supersede the parties' obligations to make initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1). To the extent it was a technical violation of Rule 26(a)(1) for any of these witnesses to not be named in the parties' Rule 26(a)(1) initial disclosure, such violation is harmless and not a basis for preclusion. Each of the witnesses were identified in discovery including in document production and/or deposition

---

[5] A copy of the Protocols (November 2011) can be found online at: https://nysd.uscourts.gov/sites/default/files/practice_documents/lgsEmploymentProtocols.pdf (last visited March 27, 2023).

11

testimony and, thus, their preclusion is not warranted. *Barcroft Media, Ltd. v. Coed Media Group, LLC*,[6] 2017 WL 4334138, at *2 (S.D.N.Y. Sept. 28, 2017) (failure to disclose is harmless where party knew of witness for months); *citing Coty Inc. v. Excell Brands, LLC*, No. 15-cv-7029, 2017 WL 41555402, at *12 n.8 (S.D.N.Y. Sept. 18, 2017) ("declining to preclude a witness because the witness's testimony was disclosed to the moving party 'over a month and a half before he actually testified'"); *EMI Music Mktg. v Avatar Records, Inc.*, 334 F. Supp. 2d 442, 445 (S.D.N.Y. 2004) ("finding that failure to formally disclose witnesses was harmless because the moving party 'was aware of their existence and relevance," as the witnesses had been mentioned in discovery responses and their names had appeared in documents produced through discovery); *Rojo v. Deutche Bank*, No. 06-cv-3574, 2009 WL 3790191, at *5 (S.D.N.Y. Oct. 30, 2009) ("declining to preclude witness testimony where 'all of the challenged witnesses were referred to in documents produced in discovery'")).

In addition to being identified in Defendants' Initial Protocol responses, emails with Ms. Rose concerning Plaintiff were produced as early as September 23, 2019 (e.g., D001002, D001004-D000011, D00015-D00019, D00036-D00039, D00044-D00045, D000052, D000055-D000062, D000079-D001089), and there was testimony about Ms. Rose in the following depositions: Plaintiff, Dr. Mehta, Dr. Porges, Ms. Pacina, Ms. Ruiz, Mr. Antonik, Mr. Kaplan, Mr. Swirnow, and Mr. Rubin.

Ms. Ogbara's name was produced when email correspondence with her was produced at D000983 (produced on 9/22/21), D001040 (produced on 9/23/19), D001090 (produced on 9/23/19). There is also deposition testimony about Ms. Ogbara in 2021, by Ms. Pacina, Mr.

---

[6] Plaintiff cites to *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 437 (D. Md. 2006) (*quoting United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958)). However, neither of those decisions mentions motions in limine.

Antonik, Mr. Swirnow, and Ms. Ruiz. Plaintiff also testified at her deposition on November 19, 2021, concerning email correspondence with Ms. Ogbara (e.g., D001090).

Plaintiff produced records concerning Mr. Kim assisting with her IT issues (*e.g.*, P476, P553) on September 19, 2021.

Records with Ms. Hall's name were produced as early as August 16, 2021 (e.g., D00556, D000933, D000941, D001044, D001052). There is also deposition testimony concerning Ms. Hall by Ms. Pacina, Mr. Antonik, Mr. Swirnow, Mr. Rubin, Mr. Kaplan, and Dr. Porges.

As each of the witnesses were identified in discovery including in the parties' Protocols responses, document production and/or deposition testimony and, Plaintiff's motion to preclude their testimony is without merit and must be denied.

Evidence from Deposition Transcripts

Plaintiff further contends that Defendants should be precluded from offering evidence from the deposition transcripts of any of the individuals who will be physically present at the trial. The JPTO already specifies that "A party will be permitted to introduce deposition testimony during its case in chief only if the deponent is unavailable to testify." All parties reserved their right to introduce prior sworn testimony of any witness for impeachment, rebuttal, or any other purposes permitted by the Federal Rules of Evidence.

Sequestration Sought by Plaintiff is not Permissible

Plaintiff also contends that Defendants should be sequestered from each other's testimony during trial but does not specify who specifically she is seeking to be sequestered. While Plaintiff cites to FRE 615 for this contention, she acknowledges that FRE 615(a) explicitly states that it "does not authorize excluding a party who is a natural person." Four of the Defendants are "natural persons." FRE 615(a) further does not authorize excluding "an officer or employee of a party that

13

is not a natural person, after being designated as the party's representative by its attorney."

For the foregoing reasons, Plaintiff's motions in limine should be denied in their entirety.

Dated: April 3, 2023
       New York, New York

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendants*

By: */s/ Richard L. Steer*
    Richard L. Steer
    Justin Chu
    Ingrid J. Cardona
    1350 Broadway, 11th Floor
    New York, NY 10018
    (212) 216-8000
    rsteer@tarterkrinsky.com
    jchu@tarterkrinsky.com
    icardona@tarterkrinsky.com