UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                             :

DR. SARI EDELMAN,                           :

                      Plaintiff,          :

                             :           21-cv-502 (LJL)

      -v-                    :

                             :      MEMORANDUM AND

NYU LANGONE HEALTH SYSTEM, NYU    :         ORDER
LANGONE HOSPITALS, NYU LANGONE    :
MEDICAL CENTER, NYU LANGONE NASSAU  :
RHEUMATOLOGY, NYU SCHOOL OF       :
MEDICINE, NYU GROSSMAN SCHOOL OF    :
MEDICINE, NYU HOSPITALS CENTER,     :
ANDREW T. RUBIN, DAVID KAPLAN, JOSEPH :
ANTONIK, and JOSHUA SWIRNOW,      :

                           :

                  Defendants.      :

                           :

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__6/30/2023__

LEWIS J. LIMAN, United States District Judge:

      Defendants[1] move *in limine* to preclude Plaintiff Sari Edelman ("Edelman" or "Plaintiff")

from introducing certain evidence and testimony.  Dkt. No. 186.  The Court heard oral argument

on Plaintiff's motion to exclude the testimony of undisclosed witnesses and Defendants' motion

to exclude certain evidence of damages on June 27, 2023.  A number of the motions *in limine*

were addressed by bench decision at the oral argument.  The Court, in a separate Memorandum

and Order, granted in part and denied in part Plaintiff's motions to exclude the testimony of

---

[1] "Defendants" is collectively defined as NYU Langone Health System, NYU Langone
Hospitals, NYU Langone Medical Center, NYU Langone Nassau Rheumatology, NYU School of
Medicine, NYU Grossman School of Medicine, NYU Hospitals Center, Andrew T. Rubin,
David Kaplan, Joseph Antonik, and Joshua Swirnow.  Rubin, Kaplan, Antonik, and Swirnow are
defined as "Individual Defendants."  The remainder are collectively defined as "NYU" or "NYU
Defendants."

undisclosed witnesses and for an order of sequestration.  Dkt. No. 224.  This Memorandum and Order addresses Defendants' remaining motions *in limine*.

A jury trial is scheduled for July 10, 2023.  Plaintiff asserts claims under the (1) Equal Pay Act ("EPA"), 29 U.S.C. § 206(d) *et seq*., the New York State Equal Pay Act ("NY EPA"), New York Labor Law ("NYLL") § 194 *et seq*., against the NYU Defendants, Swirnow, and Rubin, (2) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, against the NYU Defendants for retaliation, (3) New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296(1)(a) *et seq*., for retaliation against all Defendants, (4) and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a) *et seq*., for retaliation and discrimination against all Defendants.  Dkt. No. 197 at 3.

The Court assumes familiarity with the facts described in the prior Opinion and Order addressing the Defendants' motion for summary judgment, Dkt. No. 155, and the facts as described in the Memorandum and Order addressing Plaintiff's motions *in limine*, Dkt. No. 224.

## LEGAL STANDARD

"The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'"  *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines*, 652 F. Supp. 1400, 1401 (D. Md. 1987)).  The decision whether to grant an *in limine* motion "resides in a district court's inherent and discretionary 'authority to manage the course of its trials.'"  *United States v. Ray*, 2022 WL 558146, at *1 (S.D.N.Y. Feb. 24, 2022) (quoting *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008)).  "The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *United States v. Ozsusamlar*, 428 F. Supp. 2d

2

161, 164 (S.D.N.Y. 2006).  "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial."  *United States v. Perez*, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

## DISCUSSION

Defendants move to preclude Plaintiff from offering evidence as to her damages for failure to comply with Federal Rules of Civil Procedure 26(a)(1) and 34 and as irrelevant and unduly prejudicial.[2]  Dkt. No. 186 at 1.  In her initial disclosures, Plaintiff provided the following with respect to her computation of damages:

> Plaintiff claims damages for: (i) wages consisting of the differential in pay between herself and that of her male counterparts, for past and future loss of wages and benefits, in an amount to be determined at trial; (ii) back pay and front pay in an amount to be determined at trial; (iii) liquidated damages; (iv) compensatory damages for emotional distress in an amount to be determined at trial; (v) loss of good will and loss of Plaintiff's medical practice which amounts to no less than $10,000,000.00; and (vi) for attorneys' fees currently totaling $10,400.00 as well as costs currently totaling $959.50.

Dkt. No. 186-1 at ECF p. 3.

On July 2, 2021, Plaintiff responded to Defendants' First Request for the Production of Documents.  *See* Dkt. Nos. 186-2, 186-3.  She was asked for the following documents regarding damages and gave the following answer:

> [Defendants' Request No. 14]: All documents concerning Plaintiff's claims for and computation of damages alleged in Plaintiff's Complaint and Rule 26 Disclosures.

Dkt. No. 186-2 at ECF p. 4.

---

[2] Defendants initially framed their motion based on Rules 26(a)(1) and 34.  At argument on June 27, 2023, Defendants additionally argued that the damages sought in the initial disclosures were not based on any viable theory and thus testimony should be excluded as irrelevant and prejudicial.  Plaintiff responded to both sets of arguments and the Court therefore considers both here.

[Plaintiff's Response]: Plaintiff objects to this request on the grounds that it is overly broad, vague and ambiguous, unduly burdensome, and not relevant to any claim or defense nor proportional to the needs of this case.  Notwithstanding and without waiving the foregoing general and specific objections, Plaintiff is not in possession, custody, or control of any responsive documents.

Dkt. No. 186-3 at ECF p. 9.

At deposition, Plaintiff gave the following testimony about her claim for "(v) loss of good will and loss of Plaintiff's medical practice which amounts to no less than $10,000,000.00" in her initial disclosures:

Q: And do you know how the valuation of no less than $10 million for your private practice was arrived at?

A: Yes.

Q: And what is your understanding of why that would be $10 million?

A: I knew what my revenues were in the practice each year.  I had my business plan.  I knew what it would make moving out if I had stayed in private practice, and I knew what my reputation was in the community.  I knew what the name of my office was, and it could have been something I would have to pass down and continued to practice for generations.  If they honored their goodwill, I would have stayed with NYU and I would have stayed in my practice.

Q: When you say generations, how long are we talking about?

A: I now have a child that is likely going to go into medicine.

Q: And so that figure -- is that part of this computation, the 10 million, what your child --

A: No, absolutely not. It's over the course of my career.

Dkt. No. 186-4 at 70–71.

In the joint preliminary pretrial report, filed on March 15, 2023, Plaintiff provided figures for her claim of damages for the first time:

Unequal pay differential:              $1,290,000.00
Liquidated damages for unequal pay:$5,160,000.00
Lost wages (back pay & front pay):   $137,400.00
Emotional distress damages:          $1,252,000.00
Prejudgment interest:                    $948,906.00 (plus compounding interest)

| | |
|---|---|
| Punitive damages: | $2,504,000.00 |
| Attorneys' fees: | $200,000.00 (to be amended based on additional work) |

Dkt. No. 179 at 44.

Plaintiff filed amended Rule 26 disclosures with her opposition brief to Defendants' motion *in limine* on April 4, 2023.  Dkt. No. 202-1.  The amended Rule 26(a)(1) disclosures set forth Plaintiff's claimed damages as follows:

(i)     wages consisting of the differential in pay between herself and that of her male counterparts, for past and future loss of wages and benefits in an amount to be determined at trial, but currently calculated at $1,290,000.00;

(ii)    back pay and front pay in an amount to be determined at trial, but currently calculated at $137,400.00;

(iii)   liquidated damages in an amount to be determined at trial, but currently calculated at $5,160,000.00;

(iv)   compensatory damages for emotional distress in an amount to be determined at trial, but currently calculated at $1,252,000.00;

(v)    loss of good will and loss of Plaintiff's medical practice which amounts to no less than $10,000,000.00;

(vi)   punitive damages in an amount to be determined at trial, but currently calculated at $2,504,000.00;

(vii)  prejudgment interest in an amount to be determined at trial, but currently calculated at $948,906.00 (plus compounding interest);

(viii) post-judgment interest, in an amount to be determined after judgment (plus compounding interest); and

(ix)   attorneys' fees currently totaling $200,000.00; as well as

(x)    costs currently totaling approximately $10,000,000.00.

*Id.* (footnotes omitted).

The amended Rule 26 disclosures provided basic information as to how the figures were calculated without reference to any documentary evidence.  The wage differential is calculated as the difference between compensation Plaintiff alleges the comparators were paid and compensation Plaintiff was paid.  *Id.* at 2 & n.1.  The back pay and front pay is calculated based on the payments that would have been made to Plaintiff's retirement account by Defendants and herself had she not been terminated by NYU.  *Id.* at 3 & n.2.  Liquidated damages are calculated

as 300% of the amount set forth for wages consisting of the differential in pay between herself

and her male counterparts, for past and future loss of wages and benefits. *Id*. at n.3. The figure

for emotional distress damages is calculated as follows: "$50,000.000 for emotional distress,

plus $380,000.00 tuition for her first daughter in NYU's medical school, plus $132,000.00 for

her second daughter's tuition at a special needs school, and $690,000.00 for her second

daughter's behavioral therapy as required due to Plaintiff being forced to relocate." *Id.* at n.4.

The figure of no less than $10 million for "loss of good will and loss of Plaintiff's medical

practice" is stated to be "[b]ased on the profitability of Plaintiff's practice during her lifetime."

*Id*. at n.5. Punitive damages are stated to be double the emotional distress damages. *Id*. at n.6.

Defendants' motion presents two related sets of arguments. First, Defendants argue that

Plaintiff should be precluded from offering evidence of (i) loss of past and future wages and

benefits, (ii) back pay and front pay, (iii) liquidated damages, and (iv) compensatory damages for

emotional distress because she failed to timely set forth a methodology for the computation of

those damages and failed to produce documents supporting the damages. Dkt. No. 186 at 2.[3]

Defendants also argue that Plaintiff should be precluded from introducing damages evidence for

loss of goodwill and loss of her medical practice because her only disclosure was a round

number of $10 million untethered to any documentary evidence or analysis, *id.* at 2–3, and that,

as to legal expenses, the initial disclosures do not identify any documents concerning damages

and make no reference to any evidence such as hourly rates charged by the attorney or hours

---

[3] At oral argument on June 27, 2023, Defendants argued that Plaintiff should be precluded from giving the jury a figure for punitive damages. Plaintiff agreed that it would not mention a figure for punitive damages either through argument of counsel or through testimony of witnesses. *See Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *as amended* (Dec. 22, 1995), *vacated on other grounds sub nom. Consorti v. Owens-Corning Fiberglas Corp.*, 518 U.S. 1031 (1996) (emphasizing that "specifying target amounts for the jury to award is disfavored"). Accordingly, the issue is moot.

spent, *id.* at 3.  Having been provided a methodology for the computation of damages in supplemental initial disclosures provided with Plaintiff's opposition brief, Defendants also make a separate set of arguments.  At oral argument, Defendants argued that the damages sought are not based on legally viable theories, that had the damages calculations been disclosed they would have conducted further and additional discovery, and that testimony regarding the damages figures would be unduly prejudicial to them.

To the extent Defendants' motion seeks to preclude Plaintiff from offering evidence with respect to the wage differential, back pay and front pay, liquidated damages, and the $50,000 in emotional distress damages, the motion is denied.[4]  Rule 26(a)(1)(A)(iii) requires the disclosing party to provide "a computation of each category of damages claimed by the disclosing party-- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  The rule thus "requires more than providing—without any explanation—undifferentiated financial statements."  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006).  "[I]t requires a 'computation' supported by documents."  *Id.*  Under Rule 26(e)(1), a party who becomes aware that a disclosure is "incomplete or incorrect" has a duty to supplement "in a timely manner."  Fed. R. Civ. P. 26(e)(1)(A); *see also Pilitz v. Inc. Vill. of Freeport*, 2020 WL 6945927, at *2–4 (E.D.N.Y. Nov. 25, 2020) (setting forth the standard and determining that preclusion of

---

[4] The motion to exclude evidence regarding attorneys' fees is denied.  Those are questions for the Court under the statutes invoked, and not the jury.  If Plaintiff prevails, Plaintiff may submit a separate application for fees.  *See Knox v. John Varvatos Enterprises Inc*., 520 F. Supp. 3d 331, 338 (S.D.N.Y. 2021), *aff'd sub nom. Chaparro v. John Varvatos Enterprises, Inc.*, 2021 WL 5121140 (2d Cir. Nov. 4, 2021) (identifying language which indicates that the award of fees remains a question for the court for Title VII, NYSHRL, the EPA, and NY EPA); *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 260 (E.D.N.Y. 2014) (same for NYCHRL).

compensatory damages was warranted); *Max Impact, LLC v. Sherwood Grp., Inc.*, 2014 WL 902649, at \*5–8 (S.D.N.Y. Mar. 7, 2014) (finding that noncompliance with Rule 26 was harmless for the purposes of lost profits damages). The rule does not impose an outer time limit for a supplemental disclosure as long as the supplement is made "in a timely manner," Fed. R. Civ. P. 26(e), "so as to avoid prejudicing adverse parties," *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 161 (S.D.N.Y. 2012); *see also Lima LS PLC v. PHL Variable Ins. Co.*, 2014 WL 2002485, at \*2 (D. Conn. May 15, 2014) (describing the need to supplement evidence "with special promptness as the trial date approaches" without the Court's further intervention (citing 6 Moore's Federal Practice, at § 26.13[3] (3d Ed. 2012))).

Federal Rule of Civil Procedure 37(c)(1) authorizes the Court to impose sanctions for failure to disclose information under Rule 26(a)(1). Failure to comply with Rule 26(a)(1) is punishable with sanctions, which are evaluated under the *Softel* standards. *See Design Strategy*, 469 F.3d at 296. The district court has "broad discretion" to determine the nature of sanctions that should be imposed for a violation of Rule 26(a)(1). *Cates v. Trustees of Columbia Univ.*, 330 F.R.D. 369, 373 (S.D.N.Y. 2019). Those sanctions include preclusion of evidence and prohibiting the disobedient party from supporting designated claims or defenses. Preclusion of evidence, however, is a harsh remedy that should be imposed only in rare situations. *Id.* In determining whether preclusion or another sanction would be appropriate, courts consider: (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Id.* (citing *Softel*, 118 F.3d at 961).

Assuming without deciding that Plaintiff's original initial disclosures were deficient in failing to provide a precise figure for damages or the methodology for calculating those damages, Plaintiff has provided a good reason for her failure to provide more detail with respect to wage differentials, back pay and front pay, liquidated damages, and garden variety emotional distress damages.  The documents with respect to the wage differential and back pay and front pay were in the possession of Defendants—Defendants knew but at the outset of the litigation Plaintiff did not know the precise amount of compensation received by the comparators.  Nor did Plaintiff have the documents with which to calculate the pay she lost as a result of being terminated or that she would have earned going forward had she not been terminated.  Plaintiff has no documents of her own with respect to these categories of damages.  *See*, *e.g.*, *Equal Emp. Opportunity Comm'n v. United Health Programs of Am., Inc*., 2017 WL 10088567, at *13 (E.D.N.Y. Sept. 4, 2017) ("Although plaintiffs are required to provide a calculation of damages, the defendants are in possession of the information required for calculating lost benefits, and purportedly it is defendants' failure to produce sufficient information that resulted in plaintiffs' incomplete disclosures."); *Probatter Sports, LLC v. Sports Tutor, Inc*., 2016 WL 1178051, at *6 (D. Conn. Mar. 23, 2016) ("[A] party would not be expected to provide a calculation of damages which . . .  depends on information in the possession of another party or person.");10 Fed. Proc., L. Ed. § 26:44, "Duty to disclose, without awaiting discovery request, computation of damages claimed" (June 2023 Update) ("The obligation to disclose a damages computation applies only with respect to documents then reasonably available to it and not privileged or protected as work product.").  She intends to prove her case through her testimony, the testimony of the comparators and other witnesses, and the documents produced by Defendants.  (Plaintiff will not be presenting expert testimony.)   The amount of liquidated damages is simply a function of

these categories and damages.[5]  Plaintiff does not intend to offer evidence other than her own testimony for her emotional distress damages.  For that reason, Defendants also have suffered no prejudice with respect to Plaintiff's allegedly late disclosures.  Defendants knew from the original disclosures that Plaintiff would be seeking damages based on the wage differential and for back pay and front pay, as well as liquidated damages and garden variety emotional distress damages.  If Defendants wanted further information about Plaintiff's calculation of those damages, it certainly had the means of obtaining it.  *See, e.g.*, *New York City Transit Auth. v. Express Scripts, Inc.*, 588 F. Supp. 3d 424, 441 (S.D.N.Y. 2022) ("Express Scripts will not be unduly prejudiced by having to prepare to meet evidence of compensatory damages to which it has had access all along.").

Defendants argue that Plaintiff is not entitled to back pay or front pay because she was employed continuously both before and immediately after NYU, and that Plaintiff has not produced evidence of a retirement account.  But that misunderstands Plaintiff's argument. Plaintiff contends that had she continued to work at NYU, she would have been the beneficiary of amounts that Defendants would have contributed to a retirement account that she would have been permitted to maintain at NYU.  Whether that is a viable theory of recovery will have to await trial.

Defendants also argue that Plaintiff is not entitled to "liquidated damages under the EPA and NYLL 198(1-a)," Dkt. No. 191 at 7, because the prior Opinion and Order on summary judgment held that there was insufficient evidence to present a jury question of intentional

---

[5] "As used in the FLSA 'liquidated damages' is something of a misnomer.  It is not a sum certain, determined in advance as a means of liquidating damages that might be incurred in the future.  It is an award of special or exemplary damages added to the normal damages."  *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1063 n.3 (2d Cir. 1988).

discrimination, and that there will be no evidence that its conduct is willful.  The argument is

unpersuasive.

Both the Fair Labor Standards Act of 1938 and NYLL provide for liquidated damages

upon a finding of a violation.  They both also permit the court to deny liquidated damages upon a

finding of good faith.  FLSA provides that:

> [I]f the employer shows to the satisfaction of the court that the act or omission
> giving rise to such action was in good faith and that he had reasonable grounds for
> believing that his act or omission was not a violation of the Fair Labor Standards
> Act of 1938, as amended, the court may, in its sound discretion, award no liquidated
> damages or award any amount thereof not to exceed the amount specified in section
> 216 of this title.

29 U.S.C. § 260.  The NYLL liquidated damages provision provides the following:

> In any action instituted in the courts upon a wage claim by an employee or the
> commissioner in which the employee prevails, the court shall allow such employee
> to recover the full amount of any underpayment, all reasonable attorney's fees,
> prejudgment interest as required under the civil practice law and rules, and, unless
> the employer proves a good faith basis to believe that its underpayment of wages
> was in compliance with the law, an additional amount as liquidated damages equal
> to one hundred percent of the total amount of the wages found to be due, except
> such liquidated damages may be up to three hundred percent of the total amount of
> the wages found to be due for a willful violation of section one hundred ninety-four
> of this article.

N.Y. Lab. Law § 198(1-a).  "Effective November 24, 2009, the NYLL . . . removed the

requirement of willfulness, so as now to provide, like the FLSA, that an employee is entitled to

liquidated damages except where the employer demonstrates its good faith."  *Hernandez v. Jrpac

Inc.*, 2016 WL 3248493, at *34 (S.D.N.Y. June 9, 2016).  "To establish the requisite subjective

'good faith,' an employer must show that it took active steps to ascertain the dictates of the

FLSA and then act to comply with them."  *Hernandez v. Jrpac Inc.*, 2016 WL 3248493, at *33

(S.D.N.Y. June 9, 2016).

However, a court may not exercise its discretion to deny liquidated damages when the

jury has found that the defendant's conduct was willful because such a finding precludes a

finding of good faith.  *See Perry v. City of New York*, 2019 WL 7047327, at *3 (S.D.N.Y. Dec.

23, 2019).  The parties appear to have requested the Court to instruct the jury on willfulness.[6]

Dkt. No. 196 at 51, 53–55.  Such an instruction generally raises issues of fact for resolution by

the jury.  *See Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y.2008) ("Courts in this

Circuit have generally left the question of willfulness to the trier of fact.").  Defendants'

argument equates the Court's finding, at summary judgment, that Plaintiff had not offered

evidence to support a jury verdict of intentional discrimination, with a conclusion that no

evidence exists that would support a jury verdict of willfulness.  Based on that argument,

Defendants contend that the Court "should therefore instruct the jury accordingly, to wit:

Defendants' conduct was not willful."  Dkt. No. 191 at 7.[7]  The argument is based on a faulty

premise.  The definition of willfulness arises under 29 U.S.C. § 255(a), the statute of limitations

provision in FLSA.  *See Perry*, 2019 WL 7047327, at *3.  The "willfulness" standard is less

rigorous than intentional discrimination, as for willfulness under Section 255(a), "[a] plaintiff

need not show that an employer acted with intent to discriminate or in bad faith."  *Pollis v. New*

*Sch. for Soc. Rsch.*, 132 F.3d 115, 119 (2d Cir. 1997); *see also DeLuca v. Sirius XM Radio, Inc.*,

---

[6] The question of the willfulness instruction, including the issue of whether one is given to the jury, will be resolved at the charge conference.  This Memorandum and Order proceeds on the assumption that the Court gives such instruction.

[7] Defendants' pretrial memorandum appears to conflate "good faith" with "willfulness."  *See* Dkt. No. 191 at 7.  Although a finding of willfulness precludes a finding of good faith, *see Perry*, 2019 WL 7047327, at *3, the two are different standards evaluated by different entities.  "The good faith determination is a question of law for the court to decide," *id.* at *2, and while it "often involves the same evidence" of willfulness, generally "the question of willfulness [is left] to the trier of fact," *id.*  "Thus, the jury is often tasked with resolving factual questions regarding a defendant's willfulness that are also central to the court's good faith determination under 29 U.S.C. § 260." *Id.*; *see also Knox v. John Varvatos Enterprises Inc*. 512 F. Supp. 3d 470, 493 (S.D.N.Y. 2021).  The issue of willfulness is one for the jury (if such an instruction is warranted), and the question of good faith is one for the Court, presuming that the jury does not make a finding of willfulness.

2017 WL 3671038, at *21 (S.D.N.Y. Aug. 7, 2017) ("[A] showing of discriminatory intent under Title VII should not be equated to a showing of willfulness under the EPA."); *cf. Lavin-McEleney v. Marist College*, 239 F.3d 476, 483 (2d Cir. 2001) ("[I]t is not at all clear that a finding of no willfulness under the Equal Pay Act precludes a finding of intent under Title VII"). Instead, "[t]o make out a willful violation, the employee must establish 'that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 503 (S.D.N.Y. 2015) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Willfulness, however, does "not encompass conduct that is 'merely negligent' or 'unreasonabl[e].'" *Id.* (citation omitted). Prior to amendment, the meaning of willfulness in NYLL mirrored that of FLSA. *See Inclan v. New York Hospitality Group, Inc.*, 95 F. Supp. 3d 490, 504–05 (S.D.N.Y. 2015); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 503 (S.D.N.Y. 2017) ("The NYLL's definition of willfulness mirrored the FLSA's . . . ."). In short, whether Plaintiff will be able to show that Defendants' conduct was willful will have to await trial. The Court will not preclude Plaintiff now from attempting to prove that the conduct was willful. If the jury does not find that the conduct was willful, then Defendants will have an opportunity after trial to show that the evidence evinces good faith.

As for Plaintiff's evidence supporting her goodwill damages and damages for emotional distress other than the $50,000 in garden variety emotional distress damages, the Court grants Defendants' motions to exclude such evidence. With respect to emotional distress damages other than the $50,000 in garden variety emotional distress damages (but not with respect to the goodwill damages), the evidence is excluded under Rules 26(a)(1), 34, and 37, as well as (as will be discussed later) under Rules 401 and 403. Plaintiff's original initial disclosures stated only

13

"emotional distress in an amount to be determined at trial."  Dkt. No. 186-1 at 2.  The first

disclosure of the composition of the emotional distress damages was in response to Defendants'

motions *in limine*, well after discovery had closed.  Dkt. No. 202-1.  There, Plaintiff revealed that

only $50,000 of the total was for "emotional distress," and that the remaining amount was

"$380,000.00 tuition for her first daughter in NYU's medical school, plus $132,000.00 for her

second daughter's tuition at a special needs school, and $690,000.00 for her second daughter's

behavioral therapy."  *Id*. at 3 n.4.  Plaintiff has provided no good reason or excuse for this late

disclosure.  Defendants would suffer extreme prejudice from the introduction of this evidence in

support of a claim for damages.  Evidence as to these sources of damages is important, as the

amount claimed is significant and such damages claims necessarily involve evidence of effects

on third parties—*e.g.*, the first daughter's ability and likelihood to get into medical school,

whether she wants to attend medical school, the special needs of the daughter, the alternative

options for education and therapy, among other questions.  Defendants would require, and are

entitled to, significant additional discovery, lest they be prejudiced by reliance only on Plaintiff's

testimony alone.  Such discovery would include, but not be limited to, testimony from the two

daughters, evidence of the first daughter's interest in and aptitude for the study of medicine, and

evidence of the second child's education and health challenges.  None of that discovery has been

conducted because there was previously no reason for it to be conducted.  Discovery has long

since closed and a trial date has been set.  The case was first deemed trial ready on September

30, 2022, with a date set May 8, 2023.  Dkt. No. 156.  Plaintiff did not submit her amended

disclosures until April 4, 2023.  Dkt. No. 202-1.  This trial is currently set for July 10, 2023.

"While a continuance is always theoretically possible, the closure of discovery weighs against a

continuance."  *Lujan v. Cabana Mgmt., Inc*., 284 F.R.D. 50, 76 (E.D.N.Y. 2012); *Rienzi & Sons,*

*Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A.*, 2011 WL 1239867, at *4 (E.D.N.Y. Mar. 30, 2011) (same).

The evidence of emotional distress damages other than the $50,000 in garden variety emotion distress, as well as goodwill damages, however, are also excluded under Rules 401 and 403.  A party may not use a motion *in limine* as a disguised attempt for a second bite at the apple for summary judgment.  Where a party has argued and lost on a motion for summary judgment that the evidence construed in favor of the non-moving party would not support a particular claim, *see Rivera v. Inc. Vill. of Farmingdale*, 29 F. Supp. 3d 121, 126 (E.D.N.Y. 2013) (holding that party may not use an *in limine* motion to relitigate issues already decided in summary judgment opinion), or has foregone such an available argument, *see Williams v. Regus Mgmt. Grp., LLC*, 2012 WL 1711378, at *2 (S.D.N.Y. May 11, 2012); *Dollman v. Mast Indus., Inc.*, 2011 WL 3911035, at *2 (S.D.N.Y. Sept. 6, 2011), it cannot achieve the same result in the form of an argument that evidence is inadmissible because it is insufficient to support the claimant's claim.  A second, or successive, motion for summary judgment in the guise of a motion *in limine* is procedurally unfair.  *See Cooper v. Dieugenia*, 2017 WL 4083570, at *2 (E.D.N.Y. Sept. 13, 2017).  Having lost or foregone a motion for summary judgment, the question of whether the evidence is sufficient to support a claim for relief "must await resolution at trial."  *Williams v. Regus Management Group, LLC*, 2012 WL 1711378, at *2; *see Broadspring, Inc. v. Congoo, LLC*, 2014 WL 7392905, at *8 (S.D.N.Y. Dec. 29, 2014) (citing cases).

However, Defendants' argument here is properly understood as one to exclude evidence on a theory that it is irrelevant and prejudicial because it does not support any legally viable claim.  A motion *in limine* is available where a party seeks to offer evidence in an

"attempt to persuade the jury to reach a conclusion prohibited as a matter of law." *Long Beach Rd. Holdings, LLC v. Foremost Ins. Co.*, 2019 WL 2150821, at *6 (E.D.N.Y. May 17, 2019). Where the evidence is offered in support of a theory barred as a matter of law and where that evidence would serve only to mislead the jury, the opposing party need not wait until the conclusion of its opponent's case to raise the point. The injury in that instance would not only reside in the risk that the jury would reach a result unsupported by the evidence. That is the injury summary judgment seeks to avoid. The introduction of legally irrelevant and highly inflammatory evidence results in harm to the integrity and efficiency of the trial process itself. *See, e.g.*, *United States v. Ware*, 399 F. App'x 659, 661–62 (2d Cir.2010) (district court did not abuse discretion in precluding evidence regarding defense that was not legally available, as evidence was "irrelevant" and would "mislead or confuse the jury"); *United States v. Simpson*, 929 F. Supp. 2d 177, 198 (E.D.N.Y. 2013) (precluding evidence, given the ruling on a defense "as a matter of law," and determining that such evidence "would confuse the jury and potentially mislead them"); *see also United States v. Carneglia*, 2009 WL 185725, at *1 (E.D.N.Y. Jan. 27, 2009) (noting if that even some evidence was relevant, "it should not be admitted if the danger of misleading and confusing the jury substantially outweighs any probative value"). It is the province of Rules 401 and 403 to prevent such injury. A party confronted with irrelevant and prejudicial evidence need not wait until the conclusion of its adversary's point to raise the argument or rely upon a curative instruction alone.

Plaintiff proposes to testify that she lost $10 million in goodwill and future profits by leaving her prior business and, solely on the basis of that testimony, to ask the jury to award her $10 million in damages. Plaintiff does not intend to offer any other evidence of the loss of $10 million in future profits. Plaintiff is precluded from offering such testimony in support of a

damages claim for $10 million.  Plaintiff's claims here are based on the wage differential she experienced while at NYU and the damages she suffered when her contract was not renewed at that institution.  She has not claimed, and at oral argument she disclaimed, any damages in connection with her recruitment to NYU and in foregoing the continuation of her prior business. Plaintiff departed her practice in 2014.  She was employed at NYU until 2021.  The profits that her earlier practice would have generated for her had she made the decision in 2014 not to join NYU is legally irrelevant to the differential between her pay and that of her male comparators or the amount of compensation she would have continued to earn from NYU had her contract been continued after 2021.  Moreover, even if she was able to link the damages from her termination to the profits of her prior practice, her testimony—when offered alone and with no supporting evidence—as to events seven years prior is far too remote and speculative to be probative as to that figure, without also being prejudicial by improperly anchoring the jury's expectations of compensatory damages based on mere say-so.[8]

Second, and independent of the Court's conclusion with respect to Rules 26(a)(1), 34 and 37, the evidence that Plaintiff incurred "$132,000.00 for her second daughter's tuition at a special needs school, and $690,000.00 for her second daughter's behavioral therapy as required

---

[8] Additionally, it is doubtful that Plaintiff's testimony alone, as a matter of law, would be sufficient to show lost profits.  Typically, lost profits for breach-of-contract actions under New York law require a calculation of "reasonable certainty."  *Int'l Mins. & Res. S.A. v. Pappas*, 96 F.3d 586, 597 (2d Cir. 1996); *Schonfeld v. Hilliard*, 218 F.3d 164, 173 (2d Cir. 2000) ("Cheerful prognostications are not enough." (internal quotation marks omitted)); *Murphy v. Snyder*, 2014 WL 12988632, at *8 (E.D.N.Y. Aug. 15, 2014) ("[L]ost profits may be awarded for breach of contract where they are a natural consequence of the breach, where that measure of damages was contemplated by the parties when the contract was formed, and where the lost profits are capable of reasonably accurate measurement." (citation omitted)); *Cf. Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 77 (E.D.N.Y. 2022) (contrasting the less "lenient" New York law standard with the standard under the Lanham Act that "allows courts to engage in "some degree of speculation" about the amount of damages).

due to Plaintiff being forced to relocate" and that she would have received $380,000 in benefits as tuition for her first daughter in NYU's medical school had her employment not been terminated, is excluded under Rules 401 and 403.  The sole basis upon which Plaintiff seeks to introduce this evidence is to claim damages in those exact amounts.  But while Plaintiff calls these damages emotional distress damages, they are no such thing.  The amount of damages for emotional distress is not a catch-all category for any and all actual costs expended after the incident giving rise to a suit.  *Cf. Mathie v. Fries*, 121 F.3d 808, 814 (2d Cir. 1997) ("[T]he extent of emotional injury does not readily translate into dollar amounts.").  Emotional distress damages are awarded in connection with actual emotional and physical distress that a plaintiff experiences.  *See Fowler v. New York Transit Auth*., 2001 WL 83228, at *13 (S.D.N.Y. Jan. 31, 2001) (describing cases under employment statutes and emotional distress damages).  It may be that Plaintiff suffered increased emotional distress when, as a result of Defendants' decision not to renew her contract, she realized that one child might not in the future be able to attend NYU Medical School cost-free and the other child might have to move from New York.  That is an issue the Court need not now address.  But in that instance, the damages to which Plaintiff would be entitled would be that which would compensate her for her mental and emotional suffering as a result of her non-continuance at NYU.  Her emotional distress damages would not be the amounts that she had to expend out-of-pocket for the second child's schooling and behavioral therapy.  Nor would her emotional distress damages include the cost of the education at NYU Medical School had her first daughter decided to go into the practice of medicine and been admitted to NYU Medical School.  While evidence of Plaintiff's background and personal circumstances may be admissible to show her mental state and the impact of the termination on her mental state, the amounts incurred for the second daughter's education and therapy and the

foregone benefit for the first daughter's education are not themselves a measure of the actual

injury to Plaintiff's emotional state.  *See also Hurt v. City of New York*, 2019 WL 5781990, at

*13 (S.D.N.Y. Nov. 6, 2019) (describing the typical range of "garden variety" emotional distress

claims as being from $30,000 to $125,000); *Est. of Jaquez v. Flores*, 2016 WL 1060841, at *12

(S.D.N.Y. Mar. 17, 2016) ("In the absence of a clear tie to a cognizable avenue of recovery as

proper damages, the only purpose of these photos would be to elicit sympathy.  The photographs

are minimally probative, at best . . . .").

Introduction of testimony regarding those amounts also would give rise to prejudice

within the meaning of Rule 403 and is excluded for that additional reason.  Testimony as to the

amount of payment for the special needs child and her treatment bears the risk of "evoking

sympathy for matters only tangentially related to this case."  *Powers v. Mem'l Sloan Kettering

Cancer Ctr.*, 2023 WL 1927826, at *4 (S.D.N.Y. Feb. 10, 2023); *cf. Epstein v. Kalvin-Miller

Int'l, Inc.*, 121 F. Supp. 2d 742, 746 (S.D.N.Y. 2000) ("Evidence of the extent of a plaintiff's

disability can be highly prejudicial and carr[ies] the potential of an inappropriate appeal to the

jury's sympathy." (internal quotation marks omitted)).  As stated in the Court's bench decision,

introducing such evidence could invoke a mini-trial within a trial on the degree of which the

child had special needs and whether the move was the cause of the regression in her behavior.

Plaintiff is free to testify on any anguish, distress, and physical effects that she may have suffered

as a result of the events at issue in the case.  But, absent the Defendants opening the door through

their cross-examination of Plaintiff, extrapolation and deliberation on Plaintiff's child with

special needs risks a side show, misleading the jury as to key issues, and unfair prejudice.

Finally, the testimony as to tuition is also excluded under Rule 403 as being far too

speculative and thus at risk of unfair prejudice or misleading the jury under Rule 403.  Plaintiff

has presented no evidence that the child is even interested in a career in medicine, much less that the child would have been admitted to NYU.  *See Campodonico v. Wal-Mart Stores E., LP*, 2022 WL 622830, at \*1 (S.D.N.Y. Mar. 2, 2022) (noting the danger of "multiple levels of speculative testimony"); *Blake v. City of New York*, 2007 WL 4643701, at \*1 (S.D.N.Y. July 13, 2007) (noting that testimony that was "overly speculative and conjectural" indicated that "its probative value is substantially outweighed by the danger of unfair prejudice or misleading the jury under Rule 403").

## CONCLUSION

Defendants' motion *in limine* is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. No. 186.

SO ORDERED.

Dated: June 30, 2023
      New York, New York                                         LEWIS J. LIMAN
                                                  United States District Judge