**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DR. SARI EDELMAN,

        Plaintiff,

       – against –

NYU LANGONE HEALTH SYSTEM, NYU LANGONE
HOSPITALS, NYU LANGONE MEDICAL CENTER, NYU
LANGONE NASSAU RHEUMATOLOGY, NYU SCHOOL
OF MEDICINE, NYU GROSSMAN SCHOOL OF
MEDICINE, NYU HOSPITALS CENTER, ANDREW T.
RUBIN, DAVID KAPLAN, JOSEPH ANTONIK, and
JOSHUA SWIRNOW,

        Defendants.

**ORAL ARGUMENT REQUESTED**

Case No. 1:21-cv-502 (LJL)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) AND TO
ALTER OR AMEND THE JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e)**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Preliminary Statement ............................................................................................... 1

Background ................................................................................................................ 2

    Retaliation ............................................................................................................. 3

    Damages ................................................................................................................ 6

Argument ................................................................................................................... 6

I.     Defendants' Motion for Judgment as a Matter of Law on Remaining Claim for Retaliation under Title VII, the SHRL, and the CHRL ............................................. 6

    A.    Legal Standard ......................................................................................... 6

    B.    Retaliation ................................................................................................ 7

    C.    Discussion ................................................................................................ 8

        1.    Insufficient evidence that Antonik had knowledge of Plaintiff's purported activity prior to NYU's non-renewal of Plaintiff's employment ................................................................................. 9

        2.    Insufficient evidence that Antonik actually participated in the non-renewal and termination of Plaintiff's employment ............................ 10

        3.    Insufficient evidence that NYU acted negligently in any reliance on information provided by Antonik ...................................................... 12

II.    Defendants' Motion for Remittitur of the Jury's Front Pay Award ...................... 14

    A.    Legal Standard ....................................................................................... 14

    B.    Discussion .............................................................................................. 15

        1.    The Jury's Front Pay Award ......................................................... 15

            a.    The Jury Instruction ......................................................... 15

            b.    The Jury's Front Pay Award .............................................. 15

        2.    The Front Pay Award Should be Vacated ....................................... 16

            a.    There is zero evidence of the damages the jury awarded ............ 16

            b.    Plaintiff's damages were capped by her pretrial filings ............... 19

Conclusion ............................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advance Pharm., Inc. v. United States*,
  391 F.3d 377 (2d Cir. 2004)........................................................................7

*Anderson Grp., LLC v. City of Saratoga Springs*,
  805 F.3d 34 (2d Cir. 2015).........................................................................14

*Bergerson v. N.Y. State Off. of Mental Health*,
  652 F.3d 277 (2d Cir. 2011).......................................................................18

*Campbell v. Nat'l Fuel Gas Distrib. Corp.*,
  723 F. App'x 74 (2d Cir. 2018)...................................................................12

*Casmento v. Volmar Constr., Inc.*,
  No. 20-cv-0944, 2022 WL 15773966 (S.D.N.Y. Oct. 28, 2022)................................6

*Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*,
  824 F. Supp. 2d 573 (S.D.N.Y. 2011).......................................................18, 19

*Dudley v. City of New York*,
  No. 18 CIV. 10015 (AKH), 2020 WL 3791848 (S.D.N.Y. July 7, 2020)............................12

*Dunlap-McCuller v. Riese Org.*,
  980 F.2d 153 (2d Cir. 1992)........................................................................20

*Edwards v. Rochester Inst. of Tech.*,
  794 F. App'x 65 (2d Cir. 2019)...................................................................13

*Exodus Partners, LLC v. Cooke*,
  2007 WL 120053 (S.D.N.Y. Jan. 17, 2007) ...............................................14

*Feingold v. New York*,
  366 F.3d 138 (2d Cir. 2004)........................................................................11

*Hornig v. Trs. of Columbia Univ. in City of New York*,
  No. 17 CIV. 3602 (ER), 2022 WL 976267 (S.D.N.Y. Mar. 31, 2022)....................................12

*Krasner v. HSH Nordbank AG*,
  680 F. Supp. 2d 502 (S.D.N.Y. 2010)........................................................7, 8

*Kregler v. City of New York*,
  987 F. Supp. 2d 357 (S.D.N.Y. 2013).......................................................13

*Luca v. Cnty. of Nassau*,
   No. 04-cv-4898, 2008 WL 2435569 (E.D.N.Y. June 16, 2008), *rev'd on other*
   *grounds*, 344 Fed. Appx. 637 (2d Cir. 2009)...........................................................................19

*Malena v. Victoria's Secret Direct, LLC*,
   886 F. Supp. 2d 349 (S.D.N.Y. 2012)..................................................................................11

*Meloff v. New York Life Ins. Co.*,
   240 F.3d 138 (2d Cir. 2001).................................................................................................7

*Menaker v. Hofstra Univ.*,
   935 F.3d 20 (2d Cir. 2019)..................................................................................................12

*Olaechea v. City of New York*,
   No. 17-cv-4797, 2022 WL 3211424 .......................................................................... *passim*

*Olivares v. Brentwood Indus.*,
   822 F.3d 426 (8th Cir. 2016) ..............................................................................................19

*Press v. Concord Mortg. Corp.*,
   No. 08-cv-9497, 2010 WL 3199684 (S.D.N.Y. Aug. 11, 2010).............................................20

*Robinson v. De Niro*,
   No. 19-CV-09156 (LJL), 2023 WL 4862772 (S.D.N.Y. May 25, 2023) .............................4, 8

*Rossbach v. Montefiore Med. Ctr.*,
   No. 19CV5758 (DLC), 2021 WL 930710 (S.D.N.Y. Mar. 11, 2021) ....................................12

*Schupbach v. Shinseki*,
   905 F. Supp. 2d 422 (E.D.N.Y. 2012) ................................................................................10

*Smith v. Farmstand*,
   No. 11-cv-9147, 2016 WL 5912886 (N.D. Ill. Oct. 11, 2016) ..............................................17

*Thomas v. iStar Fin., Inc.*,
   508 F. Supp. 2d 252 (S.D.N.Y. 2007).....................................................................17, 18, 19

*Tingley Sys., Inc. v. Norse Sys., Inc.*,
   49 F.3d 93 (2d Cir. 1995)....................................................................................................14

*Torres v. Metro-North R.R. Co.*,
   No. 20-cv-10782, 2023 WL 4487726 (July 12, 2023)...........................................................14

*Trademark Rsch. Corp. v. Maxwell Online, Inc.*,
   995 F.2d 326 (2d Cir. 1993).........................................................................................14, 17

*Tse v. UBS Fin. Servs., Inc.*,
   568 F. Supp. 2d 274 (S.D.N.Y. 2008)..............................................................................14, 17

*Vasquez*, 835 F.3d at 275 ..................................................................................................12

**Statutes**

CHRL .................................................................................................................................2, 6

Civil Rights Act Title VII ............................................................................................ *passim*

Federal Equal Pay Act, New York Labor Law Section 194, Title VII ....................................2

New York City Human Rights Law ........................................................................................1

SHRL .........................................................................................................................2, 6, 10

State Human Rights Law ........................................................................................................1

State Human Rights Law ......................................................................................................12

**Other Authorities**

Fed. R. Civ. P. 50(a) .............................................................................................................6

Fed. R. Civ. P. 50(a)(1) .........................................................................................................6

Fed. R. Civ. P. 50(a)(2) .........................................................................................................7

Federal Rule of Civil Procedure 50 .......................................................................................6

Federal Rule of Civil Procedure 50(b) ...............................................................................1, 7

 "NYU Hospitals Center" (the "NYU Corporate Defendants") ...............................................1

Rule 26 ............................................................................................................................19, 20

Rule 59 ..................................................................................................................................7

002528\5\170338760.v1

**<u>Preliminary Statement</u>**

Defendants renew their oral motion, of July 18, 2023[1], for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) on Plaintiff's claim for retaliation under Title VII of the Civil Rights Act (Title VII), the New York State Human Rights Law (SHRL), or the New York City Human Rights Law (CHRL), against the NYU corporate defendants[2] and individual defendant Joseph Antonik and the jury's award for front pay.

There was insufficient evidence for a jury to determine that Plaintiff was engaged in protected activity or that NYU and/or Antonik were aware of protected activity on the part of Plaintiff.  Nor is there evidence that Antonik participated in the decision not to renew Plaintiff's expiring employment agreement; or that NYU was negligent in relying on any information it received in connection with its decision not to renew Plaintiff's expiring employment agreement.

The jury's award of front pay to Plaintiff is also unsupported by the evidence.  Indeed, the evidence shows the contrary, to wit: Plaintiff received more compensation at her job after NYU and thus did not sustain a loss requiring front pay.  The award should be vacated or at the very least remitted in and limited to the amount she sought in her pretrial filings.

---

[1] Declaration of Richard L. Steer executed August 16, 2023 ("Steer Decl."), Ex. A (July 18 Court Tr. 1298:6-1309:13)).

[2] The evidence presented at trial shows that the only entity defendant that is a proper defendant is NYU Grossman School of Medicine ("NYU"), which was the entity that employed Plaintiff.  All of the other entity defendants, NYU Langone Health System, NYU Langone Hospitals, and NYU Grossman School of Medicine, a Division of New York University, f/k/a "NYU Hospitals Center" s/h/a "NYU Langone Medical Center," "NYU Langone Nassau Rheumatology," "NYU School of Medicine," and "NYU Hospitals Center" (the "NYU Corporate Defendants"), either are without legal existence and thus not susceptible to being sued or were not proper party defendant with regard to Plaintiff's claims as there is no evidence that they took any action with regard to Plaintiff.

002528\5\170338760.v1

**Background**

Plaintiff brought various claims, including discrimination and retaliation, against NYU Corporate Defendants, and individual defendants, Antonik, Andrew Rubin, Joshua Swirnow, and David Kaplan.

On July 18, 2023, the Court granted Defendants' motion for judgment as a matter of law for Kaplan on all claims and for Kaplan, Rubin, and Swirnow on the discrimination claims.  (July 18 Court Tr. 1342:21-22; 1343:1-3.)  The Court also granted Defendants judgment on the claim for punitive damages, as "there is no evidence from which a reasonable jury could find that defendants engaged in gross misbehavior or conduct that willfully or wantonly caused hurt to another or engaged in willful or wanton negligence or reckless conduct or consciously disregarded the rights of the plaintiff."  (*Id.* at 1343:16-22.)

On July 19, 2023, following an eight-day trial, the jury returned a verdict finding that Defendants had <u>not</u> violated the Federal Equal Pay Act, New York Labor Law Section 194, Title VII, the SHRL, or the CHRL with respect to Plaintiff's discrimination claim; and that Defendants Rubin and Swirnow had <u>not</u> retaliated against Plaintiff in violation of Title VII, SHRL or the CHRL.

The jury, however, returned a verdict finding that Plaintiff engaged in protected activity and that the NYU Corporate Defendants committed an adverse act against her because of her protected conduct in violation of Title VII, the SHRL, and the CHRL and that Antonik aided or abetted an adverse act against Plaintiff because of her protected conduct in violation of the SHRL and the CHRL.  The verdict is without evidentiary support – indeed, contrary to the evidence – and should be vacated.

Judgment notwithstanding the verdict is appropriate here because the evidence in favor of the movant Defendants is so overwhelming that reasonable and fair-minded persons could not arrive at a verdict against them.  Further, there is such a complete lack of evidence supporting the verdict that the verdict could only have resulted from sheer surmise and conjecture on the part of the jury.

<u>Retaliation</u>

First, Plaintiff's first "complaint" to Human Resources, the only one that Antonik had knowledge of, was not protected activity.  That complaint was about office space.  And while the complaint included purported conduct on the part of Antonik, even if it did occur as Plaintiff alleges, Antonik's conduct was gender neutral as opposed to anything that could amount to discrimination.  As reflected by the notes taken by the investigator of that complaint: Antonik had come into Plaintiff's office, informing her that the directive above was that they wanted to move the Rheumatology practice into one space and requested that another doctor be able to use Plaintiff's office on the two days a week that she was not using it.  (Steer Decl., Ex. B (Pl's. Trial Ex. 21).)  Plaintiff complained that Antonik was sitting in her office and waving his arms questioning how often she is really there and whether she thinks the office is really hers. (Steer Decl., Exs. L (July 11 Court Tr. 112:22-25), C (July 12 Court Tr. 343:15-17).)  Plaintiff further complained that she was very uncomfortable after the conversation.  (Pl's. Trial Ex. 21.)  None of the complained of conduct was discriminatory or should be perceived as discriminatory, as opposed to being gender neutral.  As stated by the Court, "It's not gender discrimination for somebody to be intimidating, whether that person is a male or a female."  (Steer Decl., Ex. A (July 18 Court Tr. 1317:3-4).)  "Put another way, the fact that somebody happens to have genetic features of a male and the physical features of a male doesn't make the threatening activity to be gender

discrimination." (*Id*. at 1317:5-8.) Thus, there was nothing in Plaintiff's complaint that NYU or Antonik could have perceived as having been about her gender or discriminatory on any other basis. Further, it is undisputed that the discrimination laws do not create a general civility code. *Robinson v. De Niro*, No. 19-CV-09156 (LJL), 2023 WL 4862772, at *53 (S.D.N.Y. May 25, 2023). Plaintiff's complaint therefore does not constitute protected activity required to establish a retaliation claim.

Second, the alleged protected activity did not cause an adverse employment action. All iterations of retaliation claims, be they Title VII, state law, or city law, require proof of causation. There is no such proof in this case. Temporally, it is not close. The complaints end in November of 2020, approximately 14 months before the alleged adverse employment action. And the testimony uniformly – from every single witness – was that the prior complaints about office space had nothing to do with the contract nonrenewal decision.

The decision was made based on the assessment of Plaintiff's clinical practice initiated by Dr. Porges. Therefore, the retaliation claim should be dismissed. Antonik, who is not a clinician, did not do anything to retaliate. The evidence is clear that he neither had the power to do so nor did he participate in the decision not to renew Plaintiff's expiring employment agreement. Dr. Porges initiated the clinical review of Plaintiff's performance, and Kaplan directed the production of documents. Antonik was asked to put forward some emails, and he did. At most, his involvement was ministerial. There is no evidence that Antonik ever communicated, in any way, directly with Swirnow or the ultimate decision maker, Rubin, concerning Plaintiff's non-renewal. (*See e.g.,* Steer Decl., Exs. C (July 12 Court Tr. 493:20-22; 494:1-3; 512:10-13), D (July 13 Court Tr. 680; 21-24), and E (July 17 Court Tr. 980:9-12).) Moreover, there was no evidence that Antonik directed Ruiz to begin a log concerning issues specific to Plaintiff in response to Plaintiff's

4

complaint. (Steer Decl., Ex. F (July 14 Court Tr. 857:22-25; 858:1-2)).)  Ruiz, a non-party witness, testified that she had kept logs for the doctors in the suite as part of her job since she started working at NYU prior to 2019.   (July 14 Court Tr. 839:11-18; 852:8-15; 857:17-19) Plaintiff's case is based solely her conclusory surmise and insinuation which are contradicted squarely by the evidence admitted at trial. The evidence showed that Antonik was merely responding to instructions from his superior when he took Ruiz's log and passed it to somebody else.  Moreover, there was no showing whatsoever that the content of the log maintained by Ruiz and forwarded on by Antonik at Kaplan's request was in any way inaccurate or false.  Accordingly, there was no basis to find retaliation.

Rubin was the ultimate decision maker concerning the non-renewal of Plaintiff's employment agreement and termination of her employment.  The evidence is overwhelming that Rubin based his decision, in good faith, on what he was told by the clinicians, including Drs. Porges and Goldberg (who are not parties to this litigation).  Moreover, there is no evidence that the information provided was inaccurate, or that NYU or Rubin was negligent in such reliance, or that they were manipulated by anyone, let alone Antonik, who never directly communicated to Rubin about Plaintiff.

No one, including NYU and Antonik, was found to have discriminated against Plaintiff. And Swirnow and Rubin, the ultimate decision maker, were not found by the jury to have discriminated or retaliated against Plaintiff.

Based on the evidence, NYU and Antonik are entitled to the same result and should be granted judgment as a matter of law on all of Plaintiff's retaliation claims.

Damages

Plaintiff's purported claims for damages are equally lacking evidence to support the jury's award of front pay.

There is no back pay proof in the case and the jury did not award any backpay damages. There is no loss of revenue. Plaintiff did not go a day unemployed or miss a check when she left NYU. Rather, she earns and has earned more income at her new job than she did while employed at NYU. So, she likewise has no front pay damages. To the extent her front pay award is purportedly based on retirement benefits – there are no documents or other evidence supporting such an award. There is no documentary proof that Plaintiff does not get retirement benefits now. Her very short, unspecific testimony is insufficient and failed to even provide dollar amounts received from NYU or her new employer upon which an award could be calculated, let alone testimony that would support damages in the amount of $700,000. Plaintiff merely states that after her first year, there was a typical 401K to which she could contribute but there was purportedly no matching. Accordingly, her claim for front pay should be vacated.

## Argument

**I.** **Defendants' Motion for Judgment as a Matter of Law on Remaining Claim for Retaliation under Title VII, the SHRL, and the CHRL**

### A. Legal Standard

"Federal Rule of Civil Procedure 50 provides that, after 'a party has been fully heard on an issue' but 'before the case is submitted to the jury,' it may move for judgment as a matter of law on the ground that 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party.'" *Olaechea v. City of New York*, No. 17-cv-4797, 2022 WL 3211424, at *4 (citing Fed. R. Civ. P. 50(a)); *Casmento v. Volmar Constr., Inc.*, No. 20-cv-0944, 2022 WL 15773966, at *3 (S.D.N.Y. Oct. 28, 2022) (citing Fed. R. Civ. P. 50(a)(1)). "The movant 'must

6

specify the judgment sought and the law and facts that entitle the movant to the judgment.'" *Olaechea*, 2022 WL 3211424, at *4 (citing Fed. R. Civ. P. 50(a)(2).)  "Where, as here, the issue has been reserved, the moving party 'may file a renewed motion for judgment as a matter of law and include an alternative or joint request for a new trial under Rule 59.'" *Olaechea*, 2022 WL 3211424, at *4 (citing Fed. R. Civ. P. 50(b).)  "In ruling on a renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

"The Second Circuit has explained that judgment as a matter of law may be granted when '(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it.'" *Olaechea*, 2022 WL 3211424, at *5 (citing *Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001)).  "In assessing the sufficiency of evidence to support a jury verdict, [the Court] must view the record in the light most favorable to the opposing party, assuming all reasonable inferences were drawn and all credibility disputes resolved in its favor." *Olaechea*, 2022 WL 3211424, at *5 (citing *Advance Pharm., Inc. v. United States*, 391 F.3d 377, 390 (2d Cir. 2004)).

## B.  Retaliation

Title VII "protects employees [who] … make[] informal protests of discrimination, including making complaints to management, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.  *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 520 (S.D.N.Y. 2010) (citation omitted).  "Reasonable also plays a role in the second element, for 'implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have

7

understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Krasner*, 680 F. Supp. 2d 502, 520 (citations omitted).  Even if an employee has a good faith belief that she was complaining of gender discrimination, but the employer had no way to understand complaints as such, the complaint will not sustain a retaliation claim.  *Krasner*, 680 F. Supp. 2d at 521-22.  So, even though Antonik may not have been happy about Plaintiff complaining about him, he had no reason to believe she had complained about discrimination. And even if NYU, arguendo, terminated Plaintiff's employment based on Antonik's displeasure with the complaint (which it did not), her termination nevertheless does not amount to unlawful retaliation.  *See Krasner*, 680 F. Supp. 2d at 521-22 (gender neutral complaints did not amount to protected activity).

Moreover, her subsequent email to Human Resources using buzz words like "harassment" and "toxic work environment" also does not amount to protected activity.  *Robinson*, 2023 WL 4862772, at *90-91.  Like the first complaint, her subsequent communications to Human Resources are also not understood by NYU to be complaints about discrimination.  There is no testimony that NYU regarded those as actual discrimination, so it was not protected activity, which is a predicate for the retaliation claim.  Further, there is no evidence that Antonik was even made aware of those subsequent communications from Plaintiff.  Accordingly, because there was no proof presented at trial that Antonik was aware of the subsequent complaints as being related to discrimination, there is no basis to find retaliation under the law.

### C.  Discussion

There was insufficient evidence presented at trial for the jury to conclude that: (1) Antonik was aware of protected activity on the part of Plaintiff prior to NYU's non-renewal of Plaintiff's expiring employment agreement; (2) Antonik actually participated in the non-renewal of Plaintiff's expiring employment agreement; or (3) NYU acted negligently in any reliance on

information Antonik provided to Dr. Porges at the direction of Kaplan, to whom he reported. (*See* Steer Decl., Ex. C (July 12 Court Tr. 500:7-9.)

     1.    Insufficient evidence that Antonik had knowledge of Plaintiff's purported activity prior to NYU's non-renewal of Plaintiff's employment

There is no evidence that Antonik or the Human Resources representative who spoke with him about Plaintiff's first complaint (the only one that Antonik had knowledge of) were aware or had reason to be aware that Plaintiff was purportedly making a discrimination complaint, as opposed to what NYU and Antonik perceived as merely a dispute about office space, prior to NYU's non-renewal of Plaintiff's expiring employment agreement.

The jury was instructed that, *inter alia* –

- "Protected activity includes an employee's conduct in opposing in good faith unlawful discrimination by complaining about discrimination to the employer."  (Steer Decl., Ex. G (July 19 Court Tr. 1457:16-18).)
- "The second element of a retaliation claim under the state human rights law is that the defendant whose conduct you are considering must have known that Dr. Edelman was engaged in protected activity."  (July 19 Court Tr. 1457:19-22.)

Here, there is no evidence that Antonik was aware that Plaintiff was engaged in "protected activity."  The evidence reflects that Antonik merely knew about Plaintiff's complaint concerning NYU's request to permit another doctor to use Plaintiff's office on the days that she was not using it and his purported hand gestures during their meeting concerning the use of her office.  (Steer Decl., Exs. B (Pl's. Trial Ex. 21); C (July 12 Court Tr. 530:8-10).)  There is no evidence that he knew about her subsequent complaint containing buzz words or any allegation of any purported discrimination until after Plaintiff's non-renewal.  In addition, prior to Plaintiff's non-renewal, Antonik had not seen her employment contract and was not aware that her contract was expiring. (July 12 Court Tr. 534:4-10.)  Antonik was not even aware of the reasons for which Plaintiff could be terminated.  (*See* July 12 Court Tr. 528:15-21.)

Plaintiff "cannot simply substitute utter speculation for the competent proof that would

be necessary to permit rational inferences by a jury" of Antonik's purported knowledge of alleged protected activity or retaliatory motive. *Olaechea*, 2022 WL 3211424, at *6 (citing *Schupbach v. Shinseki*, 905 F. Supp. 2d 422, 437 (E.D.N.Y. 2012)).

> ### 2. Insufficient evidence that Antonik actually participated in the non-renewal and termination of Plaintiff's employment

The jury was also instructed that they may find employees individually liable under an aiding and abetting theory to an employer who has retaliated in violation of the SHRL.  (Steer Decl., Ex. G (July 19 Court Tr. 1462:7-12).)  They were further instructed that if they "find that the individual defendants actually participated in the decision to not renew plaintiff's contract and to terminate her employment, then [they] may find them liable under an aider-and-abettor theory, even if they did not have hiring or firing authority."  (July 19 Court Tr. 1462:20-24.)

Antonik, as the Site Director, had no hiring or firing authority with respect to Plaintiff or any of the doctors.  There is also no evidence that he participates in any firing decisions with respect to any doctors. (Steer Decl., Ex. D (July 13 Court Tr. 564: 21-25.)  There is no evidence that Antonik actually participated in the decision to renew her contract in 2017, or in the decision not to renew Plaintiff's contract upon its expiration and to terminate her employment.  Evidence shows that Antonik did not see, nor was he familiar with, the terms of Plaintiff's contract, nor did he even have access to it to understand the possible bases for her termination as per the contract. (Steer Decl., Ex. C (July 12 Court Tr. 534:2-13).)  Indeed, the evidence shows that Antonik did not even know that a decision to non-renew Plaintiff's contract was being considered or that it could be considered.  (*Id.* at 534:2-13; 535:13-17.)

The evidence showed that Antonik played a ministerial role in the gathering of information concerning Plaintiff.  (*Id.* at 500:4-6; 534:2-13; 535:13-17.)  As part of her job, Miriam Ruiz, the office manager, had been compiling a list of "issues" concerning Plaintiff as she did for all doctors

in the suite where Plaintiff was located.  There is no evidence whatsoever that Antonik requested or directed Ruiz to compile this list for Plaintiff or any other physician.  Rather, Ruiz testified that since she first started working for NYU, prior to 2019, she kept records of anything that happened in the suite including creating spreadsheets of all types of complaints concerning the doctors. (Steer Decl., Ex. F (July 14 Court Tr. 839:10-18).)  Ruiz testified that "before 2019 when [she] first started working for NYU, [she] kept spreadsheets of all types of complaints."  (July 14 Court Tr. 839:17-18.  She also testified that she kept "similar logs" for other doctors, including "patient complaints, workflow issues, … if the doctor didn't complete something that needed to be completed, just keeping track of things so that [she] had a recollection of what was going on." (*Id.* 857:8-16.)  Ruiz further testified that she kept the logs in the "same format for the other doctors in the suite."  (*Id.* 857:17-19.)   When Dr. Porges requested that Antonik provide him with information concerning Plaintiff, Antonik, in response, merely sent an email including the information that he gathered concerning Plaintiff to Dr. Porges.  (Steer Decl., Ex. C (July 12 Court Tr. 504:24-25; 505:1-2).) There was no evidence adduced that the evidence he conveyed was in any way false or inaccurate. It was merely the observations of his subordinate, Ms. Ruiz, a non-party, who had no involvement in the underlying complaint or alleged retaliation.

"For an individual defendant to be liable for retaliation under the NYCHRL, he must have 'actually participated in the conduct giving rise to the plaintiff's' claims.'" *Olaechea*, 2022 WL 3211424, at *5 (citing *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012); *accord, Feingold v. New York*, 366 F.3d 138, 158-59 (2d Cir. 2004) ("Employees may be held personally liable under the NYSHRL and the NYCHRL if they participate in the conduct giving rise to a discrimination claim.")).  "Such participation requires retaliatory "intent." *Olaechea*, 2022 WL 3211424, at *5 (citing *Malena*, 886 F. Supp. 2d at 366).

It "therefore necessarily requires an individual's knowledge of the protected activity at the time of his participation." *Olaechea*, 2022 WL 3211424, at *5.

3.    Insufficient evidence that NYU acted negligently in any reliance on information provided by Antonik

The jury was charged with the following Cat's Paw instruction:

> Like under Title VII, NYU's retaliatory intent may be imputed from a subordinate under New York State Human Rights Law if NYU's decision to terminate was proximately caused by a subordinate who had a retaliatory motive and intended to bring about the adverse employment action.  The same standard applies here as under Title VII.  NYU must have been negligent or reckless in giving effect to the retaliatory intent of its low-level employees, which requires NYU to have known or reasonably should have known about the retaliatory motivation.  Again, you must also find that the false accusations themselves were the product of retaliatory intent.

> Like under Title VII, an employer may not be held liable simply because it acts on information provided by a biased coworker.  Thus, if NYU, non-negligently and in good faith, relies on a false and malign report of an employee who acted out of an unlawful animus, it cannot be held accountable or said to have been motivated by the employee's animus.

(Steer Decl., Ex. G (July 19 Court Tr. 1459:8-24.)

This Cat's Paw theory will succeed "[o]nly when an employer in effect adopts an employee's unlawful animus by acting negligently with respect to the information provided by the employee, and thereby affords that biased employee an outsize role in its own employment decision." *Campbell v. Nat'l Fuel Gas Distrib. Corp.*, 723 F. App'x 74, 76 (2d Cir. 2018) (citing *Vasquez*, 835 F.3d at 275); *Hornig v. Trs. of Columbia Univ. in City of New York*, No. 17 CIV. 3602 (ER), 2022 WL 976267, at *23 (S.D.N.Y. Mar. 31, 2022) (citing *Vasquez*, 835 F.3d at 274–75); *Rossbach v. Montefiore Med. Ctr.*, No. 19CV5758 (DLC), 2021 WL 930710, at *5 (S.D.N.Y. Mar. 11, 2021) (citing *Vasquez*, 835 F.3d 267, 272); *Dudley v. City of New York*, No. 18 CIV. 10015 (AKH), 2020 WL 3791848, at *10 (S.D.N.Y. July 7, 2020) (Cat's Paw principles provide for liability where employer was negligent in relying on agent when it knew or should have known of agent's discriminatory motivation) (citing *Menaker v. Hofstra Univ.*, 935 F.3d 20, 38 (2d Cir.

12

2019); *see also, e.g.*, *Edwards v. Rochester Inst. of Tech.*, 794 F. App'x 65, 67 (2d Cir. 2019) (summary judgment finding no liability under Cat's Paw theory affirmed where, *inter alia*, that "[a]lthough [the employer] consulted with [the discriminatory employee] before terminating [plaintiff], [the employer] also spoke with four other [ ] employees" and found the "evidence was consistent") (citations omitted)).

Rubin was the ultimate decision maker.  There is no evidence that he was negligent in such reliance or that he was manipulated by anyone.  Rather, he was not found by the jury to have discriminated or retaliated against Plaintiff.  The overwhelming and uncontradicted evidence shows that he based his decision, in good faith, on the evaluations by the clinicians, *i.e.*, Dr. Porges and Dr. Goldberg, who were not defendants in the case, and not because of any input from Antonik or any other facilities managers.  Furthermore, the information provided by Ruiz through Antonik was not shown to be either "false" or "malign," but rather were her observations recorded in the course of her duties as Office Manager.

"Moreover, unlike the typical cat and monkey roles, here there were additional layers of attenuation between [Antonik] and [the decision makers]."  *Kregler v. City of New York*, 987 F. Supp. 2d 357, 369 (S.D.N.Y. 2013).  Like in *Kregler*, plaintiff's theory that one person gave information to a second person that was tainted by retaliatory animus, and that person in turn provided information to a third person which was also tainted, "strains the cat's paw theory beyond existing case law."  *Id.*  Such is the case here.  Kaplan asked Dr. Porges to gather information, who in turn instructed Antonik to gather information. (*See e.g.,* Steer Decl., Ex. A (July 18 Court Tr. 1184:8-14,19-25; 1193:18-24).) In response to that instruction, Antonik merely pushed forward a document that was prepared by someone else, Ruiz, and nonetheless was not shown to be inaccurate.

## II.  **Defendants' Motion for Remittitur of the Jury's Front Pay Award**

### A.  **Legal Standard**

"If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or under, the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Torres v. Metro-North R.R. Co.*, No. 20-cv-10782, 2023 WL 4487726, at *6 (July 12, 2023) (citing *Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995)).  It may "be warranted where it can be demonstrated that the jury awarded specific amounts of damages that were not supported by the record." *Olaechea*, at *8 (citing *Tse v. UBS Fin. Servs., Inc*., 568 F. Supp. 2d 274, 287 (S.D.N.Y. 2008) (citing *Trademark Rsch. Corp. v. Maxwell Online, Inc*., 995 F.2d 326, 337 (2d Cir. 1993))).

The Court may determine that remittitur, as opposed to a new trial on damages, is appropriate with respect to a jury's award for lost wages.  *Torres*, 2023 WL 4487726, at *13 (remitting award for lost wages which was not supported by the record and was unduly speculative) (citing *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 51 (2d Cir. 2015) (remitting award after concluding "our detailed assessment of the trial evidence bearing on damages convinces us that the jury's inclusion in its award of $900,000 for the lost developer's fee was impermissibly speculative"); *Olaechea*, 2022 WL 3211424, at *9 ("[T]he jury's front pay award must be remitted in its entirety for a 'specific error'—namely, that it was 'impermissibly speculative.' (citation omitted)); *Exodus Partners, LLC v. Cooke*, 2007 WL 120053, at *13 (S.D.N.Y. Jan. 17, 2007) ("A close analysis of the record, however, reveals that the jury awarded certain damages for the breach of contract without adequate support in the record. The Court will therefore require a $240,000 remittitur, bringing the breach-of-contract award to $90,000.")). Assuming arguendo that the Court does not grant judgment as a matter of law with regard to

14

Plaintiff's retaliation claims, given the jury's excessive and speculative award of damages, remittitur rather than a new trial on damages would be appropriate.

**B. Discussion**

    1.    <u>The Jury's Front Pay Award</u>

        a.    The Jury Instruction

The following is the instruction that was given to the jury concerning any front pay award.

> Here, if you find for Dr. Edelman on her claims for retaliation under state human rights law or city human rights law, you should consider her damages for front pay.  Front pay damages, if any, represent a plaintiff's lost salary and benefits, caused by an unlawful discharge or other adverse action, accruing from the time of trial through some point in the future.  If you find that Dr. Edelman will be unable to earn in the future what she would have earned at NYU, then you may award her, as additional compensation, the amount she would have earned during the time period between the date of your verdict and either: 1) the date you believe she would have worked at NYU absent any discriminatory conduct or 2) the date you can reasonably predict that she has a reasonable prospect of obtaining comparable employment.  Factors to be considered in determining front pay include the age of the plaintiff and her reasonable prospects of obtaining comparable employment.  In doing so, you should bear in mind that the purpose of front pay is to make a plaintiff whole—that is, to put Plaintiff in the position she would have been in if Defendants had not discriminated against her.

> That said, Dr. Edelman has the burden of proving that she actually incurred a loss of front pay.  Please note that Dr. Edelman is only entitled to be compensated once for any alleged front pay that arose from the retaliation claims that she has prevailed upon.

(Steer Decl., Ex. G (July 19 Court Tr. 1473:9-25; 1474:1-20).)

        b.    The Jury's Front Pay Award

The jury found that Dr. Edelman suffered monetary damages because of retaliation and awarded Plaintiff $700,000 in front pay. (*See* Steer Decl., Ex. H (ECF Doc. No. 243 (Jury Verdict Form, at 6-7).)  This award is not only without evidentiary support, but also directly against the evidence that Plaintiff made more money after she left NYU.  Put simply, Plaintiff failed to meet her evidentiary burden because the evidence presented showed that she did not suffer any loss in pay after she left NYU and instead made more money.  The verdict is therefore contrary to the

Court's instructions that: "Front pay damages, if any, represent a plaintiff's lost salary and benefits, caused by an unlawful discharge or other adverse action, accruing from the time of trial through some point in the future."  Here, Plaintiff suffered no loss in salary and benefits when compared to her new compensation.  The award of $700,000 is an unwarranted windfall if sustained and should therefore be vacated.

      **2.**    **The Front Pay Award Should be Vacated**

          **a.**   There is zero evidence of the damages the jury awarded

Plaintiff was employed with NYU from December 1, 2014 (*See* Steer Decl., Ex. I (Pl's. Trial Ex. 8, at 5)) through May 31, 2021. (*See* Steer Decl., Ex. J (Pl's. Trial Ex. 7).)

On December 1, 2020, Plaintiff was notified of the non-renewal of her employment agreement expiring on December 31, 2020, and NYU advised Plaintiff that her employment would terminate on May 31, 2021.  (*Id*.)  Just prior to Plaintiff's non-renewal, her compensation was $278,000.  (Steer Decl., Exs. K (Pl.'s Trial Ex. 9), L (July 11 Court Tr. 107:19-24).)

Prior to the anticipated May 31, 2021, termination date, by February 16, 2021, Plaintiff had secured a job with Arthritis & Rheumatism Associates, PL, in Florida. (Steer Decl., Ex. M (Pl's. Trial Ex. 88, P1-P13).)  Plaintiff continued working at NYU until May 2021.  (July 11 Court Tr. 87:21-23).)  She began working at Arthritis & Rheumatism Associates, PL, on May 1, 2021.  (July 11 Court Tr. 210:10-11).)  In contrast to her salary at NYU, Plaintiff's salary at her new job was higher with Arthritis & Rheumatism Associates, PL was $300,000 for the first year, and she received a $25,000 moving expense allowance. (*See* Steer Decl., Exs. M (Pl's. Trial Ex. 88, at P4, Par. 14), L (July 11 Court Tr. 210:12-14).) During her second year of employment, her salary increased to $325,000. (*Id*. at P4, Par. 14.) In addition to her salary, Plaintiff also received a 20% incentive compensation in the form of a bonus of her gross collection in excess of 200% of her base salary for the first completed year of employment, and then 25% for the following years. (*Id*.

at P4, Par. 15.)  Plaintiff is earning approximately $71,000 more a year with her new employer

than she did while working for NYU.  (*See* Steer Decl., Exs. K (Pl's Trial Ex. 9, at 3), M (Pl's.

Trial Ex. 88, at P4)).)

The jury was instructed that -

If you find that Dr. Edelman will be unable to earn in the future what she would
have earned at NYU, then you may award her, as additional compensation, the
amount she would have earned during the time period between the date of your
verdict and either: 1) the date you believe she would have worked at NYU absent any
discriminatory conduct or 2) the date you can reasonably predict that she has a
reasonable prospect of obtaining comparable employment.

(Steer Decl., Ex. G (July 19 Court Tr. 1474:2-9.)

Here, the evidence reflects that Plaintiff has had no lost compensation since the end of her

employment with NYU by which to compute an award of front pay.  Plaintiff did not go a day

unemployed and she made more money at her new job. Plaintiff further failed to demonstrate

through testimony or documentary evidence the amount of salary and benefits she received from

NYU such that, by comparison, her overall salary and benefits in Florida yielded a deficit.  The

evidence therefore requires that no front pay be awarded.  "Front pay must consider the ability of

the plaintiff to mitigate damages in the future."  *Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252,

260 (S.D.N.Y. 2007) (citation omitted).  Plaintiff successfully mitigated her damages as she has

made more in compensation since she left NYU than she made while employed without any gap

in employment. Therefore, her award of front pay should be vacated as not supported by the record

as contrary to the Court's instructions above, and as the award puts her in a better position than

had she stayed employed by NYU.  *See Olaechea*, at *8 (citing *Tse*, 568 F. Supp. 2d at 287) (citing

*Trademark Rsch. Corp.*, 995 F.2d at 337)); *see Smith v. Farmstand*, No. 11-cv-9147, 2016 WL

5912886, at *24 (N.D. Ill. Oct. 11, 2016) (court concluded that plaintiff was not entitled to front

pay because he had successfully mitigated damages where plaintiff maintained comparable job for

17

more than 12 months that afforded him a salary equal or greater than what plaintiff was likely to earn at former employer).  "The purpose of an award of front pay is to make the victim of unlawful retaliation whole, *see Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 285 (2d Cir. 2011), and should not place the plaintiff in a better position than [she] would have occupied had [she] not been fired."  *Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 576-77 (S.D.N.Y. 2011) (citing *Thomas*, 508 F. Supp. 2d at 260).  "The purpose of an award of front pay is to make the victim of unlawful retaliation whole, *see Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 285 (2d Cir. 2011), and should not place the plaintiff in a better position than [she] would have occupied had [she] not been fired."  *Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 576-77 (S.D.N.Y. 2011) (citing *Thomas*, 508 F. Supp. 2d at 260).

Plaintiff's only claim for front pay is based on an alleged lack of contribution to her retirement plan by her new employer.  (Steer Decl., Ex. L (July 11 Court Tr. 210:19-25).)  But Plaintiff has no documentary proof that she does not receive retirement benefits now.  Her very short, unspecific testimony is insufficient.  Based on her testimony, she has a 401k option in her present position just as she did at NYU.  (Steer Decl., Exs. L (July 11 Court Tr. 210:20-25), M (Pl's Trial Ex. 88, at P6, Par. 20).)  It is clear from her testimony and the evidence in the record that Plaintiff is only basing her front pay claim on her alleged loss of a matching retirement benefit plan contribution from NYU.  However, Plaintiff never testified that she contributed to her retirement plan at NYU let alone that NYU provided any corresponding matching amount, and there is no evidence in the record to that effect.  There is also no evidence concerning the 401k option or Plaintiff's election or contribution or lack thereof at her new employer.  Furthermore, even had she proven that she does not separately receive contribution to her retirement plan now, she did not suffer any loss because her new compensation alone is above the combined level of

salary and retirement benefits she received at NYU.  "While a district court may consider lost

pension benefits in calculating a front pay award, *see Luca v. Cnty. of Nassau*, No. 04-cv-4898,

2008 WL 2435569, at *5 (E.D.N.Y. June 16, 2008), *rev'd on other grounds*, 344 Fed. Appx. 637

(2d Cir. 2009), any such award must be supported by the evidence."  *Chisholm*, 824 F. Supp. 2d at

578; *see, Olivares v. Brentwood Indus*., 822 F.3d 426, 430 (8th Cir. 2016) (district court declined

to speculate about a front pay award solely on plaintiff's testimony).  Any award of front pay is

therefore unwarranted.

Moreover, it is illogical to look at only one component of her compensation as the basis for

a front pay award.  Otherwise, if at her new job, Plaintiff's compensation increased to $1 million

more a year than she made at NYU (but with no benefits), under her theory, she would still be

entitled to the $26,000 maximum match from NYU (Steer Decl., Ex. K (Pl's. Trial Ex. 9, Scheule

A, n. 1)) to purportedly make her whole for no longer being employed by NYU.  Accordingly,

Plaintiff should not be placed in a better position than she would have occupied had her

employment not ended at NYU.  *See Chisholm*, 824 F. Supp. 2d at 576-77 (citing *Thomas*, 508 F.

Supp. 2d at 260).

### b.  Plaintiff's damages were capped by her pretrial filings

If Plaintiff's damages award is not vacated, it should be capped at an amount of $137,400,

which is the amount she claimed on the eve of trial in her Plaintiff's First Amended Rule 26

Disclosures (Steer Decl., Ex. N (ECF Doc. No. 202-1, at 3, C(ii)))[3] and the Joint Final Pretrial

---

[3] In Plaintiff's First Amended Rule 26 Disclosures, she submitted that she lost $27,800 per year in
2022, 2023, and 2024 for NYU's 10% match into her retirement account. (*See also* July 11 Court
Tr. 79: 24-25-80:2, 9-15 (Plaintiff testified that NYU would contribute up to a 10% match of what
Plaintiff contributed each year).)  However, there is no evidence in the record that Plaintiff
contributed to a retirement plan while at NYU and if so, how much.  Additionally, Plaintiff
introduced no evidentiary support that her current employer was not providing a match with

Order (ECF Doc. No. 197).  In those filings, Plaintiff calculated an amount of lost compensation in both backpay and front pay in the amount of $137,400, consisting of what she claimed she would have received from NYU by way of retirement plan contribution for 2022, 2023 and 2024. Thus, even putting aside the fact that she had not suffered a loss as shown above and failed to demonstrate same at trial, there is no basis to award anything above the $137,400 amount she calculated for alleged backpay and front pay damages.  Any amount awarded above what Plaintiff claimed is not only speculative, but also without evidentiary support, and against the instructions of the Court and, indeed, common sense.  *See Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992) ("An award of front pay cannot be unduly speculative") (citing *Press v. Concord Mortg. Corp.*, No. 08-cv-9497, 2010 WL 3199684, at *2 (S.D.N.Y. Aug. 11, 2010)).

Therefore, the front pay award must be vacated or alternatively remitted for an amount of no more than $137,400.

---

respect retirement benefit contributions.  However, assuming, *arguendo,* that Plaintiff lost the amount of the 10% match from NYU as alleged, the jury's $700,000 verdict would award her $27,800 per year in front pay for the next 25 years.  Such an award is not supported by the evidence and is speculative, excessive, and improper, and exceeds the match cap of $26,000 per annum permitted under her NYU contract.  (Steer Decl., Ex. K (Pl's. Trial Ex. 9, Scheule A, n. 1).)

## <u>Conclusion</u>

For the reasons set forth herein above, Defendants respectfully request that their motion for judgment as a matter of law be granted and the front pay award be vacated or, alternatively, at the very least remitted and limited to the amount Plaintiff sought in her pretrial filings. Defendants respectfully request oral argument.

Dated: New York, New York
        August 23, 2023

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendants*


By:   */s/ Richard L. Steer*
        Richard L. Steer
        Richard C. Schoenstein
        Ingrid J. Cardona
        1350 Broadway, 11th Floor
        New York, New York 10018
        (212) 216-8000
        rsteer@tarterkrinsky.com
        rschoenstein@tarterkrinsky.com
        icardona@tarterkrinsky.com