UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

DR. SARI EDELMAN,

**Case No.:** 1:21-cv-502 (LJL) (GWG)

Plaintiff,

-against-

NYU LANGONE HEALTH SYSTEM, NYU
LANGONE HOSPITALS, NYU LANGONE
MEDICAL CENTER, NYU LANGONE NASSAU
RHEUMATOLOGY, NYU SCHOOL OF
MEDICINE, NYU GROSSMAN SCHOOL OF
MEDICINE, NYU HOSPITALS CENTER,
ANDREW T. RUBIN, DAVID KAPLAN, JOSEPH
ANTONIK, and JOSHUA SWIRNOW,

Defendants.

-----------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR
JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, FOR A NEW TRIAL**

**MILMAN LABUDA LAW GROUP PLLC**
Joseph M. Labuda, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
joe@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Plaintiff*
*Dr. Sari Edelman*

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................................1

II.    PROCEDURAL BACKGROUND ...........................................................................2

III.   FACTS PRESENTED AT TRIAL ..........................................................................3

IV.   STANDARD .............................................................................................................6

      i. Judgment as a Matter of Law under Fed. R. Civ. P. 50 ...................................6

      ii. Motion for a New Trial under Fed. R. Civ. P. 59 (in the alternative) ......................8

V.    ARGUMENT .............................................................................................................8

   A. THE JURY'S VERDICT ON PLAINTIFF'S EPA CLAIMS MUST BE
      REVERSED ...........................................................................................................8

      i. Plaintiff Established That She and Dr. Modi Performed Equal Work .....................8

            a. Skill ...........................................................................................................10

            b. Effort ........................................................................................................10

            c. Responsibility ...........................................................................................11

            d. Similar Working Conditions .....................................................................12

      ii. Plaintiff Established Unequal Pay as Between Her & Dr. Modi .............................12

      iii. Defendants Failed to Establish a *Bona Fide* Factor Other Than Sex ...................14

      iii. Plaintiff is entitled to judgment as a matter of law on her New York EPA
         claims ..........................................................................................................18

VI.   CONCLUSION ......................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

Aldrich v. Randolph Cent. Sch. Dist.,
 963 F.2d 520 (2d Cir. 1992)........................................................................... 14, 16

Belfi v. Prendergast,
 191 F.3d 129 (2d Cir. 1999)........................................................................... 14, 16

Casmento v. Volmar ConsTr., Inc.,
 No. 20-CIV-00944 (LJL), 2022 WL 15773966 (S.D.N.Y. Oct. 28, 2022) ............... 7 n. 32

Corning Glass Works v. Brennan,
 417 U.S. 188 (1974)............................................................. 17 n. 68, 19 n. 76

Cweklinsky v. Mobil Chem. Co.,
 364 F.3d 68 (2d Cir. 2004)........................................................................ 8 n. 35

Deloreto v. Karengekis,
 104 Fed. Appx. 765 (2d Cir. 2004)............................................................ 7 n. 31

DLC Mgmt. Corp. v. Town of Hyde Park,
 163 F.3d 124 (2d Cir. 1998)...................................................................... 8 n. 35

Dupree v. Younger,
 598 U.S. 729 (2023)................................................................................... 2 n. 2

E.E.O.C. v. Port Auth. of N.Y. & N.J.,
 768 F.3d 247 (2d Cir. 2014)...................................................................... 9 n. 39

EEOC v. J.C. Penney Co., Inc.,
 843 F.2d 249 (6th Cir. 1988) ........................................................................ 16

Harris v. O'Hare,
 770 F.3d 224 (2d Cir. 2014)...................................................................... 8 n. 35

Hernandez v. Keane,
 341 F.3d 137 (2d Cir. 2003)...................................................................... 6 n. 27

ING Glob. v. United Parcel Serv. Oasis Supply Corp.,
 757 F.3d 92 (2d Cir. 2014)........................................................................ 7 n. 31

Irby v. Bittick,
 44 F.3d 949 (11th Cir. 1995) .................................................................... 17 n. 67

Jamilik v. Yale Univ.,
    362 Fed. Appx. 148 (2d Cir. 2009) ........................................................ 16 n. 63

Jones v. Town of East Haven,
    691 F.3d 72 (2d Cir. 2012) ..................................................................... 7 n. 29

Meloff v. New York Life Ins. Co.,
    240 F.3d 138 (2d Cir. 2001) ......................................................... 3 n. 6, 8 n. 36

Minnette v. Warner Amex Cable Commun., Inc.,
    No. 89-CIV.-8225 (CMM), 1992 WL 373483 (S.D.N.Y. Nov. 30, 1992) ............... 9 n. 40

Minnette v. Warner Amex Cable,
    993 F.2d 1534 (2d Cir. 1993) .................................................................. 9 n. 40

Morse v. Fusto,
    804 F.3d 538 (2d Cir. 2015) .................................................................... 6 n. 25

Munafo v. Metro. Transp. Auth.,
    381 F.3d 99 (2d Cir. 2004) ..................................................................... 8 n. 34

Rizo v. Yovino,
    950 F.3d 1217 (9th Cir. 2020) ................................................................ 17 n. 67

Rizo v. Yovino,
    141 S. Ct. 189 (2020) ........................................................................... 17 n. 67

Rose v. Goldman, Sachs & Co.,
    163 F.Supp.2d 238 (S.D.N.Y.2001) .......................................................... 18 n. 73

Ryduchowski v. Port Auth. of New York & New Jersey,
    203 F.3d 135 (2d Cir. 2000) ................................................................... 16 n. 63

S.E.C. v. Ginder,
    752 F.3d 569 (2d Cir. 2014) ........................................................ 3 n. 6, 7 n. 29

Starr Indem. & Liab. Co. v. Am. Claims Mgmt., Inc.,
    131 F. Supp. 3d 185 (S.D.N.Y. 2015) ....................................................... 8 n. 36

Tepperwien v. Entergy Nuclear Operations, Inc.,
    663 F.3d 556 (2d Cir. 2011) ................................................................... 7 n. 30

Tolbert v. Queens Coll.,
    242 F.3d 58 (2d Cir. 2001) .................................................................... 7 n. 31

Tomka v. Seiler Corp.,
    66 F.3d 1295 (2d Cir. 1995)................................................................. 14

Triolo v. Nassau Cty,
    24 F.4th 98 (2d Cir. 2022) ........................................................ 7 n. 30

Volpe v. Nassau County,
    915 F. Supp. 2d 284 (E.D.N.Y. 2013) ................................... 18 n. 73

Usery v. Columbia Univ.,
    568 F.2d 953 (2d Cir. 1977).................................................... 10 n. 45

**Statutes**

29 U.S.C. § 206................................................................................ 14, 15

New York Labor Law § 194... ................................... 18 n. 74, 19 n. 75

New York Labor Law § 194-a... .......................................... 20 n. 77

**Rules**

Fed. R. Civ. P. 50 ............................................ 1, 6, 6 n. 24, 6 n. 28, 7

Fed. R. Civ. P. 56 .......................................................................... 6

Fed. R. Civ. P. 59 .................................... 1, 6, 6 n. 24, 8, 8 n. 33

**Regulations**

29 C.F.R. § 1620.17... ......................................................... 11 n. 46

**Other**

S. Rep. No. 176, 88th Cong., 1st Sess., 1 (1963)............................. 17 n. 68

## I.     **PRELIMINARY STATEMENT**

At trial, Plaintiff Dr. Sari Edelman ("Dr. Edelman" or "Plaintiff") established a *prima facie* case under the federal and state Equal Pay Act ("EPA") and Defendants failed to establish that she was paid less due to a *bona fide* factor other than sex.  Plaintiff indisputably established she performed equal work to Dr. Anang Modi ("Dr. Modi") and was paid less than him for the same work.  Thus, as a matter of law, the Court must find for Plaintiff on her EPA claims as it relates to Dr. Modi, notwithstanding the jury's verdict to the contrary.

On July 19, 2023, following an eight (8) day trial, the jury rendered a verdict finding, *inter alia*, that:

(i) Dr. Edelman did not prove by a preponderance of the evidence that NYU employed her and Dr. Modi in a job requiring substantially equal skill, effort, and responsibility;

(ii) Dr. Edelman did not prove by a preponderance of the evidence that she was paid lower compensation than Dr. Modi for doing substantially equal work; and

(iii) Defendants proved by a preponderance of the evidence that the differences in pay between Dr. Edelman and Dr. Modi were based on factors other than sex, even though the evidence supported a verdict in Plaintiff's favor.

Accordingly, Plaintiff submits this memorandum of law in support of her motion for judgment as a matter of law or, alternatively, for a new trial.  For the reasons set forth below, and upon all the evidence adduced at trial, Plaintiff respectfully submits that this Court enter judgment against Defendants and in favor of Plaintiff reversing the jury's verdict on Plaintiff's EPA claim as it relates to Dr. Modi notwithstanding the verdict pursuant to Rule 50 of the Federal Rules of Civil Procedure (hereinafter "Rules" or "Rule") or, alternatively, for a new trial under Rule 59.

## II.    **PROCEDURAL BACKGROUND**

On January 20, 2021, Plaintiff filed a complaint against Defendants seeking, *inter alia*, damages under the EPA because she was paid less than her male comparators for the same work.[1]

On September 28, 2022, following discovery, the Hon. Lorna G. Schofield, U.S.D.J. ("Judge Schofield") found, in denying summary judgment to Defendants,[2] that Plaintiff established a *prima facie* case because she was paid less for the same clinical work performed by her and male comparators.[3]   Similarly, Judge Schofield found that Defendants' shifting explanations for how and why their "business plan" system was implemented was insufficient to explain the pay disparity.[4]   Crucially, Judge Schofield found that while Dr. Avram Goldberg's ("Dr. Goldberg") and Dr. Andrew Porges' ("Dr. Porges") administrative duties justify a pay differential, this fails to account for Dr. Modi.[5]

The parties selected a jury before this Court on July 10, 2023.   In their case-in-chief, Plaintiff called Dr. Edelman, Dr. Kavini Mehta, Joseph Antonik, David Kaplan, Joshua Swirnow, Andrew Rubin, Miriam Ruiz, Kathleen Pacina, Dr. Goldberg, and Dr. Porges.   Defendants presented their case-in-chief on cross-examination of the above witnesses.   On rebuttal, Plaintiff recalled Dr. Edelman as a witness.   The jury deliberated for three (3) hours.   On July 19, 2023, the jury unanimously decided, as relevant here, that:

---

[1] See ECF Docket Entry 1.

[2] The Rule 50 standard largely "mirrors" the summary -judgment standard, the difference being that district courts evaluate Rule 50(a) motions in light of the trial record rather than the discovery record.   See Dupree v. Younger, 598 U.S. 729, 731–32 (2023).

[3] See ECF Docket Entry 155 at 11.

[4] Id.  at 11-12.

[5] Id. at 12.

**(i)** Dr. Edelman did not prove by a preponderance of the evidence that NYU employed her and Dr. Modi in a job requiring substantially equal skill, effort, and responsibility;

**(ii)** Dr. Edelman provide by a preponderance of the evidence that her job and that of Dr. Modi were performed under similar working conditions; and

**(iii)** Defendants proved by a preponderance of the evidence that the differences in pay between Dr. Edelman and Dr. Modi were based on factors other than sex.

See ECF Docket Entry 243.

### III.   FACTS PRESENTED AT TRIAL[6]

Dr. Edelman is a rheumatologist.[7]   She attended medical school at the New York College of Osteopathic Medicine in Old Westbury, New York, where she graduated from in 2003 and made dean's list every semester.[8]

Dr. Edelman then obtained a residency position at Winthrop University Hospital where she attended for three (3) years.[9]   After completing same, she began her rheumatology fellowship under the tutelage of Steve Carsons, who is one of the world-renowned experts in rheumatology.[10]

---

[6] The facts are presented in both the light most favorable to the Defendants, i.e., the non-moving party, in accordance with Rule 50 (S.E.C. v. Ginder, 752 F.3d 569, 574 (2d Cir. 2014)), and in a manner to permit this Court to weigh the evidence independently, in accordance with Rule 59 (Meloff v. New York Life Ins. Co., 240 F.3d 138, 147 (2d Cir. 2001)).

[7] Trial Transcript ("Tr.") at 49:24-50:9 (Edelman).   The entire trial transcript is annexed to the Declaration of Emanuel Kataev, Esq. ("Kataev Decl."), Exhibit A.   All exhibits hereinafter referenced are attached in the same Declaration in numerical order.

[8] Tr. at 52:2-9 (Edelman); see also Plaintiff's Exhibit ("Pl. Ex.") 5.

[9] Tr. at 52:10-16 (Edelman).

[10] Id. (Edelman)

After completing her fellowships, Dr. Edelman became a board-certified internist and rheumatologist.[11]  Dr. Edelman was involved in a lot of research during her fellowship and was previously published in Arthritis and Rheumatism, the largest and most recognized journal in rheumatology.[12]

Dr. Edelman then opened her own practice with Dr. Kavini Mehta ("Dr. Mehta"), whom she met in the fellowship program, and remained in private practice from 2008 to 2014.[13]  At Dr. Edelman's private practice, she had administrative staff, an office manager, billing staff, reception team, medical assistants, and infusion nurses.[14]

Drs. Edelman and Mehta started with zero patients and had approximately 6,000 patients by the time they joined NYU in 2014.[15]  Dr. Edelman invested a lot into building the practice, including placing her home up as collateral to obtain a small business loan.[16]

In 2014, while Dr. Edelman was in private practice, Dr. Goldberg reached out to her and Dr. Mehta to consider coming to NYU.[17]  Drs. Edelman and Mehta were then introduced to a recruiter, who then set up a meeting between them and Defendants Andrew Rubin ("Rubin") and Joshua Swirnow ("Swirnow").[18]

---

[11] Tr. at 52:17-24 (Edelman).

[12] Tr. at 53:19-54:2 (Edelman).

[13] Tr. at 54:8-12, 55:12-13, 57:8-16 (Edelman).

[14] Tr. at 58:1-6 (Edelman).

[15] Tr. at 58:7-12 (Edelman).

[16] Tr. at 58:15-59:2, 65:13-22 (Edelman).

[17] Tr. at 68:4-25 (Edelman).

[18] Tr. at 70:10-71:3 (Edelman).

Drs. Edelman and Mehta asked for a starting salary of around $280,000.00, as their salaries at that time were approximately $200,000.00.[19]  In addition, Defendants agreed to assume the lease as the space was built out and Defendants were looking to expand their footprint on Long Island.[20]  Drs. Edelman and Mehta discussed the fact they were paid less than their male counterparts in October 2020 based on a conversation Dr. Edelman had with Dr. Modi.[21]

Defendants paid Dr. Edelman as follows: (i) $207,000.00 in 2014, 2015, 2016, and 2017; (ii) $278,000.00 in 2018, 2019, 2020, and 2021.  See Pl. Exs. 8 and 9.

Swirnow was involved in hiring Dr. Modi in 2017 and negotiated his contract.[22]  Swirnow learned that Dr. Modi was a very busy rheumatologist, had a good reputation in the community, and had held multiple leadership roles where he previously worked and at some organizations he was a part of.[23]  Defendants paid Dr. Modi as follows: (i) $360,000.00 in 2017, 2018, and 2019; and (ii) $370,000.00 in 2020 and 2021.  See Pl. Exs. 35 and 36.

Drs. Edelman and Modi were both full-time staff physicians at NYU.  See Pl. Ex. 8 at D50; compare Pl. Ex. 35 at D890; Tr. at 82:5-9, 95:6-10, 95:16-20 (Edelman), 1261:22-25 (Modi).  Drs. Edelman and Modi were contractually required and did put 100% of their work effort into clinical work at NYU. See Pl. Ex. 8 at D49; compare Pl. Ex. 35 at D888; see also Tr. at 1266:10-18 (Modi).

---

[19] Tr. at 71:16-21, 74:3-7 (Edelman); cf. Tr. at 302:22-303:23 (Edelman); see also Pl. Ex. 12.

[20] Tr. at 71:16-74:2 (Edelman).

[21] Tr. at 171:12-174:25 (Edelman), 442:8-14 (Mehta); see also Pl. Ex. 108 ("Yup. NYU will not disclose or be transparent about salaries. Gender and age discrimination in salary compensation exists, 100 percent, but so hard to prove since no one helping. I was hoping [Dr. Modi] would be more helpful").

[22] Tr. at 735:12-16 (Swirnow).

[23] Tr. at 735:22-736:2, 737:14-25 (Swirnow); see also Pl. Ex. 46.

Similarly, their clinical responsibilities at NYU – as defined in their agreements – were identical. See Pl. Ex. 8 at D52; compare Pl. Ex. 35 at D891-D892; see also Tr. at 313:17-315:16 (Edelman), 812:7-12 (Ruiz), 1008:5-7 (Rubin).  Both had prior experience with patients.  See Pl Exs. 5 & 46.

## IV.    STANDARD

Under Rule 50, a party may move for judgment as a matter of law following trial, and may include an alternative request for a new trial under Rule 59.[24]

### i.   Judgment as a Matter of Law under Fed. R. Civ. P. 50

Under Rule 50(a), judgment as a matter of law is warranted against a party where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[25]  In other words, "[t]he standard for post-verdict judgment as a matter of law is the same as for summary judgment under Fed. R. Civ. P. 56."[26]

 "[A] Rule 50 motion for judgment as a matter of law must be granted where (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair-minded men could not arrive at a verdict against him."[27]  The court may grant judgment as a matter of law only if it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party."[28]

---

[24] See Fed. R. Civ. P. 50 and 59.

[25] See Morse v. Fusto, 804 F.3d 538, 546 (2d Cir. 2015).

[26] Id.

[27] See Hernandez v. Keane, 341 F.3d 137, 143-44 (2d Cir. 2003) (internal quotation marks omitted).

[28] See Fed. R. Civ. P. 50(a)(1).`

"The court must consider the evidence in the light most favorable to the non-movant and 'give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence.'"[29] "A Rule 50 motion may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it].'"[30] "The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury."[31]

While "[t]he law is pellucid that a party's failure to move under Rule 50(a) has consequences[,] [i]f that party later moves under Rule 50(b), the standard for granting judgment as a matter of law is elevated, and the motion may not properly be granted by the district court, or upheld on appeal, except to prevent manifest injustice,"[32] which "exists where a jury's verdict is wholly without legal support."

---

[29] See S.E.C. v. Ginder, 752 F3d 569, 574 (2d Cir. 2014) (quoting Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012)).

[30] Id. (quoting Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 567 (2d Cir. 2011)); see also Triolo v. Nassau Cty, 24 F.4th 98, 105 (2d Cir. 2022).

[31] See Deloreto v. Karengekis, 104 Fed. Appx. 765, 767 (2d Cir. 2004) (summary order) (quoting Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir. 2001)); see also ING Glob. v. United Parcel Serv. Oasis Supply Corp., 757 F.3d 92, 97 (2d Cir. 2014) ("'The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury,' and 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" (citation omitted)).

[32] See Casmento v. Volmar ConsTr., Inc., No. 20-CIV-00944 (LJL), 2022 WL 15773966, at *3-4 (S.D.N.Y. Oct. 28, 2022) (citation omitted).

### ii.      Motion for a New Trial under Fed. R. Civ. P. 59 (in the alternative)

Alternatively, a court may grant a motion for a new trial under Rule 59 "for any reason for which a new trial has heretofore been granted in an action at law in federal court."[33]  A new trial should be ordered where "the jury has reached a seriously erroneous result" or "the verdict is a miscarriage of justice,"[34] including where the jury's verdict is against the weight of the evidence or the jury relied on an invalid legal theory.[35]  In addition, in evaluating a motion for a new trial, the Court "need not view the evidence in the light most favorable to the nonmoving party; instead, the court may weigh the evidence—including the credibility of witnesses—independently."[36]

## V.      ARGUMENT

## A.  THE JURY'S VERDICT ON PLAINTIFF'S EPA CLAIMS MUST BE REVERSED

### i.  Plaintiff Established That She and Dr. Modi Performed Equal Work

At trial, Plaintiff established that she and Dr. Modi had jobs requiring substantially equal skill, effort, and responsibility.[37]  Dr. Mehta, a fellow rheumatologist, testified as follows:

---

[33] See Fed. R. Civ. P. 59(a)(1)(A).

[34] See Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004).

[35] See Harris v. O'Hare, 770 F.3d 224, 238 (2d Cir. 2014) (remanding for new trial where "jury should not have been instructed on" legal theory for which there was "insufficient evidence" and which "the jury explicitly" embraced); see also Cweklinsky v. Mobil Chem. Co., 364 F.3d 68, 75-77 (2d Cir. 2004) (vacating verdict and remanding for new trial where verdict may have been based on invalid theory); DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998) (new trial should be granted when verdict is against weight of the evidence).

[36] See Starr Indem. & Liab. Co. v. Am. Claims Mgmt., Inc., 131 F. Supp. 3d 185, 185 (S.D.N.Y. 2015); see also Meloff v. New York Life Ins. Co., 240 F.3d 138, 147 (2d Cir. 2001) ("Freed from the constraints of review that bind a court when deciding whether to grant judgment as a matter of law," on a Rule 59 motion, "the district court [can] examine the evidence through its own eyes").

[37] Tr. at 200:21-201:4 (Edelman), 432:4-433:7 (Mehta); see also Pl. Exs. 8 and 9; compare with Pl. Ex. 35 (showing that Drs. Edelman's and Modi's faculty appointments, tenure status, employment titles, and full-time status were identical).

Q. Is it fair to say that you see patients as part of your duties as a rheumatologist?

**A. I see patients.**

Q. And you evaluate and consult with them, correct?

**A. Yes.**

Q. And to your knowledge, all the other rheumatologists do the same type of work, correct?

**A. Yes.**

Q. You did the same work that Dr. Edelman did when you were at NYU, correct -- when she was at NYU?

**A. We all saw patients, yes.**

Q. And you all diagnosed them, correct? And you discussed the cases together, isn't that right?

**A. We discussed some cases together.**

Q. And that forms the basis for your knowledge that the doctors that you worked with did the same work as you, correct?

**A. As rheumatologists, your practices are similar. You see a similar subset of patients.**

…

Q. Is it fair to say that the work that you did as doctors -- that's including you, Dr. Edelman, Dr. Porges, Dr. Modi and Dr. Goldberg -- that your work was substantially similar to each other?

**A. Yes.**

There is thus no dispute that both Plaintiff and Dr. Modi saw and treated patients.[38]

Under the Equal Pay Act, it is not necessary that the jobs be identical in every respect; the law requires proof that the performance of the jobs demand "substantially equal" skill, effort, and responsibility.[39]  It is the actual work or performance requirements of the jobs that is important.[40]

---

[38] Tr. at 313:17-315:16 (Dr. Edelman treated patients), 812:7-12 (Ruiz testimony regarding Dr. Edelman treating patients), 1008:5-7 (Rubin testimony regarding all rheumatologists treating patients); 1256:1-8, 1265:18-22 (Dr. Modi treated patients).

[39] See E.E.O.C. v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 255 (2d Cir. 2014).

[40] See Minnette v. Warner Amex Cable Commun., Inc., No. 89-CIV.-8225 (CMM), 1992 WL 373483, at *2 (S.D.N.Y. Nov. 30, 1992), aff'd sub nom. Minnette v. Warner Amex Cable, 993 F.2d 1534 (2d Cir. 1993) ("The controlling factor in the comparison of the two jobs is the actual work performed, and not job title or classification").

a.      Skill

In assessing skill, the factors considered are level of education, experience, training, and ability necessary to meet the performance requirements of the job.[41]  In this case, Drs. Edelman and Modi had virtually identical education, experience, training, and ability in that they went to the same exact medical school and fellowship programs, albeit Dr. Modi started medical school two years earlier than Dr. Edelman did.[42]  Indeed, Dr. Edelman had over eight years of clinical experience at the time she joined NYU and was fully qualified to be a rheumatologist.[43]  In addition, only approximately 400 patients followed Dr. Modi when he went to NYU, while virtually all of Dr. Edelman's 6,000 patients did.[44]  Critically, Defendants offered no evidence that Dr. Edelman was less skilled than Dr. Modi.

b.      Effort

In assessing effort, the factors considered are the mental, physical, and emotional requirements for performing the job.[45]  The evidence adduced at trial established that Drs. Edelman and Modi's jobs required substantially equal effort.  See Pl. Ex. 8 at D49; compare Pl. Ex. 35 at D888 (requiring 100% of both Dr. Edelman's and Dr. Modi's efforts towards clinical work).

---

[41] Tr. at 908:2-910:16, 921:14-922:13, 1001:12-1003:6, 1007:11-24 (Rubin) ("… you can, in fact, pay someone *slightly more* if they bring other factors to the table") (emphasis added).

[42] Tr. at 181:2-182:21, 289:11-290:3 (Dr. Edelman's research experience), 451:12-452:5 (Mehta), 1008:11-1009:18 (Rubin), 1256:9-1258:2 (Modi).

[43] Tr. at 176:1-6 (Edelman), 1137:5-8 (Porges), 1268:11-14, 1269:1-12 (Modi).

[44] Tr. at 183:2-17 (Edelman), 1282:20-1283:15 (Modi).

[45] See Usery v. Columbia Univ., 568 F.2d 953, 959 (2d Cir. 1977) ("Under the Act, 'effort' is the physical or mental exertion required in performing a job").

Similarly, both Dr. Edelman and Dr. Modi were required to work for Defendants full-time. See Pl. Ex. 8 at D50; compare Pl. Ex. 35 at D890. Crucially, Defendants offered no evidence that Dr. Modi exerted a greater effort than Dr. Edelman. As such, there can be no dispute that Dr. Edelman and Dr. Modi were required to exert the same effort.

    c.    <u>Responsibility</u>

Finally, in assessing responsibility, there can be no disagreement that Drs. Edelman and Modi's work required substantially equal responsibility.[46] See Pl. Ex. 8 at D52; compare Pl. Ex. 35 at D891-D892 (showing the same exact responsibilities for both). Dr. Edelman was responsible for seeing patients and diagnosing and treating diseases, just like Dr. Modi.[47]

Her title was staff physician and her employment status was full time, just like Dr. Modi.[48] Her contract required her to perform the responsibilities set forth in her agreement like all physicians.[49] Dr. Edelman and Dr. Modi were required to have and obtained the same certifications.[50] Notably, Dr. Edelman's publications were not discussed with Defendants Rubin and Swirnow when she was being hired.[51]

---

[46] See 29 C.F.R. § 1620.17(a) ("The equal pay standard applies to jobs the performance of which requires equal responsibility. Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation. Differences in the degree of responsibility required in the performance of otherwise equal jobs cover a wide variety of situations")

[47] Tr. at 81:10-14, 95:21-24, 378:1-16 (Edelman), 1265:18-1266:18, 1267:17-19 (Modi).

[48] Tr. at 82:5-9, 95:6-10, 95:16-20 (Edelman), 1261:22-25 (Modi).

[49] Tr. at 89:3-10 (Edelman).

[50] Tr. at 96:5-14 (Edelman).

[51] Tr. at 381:17-23 (Edelman).

Nor was Dr. Edelman's level of experience or ability to produce discussed.[52]  These were thus not factors considered in setting doctors' compensation.

      d.    <u>Similar Working Conditions</u>

Similarly, the jury decided, and it was undisputed, that the jobs were performed under similar working conditions.  <u>See</u> ECF Docket Entry <u>243</u>

    **ii.**  **<u>Plaintiff Established Unequal Pay as Between Her & Dr. Modi</u>**

Dr. Edelman was indisputably paid lower compensation than Dr. Modi, a male doctor, although they both performed substantially equal work.[53]  Dr. Edelman was initially paid only $207,000.00, and received $3,000.00 towards expenses, as well as retirement benefits, consisting of a ten percent match of salary, plus two other retirement funds that contributions could be made to, one of which was matched by Defendants.[54] Meanwhile, Dr. Modi had no cap on the expenses in his contract.[55]  In addition, while Dr. Modi received $360,000.00 that he requested to beat his prior salary of $340,000.00, Defendants refused to negotiate with Drs. Edelman and Mehta – who negotiated their contracts together – when they sought $280,000.00 and only offered them the $207,000.00 they initially put on the table.[56]

---

[52] <u>Tr.</u> at 414:6-23 (Mehta).

[53] <u>See</u> <u>Tr.</u> at 188:18-19, 199:13-25, 200:4-15, 304:3-16, 329:13-21 (Edelman), 452:6-10 (Mehta); <u>see also</u> <u>Pl.</u> <u>Exs.</u> 8 and 9; compare with <u>Pl.</u> <u>Exs.</u> 35 (showing Dr. Edelman paid $207,000.00 and $278,000.00 for clinical work while Dr. Modi was paid $360,000.00).

[54] <u>Id.</u>; <u>see also</u> <u>Tr.</u> at 79:20-80:15, 107:22-24 (Edelman), 418:25-419:11 (Mehta).

[55] <u>Tr.</u> at 188:3-14 (Edelman).

[56] <u>Tr.</u> at 418:9-24, 420:14-421:12 (Mehta), 736:25-737:8, 738:8-19, 769:10-18 (Swirnow), 1260:9-13 (Modi); <u>see also</u> <u>Pl.</u> <u>Ex.</u>s 8, 9, and 35.  Defendants paid Drs. Edelman and Mehta less due to the loan and this was the sole reason for the increase in pay following the initial contract.  <u>Tr.</u> at 422:1-7 (Mehta).  However, the math does not add up.  <u>Tr.</u> at 454:2-456:18 (Mehta).  Moreover, this is not memorialized in their contracts. <u>Tr.</u> at 487:13-15 (Mehta); <u>see also</u> <u>Pl.</u> <u>Exs.</u> 8 and 37.

The below chart summarizes Dr. Edelman's pay compared with Dr. Modi's pay:

| Year | Dr. Edelman | Dr. Modi | Disparity |
|------|-------------|----------|-----------|
| 2017 | $207,000.00 | $360,000.00 | $153,000.00 |
| 2018 | $278,000.00 | $360,000.00 | $82,000.00 |
| 2019 | $278,000.00 | $360,000.00 | $82,000.00 |
| 2020 | $278,000.00 | $370,000.00 | $82,000.00 |
| 2021 | $278,000.00 | $370,000.00 | $82,000.00 |

Moreover, Defendants insultingly offered Drs. Mehta and Edelman an initial salary of only $190,000.00, less than what they had been making, which does not jive with their stated proffered reason for paying Dr. Modi so much more.[57]  Similarly, when Drs. Edelman and Mehta sought to negotiate their renewal contracts, Defendants only agreed to an increase by removing business expense reimbursements altogether to add that amount to the salary.[58]  Defendants justify paying Dr. Edelman $207,000.00 from 2014 through 2017 because of the loans they had assumed. However, Defendants received the benefit of the lease and equipment which Dr. Edelman assigned to them in exchange for that assumption of debt.  Further, the amount of the loan assumed does not match the much-lower compensation Defendants offered Dr. Edelman.[59]  Thus, even accounting for the loan, Dr. Edelman was still paid less than Dr. Modi.  In addition, Defendants' argument concerning the loan is moot when comparing Dr. Edelman's compensation under her renewal contract in 2017 because the loan was paid off by then, and there is no justification provided by Defendants for paying Dr. Modi $82,000.00 more for the same work.

---

[57] Tr. at 695:6-12 (Swirnow).

[58] Tr. at 421:19-25 (Mehta).

[59] Tr. at 454:2-456:18  (Mehta) ($326,000.00 divided by two individuals, i.e., Dr. Edelman and Dr. Mehta, equals $163,000.00 divided by three (3) years equals $54,333.33, which − when subtracted from the $278,000.00 Defendants later increased Dr. Edelman's salary to − amounts to $ 223,666.67, not $207,000.00).

### iii.   Defendants Failed to Establish a *Bona Fide* Factor Other than Sex

Having established Plaintiff's *prima facie* case, Defendants bear the burden of establishing

a defense for their payment of higher wages to Dr. Modi as compared to Dr. Edelman.   See 29

U.S.C. § 206(d)(1).

The EPA provides that:

> No employer having employees subject to any provisions of this
> section shall discriminate, within any establishment in which such
> employees are employed, between employees on the basis of sex by
> paying wages to employees in such establishment at a rate less than
> the rate at which he pays wages to employees of the opposite sex in
> such establishment for equal work on jobs the performance of which
> requires equal skill, effort, and responsibility, and which are
> performed under similar working conditions, except where such
> payment is made pursuant to (i) a seniority system; (ii) a merit
> system; (iii) a system which measures earnings by quantity or
> quality of production; or (iv) a differential based on any other factor
> other than sex: Provided, That an employer who is paying a wage
> rate differential in violation of this subsection shall not, in order to
> comply with the provisions of this subsection, reduce the wage rate
> of any employee.

Id.   "[T]he burden of persuasion shifts to the defendant to show that the wage disparity is justified

by one of the affirmative defenses provided under the Act: … or (iv) a differential based on any

other factor other than sex."   See Belfi v. Prendergast, 191 F.3d 129, 136 (2d Cir. 1999); see also

Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 525 (2d Cir. 1992) ("we conclude that

employers cannot meet their burden of proving that a factor-other-than-sex is responsible for a

wage differential by asserting use of a gender-neutral classification system without more"); Tomka

v. Seiler Corp., 66 F.3d 1295, 1312 (2d Cir. 1995) ("In response to Tomka's assertions, Seiler

justifies Abrams' and the three account managers' higher salaries by alleging that the discrepancies

resulted from "factors other than sex." Seiler contended, and the district court agreed, that Abrams'

higher salary resulted from the fact that he had over ten years of experience with a Seiler

competitor. While Abrams' experience may very well explain the discrepancy, Seiler has the burden of persuasion to show both that it based Abrams' higher salary on this factor and that experience is a job-related qualification for the position in question. … Seiler's mere assertion that Abrams' salary was based on his experience is insufficient to meet this burden, and the district court therefore erred in holding that Seiler had established its "factor other than sex" affirmative defense").[60]

At the outset, it is important to note the Court found[61] that – and no instruction was given to the jury concerning[62] – a defense justifying the pay disparity based on either: (i) seniority; (ii) merit; and (iii) a system which measures earnings by quantity or quality of production.

Accordingly, any defense based on seniority, merit, or quality/quantity of production (such as wRVUs) could not have been considered by the jury.  There was no evidence presented regarding seniority or merit – none of these factors could have played a role in the jury's verdict.

However, while there was substantial evidence regarding quantity of production – i.e., wRVU production – this was not a viable defense as any evidence of a differential in wRVU production cannot form the basis for any pay disparity between Dr. Edelman and Dr. Modi since the jury was never instructed to consider "a system which measures compensation by quantity …." See  29 U.S.C. § 206(d)(1).

---

[60] Setting aside the fact that Dr. Modi's two (2) years of experience of Dr. Edelman's is insignificant, Defendants' compensation arrangements with doctors makes it evident that experience plays no role in setting of salaries.  Tr. at 984:20-986:13 (Rubin).

[61] Tr. at 255:9-256:7 (Defendants withdrawing defenses related to seniority and merit based on Court's finding) and 988:12-24 (Rubin's testimony confirming no seniority system or merit system).

[62] See Tr. at 1421:9-1480:4 (jury charge).

Thus, to the extent that the jury relied on any such evidence concerning seniority, merit, or quantity/quality of production, the verdict must be vacated as a matter of law because Defendants did not rely on any such systems.

In addition, Defendants have the burden to prove that they actually relied on a "factor other than sex" for the discrepancy in pay between Dr. Edelman and Dr. Modi.[63]  Employers must prove that the factor other than sex that led to the wage discrepancy was adopted and relied upon for a legitimate business purpose.  See Belfi, 191 F.3d at 136 ("Further, to successfully establish the 'factor other than sex' defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential"); see also Aldrich, 963 F.2d at 525-27 & n. 1 ("Without a job-relatedness requirement, the factor-other-than-sex defense would provide a gaping loophole in the statute through which many pretexts for discrimination would be sanctioned"); EEOC v. J.C. Penney Co., Inc., 843 F.2d 249, 253 (6th Cir. 1988) ("[T]he 'factor other than sex' defense does not include literally any other factor, but a factor that, at a minimum, was adopted for a legitimate business reason")).

Here, there is no evidence presented by Defendants justifying why Dr. Modi's pay is substantially higher than Dr. Edelman's pay, except that Dr. Modi was earning $340,000.00 and that he sought $360,000.00 in order to come to NYU.[64]

---

[63] See Jamilik v. Yale Univ., 362 Fed. Appx. 148, 150 (2d Cir. 2009) ("This Court has previously determined that defendants face a heavy burden in establishing an affirmative defense to an EPA claim."); see also Ryduchowski v. Port Auth. of New York & New Jersey, 203 F.3d 135, 143 (2d Cir. 2000) ("The burden of establishing one of the four affirmative defenses is "a heavy one").

[64] Tr. at 330:1-9 (Edelman), 714:10-13 (Swirnow), 999:15-1000:3 (Rubin).  Meanwhile, Dr. Edelman sought $260,000.00 and only received $207,000.00.  Tr. at 81:7-9 (Edelman).

In fact, Rubin's only justification was the need to fill a role in Huntington and Dr. Modi's salary demand based on his compensation at his former employer.[65]  While Defendants offered evidence that there was a great need for a rheumatologist in Huntington, where Dr. Modi worked,[66] Dr. Edelman was available to do so and previously worked in Huntington for Defendants, but never offered her the job there full-time.  Tr. at 341:14-21 (Edelman), 986:22-987:20 (Rubin). Therefore, that cannot be a *bona fide* factor other than sex justifying the pay disparity.

Further, prior pay – alone – is not a justification for the pay disparity.[67]  The Second Circuit has yet to rule on the issue, but this Court should adopt the rationale of both the Ninth and Eleventh Circuits that prior pay is not sufficient to justify a pay disparity between men and women performing substantially equal work.[68]

Moreover, although Defendants relied on "business plans" to determine compensation for doctors, there was no business plan for Dr. Modi.[69]

---

[65] Tr. at 937:19-938:7, 986:14-21 (Rubin).

[66] Tr. at 737:16-25 (Swirnow), 495:23-496:8 (Antonik), 937:19-938:7, 986:14-21 (Rubin)

[67] See Rizo v. Yovino, 950 F.3d 1217, 1226 (9th Cir. 2020), cert. denied, 141 S. Ct. 189 (2020) (holding that prior pay by itself is not a "factor other than sex"); Id. at 1228 ("[P]rior pay itself is not a factor related to the work an employee is currently performing, nor is it probative of whether sex played any role in establishing an employee's pay"); Irby v. Bittick, 44 F.3d 949, 955 (11th Cir. 1995) (stating that allowing prior pay as an affirmative defense "would swallow up the rule and inequality in pay among genders would be perpetuated").

[68] See Corning Glass Works v. Brennan, 417 U.S. 188 (1974) ("Congress' purpose in enacting the Equal Pay Act was to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry -- the fact that the wage structure of "many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same." S. Rep. No. 176, 88th Cong., 1st Sess., 1 (1963)")

[69] Tr. at 653:7-656:25, 661:18-24, 736:17-20 (Swirnow), 935:7-15, 937:13-17 (Rubin).

Although Defendants prepared a business plan for Dr. Edelman, they never shared one with her, and Defendants concede that the business plans are not always accurate because they contain projections.[70]

Because there is no excuse offered other than prior pay,[71] as a matter of law, Defendants did not establish a *bona fide* factor other than sex to justify any pay differential.[72]

### iv.    Plaintiff is entitled to judgment as a matter of law on her New York EPA claims

Plaintiff also seeks judgment as a matter of law for her New York Equal Pay Act claims. Because those claims are generally analyzed under the same standard as her federal EPA claims, Plaintiff respectfully incorporates by reference the foregoing arguments as if fully set forth herein.[73]  However, because the New York Equal Pay Act differs in some respects to the federal EPA, Plaintiff highlights below additional considerations raised as relevant to the instant motion.

As an initial matter, the New York Equal Pay Act (unlike the federal EPA) provides specific examples of what a *bona fide* factor other than sex includes, i.e., education, training, or experience.[74]  Prior pay is not listed as any such example, nor could it be.

---

[70] Tr. at 648:6-649:17 (Swirnow).

[71] See argument *supra* at 17.

[72] Tr. at 982:4-984:6, 987:21-988:11, 988:20-989:3 (Rubin) (no gender neutral system), 990:17-992:14; 992:25-993:15 (Rubin) (lack of training on setting salaries).

[73] See Volpe v. Nassau County, 915 F. Supp. 2d 284, 291-292 (E.D.N.Y. 2013) ("Since "[c]laims for violations of the Equal Pay Act and the New York State Equal Pay Law may be evaluated under the same standard," … the Court addresses defendants' motion to dismiss with respect to plaintiffs' EPA claim and plaintiffs' N.Y. EPA claim together") (citing Rose v. Goldman, Sachs & Co., 163 F.Supp.2d 238, 243 (S.D.N.Y.2001)).

[74] New York Labor Law ("NYLL") § 194(1)(b)(iv).

Education, training, and experience are all factors that bear some relationship to the work being performed; prior pay can never bear any such relationship. As such, prior pay is not a *bona fide* factor other than sex that justifies a pay disparity under the New York Equal Pay Act.

Further, unlike the federal EPA, the New York Equal Pay Act requires, with respect to asserting the defense of a *bona fide* factor other than sex, that the factor shall not be based upon or derived from a differential in compensation based on status within one or more protected class or classes and shall be job-related with respect to the position in question and shall be consistent with business necessity, which is defined as a factor that bears a manifest relationship to the employment in question.[75] Defendants failed to prove this defense for a multitude of reasons as it relates to the pay disparity between Dr. Edelman and Dr. Modi.

First, Defendants fail to meet the job-related requirement to support a justification for the pay disparity because Dr. Modi's prior pay is not related to his job at NYU as a rheumatologist. Similarly, Dr. Modi's prior pay has no manifest relationship to the employment in question at NYU to support a business necessity for paying him nearly $100,000.00 more in compensation compared to Dr. Edelman.

Second, Permitting Defendants to justify their compensation practices will only perpetuate the pay disparity between men and women, as the Supreme Court long ago declared.[76]

---

[75] See NYLL §§ 194(1)(b)(iv) and 194(2)(a).

[76] See Corning Glass Works v. Brennan, 417 U.S. 188 (1974); see also https://www.bls.gov/opub/reports/womens-earnings/2020/home.htm (finding by U.S. Bureau of Labor Statistics that in 2020, women who were full-time wage and salary workers had median usual weekly earnings that were 82 percent of those of male full-time wage and salary workers); https://www.bls.gov/opub/ted/2022/median-earnings-for-women-in-2021-were-83-1-percent-of-the-median-for-men.htm (finding by U.S. Bureau of Labor Statistics that in 2021, median weekly earnings for wage and salary workers who usually worked full time were $998. Median earnings for women were $912, or 83.1 percent of men's earnings); and https://www.nytimes.com/2021/12/06/health/women-doctors-salary-pay-gap.html (New York

As such, prior pay cannot be a *bona fide* factor other than sex as a matter of law because it is based upon or derived from a differential in compensation based on status, since women are historically paid eighty percent (80%) of what their male counterparts earn.  This is especially the case where New York outlawed the use of salary history to determine compensation.[77]

Accordingly, as a matter of law, Plaintiff is entitled to judgment notwithstanding the verdict on her EPA claims under both federal and state law as to Dr. Modi.

## VI.    CONCLUSION

Based on the evidence adduced at trial, Plaintiff is entitled to judgment as a matter of law on her EPA claims as they relate to Dr. Modi.  For the foregoing reasons, Plaintiff is entitled to judgment as a matter of law on her EPA claim as it relates to Dr. Modi, together with costs and disbursements.

Dated: Lake Success, New York
       August 22, 2023

                              Respectfully submitted,

                              **MILMAN LABUDA LAW GROUP PLLC**

                              __*/s/ Joseph M. Labuda, Esq.*__
                              Joseph M. Labuda, Esq.
                              Emanuel Kataev, Esq.
                              3000 Marcus Avenue, Suite 3W8
                              Lake Success, NY 11042-1073
                              (516) 328-8899 (office)
                              (516) 328-0082 (facsimile)
                              emanuel@mllaborlaw.com
                              joe@mllaborlaw.com

                              *Attorneys for Plaintiff*
                              *Dr. Sari Edelman*

---

Times' survey of more than 80,000 physicians estimated that female physicians make 25 percent less than male physicians over a 40-year career).

[77] See NYLL § 194-a.