# EXHIBIT 2

N7JCede1

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  DR. SARI EDELMAN,
4        Plaintiff,
5        v.                21 Civ. 502 (LJL)
6  NYU LANGONE HEALTH SYSTEM, *et al.*,
7
8        Defendants.
                            Trial
   ------------------------------x
9                           New York, N.Y.
                            July 19, 2023
10                          8:55 a.m.

11 Before:

12                     HON. LEWIS J. LIMAN,

13                     District Judge
                       -and a Jury-
14

15                     APPEARANCES

16 MILMAN LABUDA LAW GROUP PLLC
        Attorneys for Plaintiff
17 BY:  JOSEPH M. LABUDA
        EMANUEL S. KATAEV
18
   TARTER KRINSKY & DROGIN LLP
19      Attorneys for Defendants
   BY:  RICHARD C. SCHOENSTEIN
20      RICHARD L. STEER
        INGRID J. CARDONA
21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   only physician who thinks outside the box to properly diagnose
2   my medical condition."
3           So I just ask you to look at those, just for sake of
4   time.  But one thing that is important here is that, you know,
5   Dr. Edelman took the time with patients to figure out what's
6   going on.  Some of these, you heard testimony these
7   rheumatology patients, they can be lifetime patients with them.
8   So if she takes a little longer with them, that's a good thing,
9   not a bad thing.  But I think NYU is kind of saying:  You
10  should speed through this; hit your RVUs and go on.
11          If she takes the time, she's not supposed to be
12  penalized for that.  She's trying to take care of patients.
13          Let's jump to the equal pay.
14          All right.  So, with the equal pay, the Equal Pay Act,
15  created in 1963 -- that's when it was enacted, 1963.  Happy
16  anniversary, 60 years later.  Right?  And the reason why it was
17  enacted is because of the perceived pay disparity between men
18  and women, they thought that men thought that they should be
19  paid more for the same job, and the law says that's not OK.
20  That's why the law was enacted in the first place.
21          So let's see how the EPA and its enforcement is doing
22  now.
23          (Video played)
24          "VOICE:  All right.  We are here at the Oscar's.
25          "VOICE:  That's right, where movie lovers unite and

1     watch TV.
2             "VOICE:  This year the academy hired three women to
3     host because it's cheaper than hiring one man."
4             MR. LABUDA:  So, equal pay is still an issue.  OK?
5     It's still an issue.  It's an issue throughout the United
6     States.  It's an issue in New York, and it's an issue in Lake
7     Success, New York, where NYU was.  OK?  There's no dispute.
8             Again, take your own experiences in terms of equal pay
9     and what you've heard about that in terms of men being paid
10    more than women.  You take those experiences into the jury room
11    in determining why and how this happened.  But it exists.  It
12    exists, and I think everybody is aware of that.  And there's no
13    dispute that Dr. Edelman was paid less.  I mean the evidence is
14    overwhelming with that fact.  Again, NYU disputes somehow that
15    there wasn't, she wasn't paid less, but I'll let them make
16    their own arguments.
17            So let's get into the legal elements, again, that
18    you're going to hear from the Court, but it's pretty simple.
19            With respect to the law, for the plaintiff to prevail
20    in the case, it has to be equal work and unequal pay.  So
21    that's what the law is, and so equal work, talks about skill,
22    effort and responsibility; talks about similar working
23    conditions.  Again, there's no dispute from NYU.  You heard
24    that.  And then unequal pay, there's no dispute about the pay.
25    She was paid less.

1          The other thing that's important is that it's a strict
2     liability law.  It means that there's no intent required.  And
3     so that's significant as well.
4          I want to jump into the skill, effort and
5     responsibility.  Those are the three elements of the equal pay
6     claim in terms of the plaintiff's responsibilities.
7          Skill, they're all rheumatologists.  They all went to
8     medical school.  They all have the same skill.  You heard them
9     saying that.
10         Effort.  That's effort and responsibility.  You know,
11    we've seen those words before.  You know, they're actually in
12    the contract.
13         Emanuel, if you can go to exhibit 8.
14         They talk about, with that chart, if you remember that
15    chart, it had the word "effort" in it.  NYU uses that word,
16    "effort."  It says effort in there.  And that has to do with
17    the clinical compensation.  You remember it says effort, then
18    it says clinical and then for Dr. Edelman it's 100 percent.
19    They have that same chart for every doctor.  They're
20    acknowledging that effort is the same.  In fact, the testimony,
21    there you go -- effort.  There it is:  NYU -- effort.  So it's
22    the same effort that's involved here.
23         What they're trying to say is if you're a faster
24    doctor and you do more, you see more patients, that's different
25    than Dr. Edelman.  That's just not true at all.  Effort has to

1  do with the patient care.  If you're a good doctor and you
2  spend time with your patient and you spend it full time, that's
3  the same effort as somebody who's going through, boom, boom,
4  boom.  That is effort.  NYU defines it as effort.  It's in
5  their contract.  It's in all their contracts, and it's very
6  important, because they're trying to say she somehow didn't do
7  the same effort when she was working full time.
8            Responsibility, we've seen that word too.  OK?  Where
9  does responsibility show up?
10           Jump again, Emanuel, to D852.
11           OK.  So 52 -- go up.  Go up.  Go up.
12           Clinical responsibilities.  Responsibilities, they're
13 all the same for the doctors.
14           And if you roll down to see, Emanuel, in the
15 responsibilities, it says you will provide clinical patient
16 care in the specialty of rheumatology on a full-time basis.
17 That's the responsibility.  Guess what?  That shows up on
18 everybody's contract.  That's what their responsibility was.
19 There's no dispute about that.  OK?
20           So when you have NYU saying same effort or more by Dr.
21 Edelman, same responsibilities, same skill -- they're all
22 rheumatologists -- she's met her burden.  OK?
23           Now, let's jump to what happened in this case in terms
24 of the actual pay.  And by the way -- well, let's just go
25 through this real quick.

1           With respect to Dr. Edelman, she's performing the same
2   work as the other doctors.  The administration work is
3   negligible.  There's no research work with respect to
4   Dr. Porges; it got phased out.  And they're treating patients
5   all the same.
6           Then with respect to what was going on here, Mr. Rubin
7   wasn't even aware about this Equal Pay Act.  He didn't even
8   know about it.  There was no comparison studies between any
9   doctors and there's no production element of the Equal Pay Act.
10          So let's go to the actual pay that happened.
11          Again, you have the contracts.  You see what's in
12  there.  Dr. Modi indicates that they're all doing the same
13  work.  You heard every doctor say that.  They're all
14  rheumatologists.  They all do the same thing, and that Dr. Modi
15  felt that what Dr. Goldberg was paid was unfair, because he was
16  getting paid substantially less.
17          We can just jump from there, Emanuel.
18          Thank you.
19          So let's look at the actual pay.
20          This is the pay of the doctors in 2014, when the
21  practice started.  Again, you heard they're all doing the same
22  thing.  Porges and Goldberg paid substantially more than Dr.
23  Edelman.  Same thing in 2015, 2016, 2017, 2018, 2019 -- I know
24  there's a theme here -- 2020 and 2021.  Always at the bottom,
25  every year.  OK?

1              So no doubt that that's just what happened.  They
2     can't dispute that.  Those are the numbers.  OK?
3              So once we establish our claim, then it goes to the
4     defendants in terms of the affirmative defense.  OK?  So it's
5     their burden, not ours but their burden to show that there's a
6     bona fide factor other than sex that was a reason why they paid
7     that.  And they talk about education, training or experience.
8     OK?
9              So let's just talk about that for a second.
10             That's what the law is.  It's got to be derived from a
11    differential that's not based on sex.  It got to be
12    job-related, and there's got to be a business necessity.  OK?
13    That's what the law talks about.
14             Now let's talk about what NYU is alleging here.
15             They're talking about how, well, we paid doctors under
16    all sorts of different circumstance, this factor, that factor,
17    this factor, that factor, whatever.  They didn't have any type
18    of system.  You heard testimony about Dr. Modi and you saw
19    evidence.  Dr. Modi and Dr. Edelman, same school, same
20    experience, all that.  He was making $360,000, and she's making
21    207 at the time.  So if you talked about education, that can't
22    be the case, because they went to the same schools and they
23    both have the same education level.
24             Training or experience, again, same thing with Dr.
25    Modi.  They all had the same training and experience.  In fact,

1   consider that question because I have determined that, for
2   purposes of this case, the defendants, both individual and
3   corporate, are employers covered by the Equal Pay Act and that
4   plaintiff is an employee covered by the Equal Pay Act.  You
5   must assume during your deliberations that that precondition
6   has been satisfied.
7            I will now instruct you on the definitions of "equal
8   work," "similar working conditions," and "wages" as they apply
9   to this claim.
10           In determining whether plaintiff's job required
11  substantially equal skill, effort, and responsibility as those
12  of the male employees, you must compare the jobs and not the
13  individual employees holding those jobs.  It is not necessary
14  that the two jobs be identical.  The Equal Pay Act requires
15  only that the plaintiff show that the performance of the two
16  jobs demands substantially equal skill, effort, and
17  responsibility.  Insignificant, insubstantial, or trivial
18  differences do not matter and may be disregarded.  On the other
19  hand, work is not considered substantially equal if material
20  differences in skill, effort, or responsibility exist.
21  Further, job classifications, descriptions, or titles are not
22  controlling.  It is the actual work or performance requirement
23  of the two jobs that is important.
24           In evaluating whether the performance requirements of
25  the two jobs are substantially equal, you must consider the

1    skill, effort, and responsibility required for those jobs.  I

2    will now tell you what is meant by the term "skills," "effort,"

3    and "responsibility."

4              First, in deciding whether the jobs require

5    substantially equal skill, you should consider such factors as

6    the level of education, experience, training, and ability

7    necessary to meet the performance requirements of their

8    respective jobs.  Jobs may require equal skill even if one job

9    does not require workers to use these skills as often as

10   another job.  Remember, also, that you are to compare the jobs,

11   not the employees.  So the fact that a male employee has a

12   qualification that plaintiff does not have is relevant only if

13   the particular qualification is necessary for performing the

14   job.  Similarly, the fact that plaintiff has a qualification

15   that male employees do not have is relevant only if the

16   particular qualification is necessary for performing a job.

17   Talents or skills that go beyond actual job requirements are

18   not to be considered.

19             Second, in deciding whether the jobs require

20   substantially equal effort, you should consider the mental or

21   physical exertion in connection with the performance of the

22   job.  A deficiency on one side, for example, less physical

23   exertion, may be compensated by a surplus on the other side,

24   for example, more mental exertion.  Duties that result in

25   mental or physical fatigue or emotional stress, as well as

Case 1:21-cv-00502-LJL   Document 276-2   Filed 09/21/23   Page 11 of 13   1443
N7JCede3                Charge

1   factors that alleviate fatigue and stress, should be weighed
2   together in assessing the relative effort involved.
3              Equal effort does not require people to use effort in
4   exactly the same way.  If there's no substantial difference in
5   the amount or degree of effort to do the jobs, they require
6   equal effort.  However, if one job requires additional tasks
7   that consumes significant amount of extra time and effort that
8   the other job does not require, then the two jobs do not
9   require substantially equal effort.
10             Third, in deciding whether the jobs involve
11  substantially equal responsibility, you should consider the
12  degree of accountability required in the performance of the job
13  with emphasis on the importance of the job obligation.
14             In deciding whether the jobs involve substantially
15  equal responsibility, you should consider the degree of
16  accountability expected by the employer for the person filling
17  the jobs, as well as the amount of preparation required to
18  perform the job duties.  You should also take into account such
19  things as the level of authority delegated to plaintiff as
20  compared to the male employees.  Finally, you should consider
21  the consequences to the employer for the effect of performance
22  in the respective jobs.
23             You should note that "skill," "effort," and
24  "responsibility" constitute separate tests, each of which must
25  be met in order for the equal pay requirement to apply.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1      With respect to the second element of plaintiff's
2 claim, you must find the jobs are performed under similar
3 working conditions.  The conditions need only be similar, but
4 need not be identical.  In deciding whether the working
5 conditions of the jobs are similar, you should consider the
6 surroundings or the environment in which the work is performed
7 to which the respective employees may be exposed.  Overall, you
8 need to consider the entire situation and give it your common
9 sense appraisal to determine whether or not the working
10 conditions are similar.
11      With respect to the third element of plaintiff's
12 claim, plaintiff must prove she was paid a wage lower than male
13 employees doing substantially equal work.  For these purposes,
14 you should understand that the term "wages" includes all forms
15 of compensation, whether called wages, salary, expense
16 reimbursement, profit sharing, repayment of loans or some other
17 name.  Fringe benefits are also included in the comparison of
18 wages under the Equal Pay Act.
19      If you find that plaintiff has proved each of the
20 elements that she must establish in support of her claim under
21 the Equal Pay Act with regard to one or more of the
22 comparators, you must then consider defendants' affirmative
23 defense.  These defenses include a bona fide factor other than
24 sex, such as education, training, and experience.
25      Defendants have the burden of proof on their defenses,

not the plaintiff.  It must prove their defenses by a
preponderance of the evidence.  If defendants prove their
affirmative defenses by a preponderance of the evidence and
plaintiff is unable to show that this defense is pretext or
excuse for gender discrimination, then plaintiff is not
entitled to recover on her claim.

    Defendants contend that the difference in pay between
the two jobs was the result of a factor other than sex.  To
establish this defense, defendants must prove that plaintiff's
sex played no part in the difference in wages.  Defendants must
also prove that a bona fide business-related reason exists for
what the defendants contend is a gender neutral factor that
resulted in any wage differential.  Defendants also have the
burden of showing that a business-related practice was in fact
followed and that adherence to that practice served their
stated legitimate business purpose.

    Plaintiffs may also counter the defendants'
affirmative defense by offering evidence shown that the reasons
advanced by the defendants for any wage differential are
pretext for gender discrimination.  The appropriate inquiry to
determine if the factor put forward is a pretext, is whether
defendants used the factor reasonably in light of the
employer's stated purpose as well as its other practices.  In
evaluating the defendants' affirmative defense, you may take
account of any evidence that the defendants claim justification