UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DR. SARI EDELMAN,

                            Plaintiff,

      -against-

NYU LANGONE HEALTH SYSTEM, NYU LANGONE HOSPITALS, NYU LANGONE MEDICAL CENTER, NYU LANGONE NASSAU RHEUMATOLOGY, NYU SCHOOL OF MEDICINE, NYU GROSSMAN SCHOOL OF MEDICINE, NYU HOSPITALS CENTER, ANDREW T. RUBIN, DAVID KAPLAN, JOSEPH ANTONIK, and JOSHUA SWIRNOW,

                            Defendants.
------------------------------------------------------------------X

Case No.: 1:21-cv-502 (LGS) (GWG)

**DECLARATION OF EMANUEL KATAEV, ESQ. IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(B) AND TO ALTER OR AMEND THE JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e)**

      Emanuel Kataev, Esq., declares, pursuant to 28 § 1746, under penalty of perjury, that the following is true and correct:

1. I am admitted to practice before this Court and am a partner of Milman Labuda Law Group PLLC, attorneys for Plaintiff Dr. Sari Edelman in the above-referenced matter.

2. As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and review of the filed maintained by this office.

3. In this Declaration, I refer to Defendants NYU Langone Health System, NYU Langone Hospitals, NYU Langone Medical Center, NYU Langone Nassau Rheumatology, NYU School of Medicine, NYU Grossman School of Medicine, NYU Hospitals Center, collectively, as "NYU." I refer NYU together with Defendants Andrew T. Rubin, David Kaplan, Joseph Antonik, and Joshua Swirnow as "Defendants."

4. Annexed hereto as **Exhibit A** is Plaintiff's Trial Exhibit 1 of excerpts from the email correspondence between Defendants regarding the Plaintiff in this action.

5. Annexed hereto as **Exhibit B** is Plaintiff's Trial Exhibit 7 of a copy of the notice of non-renewal of the Plaintiff in this action.

6. Annexed hereto as **Exhibit C** is Plaintiff's Trial Exhibit 8 of a copy of the original contract between NYU and the Plaintiff in this action.

7. Annexed hereto as **Exhibit D** is Plaintiff's Trial Exhibit 9 of a copy of the renewal of the original contract between NYU and the Plaintiff in this action.

8. Annexed hereto as **Exhibit E** is Plaintiff's Trial Exhibit 21 of excerpts from the email correspondence concerning the Plaintiff's complaint to Human Resources.

9. Annexed hereto as **Exhibit F** is Plaintiff's Trial Exhibit 49 of excerpts from the email correspondence concerning the Plaintiff's complaint to Human Resources.

10. Annexed hereto as **Exhibit G** is Plaintiff's Trial Exhibit 52 of excerpts from the email correspondence concerning the Plaintiff's complaint to Human Resources.

11. Annexed hereto as **Exhibit H** is Plaintiff's Trial Exhibit 55 of excerpts from the email correspondence concerning the Plaintiff's complaint to Human Resources.

12. Annexed hereto as **Exhibit I** is Plaintiff's Trial Exhibit 59 of excerpts from the email correspondence concerning the Plaintiff's complaint to Human Resources.

13. Annexed hereto as **Exhibit J** is Plaintiff's Trial Exhibit 62 of excerpts from the email correspondence concerning the Plaintiff's complaint to Human Resources.

14. Annexed hereto as **Exhibit K** is Plaintiff's Trial Exhibit 84 of a copy of Defendants' spreadsheet of "issues" with the Plaintiff in this action.

15. Annexed hereto as **Exhibit L** is Plaintiff's Trial Exhibit 86 of excerpts from an email correspondence between Joseph Antonik and Andrew Porges regarding the contents of the spreadsheet to raise concerns about the performance of the Plaintiff in support of termination.

16. Annexed hereto as **Exhibit M** is Plaintiff's Trial Exhibit 88 of a copy of Plaintiff's mitigation efforts.

17. Annexed hereto as **Exhibit N** is Plaintiff's Trial Exhibit 93 of a copy of the business records maintained by Epic Systems containing communications with the patients.

18. Annexed hereto as **Exhibit O** is Plaintiff's Trial Exhibit 123 of a copy of the email exchange between Rubin and a hospital system in Florida concerning Dr. Edelman.

19. Annexed hereto as **Exhibit P** is Defendant's Trial Exhibit KKK of excerpts from an email correspondence about the Plaintiff's performance and patient complaint submitted by Dr. Porges.

20. Annexed hereto as **Exhibit Q** is Defendant's Trial Exhibit SS of excerpts from an email correspondence between Defendants David Kaplan and Joshua Swirnow regarding the office space, as well as Plaintiff filing the complaint.

21. Below are the excerpted portions of the jury instructions (with headings) that are relevant to the instant motion.

> *§ 2.4. Title VII Retaliation Claim Against NYU*
>
> Plaintiff claims that NYU retaliated against her in violation of Title VII of the Civil Rights Act of 1964 because she complained to the NYU human resources department *about what she claimed was discrimination in the way Mr. Kaplan and Mr. Antonik spoke to her and made certain gestures when discussing with her whether others would be allowed to use her office on Marcus Avenue*. Plaintiff alleges that their words and gestures constituted sexist and discriminatory remarks. …
>
> **A. First Element: Protected Activity**
>
> To prove that she engaged in protected activity, plaintiff need not establish that she was correct in her complaints or that there was indeed discrimination. *She need only show that she had a good faith, reasonable belief that the challenged actions by her employer violated the law. You must decide whether plaintiff reported Mr. Antonik's and Mr. Kaplan's alleged statements and alleged gestures to human resources in good faith* or whether she did so to extract a

benefit from defendants. If you find that plaintiff did not report her alleged discrimination claims to human resources in good faith, you must find for defendants. …

### B. Second Element: Knowledge of Plaintiff's Protected Activity

*There's no dispute that NYU knew of plaintiff's protected activity.* If you find that plaintiff engaged in protected activity, I direct you to find that plaintiff also satisfied this element. …

### D. Fourth Element: Knowledge of Plaintiff's Protected Activity

With respect to [the causal connection] element, it must be the case that NYU would not have taken the adverse action except as a response to plaintiff's protected activity. *NYU must have taken the adverse action because of an intent to retaliate against plaintiff for complaining about employment discrimination.* NYU's retaliatory intent *may be imputed from the intent and conduct of a subordinate if NYU's decision to terminate was proximately caused by a subordinate who had a retaliatory motive and intended to bring about the adverse employment action*. NYU, however, must have been negligent or reckless in giving effect to the retaliatory intent of its low-level employees, which requires plaintiff to prove that *NYU knew or reasonably should have known about the retaliatory motivation*. Of course, to make this finding, you must also find that the false accusations themselves were the product of retaliatory intent. However, an employer may not be held liable simply because it acts on information provided by a biased coworker. Thus, if NYU, non-negligently and in good faith, relies on a false and malign report of an employee who acted out of an unlawful animus, it cannot be held accountable for or said to have been motivated by the employee's animus. …

### [E]. Reason for Employment Action

it is important to consider whether the explanations NYU has given for its actions were untrue and that retaliation was the real reason for its actions. …
In making this determination, you should consider the reasonableness, or lack thereof, of NYU's explanation for its decisions and any evidence that those reasons were unlikely. …
If you find the reasons articulated by NYU to be unbelievable, you still must determine whether retaliation against Dr. Edelman for filing her complaint was the real reason for what occurred. …

*2.5 New York State Human Rights Law Retaliation Claim*

**C. Third Element: Material Adverse Action**

If you find that the individual defendants *actually participated in the decision to not renew plaintiff's contract and to terminate her employment, then you may find them liable under an aider-and-abettor theory, even if they did not have hiring or firing authority*. Furthermore, you must also find that they *possessed the same retaliatory motive or intent as the employer*. In other words, they must have engaged in *direct and purposeful participation in the retaliation*. …

**E. Individual Liability**

Unlike her Title VII claims, plaintiff also seeks to hold three of the individual defendants -- Mr. Rubin, Mr. Antonik or Mr. Swirnow -- liable for retaliation under New York State Human Rights Law. Although New York State Human Rights Law does not allow employees to be liable as employers, you may find these particular employees nonetheless individually liable under an aiding-and-abetting theory to an employer who has retaliated in violation of New York State Human Rights Law. Therefore, to find that these individual defendants aided and abetted such a violation, you must first find that the employer, NYU, violated New York State Human Rights Law. An individual defendant cannot aid and abet his own retaliatory conduct; he may only aid and abet another's violation of the law. You may, however, find aiding and abetting liability based on the same conduct that serves as the predicate for NYU's liability, as long as you have found that NYU engaged in retaliatory conduct. If you find that the individual defendants actually participated in the decision to not renew plaintiff's contract and to terminate her employment, then you may find them liable under an aider-and-abettor theory, even if they did not have hiring or firing authority. Furthermore, you must also find that they possessed the same retaliatory motive or intent as the employer. In other words, they must have engaged in direct and purposeful participation in the retaliation. …

### 3. **DAMAGES**

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, that the plaintiff has suffered as a result of the actions of the defendant you are considering. The damages that you award must be fair and reasonable and neither inadequate nor excessive.

> In awarding damages, if you decide to award them, you must be guided by dispassionate common sense. *Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.* On the other hand, *the law does not require the plaintiff to prove the amount of her losses with mathematical precision but only with as much definiteness and accuracy as the circumstances permit.* In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence. …
>
> ***3.4 Front Pay Under New York State Human Rights Law and New York City Human Rights Law***
>
> If Dr. Edelman has proved her claim for retaliation under the state human rights law or the city human rights law, she would be entitled to lost wages and benefits arising under such claim *even if they were difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Dr. Edelman should be resolved in her favor.* Here, if you find for Dr. Edelman on her claims for retaliation under state human rights law or city human rights laws, you should consider her damages for front pay. Front pay damages, if any, represent a plaintiff's lost salary and benefits, caused by an unlawful discharge or other adverse action, accruing from the time of trial through some point in the future. If you find that Dr. Edelman will be *unable to earn in the future what she would have earned at NYU, then you may award her, as additional compensation, the amount she would have earned* during the time period between the date of your verdict and either: 1) the date you believe she would have worked at NYU absent any discriminatory conduct or 2) the date you can reasonably predict that she has a reasonable prospect of obtaining *comparable employment*. Factors to be considered in determining front pay include the age of the plaintiff and her reasonable prospects of obtaining comparable employment. In doing so, you should bear in mind that the purpose of front pay is to make a plaintiff whole -- that is, to *put plaintiff in the position she would have been in if defendants had not discriminated against her.*

Tr. at 1421:11-1480:4 (emphasis added).

22. Below are the excerpted portions of the Defendants' motion for a directed verdict that are relevant to the instant motion.

I want to turn to retaliation. … Retaliation, your Honor. There was no protected activity, and I say that because the complaints here were about office space, not about discrimination. I'm going to cite a case called Robinson v. DeNiro, recently decided, on May 25, 2023 -- THE COURT: I'm aware of it. MR. SCHOENSTEIN: -- by a very good judge. You will see at pages 90 to 91 of your decision, your Honor, you addressed that buzz words like "harassment" and "toxic work environment" do not establish protected activity. Now, remember, plaintiff's communications never said anything about anyone calling her a bitch. Her communications were that she felt slightly intimidated because a tall guy came into her office and waved his arms. Those were not complaints about discrimination, fairly read. They were not understood by NYU to be complaints about discrimination. There is no testimony that NYU regarded those as actual discrimination, so it was not protected activity on the part, which is a predicate for the retaliation claim.

Secondly, it did not cause an adverse employment action. All iterations of retaliation claims, be they Title VII, state law or city law, require proof of causation. There is no such proof in this case. Temporally, it's not close. The allegations, the complaints end in November of 2020, 14 months -- well, at least 12 months -- before the alleged adverse employment actions. And the testimony uniformly -- every single witness -- was that the prior complaints about office space had nothing to do with the decision to nonrenew the contract, your Honor. The decision was made, agree with it or not, based on the assessment of her clinical practice. So retaliation should be dismissed against everybody, but let me also break it down by defendant, because there are individual defendants here, and they do not belong in the case. …

But on retaliation, Antonik didn't do anything to retaliate. He was asked to put forward some emails, and he did. He actually took notes from another employee, Ms. Ruiz, the most credible witness I've ever seen, and gave them to somebody else, as requested. That's not retaliation.

Mr. Kaplan, he didn't do anything. He said stop, put it in writing and send it to the people who make these decisions. If that is retaliation, we are going down a really bad path.

Mr. Swirnow didn't do anything. He was involved in discussions, but he didn't take an action or make a decision or do anything that would be retaliation.

> And Mr. Rubin, although he was the ultimate decision-maker, he was the most removed from the complaints that were supposedly being retaliated against. And his testimony is unimpeachable that he didn't take any of the prior complaints into consideration. He was considering only the clinical factors, and you can't have a retaliation claim against Mr. Rubin.
>
> THE COURT: Could you on a cat's-paw-type theory? I mean assume that there is evidence that Dr. Porges was aware of the complaint and assume that there's evidence that Dr. Porges was motivated by some animus to the plaintiff and that Mr. Rubin was manipulated. Would that support a claim against him or just against NYU?
>
> MR. SCHOENSTEIN: I think just against NYU. If Mr. Rubin is manipulated by others that he is considering in good faith, I don't think there's any claim against Mr. Rubin. I think he would have to be out. And the evidence is just overwhelming that he was basing his decision, in good faith, on what he was told by the people he relies upon at NYU. Mr. Steer's handing me a note about cat's-paw. Of course, there is no evidence of animus by Dr. Porges, but I know your Honor was giving me a hypothetical. …
>
> Finally, your Honor, I turn to damages. Whether or not you leave any claims in the case will affect this, but let me address a few specific things. Plaintiffs are still claiming back pay and front pay. There is no back pay proof in the case. There's no loss of revenue. She didn't go a day unemployed or miss a check. So they have only front pay, and the front pay, as I understand it, is based on retirement benefits. And I'll say to the plaintiff the same thing that I've been saying to all of our witnesses: Where are the documents? There's no proof of any retirement benefits that she had or lost. There's no documentary proof that she doesn't get retirement benefits now. It is very short, unspecific testimony by her, so front pay should be out. The pain and suffering claim was limited to $50,000 in the pretrial submission. Suddenly, in the amended disclosures we got the other night, it had a $250,000 number. They're not going to give the jury a number, but for the record, that portion of their case must be limited to the 50,000 that was in their pretrial submission.

Tr. at 1301:9-1304:15, 1308:7-1309:1.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 21, 2023.

                                                                                                     /s/_____
                                                                                                      EMANUEL KATAEV, ESQ.