**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Chris Jones |
| **Subject:** | Re: Locum Rheumatology Need |

Looking permanent only.

On Thu, Dec 3, 2020 at 9:52 AM Chris Jones <cjones@locumtenens.com> wrote:

Dr. Edelman,

I came across your profile today on DocCafe and wanted to see if you were still looking for work. We currently have a locum opportunity in Joplin, MO. They are seeking help starting as soon as possible. We would be happy to assist with the licensure.

Would you have any interest in learning more?

Thank you,
Chris Jones
LocumTenens.com
678-992-1247

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | mperez@allstarrecruiting.com |
| **Subject:** | Re: Rheumatologist need near Sioux Falls South Dakota |

Sorry not interested in location

On Sun, Dec 6, 2020 at 8:46 PM <mperez@allstarrecruiting.com> wrote:



Hello Doctor,

Below is a permanent opportunity. If this job is of interest, or if you know someone who may be a good fit, please let us know.

We also want to invite you to visit our site to view other permanent and locums jobs. We have thousands of jobs nationwide. We want to help you get into the right job in a great location.

Rheumatologist need near Sioux Falls South Dakota

Job ID#42721

**Job Details**

- Board Certified or Board Eligible
- Competitive two-year salary guarantee
- Physician benefit package and relocation assistance
- No state income tax

**All Star Recruiting Benefits**

- Full-service agency
- 24/7 professional and reliable service
- Dedicated, specialty-specific consultants

---

Thank you in advance for your time,

Miles Perez
954-360-8505
mperez@allstarrecruiting.com

All Star Healthcare Solutions
800 Fairway Drive
Suite 300                                           Call Us: (800) 928-0229
Deerfield Beach, FL 33441
www.AllStarHealthcareSolutions.com

If you would like to unsubscribe and stop receiving these emails click here.

**From:** Sari Edelman
**To:** James Brown
**Subject:** Re: DocCafe.chi - EastWhat is location? Coast Quality of Life Rheumatology Opportunity in a Brand New Hospital

Where are you located?
On Tue, Dec 8, 2020 at 12:17 PM James Brown <company-user-518912enwy39@email.doccafe.com> wrote:

Dear Doctor edelman,

Are you interested in building a program from the ground up? If so, look no further. Our beautiful new hospital is expanding, and we are now adding our rheumatology service line. We are financially stable, and you will have all the support and infrastructure needed for success. I look forward to speaking with you in more detail. Schedule a time to speak now - Calendly.com/jbrown-34

The Financials:
• Base Compensation –$256,000
• Sign-On Bonus: $25,000
• Annual Quality Bonus: up to $25,000
• 8.5% Salary Contribution for your retirement account ($21,760 per year)

The Practice:
• 15-20 patients per day
• Booked out 2-3 months
• H1B Cap Exempt
• No Nights, No weekends, No Call

East Coast Living:
• Cost of living is 12% less than the US Average
• 11:1 Student to Teacher Ratio; Test Scores 57% higher than US Average
• Explore Historic Colonial Towns
• Beaches, Lakes, and Mountains just a short drive away!!
• Average temp is 62-80º

Why Work for Us?
• Inspirational Colleagues and Culture
• Open and Effective Management
• Amazing Work Life Balance
• Excellent Compensation and Benefits

 I look forward to speaking with you in more detail. Schedule a time to speak now - Calendly.com/jbrown-34

If you do not wish to receive further communications like this, please click here:
https://www.doccafe.com/candidate/unsubscribe/confirmation to unsubscribe.

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Gomez, Max A |
| **Cc:** | Hadzibabic, Nina |
| **Subject:** | Re: FW: [EXTERNAL] RE: FW: Additional Information Request |

In the contract it states I own my patient base prior to joining NYU  Please let me know if you have interest as I have someone else I am speaking to as well

On Tue, Apr 6, 2021 at 9:30 AM Gomez, Max A <Mgomez7@northwell.edu> wrote:

> Dr. Edelman,
>
>
> Where in the attached does it detail your ability to sell patient data for your panel prior to 2014, so that I can point out legal team in the right direction?
>
>
> Thank you,
>
> Max
>
>
> ---
>
> **From:** Sari Edelman <drsariedelman@gmail.com>
> **Date:** Friday, March 19, 2021 at 11:54 AM
> **To:** "Gomez, Max A" <Mgomez7@northwell.edu>
> **Cc:** "Hadzibabic, Nina" <NHadzibabic1@northwell.edu>
> **Subject:** Re: [EXTERNAL] RE: FW: Additional Information Request
>
>
> *External Email. Do not click links or open attachments unless you trust the sender and content. Report suspicious emails using Report Phishing button or forward email to phish@northwell.edu*
>
> Max,
>
>
> Please see my contract attached. As per our discussion, I would appreciate you escalating the timeline for a proposal so I can receive it within the upcoming week if possible.
>
>
> Dr. Edelman
>
>
> On Tue, Mar 16, 2021 at 3:48 PM Gomez, Max A <Mgomez7@northwell.edu> wrote:
>
> > Great. Will call you then.

**CONFIDENTIAL**

---

**From:** Sari Edelman <drsariedelman@gmail.com>
**Sent:** Tuesday, March 16, 2021 3:47:50 PM
**To:** Gomez, Max A <Mgomez7@northwell.edu>
**Subject:** Re: [EXTERNAL] RE: FW: Additional Information Request

*External Email. Do not click links or open attachments unless you trust the sender and content. Report suspicious emails using Report Phishing button or forward email to phish@northwell.edu*

That works for me  5165515837

On Tue, Mar 16, 2021 at 3:47 PM Gomez, Max A <Mgomez7@northwell.edu> wrote:

> Can you speak at 4:15?
>
> What number should I call you at?

---

**From:** Sari Edelman <drsariedelman@gmail.com>
**Sent:** Tuesday, March 16, 2021 3:44:01 PM

**To:** Gomez, Max A <Mgomez7@northwell.edu>
**Subject:** Re: [EXTERNAL] RE: FW: Additional Information Request

*External Email. Do not click links or open attachments unless you trust the sender and content. Report suspicious emails using Report Phishing button or forward email to phish@northwell.edu*

Hello.

I am available now if you want to call me

Sari

**CONFIDENTIAL**

On Tue, Mar 16, 2021 at 9:01 AM Gomez, Max A <Mgomez7@northwell.edu> wrote:

Dr. Edelman,


Do you have a moment to speak today?  We shared your contract pages with our legal team and have some questions regarding the RC.


Best,

Max

---

**From:** Sari Edelman <drsariedelman@gmail.com>
**Sent:** Monday, March 15, 2021 5:58 PM
**To:** Gomez, Max A
**Cc:** Hadzibabic, Nina


**Subject:** Re: [EXTERNAL] RE: FW: Additional Information Request


***External Email. Do not click links or open attachments unless you trust the sender and content.***
***Report suspicious emails using Report Phishing button or forward email to phish@northwell.edu***

Max


I wanted to follow up with  you as I am narrowing my decision down to where I am going to relocate my practice too.  Please advise when you feel I will hear from you next.


Dr. Sari Edelman


On Fri, Mar 12, 2021 at 2:53 PM Gomez, Max A <Mgomez7@northwell.edu> wrote:

Dr Edelman,


Disregard my last email I found them in my junk folder

CONFIDENTIAL

Apologies,


OK so our legal department ASAP

---

**From:** Gomez, Max A <Mgomez7@northwell.edu>
**Sent:** Friday, March 12, 2021 2:51:25 PM
**To:** Sari Edelman <drsariedelman@gmail.com>
**Cc:** Hadzibabic, Nina <NHadzibabic1@northwell.edu>

**Subject:** Re: [EXTERNAL] RE: FW: Additional Information Request


Dr. Edelman,


Can you resend the pages? They didn't come through in your previous email.


I'm hoping we can bring this to a close very soon


Max

---

**From:** Sari Edelman <drsariedelman@gmail.com>
**Sent:** Friday, March 12, 2021 1:23:52 PM
**To:** Gomez, Max A <Mgomez7@northwell.edu>
**Subject:** Re: [EXTERNAL] RE: FW: Additional Information Request


*External Email. Do not click links or open attachments unless you trust the sender and content.*
*Report suspicious emails using Report Phishing button or forward email to phish@northwell.edu*

Hello

CONFIDENTIAL

I sent over copy contract pages. It's out order though. I am hoping you can provide a proposal soon. I am considering opportunities which have presented out of state and would like to be able to make determination in the near future.

Dr. Edelman

On Wed, Jan 20, 2021 at 1:58 PM Gomez, Max A <Mgomez7@northwell.edu> wrote:

> Dr. Edelman,
>
> I wanted to touch base with you to not only thank you for providing the data that you have up to this point, but also to inform you that we are making excellent progress toward a draft Business Plan and will be reaching out to you in the next week or two to schedule a collective review of that plan.
>
> We did notice in the data that you sent us that you work at both the Marcus Ave location and in Huntington.  Is this correct?  As a corollary, do you have any preferences on your work location should we collectively agree to move forward with an employment offer?
>
> Kind regards,
> Max
>
> On 1/6/21, 3:22 PM, "drsariedelman@gmail.com" <drsariedelman@gmail.com> wrote:
>
>     External Email.  Do not click links or open attachments unless you trust the sender and content.  Report suspicious emails using Report Phishing button or forward email to phish@northwell.edu
>
>     --- Originally sent by nhadzibabic1@northwell.edu on Jan 6, 2021 3:10 PM ---
>
>     I requested the information be sent over before the holiday. I will follow up with both Insurance carriers. Thank you for letting me know.
>
>     Hope enjoyed holidays and best wishes for new year.
>
>     Regards,

**CONFIDENTIAL**

Sari Edelman

This
message was sent securely using

Zix
®

Good Afternoon Dr. Edelman,

Happy New Year to you and yours!

Just wanted to send a friendly reminder regarding
the risk paperwork attached (and noted below). Our team is working
on analyzing the data you provided. We will be in touch in the near
future with next steps in the due diligence process.

Looking forward to further collaboration.

Best,

Nina Hadzibabic

**CONFIDENTIAL**

Senior Project Manager

New Business Development

600 Community
 Drive, Suite 302

Manhasset, NY 11030

Cell: (516) 563-0399

Email:
 nhadzibabic1@northwell.edu

Northwell Health

Visit us at  Northwell.edu

Support our COVID-19
 Emergency Fund:

 give.northwell.edu

Plaintiff's Exhibit 88

**CONFIDENTIAL**

From: Hadzibabic, Nina

Sent: Tuesday, December 22, 2020 4:42 PM

To: Sari Edelman <drsariedelman@gmail.com>

Cc: O'Connell, William (Business Dev)
<WOConnel@northwell.edu>; Gomez, Max A
<Mgomez7@northwell.edu>

Subject: Additional Information Request

Sensitivity: Confidential

Good Afternoon Dr. Edelman,

Thank you for sending us all of the information
you provided so far. Our team is working on reviewing the
information and advancing through the due diligence process.

Our risk team has asked that you please fill out
the attached document release form, so that they can gather
appropriate documents from your malpractice carriers, on your
behalf, to complete the risk assessment.

**CONFIDENTIAL**

Please let me know if you have any questions
regarding this request.


Thank you & Happy Holidays!


Best,



Nina Hadzibabic



Senior Project Manager


New Business Development


600 Community
Drive, Suite 302


Manhasset, NY 11030


Cell: (516) 563-0399


Email:

nhadzibabic1@northwell.edu

CONFIDENTIAL

Northwell Health

Visit us at  Northwell.edu

Support our COVID-19
Emergency Fund:

give.northwell.edu

This message was secured by

Zix

®

.

This message was secured by Zix(R).

CONFIDENTIAL

The information contained in this electronic e-mail transmission and any attachments are intended only for the use of the individual or entity to whom or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution, copying or disclosure of this communication and any attachment is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by telephone and electronic mail, and delete the original communication and any attachment from any computer, server or other electronic recording or storage device or medium. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client, physician-patient or other privilege.

The information contained in this electronic e-mail transmission and any attachments are intended only for the use of the individual or entity to whom or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution, copying or disclosure of this communication and any attachment is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by telephone and electronic mail, and delete the original communication and any attachment from any computer, server or other electronic recording or storage device or medium. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client, physician-patient or other privilege.

The information contained in this electronic e-mail transmission and any attachments are intended only for the use of the individual or entity to whom or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution, copying or disclosure of this communication and any attachment is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by telephone and electronic mail, and delete the original communication and any attachment from any computer, server or other electronic recording or storage device or medium. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client, physician-patient or other privilege.

The information contained in this electronic e-mail transmission and any attachments are intended only for the use of the individual or entity to whom or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the

**CONFIDENTIAL**

intended recipient, or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution, copying or disclosure of this communication and any attachment is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by telephone and electronic mail, and delete the original communication and any attachment from any computer, server or other electronic recording or storage device or medium. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client, physician-patient or other privilege.

The information contained in this electronic e-mail transmission and any attachments are intended only for the use of the individual or entity to whom or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution, copying or disclosure of this communication and any attachment is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by telephone and electronic mail, and delete the original communication and any attachment from any computer, server or other electronic recording or storage device or medium. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client, physician-patient or other privilege.

The information contained in this electronic e-mail transmission and any attachments are intended only for the use of the individual or entity to whom or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution, copying or disclosure of this communication and any attachment is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by telephone and electronic mail, and delete the original communication and any attachment from any computer, server or other electronic recording or storage device or medium. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client, physician-patient or other privilege.

CONFIDENTIAL

| | |
|---|---|
| **From:** | Sari Edelman via DocHub |
| **To:** | mgomez7@northwell.edu |
| **Subject:** | Sari D. Edelman, MD - Due Diligence Packet[2].pdf |
| **Date:** | Sunday, December 20, 2020 4:30:23 PM |
| **Attachments:** | Sari D. Edelman, MD - Due Diligence Packet[2].pdf |

## Sari Edelman

via ☐

Sari Edelman sent you a document, **Sari D. Edelman, MD - Due Diligence Packet[2].pdf**

> Please see the attached document.
> Sent from my DocHub

Sent by Sari Edelman
drsariedelman@gmail.com

Sent by Sari Edelman (drsariedelman@gmail.com, IP: 100.12.254.230).

Powered by DocHub.com - View, edit and sign PDFs in your web browser

Copyright © 2020 DocHub LLC

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | O"Connell, William (Business Dev) |
| **To:** | drsariedelman@gmail.com |
| **Subject:** | FW: [EXTERNAL] Re: Sari D. Edelman, MD - Due Diligence Packet - 2020.pdf.awsec |
| **Date:** | Monday, December 7, 2020 3:07:48 PM |
| **Attachments:** | Sari D. Edelman, MD.pdf |

Dr. Edelman please see counter-signed NDA.

Thank You,
Bill

---

**From:** Zogbi, Michelle
**Sent:** Monday, December 07, 2020 1:16 PM
**To:** O'Connell, William (Business Dev) <WOConnel@northwell.edu>
**Cc:** Zogbi, Michelle <Mzogbi@northwell.edu>
**Subject:** RE: [EXTERNAL] Re: Sari D. Edelman, MD - Due Diligence Packet - 2020.pdf.awsec

Hi Bill,

Please find attached the signed agreement.

Thank you,

*Michelle Zogbi*
Senior Executive Assistant to

**Deborah Schiff**
Executive Vice-President
Ambulatory Strategy & Business Development

**William O'Connell**
Regional Business Development Officer, Central Region
Ambulatory Strategy & Business Development

600 Community Drive, Suite 302
Manhasset, New York 11030
Tel: (516) 823-8678
Cell: (516) 519-9923
Email: mzogbi@northwell.edu

**Northwell Health**
Visit us at Northwell.edu

---

**From:** O'Connell, William (Business Dev)
**Sent:** Friday, December 4, 2020 3:39 PM
**To:** Zogbi, Michelle <Mzogbi@northwell.edu>

CONFIDENTIAL

**Subject:** Fwd: [EXTERNAL] Re: Sari D. Edelman, MD - Due Diligence Packet - 2020.pdf.awsec

Michelle can you have Debbie countersign please.


Begin forwarded message:

> **From:** Sari Edelman <drsariedelman@gmail.com>
> **Date:** December 4, 2020 at 3:37:12 PM EST
> **To:** "O'Connell, William (Business Dev)" <WOConnel@northwell.edu>
> **Subject: [EXTERNAL] Re: Sari D. Edelman, MD - Due Diligence Packet - 2020.pdf.awsec**
>
>
> *External Email. Do not click links or open attachments unless you trust the sender and content. Report suspicious emails using Report Phishing button or forward email to phish@northwell.edu*
>
> Thank you. I attached sign copy.
>
> On Fri, Dec 4, 2020 at 3:23 PM O'Connell, William (Business Dev) <WOConnel@northwell.edu> wrote:
>
>> Hi Dr. Edelman,
>>
>> Please see the attached documents we discussed. If you could sign the NDA and get it back to me I will have it countersigned.
>>
>> Enjoy the weekend.
>>
>> Thank You,
>> Bill
>>
>>
>>
>> The information contained in this electronic e-mail transmission and any attachments are intended only for the use of the individual or entity to whom or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution, copying or disclosure of this communication and any attachment is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by telephone and electronic mail, and delete the original communication and any attachment from any computer, server or other electronic recording or storage device or medium. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client, physician-patient or other privilege.

The information contained in this electronic e-mail transmission and any attachments are

**CONFIDENTIAL**

intended only for the use of the individual or entity to whom or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution, copying or disclosure of this communication and any attachment is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by telephone and electronic mail, and delete the original communication and any attachment from any computer, server or other electronic recording or storage device or medium. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client, physician-patient or other privilege.

CONFIDENTIAL

| | |
|---|---|
| **From:** | O"Connell, William (Business Dev) |
| **To:** | drsariedelman@gmail.com |
| **Subject:** | FW: [EXTERNAL] Re: Sari D. Edelman, MD - Due Diligence Packet - 2020.pdf.awsec |
| **Date:** | Monday, December 7, 2020 3:07:48 PM |
| **Attachments:** | Sari D. Edelman, MD.pdf |

Dr. Edelman please see counter-signed NDA.

Thank You,
Bill

---

**From:** Zogbi, Michelle
**Sent:** Monday, December 07, 2020 1:16 PM
**To:** O'Connell, William (Business Dev) <WOConnel@northwell.edu>
**Cc:** Zogbi, Michelle <Mzogbi@northwell.edu>
**Subject:** RE: [EXTERNAL] Re: Sari D. Edelman, MD - Due Diligence Packet - 2020.pdf.awsec

Hi Bill,

Please find attached the signed agreement.

Thank you,

*Michelle Zogbi*
Senior Executive Assistant to

**Deborah Schiff**
Executive Vice-President
Ambulatory Strategy & Business Development

**William O'Connell**
Regional Business Development Officer, Central Region
Ambulatory Strategy & Business Development

600 Community Drive, Suite 302
Manhasset, New York 11030
Tel: (516) 823-8678
Cell: (516) 519-9923
Email: mzogbi@northwell.edu

**Northwell Health**
Visit us at Northwell.edu

---

**From:** O'Connell, William (Business Dev)
**Sent:** Friday, December 4, 2020 3:39 PM
**To:** Zogbi, Michelle <Mzogbi@northwell.edu>

Plaintiff's Exhibit 88

**P164**

CONFIDENTIAL

**Subject:** Fwd: [EXTERNAL] Re: Sari D. Edelman, MD - Due Diligence Packet - 2020.pdf.awsec

Michelle can you have Debbie countersign please.


Begin forwarded message:

> **From:** Sari Edelman <drsariedelman@gmail.com>
> **Date:** December 4, 2020 at 3:37:12 PM EST
> **To:** "O'Connell, William (Business Dev)" <WOConnel@northwell.edu>
> **Subject: [EXTERNAL] Re: Sari D. Edelman, MD - Due Diligence Packet - 2020.pdf.awsec**
>
>
> *External Email. Do not click links or open attachments unless you trust the sender and content. Report suspicious emails using Report Phishing button or forward email to phish@northwell.edu*
>
> Thank you. I attached sign copy.
>
> On Fri, Dec 4, 2020 at 3:23 PM O'Connell, William (Business Dev) <WOConnel@northwell.edu> wrote:
>
>> Hi Dr. Edelman,
>>
>> Please see the attached documents we discussed. If you could sign the NDA and get it back to me I will have it countersigned.
>>
>> Enjoy the weekend.
>>
>> Thank You,
>> Bill
>>
>>
>> The information contained in this electronic e-mail transmission and any attachments are intended only for the use of the individual or entity to whom or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution, copying or disclosure of this communication and any attachment is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by telephone and electronic mail, and delete the original communication and any attachment from any computer, server or other electronic recording or storage device or medium. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client, physician-patient or other privilege.

The information contained in this electronic e-mail transmission and any attachments are

**CONFIDENTIAL**

intended only for the use of the individual or entity to whom or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution, copying or disclosure of this communication and any attachment is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by telephone and electronic mail, and delete the original communication and any attachment from any computer, server or other electronic recording or storage device or medium. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client, physician-patient or other privilege.

CONFIDENTIAL

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | kris.andrews@baycare.org |
| **Subject:** | Physician Recruitment |
| **Date:** | Friday, December 4, 2020 8:17:08 PM |
| **Attachments:** | sari resume.pages |

Kris

I am looking to see if you are looking for a Rheumatologist.  I am currently employed at NYU and looking to make a move to Florida.  Please see attached my CV

Thank you

Dr. Sari Edelman

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | kris.andrews@baycare.org |
| **Subject:** | Physician Recruitment |
| **Date:** | Friday, December 4, 2020 8:17:08 PM |
| **Attachments:** | sari resume.pages |

Kris

I am looking to see if you are looking for a Rheumatologist.  I am currently employed at NYU and looking to make a move to Florida.  Please see attached my CV

Thank you

Dr. Sari Edelman

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Kotomski, Sophie |
| **To:** | "Sari Edelman" |
| **Subject:** | Greenwich, CT Rheumatology Position |
| **Date:** | Friday, December 4, 2020 10:55:07 AM |
| **Attachments:** | image001.png |
| | 2021 NEMG Physician Summary.pdf |
| | 2020 SummaryRetireeBenef_NEMG.doc |

Hi Dr. Edelman,
It was a pleasure to speak with you yesterday.  I sent you a text along with with an invite to your email for a zoom call with Dr. Lana Bernstein for tomorrow, Saturday, December 5th at 10:00 p.m.  Feel free to reach me by cell with any questions.  Below is the link to the practice/location and I have attached some benefit information.

https://www.northeastmedicalgroup.org/locations/greenwich-15-valley-drive-suite-202-rheumatology.aspx

More information on Benefits:
www.ynhhsbenefitsconnection.org

I look forward to your feedback once you've met with Dr. Bernstein.

Best Regards,

**Sophie E. Kotomski**
Physician Recruiter

**Administration**
99 Hawley Lane – 1st FL
Stratford, CT  06614

**Phone:** 203-592-0943
**Email:** Sophie.Kotomski@ynhh.org

**YaleNewHaven**Health
**Northeast Medical Group**

**From:** Sari Edelman [mailto:drsariedelman@gmail.com]
**Sent:** Wednesday, December 2, 2020 10:24 PM
**To:** Kotomski, Sophie <Sophie.Kotomski@YNHH.ORG>
**Subject:** Resume Rheumatology Position

> **EXTERNAL EMAIL: Do NOT click links or open attachments unless you trust the sender AND know the content is safe.**

Dear Sophie,

I would like to introduce myself.  My name is Sari Edelman.  I have been practicing rheumatology for sixteen years,

Plaintiff's Exhibit 88                                                                                          **P169**

**CONFIDENTIAL**

in New York. Presently I am employed by New York University Langone in an outpatient busy rheumatology practice.  I am looking to relocate and am very interested in the CT Region. My eldest daughter is a freshman at Yale University.

I attached my resume to this email.  I look forward to hearing from you.

Regards,


Sari Edelman, D.O.



This message originates from the Yale New Haven Health System. The information contained in this message may be privileged and confidential. If you are the intended recipient you must maintain this message in a secure and confidential manner. If you are not the intended recipient, please notify the sender immediately and destroy this message. Thank you.

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | BRYANT EDELMAN |
| **To:** | gail.still@chsli.org |
| **Cc:** | Sari Edelman |
| **Subject:** | Rheum Position |
| **Date:** | Thursday, December 3, 2020 2:53:33 AM |
| **Attachments:** | sari resume.pages |

Dear Gail,

I am strongly interested in this position. I presently work for NYU and have been in practice for sixteen years. I am seeking new opportunities at this time. I began my career at CHSLI as a patient care provider, before attending medical school.  I have seen the hospital network grow over the years and am excited see opportunities for a rheumatologist.

Please see resume below.


Regards,
Sari Edelman D.O.
Sent from my iPhone

**P171**

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | BRYANT EDELMAN |
| **To:** | gail.still@chsli.org |
| **Cc:** | Sari Edelman |
| **Subject:** | Rheum Position |
| **Date:** | Thursday, December 3, 2020 2:53:33 AM |
| **Attachments:** | sari resume.pages |

Dear Gail,

I am strongly interested in this position. I presently work for NYU and have been in practice for sixteen years. I am seeking new opportunities at this time. I began my career at CHSLI as a patient care provider, before attending medical school.  I have seen the hospital network grow over the years and am excited see opportunities for a rheumatologist.

Please see resume below.


Regards,
Sari Edelman D.O.
Sent from my iPhone

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Sophie.kotomski@ynhh.org |
| **Subject:** | Resume Rheumatology Position |
| **Attachments:** | sari resume (1).pages |

Dear Sophie,

I would like to introduce myself.  My name is Sari Edelman.  I have been practicing rheumatology for sixteen years, in New York. Presently I am employed by New York University Langone in an outpatient busy rheumatology practice.  I am looking to relocate and am very interested in the CT Region. My eldest daughter is a freshman at Yale University.

I attached my resume to this email.  I look forward to hearing from you.

Regards,


Sari Edelman, D.O.

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Tommy Martinez |
| **Subject:** | Re: SWCA Rheumatology Opportunity |
| **Attachments:** | 78784E5F2F954260B550C622B2932CFF[3321779].png |

Yes, that works for me.

On Wed, Dec 9, 2020 at 11:00 AM Tommy Martinez <tmartinez@spinewellnessamerica.com> wrote:

> Does 1 PM Friday work with you?
>
>
> Best,
>
> Tommy
>
>
>
> Tommy Martinez
> Financial Analyst
> Spine and Wellness Centers of America
>
> 
>
> ---
>
> **From:** Sari Edelman
> **Sent:** Wednesday, December 9, 2020 10:15 AM
> **To:** Tommy Martinez
> **Subject:** Re: SWCA Rheumatology Opportunity
>
>
> Friday works for me.
>
>
> On Wed, Dec 9, 2020 at 9:51 AM Tommy Martinez <tmartinez@spinewellnessamerica.com> wrote:

**CONFIDENTIAL**

It's okay. I only received this one email from you.

Do you think we could reschedule for Friday? Something came up in the evening today that would not allow Albert to make the call.

Best,

Tommy

Tommy Martinez
Financial Analyst
Spine and Wellness Centers of America



---

**From:** Sari Edelman
**Sent:** Wednesday, December 9, 2020 9:41 AM
**To:** Tommy Martinez
**Subject:** Re: SWCA Rheumatology Opportunity

The meeting for this evening is fine with me. Sorry I replied twice.

On Wed, Dec 9, 2020 at 9:34 AM Tommy Martinez <tmartinez@spinewellnessamerica.com> wrote:

> Hi Dr. Edelman,
>
> I saw that the recruiters had already picked a time. Albert and I are more than willing to

reschedule for Friday if you prefer. If you prefer Friday, what time would work best?


Best,

Tommy


Tommy Martinez
Financial Analyst
Spine and Wellness Centers of America




---

**From:** Sari Edelman
**Sent:** Tuesday, December 8, 2020 8:58 PM
**To:** Tommy Martinez
**Subject:** Re: SWCA Rheumatology Opportunity


Friday works for me.


On Tue, Dec 8, 2020 at 9:47 AM Tommy Martinez
<tmartinez@spinewellnessamerica.com> wrote:

> Hello Dr. Sari Edelman,
>
>
> SWCA Rheumatology received your CV from Jesse Mustapha from All Star
> Healthcare Solutions. We were impressed with your experience and would love to get
> on a call to discuss the possibility of having you join our group. The interview would
> be with the CFO of SWCA Rheumatology, Albert Katz. The following times are
> available this week and early next week:

**CONFIDENTIAL**

Tomorrow 12/9: 2 PM - 4 PM EST, 6-7 PM EST

Thursday 12/10: 1 PM - 2 PM EST

Friday 12/11: Any time until 6 PM EST

If these times do not work, please let me know to work out a time next week. We look forward to hearing from you!

Best,

Tommy

Tommy Martinez
Financial Analyst
Spine and Wellness Centers of America



**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Alena Blosfelds |
| **Subject:** | Re: Rheumatologist positions in New York |
| **Attachments:** | image005.png |

Thanks for reaching out.  We are looking to relocate to Florida.  Delray beach, West Palm Beach, clearwater tampa area

On Fri, Dec 4, 2020 at 1:09 PM Alena Blosfelds <ablosfelds@allstarrecruiting.com> wrote:

Dear Dr. Edelman,

I came across your contact and saw your specialty was in **Rheumatology**. Are you actively looking for a permanent placement? I assist in placing physicians in permanent positions and would be glad to help in your job search. Feel free to reach me at 954-606-5164 or email to further discuss.

**Rheumatology need in New York along Hudson river over an hour to NYC**

Job ID#53913

**Job Details**

- BC/BE
- Join a growing practice
- Well-established multi-specialty group
- Competitive salary and benefits package
- The Mid-Hudson Valley region is located just north of New York City, about two-hour driving distance
- International airports within 25 miles

**Rheumatology need in southern New York near Ithaca**

Job ID#53971

**Job Details**

- Board Certified or Board Eligible
- Multi-specialty group
- Hospital Employee, Outpatient only
- No Call
- Loan Forgiveness available
- Signing Bonus available up to $40,000
- Relocation Bonus available
- CME up to 3k available
- 403B
- NextGen in use for EMR with transition to EPIC
- 25 Primary care sites for referrals
- Possible Fellowship stipend up to $1500 a month
- Infusion center

**Rheumatology need between Albany and Syracuse New York**

**CONFIDENTIAL**

Job ID# 54096

**Job Details**

- Board Certified or Board Eligible
- Employed position with Multi-Specialty Group
- Inpatient and outpatient consultation
- Full-spectrum of Rheumatology procedures as well as clinical research opportunities
- Closed Medical Staff, 500+ practitioners
- Comprehensive benefit package, including but not limited to medical, dental, CME, transition allowance
- Paid malpractice insurance

Have a great day!



**ALENA BLOSFELDS**

**CONSULTANT**

**IM SUBS**

**PERMANENT PLACEMENT DIVISION**

**"PROUD MEMBER OF**

**NALTO AND NAPR"**

**DIRECT: 954-606-5164**

**CELL: 561-654-1870**

**MAIN: 800-928-0229 x5164**

**FAX: 888-503-3762**

**EMAIL:**
[ABLOSFELDS@ALLSTARRECRUITING.COM](mailto:ABLOSFELDS@ALLSTARRECRUITING.COM)

  

DISCLAIMER: This message and its contents are confidential. If you received this

message in error, do not use, forward or rely upon it. Instead, please inform

All Star Healthcare Solutions℠ and then delete it. Thank you.

**CONFIDENTIAL**

IMPORTANT NOTICE: Never trust wiring or ACH instructions sent via email. Cyber

criminals are hacking email accounts and sending emails with fake wiring and ACH

instructions. These emails are convincing and sophisticated. Always independently

confirm wiring and ACH instructions in person or via a telephone call to a trusted

and verified phone number. Never wire or ACH money without double-checking

that the instructions are correct.

Plaintiff's Exhibit 88

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Tommy Martinez |
| **Subject:** | Re: SWCA Rheumatology Opportunity |
| **Attachments:** | 78784E5F2F954260B550C622B2932CFF[3382490].png |

5 works perfectly thanks

On Wed, Dec 9, 2020 at 1:19 PM Tommy Martinez <tmartinez@spinewellnessamerica.com> wrote:

> That time does not work unfortunately. Does 5 PM work with you?
>
>
> Best,
>
> Tommy
>
>
> Tommy Martinez
> Financial Analyst
> Spine and Wellness Centers of America
>
> 
>
> ---
>
> **From:** Sari Edelman
> **Sent:** Wednesday, December 9, 2020 1:17 PM
> **To:** Tommy Martinez
> **Subject:** Re: SWCA Rheumatology Opportunity
>
>
> I see patients till 3.  Can we please do 3-4 on friday
>
>
> On Wed, Dec 9, 2020 at 1:16 PM Tommy Martinez
> <tmartinez@spinewellnessamerica.com> wrote:

CONFIDENTIAL

This is the rescheduled time and date for Dr. Edelman's first round interview Albert Katz, CFO of SWCA Rheumatology.

Dr. Sari Edelman: 516-551-5837

CONFIDENTIAL

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Sophie.kotomski@ynhh.org |
| **Subject:** | Resume Rheumatology Position |
| **Attachments:** | sari resume (1).pages |

Dear Sophie,

I would like to introduce myself.  My name is Sari Edelman.  I have been practicing rheumatology for sixteen years, in New York. Presently I am employed by New York University Langone in an outpatient busy rheumatology practice.  I am looking to relocate and am very interested in the CT Region. My eldest daughter is a freshman at Yale University.

I attached my resume to this email.  I look forward to hearing from you.

Regards,


Sari Edelman, D.O.

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | andrew.rubin@nyulangone.org |
| **Subject:** | DR EDELMAN RESUME |
| **Attachments:** | sari resume (1).pages |

attached is my resume, thank you passing it along

CONFIDENTIAL

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Austin Ali |
| **Subject:** | Re: REcruitwell: Broward County, Florida, Rheumatology Opening |
| **Attachments:** | image005.png |
| | image002.png |
| | image004.png |
| | image003.png |

Yes please submit my CV

thanks

On Wed, Dec 9, 2020 at 3:26 PM Austin Ali <austin@recruitwell.com> wrote:

> Hi Dr Edelman,
>
>
> A brand new opportunity became available. Please review and let me know if you are
> interested.
>
>
>
>
> **Broward County, Florida, Rheumatology Opening**
>
> - **Clinical Role:**
>     - Seeking a board certified or truly board eligible rheumatologist
>     - Client looking to hire ASAP
>     - Work Monday-Friday
>     - Typical clinic hours
>     - Inpatient and outpatient responsibilities
>     - Hospital duties involve rounding on patients
>     - Rotating call of one week a month
>     - 2020 grads welcome!
>     - No visa candidates, unfortunately
> - **Organization Information:**
>     - Live in one of the most desirable areas of the United States
>     - Office is less than one mile from the beach
>     - 15 miles from Fort Lauderdale
>     - Opportunity to work as a 1099 (for the group) or a W2
>     - Full benefits
>     - Malpractice insurance provided
>     - Base salary negotiable – to be discussed between you and the client
>     - Reason for need: adding another doctor due to growth
> - **RecruitWell's Core Values:**
>     - Open communication
>     - Sense of urgency
>     - Teamwork
>     - Accountability
>     - Driven to win

**CONFIDENTIAL**

○ Higher consciousness

**Austin Ali**
Physician Recruiter



**RecruitWell**
office: 424-220-1010
mobile: 657-222-1434
email: austin@recruitwell.com

www.recruitwell.com     f in 🐦 📷

The content of this email is confidential and intended for the recipient specified in
message only. It is strictly forbidden to share any part of this message with any
third party, without a written consent of the sender. If you received this message
by mistake, please reply to this message and follow with its deletion, so that we
can ensure such a mistake does not occur in the future.

*"The perfect fit is out there. We can help you find it."*

Plaintiff's Exhibit 88

**P186**

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Kotomski, Sophie |
| **Subject:** | Re: Yale New Haven Health | Northeast Medical Group - Next Steps |
| **Attachments:** | image001.png |

I enjoyed meeting with Dr. Mclean and it was a very informative conversation.   I would like to schedule day to come to see the office and nearby hospital.  Fridays would work best for me.

Dr. Edelman

On Fri, Dec 18, 2020 at 10:21 AM Kotomski, Sophie <Sophie.Kotomski@ynhh.org> wrote:

> Hello Dr. Edelman,
>
>
> I hope your meeting with Dr. Rob Mclean was helpful.  We would like to invite you for an onsite visit to see the practice.
>
> Is there a day of week that works best for you?
>
>
> You will have received an email with instructions for entering references.  Let me know if you have any questions.
>
>
> Best Regards,
>
>
> **Sophie E. Kotomski**
>
> Physician Recruiter
>
> **Administration**
> 99 Hawley Lane – 1st FL
> Stratford, CT  06614
>
> **Cell Phone:** 203-592-0943
> **Email:** Sophie.Kotomski@ynhh.org

**YaleNewHavenHealth**
**Northeast Medical Group**

This message originates from the Yale New Haven Health System. The information contained in this message may be

**CONFIDENTIAL**

privileged and confidential. If you are the intended recipient you must maintain this message in a secure and confidential manner. If you are not the intended recipient, please notify the sender immediately and destroy this message. Thank you.

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Calvin Stanford Jr. |
| **Subject:** | Re: Your Application for Rheumatology Positions |
| **Attachments:** | Outlook-fl43bp3g.png |
| | Outlook-ojfecyp2.png |
| | Outlook-giyjulnx.png |

Sounds good.

On Mon, Dec 7, 2020 at 8:55 AM Calvin Stanford Jr. <Calvin.StanfordJr@merritthawkins.com> wrote:

> Dr. Edelman,
>
> I will be actually give you a call at 4:30pmET
>
> Sorry for the mishap.
>
> **CJ Stanford**
> AMN Leadership Solutions
> Merritt Hawkins
> Physician Liaison

  

> Direct: 469.524.1495
> Cell: 757.237.2753

---

**From:** Calvin Stanford Jr. <Calvin.StanfordJr@merritthawkins.com>
**Sent:** Monday, December 7, 2020 7:53 AM
**To:** Sari Edelman <drsariedelman@gmail.com>

**Subject:** Re: Your Application for Rheumatology Positions

Thank you for your response.

I will give you a call at 4pmET/3pmCT.

**CJ Stanford**
AMN Leadership Solutions
Merritt Hawkins
Physician Liaison

  

Direct: 469.524.1495
Cell: 757.237.2753

---

**From:** Sari Edelman <drsariedelman@gmail.com>
**Sent:** Monday, December 7, 2020 5:23 AM
**To:** Calvin Stanford Jr. <Calvin.StanfordJr@merritthawkins.com>
**Subject:** Re: Your Application for Rheumatology Positions

**WARNING:** This email came from outside of our trusted email system. **DO NOT CLICK** links or attachments if you find the email suspicious.

Yes, I am available. Anytime after 4.

On Mon, Dec 7, 2020 at 1:19 AM Calvin Stanford Jr. <Calvin.StanfordJr@merritthawkins.com> wrote:

Plaintiff's Exhibit 88

**P189**

**CONFIDENTIAL**

Dr. Edelman,

Thank you for applying to our rheumatology opportunities in Florida through our online portal and HealtheCareers.

I am contacting you to discuss your search and next steps. Is there a time in which I may give you a call today (Monday)?

I look forward to hearing from you.

**CJ Stanford**
AMN Leadership Solutions
Merritt Hawkins
Physician Liaison

  

Direct: 469.524.1495
Cell: 757.237.2753

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Calvin Stanford Jr. |
| **Subject:** | Re: Your Application for Rheumatology Positions |
| **Attachments:** | Outlook-fl43bp3g.png |
| | Outlook-ojfecyp2.png |
| | Outlook-giyjulnx.png |

Sounds good.

On Mon, Dec 7, 2020 at 8:55 AM Calvin Stanford Jr. <Calvin.StanfordJr@merritthawkins.com> wrote:

Dr. Edelman,

I will be actually give you a call at 4:30pmET

Sorry for the mishap.

**CJ Stanford**
AMN Leadership Solutions
Merritt Hawkins
Physician Liaison

  

Direct: 469.524.1495
Cell: 757.237.2753

---

**From:** Calvin Stanford Jr. <Calvin.StanfordJr@merritthawkins.com>
**Sent:** Monday, December 7, 2020 7:53 AM
**To:** Sari Edelman <drsariedelman@gmail.com>

**Subject:** Re: Your Application for Rheumatology Positions

Thank you for your response.

I will give you a call at 4pmET/3pmCT.

**CJ Stanford**
AMN Leadership Solutions
Merritt Hawkins
Physician Liaison

  

Direct: 469.524.1495
Cell: 757.237.2753

---

**From:** Sari Edelman <drsariedelman@gmail.com>
**Sent:** Monday, December 7, 2020 5:23 AM
**To:** Calvin Stanford Jr. <Calvin.StanfordJr@merritthawkins.com>
**Subject:** Re: Your Application for Rheumatology Positions

**WARNING:** This email came from outside of our trusted email system. **DO NOT CLICK** links or attachments if you find the email suspicious.

Yes, I am available. Anytime after 4.

On Mon, Dec 7, 2020 at 1:19 AM Calvin Stanford Jr. <Calvin.StanfordJr@merritthawkins.com> wrote:

Plaintiff's Exhibit 88

**P191**

**CONFIDENTIAL**

Dr. Edelman,

Thank you for applying to our rheumatology opportunities in Florida through our online portal and HealtheCareers.

I am contacting you to discuss your search and next steps. Is there a time in which I may give you a call today (Monday)?

I look forward to hearing from you.

**CJ Stanford**
AMN Leadership Solutions
Merritt Hawkins
Physician Liaison

  

Direct: 469.524.1495
Cell: 757.237.2753

**CONFIDENTIAL**

**From:** Sari Edelman
**To:** Mgomez7@northwell.edu



Sari Edelman, DO
September 5, 2014
Page 3 of 11

CONFIDENTIAL

### Section III - <u>Representations/Warranties</u>

1. <u>No Employment Limitation:</u> You represent and warrant to NYU Langone Medical Center that you are not party to any contract or conditions of current employment, such as but not limited to a covenant not to compete with your current employer, which would preclude your accepting employment with NYU Langone Medical Center and performing services described herein as of the Commencement Date referenced in this offer letter.

2. <u>Non-Solicitation:</u> You agree that you shall not, directly or indirectly, recruit any employee nor solicit business which knowingly disturbs, or could be expected to disturb, the existing professional or business relationships of NYU Langone Medical Center with any employee, patient, health care provider or referral source while you are in our employ and for two (2) years after leaving our employ. The parties agree that, following the expiration or termination of your employment, the foregoing provision shall **not** prohibit you from obtaining employment or providing services to any hospital, health care entity or medical practice, provided that any such engagement does not require you to violate this provision.

3. <u>Consulting:</u> You represent and warrant that prior to the Commencement Date you shall disclose to NYU Langone Medical Center any outside activities that you intend to engage in after the Commencement Date, including consulting and research activities in which you are currently engaged. You may engage in such consulting activities as may from time to time be permitted by the rules and regulations of NYU Langone Medical Center and New York University in effect at the time of signing and modified from time to time. NYU Langone Medical Center's policies concerning conflicts of interest, conflicts of commitment and consulting activities are located on the conflicts management website, which is http://cimu.med.nyu.edu.

### Section IV - <u>Additional Documents:</u> At any time and from time to time, it is agreed that each party shall, without further consideration and at its own expense, take such further actions and execute and deliver such further instruments as may be reasonably necessary to effectuate the purpose of this agreement.

CONFIDENTIAL



CONFIDENTIAL

Sari Edelman, DO
September 5, 2014
Page 11 of 11

a copy of the records of all patients treated by you prior to your employment with NYU, subject to patient authorization requirements. In addition, it is agreed that you shall have the right to freely contact and solicit any staff, patients and referral sources maintained by you prior to your employment at NYU. With respect to medical records, all medical, financial and other records relating to patients treated by you during your employment with NYU are the property of NYU, including, but not limited to, patient records, charts, and case histories; provided, however you will be provided copies of such records, subject to patient authorization and applicable law.

b)      **Staff**

As of and following the Commencement Date, it is NYU's intention to offer employment to your current staff, in job titles that align with the NYU salary structure, contingent upon the employee(s) successfully completing the pre-employment process in compliance with Human Resources policies and procedures.

**Waiting Period Waiver**

Pending final approval by the NYU Retirement Committee, one year of your full time service with your previous professional corporation will be used to meet the one year service requirement under the NYU School of Medicine 403(b) plan for purposes of the 403(b) plan's one-year waiting period and vesting schedule in accordance with the plan's provisions.

**Lease/Sublease/Business Loan**

**CONFIDENTIAL**

reimbursement. Any disbursement from an IPA, insurer, MSO, or other like entity shall be deposited in the FGP Account.

f) **Professional Liability Insurance:** You will be covered by "occurrence based" individual practitioner's professional liability insurance purchased for you with FGP. Prior to the issuance of this coverage you agree to provide NYU Langone Medical Center information pertaining to your prior professional liability coverage, including documentation pertaining to New York State's excess medical malpractice coverage ("Section 18 Coverage") to the extent applicable. This insurance will provide you with coverage only for medical incidents occurring as a function of FGP activities and taking place at (a) facilities owned or operated by NYUHC, or (b) locations approved, in writing, by your Department Chair or the Vice Dean for Clinical Affairs prior to the relevant activity(ies). The insurance will provide limits of liability equivalent to or greater than the aggregate of (1) the primary limits required by New York State to be eligible for the Section 18 coverage, and (2) the excess limits provided by Section 18 coverage. You agree to provide all information necessary to complete the application(s) for such coverage. The School of Medicine reserves the right to change the scope, amount and nature of insurance provided to you upon notice as provided under New York State law.

g) **Non-Referral:** Nothing in this agreement is intended to obligate any party to refer patients or business to or between NYU Langone Medical Center and you. Any referral between the parties shall be subject to each individual patient's choice and his or her physician's professional judgment.

## VIII. Other

a) **Non-Solicitation/Records**

The provision of this letter limiting your ability to solicit staff, patients or referral sources (Section 3, Paragraph 2) shall be superseded by this paragraph. In the event your employment with NYU ends for any reason, you shall have the right to



**CONFIDENTIAL**

**From:**          Sari Edelman
**To:**            andrew.rubin@nyulangone.org
**Subject:**       DR EDELMAN RESUME
**Attachments:**   sari resume (1).pages

attached is my resume, thank you passing it along

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Kotomski, Sophie |
| **Subject:** | Re: Dr. Sari Edelman Onsite Visit, Rheumatology |
| **Attachments:** | image001.png |

Looking forward to it!

On Wed, Jan 27, 2021 at 3:08 PM Kotomski, Sophie <Sophie.Kotomski@ynhh.org> wrote:

> Hi Dr. Edelman,
>
> Just confirming your visit to Greenwich on Friday 1/29 at 2:00 p.m.
>
> Feel free to reach me on my cell if you need anything.  I look forward to your feedback after your visit.
>
> You should have received a link to enter references.  Let me know if you have any questions.
>
> Best,
>
>
> **Sophie E. Kotomski**
>
> Physician Recruiter
>
> **Administration**
> 99 Hawley Lane – 1st FL
> Stratford, CT  06614
>
> **Phone:** 203-592-0943
> **Email:** Sophie.Kotomski@ynhh.org
>
> YaleNewHaven**Health**
> **Northeast Medical Group**
>
> ---
>
> **From:** Kotomski, Sophie
> **Sent:** Wednesday, January 6, 2021 11:24 AM
> **To:** 'Sari Edelman' <drsariedelman@gmail.com>
> **Subject:** RE: Dr. Sari Edelman Onsite Visit, Rheumatology
>
>
> We look forward to your visit as well!  Let me know if you have any questions.

CONFIDENTIAL

Best,


**Sophie E. Kotomski**

Physician Recruiter

**Administration**
99 Hawley Lane – 1ˢᵗ FL
Stratford, CT  06614

**Phone:** 203-592-0943
**Email:** Sophie.Kotomski@ynhh.org

YaleNewHaven**Health**
**Northeast Medical Group**




**From:** Sari Edelman [mailto:drsariedelman@gmail.com]
**Sent:** Wednesday, January 6, 2021 11:00 AM
**To:** Kotomski, Sophie <Sophie.Kotomski@YNHH.ORG>
**Cc:** Bernstein, Lana <Lana.Bernstein@greenwichhospital.org>; Catanzariti, Anna
<Anna.Catanzariti@YNHH.ORG>; Morandi, Jessica <Jessica.Morandi@YNHH.ORG>
**Subject:** Re: Dr. Sari Edelman Onsite Visit, Rheumatology


| EXTERNAL EMAIL: Do NOT click links or open attachments unless you trust the sender AND know the content is safe. |
| :---: |


Looking forward to meeting everyone and seeing the practice.


Sari Edelman


On Mon, Jan 4, 2021 at 9:48 AM Kotomski, Sophie <Sophie.Kotomski@ynhh.org> wrote:

Plaintiff's Exhibit 88

**CONFIDENTIAL**

This message originates from the Yale New Haven Health System. The information contained in this message may be privileged and confidential. If you are the intended recipient you must maintain this message in a secure and confidential manner. If you are not the intended recipient, please notify the sender immediately and destroy this message. Thank you.

Plaintiff's Exhibit 88

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Danyel Adkins |
| **Subject:** | Re: Video Interview: Sari Edelman, D.O. (Rheumatology Candidate) |
| **Attachments:** | image002.png |

Daniel,

I booked flights and hotel for this trip.  Please call
me to discuss with further details.  Do you know what office I will be meeting them at as well as the address..

On Tue, Dec 22, 2020 at 4:53 PM Sari Edelman <drsariedelman@gmail.com> wrote:
> Sure call my cell around 5:30

On Tue, Dec 22, 2020 at 2:32 PM Danyel Adkins <danyel.adkins@merritthawkins.com> wrote:

> Yes, I just got off the phone with the practice.  They would like for you to come onsite 1/18.  You will be
> with the practice from 10AM-4:30PM.  Do you have time to speak with me today or this evening?


**Danyel Adkins**
AMN Leadership Solutions

Merritt Hawkins

Managing Consultant

  

Direct: 770-481-1167

Cell:    404-569-4772


LeadershipSolutions.AMNHealthcare.com

MerrittHawkins.com


**Merritt Hawkins**

100 Mansell Court East, Suite 500

Roswell, GA 30076


As the global healthcare community responds to the COVID-19 pandemic, we want to ensure our candidates
that their health and well-being is our top priority. We are partnering with our clients to provide candidates
with alternative interview and travel options, in most situations, including the option to interview virtually
via video conference.


If you have questions or need additional support from Merritt Hawkins, our team remains ready to serve you.
https://www1.amnhealthcare.com/e/123142/coronavirus-update-/ds6mbj/586707829?
h=o6RLYKjPFSNFPz_qEVp1ZBQqK25eGzI6P649cc9-SUA

**CONFIDENTIAL**

---

**From:** Sari Edelman <drsariedelman@gmail.com>
**Sent:** Tuesday, December 22, 2020 2:02 PM
**To:** Danyel Adkins <danyel.adkins@merritthawkins.com>
**Subject:** Re: Video Interview: Sari Edelman, D.O. (Rheumatology Candidate)

**WARNING:** This email came from outside of our trusted email system. **DO NOT CLICK** links or attachments if you find the email suspicious.

Danyel

Any feedback about taking this to the next steps.  I am hoping to coordinate the interview with my other obligations

On Mon, Dec 21, 2020 at 7:32 PM Danyel Adkins <danyel.adkins@merritthawkins.com> wrote:

> Thanks
>
> Sent from my iPhone
>
>
>> On Dec 21, 2020, at 7:31 PM, Sari Edelman <drsariedelman@gmail.com> wrote:
>>
>> **WARNING:** This email came from outside of our trusted email system. **DO NOT CLICK** links or attachments if you find the email suspicious.
>>
>> Call went well let's take the next steps.  I can meet them on Saturday Jan 16th or Monday jan 18th
>>
>> Please call me to discuss
>>
>> 516-551-5837
>>
>>
>> On Mon, Dec 21, 2020 at 8:15 AM Danyel Adkins <danyel.adkins@merritthawkins.com> wrote:

---

Microsoft Teams meeting

Join on your computer or mobile app

Click here to join the meeting

**CONFIDENTIAL**

Learn More │ Meeting options

---

**Danyel Adkins**
AMN Leadership Solutions

Merritt Hawkins

Managing Consultant

<image001.png>

Direct: 770-481-1167

Cell:    404-569-4772

LeadershipSolutions.AMNHealthcare.com

MerrittHawkins.com

**Merritt Hawkins**

100 Mansell Court East, Suite 500

Roswell, GA 30076

As the global healthcare community responds to the COVID-19 pandemic, we want to ensure our candidates that their health and well-being is our top priority. We are partnering with our clients to provide candidates with alternative interview and travel options, in most situations, including the option to interview virtually via video conference.

If you have questions or need additional support from Merritt Hawkins, our team remains ready to serve you. https://www1.amnhealthcare.com/e/123142/coronavirus-update-/ds6mbj/586707829?h=o6RLYKjPFSNFPz_qEVp1ZBQqK25eGzI6P649cc9-SUA

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Danyel Adkins |
| **Subject:** | Re: Video Interview: Sari Edelman, D.O. (Rheumatology Candidate) |
| **Attachments:** | image001.png |

Thank you look forward to it

On Thu, Dec 17, 2020 at 10:00 PM Danyel Adkins <danyel.adkins@merritthawkins.com> wrote:

## Microsoft Teams meeting

**Join on your computer or mobile app**

Click here to join the meeting

Learn More | Meeting options

**Danyel Adkins**
AMN Leadership Solutions

Merritt Hawkins

Managing Consultant

  

Direct: 770-481-1167

Cell:   404-569-4772

LeadershipSolutions.AMNHealthcare.com

MerrittHawkins.com

**Merritt Hawkins**

100 Mansell Court East, Suite 500

Roswell, GA 30076

**CONFIDENTIAL**

As the global healthcare community responds to the COVID-19 pandemic, we want to ensure our candidates that their health and well-being is our top priority. We are partnering with our clients to provide candidates with alternative interview and travel options, in most situations, including the option to interview virtually via video conference.

If you have questions or need additional support from Merritt Hawkins, our team remains ready to serve you. https://www1.amnhealthcare.com/e/123142/coronavirus-update-/ds6mbj/586707829?h=o6RLYKjPFSNFPz_qEVp1ZBQqK25eGzI6P649cc9-SUA

Plaintiff's Exhibit 88

**P204**

CONFIDENTIAL

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Tommy Martinez |
| **Subject:** | Re: SWCA Rheumatology Opportunity |
| **Attachments:** | 78784E5F2F954260B550C622B2932CFF[3382490].png |

5 works perfectly thanks

On Wed, Dec 9, 2020 at 1:19 PM Tommy Martinez <tmartinez@spinewellnessamerica.com> wrote:

> That time does not work unfortunately. Does 5 PM work with you?
>
>
> Best,
>
> Tommy
>
>
> Tommy Martinez
> Financial Analyst
> Spine and Wellness Centers of America
>
> 
>
> ---
>
> **From:** Sari Edelman
> **Sent:** Wednesday, December 9, 2020 1:17 PM
> **To:** Tommy Martinez
> **Subject:** Re: SWCA Rheumatology Opportunity
>
>
> I see patients till 3.  Can we please do 3-4 on friday
>
>
> On Wed, Dec 9, 2020 at 1:16 PM Tommy Martinez
> <tmartinez@spinewellnessamerica.com> wrote:

**CONFIDENTIAL**

This is the rescheduled time and date for Dr. Edelman's first round interview Albert Katz, CFO of SWCA Rheumatology.

Dr. Sari Edelman: 516-551-5837

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Tommy Martinez |
| **Subject:** | Re: SWCA Rheumatology Opportunity |
| **Attachments:** | 78784E5F2F954260B550C622B2932CFF[3321779].png |

Yes, that works for me.

On Wed, Dec 9, 2020 at 11:00 AM Tommy Martinez <tmartinez@spinewellnessamerica.com> wrote:

> Does 1 PM Friday work with you?
>
>
> Best,
>
> Tommy
>
>
>
> Tommy Martinez
> Financial Analyst
> Spine and Wellness Centers of America
>
>
> 
>
>
>
> ---
>
> **From:** Sari Edelman
> **Sent:** Wednesday, December 9, 2020 10:15 AM
> **To:** Tommy Martinez
> **Subject:** Re: SWCA Rheumatology Opportunity
>
>
>
> Friday works for me.
>
>
> On Wed, Dec 9, 2020 at 9:51 AM Tommy Martinez <tmartinez@spinewellnessamerica.com> wrote:

Plaintiff's Exhibit 88

CONFIDENTIAL

It's okay. I only received this one email from you.

Do you think we could reschedule for Friday? Something came up in the evening today that would not allow Albert to make the call.

Best,

Tommy


Tommy Martinez
Financial Analyst
Spine and Wellness Centers of America



---

**From:** Sari Edelman
**Sent:** Wednesday, December 9, 2020 9:41 AM
**To:** Tommy Martinez
**Subject:** Re: SWCA Rheumatology Opportunity


The meeting for this evening is fine with me. Sorry I replied twice.


On Wed, Dec 9, 2020 at 9:34 AM Tommy Martinez <tmartinez@spinewellnessamerica.com> wrote:

  Hi Dr. Edelman,


  I saw that the recruiters had already picked a time. Albert and I are more than willing to

CONFIDENTIAL

reschedule for Friday if you prefer. If you prefer Friday, what time would work best?


Best,

Tommy



Tommy Martinez
Financial Analyst
Spine and Wellness Centers of America





---

**From:** Sari Edelman
**Sent:** Tuesday, December 8, 2020 8:58 PM
**To:** Tommy Martinez
**Subject:** Re: SWCA Rheumatology Opportunity


Friday works for me.


On Tue, Dec 8, 2020 at 9:47 AM Tommy Martinez
<tmartinez@spinewellnessamerica.com> wrote:

> Hello Dr. Sari Edelman,
>
>
> SWCA Rheumatology received your CV from Jesse Mustapha from All Star
> Healthcare Solutions. We were impressed with your experience and would love to get
> on a call to discuss the possibility of having you join our group. The interview would
> be with the CFO of SWCA Rheumatology, Albert Katz. The following times are
> available this week and early next week:

**CONFIDENTIAL**

Tomorrow 12/9: 2 PM - 4 PM EST, 6-7 PM EST

Thursday 12/10: 1 PM - 2 PM EST

Friday 12/11: Any time until 6 PM EST


If these times do not work, please let me know to work out a time next week. We look forward to hearing from you!


Best,

Tommy


Tommy Martinez
Financial Analyst
Spine and Wellness Centers of America



**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Kendra Thompson |
| **Subject:** | Re: Follow Up - Autism Schools Near Clearwater, Florida |
| **Attachments:** | image007.png |
| | image010.png |
| | image005.png |
| | image006.png |
| | image008.png |
| | image009.png |

Tuesday at 5 works

On Mon, Jan 4, 2021 at 10:31 AM Kendra Thompson
<Kendra.Thompson@merritthawkins.com> wrote:

> Hi Dr. Edelman - I hope your family enjoyed a wonderful holiday season and your new year
> is off to a fantastic start. I'd like to schedule some time to catch up with you regarding your
> visit to Clearwater next week. I wanted to make sure all of the logistics/arrangements are
> made and identify any outstanding items so I can make sure we get those details ironed out
> this week. Dr. Rosen is also considering presenting you with a preliminary offer with the
> terms/language so I wanted to talk through that as well.
>
>
> Please let me know when you have some time to connect this week. I am open to scheduling
> a call over lunch or in the evenings if needed – I could speak Tuesday, Wednesday, or
> Thursday at 5P or 515P Eastern. If you need something later just let me know!
>
>
> **Kendra Thompson**
>
> AMN Leadership Solutions
>
> Merritt Hawkins
>
> *Managing Consultant*
>
>     
>
> **COVID-19 AMN HOTLINE:** 800-887-1456
>
> **coronavirus.amnhealthcare.com**
>
> *Current COVID-19 information for healthcare professionals, facilities, and partners*
>
> Voice: 469.524.1509
>
> SMS: 940.441.2553

**CONFIDENTIAL**

Direct Fax: 866.215.1883

LeadershipSoulutions.AMNHealthcare.com

MerrittHawkins.com

**Merritt Hawkins**

8840 Cypress Waters Blvd., #300

Dallas, TX 75019



*As the global healthcare community responds to the COVID-19 pandemic, we want to ensure our candidates that their health and well-being is our top priority. We are partnering with our clients to provide candidates with alternative interview and travel options, in most situations, including the option to interview virtually via video conference.If you have questions or need additional support from Merritt Hawkins, our team remains ready to serve you.*

---

**From:** Sari Edelman <drsariedelman@gmail.com>
**Sent:** Friday, December 18, 2020 10:27 AM
**To:** Kendra Thompson <Kendra.Thompson@merritthawkins.com>
**Subject:** Re: Follow Up - Autism Schools Near Clearwater, Florida

**WARNING:** This email came from outside of our trusted email system. **DO NOT CLICK** links or attachments if you find the email suspicious.

Kendra

Can you please give me a call, I want to discuss times to come down

516-551-8825  bryant (husband)

On Thu, Dec 17, 2020 at 4:10 PM Sari Edelman <drsariedelman@gmail.com> wrote:

**CONFIDENTIAL**

Kendra

How does Jan 18th Monday work.  It's MLK day and i don't have patients.  I am also going to try to set up another meeting Tuesday.  However this position has definitely has my interest

Please let me know so I can book flights to come down the Night before

On Thu, Dec 17, 2020 at 2:54 PM Kendra Thompson <Kendra.Thompson@merritthawkins.com> wrote:

> Hi Dr. Edelman –Next step would be to have you come see the area/clinic, meet with the physicians and team, and hopefully help scout out some programs and resources for your child. Please let me know some dates you could be available to visit Clearwater!
>
> **Kendra Thompson**
>
> AMN Leadership Solutions
>
> Merritt Hawkins
>
> *Managing Consultant*

  

> **COVID-19 AMN HOTLINE:** 800-887-1456
>
> **coronavirus.amnhealthcare.com**
>
> *Current COVID-19 information for healthcare professionals, facilities, and partners*
>
> Voice: 469.524.1509
>
> SMS: 940.441.2553
>
> Direct Fax: 866.215.1883
>
> LeadershipSoulutions.AMNHealthcare.com
>
> MerrittHawkins.com

**CONFIDENTIAL**

**Merritt Hawkins**

8840 Cypress Waters Blvd., #300

Dallas, TX 75019



*As the global healthcare community responds to the COVID-19 pandemic, we want to ensure our candidates that their health and well-being is our top priority. We are partnering with our clients to provide candidates with alternative interview and travel options, in most situations, including the option to interview virtually via video conference.If you have questions or need additional support from Merritt Hawkins, our team remains ready to serve you.*

**From:** Sari Edelman <drsariedelman@gmail.com>
**Sent:** Thursday, December 17, 2020 1:38 PM
**To:** Kendra Thompson <Kendra.Thompson@merritthawkins.com>
**Subject:** Re: Follow Up - Autism Schools Near Clearwater, Florida

**WARNING:** This email came from outside of our trusted email system. **DO NOT CLICK** links or attachments if you find the email suspicious.

Kendra

I spoke to both Doctors and I am very interested in the position.  Please let me know the next steps on the process.

thanks

On Thu, Dec 10, 2020 at 8:54 PM Kendra Thompson <Kendra.Thompson@merritthawkins.com> wrote:

Hi Dr. Edelman,

Thank you for your time this afternoon. Would either of these two schools satisfy the needs for your child's educational needs?

Clearwater/St. Petersburg - Center Academy – they have a location down in St. Petersburg and a location in palm harbor, north of Clearwater

Tampa - Florida Autism Charter School of Excellence

There were more options out there but these were the first two I found.

**Kendra Thompson**

AMN Leadership Solutions

Merritt Hawkins

*Managing Consultant*

  

**COVID-19 AMN HOTLINE:** 800-887-1456

coronavirus.amnhealthcare.com

*Current COVID-19 information for healthcare professionals, facilities, and partners*

Voice: 469.524.1509

SMS: 940.441.2553

Direct Fax: 866.215.1883

LeadershipSoulutions.AMNHealthcare.com

MerrittHawkins.com

**Merritt Hawkins**

**CONFIDENTIAL**

8840 Cypress Waters Blvd., #300

Dallas, TX 75019



*As the global healthcare community responds to the COVID-19 pandemic, we want to ensure our candidates that their health and well-being is our top priority. We are partnering with our clients to provide candidates with alternative interview and travel options, in most situations, including the option to interview virtually via video conference.If you have questions or need additional support from Merritt Hawkins, our team remains ready to serve you.*

Plaintiff's Exhibit 88

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Gomez, Max A |
| **Cc:** | Hadzibabic, Nina |
| **Subject:** | Re: [EXTERNAL] FROM SARI EDELMAN |

Great, thank you.

On Mon, Dec 21, 2020 at 8:41 AM Gomez, Max A <Mgomez7@northwell.edu> wrote:

> Dr. Edelman,
>
> I'm confirming receipt of the 3 emails with attachments you sent me on Sunday.  Thank you for sending this information through, as it will certainly be helpful.  We will review and come back to you if we have any questions.
>
> Kind regards,
>
> Max
>
> ---
>
> **From:** Sari Edelman <drsariedelman@gmail.com>
> **Date:** Sunday, December 20, 2020 at 8:41 PM
> **To:** "Gomez, Max A" <Mgomez7@northwell.edu>
> **Subject:** [EXTERNAL] FROM SARI EDELMAN
>
> *External Email. Do not click links or open attachments unless you trust the sender and content. Report suspicious emails using Report Phishing button or forward email to phish@northwell.edu*

**CONFIDENTIAL**



Number of Patients by Hospital or Clinic-Administered Me...

Between 1/18/2014 and 12/18/2020

| Jan 18, 2014 – Dec 18, 2020 | Number of Patients |
|---|---|
| | 3,151 |
| infliximab | 9 |
| infliximab-abda | 2 |
| abatacept | 0 |
| abatacept/maltose | 19 |
| belimumab | 9 |
| immune globulin,gamma(IgG) | 1 |
| rituximab | 26 |
| denosumab | 101 |
| zoledronic ac/mannitol/0.9NaCl | 1 |
| zoledronic acid/mannitol-water | 18 |
| ustekinumab | 7 |
| certolizumab pegol | 7 |
| None of the above | 2,966 |

**CONFIDENTIAL**



**CONFIDENTIAL**



**CONFIDENTIAL**



**CONFIDENTIAL**



**CONFIDENTIAL**



**CONFIDENTIAL**



The information contained in this electronic e-mail transmission and any attachments are intended only for the use of the individual or entity to whom or to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, or the

**CONFIDENTIAL**

employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution, copying or disclosure of this communication and any attachment is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by telephone and electronic mail, and delete the original communication and any attachment from any computer, server or other electronic recording or storage device or medium. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client, physician-patient or other privilege.

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Kotomski, Sophie |
| **Subject:** | Re: Greenwich, CT Rheumatology Position Next Steps |
| **Attachments:** | image001.png |

Another evening may work better this week. Let me know  what works.

On Mon, Dec 14, 2020 at 10:07 AM Kotomski, Sophie <Sophie.Kotomski@ynhh.org> wrote:

> Hi,
>
> He has a meeting that could run past 7:00 p.m.  Could 8:00 work or perhaps another evening at 8:00?
>
> Thank you.
>
> Sophie
>
>
> **From:** Sari Edelman [mailto:drsariedelman@gmail.com]
> **Sent:** Sunday, December 13, 2020 11:06 PM
> **To:** Kotomski, Sophie <Sophie.Kotomski@YNHH.ORG>
> **Subject:** Re: Greenwich, CT Rheumatology Position Next Steps
>
> ---
> **EXTERNAL EMAIL: Do NOT click links or open attachments unless you trust the sender AND know the content is safe.**
> ---
>
> Can we do 7 pm on Monday?
>
> On Fri, Dec 11, 2020 at 3:12 PM Kotomski, Sophie <Sophie.Kotomski@ynhh.org> wrote:
>
> > Hi,
> >
> > Good to hear.  May we schedule for Monday or Tuesday next week at 8:00 p.m.?  I will send you zoom link.
> >
> >
> > **Sophie E. Kotomski**
> >
> > Physician Recruiter
> >
> > **Administration**
> >
> > 99 Hawley Lane – 1st FL

CONFIDENTIAL

Stratford, CT  06614

**Phone:** 203-502-6537
**Email:** Sophie.Kotomski@ynhh.org

**YaleNewHaven**Health
**Northeast Medical Group**

**From:** Sari Edelman [mailto:drsariedelman@gmail.com]
**Sent:** Friday, December 11, 2020 3:10 PM
**To:** Kotomski, Sophie <Sophie.Kotomski@YNHH.ORG>
**Subject:** Re: Greenwich, CT Rheumatology Position Next Steps

<div style="border:1px solid red; background:cyan; text-align:center">

**EXTERNAL EMAIL: Do NOT click links or open attachments unless you trust the sender AND know the content is safe.**

</div>

Hello

The meeting was very informative and much appreciate in depth conversation. I would be available for zoom in evening sometime next week.

Dr Edelman

On Tue, Dec 8, 2020 at 9:49 AM Kotomski, Sophie <Sophie.Kotomski@ynhh.org> wrote:

> Hello Dr. Edelman,
>
> I hope you found your meeting with Lana Bernstein to be helpful and informative.
>
> May we schedule a zoom meeting with Dr. Rob Mclean, Rheumatologist and New Haven Regional Medical Director?  He can be available any evening at 8:00 p.m. or on the weekend.
>
> We would also like to schedule an onsite visit to the practice.  Let me know what

**CONFIDENTIAL**

dates works best.


Best Regards,


**Sophie E. Kotomski**

Physician Recruiter

**Administration**
99 Hawley Lane – 1st FL
Stratford, CT  06614

**Phone:** 203-502-6537
**Email:** Sophie.Kotomski@ynhh.org

**YaleNewHaven**Health
**Northeast Medical Group**

---

**From:** Kotomski, Sophie
**Sent:** Friday, December 4, 2020 10:55 AM
**To:** 'Sari Edelman' <drsariedelman@gmail.com>
**Subject:** Greenwich, CT Rheumatology Position


Hi Dr. Edelman,

It was a pleasure to speak with you yesterday.  I sent you a text along with with an invite to your email for a zoom call with Dr. Lana Bernstein for tomorrow, Saturday, December 5th at 10:00 p.m.  Feel free to reach me by cell with any questions.  Below is the link to the practice/location and I have attached some benefit information.


https://www.northeastmedicalgroup.org/locations/greenwich-15-valley-drive-suite-202-rheumatology.aspx


More information on Benefits:

www.ynhhsbenefitsconnection.org

CONFIDENTIAL

I look forward to your feedback once you've met with Dr. Bernstein.


Best Regards,


**Sophie E. Kotomski**

Physician Recruiter

**Administration**
99 Hawley Lane – 1st FL
Stratford, CT  06614

**Phone:** 203-592-0943
**Email:** Sophie.Kotomski@ynhh.org

YaleNewHaven**Health**
**Northeast Medical Group**


**From:** Sari Edelman [mailto:drsariedelman@gmail.com]
**Sent:** Wednesday, December 2, 2020 10:24 PM
**To:** Kotomski, Sophie <Sophie.Kotomski@YNHH.ORG>
**Subject:** Resume Rheumatology Position


> EXTERNAL EMAIL: **Do NOT click links or open attachments unless you trust
> the sender AND know the content is safe.**


Dear Sophie,


I would like to introduce myself.  My name is Sari Edelman.  I have been practicing rheumatology for
sixteen years, in New York. Presently I am employed by New York University Langone in an outpatient busy
rheumatology practice.  I am looking to relocate and am very interested in the CT Region. My eldest
daughter is a freshman at Yale University.

**CONFIDENTIAL**

I attached my resume to this email.  I look forward to hearing from you.

Regards,

Sari Edelman, D.O.

This message originates from the Yale New Haven Health System. The information contained in this message may be privileged and confidential. If you are the intended recipient you must maintain this message in a secure and confidential manner. If you are not the intended recipient, please notify the sender immediately and destroy this message. Thank you.

CONFIDENTIAL

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Gomez, Max A |
| **Subject:** | RVU Attachments |
| **Attachments:** | EDELMAN, SARI DAWN RVU 2019.pdf |
| | EDELMAN, SARI DAWN RVU 2019-2.pdf |
| | EDELMAN, SARI DAWN [860087](1).pdf |
| | EDELMAN, SARI DAWN RVU 2018-2.pdf |

Please find attachments of RVU for 2018 amd 2019.  Note, as reported in six month increments each year will have to parts from December to May, and then June to November.

Also will send screen shots of some data points could pull off our slicer dicer analysis tool in EMR.  Let me know if you have any questions.

Sari Edelman

CONFIDENTIAL

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Kotomski, Sophie |
| **Subject:** | Re: On Site: Yale New Haven Health \| Northeast Medical Group - Next Steps |
| **Attachments:** | image001.png |

Friday if possible. Anytime.

On Mon, Dec 28, 2020 at 9:44 AM Kotomski, Sophie <Sophie.Kotomski@ynhh.org> wrote:

> Hi,
>
> That is the week of January 25th.  What days and time work best that week?
>
> Sophie
>
>
> **From:** Sari Edelman [mailto:drsariedelman@gmail.com]
> **Sent:** Thursday, December 24, 2020 9:45 PM
> **To:** Kotomski, Sophie <Sophie.Kotomski@YNHH.ORG>
> **Subject:** Re: On Site: Yale New Haven Health \| Northeast Medical Group - Next Steps
>
>
> ---
> **EXTERNAL EMAIL: Do NOT click links or open attachments unless you trust the sender AND know the content is safe.**
> ---
>
>
> How about the following week?
>
>
> On Thu, Dec 24, 2020 at 11:34 AM Kotomski, Sophie <Sophie.Kotomski@ynhh.org> wrote:
>
>> Hi,
>>
>> Unfortunately, the 22nd doesn't work for Drs. Bernstein or McLean.   Can you provide two other dates that would work for you?
>>
>> Best,
>>
>>
>> **Sophie E. Kotomski**
>>
>> Physician Recruiter
>>
>> **Administration**
>> 99 Hawley Lane – 1st FL
>> Stratford, CT  06614

CONFIDENTIAL

**Phone:** 203-502-6537
**Email:** Sophie.Kotomski@ynhh.org

## YaleNewHaven**Health**
**Northeast Medical Group**

**From:** Sari Edelman [mailto:drsariedelman@gmail.com]
**Sent:** Thursday, December 24, 2020 7:20 AM
**To:** Kotomski, Sophie <Sophie.Kotomski@YNHH.ORG>
**Subject:** Re: On Site: Yale New Haven Health | Northeast Medical Group - Next Steps

---

**EXTERNAL EMAIL: Do NOT click links or open attachments unless you trust the sender AND know the content is safe.**

---

Hello

I will be away that week and following. Is 22nd ok?

Dr Edelman

On Tue, Dec 22, 2020 at 4:29 PM Kotomski, Sophie <Sophie.Kotomski@ynhh.org> wrote:

> Hello,
>
> We would like to confirm an onsite visit for **Friday, January 8th at 1:30 p.m.**
>
> Location:
>
> Yale New Haven Health | Northeast Medical Group
>
> Rheumatology
>
> 15 Valley Drive- Suite 202

**CONFIDENTIAL**

Greenwich, CT  06830

Let me know if you have any questions.  I'm hoping you can see Greenwich Hospital
that afternoon also, but I need to check visitor protocols as we get closer to that
date.

Best Regards,

**Sophie E. Kotomski**

Physician Recruiter

**Administration**
99 Hawley Lane – 1st FL
Stratford, CT  06614

**Cell Phone:** 203-592-0943
**Email:** Sophie.Kotomski@ynhh.org

**YaleNewHaven Health**
**Northeast Medical Group**

**From:** Sari Edelman [mailto:drsariedelman@gmail.com]
**Sent:** Saturday, December 19, 2020 11:22 AM
**To:** Kotomski, Sophie <Sophie.Kotomski@YNHH.ORG>
**Subject:** Re: Yale New Haven Health | Northeast Medical Group - Next Steps

EXTERNAL EMAIL: **Do NOT click links or open attachments unless you trust
the sender AND know the content is safe.**

I enjoyed meeting with Dr. Mclean and it was a very informative conversation.  I would like to schedule day
to come to see the office and nearby hospital.  Fridays would work best for me.

Dr. Edelman

**CONFIDENTIAL**

On Fri, Dec 18, 2020 at 10:21 AM Kotomski, Sophie <Sophie.Kotomski@ynhh.org> wrote:

Hello Dr. Edelman,


I hope your meeting with Dr. Rob Mclean was helpful.  We would like to invite you for an onsite visit to see the practice.

Is there a day of week that works best for you?


You will have received an email with instructions for entering references.  Let me know if you have any questions.


Best Regards,


**Sophie E. Kotomski**

Physician Recruiter

**Administration**
99 Hawley Lane – 1st FL
Stratford, CT  06614

**Cell Phone:** 203-592-0943
**Email:** Sophie.Kotomski@ynhh.org

YaleNewHaven**Health**
**Northeast Medical Group**


This message originates from the Yale New Haven Health System. The information contained in this message may be privileged and confidential. If you are the intended recipient you must maintain this message in a secure and confidential manner. If you are not the intended recipient, please notify the sender immediately and destroy this message. Thank you.

CONFIDENTIAL

| From: | Sari Edelman |
|---|---|
| To: | Alena Blosfelds |
| Subject: | Re: Rheumatologist positions in New York |
| Attachments: | image005.png |

Thanks for reaching out.  We are looking to relocate to Florida.  Delray beach, West Palm Beach, clearwater tampa area

On Fri, Dec 4, 2020 at 1:09 PM Alena Blosfelds <ablosfelds@allstarrecruiting.com> wrote:

Dear Dr. Edelman,

I came across your contact and saw your specialty was in **Rheumatology**. Are you actively looking for a permanent placement? I assist in placing physicians in permanent positions and would be glad to help in your job search. Feel free to reach me at 954-606-5164 or email to further discuss.

**Rheumatology need in New York along Hudson river over an hour to NYC**

Job ID#53913

**Job Details**

- BC/BE
- Join a growing practice
- Well-established multi-specialty group
- Competitive salary and benefits package
- The Mid-Hudson Valley region is located just north of New York City, about two-hour driving distance
- International airports within 25 miles

**Rheumatology need in southern New York near Ithaca**

Job ID#53971

**Job Details**

- Board Certified or Board Eligible
- Multi-specialty group
- Hospital Employee, Outpatient only
- No Call
- Loan Forgiveness available
- Signing Bonus available up to $40,000
- Relocation Bonus available
- CME up to 3k available
- 403B
- NextGen in use for EMR with transition to EPIC
- 25 Primary care sites for referrals
- Possible Fellowship stipend up to $1500 a month
- Infusion center

**Rheumatology need between Albany and Syracuse New York**

**CONFIDENTIAL**

Job ID# 54096

**Job Details**

- Board Certified or Board Eligible
- Employed position with Multi-Specialty Group
- Inpatient and outpatient consultation
- Full-spectrum of Rheumatology procedures as well as clinical research opportunities
- Closed Medical Staff, 500+ practitioners
- Comprehensive benefit package, including but not limited to medical, dental, CME, transition allowance
- Paid malpractice insurance

Have a great day!



**ALENA BLOSFELDS**

**CONSULTANT**

**IM SUBS**

**PERMANENT PLACEMENT DIVISION**

**"PROUD MEMBER OF**

**NALTO AND NAPR"**

**DIRECT: 954-606-5164**

**CELL: 561-654-1870**

**MAIN: 800-928-0229 x5164**

**FAX: 888-503-3762**

**EMAIL:**
**ABLOSFELDS@ALLSTARRECRUITING.COM**

  

DISCLAIMER: This message and its contents are confidential. If you received this

message in error, do not use, forward or rely upon it. Instead, please inform

All Star Healthcare Solutions℠ and then delete it. Thank you.

**CONFIDENTIAL**

IMPORTANT NOTICE: Never trust wiring or ACH instructions sent via email. Cyber

criminals are hacking email accounts and sending emails with fake wiring and ACH

instructions. These emails are convincing and sophisticated. Always independently

confirm wiring and ACH instructions in person or via a telephone call to a trusted

and verified phone number. Never wire or ACH money without double-checking

that the instructions are correct.

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Kendra Thompson |
| **Subject:** | Re: review ARA draft agreement |
| **Attachments:** | image006.png |
| | image005.png |
| | image004.png |
| | image003.png |

I just got out. Are you available speak still?

On Mon, Jan 11, 2021 at 4:51 PM Kendra Thompson
<Kendra.Thompson@merritthawkins.com> wrote:

> 512-636-0007
>
>
> **Kendra Thompson**
>
> AMN Leadership Solutions
>
> Merritt Hawkins
>
> *Managing Consultant*
>
>   
>
> Voice: 469.524.1509
>
> SMS: 940.441.2553
>
> Direct Fax: 866.215.1883
>
> LeadershipSoulutions.AMNHealthcare.com
>
> MerrittHawkins.com
>
>
> **Merritt Hawkins**
>
> 8840 Cypress Waters Blvd., #300
>
> Dallas, TX 75019
>
>
> 
>
>
> *As the global healthcare community responds to the COVID-19 pandemic, we want to ensure our candidates that their health and well-being is our top priority. We are partnering with our clients to*

**CONFIDENTIAL**

*provide candidates with alternative interview and travel options, in most situations, including the option to interview virtually via video conference.If you have questions or need additional support from Merritt Hawkins, our team remains ready to serve you.*

---

**From:** Sari Edelman <drsariedelman@gmail.com>
**Sent:** Monday, January 11, 2021 3:40 PM
**To:** Kendra Thompson <Kendra.Thompson@merritthawkins.com>
**Subject:** Re: review ARA draft agreement

**WARNING:** This email came from outside of our trusted email system. **DO NOT CLICK** links or attachments if you find the email suspicious.

Whats the best number i'll call you when I leave the office


thanks


On Mon, Jan 11, 2021 at 4:39 PM Kendra Thompson <Kendra.Thompson@merritthawkins.com> wrote:

> Hi Dr. Edelman – I'll be driving at that time, picking up my kids from preschool. You are welcome call my cell phone when you get free – I won't have the agreement in front of me but I have read through and know the main points. Talk soon!
>
>
> **Kendra Thompson**
>
> AMN Leadership Solutions
>
> Merritt Hawkins
>
> *Managing Consultant*
>
>   
>
> Voice: 469.524.1509
>
> SMS: 940.441.2553
>
> Direct Fax: 866.215.1883
>
> LeadershipSoulutions.AMNHealthcare.com

Plaintiff's Exhibit 88

**P240**

**CONFIDENTIAL**

MerrittHawkins.com


**Merrit Hawkins**

8840 Cypress Waters Blvd., #300

Dallas, TX 75019





*As the global healthcare community responds to the COVID-19 pandemic, we want to ensure our candidates that their health and well-being is our top priority. We are partnering with our clients to provide candidates with alternative interview and travel options, in most situations, including the option to interview virtually via video conference.If you have questions or need additional support from Merritt Hawkins, our team remains ready to serve you.*

---

**From:** Sari Edelman <drsariedelman@gmail.com>
**Sent:** Monday, January 11, 2021 3:25 PM
**To:** Kendra Thompson <Kendra.Thompson@merritthawkins.com>
**Subject:** Re: review ARA draft agreement


**WARNING:** This email came from outside of our trusted email system. **DO NOT CLICK** links or attachments if you find the email suspicious.

Can we move the call to 6pm.  I am

stuck at work with patients


On Fri, Jan 8, 2021 at 4:37 PM Kendra Thompson <Kendra.Thompson@merritthawkins.com> wrote:

> Yes ma'am – thank you. I will take a look at it in more detail in preparation for our call.
>
> At first glance, I am pleased with the salary offered. Looking forward to talking through your questions on some of the smaller details!
>
>
> **Kendra Thompson**

Plaintiff's Exhibit 88

**P241**

**CONFIDENTIAL**

AMN Leadership Solutions

Merritt Hawkins

*Managing Consultant*

  

Voice: 469.524.1509

SMS: 940.441.2553

Direct Fax: 866.215.1883

LeadershipSoulutions.AMNHealthcare.com

MerrittHawkins.com


**Merritt Hawkins**

8840 Cypress Waters Blvd., #300

Dallas, TX 75019





*As the global healthcare community responds to the COVID-19 pandemic, we want to ensure our candidates that their health and well-being is our top priority. We are partnering with our clients to provide candidates with alternative interview and travel options, in most situations, including the option to interview virtually via video conference.If you have questions or need additional support from Merritt Hawkins, our team remains ready to serve you.*

---

**From:** Sari Edelman <drsariedelman@gmail.com>
**Sent:** Friday, January 08, 2021 3:35 PM
**To:** Kendra Thompson <Kendra.Thompson@merritthawkins.com>
**Subject:** Re: review ARA draft agreement


**WARNING:** This email came from outside of our trusted email system. **DO NOT CLICK** links or attachments if you find the email suspicious.

did you recieve the agreement

**CONFIDENTIAL**

On Fri, Jan 8, 2021 at 4:28 PM Kendra Thompson
<[Kendra.Thompson@merritthawkins.com](mailto:Kendra.Thompson@merritthawkins.com)> wrote:

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Sari Edelman |
| **To:** | Austin Ali |
| **Subject:** | Re: REcruitwell: Broward County, Florida, Rheumatology Opening |
| **Attachments:** | image005.png |
| | image002.png |
| | image004.png |
| | image003.png |

Yes please submit my CV

thanks

On Wed, Dec 9, 2020 at 3:26 PM Austin Ali <austin@recruitwell.com> wrote:

> Hi Dr Edelman,
>
> A brand new opportunity became available. Please review and let me know if you are interested.
>
> **Broward County, Florida, Rheumatology Opening**
>
> - **Clinical Role:**
>   - Seeking a board certified or truly board eligible rheumatologist
>   - Client looking to hire ASAP
>   - Work Monday-Friday
>   - Typical clinic hours
>   - Inpatient and outpatient responsibilities
>   - Hospital duties involve rounding on patients
>   - Rotating call of one week a month
>   - 2020 grads welcome!
>   - No visa candidates, unfortunately
> - **Organization Information:**
>   - Live in one of the most desirable areas of the United States
>   - Office is less than one mile from the beach
>   - 15 miles from Fort Lauderdale
>   - Opportunity to work as a 1099 (for the group) or a W2
>   - Full benefits
>   - Malpractice insurance provided
>   - Base salary negotiable – to be discussed between you and the client
>   - Reason for need: adding another doctor due to growth
> - **RecruitWell's Core Values:**
>   - Open communication
>   - Sense of urgency
>   - Teamwork
>   - Accountability
>   - Driven to win

**CONFIDENTIAL**

- Higher consciousness

**Austin Ali**
Physician Recruiter



**RecruitWell**
office: 424-220-1010
mobile: 657-222-1434
email: austin@recruitwell.com

www.recruitwell.com          f  in  🐦  📷

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

*"The perfect fit is out there. We can help you find it."*

**P245**

**CONFIDENTIAL**

From: Sari Edelman
To: Mgomez7@northwell.edu



Sari Edelman, DO
September 5, 2014
Page 3 of 11

CONFIDENTIAL

### Section III - Representations/Warranties

1. **No Employment Limitation:** You represent and warrant to NYU Langone Medical Center that you are not party to any contract or conditions of current employment, such as but not limited to a covenant not to compete with your current employer, which would preclude your accepting employment with NYU Langone Medical Center and performing services described herein as of the Commencement Date referenced in this offer letter.

2. **Non-Solicitation:** You agree that you shall not, directly or indirectly, recruit any employee nor solicit business which knowingly disturbs, or could be expected to disturb, the existing professional or business relationships of NYU Langone Medical Center with any employee, patient, health care provider or referral source while you are in our employ and for two (2) years after leaving our employ. The parties agree that, following the expiration or termination of your employment, the foregoing provision shall **not** prohibit you from obtaining employment or providing services to any hospital, health care entity or medical practice, provided that any such engagement does not require you to violate this provision.

3. **Consulting:** You represent and warrant that prior to the Commencement Date you shall disclose to NYU Langone Medical Center any outside activities that you intend to engage in after the Commencement Date, including consulting and research activities in which you are currently engaged. You may engage in such consulting activities as may from time to time be permitted by the rules and regulations of NYU Langone Medical Center and New York University in effect at the time of signing and modified from time to time. NYU Langone Medical Center's policies concerning conflicts of interest, conflicts of commitment and consulting activities are located on the conflicts management website, which is http://cimu.med.nyu.edu.

**Section IV - Additional Documents:** At any time and from time to time, it is agreed that each party shall, without further consideration and at its own expense, take such further actions and execute and deliver such further instruments as may be reasonably necessary to effectuate the purpose of this agreement.

CONFIDENTIAL



CONFIDENTIAL

Sari Edelman, DO
September 5, 2014
Page 11 of 11

a copy of the records of all patients treated by you prior to your employment with NYU, subject to patient authorization requirements.  In addition, it is agreed that you shall have the right to freely contact and solicit any staff, patients and referral sources maintained by you prior to your employment at NYU. With respect to medical records, all medical, financial and other records relating to patients treated by you during your employment with NYU are the property of NYU, including, but not limited to, patient records, charts, and case histories; provided, however you will be provided copies of such records, subject to patient authorization and applicable law.

b)      **Staff**

As of and following the Commencement Date, it is NYU's intention to offer employment to your current staff, in job titles that align with the NYU salary structure, contingent upon the employee(s) successfully completing the pre-employment process in compliance with Human Resources policies and procedures.

**Waiting Period Waiver**

Pending final approval by the NYU Retirement Committee, one year of your full time service with your previous professional corporation will be used to meet the one year service requirement under the NYU School of Medicine 403(b) plan for purposes of the 403(b) plan's one-year waiting period and vesting schedule in accordance with the plan's provisions.

**Lease/Sublease/Business Loan**

**CONFIDENTIAL**

reimbursement. Any disbursement from an IPA, insurer, MSO, or other like entity shall be deposited in the FGP Account.

f)   **Professional Liability Insurance:** You will be covered by "occurrence based" individual practitioner's professional liability insurance purchased for you with respect to medical care rendered to patients by you as a member/participant of the FGP. Prior to the issuance of this coverage you agree to provide NYU Langone Medical Center information pertaining to your prior professional liability coverage, including documentation pertaining to New York State's excess medical malpractice coverage ("Section 18 Coverage") to the extent applicable. This insurance will provide you with coverage only for medical incidents occurring as a function of FGP activities and taking place at (a) facilities owned or operated by NYUHC, or (b) locations approved, in writing, by your Department Chair or the Vice Dean for Clinical Affairs prior to the relevant activity(ies). The insurance will provide limits of liability equivalent to or greater than the aggregate of (1) the primary limits required by New York State to be eligible for the Section 18 coverage, and (2) the excess limits provided by Section 18 coverage. You agree to provide all information necessary to complete the application(s) for such coverage. The School of Medicine reserves the right to change the scope, amount and nature of insurance provided to you upon notice as provided under New York State law.

g)   **Non-Referral:** Nothing in this agreement is intended to obligate any party to refer patients or business to or between NYU Langone Medical Center and you. Any referral between the parties shall be subject to each individual patient's choice and his or her physician's professional judgment.

VIII.   **Other**

a)   **Non-Solicitation/Records**

The provision of this letter limiting your ability to solicit staff, patients or referral sources (Section 3, Paragraph 2) shall be superseded by this paragraph. In the event your employment with NYU ends for any reason, you shall have the right to



CONFIDENTIAL

Yale
NewHaven
Health

## Summary of Retirement Benefits – 2020
### *This summary applies to eligible NEMG retirees*

In addition to personal savings and Social Security, NEMG offers a comprehensive set of benefits designed to help you enjoy financial security and meet your healthcare needs.  Below is a description of the various retirement benefit plan features:

- **Cash Account Pension Plan** – This is a retirement account set up for you and funded **entirely** by YNHH.  Each year, NEMG adds funds to this account, plus interest, based on your salary and years of service.  As of 1/1/2014, the employer's annual pay credit will be split. *One-half will be contributed to the Cash Account Pension: 2% for 9 years of service or less; 2.5% for 10 to 14 years of service; 3% for 15 to 19 years of service; and 4% for 20 and more years of service.  The annual interest credit on the CAPP portion is based on the 20-year U.S. Treasury note rate. Each year, you will receive a personalized statement which reports your total Cash Account Pension Plan balance through November 30 of the previous year.  Upon retirement, you can decide to take your pension as either a lump sum or a monthly pension.
  **\*Note**: The other one-half of the NEMG annual pay credit will be directed to your 401(a) in the Retirement Savings Plan under your Fidelity Investments account.  You control the investment of this money.

- **Tax Sheltered Annuity (TSA) Plan** – Under this 403(b) Plan, you can save a percentage of your pay, through payroll deduction, up to the annual IRS dollar limit.  For 2020 the federal limit is $19,500, plus an additional $6,500 if you are 50 or over.  Because your contributions are pre-tax, this reduces your federal and state income tax liability. Your contributions to the TSA and the investment earnings are not taxable until you retire and start to receive the money from the account.

- **Retirement Savings Plan** -   Under this 401(a) Plan, NEMG matches a percentage of your TSA savings each pay period up to the first 5% of your contribution.  If you save 5% or more, the NEMG match is 3%.

  Whether or not you participate in the TSA you will receive an annual NEMG Length of Service contribution, if you meet the plans eligibility requirements, to the 401(a) Plan ranging from 1.5% to 4% of your pay based on years of service. You can specify where you want to invest the money in your account from a variety of investment options.

  NEMG contributions to the Retirement Savings Plan and the investment earnings are not taxable until you retire and start to receive the money from the account.

- **Social Security Benefits and Medicare** – These plans are funded by both employee and employer contributions through payroll taxes.  Employers pay half the costs for their employees, who receive all the benefits from Social Security and Medicare when they retire.  The Social Security tax for 2020 is 6.2% up to $137,700, while the Medicare tax is 1.45% with no maximum earnings.  Over age 60, every year, three months before your birthday, Social Security sends you a "Personal Earnings and Benefit Estimate" statement which reports your earnings history and the potential benefits available for you from Social Security.

- **Other Retirement Related Events** – NEMG offers you: Pre-Retirement and Financial Wellness Workshops during the year; on-site, 1-on-1 counseling with a YNHHS-dedicated Fidelity Investments Rep. daily; an annual Financial Fair; an annual Retirement (CAPP) Statement and online benefits information through Employee Self Service or HRConnect at any time.

# SARI D. EDELMAN, D.O.

## EXPERIENCE

### RHEUMATOLOGIST, NYU LANGONE RHEUMATOLOGY; LAKE SUCCESS, NEW YORK – 2014-PRESENT

Full time attending rheumatologist for NYU Langone Faculty Group Practice.  Provide outpatient ambulatory care services and hospital consultations.  Oversee patient care for on site infusion services.  Attend and present at monthly educational seminars with rheumatology team at Lake Success.  Attend seminars and conferences at NYU Langone Hospital, Manhattan.

### RHEUMATOLOGIST, RHEUMATOLOGY ASSOCIATES OF NEW YORK; LAKE SUCCESS, NEW YORK – 2008-2014

Established and operated private rheumatology practice providing  outpatient and inpatient hospital consultations.  Additional services included on site infusion suite, bone densitometry, sonography.   As owner/director attended to all business aspects of rheumatology practice including employee hiring, training, billing, regulatory practices and ancillary patient services (educational seminars).

## EDUCATION

### WINTHROP UNIVERSITY HOSPITAL, MINEOLA, NEW YORK
### JULY, 2006- JUNE, 2008

- Rheumatology Fellowship
- Board Certified Rheumatology, 2008
- Board Recertification Rheumatology, 2018

### WINTHROP UNIVERSITY HOSPITAL, MINEOLA, NEW YORK
### JULY, 2003- JUNE, 2006

- Internal Medicine Residency
- Board Certified Internal Medicine, 2006
- Board Recertification Internal Medicine, 2016

### NEW YORK COLLEGE OF OSTEOPATHIC MEDICINE, OLD WESTBURY, NEW YORK
### AUGUST, 1999- JUNE, 2003

- Doctor of Osteopathic Medicine
- Honors, Dean's List

NEW YORK UNIVERSITY, NEW YORK, NEW YORK

AUGUST,1997- JUNE, 1998

- Post Baccaluareate Premedical Education
- Honors

BINGHAMTON UNIVERSITY, BINGHAMTON, NEW YORK

AUGUST, 1993-DECEMBER, 1996

- BA Mathematic/Actuarial Science
- BA English/Creative Writing
- Magna Cum Laude

---

## PUBLICATIONS

Atheroprotective effects of methotrexate on reverse cholesterol transport proteins and foam cell transformation in human THP-1 monocyte/ macrophages. Reiss AB, Carsons SE, Anwar K, Rao S, Edelman SD, Zhnag H, Fernandez P, Cronstein BN, Chan ES. Arthritis Rheum. 2008 Dec;58(12);3675-83.

Effect of cyclooxyrgenase inhibition on cholesterol efflux proteins and atheromatous foam cell transformation in THP-1 human macrophages: a possible mechanism of increased cardiovascular risk. Chan ES, Zhang H, Fernandez P, Edelman SD, Pillinger MH, Ragolia L, Palaia T, Carsons S, Reiss AB. Arthritis Res Ther. 2007;9(1):R4.

Recent insights into the role of prostanoids in atherosclerotic vascular disease. Reiss AB, Edelman SD.  Curr Vasc Pharmacol. 2006 Oct;4(4):395-408. Review.

---

References furnished upon request

Phone: (516)551-5837  ·  Email: drsariedelman@gmail.com

Plaintiff's Exhibit 88

# SARI D. EDELMAN, D.O.

## EXPERIENCE

### RHEUMATOLOGIST, NYU LANGONE RHEUMATOLOGY; LAKE SUCCESS, NEW YORK – 2014-PRESENT

Full time attending rheumatologist for NYU Langone Faculty Group Practice.  Provide outpatient ambulatory care services and hospital consultations.  Oversee patient care for on site infusion services.  Attend and present at monthly educational seminars with rheumatology team at Lake Success.  Attend seminars and conferences at NYU Langone Hospital, Manhattan.

### RHEUMATOLOGIST, RHEUMATOLOGY ASSOCIATES OF NEW YORK; LAKE SUCCESS, NEW YORK – 2008-2014

Established and operated private rheumatology practice providing  outpatient and inpatient hospital consultations.  Additional services included on site infusion suite, bone densitometry, sonography.   As owner/director attended to all business aspects of rheumatology practice including employee hiring, training, billing, regulatory practices and ancillary patient services (educational seminars).

## EDUCATION

### WINTHROP UNIVERSITY HOSPITAL, MINEOLA, NEW YORK
### JULY, 2006- JUNE, 2008

- Rheumatology Fellowship
- Board Certified Rheumatology, 2008
- Board Recertification Rheumatology, 2018

### WINTHROP UNIVERSITY HOSPITAL, MINEOLA, NEW YORK
### JULY, 2003- JUNE, 2006

- Internal Medicine Residency
- Board Certified Internal Medicine, 2006
- Board Recertification Internal Medicine, 2016

### NEW YORK COLLEGE OF OSTEOPATHIC MEDICINE, OLD WESTBURY, NEW YORK
### AUGUST, 1999- JUNE, 2003

- Doctor of Osteopathic Medicine
- Honors, Dean's List

Plaintiff's Exhibit 88

NEW YORK UNIVERSITY, NEW YORK, NEW YORK

AUGUST,1997- JUNE, 1998

- Post Baccaluareate Premedical Education
- Honors

BINGHAMTON UNIVERSITY, BINGHAMTON, NEW YORK

AUGUST, 1993-DECEMBER, 1996

- BA Mathematic/Actuarial Science
- BA English/Creative Writing
- Magna Cum Laude

---

## PUBLICATIONS

Atheroprotective effects of methotrexate on reverse cholesterol transport proteins and foam cell transformation in human THP-1 monocyte/ macrophages. Reiss AB, Carsons SE, Anwar K, Rao S, Edelman SD, Zhnag H, Fernandez P, Cronstein BN, Chan ES. Arthritis Rheum. 2008 Dec;58(12);3675-83.

Effect of cyclooxyrgenase inhibition on cholesterol efflux proteins and atheromatous foam cell transformation in THP-1 human macrophages: a possible mechanism of increased cardiovascular risk. Chan ES, Zhang H, Fernandez P, Edelman SD, Pillinger MH, Ragolia L, Palaia T, Carsons S, Reiss AB. Arthritis Res Ther. 2007;9(1):R4.

Recent insights into the role of prostanoids in atherosclerotic vascular disease. Reiss AB, Edelman SD.  Curr Vasc Pharmacol. 2006 Oct;4(4):395-408. Review.

---

References furnished upon request

Phone: (516)551-5837  ·  Email: drsariedelman@gmail.com

Plaintiff's Exhibit 88

<div align="center">CONFIDENTIAL</div>



## AUTHORIZATION / MUTUAL CONFIDENTIALITY AGREEMENT

     **AUTHORIZATION/MUTUAL CONFIDENTIALITY AGREEMENT** (this "Agreement"), made as of this 4th day of December, ("Effective Date"), by and between Northwell Health, Inc. **("Northwell")**, having offices at 600 Community Drive, Manhasset, New York 11030 and **Sari D. Edelman, D.O. ("DO"),** having offices at 1999 Marcus Avenue, Lake Success, New York 11042, hereinafter collectively referred to each as a "Party" and together as the "Parties."

<div align="center">W I T N E S S E T H:</div>

     **WHEREAS,** Northwell and DO have commenced discussions regarding a possible relationship between them (in any instance, a "Relationship"); and

     **WHEREAS,** in order to facilitate meaningful discussions regarding a potential Relationship, each Party may have provided prior to the date hereof, and will in the future provide, to the other Party certain confidential information relating to that Party, including, but not limited to, facilities, operating methods, operations, trade secrets, intellectual property, personnel, patient referral sources, business plans, case management methods and protocols, quality improvement and risk management processes, other policies, protocols, and manuals, financial condition, financial statements, financial projections, budgets, historical and projected revenues, tax returns, capital spending budgets and plans, and other financial information, contractual arrangements, term sheets, and all other information that has been or may hereafter be disclosed by a Party or its Representatives (hereafter defined) to the other Party or its Representatives, (in each case, whether such information is provided in oral or printed form or stored in digital or analog form, whether on electronic or magnetic media, or pictures thereof stored on film, and regardless of the manner or form in which it is furnished) and including all notes, analyses, compilations, studies, summaries or other documents prepared by the other Party or its Representatives containing or based, in whole or in part, upon any information included in the foregoing ("Evaluation Material"); and

     **WHEREAS,** the disclosure of Evaluation Material to third parties could result in substantial loss or damage to the Party to whom such Evaluation Material relates, and accordingly, each Party desires to ensure the confidentiality of the Evaluation Material;

     **NOW, THEREFORE,** in consideration of the foregoing and the mutual covenants and agreements contained in this Agreement, the Parties agree as follows:

     1.     This Agreement shall commence as of the Effective Date and shall have a term of two (2) years unless the Parties mutually agree to extend the term; provided, however, the terms

Plaintiff's Exhibit 88

and provisions of Sections 2, 3, 4, and 6 shall have a term of three (3) years unless the parties mutually agree to extend the term. If the Parties have not entered into a permanent relationship upon the expiration of this Agreement, in the event the Parties have exchanged any information deemed confidential in this Agreement each such Party shall either return the information or destroy it.

2.      DO authorizes Northwell to receive Evaluation Material in accordance with the terms set forth herein. All Evaluation Material previously or in the future furnished by any Party to the other Party, as well as the existence of the discussions between the Parties, shall be deemed confidential and shall be kept in strict confidence under appropriate safeguards. However, the term Evaluation Material does not include or apply to any information which: (a) as shown by written records, was lawfully in a Party's possession prior to any disclosure by such Party, provided that the source of such information was not prohibited from transmitting the information to such Party or its Representatives (as hereinafter defined) by a contractual, legal, fiduciary or other obligation known to such Party; or (b) is generally available to the public or within the industry other than as a result of disclosure by such Party, or its employees, agents, Representatives or others acting on its behalf.

3.      Without the relevant Party's prior written consent, the other Party and its Representatives (as hereinafter defined) shall not, directly or indirectly, unless required by law: (a) disclose, reveal or provide copies of any Evaluation Material to any person, firm or entity except to a limited group of such Party's directors, officers, employees, attorneys and professional advisors who are actively and directly participating in the evaluation of a potential Relationship (collectively, "Representatives"), each of whom shall be informed of the confidential nature of the Evaluation Material, be provided with a copy of this Agreement, and agree to observe the same terms and conditions set forth in this Agreement as if specifically named a party hereto; (b) use the Evaluation Material for any purpose other than in connection with the evaluation and/or consummation of a potential Relationship (and, without limitation of the foregoing, it is expressly acknowledged that no license is hereby granted in or under any trade secrets or intellectual property of any Party); or  (c) disclose to any person or entity (other than Representatives) the terms, conditions or other facts with respect to any Relationship (including the existence and status thereof) or that Evaluation Material has been made available. In any event, each Party shall be responsible for any disclosure by its Representatives (other than pursuant to the terms and subject to the conditions of this Agreement) of the Evaluation Material or the existence, content or status of negotiations relating to a Relationship, and will take such action as is necessary to prevent any unauthorized disclosure thereof by any of its Representatives.

4.      If any Party or its Representative (collectively, "Recipient Party") becomes legally compelled to disclose any of the Evaluation Material it received from the other Party ("Disclosing Party"), the Recipient Party shall provide the Disclosing Party with prompt notice so that the Disclosing Party, at its option, may seek a protective order or other appropriate remedy.

5.      Each Party hereby acknowledges that the Evaluation Material constitutes valuable property of the other Party. Upon written notice from either Party at any time prior to completion of the subject Relationship: (a) each Party shall deliver promptly to that Party, in whatever form, all of the other Party's Evaluation Material and all other materials containing or reflecting any

65636 v.2

2

**CONFIDENTIAL**

information contained in such Evaluation Material without retaining any copies, summaries, analyses or extracts thereof; and (b) all documents, memoranda, analyses, compilations, studies, notes and other writings prepared by such Party based on or containing any information contained in the other Party's Evaluation Material shall be destroyed, and if requested, such destruction shall be certified in writing to the other Party by an authorized officer supervising such destruction.

6.     Each Party acknowledges and agrees that in the event of any breach of this Agreement by it or its Representatives, and without prejudice to any other rights and remedies otherwise available to the other Party (including, without limitation, the right to recover any lost profits or other damages arising from any such breach), the other Party shall be entitled, without posting a bond or other security, to:  (a) equitable relief by way of injunction; and (b) compel specific performance without the need to prove actual damages.  No failure or delay by any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise hereunder.  In the event of any dispute under this Agreement, the prevailing Party shall be entitled to recover its court costs and reasonable expenses (including reasonable attorneys' fees) incurred in connection therewith.

7.     Each Party understands and agrees that this Agreement does not oblige the Parties to agree to terms for any specific relationship, and that no contract or agreement shall be deemed to exist with any Relationship unless and until an agreement respecting such Relationship has been executed and delivered, and each Party hereby waives any claims (including, without limitation, breach of contract) in connection with a possible Relationship with the other Party unless and until the Parties shall have entered into a Relationship agreement.  Each Party also agrees that unless and until an agreement respecting a Relationship has been executed and delivered, no Party has any legal obligation of any kind whatsoever with respect to any such Relationship by virtue of this Agreement or any other written or oral expression with respect to such Relationship except, in the case of this Agreement, for the matters specifically agreed to herein.

8.     Each Party agrees to comply with any security protocols, guidelines or standards as promulgated by applicable law or regulation including but not limited to the Health Insurance Portability and Accountability Act of 1996, as amended, and its supporting regulations ("HIPAA"), and the Health Information Technology for Economic and Clinical Health Act ("HITECH"), New York General Business Law Sections 399-dd and 899-aa or other similar government regulation.  Each party shall maintain written security management policies and procedures to prevent, detect, contain, and correct violations of measures taken to protect the confidentiality, integrity, availability, or security of the Evaluation Material.  Such policies and procedures shall (i) assign specific data security responsibilities and accountabilities to specific individual(s); (ii) include a formal risk management program which includes periodic risk assessments; and (iii) provide an adequate framework of controls that safeguard the Evaluation Material.

9.     Each Party agrees to maintain industry standard procedures to protect the Evaluation Material, including, at a minimum: (1) Formal security programs (policies, standards, processes, etc.); (2) Processes for becoming aware of, and maintaining, security patches and fixes; (3) Router filters, firewalls, and other mechanisms to restrict access to the systems, including

3

65636 v.2

**CONFIDENTIAL**

without limitation, all local site networks which may be accessed via the Internet (whether or not such sites transmit information); (4)  Resources used for mobile access to applicable systems shall be protected against attack and penetration through the use of firewalls; and (5) Processes to prevent, detect, and eradicate malicious code (e.g., viruses, etc.) and to notify the other party of instances of malicious code detected on applicable systems or affecting any Evaluation Material.

10.    This Agreement shall be binding upon and shall inure to the benefit of and be enforceable by each Party and its successors and assigns, provided that any assignment hereof by any Party may only be made upon the prior written consent of the other Party.

11.    The provisions of this Agreement are intended to be interpreted and construed in a manner so as to make such provisions valid, binding and enforceable.  In the event that any provision of this Agreement is determined to be partially or wholly invalid, illegal or unenforceable, then such provision shall be deemed to be modified or restricted to the extent necessary to make such provision valid, binding and enforceable, or, if such provision cannot be modified or restricted in a manner so as to make such provision valid, binding and enforceable, then such provision shall be deemed to be excised from this Agreement and the validity, binding effect and enforceability of the remaining provisions of this Agreement shall not be affected or impaired in any manner.  The recitals of this Agreement are hereby incorporated by reference as if fully set forth herein.

12.    This Agreement constitutes the complete agreement, and supersedes any and all prior agreements, arrangements and understandings, oral or written, among the Parties concerning the subject matter of this Agreement. This Agreement may be waived, amended or modified only by an agreement in writing signed by the Party against which such waiver, amendment or modification is sought to be enforced.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

13.    This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for any purpose whatsoever.

4

65636 v.2

Plaintiff's Exhibit 88

**CONFIDENTIAL**

14.     Each Party agrees that without the consent and knowledge of the other Party it will not publicly disclose or announce the possible relationship being discussed, or the fact that discussions are taking place, and neither Party is authorized to use the name of the other Party or any of its respective affiliates without the consent of the Party whose name is used.


**Northwell Health, Inc.**                       **Sari D. Edelman, D.O.**
**600 Community Drive**                         **1999 Marcus Avenue**
**Manhasset, New York 11030**              **Lake Success, New York 11042**


By:_____        By:_____
     **Deborah Schiff**                                   **Sari D. Edelman, D.O.**
     **Executive Vice President**
     **Ambulatory Strategy**
     **& Business Development**

5

65636 v.2

Plaintiff's Exhibit 88

**P258**

CONFIDENTIAL



## AMBULATORY SERVICES

***Disclosures:***

Please have each physician in the group answer each question below and sign the form. If your answer to any questions below is "yes," please provide a detailed explanation on a separate sheet.

**YES**     **NO**

☐     ☐     Have you ever been charged with, or found guilty of, professional misconduct as defined in the Education Law of the State of New York, or unprofessional conduct as defined by the Board of Regents?

☐     ☐     Have you ever been sanctioned by the OIG, DOH or other governing agency?

☐     ☐     Are any family members of the group's physicians employed or contracted by the practice?

☐     ☐     Are you currently involved with or receiving any royalties, copyrights, investments/dividends, etc. as related to the clinical practice of medicine?

☐     ☐     Have you ever been engaged in any material disputes with vendors, suppliers, etc and does any pending litigation exist?

☐     ☐     Does any pending litigation with you or the practice exist (other than open malpractice cases)?

☐     ☐     Do you have ownership stake in your practice site(s)?

☐     ☐     Do you have any agreements with outside entities? If yes, please provide agreements.

☐     ☐     Do you rent or sublease your space to any outside entities? If yes, please provide agreements.

Name: _____

Signature: _____  Date: _____

**CONFIDENTIAL**



## Data Request -  Sari D. Edelman, D.O.

| Business Plan | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|
| **Financials** | | | | |
| Collection summary (units & payments & charges) by CPT code by provider and location (including modifiers) <br> *__*If possible, please provide in Excel format__* | ☐ | ☐ | ☐ | ☐ |
| Payer Mix (units & payments & charges) by insurance carrier <br> *__*If possible, please provide in Excel format__* | ☐ | ☐ | ☐ | ☐ |
| **Operations** | | | | |
| CVs for physicians | | | | ☐ |
| Restrictive Covenant Information (if applicable) | | | | ☐ |
| **General Information** | 2017 | 2018 | 2019 | 2020 |
| **Risk Management** | | | | |
| Declaration page (face sheet) - from all insurance carriers within the last 15 years | | | | ☐ |
| Claims History Report (must be generated by current and previous insurance carriers) | | | | ☐ |

CONFIDENTIAL



## AUTHORIZATION / MUTUAL CONFIDENTIALITY AGREEMENT

**AUTHORIZATION/MUTUAL CONFIDENTIALITY AGREEMENT** (this "Agreement"), made as of this 16th day of December, ("Effective Date"), by and between Northwell Health, Inc. **("Northwell")**, having offices at 600 Community Drive, Manhasset, New York 11030 and **Sari D. Edelman, D.O. ("DO"),** having offices at 1999 Marcus Avenue, Lake Success, New York 11042, hereinafter collectively referred to each as a "Party" and together as the "Parties."

## W I T N E S S E T H:

**WHEREAS**, Northwell and DO have commenced discussions regarding a possible relationship between them (in any instance, a "Relationship"); and

**WHEREAS**, in order to facilitate meaningful discussions regarding a potential Relationship, each Party may have provided prior to the date hereof, and will in the future provide, to the other Party certain confidential information relating to that Party, including, but not limited to, facilities, operating methods, operations, trade secrets, intellectual property, personnel, patient referral sources, business plans, case management methods and protocols, quality improvement and risk management processes, other policies, protocols, and manuals, financial condition, financial statements, financial projections, budgets, historical and projected revenues, tax returns, capital spending budgets and plans, and other financial information, contractual arrangements, term sheets, and all other information that has been or may hereafter be disclosed by a Party or its Representatives (hereafter defined) to the other Party or its Representatives, (in each case, whether such information is provided in oral or printed form or stored in digital or analog form, whether on electronic or magnetic media, or pictures thereof stored on film, and regardless of the manner or form in which it is furnished) and including all notes, analyses, compilations, studies, summaries or other documents prepared by the other Party or its Representatives containing or based, in whole or in part, upon any information included in the foregoing ("Evaluation Material"); and

**WHEREAS**, the disclosure of Evaluation Material to third parties could result in substantial loss or damage to the Party to whom such Evaluation Material relates, and accordingly, each Party desires to ensure the confidentiality of the Evaluation Material;

**NOW, THEREFORE**, in consideration of the foregoing and the mutual covenants and agreements contained in this Agreement, the Parties agree as follows:

**CONFIDENTIAL**

1.      This Agreement shall commence as of the Effective Date and shall have a term of two (2) years unless the Parties mutually agree to extend the term; provided, however, the terms and provisions of Sections 2, 3, 4, and 6 shall have a term of three (3) years unless the parties mutually agree to extend the term.  If the Parties have not entered into a permanent relationship upon the expiration of this Agreement, in the event the Parties have exchanged any information deemed confidential in this Agreement each such Party shall either return the information or destroy it.

2.      DO authorizes Northwell to receive Evaluation Material in accordance with the terms set forth herein.  All Evaluation Material previously or in the future furnished by any Party to the other Party, as well as the existence of the discussions between the Parties, shall be deemed confidential and shall be kept in strict confidence under appropriate safeguards.  However, the term Evaluation Material does not include or apply to any information which:  (a) as shown by written records, was lawfully in a Party's possession prior to any disclosure by such Party, provided that the source of such information was not prohibited from transmitting the information to such Party or its Representatives (as hereinafter defined) by a contractual, legal, fiduciary or other obligation known to such Party; or (b) is generally available to the public or within the industry other than as a result of disclosure by such Party, or its employees, agents, Representatives or others acting on its behalf.

3.      Without the relevant Party's prior written consent, the other Party and its Representatives (as hereinafter defined) shall not, directly or indirectly, unless required by law: (a) disclose, reveal or provide copies of any Evaluation Material to any person, firm or entity except to a limited group of such Party's directors, officers, employees, attorneys and professional advisors who are actively and directly participating in the evaluation of a potential Relationship (collectively, "Representatives"), each of whom shall be informed of the confidential nature of the Evaluation Material, be provided with a copy of this Agreement, and agree to observe the same terms and conditions set forth in this Agreement as if specifically named a party hereto; (b) use the Evaluation Material for any purpose other than in connection with the evaluation and/or consummation of a potential Relationship (and, without limitation of the foregoing, it is expressly acknowledged that no license is hereby granted in or under any trade secrets or intellectual property of any Party); or  (c) disclose to any person or entity (other than Representatives) the terms, conditions or other facts with respect to any Relationship (including the existence and status thereof) or that Evaluation Material has been made available.  In any event, each Party shall be responsible for any disclosure by its Representatives (other than pursuant to the terms and subject to the conditions of this Agreement) of the Evaluation Material or the existence, content or status of negotiations relating to a Relationship, and will take such action as is necessary to prevent any unauthorized disclosure thereof by any of its Representatives.

4.      If any Party or its Representative (collectively, "Recipient Party") becomes legally compelled to disclose any of the Evaluation Material it received from the other Party ("Disclosing Party"), the Recipient Party shall provide the Disclosing Party with prompt notice so that the Disclosing Party, at its option, may seek a protective order or other appropriate remedy.

5.      Each Party hereby acknowledges that the Evaluation Material constitutes valuable property of the other Party.  Upon written notice from either Party at any time prior to completion

2

Plaintiff's Exhibit 88

**CONFIDENTIAL**

of the subject Relationship: (a) each Party shall deliver promptly to that Party, in whatever form, all of the other Party's Evaluation Material and all other materials containing or reflecting any information contained in such Evaluation Material without retaining any copies, summaries, analyses or extracts thereof; and (b) all documents, memoranda, analyses, compilations, studies, notes and other writings prepared by such Party based on or containing any information contained in the other Party's Evaluation Material shall be destroyed, and if requested, such destruction shall be certified in writing to the other Party by an authorized officer supervising such destruction.

6.      Each Party acknowledges and agrees that in the event of any breach of this Agreement by it or its Representatives, and without prejudice to any other rights and remedies otherwise available to the other Party (including, without limitation, the right to recover any lost profits or other damages arising from any such breach), the other Party shall be entitled, without posting a bond or other security, to: (a) equitable relief by way of injunction; and (b) compel specific performance without the need to prove actual damages. No failure or delay by any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise hereunder. In the event of any dispute under this Agreement, the prevailing Party shall be entitled to recover its court costs and reasonable expenses (including reasonable attorneys' fees) incurred in connection therewith.

7.      Each Party understands and agrees that this Agreement does not oblige the Parties to agree to terms for any specific relationship, and that no contract or agreement shall be deemed to exist with respect to any Relationship unless and until an agreement respecting such Relationship has been executed and delivered, and each Party hereby waives any claims (including, without limitation, breach of contract) in connection with a possible Relationship with the other Party unless and until the Parties shall have entered into a Relationship agreement. Each Party also agrees that unless and until an agreement respecting a Relationship has been executed and delivered, no Party has any legal obligation of any kind whatsoever with respect to any such Relationship by virtue of this Agreement or any other written or oral expression with respect to such Relationship except, in the case of this Agreement, for the matters specifically agreed to herein.

8.      Each Party agrees to comply with any security protocols, guidelines or standards as promulgated by applicable law or regulation including but not limited to the Health Insurance Portability and Accountability Act of 1996, as amended, and its supporting regulations ("HIPAA"), and the Health Information Technology for Economic and Clinical Health Act ("HITECH"), New York General Business Law Sections 399-dd and 899-aa or other similar government regulation. Each party shall maintain written security management policies and procedures to prevent, detect, contain, and correct violations of measures taken to protect the confidentiality, integrity, availability, or security of the Evaluation Material. Such policies and procedures shall (i) assign specific data security responsibilities and accountabilities to specific individual(s); (ii) include a formal risk management program which includes periodic risk assessments; and (iii) provide an adequate framework of controls that safeguard the Evaluation Material.

9.      Each Party agrees to maintain industry standard procedures to protect the Evaluation Material, including, at a minimum: (1) Formal security programs (policies, standards,

3

65636 v.2

Plaintiff's Exhibit 88

CONFIDENTIAL

processes, etc.); (2) Processes for becoming aware of, and maintaining, security patches and fixes; (3) Router filters, firewalls, and other mechanisms to restrict access to the systems, including without limitation, all local site networks which may be accessed via the Internet (whether or not such sites transmit information); (4)  Resources used for mobile access to applicable systems shall be protected against attack and penetration through the use of firewalls; and (5) Processes to prevent, detect, and eradicate malicious code (e.g., viruses, etc.) and to notify the other party of instances of malicious code detected on applicable systems or affecting any Evaluation Material.

10.    This Agreement shall be binding upon and shall inure to the benefit of and be enforceable by each Party and its successors and assigns, provided that any assignment hereof by any Party may only be made upon the prior written consent of the other Party.

11.    The provisions of this Agreement are intended to be interpreted and construed in a manner so as to make such provisions valid, binding and enforceable.  In the event that any provision of this Agreement is determined to be partially or wholly invalid, illegal or unenforceable, then such provision shall be deemed to be modified or restricted to the extent necessary to make such provision valid, binding and enforceable, or, if such provision cannot be modified or restricted in a manner so as to make such provision valid, binding and enforceable, then such provision shall be deemed to be excised from this Agreement and the validity, binding effect and enforceability of the remaining provisions of this Agreement shall not be affected or impaired in any manner.  The recitals of this Agreement are hereby incorporated by reference as if fully set forth herein.

12.    This Agreement constitutes the complete agreement, and supersedes any and all prior agreements, arrangements and understandings, oral or written, among the Parties concerning the subject matter of this Agreement. This Agreement may be waived, amended or modified only by an agreement in writing signed by the Party against which such waiver, amendment or modification is sought to be enforced.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

13.    This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for any purpose whatsoever.

65636 v.2

Plaintiff's Exhibit 88

**P264**

CONFIDENTIAL

14.     Each Party agrees that without the consent and knowledge of the other Party it will not publicly disclose or announce the possible relationship being discussed, or the fact that discussions are taking place, and neither Party is authorized to use the name of the other Party or any of its respective affiliates without the consent of the Party whose name is used.


**Northwell Health, Inc.**          **Sari D. Edelman, D.O.**
**600 Community Drive**              **1999 Marcus Avenue**
**Manhasset, New York 11030**       **Lake Success, New York 11042**




By:_____        By:_____
     **Deborah Schiff**                      **Sari D. Edelman, D.O.**
     **Executive Vice President**
     **Ambulatory Strategy**
     **& Business Development**

5

Plaintiff's Exhibit 88

**CONFIDENTIAL**



## AMBULATORY SERVICES

*Disclosures:*

Please have each physician in the group answer each question below and sign the form. If your answer to any questions below is "yes," please provide a detailed explanation on a separate sheet.

| YES | NO | |
|-----|-----|-----|
| ☐ | ☒ | Have you ever been charged with, or found guilty of, professional misconduct as defined in the Education Law of the State of New York, or unprofessional conduct as defined by the Board of Regents? |
| ☐ | ☒ | Have you ever been sanctioned by the OIG, DOH or other governing agency? |
| ☐ | ☒ | Are any family members of the group's physicians employed or contracted by the practice? |
| ☐ | ☒ | Are you currently involved with or receiving any royalties, copyrights, investments/dividends, etc. as related to the clinical practice of medicine? |
| ☐ | ☒ | Have you ever been engaged in any material disputes with vendors, suppliers, etc and does any pending litigation exist? |
| ☐ | ☒ | Does any pending litigation with you or the practice exist (other than open malpractice cases)? |
| ☐ | ☒ | Do you have ownership stake in your practice site(s)? |
| ☐ | ☒ | Do you have any agreements with outside entities? If yes, please provide agreements. |
| ☐ | ☒ | Do you rent or sublease your space to any outside entities? If yes, please provide agreements. |

Name:   Sari Edelman D.O.

Signature:   _[signature]_   Date: 12/20/20

**P266**

CONFIDENTIAL



**Corporate Risk Management**
**Physician Information**

---

## Section I: Physician's General Information

**To Be Filled Out by a Northwell Ambulatory Services Representative**

**A: Full Name of Physician**

| First | Middle | Last | Male | Female |
|-------|--------|------|------|--------|
| Sari | Dawn | Edelman | | x |

☐ M.D.        ☒ D.O.        ☐ D.D.S.        ☐ Other: _____

**B: Practice Information**

1. Specialty: __Rheumatology__

2. Licensure Date: __January 31, 2022__

3. Are You Part of a Practice?  YES ☒  NO ☐
   i. If **Yes**: __New York University FGP__          __January 1, 2014__
      Practice Name                                    Date of Practice Commencement

4. Names of other physicians within the practice: _____

---

## Section II: Medical Malpractice Information

**Filled out by Physicians: Please provide all Medical Malpractice/Professional Liability Information to date**

**A: Current Carrier Information**

1. Who is your current Primary Malpractice Insurance Carrier? __Hospitals Insurance Company, INC__

2. Is your Malpractice Policy (circle one): **Full-Time** or **Part-Time**

3. What type of coverage do you have?     ☒ **Occurrence**

   ☐ **Claims-Made**  -  Retroactive Date _____
                         (Represents the beginning of the coverage with this carrier- may be found on
                         your policy declaration page)

4. Policy Start Date __7/1/16__          Policy Expiration Date __7/1/21__

5. How many years have you been with this carrier? (Ex: 1993-present) __2016__ to __present__

6. **Please Provide:**  ☐ A claims history report dated no longer than 4 months from submission date
                        *NOTE: If you cannot provide a claims history sheet please refer to **Part C** for self reporting history*

                        ☐ Policy's declaration page

7. Do you have Excess Insurance?    i. ☐ Yes    ii. ☒ No

   If Yes:  Name of Carrier: _____

            Coverage Dates: _____ to _____

            **Please Provide:** Policy declaration page

7. Have you ever been covered by another Primary Malpractice Carrier aside from the one listed above?
   i. ☒ Yes (Refer to **Part B** on next page)    ii. ☐ No (Skip Part B)

**B: Previous Carrier Information:**   If you have had multiple previous carriers please fill out all applicable sections

---

*Previous Carrier #1:*

    1. Who was your previous Malpractice Insurance Carrier? ___PRI_____

    2. What type of coverage did you have?     [X] **Occurrence**

                                             [ ] **Claims-Made**  -  Retroactive Date _____
                                                         *(Represents the beginning of the coverage with this carrier- may be found on your policy declaration page)*

    3. Policy Start Date ___July 2007_____    Policy Expiration Date ___July 2014_____

    4. How many years were you with this carrier? (Ex: 8 Years: 1985-1993) __7_____

    5. **Please Provide**: [ ] A claims history report dated no longer than 4 months from submission date
                           *NOTE: If you cannot provide a claims history sheet please refer to Part C for self reporting history*

---

*Previous Carrier #2:*

    1. Who was your previous Malpractice Insurance Carrier? _____

    2. What type of coverage did you have?     [ ] **Occurrence**

                                             [ ] **Claims-Made**  -  Retroactive Date _____
                                                         *(Represents the beginning of the coverage with this carrier- may be found on your policy declaration page)*

    3. Policy Start Date _____    Policy Expiration Date_____

    4. How many years were you with this carrier? (Ex: 8 Years: 1985-1993) _____

    5. **Please Provide:** [ ] A claims history report dated no longer than 4 months from submission date
                           *NOTE: If you cannot provide a claims history sheet please refer to Part C for self reporting history*

---

*Previous Carrier #3:*

    1. Who was your previous Malpractice Insurance Carrier? _____

    2. What type of coverage did you have?     [ ] **Occurrence**

                                             [ ] **Claims-Made**  -  Retroactive Date _____
                                                         *(Represents the beginning of the coverage with this carrier- may be found on your policy declaration page)*

    3. Policy Start Date _____    Policy Expiration Date_____

    4. How many years were you with this carrier? (Ex: 8 Years: 1985-1993) _____

    5. **Please Provide:** [ ] A claims history report dated no longer than 4 months from submission date
                           *NOTE: If you cannot provide a claims history sheet please refer to Part C for self reporting history*

---

*Previous Carrier #4:*

    1. Who was your previous Malpractice Insurance Carrier? _____

    2. What type of coverage did you have?     [ ] **Occurrence**

                                             [ ] **Claims-Made**  -  Retroactive Date _____
                                                         *(Represents the beginning of the coverage with this carrier- may be found on your policy declaration page)*

    3. Policy Start Date _____    Policy Expiration Date_____

    4. How many years were you with this carrier? (Ex: 8 Years: 1985-1993) _____

    5. **Please Provide:** [ ] A claims history report dated no longer than 4 months from submission date
                           *NOTE: If you cannot provide a claims history sheet please refer to Part C for self reporting history*

Plaintiff's Exhibit 88

<div align="center">CONFIDENTIAL</div>

**<u>C. Self Reporting Information:</u> Please detail all history where you have been named.**

**1. Claimant:** _____

  **Loss Date:** _____    **Date Reported to Carrier:**_____

  **Allegation (please include a brief narrative):** _____

  _____

  _____

  _____

  **Status:** _____

  **Indemnity paid on behalf of physician: $**_____

**2. Claimant:** _____

  **Loss Date:** _____    **Date Reported to Carrier:**_____

  **Allegation (please include a brief narrative):** _____

  _____

  _____

  _____

  **Status:** _____

  **Indemnity paid on behalf of physician: $**_____

**3. Claimant:** _____

  **Loss Date:** _____    **Date Reported to Carrier:**_____

  **Allegation (please include a brief narrative):** _____

  _____

  _____

  _____

  **Status:** _____

  **Indemnity paid on behalf of physician: $**_____

**4. Claimant:** _____

  **Loss Date:** _____    **Date Reported to Carrier:**_____

  **Allegation (please include a brief narrative):** _____

  _____

  _____

  _____

  **Status:** _____

  **Indemnity paid on behalf of physician: $**_____

Plaintiff's Exhibit 88

CONFIDENTIAL



**Corporate Risk Management**
**Physician Information**

| Section III: Physician Signature |
|---|

_____                    12/20/20
**Physician Signature**                             _____
                                                    **Date**


   Sari Edelman D.O.                                12/20/20
_____                    _____
**Physician Printed Name**                          **Date**

CONFIDENTIAL

Yale
NewHaven
**Health**

# Employee Benefits Summary 2021

## Northeast Medical Group Physicians

Plaintiff's Exhibit 88

**P271**

CONFIDENTIAL

# Employees receive a comprehensive benefits package. The following is a summary of the various employee benefits and other programs offered.

## Benefit Plans

Employees who are scheduled to work 24 hours or more per week become eligible for health care (medical, prescription drug, vision & dental) coverage immediately upon hire. A listing of bi-weekly premium costs for medical, dental and vision coverage is available on HRConnect at www.ynhhs.org/hrconnect or on the benefit enrollment site at www.ynhhsbenefits.com.

**Medical Plan**
– The YNHHS Medical Plan has three tiers and provides significant savings when Signature Tier providers are used.
– Signature Tier – flat copays, no deductible or coinsurance. Providers include all YNHHS hospitals/facilities and Trinity Health of New England (CT only) and Woman & Infants (OB/Peds). PCPs from Northeast Medical Group (NEMG), Community Medical Group (CMG), Yale Medicine (YM), WestMed (CT only), SOHO Health (Trinity Health of New England – CT only). Specialists from NEMG, CMG, YM, SOHO Health and medical staff at a YNHHS hospital.
– Tier 2 – Anthem PPO Providers – Anthem Blue Cross/Blue Shield of CT "Century Preferred" network of providers. Copays for office visits, and deductible and coinsurance for all other services.
– Tier 3 – Out-of-Network

**For more information, visit: www.ynhhsbenefitsconnection.org for details on our medical, prescription drug, dental and vision plans.**

**Prescription Drug Plan:** Employees and dependents covered under either medical plan are covered by our Prescription Drug Plan administered by CVS Caremark. The employee's charge for a 30 day supply of a covered prescription is $10 copay* for a generic drug, 20% coinsurance ($35 min*/$80 max) for a brand name drug on the formulary list and 40% coinsurance ($55 min*/$120 max) for brand name drug not on the formulary list. There is also a "Maintenance Choice Program" for maintenance medications which allows members to save money and get up to a 90 day supply through the CVS Caremark Mail Service Program or at any CVS pharmacy. Members will pay $20 copay* for a generic drug, 20% coinsurance ($70 min*/$150 max) for a brand name drug on the formulary list and 40% coinsurance ($110 min*/$230 max) for brand name drug not

**P272**

## CONFIDENTIAL

on the formulary list. High cost specialty medications can be filled at the YNHHS Outpatient Pharmacy for a $20 copay.

\*Minimum Copay – If the actual cost of a drug is less than the minimum copay, the member will pay the lower amount.

### Dental Plan

- Delta Dental Plus Plan covers 100% of preventive and 80% of restorative services, 50% of major services, 50% orthodontic services after a $50 (single), $100 (family) annual deductible. Maximum calendar year benefit $1,700 per person; orthodontic lifetime maximum $1,700 per person; TMJ lifetime maximum $1,700 per person.
- Delta Dental Basic Plan covers 100% of preventive and 80% of restorative services after a $50 (single), $100 (family) annual deductible. Maximum calendar year benefit $1,000 per person.

**Vision Service Plan (VSP):** Eligible employees have the option to elect vision coverage through VSP which covers 1 eye exam (every 12 months) for $15 copay, lenses (every 12 months) for $15 copay and frames (every 24 months) or contacts (every 12 months) up to a $155 allowance. Going to an in-network provider will provide the highest level of coverage plus extra discounts.  Employees also have the option to select an enhanced Vision benefit providing up to $250 coverage on select vision services.

*Living***well CARES**

This confidential, free program provides face-to-face coaching, telephone and e-visit check-ins to support employees and their family members who are living with them, with a chronic health condition and would like help managing this condition. You may qualify for a copay reduction for certain medications and supplies related to your condition while in the *living***wellCARES** program. Specially trained registered nurses partner with you and collaborate with your physician to support the individual plan of care he or she has developed for you. This may include screenings and tests, managing medications, assistance in scheduling appointments, along with supporting and motivating employees and family members to set and achieve their own personal wellness goals.

**In addition:** If you don't have a chronic condition but want to improve a health/lifestyle habit or reduce a health risk factor, such as losing weight or getting more physical activity, specially trained health coaches are available to help you set goals, track your progress and make referrals to more expert help, if needed.

**Employee Life Insurance:** Employees scheduled to work 24 hours or more per week are enrolled for Basic Life insurance coverage equal to 1x

# CONFIDENTIAL

their annual salary. Employees have the option of purchasing additional Supplemental Life insurance up to 5x their annual base salary.

**Dependent Life Insurance:** Employees can elect life insurance to cover their spouse and/or child. Spouse for $15,000; children for $5,000 each. Employee is the beneficiary.

**Flexible Spending Accounts (FSA):** Each year employees eligible for benefits may elect to have a portion of their salary deducted on a before-tax basis to pay for out- of-pocket health care and/or dependent day care expenses. Such FSA contributions reduce the amount of gross income subject to Social Security and income taxes. The maximum annual contribution is $2,750 for the Health Care FSA and $5,000 for the Dependent Care FSA.

## Approved Time Off

Approved Time Off will be in accordance with policy and/or employment agreement in effect during the fiscal year.

## Retirement Security program

NEMG provides two retirement plans to you - the Cash Account Pension Plan and Matching TSA/RSP which allow you to plan for your retirement while you are still working.

- **Cash Account Pension Plan:** The Cash Account Pension Plan (CAPP) is set up for you and funded entirely by NEMG. Each year, if you meet the eligibility requirements,  NEMG makes an annual contribution ranging from 1.5% to 4% of your annual pay based on years of service.

- **Tax Sheltered Annuity (TSA) Plan-403(b):** NEMG matches a percentage of your savings each pay period up to the first 5% of your contribution. You can specify where you want to invest the money in your account from a variety of Fidelity Investment options.   New benefits eligible employees will automatically be enrolled in the 403(b) Plan for a 2% contribution after 60 days of employment. Employees can increase or decrease their contribution at any time.

  - **Retirement Savings Plan (RSP)-401(a):**

    - **Employer Matching Contributions -** If you save 5% or more, the NEMG match will be 3%.

    - **Employer Length of Service (LOS) Contribution -** Each year, NEMG adds funds to this account if you meet the eligibility requirements, based on your annual salary and years of service.  NEMG contributes from 1.5% to 4% of your annual pay based on years of service. This contribution is made annually into your 401(a) account with Fidelity.

Plaintiff's Exhibit 88

**CONFIDENTIAL**

## Salary Continuation plans

**Short-Term Disability Plan:** Full- or part-time (scheduled to work at least 24 hours per week) managers are automatically covered by Short-Term Disability (STD) immediately upon hire. The STD Plan provides, after a two-week waiting period, a bi-weekly payment of 60% of base salary for the period of disability not to exceed 24 weeks within a 52-week period. NEMG provides this benefit at no cost to the physician.  Payment during the two-week waiting period may vary based upon the terms of the physician agreement and specific compensation models.

**Long-Term Disability Plan:** Full-time physicians (scheduled to work at least 36 hours per week) are automatically covered by the Long-Term Disability (LTD) Plan immediately upon hire.  The LTD Plan provides a monthly benefit of 60% of base salary (up to $300,000) following a 6-month qualification period.  LTD coverage is provided at no cost to the physician.

## Additional programs

**Tuition Reimbursement Program:** Full-time and part-time employees who are scheduled to work 24 hours or more per week are eligible to apply for tuition reimbursement for classes starting on or after their hire date.

- Full-Time Employees: Can be reimbursed up to $5,200 per calendar year.
- Part-Time Employees: Can be reimbursed up to $3,500 per calendar year.

**Adoption Assistance Program:** Employees who are scheduled to work 24 hours or more per week are eligible to receive reimbursement for adoption-related expenses up to $8,000 maximum benefit per child. Reimbursable expenses include legal, court and agency fees, foreign adoption charges, maternity expenses not covered for the birth mother, transportation expenses for bringing the child from a foreign country to the United States as well as transportation expenses for visiting the child.

**Employee & Family Resources Program:** This program combines traditional employee assistance program services, e.g., confidential counseling, with work/life services, for all employees and their dependents. There are no copays for up to six office visits.

**Bright Horizons Programs**

**SUPPORT FOR CHILDREN WHO NEED EXTRA HELP**

Does your child have difficulty focusing in school? Is she lagging behind developmentally or is he struggling with social skills? You can advocate for and support your child from birth through young adulthood with free, expert guidance on his or her

**P275**

Plaintiff's Exhibit 88

## CONFIDENTIAL

unique situation from *Bright Horizons Special Needs™*.

### COLLEGE COACH

The *Bright Horizons College Coach™* program provides access to a team of college admissions and finance experts who can help you maximize your child's academic success and plan for college costs.  Included in the program are webinars and one-on-one guidance on college admissions and financial aid, expert advice on college essays and online resources and tools targeted to your student's academic level.

**Financial Benefits Program:** Employees are offered a wide range of voluntary financial services programs such as:

- Voluntary Benefits Program: Receive discounts for Group Critical Illness insurance, Auto/Home, Pet Insurance, Identity Theft Protection, Group Legal and Hospital Indemnity Insurance through convenient payroll deductions.
- Student Loan Counseling and Refinancing program available to employees, spouses and dependents.
- Phone discounts:  AT&T, Verizon and Sprint

_____

For additional information about employee benefits, contact:
HRConnect at 844-543-21HR or through the employee self-help portal:
www.ynhhs.org/hrconnect.

**For details on the medical, prescription drug, dental and/or vision plans, visit:**
**www.ynhhsbenefitsconnection.org.**

Disclaimer:  This brochure is intended only to provide a brief summary of our Benefits Program.  More detailed descriptions of these plans can be found in the plan documents that legally govern the plans.

**(10/20)**

Plaintiff's Exhibit 88

**CONFIDENTIAL**

ARTHRITIS AND RHEUMATISM ASSOCIATES, PL

(DRAFT) EMPLOYMENT AGREEMENT

THIS AGREEMENT is made this day     2021, by and between ARTHRITIS & RHEUMATISM ASSOCIATES, PL., hereinafter referred to as EMPLOYER, and Sari Edelman DO hereinafter referred to as EMPLOYEE.

WITNESSETH:

WHEREAS: EMPLOYER requires the leadership and expertise of trained and skilled physicians to provide medical services to meet the health care needs of the residents of its community and service area; and,

WHEREAS, EMPLOYEE has applied to the Florida Board Of Osteopathic iMedicine to become s duly licensed to practice medicine in the State of Florida and will apply for and once received maintain hospital privileges at the same hospitals as the partners of Employer  and upon procurement of the Florida license  desires to provide medical care and services in EMPLOYEE'S specialty of Rheumatology and,

> **Commented [GE1]:** To be confirmed

WHEREAS, EMPLOYER and EMPLOYEE desire to enter into this Agreement on the terms and conditions set forth herein,

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties do understand and agree as follows:

1. COMMENCEMENT OF WORK: The Employer hires and employs Employee, and EMPLOYEE will commence work for EMPLOYER the later of date of the issuance of Florida medical license to Employee and confirmation that Employee is covered under the Employer's Malpractice Insurance or oTBD          2021n or before.          , or as otherwise agreed between the parties. This Agreement shall continue for a total period of two (2) years or until terminated pursuant hereto.

The rights, responsibilities, and duties of the parties to this Agreement, and the covenants and agreements contained in this Agreement, shall continue to bind the parties, shall continue in full force and effect until each and every obligation of the parties pursuant to this Agreement (and any document or agreement incorporated herein by reference) shall have been fully performed, and shall be binding upon the Employer's successors and  assigns of the parties.

> **Commented [GE2]:** EE is a single physician whose obligations etc. cannot be assigned  etc.

2. COMMITMENT OF EFFORT: EMPLOYEE accepts employment with EMPLOYER on the terms and conditions herein set forth and agrees during the period of employment, to devote full business time and attention to the rendition of professional medical and surgical services on behalf of EMPLOYER and to the furtherance of the best interests of EMPLOYER. EMPLOYEE, in the rendition of such professional medical and surgical services and in all aspects of this employment, agrees to comply with such reasonable policies, and regulations of EMPLOYER as are from time-to-time established by the Executive Committee of the EMPLOYER (and uniformly applied to all professional employees of EMPLOYER), the standards of medical practice then prevailing in Pinellas County, Florida, and will carry out Employee's

1

**CONFIDENTIAL**

~~any~~ duties as a physician to the best of the professional ability of EMPLOYEE.  EMPLOYEE agrees to carry out any duties that EMPLOYER may give EMPLOYEE, provided that such duties are <u>consistent with Employee's standing as a physician specializing in Rheumatology and</u> not in conflict with applicable standards of medical practice in Pinellas County, Florida.  This does not preclude the EMPLOYEE from participating in any non-substantial (not requiring any major time commitments) business endeavors.

3. EXTENT OF SERVICES: During the period of employment by EMPLOYER, EMPLOYEE shall not undertake any professional medical and surgical business except for the benefit of EMPLOYER, unless EMPLOYER shall consent thereto.

4. INDEMNITY: As a material inducement to EMPLOYER'S initial and continuing employment of EMPLOYEE, EMPLOYEE hereby agrees to indemnify and hold EMPLOYER harmless from any loss, costs, settlements, judgments, damages, or other expenses, including reasonable attorneys 'fees, <u>actually</u> incurred by EMPLOYER <u>and not covered and/or reimbursed by third parties</u> as a result of a claim or claims (causes of actions, disputes, or the like) against EMPLOYER by any third party arising out of EMPLOYEE'S acts or omissions in performing services <u>which are outside the scope of the services to be performed</u> on behalf of EMPLOYER <u>and not covered</u> ~~except to the extent this provision would negate~~ by EMPLOYEE's malpractice insurance coverage <u>(whether carried by Employer for Employee or otherwise)</u>. This covenant shall survive the termination of this Agreement.  EMPLOYER hereby agrees to indemnify and hold EMPLOYEE harmless from any loss, costs, settlements, judgments, damages, or other expenses, including reasonable attorneys 'fees, incurred by EMPLOYEE as a result of a dispute between EMPLOYER and any third parties, or EMPLOYEE and any third parties, arising out of the acts or omissions of other employees or agents of EMPLOYER <u>and the acts and/o omissions of Employee while performing services on behalf of Employer</u>.  <u>This covenant shall survive the termination of this Agreement.</u> These covenants shall be construed as an agreement independent of any other provision of this agreement, and the existence of any claims or cause of action by one party against the other whether predicated upon this agreement or otherwise, shall not constitute a defense to the enforcement of these covenants.

5. "On CALL": EMPLOYEE agrees to generally share equally with other physician employees of EMPLOYER after-hour call responsibility. EMPLOYEE will also share hospital call service in respect of other physician employees of EMPLOYER and those in EMPLOYER's "call group". Inequity in equal call may exist because of differing lengths of vacation and continuing medical education leave involving all of the physicians in the call group, <u>but Employer shall take reasonable steps to avoid any such inequities when scheduling the ON-Call services amongst all of Employer's physicians.</u>

6. EMPLOYER OWNERSHIP: The EMPLOYEE/EMPLOYER relationship between EMPLOYER and EMPLOYEE in this Agreement is an exchange of professional effort by EMPLOYEE on behalf of EMPLOYER of the following stated salary and bonus; therefore, all fees collected and that are receivable for any medically related services rendered by the employee are the property of the EMPLOYER.

7. MEDICAL AND FINANCIAL RECORDS: All medical and financial records pertaining to patients treated by EMPLOYEE within the scope of EMPLOYEE'S employment including, but not limited to, charts, x-rays, medical reports, fees, billings, and payment of fees, and all personnel records pertaining to

2

CONFIDENTIAL

compensation and expenses of EMPLOYEE within the scope of EMPLOYEE'S employment, shall at all times be the property of EMPLOYER, EMPLOYER being the records owner thereof as defined in Florida Statute 456.057. Notwithstanding the foregoing, Employer shall make those records available to Employee, subject to federal and Florida regulations governing medical records, for litigation or pre litigation claims or proceedings and/or regulatory and/or licensing matters ("Proceedings") that accrued while Employee was employed by Employer, whether or not such Proceedings are pending following the expiration of the term of this Agreement.

8. COLLECTION ASSISTANCE: EMPLOYEE will provide thorough documentation regarding the medical services EMPLOYEE has provided in an expedient manor so that fees can be collected efficiently. EMPLOYEE will also provide in an expedient manner any additional documentation requested by patient's insurance company or EMPLOYER.

In connection with the productivity compensation due the EMPLOYEE hereunder, the EMPLOYEE shall assist the EMPLOYER in collecting its billings in all reasonable ways (typical of a physician); however, the primary responsibility for the collection of such billings shall be that of the EMPLOYER. Notwithstanding the preceding sentence, the EMPLOYER shall not be liable to the EMPLOYEE for any compensation under this Agreement to the extent that the billings for the EMPLOYEE'S services are declared uncollectible by EMPLOYER after its reasonable and diligent efforts to collect the same. It shall be the EMPLOYER'S sole determination as to what collection procedures should be followed, including the referral of delinquent billings to collection agencies and attorneys; and the EMPLOYER shall have the sole discretion in determining when such bills are uncollectible and determining when collection efforts should be terminated.

9. PATIENT RECORDS: All physical patient records shall remain on the premises and in the possession of EMPLOYER (subject to Employee's right to access the digital files off premises when office is closed). All medical records are the property of EMPLOYER. Should any patient desire to have their records transferred to any doctor, the patient shall notify in writing specifically stating to whom and where their records are to be sent. EMPLOYER will comply promptly with that written request. EMPLOYER will transfer to EMPLOYEE an adequate number of patient records to assist EMPLOYEE in securing board certification.

10. PATIENTS: EMPLOYER shall have the authority to determine who will be accepted as patients of EMPLOYER. To the extent possible, EMPLOYER shall have the authority to designate, or, to establish a procedure for designating, which employee shall be required to perform services for EMPLOYER. An authorized officer of EMPLOYER shall meet with EMPLOYEE from time to time with respect to the establishment of schedules for the performance of services to patients of the EMPLOYER. EMPLOYEE shall have completed all approved medical educational programs in respect of EMPLOYEE'S services hereby contracted.

11. PROFESSIONAL PROCEDURES: EMPLOYER reserves the right to determine policies and procedures involving office operations and patient care, but those policies and procedures must be equal to or exceed accepted standards of medical care.

3

P279

CONFIDENTIAL

12. FEES: Unless determined by a proper governmental agency, or, any other third party whose determination shall be binding upon EMPLOYER, EMPLOYER (which may be in conjunction with any hospital with which EMPLOYER is associated) shall have exclusive authority to determine the fees, or, a procedure for establishing the fees, to be charged patients of EMPLOYER, and all sums paid by any patient of EMPLOYER in the way of fees, compensation or otherwise for services rendered by EMPLOYEE shall be and remain the property of EMPLOYER and shall be included in EMPLOYER'S income.

13. ASSIGNMENTS: EMPLOYEE may neither assign nor delegate any of EMPLOYERS'S rights or obligations in this Agreement without first obtaining the written consent of EMPLOYER

14. COMPENSATION: EMPLOYER will compensate EMPLOYEE for EMPLOYEE's professional rheumatology services a first year's salary of THREE HUNDRED THOUSAND DOLLARS ($300,000). The second year salary will be THREE HUNDRED TWENTY-FIVE THOUSAND DOLLARS (325,000).  The salary will be paid twice monthly with appropriate federal withholding taxes deducted.  The employee will be provided, upon acceptance and signing of the contract moving expense allowance in the amount of $25,000.00 (TWENTY-FIVE THOUSAND DOLLARS).  In the event the employee does not complete the first year of employment this allowance shall be repaid in full.

15. BONUS: EMPLOYEE will receive incentive compensation in an amount equal to TWENTY PERCENT (20%) of EMPLOYEE'S GROSS COLLECTIONS in excess of the base salary for the first completed year of employment, and then TWENTY-FIVE (25%) for the ensuing completed years of employment covered by this contract multiplied by a factor of 2.0 per fiscal year of this Agreement starting with EMPLOYEE'S commencement of work measured for the next ensuing twelve months and annually thereafter. No bonus shall be paid for partial years of employment.

> **Formatted:** Highlight

Such bonus shall be paid annually within sixty (60) days after the close of the fiscal year of this Employment Agreement starting with date of commencement   For purposes of this Agreement, the term "Employee's Gross Collection 'shall mean, with respect to any particular period, the total amount of fee revenues which are received and collected by the EMPLOYER during such period and which are directly attributable to billings for the professional services rendered by the EMPLOYEE.  For example, if the gross collections were $700,000: (700,000-(300,000 x 2) = $100,000 x 20% = $20,000.

> **Commented [GE3]:** Is Employer's fiscal year a calendar year ?

EMPLOYER shall provide EMPLOYEE with monthly billing and collection reports within fifteen days of the expiration of the applicable month.

16. VACATION; PAID TIME OFF: EMPLOYEE shall have the right to vacation time or paid time off during which EMPLOYEE shall not be required to provide medical services or coverage on behalf of EMPLOYER.  Such total days of vacation time/paid time off shall be TWENTY (20) [Twenty -Five (25)] work weekdays during each year of employment (In addition to Federal and State Holidays -i.e. New Year's Day).

In addition to the above, the EMPLOYEE shall be entitled to sick leave, the same as all other employees (see employee handbook).

4

CONFIDENTIAL

In addition to the above, the EMPLOYEE shall be entitled to three (3) non-cumulative (see below) compensated days for continuing education leave per fiscal year of this Agreement. Such paid time off includes typical week work days.  All paid time off shall be non-cumulative, being used within the fiscal year applicable, or otherwise deemed abandoned at the expiration of each fiscal year. All paid time off shall require pre-approval by EMPLOYER upon reasonable notice.

17. LIMITATIONS ON AUTHORITY: Unless EMPLOYER shall have given its consent, under no circumstances shall EMPLOYEE have apparent or implied authority to:

a. Pledge the credit of EMPLOYER or any of its employees.

b. Bind EMPLOYER under any contract, agreement, note, mortgage or otherwise.

c. Release or discharge any debt due EMPLOYER unless EMPLOYER has received the full amount thereof.

 d. Sell, mortgage, transfer or otherwise dispose of any assets of EMPLOYER.

18 EXPENSES: EMPLOYER will pay for EMPLOYEE in addition to EMPLOYEE'S "ordinary practice expenses" the following: Malpractice insurance will be provided in a minimum amount of or greater than two hundred fifty thousand dollars ($250,000.00) per occurrence and seven hundred fifty thousand dollars ($750,000.00) in the aggregate and with a "tail" policy endorsement insuring Employee for claims asserted following the termination of this Agreement for maters that accrued during the term of this Agreement. Malpractice insurance will be provided in such amounts and in such limits, deductibles and other provisions as the EMPLOYER in its sole discretion shall determine; provided that such malpractice insurance covering Employee shall, to the extent available, be in such amount and in such limits and deductibles as the malpractice insurance, which that the EMPLOYER maintains for its other physician employee(s).

Major medical insurance covering EMPLOYEE is provided by EMPLOYER and will be the same as all other employees of the practice. Additional medical coverage for EMPLOYEE's spouse and EMPLOYEE's children should they exist will be at EMPLOYEE'S expense. EMPLOYEE may opt out of EMPLOYER's plan and in lieu of participating in such plan, EMPLOYER shall pay to EMPLOYEE the premiums that EMPLOYER would have paid for EMPLOYEE's enrollment had EMPLOYEE participated in the benefit plan.

EMPLOYER will pay continuing Medical Education Leave of three (3) days. Expenses for EMPLOYEE to attend continuing medical education are a cost to the EMPLOYEE.

Premiums for the above malpractice insurance coverage paid by EMPLOYER are to be at a normal insurable premium rate. Should the premium charged to cover EMPLOYEE be above the normal insurable premium rates, EMPLOYEE will pay the difference between EMPLOYER'S premium rate and the normal premium rate. EMPLOYEE will be enrolled in all applicable insurance programs upon commencement of work by EMPLOYEE although the probationary period of insurance(s) may not have lapsed.

**Formatted:** Highlight

**Commented [GE4]:** This needs to be determined now as Employee cant be in a position where she is required to pay something that is not commensurate with her salary

**Formatted:** Highlight

5

**CONFIDENTIAL**

19. AUTOMOBILE INSURANCE: EMPLOYEE will provide EMPLOYER verification at EMPLOYER'S request that EMPLOYEE maintains a minimum automobile liability insurance coverage of $1 00,000/$3 00,000 on any vehicle in which EMPLOYEE may use in transit to perform duties for EMPLOYER. Automobile expense is an expense to the EMPLOYEE.

20. RETIREMENT PROGRAM: EMPLOYEE will be entitled to participate in any retirement program offered by EMPLOYER according to that program's regulations.

21. OWNERSHIP PROPOSAL: EMPLOYER, during the second year of employment will in good faith enter in to discussions with to offer to EMPLOYEE and offer EMPLOYEE the opportunity to become a stockholder in EMPLOYER holding an initial 11% percent ownership/equity interest in EMPLOYER for a price and under terms and conditions as satisfactory to EMPLOYER and EMPLOYEE, but nevertheless with the purchase price for all such interests being paid from EMPLOYEE's stockholder distributions (with the right to acquire an additional 11% in EMPLOYER in employment year four and an additional 11 % of EMPLOYER in employment year 5 for a total  33% equity stockholder interest in EMPLOYER). The offer will be based on multiple factors including but not limited to past and present production, business development initiative, business acumen and potential benefits to the EMPLOYER the EMPLOYEE brings based on her past business behaviors. Employer shall grant Employee or Employee's representatives with access to EMPLOYER's books and records in connection with these negotiations.

On the date the EMPLOYEE becomes a stockholder in EMPLOYER the accounts receivable of EMPLOYER will be determined. Those accounts receivable will be credited to the stockholders who were the stockholders prior to EMPLOYEE becoming a stockholder. Those accounts receivable will not be considered as an asset for EMPLOYEE'S stock purchase price.

Goodwill may be considered an asset of EMPLOYER in respect of EMPLOYEE's stock purchase price.

22. TERMINATION WITHOUT CAUSE: Either party of this Agreement may elect to terminate this Agreement without cause by notifying the other party in writing of such termination with not less than a sixty (60) days 'notice. Compensation will be the normal monthly-prorated income and benefits to the termination date. EMPLOYER shall have the right, in whole and in part, to accelerate date of termination and would then be responsible for paying the compensation and benefits outstanding days accelerated.

23. TERMINATION FOR CAUSE: Anything contained in this entire Agreement to the contrary notwithstanding, if EMPLOYEE for any reason ceases to be an active member of the medical profession in good standing and duly licensed or otherwise is no longer legally authorized within the State of Florida to render the same professional service as EMPLOYER, then, in any such event, all employment and relationship of EMPLOYEE with EMPLOYER shall automatically and immediately stand completely severed and terminated.

The following circumstances will be events that are considered additional grounds for termination for cause at the discretion of EMPLOYER:

6

**P282**

**CONFIDENTIAL**

a. In the event EMPLOYEE shall fail or refuse to comply with the policies, standards and regulations of EMPLOYER, established from time-to-time by EMPLOYER, provided that such policies, standards and regulations are not in conflict herewith and uniformly adopted for all physicians of Employer to abide by; or

b. In the event EMPLOYEE shall fail or refuse to faithfully or diligently perform the provisions of this Agreement or the usual and customary duties of EMPLOYEE's employment; or

c. In the event that demonstrative evidence exists to the satisfaction of EMPLOYER acting reasonably in respect of EMPLOYEE having committed a fraud, being dishonest, or any other act of misconduct in the rendering of professional medical services on behalf of EMPLOYER, or any evidence exists to the satisfaction of EMPLOYER acting reasonably of criminal acts which if resulted in a convicted would be a felony under any applicable law; or

d. In the event of a bona fide determination by EMPLOYER to sell or reduce to cash substantially all of the assets of EMPLOYER, or to distribute EMPLOYER'S assets in liquidation, to discontinue the practice of medicine by EMPLOYER, provided the termination of Employee is likewise applicable to all other similarly situated physicians of Employer; or

e. In the event EMPLOYER after diligent efforts cannot obtain at standard insurance rates medical malpractice insurance coverage for EMPLOYEE to protect EMPLOYER'S interest with the malpractice insurer then insuring the other physician employees of EMPLOYER and Employee does not elect to pay the differential for her premium as contemplated in Section 18 above, resulting in the ability to procure and maintain malpractice insurance; or

f. In the event EMPLOYEE fails to obtain and/or maintain staff privileges or fails to maintain staff privileges in good standing in the Employee's service area at substantially all the hospitals where the other physicians of EMPLOYER in the same service area maintain staff privileges.

g. In the event EMPLOYEE makes an assignment for the benefit of creditors.

EMPLOYER shall give at least ten (10) days notice of a violation of the provision of subparagraphs a and b immediately above. During such period EMPLOYEE may cure such violations, except in instances where, in the sole but reasonable discretion of EMPLOYER, the failure or refusal, if continued by EMPLOYEE, has threatens to affect adversely and materially affected the business of EMPLOYER or the health or safety of the patients of EMPLOYER.

No prior notice shall otherwise be provided in regard of subparagraphs c, d, e, f, and g immediately set out above respecting EMPLOYER'S termination of EMPLOYEE; provided however that in the case of termination under clause (c ) Employee shall be entitled the information upon which such grounds for termination are based and provided an opportunity to contest such grounds .

24. POST TERMINATION OBLIGATIONS:

7

**CONFIDENTIAL**

a. Return of Property: The EMPLOYEE agrees that all property, including, without limitation, all equipment owned by Employer, tangible confidential information, documents books, records, reports, notes, contracts, lists, computer disks (and other computer-generated files and data), and copies thereof, created on any medium and furnished to, obtained by, or prepared by the EMPLOYEE in the course of or incident to his employment, belongs to the EMPLOYERE or an and shall be returned promptly to the EMPLOYER upon termination of the Employment period.

b. Cooperation with EMPLOYER AND EMPLOYEE : Following any termination of the employment. The EMPLOYEE and Employer shall fully cooperate with the other EMPLOYER in all matters relating to the winding up of pending work and pending patient matters on behalf of the EMPLOYER and the orderly transfer of work and patient matters to other employees of the EMPLOYER. The EMPLOYEE and EMPLOYER shall also cooperate in the defense of any action brought againstby in either party against the EMPLOYER that relates in any way to the EMPLOYEE'S acts or omissions (actual or alleged) while employed by the EMPLOYER.

c. Cessation of Payments Upon Certain Breaches: Notwithstanding any other provision hereof, and without limiting any other rights or remedies of the EMPLOYER, if the EMPLOYEE breaches in any material respects any provision hereof which is not cured within 10 days after written notice to the EMPLOYEE, that all of the EMPLOYER'S obligations under this Agreement shall automatically cease; and, without limiting the generality of the foregoing, from and after the occurrence of any such breach, the EMPLOYEE shall have no right to receive from the EMPLOYER any salary, incentive compensation, benefits or other amounts whatsoever.

25. DEATH AND DISABILITY: Unless otherwise addressed, the following terms and conditions shall govern the event of the EMPLOYEE'S death or disability:

a. If EMPLOYEE dies during the period of active employment, EMPLOYER shall pay to the estate of EMPLOYEE the compensation that would otherwise be payable to EMPLOYEE up to the end of the month in which EMPLOYEE'S death occurs.

b. If EMPLOYEE is unable to perform EMPLOYEE'S services for a period of not more than fourteen (14) days by reason of illness or incapacity, EMPLOYEE'S compensation shall be continued during such period. Thereafter, the base salary component of Employee's compensation otherwise payable to EMPLOYEE during a continuing period of illness or incapacity shall be terminated . Unless this Agreement is otherwise terminated, EMPLOYEE'S full compensation shall be reinstated upon EMPLOYEE'S return to employment and the discharge of EMPLOYEE'S full duties hereunder. Any periods of absence from work, which are not separated by a return to full-time work for at least three (3) consecutive months, shall be considered one period of disability.

> **Formatted:** Highlight

26. TAIL COVERAGE: Subject to Section 18 above, Sshould EMPLOYEE cease to be employed by EMPLOYER, EMPLOYEE agrees to carry a "tail" malpractice insurance policy at EMPLOYEE's expense should a "tail" insurance liability occur. Upon the termination of this Agreement, if EMPLOYEE shall not be continuing as an employee of EMPLOYER, to the extent EMPLOYER'S malpractice coverage existing as of the date of termination of this Agreement does not provide continuing professional liability insurance

> **Commented [GE5]:** To reviewed by Employee

8

**CONFIDENTIAL**

for EMPLOYER and EMPLOYEE relating to claims made following the termination of EMPLOYEE'S employment hereunder for EMPLOYEE'S acts or omissions occurring during the period of employment of EMPLOYEE (so called "Tail Coverage") in an amount at least equal to the amount of coverage then required of all physicians then practicing medicine in a similar specialty as employees of EMPLOYER, EMPLOYEE shall obtain such continuing coverage for the benefit of EMPLOYER and EMPLOYEE. If EMPLOYER'S policy contains Tail Coverage which is less than the amount of coverage provided to EMPLOYEE pursuant to this paragraph prior to termination of employment, then EMPLOYEE shall obtain a policy supplementing EMPLOYER'S policy or pay a supplemental premium to the insurance carrier of EMPLOYER so that the amount of such Tail Coverage will equal the amount of coverage provided to EMPLOYEE pursuant to this paragraph prior to termination of employment. Such insurance shall be in an amount of coverage equal to difference between the coverage provided under EMPLOYER'S existing policy for both of EMPLOYER and EMPLOYEE, if any, and the total amount of coverage then required of all physicians the practicing medicine in a similar specialty as employees of EMPLOYER.

27. CONTINUED INSURANCE COVERAGE AFTER TERMINATION:
 EMPLOYEE will be able to retain after termination insurability under any insurance coverages extended by EMPLOYER under COBRA or otherwise  if the policy so allows; however, EMPLOYEE will be responsible for any premiums after termination.

28. RESTRICTIVE COVENANTS: Applies to the following:

a. Non-Competition. Except as set out herein below, EMPLOYEE agrees that during the period that EMPLOYEE is an Employee and for the one two (12) years immediately following the date of termination of EMPLOYEE as an employee, by the Employer for "cause" or by the Employee  whether such termination by Employee shall be voluntary or involuntary or with or without cause, but excluding termination for Good Reason, and excluding termination by the Employer without cause (and this covenant shall not be in effect during periods of a national or regional emergency where governmental entities solicit physician's services),  EMPLOYEE will not, within ten (10) miles from any office of EMPLOYER routinely used by EMPLOYEE in the practice of medicine within the twelve (12) month period prior to the date of termination (i) engage in a business or professional practice competitive with that of EMPLOYER's specialty, or (ii) directly or indirectly become a proprietor, partner, trustee, beneficiary, stockholder, officer, director, employee, agent, licensee or franchisee, or be employed by, or render aid or advice to, any organization that is engaged in, or proposes to engage in a business or professional practice competitive with that of EMPLOYER's specialty.  In addition to the foregoing, EMPLOYEE agrees that during such period, EMPLOYEE will not accept "call" nor provide services at any hospitals which are within the restricted area described above.

> **Commented [GE6]:** There is only one major hospital in area --this is too restrictive as employee could be working outside of the restricted area (i.e. 10 miles) but still be required to make call rounds at the same hospital

b. Non-Solicitation. Except as set out herein below, EMPLOYEE further agrees that during EMPLOYEE'S employment with EMPLOYER and for two (2) years immediately following the termination of EMPLOYEE'S employment with EMPLOYER, whether the termination shall be voluntary or involuntary, or with or without cause, or whether the termination is solely due to the expiration of the term of this Agreement, EMPLOYEE will not, in any manner or at any time, solicit or encourage any person, firm, corporation or other business entity who are patients or referral sources of EMPLOYER, an/or other employees of

9

**CONFIDENTIAL**

EMPLOYER to change his, her or its professional affiliation or cease doing business with EMPLOYER and/or other employees of EMPLOYER, whether for the benefit of EMPLOYEE or for the benefit of others.

c. Covenants Independent. Each restrictive covenant on the part of EMPLOYEE set forth in this Agreement shall be construed as a covenant independent of any other covenant or provision of this Agreement or any other agreement which EMPLOYER and EMPLOYEE may have, fully performed and not executory, and the existence of any claim or cause of action by EMPLOYEE against EMPLOYER whether predicated upon another covenant or provision of this Agreement or otherwise, shall not constitute a defense to the enforcement by EMPLOYER of any other covenant.

Notwithstanding the above, the EMPLOYER's ability to enforce the restrictive covenants is subject to EMPLOYER'S performance of the covenants, representations, and warranties as set out herein (i.e. payment of compensation, etc.) and Employee's termination of this Agreement by reason of Employer's breach of the foregoing shall be deemed "Good Reason".

d. Divisibility of Covenant Areas and Periods. If any portion of the restrictive covenants contained herein is held to be unreasonable, arbitrary or against public policy, each covenant shall be considered divisible both as to time and, if applicable, geographic area; and each month of the specified period shall be deemed to be a separate period of time and each one-quarter (1/4) mile radius segment of the geographic area shall be deemed to be geographic area, so that the maximum lesser time and geographic area shall remain effective so long as the same is not unreasonable, arbitrary or against public policy.

e. Injunctive and Equitable Relief. EMPLOYEE and EMPLOYER recognize and expressly agree that the extent of damages to EMPLOYER in the event of a breach by EMPLOYEE of any restrictive covenant set forth herein would be impossible to ascertain and that the remedy at law for any breach will be inadequate to compensate EMPLOYER. Consequently, EMPLOYEE agrees that in the event of a breach of any such covenant, in addition to any other relief to which EMPLOYER may be entitled, EMPLOYER shall be entitled to enforce the covenant by injunctive or other equitable relief ordered by a court of competent jurisdiction.

f. Venue; Court Proceedings. In any action or proceeding by EMPLOYEE relating to or involving the enforcement of the covenant, and any counterclaim, cross claim or other litigation which may be asserted or brought against EMPLOYER, EMPLOYEE and EMPLOYER hereby expressly waives any and all right to a trial by jury with respect to the action, proceeding or other litigation resulting from or involving the enforcement of this Agreement and the restrictive covenant, including, but not limited to, any counterclaim or other actions related or unrelated to the terms and conditions of this Agreement. EMPLOYEE hereby agrees that the venue of any action, proceeding, counterclaim, cross claim, or other litigation relating to, involving, or resulting from the enforcement of the covenants contained herein shall lie exclusively in Pinellas County, Florida. Further, in any action or proceeding by EMPLOYER to obtain a temporary restraining order and/or preliminary injunction to enforce the covenants contained herein, EMPLOYEE hereby agrees that One Thousand Dollars ($1,000) will be an adequate injunction

10

**CONFIDENTIAL**

bond in order to obtain the temporary restraining order and/or preliminary injunction. Should a temporary restraining order and/or motion for preliminary injunction be granted in whole or in part and should EMPLOYER be ultimately unsuccessful in obtaining a permanent injunction to enforce the covenant, EMPLOYEE hereby waives any and all rights EMPLOYEE may have against EMPLOYER for any injuries or damages, including consequential damages, sustained by EMPLOYEE and arising directly or indirectly from the issuance of the temporary restraining order and/or preliminary injunction. In addition and notwithstanding the foregoing, should Employee prevail in any such proceeding by Employer, Employer shall reimburse Employee for all costs and expenses incurred by Employee, including reasonable attorney fees, in the defense of any such proceeding and Employee may recover the same from Employer in the same proceeding.

g. Option of the Employee. Upon payment to EMPLOYER of the sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00) prior to any violation of any provision set forth in this section titled RESTRICTIVE COVENANT of this Agreement, EMPLOYEE shall be released from the restrictive covenants set forth herein. Payment can be made no later than ten (10) business days following termination of this Employment Agreement. However, the restriction will prevail that EMPLOYEE shall not solicit or attempt to influence any employees of EMPLOYER to terminate employment with EMPLOYER or will not directly solicit any patients of EMPLOYER.

29. FOUNDER'S RIGHTS: Should a dissolution of relationship at any time in the future occur between EMPLOYER and EMPLOYEE, the ownership of the publicly known practice name, legal name, telephone number(s) and ownership of the land and buildings will be retained by EMPLOYER (subject to any rights that Employee may obtain in a shareholder or similar form of partnership agreement, if any). Should any of those assets have been purchased prior to dissolution by EMPLOYEER, then EMPLOYER will repurchase those assets from EMPLOYEE using the same formula as EMPLOYEE originally used to purchase those assets from EMPLOYER.

30. INVALID PROVISION: Any term(s) or provision(s) of this Agreement that is deemed by any court of law to be invalid or unenforceable will not invalidate or make unenforceable any other term(s) or provision(s) of this Agreement.

31. WAIVER: The failure of either party EMPLOYER to enforce or insist upon the strict performance of any provision of this Agreement shall not be deemed to be a waiver of any breach of this Agreement or of any right of such party EMPLOYER to insist upon strict performance of such provision in the future.

32. APPLICABLE LAWS: This Agreement shall be construed and regulated under and the by the laws of the State of FLORIDA with venue in a court of competent jurisdiction in Pinellas County, Florida, and shall inure upon the parties of this Agreement and their heirs, personal representatives, successors, and assigns.

33. TITLES: The titles and captions in this Agreement are for convenience of reference only and shall not control or affect the interpretation or construction of any of its terms or conditions.

Plaintiff's Exhibit 88

**P287**

CONFIDENTIAL

34. MODIFICATION: No change or modification of this Agreement shall be valid unless the same is in writing and signed by the parties of this Agreement.

35. Entire AGREEMENT: This Agreement and any attachments or incorporations hereto represents the entire Agreement between the parties with respect to the subject matter hereof and supersedes any oral or written agreements previously entered into by the parties.

36. MUTUAL CONSTRUCTION: The parties acknowledge that this Agreement is the product of mutual efforts by the parties and their respective agents. This Agreement shall be interpreted neither more favorably in favor of one party, nor less favorably in favor of another party.

Furthermore, EMPLOYEE acknowledges that EMPLOYEE has been advised to seek the advice of independent counsel, and EMPLOYEE hereby acknowledges that EMPLOYEE has had ample opportunity to seek the advice of independent counsel.

37. COSTS AND ATTORNEYS 'FEES: If either party shall breach any of the terms of this Agreement, the non-breaching party shall be entitled to recover from the breaching party all reasonable costs and attorneys 'fees incurred by the non-breaching party in connection with the enforcement of the obligations of this Agreement, provided the non-breaching party is the prevailing party in any litigation that ensues on such breach.

IN WITNESS HEREOF, the parties hereto have agreed and executed this Agreement as of.          ,
2020.

12

**CONFIDENTIAL**

WITNESSES:                          ARTHRITIS AND RHEUMATISM ASSOCIATES, PL

_____             _____
Witness Signature                   Adam M Rosen, MD (President)


_____             _____
Witness Signature                   (Employee)

13