# EXHIBIT P

N7HCede1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DR. SARI EDELMAN,

              Plaintiff,

       v.                                21 Civ. 502 (LJL)

NYU LANGONE HEALTH SYSTEM, *et al.*,

              Defendants.
                                         Trial
------------------------------x
                                         New York, N.Y.
                                         July 17, 2023
                                         9:00 a.m.

Before:

                   HON. LEWIS J. LIMAN,

                                         District Judge
                                         -and a Jury-


                      APPEARANCES

MILMAN LABUDA LAW GROUP PLLC
     Attorneys for Plaintiff
BY:  JOSEPH M. LABUDA
     EMANUEL S. KATAEV

TARTER KRINSKY & DROGIN LLP
     Attorneys for Defendants
BY:  RICHARD C. SCHOENSTEIN
     RICHARD L. STEER
     INGRID J. CARDONA

1  A.  She did.
2  Q.  But your testimony here on Friday and today is that she was
3  nonrenewed because of alleged patient care issues; right?
4  A.  My testimony has been very clear that she was nonrenewed
5  because she didn't meet NYU's clinical standards.
6  Q.  And is it your testimony that University of Miami's medical
7  school standards are less than NYU's?
8  A.  That is definitely my testimony.
9  Q.  You also stated during your testimony on Friday that you
10 had no discriminatory animus to Dr. Edelman; correct?
11 A.  I didn't then and I don't today.
12 Q.  And you testified unequivocally that you had no knowledge
13 of her complaint; correct?
14 A.  I have no knowledge of an HR complaint from Dr. Edelman.
15         MR. KATAEV:  Page 175, your Honor, line 25 through
16 line 4 on the next page.
17         MR. SCHOENSTEIN:  Objection.
18         THE COURT:  No, I'll permit it.
19 Q.  At your September 2021 deposition, I asked you the
20 following question and you gave the following answer, didn't
21 you?
22 "Q.  Were you not made aware of the complaint she made to human
23 resources?
24 "A.  I don't recall if I would have been made aware of it or
25 not."

1  charts, is that right, patient charts?
2  A.  The first thing I did is I just, you know, asked around in
3  the office about, you know, what was going on with her.
4  Q.  Did you look at any medical charts?
5  A.  It's hard for me to recall because, you know, since she's
6  left the practice, I've seen a lot of her medical charts.  I
7  don't remember going through them, whether it was started
8  before or after she left the practice.
9  Q.  And you don't -- if you did -- and I'm not saying you did,
10 but if you did, do you have any of those medical charts with
11 you today?
12 A.  No.
13 Q.  Did you do any type of comparison of Dr. Edelman to the
14 other doctors in the rheumatology, any type of written
15 comparison?
16 A.  No written comparison, no.
17 Q.  And as part of your review, did you talk to Dr. Edelman?
18 A.  No.
19 Q.  Without speaking to Dr. Edelman, you concluded that the
20 issues that you looked into couldn't be remediated; correct?
21 A.  That's correct.
22 Q.  That means you didn't think that she could fix them; right?
23 A.  Essentially, yes, that's correct.
24 Q.  Did you ever give Dr. Edelman an opportunity to try and fix
25 them?

1      MR. SCHOENSTEIN:  Objection.
2      THE COURT:  Sustained.
3  Q.  After being made aware of clinical issues, you called
4  Mr. Kaplan to tell him about those issues; correct?
5  A.  Well, I became aware of issues over a period of years, but
6  at one point in the fall of 2020, I did talk to Mr. Kaplan on
7  the phone about the clinical issues, yes.
8  Q.  And to your recollection, Mr. Kaplan told you, "Don't tell
9  me over the phone, I want an email."  Correct?
10 A.  No.
11 Q.  He did insist that you put your concerns in writing, didn't
12 he?
13 A.  So we -- ultimately, yes.  At a later point, he asked me to
14 put that in writing.
15 Q.  Mr. Kaplan is not a doctor; correct?
16 A.  He is not.
17 Q.  He would not know whether any of the clinical concerns that
18 you had raised to him are actually valid clinical concerns;
19 correct?
20 A.  The concerns weren't all clinical and some of them he would
21 have an opinion regarding, but he wouldn't be able to judge all
22 the clinical facts, no.
23 Q.  And during your call with Mr. Kaplan, he gave you a
24 deadline to provide this information; correct?
25 A.  Not during the initial call.  There was a call that was --