**EXHIBIT T**

N7BCede1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DR. SARI EDELMAN,

        Plaintiff,

     v.                21 Civ. 502 (LJL)

NYU LANGONE HEALTH SYSTEM, et
al.,

        Defendants.
                             Trial
------------------------------x
                             New York, N.Y.
                             July 11, 2023
                             9:00 a.m.

Before:

                  HON. LEWIS J. LIMAN,

                   District Judge
                   -and a Jury-


                     APPEARANCES

MILMAN LABUDA LAW GROUP PLLC
    Attorneys for Plaintiff
BY:  JOSEPH M. LABUDA
     EMANUEL S. KATAEV

TARTER KRINSKY & DROGIN LLP
    Attorneys for Defendants
BY:  RICHARD C. SCHOENSTEIN
     RICHARD L. STEER
     INGRID J. CARDONA
```

SOUTHERN DISTRICT REPORTERS, P.C.
         (212) 805-0300

N7BCede1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DR. SARI EDELMAN,

            Plaintiff,

        v.                    21 Civ. 502 (LJL)

NYU LANGONE HEALTH SYSTEM, et
al.,

            Defendants.
                              Trial
------------------------------x
                              New York, N.Y.
                              July 11, 2023
                              9:00 a.m.
Before:

                    HON. LEWIS J. LIMAN,

                       District Judge
                       -and a Jury-


                           APPEARANCES

MILMAN LABUDA LAW GROUP PLLC
     Attorneys for Plaintiff
BY:  JOSEPH M. LABUDA
     EMANUEL S. KATAEV

TARTER KRINSKY & DROGIN LLP
     Attorneys for Defendants
BY:  RICHARD C. SCHOENSTEIN
     RICHARD L. STEER
     INGRID J. CARDONA
```

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

1  day?
2  A.  My complaint was about the, the hostile and abusive
3  behavior that had occurred the day before with Mr. Atonik; that
4  I didn't feel safe and I wanted it rectified; that I felt that
5  it was a sexist, discriminatory, chauvinistic attack and it
6  needed to be addressed with HR.  We went through the events of
7  what happened on the phone.  I was probably on the phone with
8  her for 20, 30 minutes.  She took everything down.  There was a
9  case number assigned, and she said that she would get back to
10 me.
11 Q.  Why did you think that it was a sexist, chauvinistic
12 incident with Mr. Atonik?
13 A.  The way he was speaking to me, telling me that nothing in
14 that office belongs to me.  There were my diplomas on the wall.
15 It was space that I had negotiated with NYU to see and treat my
16 patients based on my experience as a rheumatologist.  There was
17 no seniority that he had over me to say that he, he had -- that
18 it belonged to him more than me.  The only difference was that
19 he was a male, and he was saying he owned me.
20     I was with the organization at that space longer than him.
21 I had more years of training than him, and he's telling me that
22 this is his.
23     Yes, NYU employs me, but he doesn't own me.  He doesn't own
24 the things in my office.  He doesn't own the right to tell
25 me -- to say you're going to do what we tell you to do.  This

employment in Florida, you went from one job to another?

A.  Yes.

Q.  You didn't miss a paycheck?

A.  I can't answer that 100 percent based on when the paychecks came in.

Q.  But you're not aware of missing a paycheck?

A.  I don't know the answer to that.

Q.  And you've remained employed continuously ever since May of 2021, right, same employer, same job?

A.  Yes.

Q.  They have you on a partnership track there?

A.  Not as of yet.

Q.  Is it anticipated you will be on a partnership track?

A.  I am hopeful, yes.

Q.  If that works out, you could be a part owner of that business in Florida?

A.  In several years.

Q.  By the way, there's no state income tax in Florida; right?

            MR. LABUDA:   Objection.

            THE COURT:    Overruled.

A.  Yes.

Q.  So $300,000 in Florida is worth more than $300,000 in New York; fair to say?

            MR. LABUDA:   Objection.

            THE COURT:    Overruled.

1   A.   Yes.
2   Q.   Now I want to talk a little bit about the move to Florida.
3   You indicated that you were forced to relocate; is that
4   correct?  That's what you said in your testimony?
5   A.   Yes.
6   Q.   You had talked with your family about moving to Florida
7   before your contract was not renewed; correct?
8   A.   That is not correct.
9   Q.   You mentioned to Dr. Mehta being interested in moving to
10  Florida; correct?
11  A.   I did not.
12  Q.   Your husband had posted on social media about being upset
13  about the high costs of New York State taxes; isn't that
14  correct?
15              MR. LABUDA:   Objection.  Hearsay.
16              THE COURT:   Overruled.
17  A.   I have no idea.
18  Q.   Let's look at some documents.
19       You received notice of nonrenewal of the NYU contract on
20  December 1, 2021.  Do you agree with that?
21  A.   Yes.  Well, I received it on December 2 of 2021.
22  Q.   You received it on December 2?
23  A.   Yes.
24  Q.   Was it on that day that you called Andrew Rubin?
25  A.   Yes.

1             THE COURT:  Any objection to 88?
2             MR. LABUDA:  No objection, your Honor.
3             THE COURT:  88 is received.  Can be published to the
4    jury.
5             (Plaintiff's Exhibit 88 received in evidence)
6    Q.   There is a lot of material in 88 and I'm going to ask you
7    to look at specific things, Dr. Edelman.
8             Do you recall producing a lot of materials regarding your
9    job search and the job you took in Florida?
10   A.   Yes.
11            MR. SCHOENSTEIN:  Can we go to page P167.
12   Q.   Now, do you see this email, this is Friday, December 4?
13   A.   Uh-huh.
14   Q.   Do you see that, Dr. Edelman?
15   A.   I do.
16   Q.   And that's two days after receiving notice of nonrenewal?
17   A.   Yes.
18   Q.   And you're writing to a recruiter saying "I am currently
19   employed at NYU and looking to make a move to Florida."  Do you
20   see that?
21   A.   Yes, I do.
22   Q.   So that is what you were telling recruiters as of
23   December 4, 2020, that you were looking to make a move to
24   Florida?
25   A.   I was saying that to every recruiter in every state with

1    the same message that I sent it to.
2    Q.   I only asked you about Florida. You were telling
3    recruiters, as you did in this email, that you were looking to
4    make a move to Florida; correct?
5    A.   Yes, I was letting them know if I get a job, I will be
6    moving from New York to Florida.
7            MR. SCHOENSTEIN:   Move to strike the last part of that
8    answer, your Honor.
9            THE COURT:   Overruled.
10           Dr. Edelman, I'm going to instruct you to answer the
11   questions that are being asked. You will have an opportunity
12   during redirect examination to clarify any answers that you've
13   given if there are additional things that should be brought to
14   the jury's attention in the view of your lawyer.
15           THE WITNESS:   Okay.
16           MR. SCHOENSTEIN:   Ms. Cardona, please turn to P178.
17   Q.   This is another email exchange on December 4, and you say:
18   "We are looking to relocate to Florida, Delray Beach, West Palm
19   Beach, Clearwater, Tampa area." Do you see that?
20   A.   Yes.
21   Q.   So by the 4th of November, you had not only identified
22   Florida, you had identified specific locations in Florida that
23   you were interested in; is that correct?
24           THE COURT:   I think you said 4th of November. Did you
25   mean the 4th of December?

1           MR. SCHOENSTEIN:   I did, your Honor.  Thank you.
2    A.   Yes.
3    Q.   And you got some pretty fast responses to these inquiries
4    and your inquiries in general; is that correct?
5    A.   The document I'm looking at -- I'm sorry.  What's your
6    question?
7    Q.   The question is a little more general.  You got some pretty
8    quick responses to your inquiries about job positions in
9    Florida?
10   A.   Yes, I got quick inquiries to all my job -- everything I
11   put out.
12          MR. SCHOENSTEIN:   Scroll down, please, to page 189.
13   A.   I just want to go back to this document because everything
14   lists Albany, Syracuse, New York, like what you're showing me
15   on the screen.
16          MR. SCHOENSTEIN:   Your Honor, move to strike.
17          THE COURT:   The testimony is stricken.
18          Members of the jury, let me instruct you.  The way
19   that the examination proceeds is each lawyer asks the questions
20   that they think will elicit the information that will be
21   helpful for you in making a decision, so that's what happens on
22   direct examination, on cross examination.  The lawyer asks the
23   questions that the lawyer believes will bring out the
24   information that will be helpful to you from their perspective
25   and then there'll be an opportunity on redirect examination, as