# EXHIBIT W

N7DCede1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DR. SARI EDELMAN,

                Plaintiff,

           v.                          21 Civ. 502 (LJL)

NYU LANGONE HEALTH SYSTEM, *et al.*,

                Defendants.
                                       Trial
------------------------------x
                                       New York, N.Y.
                                       July 13, 2023
                                       8:55 a.m.

Before:

                    HON. LEWIS J. LIMAN,

                                       District Judge
                                       -and a Jury-


                         APPEARANCES

MILMAN LABUDA LAW GROUP PLLC
     Attorneys for Plaintiff
BY:  JOSEPH M. LABUDA
     EMANUEL S. KATAEV

TARTER KRINSKY & DROGIN LLP
     Attorneys for Defendants
BY:  RICHARD C. SCHOENSTEIN
     RICHARD L. STEER
     INGRID J. CARDONA

1          THE COURT:  How is this within the scope of the
2    examination that was conducted by the defense?
3          MR. KATAEV:  Your Honor, the witness testified that he
4    was so busy with COVID that he didn't have time to deal with
5    any of this and I want to address that aspect, if I could have
6    a little bit of leeway, this is my final point.
7          THE COURT:  If you keep it short.  It's beyond the
8    scope, but if you keep it short, I'll relax the rules.
9    Q.  For the November 13th, 2019 entry that Ms. Ruiz made, she
10   wrote:  "Conversation took place between Dr. Edelman and Miriam
11   Ruiz."  Correct?
12   A.  I see that.
13   Q.  But you wrote in your email to Dr. Porges:  "Edelman
14   berated Miriam after Miriam asked her basic questions about the
15   schedule."  Correct?
16   A.  Yes.
17   Q.  You were not present during that conversation, were you?
18   A.  No.
19   Q.  So you were not in a position to editorialize this;
20   correct?
21         MR. STEER:  Objection, your Honor.
22         THE COURT:  Sustained as to form.  You can ask in a
23   different form without the "editorialized."
24   Q.  It wouldn't be appropriate for you to change what she wrote
25   because you were not there; correct?

1  A.  One would assume so.
2  Q.  Focusing back on exhibit 1, you received this email from
3  Dr. Porges because you asked Mr. Antonik to ask him to send it,
4  correct?
5  A.  That is not correct.
6  Q.  Well, Dr. Porges called you prior to sending you this
7  email, didn't he?
8  A.  He did.
9  Q.  And he told you that he had some alleged concerns about Dr.
10 Edelman, didn't he?
11 A.  He started to tell me about his concerns.
12 Q.  And you stopped him from telling you those concerns, didn't
13 you?
14 A.  I did.  I told him to put it in writing.
15 Q.  And you needed it in writing so you could use to send it to
16 Mr. Swirnow, correct?
17 A.  I wanted it in writing so it was documented so that I would
18 be able to forward it to my leadership.
19 Q.  And you never asked Dr. Porges how he came to learn about
20 these issues, correct?
21 A.  It wasn't my place to do so.
22 Q.  So that means you didn't, right?
23 A.  I did not.
24 Q.  Now, based on your experience in hospitals and working with
25 various other institutions, there are multiple factors that go

1           (Jury present)
2           THE COURT:  Counsel, you may inquire.
3           Mr. Kaplan, you're reminded you're still under oath.
4           MR. STEER:  Your Honor, I would like to mark for
5    identification Defendants' RR.
6           THE COURT:  Any objection to RR?
7           MR. KATAEV:  I believe it's already admitted.
8           THE COURT:  RR is received and may be published to the
9    jury.
10          (Defendant's Exhibit RR received in evidence)
11   CROSS-EXAMINATION
12   BY MR. STEER:
13   Q.  Mr. Kaplan, I'm showing you Defendants' RR.  Does that
14   confirm the date when Ms. Pacina reached out to you?
15   A.  Yes.
16   Q.  Now, when you spoke with plaintiff, did she say anything to
17   you about Mr. Antonik calling her a bitch?
18   A.  She did not.
19   Q.  When you spoke with Ms. Pacina, did saying to you about
20   calling her a bitch?
21   A.  She did not.
22   Q.  Did anyone else say anything else to you about whether
23   plaintiff was called a bitch?
24   A.  Did not.
25   Q.  When you were speaking with Ms. Pacina, did she say

1  another direction.
2  Q.  He did not tell her about any of these clinical concerns;
3  correct?
4  A.  Not that I recall.
5  Q.  He did not raise any of the interpersonal issues; correct?
6  A.  Not that I heard.
7  Q.  After you received this November 6th, 2020 email, did you
8  ever ask Dr. Porges to speak to Dr. Edelman about these issues?
9  A.  We asked if he felt that he could -- him and Dr. Goldberg
10 could mentor Dr. Edelman to improve her quality standards.
11 Q.  And both Dr. Goldberg and Dr. Porges said they could not do
12 so; correct?
13 A.  That's correct.
14 Q.  And, in fact, they said that these issues were ones that
15 could not be remediated; correct?
16 A.  They did not think that they could mentor her to improving
17 the standards.
18 Q.  One of the complaints raised here is that she took too many
19 tests and labs; correct?
20 A.  That's what it says.
21 Q.  But to your knowledge, Dr. Edelman was never asked to take
22 less tests and less labs, was she?
23 A.  I don't know.
24 Q.  And you personally never spoke to Dr. Edelman about the
25 issues raised here, only about the office space issue; correct?