# EXHIBIT X

**Ds' TRIAL EXHIBIT QQQ**

EEOC Form 5 (10/17)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☑ EEOC | 520-2021-01195 |

New York State Division of Human Rights & New York City Commission on Human Rights and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Year of Birth |
|---|---|---|
| Dr. Sari Edelman c/o Milman Labuda Law Group PLLC | (516) 328-8899 | N/A |

Street Address: 3000 Marcus Avenue, Suite 3W8, Lake Success, NY 11042-1073
City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| NYU Langone Health System, et al. (See complaint) | 15+ | (646) 929-7800 |

Street Address: 550 First Avenue, New York, NY
City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| See complaint | | |

Street Address
City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☑ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 8/22/2019 | 12/1/2020 |

☑ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See complaint

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

1/8/21
Date

*[Charging Party Signature]*

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

virtually
SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE 1/8/2021
(month, day, year)
Pursuant to Executive Order No. 202.7 (2020)

EMANUEL KATAEV
NOTARY PUBLIC, State of New York
Reg. No. 01KA6171632
Qualified in Queens County
Commission Expires July 30, 2023
October 4,

P355



EMANUEL KATAEV
NOTARY PUBLIC, State of New York
Reg. No. 01KA6171632
Qualified in Queens County
Commission Expires July 30,

EEOC Form 5 (10/17)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☑ EEOC | 520-2021-01195 |

New York State Division of Human Rights & New York City Commission on Human Rights and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See complaint

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

I declare under penalty of perjury that the above is true and correct.

1/8/21
Date

Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
virtually 1/8/2021
(month, day, year)
pursuant to Executive Order No. 202.7 (2020)

EMANUEL KATAEV
NOTARY PUBLIC, State of New York
Reg. No. 01KA6171632
Qualified in Queens County
Commission Expires July 30, 2023
October 4

P357



EMANUEL KATAEV
NOTARY PUBLIC, State of New York
Reg. No. 01KA6176137
Qualified in Queens County
Commission Expires July 26

CP Enclosure with EEOC Form 5 (10/17)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (10/17).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

To: EEOC Intake
From: Emanuel Kataev, Esq.
Re: Charge No.
        520-2021-01195
Pages: nineteen (19)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

DR. SARI EDELMAN,

                                        Plaintiff,

                -against-

NYU LANGONE HEALTH SYSTEM, NYU
LANGONE HOSPITALS, NYU LANGONE
MEDICAL CENTER, NYU LANGONGE
NASSAU RHEUMATOLOGY, NYU SCHOOL
OF MEDICINE, NYU GROSSMAN SCHOOL OF
MEDICINE, NYU HOSPITALS CENTER,
ANDREW T. RUBIN, DAVID KAPLAN, JOE
ANTONIK, and JOSHUA SWIRNOW,

                                        Defendants.
----------------------------------------------------------------X

Case No.:

**COMPLAINT**

*JURY TRIAL DEMANDED*

        Dr. Sari Edelman (hereinafter "Dr. Edelman" or the "Plaintiff"), by and through her

attorneys, MILMAN LABUDA LAW GROUP PLLC, alleges and states as follows:

                **PRELIMINARY STATEMENT & FACTUAL BACKGROUND**

        1.        The Plaintiff, Dr. Edelman, brings this action against NYU Langone Health System,

NYU Langone Hospitals, NYU Langone Medical Center, NYU Langone Nassau Rheumatology,

NYU School of Medicine, NYU Grossman School of Medicine, NYU Hospitals Center, Andrew

T. Rubin, David Kaplan, Joseph Antonik, and Joshua Swirnow (collectively hereinafter the

"**Defendants**" or "NYU") for violations of the Equal Pay Act, 29 U.S.C. § 206(d) (hereinafter

"EPA"), Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), 42 U.S.C. § 2000e

(hereinafter "Title VII"), the New York State Human Rights Law (hereinafter "NYSHRL"), New

York Executive Law § 296(1)(a), the New York City Human Rights Law (hereinafter

"NYCHRL"), and the New York City Administrative Code § 8-107(1)(a).

2. Defendants hired Dr. Edelman on or about August 22, 2014 as a Staff Physician for Defendants' medical practice and Adjunct Assistant Professor at Defendants' medical school.

3. Her hire was part of a larger agreement with NYU to purchase Dr. Edelman's existing practice in which she was given an employment contract with a term of three (3) years protecting her from termination except for cause as outlined in the parties' agreement, which term was extended by an amendment in or about November 2017 through December 31, 2020.

4. During her tenure at NYU, Dr. Edelman maintained an unblemished record concerning patient care and her overall work performance, including both meeting the applicable standard of care as defined in the medical community and exceeding productivity standards she was contractually required to meet. In fact, her compensation was increased throughout her tenure, including at the time her agreement's term was extended in or about November 2017.

5. Despite Dr. Edelman's many achievements, Defendants failed to pay her equal pay for equal work because of her sex. Dr. Edelman's salary was dramatically lower than that of her male counterparts.

6. For instance, other male doctors (whose practices were bought by Defendants at the same time Plaintiff's was) who had less experience than Plaintiff were offered administrative roles in order to justify larger salaries while Plaintiff was never offered any such administrative roles despite being qualified to do so.

7. In fact, Defendants discriminated against Dr. Edelman on account of her sex not only concerning her pay, but with respect to other terms and conditions of her employment.

8. Dr. Edelman was routinely faced with male chauvinism while working at NYU and was treated poorly by management and other male doctors solely on account of the fact that she was a female physician.

2

9.      On or about September 25, 2019, the discriminatory conduct Dr. Edelman endured reached new heights when she learned she was being kicked out of her office space so that a new incoming male physician who was joining NYU could be placed there. This decision was made without any notice to Dr. Edelman.

10.     Dr. Edelman complained about this to Defendants David Kaplan and Joseph Antonik to no avail.

11.     In fact, their response to Dr. Edelman's complaint consisted of inappropriate remarks about women, which only further underscored the discriminatory environment Dr. Edelman worked in for years.

12.     Dr. Edelman immediately complained to Human Resources ("HR") and demanded that action be taken; this constituted a protected activity; however, a HR brushed aside her complaint and stated that she could share her office space since she was not there one (1) day a week.

13.     Dr. Edelman informed HR that her complaint was not about the office space, but about the way she was spoken to and mistreated by the Defendants, and that this kind of conduct has been commonplace at NYU throughout her tenure there.

14.     Dr. Edelman asked HR to take corrective action; instead, NYU closed her complaint and did nothing.

15.     Because Dr. Edelman was under an employment contract which did not permit NYU to terminate her without cause, the Defendants bided their time.

3

16.     On December 1, 2020, the Defendants retaliated against Dr. Edelman for lodging her complaint by notifying her that her contract will not be renewed for another term of three (3) years (as it was in November 2017), and that she was given six (6) months' notice of her termination, effective May 31, 2021.

17.     NYU's discrimination and retaliation have caused Dr. Edelman substantial economic and non-economic damages.

## JURISDICTION

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the EPA and Title VII.

19.     This court has supplemental jurisdiction over plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

## VENUE

20.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because all the Defendants reside in the State of New York and some or all of the Defendants are residents within the Southern District of New York.

21.     Further, upon information and belief, some or all of the Defendants made decisions regarding the acts complained of herein such that venue is also proper pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

22.     Dr. Edelman is a woman who resides in Nassau County, New York. Plaintiff is a citizen of the State of New York.

23.     Dr. Edelman is an employee, as defined by the EPA, Title VII, the NYSHRL, and the NYCHRL, respectively.

4

24. Upon information and belief, Defendants NYU Langone Health System, NYU Langone Hospitals, NYU Langone Medical Center, NYU Langone Nassau Rheumatology, NYU School of Medicine, NYU Grossman School of Medicine, NYU Hospitals Center (hereinafter the "Corporate Defendants") are domestic or foreign corporations or limited liability companies with their corporate headquarters located in New York, NY. The Corporate Defendants each maintain offices and do business in New York, NY. The Corporate Defendants are each an employer as defined by the EPA, Title VII, the NYSHRL, and the NYCHRL.

25. Upon information and belief, Defendants Andrew T. Rubin, David Kaplan, Joseph Antonik, and Joshua Swirnow (hereinafter the "Individual Defendants") are individuals who reside in New York, NY. Upon information and belief, the Individual Defendants are citizens of the State of New York. The Individual Defendants are employers as defined by the EPA, the NYSHRL, and the NYCHRL.

## FACTS

26. Defendants hired Dr. Edelman on or about August 22, 2014 as a Staff Physician for Defendants' medical practice and Adjunct Assistant Professor at Defendants' medical school.

27. Dr. Edelman had an existing practice with her own patients which Defendants assumed as part of their agreement with her.

28. During her tenure at NYU, Dr. Edelman maintained an unblemished record concerning patient care and her overall work performance, including both meeting the applicable standard of care as defined in the medical community and exceeding productivity standards she was contractually required to meet.

5

29.     Defendants recognized Dr. Edelman's accomplishments by promoting her, awarding her with raises in her pay, extending her three (3) year employment agreement for another three (3) years, providing additional mid-level support in 2016, hiring a Nurse Practitioner with explicit direction for her to be involved in the interviewing and hiring process, supporting Plaintiff's expansion of her practice to Huntington location one (1) day week to help grow the patient base in this area for that new office location for NYU.

30.     From the beginning of her practice, Defendants continually and systematically marginalized Dr. Edelman by treating her differently than other male doctors, speaking down to her, making changes to her office space without speaking to her.

31.     Among other things, this included:

(i) Defendant Rubin stating, upon meeting Plaintiff, words to the effect of "oh, you are a woman. I wasn't expecting that;"

(ii) requiring Plaintiff to give up office space and furniture because Defendants claimed that all NYU space had to be uniform, but upon moving into new space, discovering that a male rheumatologist was given furniture which Plaintiff was told she was not allowed to bring;

(iii) beginning in or about October 2017 through the present, parking cones were placed in Plaintiff's spot for no apparent reason other than to harass her, while male colleagues enjoyed unfettered parking privileges without being harassed in this manner;

(iv) since in or about October 2017 through the present, Defendants and their agents constantly made remarks about Plaintiff's four (4) day schedule while other male colleagues, who all had similar four (4) day work weeks, were never similarly interrogated or harassed about same;

6

(v) Plaintiff was harassed about rescheduling patients due to having to take care of her child, while – upon information and belief – other male colleagues were not harassed if they needed to reschedule patients;

(vi) Defendants rejected Plaintiff's pick for a more qualified female Nurse Practitioner with a less qualified male candidate, and subsequently refused to permit Plaintiff to train this individual, ignoring her input on the matter, even when she mentioned the free Nurse Practitioner Fellowship Program through the American College of Rheumatology; and

(vii) during one meeting, Defendant Rubin demanded that Plaintiff "fake it 'till she makes it" by smiling more in the office and saying hello to everyone as a woman should because, when she did not do so, Plaintiff was perceived negatively and considered to be "bossy, bitchy, and nasty."

32. Instead of demanding respect for female doctors, Defendants supported gender bias in the workplace by imposing requests that were not made of male doctors.

33. In addition, and as a further example, in or about September 25, 2019, when Dr. Edelman objected to her office space being shared with another incoming male physician, Defendants David Kaplan and Joseph Antonik engaged in making inappropriate remarks to Dr. Edelman on account of her sex.

34. They did so by, among other things, making mocking gestures at Plaintiff, stating in effect that she was not worthy of keeping her office space, raising their tone at Plaintiff, and yelling at her to "calm down."

35. In addition, Defendants marginalized Dr. Edelman while treating similarly situated employees of the opposite sex more favorably.

7

36.     For example, requiring Plaintiff to give up her office space while other male doctors who also did not work a five (5) day week were not requested to do so (let alone required).

37.     Similarly, while Plaintiff has personally witnessed Defendants approaching male physicians about changes such as office space (and seen how any such contemplated changes were not made if the male physician was opposed to it), Plaintiff was not given the same treatment and, when she disagreed, Defendants made Plaintiff an ultimatum on the subject.

38.     Plaintiff made a formal complaint to HR about this on or about the same day, and Defendants began a campaign of retaliation that ultimately culminated in her simultaneous non-renewal and notice of termination.

39.     For example, although Plaintiff was always able to schedule patients for late evenings on Wednesdays, Plaintiff was suddenly informed that she could no longer do so despite the fact she had done so for years and her patients relied on her availability to come in on Wednesday evenings.

40.     Plaintiff lost many patients as a result of this retaliatory conduct.

41.     Notwithstanding, several male colleagues are permitted to schedule visits late evening appointments, with patients scheduled as late as 8:30 P.M and 8:45 PM on other nights of the week.

42.     Similarly, Defendants unilaterally decided to terminate the Nurse Practitioner who Plaintiff participated in hiring to assist with her practice; however, when male physicians subsequently requested such individuals to be hired in order to support their practices, Defendants hired them.

8

43.     Further, Plaintiff stopped receiving messages from her direct medical assistant, which Plaintiff complained about endlessly to no avail as her requests were ignored; it was as if Defendants were actively seeking to sabotage her, putting her at risk in the event of an adverse event with a patient due to not returning messages.

44.     Although Defendants finally fixed this issue after six (6) months, it is worthy to note that such issues never arose prior to her complaint to HR about the discrimination she endured.

45.     In or about early 2019, Dr. Edelman became aware that her salary was significantly lower than that of her male counterparts after learning from a male colleague with similar experience and job duties that his salary was higher than hers.

46.     At the time, Dr. Edelman's salary was $207,000.00. However, NYU paid other male physicians with similar experience and job duties, a greater salary of despite the fact said male physicians did not see as many patients as Plaintiff and despite the fact that Plaintiff earned more in rVU's, Defendants' internal tracking system for measuring a doctor's performance.

47.     In addition to paying Dr. Edelman less than similarly situated rheumatologists, NYU began forcing Dr. Edelman to do administrative and operational tasks that were not within her job description, while her male counterparts did more substantive, important professional work.

48.     For example, Dr. Edelman was asked to perform administrative tasks such as faxing, completing insurance medication and MRI authorizations, peer-to-peer calls, calling pharmacies, and completing paperwork and letters for patients, while male rheumatologists were not; these were all tasks to completed by mid-level practitioners, i.e., nurse practitioner, physician's assistant, etc.

9

49. As yet another example, Defendants designated Plaintiff's office as a lactation room to express breast milk for another employee without discussing this with Plaintiff; upon information and belief, Defendants discriminated against Plaintiff by offering her office as a lactation room without offering any male physician's office for the same purpose.

50. As set forth above, on September 25, 2019, Dr. Edelman complained to HR about Joseph Antonik's discriminatory treatment of her. Specifically, Dr. Edelman told Kathleen Pacina at HR what happened.

51. However, a HR brushed aside Dr. Edelman's complaint and stated that she could share her office space since she was not there one (1) day a week.

52. Dr. Edelman informed HR that her complaint was not about the office space, but about the way she was spoken to and mistreated by the Defendants because of her sex, and that this kind of conduct has been commonplace at NYU during her tenure there.

53. Dr. Edelman asked HR to take corrective action; instead, NYU closed her complaint and did nothing.

54. As a result of Dr. Edelman's complaint to HR, Defendants subjected Dr. Edelman to unlawful retaliation. In particular, the Defendants bided their time due to her employment contract and sent Dr. Edelman a notice of non-renewal and termination as a direct result of her complaints at the first opportunity.

55. This occurred a little over a year after Dr. Edelman complained of discrimination, and Defendants subsequently summarily fired Dr. Edelman without providing any reason because this was the first possible opportunity for them to react and retaliate against her once her contract expired.

10

56.     Dr. Edelman was treated poorly in the terms and conditions of her employment as set forth above because of her sex and gender.

57.     As a result of the Defendants' unlawful, discriminatory conduct, Dr. Edelman has suffered substantial economic and non-economic damages.

58.     Plaintiff has timely filed a charge of sex discrimination and retaliation with the United States Equal Employment Opportunity Commission (hereinafter the "EEOC"), which charge was duly filed with the New York State Division of Human Rights (hereinafter "NYSDHR") on January 4, 2021.

59.     Plaintiff awaits a Notice of Right to Sue and agrees to stay her claims under Title VIII until the 180-day statutory conciliation period required by 42 U.S.C. § 2000e–5(f)(1) has elapsed.

### COUNT ONE
### Unequal Pay in Violation of The Equal Pay Act
### (29 U.S.C. § 206(d)(1))

60.     Dr. Edelman repeats and realleges paragraphs 1 through 59 hereof, as if fully set forth herein.

61.     Prior to Defendants' retaliation against her, Dr. Edelman was performing a common core of tasks associated with her job that was substantially equal to that of her male counterparts. Her job title, job description, and official responsibilities were substantially equal to that of her male counterparts.

62.     The conditions where Dr. Edelman and her male counterparts performed the work were basically the same.

63.     Dr. Edelman's male counterparts were paid more under these circumstances, in violation of the Equal Pay Act.

11

64.     In addition, her counterparts also received additional benefits, including their own
Nurse Practitioners (despite the fact Plaintiff was denied such a benefit) despite the fact those male
physicians produced less than Plaintiff did.

65.     Similarly, male physicians whose practices were bought at the same time Plaintiff's
was and who were of equal skill and qualification received administrative titles to partake in
management decisions while Plaintiff was denied even consideration for such a title.

66.     Dr. Edelman suffered damages as a result of Defendants' unlawful discriminatory
actions, including past and future lost wages and benefits, and the costs of bringing this action.
Plaintiff also seeks damages in the form of back pay, front pay, compensatory damages, punitive
damages (capped and uncapped under Title VII, the NYSHRL, and the NYCHRL), as well as
emotional distress damages.

67.     Defendants willfully violated Dr. Edelman's rights under the EPA, and as a result,
are also liable for liquidated damages.

## COUNT TWO
### Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964
### (42 U.S.C. §§ 2000e, *et seq.*)

68.     Plaintiff repeats and realleges paragraphs 1 through 67 hereof, as if fully set forth
herein.

69.     Plaintiff is a female and was qualified for her position when Defendants unlawfully
terminated her.

70.     As set forth above, Defendants treated Plaintiff differently on account of her sex.

71.     In addition, Defendants marginalized Plaintiff while treating similarly situated male
employees more favorably. Specifically, and among other things, male employees never had their
office space taken from them for an incoming female employee.

12

**P371**

72.    Plaintiff suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

73.    Defendants intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT THREE
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964
### (42 U.S.C. §§ 2000e, *et seq.*)

74.    Plaintiff repeats and realleges paragraphs 1 through 73 hereof, as if fully set forth herein.

75.    On September 25, 2019, Plaintiff engaged in protected activity by complaining to HR about Defendants' discriminatory treatment based on Plaintiff's sex. Specifically, Plaintiff told HR that Defendants David Kaplan and Joseph Antonik mistreated her because she is a woman, and HR closed the complaint after justifying the need for Dr. Edelman sharing her office space without addressing the underlying discriminatory treatment she endured at the hands of Defendants David Kaplan and Joseph Antonik. To add insult to injury, despite repeatedly following up with HR, Plaintiff was ultimately informed that her complaint was closed.

76.    Because Dr. Edelman was under an employment contract which did not permit NYU to terminate her without cause, the Defendants bided their time.

77.    On December 1, 2020, the Defendants retaliated against Dr. Edelman for lodging her complaint by notifying her that her contract will not be renewed notifying her that she has been given six (6) months' notice of her termination, effective May 31, 2021.

13

78.   Defendants' alleged reasons for taking away Plaintiff's office space is pretextual and baseless and is only part of a larger pattern and practice of treating her differently on account of her sex.

79.   Plaintiff suffered damages as a result of Defendants' unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

80.   Defendants intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and, as a result, are liable for punitive damages.

### COUNT FOUR
### Discrimination in Violation of the NYSHRL
### (N.Y. Exec. Law § 296)

81.   Plaintiff hereby repeats and realleges paragraphs 1 through 80 of the Complaint as if more fully set forth herein.

82.   Pursuant to the NYSHRL, it shall be an unlawful discriminatory practice for an employer because of an individual's sex to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment. See N.Y. Exec. Law § 296(1)(a).

83.   Pursuant to the NYSHRL, any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate. See N.Y. Exec. Law § 297(9).

84.   Pursuant to the NYSHRL, it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or attempt to do so. See N.Y. Exec. Law § 296(6).

14

85.     Defendants discriminated against Plaintiff in the terms and conditions of his employment because of her sex in violation of § 296(1)(a) of the NYSHRL.

86.     Plaintiff is a female, and therefore is a member of a protected class under the NYSHRL.

87.     Defendants engaged in a course of conduct, as stated above, which resulted in adverse employment actions against Plaintiff because of her sex, including but not limited to taking away her office space and paying her less than her male counterparts.

88.     As a proximate result of Defendants' conduct, Plaintiff has suffered emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

## COUNT FIVE
## Retaliation in Violation of the NYSHRL
### (N.Y. Exec. Law § 296)

89.     Plaintiff hereby repeats and realleges paragraphs 1 through 88 of the Complaint as if more fully set forth herein.

90.     Pursuant to the NYSHRL, it shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified, or assisted in any proceedings under this article. See N.Y. Exec. Law § 296(7).

91.     Plaintiff engaged in protected activity under the NYSHRL by opposing discriminatory conduct that would constitute a violation of the NYSHRL.

92.     Defendants were aware of the protected activity because Plaintiff notified them when she complained about the discriminatory treatment she endured.

93.     Defendants nonetheless subsequently took adverse action and terminated her.

15

94.     Defendants undertook the adverse employment action against Plaintiff because she complained about the discrimination she endured on account of her sex.

95.     As a proximate result of Defendants' conduct, Plaintiff has suffered emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

## COUNT SIX
## Discrimination in Violation of the NYCHRL
## (N.Y.C. Admin. Code § 8-107(1)(a))

96.     Plaintiff hereby repeats and realleges paragraphs 1 through 95 of the Complaint as if more fully set forth herein.

97.     The NYCHRL provides that it shall be an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the actual or perceived sex of any person to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions, or privileges of employment. See N.Y.C. Admin. Code § 8-107(1)(a).

98.     Pursuant to the NYCHRL, an employer is liable for unlawful discriminatory practices based upon the conduct of an employee where the employee exercised managerial or supervisory responsibility or the employer knew of the employee's or agent's discriminatory conduct and acquiesced in such conduct or failed to take immediate and appropriate corrective action.

99.     Further, an employer shall be deemed to have knowledge of an employer's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility, or the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct. See N.Y.C. Admin. Code § 8-107(13).

16

100.    Pursuant to the NYCHRL, it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so.  See N.Y.C. Admin. Code § 8-107(6).

101.    Pursuant to the NYCHRL, any person claiming to be aggrieved by an unlawful discriminatory practice as defined in chapter one of this title shall have a cause of action in any court of competent jurisdiction for damages, including punitive damages, and for injunctive relief and such other remedies as may be appropriate.  See N.Y.C. Admin. Code § 8-502.

102.    Defendants discriminated against Plaintiff because of her sex in violation of § 8-107(1)(a) of the NYCHRL.

103.    Plaintiff is a female, and therefore is a member of a protected class under the NYCHRL.

104.    Defendants engaged in a course of conduct, as stated above, which resulted in adverse employment actions against Plaintiff because of her sex, including but not limited to taking away her office space and paying her less than her male counterparts.

105.    As a proximate result of Defendants' conduct, Plaintiff has suffered emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

### COUNT SEVEN
### Retaliation in Violation of the NYCHRL
### (N.Y.C. Admin. Code § 8-107(7))

106.    Plaintiff hereby repeats and realleges paragraphs 1 through 103 of the Complaint as if more fully set forth herein.

17

107. Pursuant to the NYSHRL, it shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate against any person because, among other things, such person has opposed any practice forbidden under this chapter, filed a complaint, testified, or assisted in any proceeding under this chapter, commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter. See N.Y.C. Admin. Code § 8-107(7).

108. Plaintiff engaged in protected activity under the NYCHRL by opposing discriminatory conduct that would constitute a violation of the NYCHRL.

109. Defendants were aware of the protected activity.

110. Defendants nonetheless undertook an adverse employment action against Plaintiff by terminating her.

111. Defendants undertook the adverse employment action against Plaintiff because she complained about the discrimination she endured on account of her sex.

112. As a proximate result of Defendants' conduct, Plaintiff has suffered emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff for her past and future loss of wages and benefits, plus interest;

C. Award to Plaintiff liquidated damages incurred in connection with this action, equal to the sum amount of backpay and interest;

D. Award to Plaintiff compensatory damages for emotional distress and punitive damages;

18

E. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with

this action; and

F. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully

demands a trial by jury on all claims properly triable by a jury.

Dated: Lake Success, New York
      January 4, 2021

                    Respectfully submitted,

                    **MILMAN LABUDA LAW GROUP PLLC**

                        /s
                    Joseph M. Labuda, Esq.
                    Emanuel Kataev, Esq.
                    3000 Marcus Avenue, Suite 3W8
                    Lake Success, NY 11042-1073
                    (516) 328-8899 (office)
                    (516) 328-0082 (facsimile)
                    joe@mllaborlaw.com
                    emanuel@mllaborlaw.com

19

# EEOC (INQUIRY) NUMBER: 520-2021-01195

## Inquiry Information

### REASON(S) FOR CLAIM

**Date of Incident (Approximate):**  12/01/2020

**Reason for Complaint:**  Sex (including pregnancy, sexual orientation and gender identity), Retaliation - I complained to my employer about job discrimination

**Pay Disparity:**  Yes

**Location of Incident:**  New York

**Submission (initial inquiry) Date:**  01/05/2021

**Claim previously filed as charge with EEOC?**  No

**Approximate Date of Filing:**  N/A

**Charge Number:**  N/A

**Claim previously filed as complaint with another Agency?**  No

**Agency Name:**  N/A

**Approximate Date of Filing:**  N/A

**Nature of Complaint:**  N/A

### INQUIRY OFFICE

**Receiving:**  New York District Office

**Accountable:**  New York District Office

### APPOINTMENT

**Appointment Date and time:**

**Interview Type:**

### APPROXIMATE DEADLINE FOR FILING A CHARGE:  09/28/2021

### POTENTIAL CHARGING PARTY

**First Name, Middle Initial:**  Emanuel

**Last Name:**  Kataev

**Street or Mailing Address:**  3000 Marcus Avenue

**P379**

**Address Line 2:** Suite 3W8

**City, State, Zip:**  LAKE SUCCESS, NY, 11042

**Country:**  UNITED STATES OF AMERICA

**Year of Birth:**

**Email Address:**  emanuel@mllaborlaw.com

**Home Phone Number:**  (516) 328-8899

**Cell Phone Number:**  (516) 303-1395

## RESPONDENT/Employer

**Organization Name:**  NYU LANGONE HEALTH SYSTEM, ET AL.

**Type of Employer:**  Business or non-profit organization that I applied to, work for, or worked for

**Number of Employees:**  20 or more employees

**Street or Mailing Address:**  550 1ST AVE

**Address Line 2:**

**City, State, Zip Code:**  NEW YORK,NY, 10016

**County:**  New York

**Phone Number:**

## RESPONDENT CONTACT

**First and Last Name:**

**Email Address:**

**Phone Number:**

**Title:**  Human Resources Director or Owner

## LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT

**Street or Mailing Address:**

**Address Line 2:**

**City, State, Zip Code:**

**County:**

## POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:**  F

**Disabled:**  I do not have a disability

**Are you Hispanic or Latino?**  not hispanic or latino

**Ethnicity:**  White,

**National Origin:**  American(U.S.)

## Adverse Action(s)

See attached complaint.

# Supplemental Information

### What Reason(s) were you given for the action taken against you?

See attached complaint.

### Was anyone in a similar situation treated the same, better, or worse than you?

See attached complaint.

### Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide.

See attached complaint.

### Please tell us any other information about your experience?

See attached complaint.



 Welcome, Emanuel | Log Out

Filing with EEOC

| Assessment | Inquiry | Schedule Interview | More Details | File Charge |

## My Charge

**EEOC Number: 520-2021-01195**

**Status: Charge is filed**

The charge of employment discrimination filed on **01/08/2021** with the U.S. Equal Employment Opportunity Commission (EEOC) by **Sari Edelman** against **NYU LANGONE HEALTH SYSTEM** is available for you to view online

The **New York District Office** is handling this charge. EEOC has not assigned a point of contact for this charge at this time. When a point of contact is assigned, the contact's name and email address will appear here.

**Add/View Representative**    **Update My Information**

## My Documents

If you have documents supporting your charge, please upload them using this portal. Documents that you send and any that EEOC may send to you (including your Charge of Discrimination and the respondent's Position Statement, if you request a copy) are listed below. You can open a document to review it or download and save it.

**Be sure you save all documents related to your charge, including Email correspondence.** Your charge and documents related to it will be available to you online until 90 days after EEOC closes it.

Click using this portal to upload documents.

**Upload**

| Name | Type | Added On | Added By |
|------|------|----------|----------|
| 520-2021-01195EdelmanF5.pdf | Charge of Discrimination | 01/27/2021 | Philip Reo |
| 520-2021-01195 Fax.pdf | Correspondence To/From Charging Party's Attorney | 01/06/2021 | Richard Buckley |

## Additional Information

What you should KNOW after filing a charge      What you should DO after filing a charge

How to request Respondent's Position Statement

**If you have questions**
You may find answers in the Frequently Asked Questions (FAQ)