UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DR. SARI EDELMAN,

                                                    **Case No.:** 1:21-cv-502 (LJL) (GWG)

                    Plaintiff,

      -against-

NYU LANGONE HEALTH SYSTEM, NYU LANGONE HOSPITALS, NYU LANGONE MEDICAL CENTER, NYU LANGONE NASSAU RHEUMATOLOGY, NYU SCHOOL OF MEDICINE, NYU GROSSMAN SCHOOL OF MEDICINE, NYU HOSPITALS CENTER, ANDREW T. RUBIN, DAVID KAPLAN, JOSEPH ANTONIK, and JOSHUA SWIRNOW,

                    Defendants.
------------------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HER MOTION
FOR JUDGMENT AS A MATTER OF LAW
<u>OR, ALTERNATIVELY, FOR A NEW TRIAL</u>**

                                                      **MILMAN LABUDA LAW GROUP PLLC**
                                                        Joseph M. Labuda, Esq.
                                                        Emanuel Kataev, Esq.
                                                        3000 Marcus Avenue, Suite 3W8
                                                        Lake Success, NY 11042-1073
                                                        (516) 328-8899 (office)
                                                        (516) 328-0082 (facsimile)
                                                        joe@mllaborlaw.com
                                                        emanuel@mllaborlaw.com

                                                        *Attorneys for Plaintiff*
                                                        *Dr. Sari Edelman*

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................................1

II. ARGUMENT..................................................................................................................2

    A. Manifest Injustice Would Result in Upholding the Jury's Verdict................................2

    B. There is No Evidence that Drs. Modi and Edelman Performed Unequal Work..........................................................................................................................4

        i. Skill..........................................................................................................................4

        ii. Effort.......................................................................................................................4

        iii. Responsibility........................................................................................................7

    C. Defendants Failed to Establish a *Bona Fide* Factor Other than Sex............................7

    D. Dr. Edelman is Entitled to a New Trial......................................................................10

III. CONCLUSION ............................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

Aldrich v. Randolph Cent. Sch. Dist.,
  963 F.2d 520 (2d Cir. 1992) ............................................................................................... 9

Belfi v. Prendergast,
  191 F.3d 129 (2d Cir. 1999) ............................................................................................... 9

Burris v. Nassau Cty.,
  332 F. Supp. 3d 596 (E.D.N.Y. 2018) ............................................................................... 4

Cangemi v. Town of East Hampton,
  374 F. Supp. 3d 227 (E.D.N.Y. 2019) ............................................................................... 3

EEOC v. J.C. Penney Co., Inc.,
  843 F.2d 249 (6th Cir. 1988) ............................................................................................. 9

Husser v. New York City Dept. of Ed.,
  137 F. Supp. 3d 253 (E.D.N.Y. 2015) ............................................................................... 9

Kaplan v. N.Y. State Dep't of Labor,
  No. 18-CIV.-3629 (KPF), 2019 U.S. Dist. LEXIS 121131 (S.D.N.Y. July 19, 2019) ..... 10

Kirsch v. Fleet Street, Ltd.,
  148 F.3d 149 (2d Cir. 1998) ............................................................................................... 2

Knox v. John Varvatos Enterprises Inc.,
  512 F. Supp. 3d 470 (S.D.N.Y. 2021) ........................................................................... 5, 6

Marshall v. Meyer Memorial Hosp.,
  1982 WL 1991 (W.D.N.Y. 1982) ...................................................................................... 6

Norton v. Sam's Club,
  145 F.3d 114 (2d Cir. 1998) ............................................................................................... 3

Osborn v. Home Depot U.S.A., Inc.,
  518 F. Supp. 2d 377 (D. Conn. 2007) ............................................................................... 9

Pahuta v. Massey–Ferguson, Inc., 170 F.3d 125, 129 (2d Cir. 1999)
  843 F.2d 249 (6th Cir. 1988) ............................................................................................. 2

Rothstein v. Carriere,
  373 F.3d 275 (2d Cir. 2004) ............................................................................................... 2

Setelius v. Nat'l Grid Elec. Servs. LLC,
  No. 11-CIV.-5528, 2014 WL 4773975, at *31 (E.D.N.Y. Sept. 24, 2014) ......................... 9

Sojak v. Hudson Waterways Corp.,
  590 F.2d 53 (2d Cir. 1978) ............................................................................................... 3

Stephenson v. Doe,
  332 F.3d 68 (2d Cir. 2003) ............................................................................................... 3

Tomka v. Seiler Corp.,
  66 F.3d 1295 (2d Cir. 1995) ............................................................................................. 8

Usery v. Columbia Univ.,
  568 F.2d 953 (2d Cir. 1977) ............................................................................................. 6

**Rules**

Fed. R. Civ. P. 50 ................................................................................................................ 2, 3, 4

Fed. R. Civ. P. 59 ...................................................................................................................... 2

I.      **PRELIMINARY STATEMENT**

Contrary to Defendants' assertions, there is absolutely no evidence to support the jury's verdict that Plaintiff Dr. Sari Edelman ("Dr. Edelman" or "Plaintiff") failed to establish a *prima facie* case under the federal and state Equal Pay Act ("EPA") as to Dr. Anang Modi ("Dr. Modi"), nor is there any evidence to support the jury's verdict that Dr. Edelman was paid less than Dr. Modi due to a *bona fide* factor other than sex.   As a result, manifest injustice would result in upholding the jury's verdict on Dr. Edelman's EPA claims as it relates to Dr. Modi.

In seeking to shore up support for the jury's verdict as it relates to Dr. Modi, Defendants inappropriately reference and rely on irrelevant evidence related to Drs. Andrew Goldberg ("Dr. Goldberg") and Andrew Porges ("Dr. Porges"), which is beyond the scope of the instant motion and therefore not at all pertinent to the question before this Court.  As to Dr. Modi, Defendants argue, without any evidentiary support, that he was hired to build out and expand NYU's rheumatology practice at its Huntington location to support his substantially higher compensation. Moreover, the weight of the evidence shows that – unlike Drs. Goldberg and Porges – Dr. Modi did not have any administrative responsibilities which could arguably justify a higher salary. Indeed, although Dr. Modi had some experience with administrative work at his prior position before joining NYU, no evidence was adduced that he performed any such work for NYU.

In fact, Dr. Modi himself testified that he had no such role.  Similarly, Defendants argue that Dr. Modi had leadership roles while Dr. Edelman did not, despite the fact Dr. Edelman established and ran a successful private practice, which Andrew Rubin ("Rubin") acknowledged. Again, Dr. Modi simply worked as a rheumatologist for NYU and had no leadership role warranting a higher salary.

1

Defendants also improperly argue that Dr. Modi's wRVU target was greater than Dr. Edelman's to justify the higher salary they paid him, but Defendants consistently presented evidence at trial that there was no correlation between wRVUs and compensation. Similarly, Defendants argue that Dr. Modi did not have a business loan, but ignore the fact that in 2017, when he joined, Dr. Edelman's loan had already been paid off and was no longer a factor in her 2017 compensation. The only other evidence Defendants can muster to justify Dr. Modi's substantially higher salary as compared to Dr. Edelman's is his measly two (2) years of experience over Dr. Edelman, which is clearly insufficient to justify a $82,000.00 pay disparity.

Because his administrative or leadership qualifications never entered into the compensation equation, two years' experience alone is insufficient to justify such a large differential, and the remaining attempts to justify his vastly greater pay as compared to Dr. Edelman are unavailing, no reasonably jury could find that: (i) Dr. Modi was not a proper comparator to Dr. Edelman; (ii) Dr. Edelman was not paid less for doing equal work; and (iii) the pay differences between Drs. Edelman and Modi were based on factors other than sex. Accordingly, this Court should enter judgment against Defendants and in favor of Plaintiff reversing the jury's verdict on Plaintiff's EPA claims as they relate to Dr. Modi notwithstanding the verdict or, alternatively, for a new trial.

## II. ARGUMENT

### A. Manifest Injustice Would Result in Upholding the Jury's Verdict

Defendants argue that because Dr. Edelman never made a motion for a directed verdict pursuant to Rule 50(a) at trial, she is barred from seeking relief under Rule 50(b). This is simply not the law. A court may grant judgment as a matter of law where no Rule 50(a) motion was made, if necessary to prevent "manifest injustice." See Pahuta v. Massey–Ferguson, Inc., 170 F.3d 125, 129 (2d Cir. 1999); see also Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 164 (2d Cir. 1998).

"Manifest injustice exists where a jury's verdict is wholly without legal support." See Rothstein v. Carriere, 373 F.3d 275, 291 (2d Cir. 2004). Here, the evidence adduced at trial shows that Dr. Edelman met her *prima facie* case and Defendants' *bona fide* factor other than sex defense was wholly without legal support, as there was no basis to pay Dr. Modi $360,000.00 in compensation while paying Dr. Edelman $278,000.00 for the same work. In fact, the Second Circuit has granted relief under Rule 50(b) notwithstanding the failure to make a Rule 50(a) motion where confusing circumstances led to a jury verdict that make it unjust to enforce a verdict. See Stephenson v. Doe, 332 F.3d 68, 75–76 (2d Cir. 2003) ("We believe, under the confusing circumstances in this case, that enforcing the jury's verdict on qualified immunity may unjustly deprive Stephenson of the right to recover for a violation of his constitutional rights").

Similarly, courts routinely grant Rule 50(b) motions to prevent manifest injustice where a jury's verdict is contrary to the evidence adduced at trial. See Sojak v. Hudson Waterways Corp., 590 F.2d 53, 54 (2d Cir. 1978); see also Norton v. Sam's Club, 145 F.3d 114, 117-18 (2d Cir. 1998) (court can order a new trial even in the absence of a renewed motion for judgment as a matter of law if failure to do so would result in "manifest injustice"). In Sojak, the Second Circuit held:

> … the unseaworthiness of the Transidaho was clearly established and that the jury's verdict to the contrary cannot stand … Plaintiff did not move for a directed verdict pursuant to Rule 50(a) …. Although he did move to set the verdict aside, Rule 50(b) allows a judgment n. o. v. to be granted only if the moving party requested a directed verdict before the submission of the case to the jury. However, we are not powerless to grant relief. Where a jury's verdict is wholly without legal support, we will order a new trial in order to prevent a manifest … injustice. … We therefore remand the case for a new trial on the merits of the unseaworthiness claim.

See 590 F.2d at 54-55.

As such, this Court may properly consider Dr. Edelman's instant motion based on the lack of any evidence to support the jury's findings on her EPA claims as to Dr. Modi.

3

Where, as here, the evidence adduced at trial does not support the verdict, Plaintiff's motion for judgment as a matter of law should be granted to prevent manifest injustice. See Cangemi v. Town of East Hampton, 374 F. Supp. 3d 227, 238 (E.D.N.Y. 2019) ("the Court finds that the verdict was against the weight of the evidence. The Town did not control the jetties, could not and did not engage in conduct, and lacked the requisite intent") (citing Burris v. Nassau Cty., 332 F. Supp. 3d 596, 610 (E.D.N.Y. 2018) ("If [the court] did not grant the Rule 50 motion, at the very least, [the court] would grant a new trial ... because the jury's finding is against the weight of the evidence and a manifest injustice"). Indeed, as set forth below, the trial record provides that Dr. Edelman established a *prima facie* claim under the EPA and that Defendants did not articulate a *bona fide* factor other than sex for the pay disparity.

**B.     There is No Evidence that Drs. Modi and Edelman Performed Unequal Work**

   i.     Skill

There is no dispute Dr. Edelman went to the same medical school and completed the same exact fellowships as Dr. Modi. See Plaintiff's Exhibits ("Pl. Exs.") 15 and 46.[1] However, Defendants argue that Dr. Modi's administrative experience warranted a higher salary. But the record is clear that he had no such responsibilities at NYU. See ECF Docket Entry 273-1 ("Tr.") at 1266:7-20, 1280:16-1281:1, 1284:16-22. Defendants also argue that Dr. Modi's two years of experience and leadership skills (which he did not use at NYU), and that his skills were necessary to meet its business goal of expanding its practice on Long Island (which he was not tasked with), justifies a $82,000.00 pay differential. See Pl. Exs. 15 and 46. This is not enough. The Second Circuit has found that even ten (10) years more experience is insufficient without linking the experience to the difference in pay. See Tomka v. Seiler Corp., 66 F.3d 1295, 1312 (2d Cir. 1995)

---

[1] All exhibits are attached in the Reply Declaration of Emanuel Kataev in numerical order.

("Seiler contended … that Abrams' higher salary resulted from the fact that he had over ten years of experience with a … competitor. While Abrams' experience may very well explain the discrepancy, Seiler has the burden of persuasion to show both that it *based Abrams' higher salary on this factor* and *that experience is a job-related qualification for the position in question*. … Seiler's mere assertion that Abrams' salary was based on his experience is insufficient to meet this burden …") (emphasis added).  Here, Defendants presented no evidence to meet their burden of establishing such a link.  Indeed, Dr. Porges made $340,000.00 upon starting with many years more experience than Dr. Modi, who earned $360,000.00 upon hire.  Tr. at 984:20-986:13 (Rubin).  Therefore, no reasonable jury could conclude Dr. Modi had greater skill based on this trial record.

      ii.      Effort

Defendants also argue that Dr. Modi exerted more effort and that his RVU target was substantially higher than Dr. Edelman's, warranting higher compensation to him.  But Defendants repeatedly presented evidence during trial that there is no correlation between compensation and the number of wRVUs.  Tr. at 337:15-338:2, 1366:24-1367:10.  Indeed, because Dr. Raminfard was paid $265,000.00 to meet a wRVU target of 3,900, and Dr. Goldberg was paid $290,000.00 to meet a wRVU target of 3,481, there is no basis for the jury to conclude that Dr. Modi was paid more than Dr. Edelman because his wRVU target was 6,100 while Dr. Edelman's was 5,200.  Moreover, Drs. Edelman's and Modi's contracts each provide for identical effort (100% clinical) under the section actually entitled "Effort."  Pl. Exs. 8-9, 24, and 35-36.

Defendants also argue that Dr. Modi saw patients five (5) days a week while Dr. Edelman "generally" saw patients only four (4) days a week.  However, the evidence adduced at trial establishes that Dr. Edelman routinely worked and saw patients five (5) days a week, and similarly consistently exceeded her wRVU targets.  Tr. at 180:13-15, 313:17-24.

Defendants' attempt to argue that Dr. Modi's higher wRVU target equates to greater effort also misses the mark. The jury was specifically instructed that that "equal effort" does not require people to use effort in exactly the same way, and that if one job requires additional tasks that consume a *significant amount of extra time and effort* that the other job does not require, then the jobs do not require substantially equal effort. See Tr. at 1442:19-1443:9. As such, even if Dr. Modi saw more patients than Dr. Edelman (or spent less time with each patient, unlike Dr. Edelman), this does not equate to greater effort on his part as Dr. Edelman took more time with each patient to understand their needs. Tr. at 1243:18-1244:4; see also Knox v. John Varvatos Enterprises Inc., 512 F. Supp. 3d 470, 480 (S.D.N.Y. 2021) (finding substantially equal effort based on identical job descriptions).

Defendants further confuse the amount of work with the type of work to justify their position, when, in reality, the test is whether the comparators perform the same type of work. Tr. at 200:21-201:4 (Edelman), 432:4-433:7 (Mehta); see also Pl. Exs. 8 and 9; compare with Pl. Ex. 35 (showing that Drs. Edelman's and Modi's faculty appointments, tenure status, employment titles, and full-time status were identical); see also Tr. at 313:17-315:16 (Dr. Edelman treated patients), 812:7-12 (Ruiz testimony regarding Dr. Edelman treating patients), 1008:5-7 (Rubin testimony regarding all rheumatologists treating patients); 1256:1-8, 1265:18-22 (Dr. Modi treated patients). There is thus no dispute that Drs. Edelman's and Modi's duties consist of equal work, i.e., that they see and treat patients, and prescribe medicine and other treatments. Id.

Here, like in Knox, Dr. Edelman's job description is identical to Dr. Modi's. As such, their work required substantially equal effort. Indeed, courts look to the core task in assessing effort, not the underlying performance metrics, in assessing effort. See Usery v. Columbia University, 568 F.2d 953, 959 (2d Cir. 1977) ("So long as the ultimate degree of exertion remains comparable,

6

the mere fact that two jobs call for effort different in kind will not render them unequal"); see also Marshall v. Meyer Memorial Hosp., 1982 WL 1991, at *11 (W.D.N.Y. 1982) ("The *core tasks* are essentially the same, and *require substantially equal effort …*"). Further, Defendants' presentation of evidence concerning wRVUs confused the jury, in that this metric relates to quantity and/or quality of production, for which defense Defendants did not adduce any evidence in support. Tr. at 258:15-259:9, 264:6-15, 1152:12-1154:20. In fact, the Court specifically rejected Defendants' request for a "system of quality/quantity" jury instruction on the grounds that there was insufficient evidence in the trial record to support such a defense.

As such, Defendants cannot rely on any wRVU disparity, and there was no other evidence to indicate that Dr. Modi exerted greater effort than Dr. Edelman in his job.

        iii.      Responsibility

With respect to responsibility, as set forth herein, there is no evidence in the record that Dr. Modi had a greater responsibility than Dr. Edelman. Defendants assert that Dr. Modi was actually responsible for expanding the Huntington practice. Yet, unlike Drs. Goldberg and Porges, whose contracts expressly apportioned their responsibilities to administrative time, Dr. Modi's contract only provided for clinical responsibilities. See Pl. Exs. 24-26, 31-36. As such, there was no evidence in the record to conclude that Dr. Modi was hired to build out the Huntington practice at NYU. Indeed, the only evidence adduced concerning this point was stricken and, even if credited, does not provide any basis for a jury to conclude Dr. Modi did anything to build the Huntington practice. Tr. at 1280:16-1281:1. As with effort, Dr. Edelman's and Dr. Modi's contracts each provide for identical general and clinical responsibilities. Indeed, their general and clinical responsibilities are identical under their contracts under the section aptly entitled "Responsibility." See Pl. Exs. 8 at D50 and D52-D53, 35 at D889 and D891-D892.

7

There was thus no evidence to indicate that Dr. Modi had any greater responsibilities.

### C. Defendants Failed to Establish a *Bona Fide* Factor Other than Sex

There is also a complete absence of evidence to support the Defendants established that the clear pay disparity was based on a *bona fide* factor other than sex. At trial, Rubin testified that he reviewed the following items to determine compensation for physicians: (i) business plan; (ii) credentials; (iii) need in the network; (iv) years of experience; (iv) external activities; (v) geography; (vi) reputational status. Tr. at 921:8-922:13. None of these factors give rise to a *bona fide* factor other than sex. Dr. Modi had no business plan and, as noted above, both had similar years of experience. Tr. at 937:13-938:7. Geography and need in the network are neutral as both Drs. Edelman and Modi worked in Huntington. There was no evidence at trial concerning external activities. Finally, Drs. Edelman and Modi's reputational status was equal, and there was no evidence to the contrary at trial.

Defendants argue that Dr. Modi is similar to Dr. Goldberg in that he was hired to further NYU's goal of geographical expansion, but this is unsupported by the testimony that Dr. Modi simply worked as a rheumatologist with no leadership or administrative roles. In fact, Dr. Modi's contract lacks any not mention of "geographical expansion." Moreover, Dr. Modi himself testified that he did not have any such administrative role.

Similarly, the existence of Dr. Modi's administrative experience cannot form the basis for paying him more when – again – Dr. Modi did not perform any administrative work. While Defendants rely on Husser v. New York City Dept. of Ed., 137 F. Supp. 3d 253, 269 (E.D.N.Y. 2015), Osborn v. Home Depot U.S.A., Inc., 518 F. Supp. 2d 377, 385 (D. Conn. 2007), and Setelius v. Nat'l Grid Elec. Servs. LLC, No. 11-CIV.-5528, 2014 WL 4773975, at *31 (E.D.N.Y. Sept. 24, 2014) for the broad proposition that an employer may pay higher salaries to employees due to

greater experience, market forces, and better credentials, none of those factors are present here, as Dr. Edelman has relatively the same experience and virtually identical credentials to Dr. Modi. Defendants thus failed to adduce any evidence as to market forces.

Defendants' only two distinguishing characteristics between Dr. Modi and Dr. Edelman – years of experience and prior pay – have no bearing on the work they perform such that they could avail themselves of the *bona fide* factor than sex defense. See Belfi v. Prendergast, 191 F.3d 129, 136 (2d Cir. 1999) ("… to successfully establish the 'factor other than sex' defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential"); see also Aldrich v. Randolph Cent. School Dist., 963 F.2d 520, 525-27 & n. 1 ("Without a job-relatedness requirement, the factor-other-than-sex defense would provide a gaping loophole in the statute through which many pretexts for discrimination would be sanctioned"); EEOC v. J.C. Penney Co., Inc., 843 F.2d 249, 253 (6th Cir. 1988) ("[T]he 'factor other than sex' defense does not include literally any other factor, but a factor that, at a minimum, was adopted for a legitimate business reason")). Here, there is no evidence presented by Defendants justifying why Dr. Modi's pay is substantially higher than Dr. Edelman's pay, except that Dr. Modi was earning $340,000.00 and that he sought $360,000.00 in order to come to NYU. Tr. at 330:1-9 (Edelman), 714:10-13 (Swirnow), 999:15-1000:3 (Rubin). Meanwhile, Dr. Edelman sought $260,000.00 and only received $207,000.00. Tr. at 81:7-9 (Edelman).

As to prior pay, Defendants merely argue that prior pay alone was not relied on to determine compensation, but there was no evidence the jury could rely on to support that contention. In fact, this Court specifically noted that other courts have rejected prior pay as an affirmative defense to an unequal pay claim.

Defendants' other argument that Dr. Edelman's business loan was the reason Dr. Modi was paid more is equally unavailing, as her loan was paid off at the time Dr. Modi was onboarded in 2017. Tr. at 1259:6-13. Indeed, Defendants' argument concerning the loan is moot when comparing Dr. Edelman's compensation under her renewal contract in 2017 because the loan was paid off by then, and there is no justification provided by Defendants for paying Dr. Modi $82,000.00 more for the same work.

Finally, Defendants failed to address Dr. Edelman's arguments as to the New York EPA, merely stating that those claims are analyzed under the same standard as the EPA. However, because New York EPA claims differ as set forth in Dr. Edelman's moving papers (in fact, the Court instructed the jury in both laws), Defendants should be deemed to have abandoned that argument. See Kaplan v. N.Y. State Dep't of Labor, No. 18-CIV.-3629 (KPF), 2019 U.S. Dist. LEXIS 121131, at *14-15 (S.D.N.Y. July 19, 2019) (holding that courts will normally deem a claim abandoned if a party fails to address or oppose an adversary's arguments).

### D. Dr. Edelman is Entitled to a New Trial

Alternatively, this Court should find that the jury's verdict is against the weight of the evidence, such that a new trial is warranted for Dr. Edelman's EPA claims as they relate to Dr. Modi. Defendants argue that there was no serious error warranting a new trial, but their arguments as to why Dr. Modi performed unequal work as compared to Dr. Edelman fail as set forth above. Similarly, Defendants failed to establish the existence of any evidence to support their *bona fide* factor other than sex defense simply because no such evidence was proffered at trial.

### III. CONCLUSION

Based on the trial record, Plaintiff is entitled to judgment as a matter of law on her EPA claims as they relate to Dr. Modi. Plaintiff is thus entitled to judgment as a matter of law.

Dated: Lake Success, New York
       October 12, 2023                      Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

  */s/ Joseph M. Labuda, Esq.*
Joseph M. Labuda, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com
joe@mllaborlaw.com

*Attorneys for Plaintiff*
*Dr. Sari Edelman*