**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. SARI EDELMAN,<br><br>                    Plaintiff,<br><br>– against –<br><br>NYU LANGONE HEALTH SYSTEM, NYU LANGONE HOSPITALS, NYU LANGONE MEDICAL CENTER, NYU LANGONE NASSAU RHEUMATOLOGY, NYU SCHOOL OF MEDICINE, NYU GROSSMAN SCHOOL OF MEDICINE, NYU HOSPITALS CENTER, ANDREW T. RUBIN, DAVID KAPLAN, JOSEPH ANTONIK, and JOSHUA SWIRNOW,<br><br>                    Defendants. | Case No. 1:21-cv-502 (LJL)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO ALTER OR AMEND THE JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e)**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ............................................................................................................................ 2

ARGUMENT .................................................................................................................................. 4

    I.    THE AWARD OF $700,000 IN FRONT PAY SHOULD BE VACATED OR REDUCED ................................................................................ 4

        A.    Legal Standard ................................................................................................ 4

        B.    Discussion ....................................................................................................... 5

            1.    Defendants' August 2023 Motion for Remittitur Remains Before the Court ..................................................................................... 5

            2.    The Front Pay Award Should Be Vacated ......................................... 10

                a.    The jury's damages award lacks any evidentiary support .............. 10

                b.    Plaintiff's damages were capped by her pretrial filings ................. 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson Grp., LLC v. City of Saratoga Springs*,
   805 F.3d 34 (2d Cir. 2015)......................................................................................................5

*Bergerson v. N.Y. State Off. of Mental Health*,
   652 F.3d 277 (2d Cir. 2011)..................................................................................................12

*Brown v. City of Syracuse*,
   673 F.3d 141 (2d Cir. 2012)....................................................................................................6

*Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*,
   824 F. Supp. 2d 573 (S.D.N.Y. 2011)..............................................................................12, 13

*Dunlap-McCuller v. Riese Org.*,
   980 F.2d 153 (2d Cir. 1992).............................................................................................10, 14

*Edelman v. NYU Langone Health System, et al.*,
   No. 24-251-cv (2d Cir. 2024) .................................................................................................4

*Exodus Partners, LLC v. Cooke*,
   2007 WL 120053 (S.D.N.Y. Jan. 17, 2007) ...........................................................................5

*Greenway v. Buffalo Hilton Hotel*,
   143 F.3d 47 (2d Cir. 1988)....................................................................................................10

*Kerman v. City of New York*,
   374 F.3d 93 (2d Cir. 2004)......................................................................................................6

*Luca v. Cnty. of Nassau*,
   No. 04-cv-4898, 2008 WL 2435569 (E.D.N.Y. June 16, 2008), *rev'd on other
   grounds*, 344 Fed. Appx. 637 (2d Cir. 2009)........................................................................13

*Newton v. City of New York*,
   171 F. Supp. 3d 156 (S.D.N.Y. 2016)..............................................................................7, 8, 9

*Newton v. City of New York*,
   779 F.3d 140 (2d Cir. 2015)................................................................................................7, 8

*Olaechea v. City of New York*,
   No. 17-cv-4797, 2022 WL 3211424 (S.D.N.Y. Aug. 9, 2022).......................................4, 5, 11

*Olivares v. Brentwood Indus.*,
   822 F.3d 426 (8th Cir. 2016).................................................................................................13

*Press v. Concord Mortg. Corp.*,
    No. 08-cv-9497, 2010 WL 3199684 (S.D.N.Y. Aug. 11, 2010)..............................................14

*Smith v. Farmstand*,
    No. 11-cv-9147, 2016 WL 5912886 (N.D. Ill. Oct. 11, 2016) ................................................11

*Sompo Japan Ins. Co. of Am. v. Norfolk Southern Ry. Co.*,
    762 F.3d 165 (2d Cir. 2014).................................................................................................5, 6

*Thomas v. iStar Fin., Inc.*,
    508 F. Supp. 2d 252 (S.D.N.Y. 2007).........................................................................11, 12, 13

*Tingley Sys., Inc. v. Norse Sys., Inc.*,
    49 F.3d 93 (2d Cir. 1995) .........................................................................................................4

*Torres v. Metro-North R.R. Co.*,
    No. 20-cv-10782, 2023 WL 4487726 (July 12, 2023)...........................................................4, 5

*Trademark Rsch. Corp. v. Maxwell Online, Inc.*,
    995 F.2d 326 (2d Cir. 1993).................................................................................................5, 11

*Tse v. UBS Fin. Servs., Inc.*,
    568 F. Supp. 2d 274 (S.D.N.Y. 2008).......................................................................................4

*Whittlesey v. Union Carbide Corp.*,
    742 F.2d 724 (2d Cir. 1984)....................................................................................................10

**Statutes**

Fed. R. Civ. P. 50................................................................................................................7, 8, 9

Fed. R. Civ. P. 59............................................................................................................6, 7, 8, 9

**PRELIMINARY STATEMENT**

Defendants renew and supplement their previously unaddressed and undecided portion of their August 23, 2023, Motion to Alter or Amend the Judgment Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 59(e) (the "Remittitur Motion"), to vacate or reduce the jury's award of $700,000 specifically for front pay. (*See* Declaration of Richard L. Steer executed August 16, 2023 ("Steer Decl."; ECF Doc. No. 269), Ex. H (ECF Doc. No. 269-8)).

The Remittitur Motion was not decided by the Court at the time it decided Defendants' Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b) ("JNOV Motion"), was never before the Second Circuit on appeal, and was not decided explicitly or implicitly by the Second Circuit in deciding Plaintiff's appeal of the JNOV Motion. Under such circumstances, as has previously been held within the Second Circuit, now that this matter has been remanded to the Court, the Court can and must address the Remittitur Motion.

On its merits, the Remittitur Motion should be granted. Plaintiff has introduced no evidence to justify an award of $700,000 in front pay, a particular category of damages that is limited to compensating a plaintiff for lost salary and benefits following an unlawful discharge or adverse action. To the contrary, the record established at trial conclusively demonstrates that no legal basis for front pay exists. Following her departure from NYU, Plaintiff immediately obtained comparable alternative employment with a salary *exceeding* what she was receiving while working for NYU.[1] Plaintiff's belated claims that she is entitled to front pay based on a lack of employer 401(k) contributions is not supported by competent evidence. Not only has Plaintiff failed to create a record showing that she received such contributions from NYU, but the compensation package

---

[1] The evidence presented at trial shows that the only entity defendant that is a proper defendant is NYU Grossman School of Medicine, a Division of New York University ("NYU"), which was the entity that employed Plaintiff.

1

from her current employer exceeds her previous compensation even if the potential contribution were added.

Moreover, Plaintiff's own repeated representations to this Court confirm that an award of $700,000 cannot be supported. Plaintiff's First Amended Rule 26 Disclosures (Steer Decl., Ex. N ([ECF Doc. No. 269-14](#))) and the Joint Final Pretrial Order ([ECF Doc. No. 197](#)) both show Plaintiff recognized her maximum front pay recovery, based on Plaintiff's own maximalist interpretation of her entitlement to damages, was limited to $137,400. An award $562,600 *above* Plaintiff's best-case scenario is not reasonable and must be vacated. At the very least, the award must be remitted in and limited to the amount she sought in her pretrial filings.

## **BACKGROUND**

Plaintiff brought various claims, including discrimination and retaliation, against NYU Corporate Defendants, and individual defendants, Antonik, Andrew Rubin, Joshua Swirnow, and David Kaplan.

At trial, the Court instructed the jury as to front pay, stating (without objection from Plaintiff):

> Here, if you find for Dr. Edelman on her claims for retaliation under state human rights law or city human rights law, you should consider her damages for front pay. Front pay damages, if any, represent a plaintiff's lost salary and benefits, caused by an unlawful discharge or other adverse action, accruing from the time of trial through some point in the future. If you find that Dr. Edelman will be unable to earn in the future what she would have earned at NYU, then you may award her, as additional compensation, the amount she would have earned during the time period between the date of your verdict and either: 1) the date you believe she would have worked at NYU absent any discriminatory conduct or 2) the date you can reasonably predict that she has a reasonable prospect of obtaining comparable employment. Factors to be considered in determining front pay include the age of the plaintiff and her reasonable prospects of obtaining comparable employment. In doing so, you should bear in mind that the purpose of front pay is to make a plaintiff whole—that is, to put Plaintiff in the position she would have been in if Defendants had not discriminated against her.

> That said, Dr. Edelman has the burden of proving that she actually incurred a loss of front pay. Please note that Dr. Edelman is only entitled to be compensated once for any alleged front pay that arose from the retaliation claims that she has prevailed upon.

(Steer Decl., Ex. G (ECF Doc. No. 269-7), at 1473:9-25; 1474:1-20.)

On July 18, 2023, the Court granted Defendants' motion for judgment as a matter of law as to (1) Kaplan on all claims and for Kaplan, Rubin, and Swirnow on Plaintiff's discrimination claims, and (2) punitive damages. (Steer Decl., Ex. A (ECF Doc. No. 269-1), at 1342:21-22; 1343:1-3.) On July 19, 2023, following an eight-day trial, the jury returned its verdict. (Steer Decl., Ex. H (ECF Doc. No. 269-8).) The jury found Defendants had not violated the Federal Equal Pay Act, New York Labor Law Section 194, Title VII, the SHRL, and the CHRL with respect to Plaintiff's discrimination claim, and that Defendants Rubin and Swirnow had not retaliated against Plaintiff in violation of Title VII, SHRL, and the CHRL. (*Id.*)

The jury's verdict did find that Plaintiff engaged in protected activity and that the NYU Corporate Defendants committed an adverse act against her because of her protected conduct in violation of Title VII, the SHRL, and the CHRL and that Antonik aided or abetted an adverse act against Plaintiff because of her protected conduct in violation of the SHRL and the CHRL. (*Id.*) There were separate questions on the Verdict Form covering compensatory damages and front pay. The jury found that Plaintiff was entitled to no compensatory damages. (*Id.*) Plaintiff was awarded $700,000 for front pay. (*Id.*)

On August 23, 2023, Defendants filed its JNOV Motion and Remittitur Motion. (ECF Doc. No. 267.) On December 26, 2023, the Court granted Defendants' motion for judgment as a matter of law. (*See* Supplemental Declaration of Richard L. Steer executed August 26, 2025 ("Supp. Steer Decl."), Ex. A.) Because the Court resolved the JNOV motion, it specifically noted that it did "not address Defendants' motion for remittitur." (*Id.*, at p. 47). While Plaintiff had also moved for judgment as a matter of law or a new trial, the Court denied Plaintiff's motion. (*Id.*)

3

Plaintiff appealed the Court's decision on the JNOV motion. *See Edelman v. NYU Langone Health System, et al.*, No. 24-251-cv (2d Cir. 2024). Neither Plaintiff's nor Defendants' briefs raised the Remittitur Motion, which the Court had not decided.[2] On June 18, 2025, the Second Circuit affirmed the Court's denial of Plaintiff's motion and the Court's judgment as a matter of law on Plaintiff's claims for punitive damages (Supp. Steer Decl., Ex. B, p. 50.) The Second Circuit instructed the Court to "VACATE the District Court's decision granting judgment notwithstanding the verdict as to Edelman's retaliation claims against Antonik . . . and against NYU . . . with instructions to reinstate the jury's verdict on those claims" and "VACATE the District Court's decision granting judgment as a matter of law to Kaplan on Edelman's retaliation claims under the NYSHRL and NYCHRL, and Remand for a new trial on those claims." (*Id.*). The Second Circuit issued its judgment reflecting the decision. Supp. Steer Decl., Ex. C.

## ARGUMENT

### I. THE AWARD OF $700,000 IN FRONT PAY SHOULD BE VACATED OR REDUCED

#### A. Legal Standard

"If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or under, the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Torres v. Metro-North R.R. Co.*, No. 20-cv-10782, 2023 WL 4487726, at *6 (July 12, 2023) (citing *Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995)). It may "be warranted where it can be demonstrated that the jury awarded specific amounts of damages that were not supported by the record." *Olaechea v. City of New York*, No. 17-cv-4797, 2022 WL 3211424, at *8 (S.D.N.Y. Aug. 9, 2022) (citing *Tse*

---

[2] For the Court's convenience, the appellate briefs on the docket for *Edelman v. NYU Langone Health System, et al.*, No. 24-251-cv (2d Cir. 2024) are Doc. No. 43 (appellant's brief), Doc. No. 56 (respondents' opposition), and Doc. No. 61 (appellant's reply).

4

*v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 287 (S.D.N.Y. 2008) (citing *Trademark Rsch. Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 337 (2d Cir. 1993))).

The Court may determine that remittitur, as opposed to a new trial on damages, is appropriate with respect to a jury's award for lost wages. *Torres*, 2023 WL 4487726, at *13 (remitting award for lost wages which was not supported by the record and was unduly speculative) (citing *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 51 (2d Cir. 2015) (remitting award after concluding "our detailed assessment of the trial evidence bearing on damages convinces us that the jury's inclusion in its award of $900,000 for the lost developer's fee was impermissibly speculative"); *Olaechea*, 2022 WL 3211424, at *9 ("[T]he jury's front pay award must be remitted in its entirety for a 'specific error'—namely, that it was 'impermissibly speculative.' (citation omitted)); *Exodus Partners, LLC v. Cooke*, 2007 WL 120053, at *13 (S.D.N.Y. Jan. 17, 2007) ("A close analysis of the record, however, reveals that the jury awarded certain damages for the breach of contract without adequate support in the record. The Court will therefore require a $240,000 remittitur, bringing the breach-of-contract award to $90,000.")).

Given the jury's excessive and speculative award of damages, with no basis in the record created by Plaintiff, remittitur is appropriate.

### B. Discussion

#### 1. Defendants' August 2023 Motion for Remittitur Remains Before the Court

The Remittitur Motion remains live before this Court. The appeal regarding the Court's grant of Defendants' JNOV Motion had no bearing on this motion and does not prevent the Court from now considering and ruling on the motion.

With the remand of this matter to the Court, the Court is required to "proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Sompo Japan Ins. Co. of Am. v. Norfolk Southern Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) (quoting

5

*Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)).  This applies only to "matters expressly decided by the appellate court [and] precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Sompo Japan Ins. Co. of Am.*, 762 F.3d at 175 (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012) (internal quotation marks omitted)).

But the appeal and mandate are not connected to the Remittitur Motion.  In deciding the JNOV Motion, the Court explicitly decided that it would "not address Defendants' motion for remittitur."  (Supp. Steer Decl., Ex. A, at p. 47).  This decision was the only logical option.  The Court had already determined that it would grant the JNOV Motion, thereby making the Remittitur Motion moot.  For this reason, the parties did not argue the undecided motion before the Second Circuit.  Because the Remittitur Motion was not raised on appeal, it was not addressed by the Second Circuit at all.  (*See generally* Supp. Steer Decl., Ex. B).  It therefore cannot be plausibly argued that the Second Circuit "expressly decided" the question of front pay and whether the jury's award was appropriate.

Nor can it be reasonably claimed that the Second Circuit "impliedly resolved" the issues in the Remittitur Motion.  "Front pay" is never mentioned by the Second Circuit in its decision. (*See generally* Supp. Steer Decl., Ex. B.) The Remittitur Motion, or even the words "remit" or "remittitur", are never mentioned by the Second Circuit in its decision.  (*See generally id.*)  Fed. R. Civ. P. 59 is never mentioned by the Second Circuit in its decision.  (*See generally id.*)  Indeed, the only mentions of the jury's award of $700,000 are (1) in the initial summary of the case (Supp. Steer Decl., Ex. B., p. 2), (2) when providing background for the case (*id.* at p. 5), and (3) when explaining the case's procedural history (*id.* at p. 14).[3]  There is no discussion or decision relating

---

[3]  Further demonstrating how the Second Circuit was only considering the jury's finding of liability on appeal—the issue behind the JNOV Motion—and not the Remittitur Motion's

to whether the award of $700,000 in front pay is supported by the evidence, or whether remittitur is appropriate. Indeed, these three times are the only times damages are mentioned *at all*, aside from the Second Circuit's analysis of the punitive damages dispute.

Nor does the Second Circuit's instructions or mandate say anything about the Remittitur Motion. In relevant part, the Second Circuit instructs the Court to "VACATE the District Court's decision granting judgment notwithstanding the verdict as to Edelman's retaliation claims against Antonik . . . and against NYU . . . with instructions to reinstate the jury's verdict on those claims" and "VACATE the District Court's decision granting judgment as a matter of law to Kaplan on Edelman's retaliation claims under the NYSHRL and NYCHRL, and Remand for a new trial on those claims." (Supp. Steer Decl., Ex. B, p. 50.) This does not instruct the Court to accept the $700,00 front pay award. It does not instruct the Court to dismiss the Remittitur Motion.

Directly on point is the series of events in *Newton v. City of New York*, 07 Civ. 6211 (S.D.N.Y. 2011) (Scheindlin, J.) and *Newton v. City of New York*, No. 11-2610-cv (2d Cir. 2011). The plaintiff, Newton, brought a lawsuit against the City of New York and other defendants. *Newton v. City of New York*, 171 F. Supp. 3d 156, 159 (S.D.N.Y. 2016). Newton won on both of his claims. *Id.* Defendants moved to set aside the verdicts under Fed. R. Civ. P. 50 or, alternatively, for a new trial or remittitur. *Id.* The court granted the defendants' Rule 50 motion and did not reach the merits of the Rule 59 motions. *Id.*

Newton appealed the grant of the Rule 50 motion. *Newton v. City of New York*, 779 F.3d 140, 147 (2d Cir. 2015). The Second Circuit found that a proper analysis "should have compelled

---

questions of the supportability and reasonableness of the damages award, the Second Circuit incorrectly refers to the $700,000 award as being for "compensatory damages" in both background sections. (*See* Supp. Steer Decl., Ex. B.) As the verdict form states, the jury awarded $0 for compensatory damages and all $700,000 for front pay. (Steer Decl., Ex. H (ECF Doc. No. 269-8), p. 7.)

7

the District Court to uphold the 2010 jury verdict." *Id.* at 157. Accordingly, the Second Circuit issued the mandate to "VACATE the judgment of the District Court and REMAND the case with instructions to reinstate the jury verdict with respect to Newton's Fourteenth Amendment claim and to reconsider Newton's First Amendment claim in light of this opinion." *Id.* at 159.

On remand, the defendants asked the Court to address the Rule 59 motions, which Newton argued were abandoned and/or precluded by the Second Circuit mandate. *Newton*, 171 F. Supp. 3d at 159-60. Judge Scheindlin rejected these arguments. Judge Scheindlin explained that two separate Second Circuit cases showed that if the Court's failure to conditionally decide the Rule 59 motions had been addressed on appeal, "the Second Circuit would have remanded them"; therefore, the District Court addressing the Rule 59 motions on remand would be fully consistent with Second Circuit practice. *Id.* at 166-68. Moreover, "these open motions were neither expressly nor impliedly resolved by the Second Circuit." *Id.* at 169. The motions "were not expressly resolved on appeal [as] the Second Circuit did not discuss them in either the Opinion or Mandate vacating this Court's [decision.]" *Id.* And the District Court explains that "[n]or can it be said that these rulings address, even impliedly, any limitations on this Court's authority to adjudicate pending issues upon remand." *Id.* The District Court concludes that "the mandate rule—while certainly applicable to those issues in this case that were resolved on appeal—does not relieve this Court of its obligation to rule on the Rule 59 motions that remain pending." *Id.* Judge Scheindlin considered the remittitur motion and found that the defendants were entitled to a reduction in damages." *Id.* at 177.

*Newton* and the instant case are strikingly similar. The jury found for a plaintiff. The defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 and for one or more motions pursuant to Fed. R. Civ. P. 59. The District Court granted the Rule 50 motion and

did not address the Rule 59 motion(s). The Second Circuit found in the plaintiff's favor and included in the mandate an instruction to vacate the judgment on the Rule 50 motion and reinstate the jury verdict without mentioning remittitur. As Judge Scheindlin observed on remand, while the Rule 59 motions "were not litigated on appeal, the Second Circuit was on notice that these motions had never been decided (and nonetheless declined to address them or otherwise direct this Court as to their resolution on remand)." *Newton*, 171 F. Supp. 3d at 168. Here, too, the Second Circuit had not only the Court's decision, explicitly stating that it would not be addressing the Remittitur Motion given its decision on the Rule 50 motion (Supp. Steer Decl., Ex. A, p 47), but also the briefing which included the Remittitur Motion itself (Supp. Steer Decl., Ex. D).

The outcome, then, should be the same. Judge Scheindlin concluded that the court "must conclude that had the Second Circuit intended to deem defendants' Rule 59 motions abandoned, it would have done so" (*Newton*, 171 F. Supp. 3d at 168) and determined the Second Circuit and the mandate did not preclude hearing the defendants' Rule 59 motions. *Id.* at 168-69. The same is true here.

Judge Scheindlin explained the "fundamental unfairness" in determining otherwise. *Id.* at 168. The Second Circuit has no rule finding remittitur motions abandoned in this situation; therefore, it would prejudice a defendant if a District Court were to create such a rule, particularly where the only effect so far has been to spare the Court's busy schedule and the Parties' limited time. As Judge Scheindlin explained, as the Court would have ended up having the matter remanded to it to address the Remittitur Motion anyhow, proceeding with the motion is fully consistent with Second Circuit practice.

Just like in *Newton*, the Remittitur Motion has not been abandoned and is not precluded by the appeal. And, for the reasons explained below, the Remittitur Motion should be granted.

9

### 2. The Front Pay Award Should Be Vacated

#### a. *The jury's damages award lacks any evidentiary support*

The record established by Plaintiff lacks any evidence to support a finding of front-pay damages.

Front Pay is designed to compensate a plaintiff to "mak[e] victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 729 (2d Cir. 1984). The jury was instructed as such by the Court, without objection by Plaintiff, when it stated:

> If you find that Dr. Edelman will be unable to earn in the future what she would have earned at NYU, then you may award her, as additional compensation, the amount she ***would have earned during the time period between the date of your verdict and either: 1) the date you believe she would have worked at NYU absent any discriminatory conduct or 2) the date you can reasonably predict that she has a reasonable prospect of obtaining comparable employment***.

(Steer Decl., Ex. G (ECF Doc. No. 269-7), at 1474:2-9 (emphasis added).)

This showing must not be "unduly speculative." *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992). And a plaintiff has a duty to mitigate any such damages. *See, e.g.*, *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 55 (2d Cir. 1988).

The record shows that there is no basis for front pay damages. Here, the evidence reflects that Plaintiff has had no lost compensation since the end of her employment with NYU by which to compute an award of front pay. Plaintiff did not go a day unemployed, and she made more money at her new job.

Plaintiff was employed with NYU from December 1, 2014 (*see* Steer Decl., Ex. I (ECF Doc. No. 269-9), at 5)) through May 31, 2021 (*see* Steer Decl., Ex. J (ECF Doc. No. 269-10).)

Just prior to Plaintiff's non-renewal, her compensation was $278,000. (Steer Decl., Exs. K (ECF Doc. No. 269-11), L (ECF Doc. No. 12), at 107:19-24).)

Even before her termination date, by February 16, 2021, Plaintiff had secured a job with Arthritis & Rheumatism Associates, PL, in Florida. (Steer Decl., Ex. M (ECF Doc. No. 269-13), at P1-P13).) She began working at Arthritis & Rheumatism Associates, PL, on May 1, 2021. (Steer Decl., Ex. L (ECF Doc. No. 269-12), at 210:10-11).) Plaintiff's salary at her new job immediately after leaving NYU was **higher**—$300,000 for the first year—and she received a $25,000 moving expense allowance. (*See* Steer Decl., Exs. M (ECF Doc. No. 269-13), at P4, Par. 14), L (ECF Doc. No. 12), at 210:12-14).) During her second year of employment, her salary increased to $325,000. (Steer Decl., Ex. L (ECF Doc. No. 269-12), at P4, Par. 14.) In addition to her salary, Plaintiff also received a 20% incentive compensation in the form of a bonus of her gross collection in excess of 200% of her base salary for the first completed year of employment, and then 25% for the following years. (*Id.* at P4, Par. 15.) Plaintiff is earning approximately $71,000 more a year with her new employer than she did while working for NYU. (*See* Steer Decl., Exs. K (ECF Doc. No. 269-11), at 3), M (ECF Doc. No. 269-13), at P4).)

Plaintiff introduced no evidence to contest the above. She produced no evidence claiming that she did not and could not obtain comparable alternative employment. Indeed, as the above demonstrates, she had no difficulty obtaining comparable employment and immediately received **greater** compensation. As "[f]ront pay must consider the ability of the plaintiff to mitigate damages in the future" (*Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252, 260 (S.D.N.Y. 2007) (citation omitted)), this successful mitigation puts her in a better position than had she remained employed by NYU and precludes front pay. *See Olaechea*, at *8 (citing *Tse*, 568 F. Supp. 2d at 287) (citing *Trademark Rsch. Corp.*, 995 F.2d at 337)); *see also Smith v. Farmstand*, No. 11-cv-

11

9147, 2016 WL 5912886, at *24 (N.D. Ill. Oct. 11, 2016) (court concluded that plaintiff was not entitled to front pay because he had successfully mitigated damages where plaintiff maintained comparable job for more than 12 months that afforded him a salary equal or greater than what plaintiff was likely to earn at former employer).

"The purpose of an award of front pay is to make the victim of unlawful retaliation whole[.]" *Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 576 (S.D.N.Y. 2011) (citing *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 285 (2d Cir. 2011)). Front pay "should not place the plaintiff in a better position than [she] would have occupied had [she] not been fired." *Chisholm*, 824 F. Supp. 2d at 577 (citing *Thomas*, 508 F. Supp. 2d at 260). Awarding Plaintiff any front pay, never mind $700,000 in front pay, would provide her with a windfall given her immediate employment at higher compensation after her termination by NYU.

Plaintiff's attempt to claim a lack of contribution to her 401(k) plan as a basis for front pay is insufficient. Based on her testimony, she has a 401k option in her present position just as she did at NYU. (Steer Decl., Exs. L (ECF Doc. No. 269-12), at 210:20-25), M (ECF Doc. No. 269-13), at P6, Par. 20).) This, plus Plaintiff's First Amended Rule 26 Disclosures, demonstrates that her 401(k)-related claim is based upon allegedly losing "$27,800.00 per year . . . for Defendants' 10% match into Plaintiff's retirement account."[4] (Steer Decl., Ex. N (ECF Doc. No. 269-14), at p. 3 n. 2). There is no evidence in the record about the existence of any contribution to a retirement plan by NYU on Plaintiff's behalf. Her only support for the claim is her self-serving testimony, insufficient as a matter of law. *See Chisholm*, 824 F. Supp. 2d at 578 ("While a district court may consider lost pension benefits in calculating a front pay award, any such award must be supported

---

[4] This is also contradicted by Plaintiff's NYU contract, which caps any match at $26,000 annually. (Steer Decl., Ex. K (ECF Doc. No. 269-11), at Schedule A, n. 1).)

by the evidence." (citing *Luca v. Cnty. of Nassau*, No. 04-cv-4898, 2008 WL 2435569, at *5 (E.D.N.Y. June 16, 2008), *rev'd on other grounds*, 344 Fed. Appx. 637 (2d Cir. 2009)); *see also Olivares v. Brentwood Indus.*, 822 F.3d 426, 430 (8th Cir. 2016) (district court declined to speculate about a front pay award solely on plaintiff's testimony).

Even if she had provided such evidence, however, her new compensation alone is above the combined level of salary and retirement benefits she received at NYU. (*Compare* Steer Decl., Exs. K (ECF Doc. No. 269-11), L (ECF Doc. No. 12), at 107:19-24 (showing compensation at time of termination as $278,000) *with* Steer Decl., Exs. M (ECF Doc. No. 269-13), at P4, Par. 14, L (ECF Doc. No. 12), at 210:12-14 (showing salary of $300,000 immediately after leaving NYU and $325,000 the following year).) During her second year of employment, her salary increased to $325,000. (Steer Decl., Ex. L (ECF Doc. No. 269-12), at P4, Par. 14.) With her 20% incentive compensation, now at least 25%, her approximately $71,000 more in compensation annually well exceeds her salary at NYU even adding in the $27,800 she claims she lost and the basis for her entitlement to front pay.

As front pay is meant only to compensate a plaintiff for her lost compensation after the end of her employment and must be mitigated, it is illogical to look at only one component of her compensation as the basis for a front pay award. Otherwise, if at her new job, Plaintiff's compensation increased to $1 million more a year than she made at NYU (but with no benefits), under her theory, she would still be entitled to $27,800 from NYU (Steer Decl., Ex. N (ECF Doc. No. 269-14), at p. 3 n. 3 (identifying $27,800 per year as contribution from Defendants)) to purportedly make her whole for no longer being employed by NYU. This would put her in a better position than if she remained at NYU, which is prohibited. *See Chisholm*, 824 F. Supp. 2d at 576-77 (citing *Thomas*, 508 F. Supp. 2d at 260).

13

Accordingly, Plaintiff has provided no evidence supporting an award of front pay.

      b.    *Plaintiff's damages were capped by her pretrial filings*

If Plaintiff's damages award is not vacated, it should be capped at an amount of $137,400. Plaintiff has repeatedly alleged this as her front-pay damages, in both her First Amended Rule 26 Disclosures (Steer Decl., Ex. N (ECF Doc. No. 269-14), at 3, C(ii))) and in the Joint Final Pretrial Order (ECF Doc. No. 197). Plaintiff calculated her front pay damages as "$27,800.00 per year in 2022, 2023, and 2024 for Defendants' 10% match into Plaintiff's retirement account, plus $18,000.00 per year in 2022, 2023, and 2024 for Plaintiff's deposit into her retirement account." (Steer Decl., Ex. N, (ECF Doc. No. 269-14), at 3, n. 3). Even aside from the deficiencies identified above in finding any basis for front pay, Plaintiff's sole identified basis for front pay comes to $45,800 annually. An award of $700,000 would mean an award for over <u>15 years</u> of retirement account deposits and matching contributions (despite Plaintiff starting at a higher-paying job immediately upon leaving NYU). As Plaintiff has provided no evidence of any other front-pay damages, any amount awarded above what Plaintiff claimed is not only speculative, but also without evidentiary support, and against the instructions of the Court and, indeed, common sense. *See Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992) ("An award of front pay cannot be unduly speculative") (citing *Press v. Concord Mortg. Corp.*, No. 08-cv-9497, 2010 WL 3199684, at *2 (S.D.N.Y. Aug. 11, 2010)).

Accordingly, the front pay award must be vacated or alternatively remitted for an amount of no more than $137,400.

## **CONCLUSION**

For the reasons set forth herein above, Defendants respectfully request that their Remittitur Motion be granted and the front pay award be vacated or, alternatively, at the very least, remitted and limited to the amount Plaintiff sought in her pretrial filings. Defendants respectfully request oral argument.

Dated: New York, New York
August 26, 2025

                              **TARTER KRINSKY & DROGIN LLP**
                              *Attorneys for Defendants*


                By: */s/ Richard L. Steer*
                      Richard L. Steer
                      Richard C. Schoenstein
                      Ingrid J. Cardona
                      1350 Broadway, 11th Floor
                      New York, New York 10018
                      (212) 216-8000
                      rsteer@tarterkrinsky.com
                      rschoenstein@tarterkrinsky.com
                      icardona@tarterkrinsky.com