UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

DR. SARI EDELMAN,

                                                             Case No.: 1:21-cv-502 (LJL) (GWG)

                            Plaintiff,

                 -against-

NYU LANGONE HEALTH SYSTEM, NYU
LANGONE HOSPITALS, NYU LANGONE
MEDICAL CENTER, NYU LANGONE NASSAU
RHEUMATOLOGY, NYU SCHOOL OF
MEDICINE, NYU GROSSMAN SCHOOL OF
MEDICINE, NYU HOSPITALS CENTER,
ANDREW T. RUBIN, DAVID KAPLAN, JOSEPH
ANTONIK, and JOSHUA SWIRNOW,

                            Defendants.

------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
RENEWED MOTION TO ALTER OR AMEND THE JUDGMENT PURSUANT TO FED. R.
CIV. P. 59(e) AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR ENTRY OF
<u>JUDGMENT UNDER FED. R. CIV. P. 54</u>**

**MILMAN LABUDA LAW GROUP PLLC**

Joseph M. Labuda, Esq.
Jamie S. Felsen, Esq.
3000 Marcus Ave., Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
joe@mllaborlaw.com
jamie@mllaborlaw.com

*Attorneys for Plaintiff Dr. Sari Edelman*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ...................................................................................................3

ARGUMENT .........................................................................................................................6

   POINT I
      THE MADATE ORDER REQUIRES THIS COURT TO REINSTATE THE JURY
      VERDICT AND LEAVES NO OPPORTUNITY FOR THIS COURT TO ALTER
      THAT VERDICT ....................................................................................................... 6

   POINT II
      ASSUMING ARGUENDO THAT THIS COURT EVEN HAS THE AUTHORITY
      TO ALTER THE JURY VERDICT, THE COURT SHOULD DENY
      DEFENDANTS' RULE 59(e) MOTION ON BOTH PROCEDURAL AND
      SUBSTANTIVE GROUNDS ......................................................................... 11

   POINT III
      JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANTS NYU
      LANGONE HEALTH SYSTEM, NYU LANGONE HOSPITALS, NYU LANGONE
      MEDICAL CENTER, NYU LANGONE NASSAU RHEUMATOLOGY, NYU
      SCHOOL OF MEDICINE, NYU GROSSMAN SCHOOL OF MEDICINE, NYU
      HOSPITALS CENTER AND ANTONIK IN FAVOR OF PLAINTIFF FOR
      $700,000 AND FOR COSTS AND REASONABLE ATTORNEYS' FEES ............. 30

CONCLUSION.....................................................................................................................35

## TABLE OF AUTHORITIES

### Cases

*4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, (2d Cir. 2019)............................ 13

*Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, (2d Cir. 2012) ........................ 13,27

*Bao v New A & N Food Mkt., Inc*, 2016 U.S. Dist. LEXIS 28248 (E.D.N.Y. Mar. 1, 2016)....... 20

*Boateng v. BMW AG*, 753 F. Supp. 3d 215 (E.D.N.Y. 2024)............................................... 13,14

*Broadnax v. City of New Haven*, 141 Fed. Appx. 18, (2d Cir. 2005). ........................................ 23

*Brown v. Eli Lilly & Co.,* 654 F.3d 347, (2d Cir. 2011) ............................................................ 33

*Cappiello v. ICD Publs., Inc.*, 458 F App'x 26 (2d Cir. 2012) .................................................... 20

*Childers v. TTI Consumer Power Tools, Inc.*, 2025 U.S. Dist. LEXIS 19496
(D. Or. Feb. 4, 2025)........................................................................................................ 27

*Connelly v. County of Rockland*, 61 F.4th 322, (2d Cir. 2023) ................................................... 9

*Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F. App'x 40 (2d Cir. 2014). ................ 12

*CSX Transp., Inc. v. Hensley*, 556 U.S. 838 (2009)................................................................. 24

*Curtiss-Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, (1980).............................................. 31,32

*E.J. Brooks Co. v Cambridge Sec. Seals*, 2015 U.S. Dist. LEXIS 174447
(S.D.N.Y. Dec. 23, 2015).............................................................................................. 12,15

*Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, (2d Cir. 1990)..................................................... 17

*Edelman v NYU Langone Health Sys.*, 2023 U.S. Dist. LEXIS 113626
(S.D.N.Y. June 30, 2023)................................................................................................. 28

*Edelman v. NYU Langone Health Sys.*, 141 F.4th 28 (2d Cir. 2025). ......................................... 26

*Ethridge v. Bell*, 49 F.4th 674, (2d Cir. 2022) ......................................................................... 13

*Fletcher v. Marino*, 882 F.2d 605, (2d Cir. 1989) .................................................................... 33

*Freeman v. Giuliani*, 2024 U.S. Dist. LEXIS 233460 (S.D.N.Y. Dec. 27, 2024)...................... 28

*Garnett v. Undercover Officer C0039*, 2015 U.S. Dist. LEXIS 45232
(S.D.N.Y. Apr. 6, 2015).................................................................................................. 12

*Graham v City of NY*, 128 F. Supp. 3d 681, (E.D.N.Y. 2015)...................................................... 16

*Greenaway v. County of Nassau*, 327 F. Supp. 3d 552 (E.D.N.Y. 2018)..................................... 15

*Ismail v. Cohen*, 899 F.2d 183, (2d Cir. 1990) ......................................................................... 16

*J.G. Peta, Inc. v. Club Protection, Inc.*, 2000 U.S. Dist. LEXIS 20313
(N.D.N.Y. Sep. 5, 2000) ................................................................................................ 13

*Johnson v. Maximus Servs. LLC*, No. 23-7672, 2025 U.S. App. LEXIS 13451, 2025 WL
1561819, at *4 (2d Cir. June 3, 2025)............................................................................ 11

*Kers & Co. v. Bank of Am. Corp. (In re Bank of Am. Corp. Sec., Derivative, & Emple. Ret. Sec.
Act (ERISA)) Litig.*, No. 09 MD 2058 (PKC), 2013 U.S. Dist. LEXIS 159132, at *32
(S.D.N.Y. Nov. 4, 2013)................................................................................................. 32

*KT Group Limited v. NCR Corporation*, 412 F.Supp.3d 305, (S.D.N.Y. 2019) ......................... 24

*Legg v. Ulster County*, 979 F.3d 101 (2d Cir. 2020) ................................................................. 10

*Leo v. Long Island R.R. Co.*, 307 F.R.D. 314, (S.D.N.Y. 2015)............................................... 16

*Lesende v. Borrero*, 752 F.3d 324 (3d Cir. 2014)..................................................................... 10

*Mahon v. Ticor Title Ins. Co.,* 683 F.3d 59 (2d Cir. 2012)......................................................... 33

*McGee v. Dunn*, No. 09 Civ. 6098, 940 F. Supp. 2d 93, 2013
U.S. Dist. LEXIS 55732, 2013 WL 1628604, at *3 (S.D.N.Y. Apr. 16, 2013)...................... 34

*McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394
(S.D.N.Y. 2018)............................................................................................................ 12

*Miner v. City of Glens Falls*, 999 F.2d 655, (2d Cir. 1993)........................................................ 20

*Newton v. City of NY*, 171 F. Supp. 3d 156, (S.D.N.Y. 2016)............................................... 10,16

*Ojeda v. Metro Transp. Auth.,* 477 F, Supp. 3d 65 (S.D.N.Y 2020)……………………………16

*Okraynets v. Metro. Transp. Auth.*, 555 F. Supp. 2d 420, (S.D.N.Y. 2008)................................ 16

*Olaechea v. City of NY*, 2022 U.S. Dist. LEXIS 142037, *28 (S.D.N.Y. Aug. 9, 2022). ........... 24

*Ortiz v. Stambach*, 137 F.4th 48, (2d Cir. 2025)................................................... 2,16,17,22

*Padilla v. Metro-North Commuter R.R.*, 92 F.3d. 117, (2d Cir. 1996)........................................ 19

*Payne v. Jones*, 711 F.3d 85, n.10 (2d Cir. 2012)................................................................ 3,17

*Pelczar v. Kelly*, No. 18-CV-6855, 2019 U.S. Dist. LEXIS 90200,
   2019 WL 2304651, at *1 (E.D.N.Y May 29, 2019) ........................................................... 13

*Perez v. Progenics Pharms., Inc.*, 204 F. Supp. 3d 528 (S.D.N.Y. 2016)................................... 18

*Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, (2d Cir. 2012) .......................................... 26

*Rees v. GE*, 144 F. Supp. 2d 138 (N.D.N.Y. 2001) ............................................................. 19

*Reilly v. Cisneros*, 835 F. Supp. 96, (W.D.N.Y. 1993)......................................................... 25

*Santiago v. Crown Heights Center for Nursing and Rehabilitation*, 2017 WL 9482107, at *20
   (E.D.N.Y., 2017).......................................................................................................... 21

*Sass v. MTA Bus Co.*, 2012 U.S. Dist. LEXIS 142567, *13 (E.D.N.Y. Oct. 1, 2012) ........... 20,21

*Scott v. Rosenthal*, 2001 U.S. Dist. LEXIS 12803, *7 (S.D.N.Y. Aug. 23, 2001) ..................... 20

*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956) ........................................................ 31

*SEC v. Stewart*, 2025 U.S. Dist. LEXIS 18909 (S.D.N.Y. Feb. 3, 2025).................................. 3,12

*Shannon v. Fireman's Fund Ins. Co.*, 136 F. Supp. 2d 225, (S.D.N.Y. 2001)......................... 19,25

*Smith v. United States*, 2018 U.S. Dist. LEXIS 19905, at *6 (D. Conn. Feb. 7, 2018) .............. 8,9

*Stratton v. Dept. for the Aging*, 922 F. Supp. 857 (S.D.N.Y. 1996)................................. 19,22,26

*Tamman v. Schinazi (In re Schinazi)*, 2010 Bankr. LEXIS 5111
   (Bankr. S.D.N.Y. Feb. 23, 2010) ..................................................................................... 27

*Tanzini v. Mar. Midland Bank, N.A.*, 978 F. Supp. 70 (N.D.N.Y. 1997) ............................... 19,29

*Teoh v. Manhasset Rest., LLC*, 2025 U.S. Dist. LEXIS 125431 (E.D.N.Y. July 1, 025)…….….13

*Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, (2d Cir. 1993).................... 17

*Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176 (2d Cir. 1992) ............................... 18,19,22,26,29

*United States v Barresi*, 361 F.3d 666 (2d Cir. 2004) ............................................................. 7

*United States v. Ben Zvi*, 242 F.3d 89 (2d Cir. 2001) .............................................................. 8

*United States v. City of N.Y.*, No. 07-CIV.-2067, 2015 WL 1800245, at *7
   (E.D.N.Y. Apr. 16, 2015)............................................................................................... 21

*United States v. Norris*, 277 F. Supp. 2d 189 (E.D.N.Y. 2003).................................................. 7

*United States  SEC v. Collector's Coffee Inc.,* 2025 U.S. Dist. LEXIS 68000
   (S.D.N.Y. Apr. 9, 2025).…………………………………………………………..…....12

*United States v. Quintieri*, 306 F.3d 1217, (2d Cir. 2002)........................................................ 7

*Vangas v. Montefiore Med. Ctr.*, 2015 U.S. Dist. LEXIS 44300
   (S.D.N.Y. Apr. 3, 2015) ................................................................................. 19, 22, 26,27

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, (2d Cir. 1992)...................... 34

*Vornado Realty Tr. v. Castlton Envtl. Contractors, LLC*, No. 08-CV-4823 (WFK) (JO),
   (E.D.N.Y. Oct. 18, 2013) ............................................................................................... 34

*Ward v. NY City Tr. Auth.* 1999 U.S. Dist. LEXIS 9621, f.n. 8 (S.D.N.Y. June 24, 1999).......... 29

*Weinberg v. Vil. of Clayton*, 2018 U.S. Dist. LEXIS 187640 (N.D.N.Y. Nov. 2, 2018).............. 13

*Weisshaus v. Port Auth. of NY & New Jersey*, 814 F. App'x. 643, (2d Cir. 2020) ........................ 8

*Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, (2d Cir. 1984).............................................. 18

**Statutes**

28 U.S.C. § 2106 .................................................................................................. 7

Fed. R. Civ. P. 54(b) ................................................................................... passim

Fed. R. Civ. Proc. 59(e) ............................................................................. passim

N.Y. C.P.L.R. § 5501(c) .................................................................................. 16

Fed. R. Civ. P. Rule 50(b) ................................................................................ 34

## **PRELIMINARY STATEMENT**

Defendants' renewed motion under Fed. R. Civ. Proc. 59(e) ("Rule 59(e)") to alter the $700,000 jury verdict must be denied on both procedural and substantive grounds.

Procedurally, the Mandate Order issued by the Second Circuit on July 10, 2025 expressly directed this Court to reinstate the jury's Verdict of $700,000 against NYU and Antonik. This clear order requires judgment to be extended in favor of Dr. Edelman and against NYU and Antonik without further adjudication of Defendants' Rule 59(e) motion on any other issue. In rendering its decision, the Second Circuit was aware that this Court did not decide Defendants' Rule 59(e) motion. The Second Circuit reviewed the entire trial record and on three (3) separate occasions referenced the $700,000 verdict which it reinstated without any reservations or mention of a remittitur. If a remittitur was a necessary resolution, the Second Circuit Court would have expressly addressed a resolution in its Mandate Order as it has done in other cases.

Moreover, although Defendants move under Rule 59(e), they fail to provide any analysis under Rule 59(e)'s stringent standard which constitutes a waiver of these arguments.

In addition, Defendants are precluded from now raising new arguments in their Rule 59(e) motion which they did not assert in their Rule 50 motion after trial that (i) the jury's $700,000.00 verdict is not supported by the record and is unduly speculative because Dr. Edelman made more money at her new job than she made at NYU; and (ii) Dr. Edelman's front pay damages are capped at $137,400 because Dr. Edelman alleged this amount as her front pay damages in her First Amended Rule 26 Disclosures and in the Final Pretrial Order motion as Rule 59(e) cannot be used to advance new theories not raised in a prior motion. Therefore, the Court may not consider Defendants' new arguments.

Substantively, Defendants' motion must be denied for a multitude of other reasons.

In fact, the only argument that Defendants proffered at trial that was preserved for the instant Rule 59(e) motion is that Dr. Edelman did not present any "documents" concerning her retirement benefits. However, as outlined below this argument is unavailing as there is no "documents" requirement for evidence to be considered by a jury. Dr. Edelman testified about her lost retirement opportunities and (as outlined below) there were several pathways beyond retirement "documents" for the jury to have reached its $700.000 front pay verdict. Moreover, the $700,000 jury verdict is "not so high as to shock the judicial conscience and constitute a denial of justice" – the standard under Rule 59(e). *See Ortiz v. Stambach*, 137 F.4th 48, 73 (2d Cir. 2025). The jury was instructed that if it finds that Dr. Edelman will be unable to earn in the future what she would have earned at NYU, then it may award her, as additional compensation, the amount she would have earned after the verdict and the date the jury believes she would have worked at NYU absent any discriminatory conduct or the date it could reasonably predict that she has a reasonable prospect of obtaining comparable employment.

At trial, there were many pathways that the jury may have taken based on the evidence to render its $700,000.00 verdict. First, the jury was more than entitled to consider that Edelman's salary increases from $207,000.00 to $278,000.00 (a $71,000 increase) at NYU whereas her increase in Florida was only $25,000.00. As such, the jury may have easily concluded such increases would have continued into the future with Dr. Edelman receiving substantial salary increases at NYU each time her contract was renewed, and that Dr. Edelman would not receive such substantial increases from her new employer in the future.

Second, the jury may also have awarded front pay based on evidence that the benefits at NYU were substantially more financially favorable to Dr. Edelman than at her new job. Indeed, NYU provided a 401K match whereas Dr. Edelman's new employer did not. NYU provided a

better health plan than Dr. Edelman's new employer provided such that Dr. Edelman had to switch to her husband's medical plan. Dr. Edelman received other benefits at NYU which she did not receive from her new employer such as expense reimbursements and additional retirement benefits.

Third, Defendants' argument that Dr. Edelman's front pay damages are capped at $137,400 based on her Rule 26 disclosures and joint pre-trial order must also be rejected because the clear legal authority (Defendants cite no cases) does not support this argument. The jury was simply free to make its decision based on the evidence at trial. Moreover, this Court's decision denying Defendants' motion *in limine* on this issue is law of the case. In fact, this Court denied Defendants' motion *in limine* and properly instructed the jury that it could award front pay damages consisting of not only lost benefits but also lost wages. The jury did just that in following the jury instructions when it awarded Dr. Edelman $700,000.

As fully outlined below, the $700,000 verdict was "not so high as to shock the judicial conscience and constitute a denial of justice," as to warrant the extreme remedy of altering the jury's verdict and Defendants' motion must be denied.

## STATEMENT OF FACTS[1]

### A. Mandate Order

On June 18, 2025, the Second Circuit issued an order stating, *inter alia*:

> We VACATE the District Court's grant of JNOV for Antonik and NYU on Edelman's retaliation claims, and REMAND with instructions to reinstate the jury's verdict on these claims. We further VACATE the District Court's decision granting JMOL in favor of Kaplan on the retaliation claim, and remand for a new trial on that claim. We AFFIRM the judgment as to the

---

[1] "On a motion to [] reduce a jury verdict for excessiveness, trial courts . . . are required to view all evidence in the light most favorable to sustaining the jury's verdict." *Payne v. Jones*, 711 F.3d 85, 98 n.10 (2d Cir. 2013); *S.E.C. v. Ginder*, 752 F.3d 569, 574 (2d Cir. 2014). The facts are presented in the light most favorable to Dr. Edelman, who is the non-moving party, and all favorable inferences that may be made based on those facts are presented herein.

remaining claims.

*See* Steer Decl, Ex. B.

On July 10, 2025, the Second Circuit issued a Mandate Order stating:

> IT IS HEREBY ORDERED, ADJUDGED and DECREED that the district court's judgment is AFFIRMED in part and VACATED in part, and the case is REMANDED for further proceedings consistent with this Court's opinion.

Steer Decl, Ex. C.

### B. Trial Evidence Regarding Front Pay[2]

### 1. Dr. Edelman's Compensation and Benefits at NYU

From 2014 to 2017, Dr. Edelman's NYU employment agreement provided her with clinical compensation of $207,000 per year. *Tr.* at 81:8-9; *see also* Pl. Ex. 8. Under her subsequent contract from 2017 to 2020, Dr. Edelman's annual clinical compensation substantially increased to $278,000, (an increase of $71,000) representing roughly a 35% increase from her prior agreement. *Tr.* at 304:5-9; Pl. Ex. 9. Dr. Edelman's sustained pattern of meeting or exceeding her RVU targets, tethered with her NYU history of significant increases made it more than reasonable for the jury to conclude that her next contract, and future contracts, at NYU would have reflected at least a comparable 35% raise $71,000 per contract increase. In line with this expectation, Dr Edelman's projected annual clinical compensation under a renewed 2021 agreement could reasonably be estimated at $375,300.

The trajectory of the increases in her salary – from $207,000.00 (2014-2017) to $278,000.00 (2018-2021) (in addition to the bonuses) – suggests a similar large increase in 2021, and thereafter until she retired, but for Defendants' unlawful retaliation against her.

---

[2] As per the jury instructions, the jury was entitled to draw all uncertainties about pay in favor of Dr. Edelman. *Tr.* 1473:18-20.

Unlike at Arthritis and Rheumatism Associates in Florida, when Dr. Edelman worked for Defendants, she enjoyed retirement benefits with a ten percent (10%) match of her salary by NYU. *Tr.* at 79:20-80:15.  NYU paid Dr. Edelman $20,700.00 per year in 2015, 2016, and 2017, and $27,800.00 per year in 2018, 2019, and 2020 in retirement benefits – all directly contributed solely by NYU.  *See* Pl. Exs. 8 and 9.

 In addition, at NYU, Dr. Edelman was able to contribute approximately $18,000.00 per year towards her 401(d) retirement account (up to 10% annually), plus there was a 403(b) retirement account to which she had the ability to contribute monies.  *Id.*

Additionally, at NYU, Dr Edelman was eligible for performance bonuses; for every percentage point she exceeded her wRVU target, she would earn a bonus equal to that same percentage of her clinical salary.  *Tr.* at 88:13-19.  There is no evidence that she was eligible for this bonus at Arthritis and Rheumatism Associates.  Also, at NYU, Dr. Edelman enjoyed an annual $3,000.00 expense reimbursement and there is no evidence that she received this benefit at Arthritis and Rheumatism Associates.  <u>Tr.</u> at 81:17-19.

At NYU, unlike at Arthritis and Rheumatism Associates, Dr. Edelman used NYU's medical insurance plan which was a much better plan than what her Florida job offered as the Florida plan contained higher co-pays and higher deductibles.  Tr. 211:1-9.

### C. Dr. Edelman's Compensation and Benefits at Arthritis and Rheumatism Associates After Her Unlawful Termination from NYU

Dr. Edelman sought to remain in New York following her termination, but was unable to secure a contract despite advancing in interviews.  *Tr.* at 205:19-207:8, 208:22-209:1, 234:4-236:25, 367:14-23.  She ultimately accepted a position in Clearwater, Florida at Arthritis and Rheumatism Associates where she initially earned $300,000.00.  *Tr.* at 209:18-210:14.  In 2022,

Dr. Edelman's salary increased to $325,000.00, and she earned $330,000.00 with bonuses. *Tr.* at 218:16-219:1.

No retirement plan was offered her first year at Arthritis and Rheumatism Associates, and following her anniversary date, Dr. Edelman had a 401(k) with no matching, unlike NYU which provided a 10% match. *Tr.* at 210:15-25.

The health insurance plan offered to Dr. Edelman at Arthritis and Rheumatism Associates was very expensive such that Dr. Edelman went on her husband's medical plan where she incurred high out-of-pocket expenses and deductibles. *Tr.* at 211:1-9.

Further, whereas Dr. Edelman enjoyed significant salary increases at NYU, she did not receive similar increases in Clearwater, Florida. *Tr.* at 210:12-14, 218:16-219:1 (indicating $25,000.00 increase in Florida); *see also* Pl. Exs. 8 and 9 (indicating $71,000.00 increases at NYU).

As such, the trajectory of Dr. Edelman's increases in salary were severely stunted at her new job, and Dr. Edelman was on a path to make less in Florida over time than she would have earned at NYU but for their unlawful termination of her.

Defendants' unlawful retaliation against Dr. Edelman impacted her life in a profound way. *Tr.* at 205:19-206:6. Despite searching for a position in New York, she was forced to relocate to Florida even though she wanted to remain in New York such that she was effectively exiled. *Id.*

## ARGUMENT

### POINT I

### THE MADATE ORDER REQUIRES THIS COURT TO REINSTATE THE JURY VERDICT AND LEAVES NO OPPORTUNITY FOR THIS COURT TO ALTER THAT VERDICT

On June 18, 2025, the Second Circuit issued an order stating

> We VACATE the District Court's grant of JNOV for Antonik and NYU on
> Edelman's retaliation claims, and REMAND with instructions to reinstate the
> jury's verdict on these claims. We further VACATE the District Court's
> decision granting JMOL in favor of Kaplan on the retaliation claim, and
> remand for a new trial on that claim. We AFFIRM the judgment as to the
> remaining claims

*See* Steer Decl, Ex. B.

On July 10, 2025, the Second Circuit issued a Mandate Order stating:

> IT IS HEREBY ORDERED, ADJUDGED and DECREED that the district
> court's judgment is AFFIRMED in part and VACATED in part, and the case
> is REMANDED for further proceedings consistent with this Court's opinion.

Steer Decl, Ex. C.

As a result, the Second Circuit's clear mandate was to reinstate the $700,000 jury verdict

against Antonik and NYU.  The mandate order did not direct this Court to conduct any further

proceedings with respect to Antonik and NYU.  In fact, tellingly, the only further proceedings that

the Second Circuit directed this Court to conduct is for a new trial on the retaliation claim against

Kaplan.

"The Supreme Court or any other court of appellate jurisdiction may affirm, modify,

vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for

review, and may remand the cause and direct the entry of such appropriate judgment, decree, or

order, or require such further proceedings to be had as may be just under the circumstances."  28

U.S.C. § 2106.  Thus, there are a multitude of options at the disposal of an appellate court in issuing

its mandate order.  To determine whether a mandate is limited or general, courts must "look to

both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'"  *United

States v. Norris*, 277 F. Supp. 2d 189 (E.D.N.Y. 2003) *quoting United States v. Quintieri,* 306 F.3d

1217, 1227 (2d Cir. 2002); *see also United States v Barresi*, 361 F.3d 666 (2d Cir. 2004) ("The

nature of the issues for resolution in the district court on a remand from the court of appeals

depends principally on the issues that had been presented in the appeal and the directions given by the court of appeals in ordering further proceedings… If the remand specifies the nature of the correction to be made, the scope of the issues on remand is thereby limited.") (emphasis added). "The mandate rule compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Ben Zvi*, 242 F.3d 89, 92 (2d Cir. 2001). "To determine whether an issue has been impliedly resolved, courts 'look to both the specific dictates of the remand order as well as the broader spirit of the mandate'" *Smith v. United States*, 2018 U.S. Dist. LEXIS 19905, at *6 (D. Conn. Feb. 7, 2018) quoting *United States v. Ben Zvi*, 242 F.3d 89 (2d Cir. 2001); *see also Weisshaus v. Port Auth. of NY & New Jersey*, 814 F. App'x. 643, 648 (2d Cir. 2020) (holding District Court correctly dismissed argument raised by plaintiff that he had adequately pleaded a particular claim, or should be granted leave to amend, as outside the scope of the Second Circuit's mandate on remand because the Circuit had otherwise affirmed the dismissal of all of plaintiff's claims in all respects except for narrow instructions for the District Court to consider).

Here, the Second Circuit issued a specific mandate: (1) reinstate the jury's $700,000 verdict against the NYU corporate defendants and Antonik; and (2) schedule a new trial concerning the retaliation claims against Kaplan. The only further proceedings directed by the Second Court was for a new trial to be scheduled for the retaliation claims against Kaplan. There were no further proceedings directed with regard to the NYU corporate defendants and Antonik.

The order to reinstate the jury's verdict easily satisfies the definition of being expressly and/or impliedly resolved, thereby denying the necessity to explore further re-litigation. The Second Circuit directed reinstatement of the jury's $700,000 verdict without any reservations or mention of a remittitur. The Second Circuit did this despite, as Defendants concede, the Second

Circuit's knowledge that Defendants filed a Rule 59(e) motion that the District Court did not decide. Indeed, the record before the Second Circuit contained the District Court's decision on the Rule 50 motion that expressly stated it was not deciding the Rule 59(e) motion and the record also contained the Rule 59(e) motion itself. *See* Defendants' MOL at 9. If a remittitur was a necessary resolution, the Second Circuit Court would have addressed same in its Mandate Order. It did not. The mandate order is straight forward – reinstate the jury's verdict as to NYU and Antonik.

Furthermore, the Second Circuit, on three (3) separate occasions, made express reference to the $700,000.00 verdict awarded to Plaintiff by the jury in compensatory damages in its Order to "reinstate the jury's verdict". *See* Steer Decl, Ex. B. Moreover, it is clear that the Second Circuit read this Court's December 26, 2023 decision: "In sum, the jury's verdicts against Antonik and NYU were not 'the result of sheer surmise and conjecture,' and should not have been set aside by the District Court." *Id. citing Connelly v. County of Rockland*, 61 F.4th 322, 325 (2d Cir. 2023) (citation and quotation marks omitted). This not only resolved the issue presented on appeal but expressly names the resolution. The Second Circuit provided a clear directive: "REMAND with instructions to reinstate the jury's verdict" *Id*. at *2. In fact, the mandate could not be more clear. The Order to reinstate the jury's previously agreed upon verdict also fully satisfies the definition of being impliedly resolved in accordance with the mandate rule, thereby denying the necessity to explore further re-litigation. *See Smith*, 2018 U.S. Dist. LEXIS 19905 at *6.

Armed with knowledge that this Court did not decide the Rule 59(e) motion, the Second Circuit could have issued a decision which kept the remittitur issue alive in a variety of ways, but it chose not to and directed this Court to reinstate the jury's verdict. First, the Second Circuit could have remanded and directed this Court to modify its judgment as a matter of law consistent with the Second Circuit's decision, but it did not. Second, the Second Circuit could have directed this Court to rule on the issue

of remittitur, but it did not.  Third, the Second Circuit could have also remanded the case and directed this Court to reinstate the jury's verdict as to liability, and address the Rule 59(e) motion, but it did not. Instead, the Second Circuit specifically directed this Court to reinstate the jury's verdict of $700,000.00. If a remittitur had been a necessary resolution to the matter at hand, the Second Circuit would have included this in its decision and Remand Order.

In contrast to the present case, the Second Circuit has issued very specific mandates concerning Rule 59 motions for remittitur that were not decided by the district court.  *See Legg v. Ulster County*, 979 F.3d 101 (2d Cir. 2020) ("Because the district court granted the County's Rule 50 motion for judgment as a matter of law as to this claim, it did not have occasion to consider the County's Rule 59 motion for a new trial.  Although we leave this question for the district court to rule on in the first instance, we note that 'jury verdicts should be disturbed with great infrequency"); *see also Lesende v. Borrero*, 752 F.3d 324 (3d Cir. 2014) ("For the reasons detailed below, though we see little merit in the arguments raised in the appeal or cross-appeal, we will vacate the District Court's final order and remand with instruction that the District Court should resolve the City's motion for remittitur of the second jury's verdict").

Defendants' rely extensively on *Newton v. City of NY*, 171 F. Supp. 3d 156 (S.D.N.Y. 2016), but the facts there are distinguishable from the facts here, nor, unlike *Legg*, is it controlling law  In *Newton*, the Mandate provided:

> the judgment of the district court is vacated and the case is remanded with instructions to reinstate the jury verdict with respect to the Appellant's Fourteenth Amendment claim and to reconsider Appellant's First Amendment claim in light of the opinion of this court.

*Id*. at 163.  The Second Circuit explained "the Mandate remands this case with instructions to reinstate the Fourteenth Amendment jury verdict *and* reconsider Newton's First Amendment Claim —

indicating that the Second Circuit contemplated further post-remand proceedings [concerning the plaintiff's claims against the City.]" *Id.* at 169.

Here, the Mandate Order was to (1) reinstate the verdict against the NYU corporate defendants and Antonik (indicating no further proceedings against the NYU corporate defendants and Antonik); and (2) for a new trial against an entirely different party, Kaplan, for whom the verdict did not apply as the claims had been dismissed against Kaplan. Therefore, although the instant case was remanded for further proceedings, those proceedings do not concern the NYU corporate defendants and Antonik.

Accordingly, this Court may not alter the $700,000.00 jury verdict against the NYU corporate defendants and Antonik.

**POINT II**

**ASSUMING ARGUENDO THAT THIS COURT EVEN HAS THE AUTHORITY TO ALTER THE JURY VERDICT, THE COURT SHOULD DENY DEFENDANTS' RULE 59(e) MOTION ON BOTH PROCEDURAL AND SUBSTANTIVE GROUNDS**

Although Defendants' motion should be denied for the reasons discussed in Point I, Plaintiff responds below to Defendants' substantive arguments in the unlikely event the Court does not deny the motion for the reasons discussed in Point I.

### A. Defendants Fail To Argue that the Jury Verdict Should Be Altered or Amended Under Rule 59(e), Warranting Denial of Their Motion

Rule 59(e) states a party may file a motion "to alter or amend a judgment [] no later than 28 days after the entry of the judgment." Fed. R. Civ. Proc. 59(e). The standard to alter or amend is extremely high where the court may grant a Rule 59(e) motion "only when the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Johnson v. Maximus Servs. LLC*, No. 23-7672, 2025 U.S. App. LEXIS 13451, 2025 WL 1561819, at *4 (2d Cir. June 3, 2025).

Critically, relief under Rule 59(e) "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *United States SEC v Collector's Coffee Inc.*, 2025 U.S. Dist. LEXIS 68000 (S.D.N.Y. Apr. 9, 2025). "Thus, this standard "provide[s] relief only in the proverbial 'rare case.'" *E.J. Brooks Co. v. Cambridge Sec. Seals*, 2015 U.S. Dist. LEXIS 174447 (S.D.N.Y. Dec. 23, 2015) *quoting Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F. App'x 40, 44 (2d Cir. 2014). The standard of review for a motion for reconsideration is "strict." *Id*. at *4. A Rule 59(e) "motions must be narrowly construed and strictly applied." *Id*. This case is not the proverbial rare case involving a run-a-way jury rendering an excessive verdict.

Here, Defendants move under Rule 59(e) to alter or amend the $700,000 jury verdict against NYU and Antonik. Defendants do not even identify the stringent standard under Rule 59(e). Defendants do not identify whether their motion is based on the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. Defendants do not provide an analysis under any of these frameworks nor do they cite any analogous cases where a motion under Rule 59(e) was granted. Defendants merely argue that the amount of the verdict is not supported by the record and is excessive. However, this is not even the standard or a basis for relief under Rule 59(e).

Accordingly, Defendants' motion must be denied as they have not argued any basis under Rule 59(e) for altering or amending the instant judgment. *See SEC v. Stewart*, 2025 U.S. Dist. LEXIS 18909 (S.D.N.Y. Feb. 3, 2025) (denying motion for reconsideration where the movant failed to point to any legal basis for reconsideration); *McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394 (S.D.N.Y. 2018) (same); *Garnett v. Undercover Officer C0039*, 2015 U.S. Dist. LEXIS 45232 (S.D.N.Y. Apr. 6, 2015) (denying motion for judgment as a matter

of law where the movant's arguments were wrong as a matter of law); *Weinberg v. Vil. of Clayton*, 2018 U.S. Dist. LEXIS 187640 (N.D.N.Y. Nov. 2, 2018) ("As Defendants failed to analyze the sufficiency of process under the *Mathews* factors, the Court need not decide the issue at this juncture"); *J.G. Peta, Inc. v. Club Protection, Inc.*, 2000 U.S. Dist. LEXIS 20313 (N.D.N.Y. Sep. 5, 2000) (denying motion for Rule 11 sanctions where the movant applied the wrong standard).

**B. Defendants are also Now Precluded From Raising Arguments In Their Rule 59(e) Motion That They Did Not Make In Their Rule 50(a) Motion for Judgment as a Matter of Law**

The stringent standard reflects that Rule 59(e) is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Teoh v Manhasset Rest., LLC*, 2025 U.S. Dist. LEXIS 125431 (E.D.N.Y. July 1, 2025) *quoting Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)) , "In short, a Rule 59(e) motion is 'not an opportunity . . . to relitigate an issue already decided or present arguments that could have been made before the judgment was entered." *Id*. quoting *Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022), *citing Pelczar v. Kelly*, No. 18-CV-6855, 2019 U.S. Dist. LEXIS 90200, 2019 WL 2304651, at *1 (E.D.N.Y. May 29, 2019), *aff'd*, 795 F. App'x 55 (2d Cir. 2020) (reasoning that a Rule 59(e) motion is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made"); *see also Boateng v. BMW AG*, 753 F. Supp. 3d 215 (E.D.N.Y. 2024)("Rule 59(e) motions are not vehicles for parties to relitigate cases or <u>advance new theories that they failed to raise in their underlying motion practice</u>." (emphasis added); *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019) ("A Rule 59(e) motion 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.").

"Importantly, a party may not use Rule 59 to cure a failure to comply with Rules 50 and 51. A Rule 50 motion is intended to notify the opposing party of a challenge to the sufficiency of the evidence." *Boateng,* 753 F. Supp. 3d at 229.

In their motion, Defendants make three arguments (two of which are new) for vacating or reducing the jury verdict.  First, Defendants argue that Dr. Edelman has a 401K option at her new job just as she did at NYU and Dr. Edelman failed to submit any documents concerning her 401K retirement plans.  Defendants' MOL at 12.  Second, Defendants newly argue that the jury's $700,000.00 verdict is not supported by the record and is unduly speculative because "the evidence reflects that Dr. Edelman has had no lost compensation since the end of her employment with NYU by which to compute an award of front pay. Dr. Edelman did not go a day unemployed, and she made more money at her new job." Defendants' MOL at 10.  Third, Defendants also newly argue that Dr. Edelman's damages are capped at $137,400 because Dr. Edelman alleged this amount as her front pay damages in her First Amended Rule 26 Disclosures and in the Final Pretrial Order.  Defendants' MOL at 14.

In Defendants' Rule 50(a) motion for judgment as a matter of law made after the close of testimony and before the case went to the jury, Defendants limited their argument on front pay solely on the basis that Dr. Edelman failed to introduce sufficient "documents" concerning retirement benefits.  Specifically, Defendants argued:

> So they have only front pay, and the front pay, as I understand it, is based on retirement benefits. And I'll say to the plaintiff the same thing that I've been saying to all of our witnesses: Where are the documents?  There's no proof of any retirement benefits that she had or lost. There's no documentary proof that she doesn't get retirement benefits now. It is very short, unspecific testimony by her, so front pay should be out.

Tr. 1308:7-20.

In their Rule 50(a) motion, Defendants never argued, as they argue now, that Dr. Edelman is not entitled to any front pay because her compensation from her new employer is higher than it was at NYU.  Nor did Defendants argue in their Rule 50 motion, as they argue now, that Dr. Edelman's damages must be capped at $137,400 because Dr. Edelman alleged $137,400 for front pay damages in her First Amended Rule 26 Disclosures and in the Final Pretrial Order. Defendants' failure at trial to argue that (i) the record lacks any evidence to support a finding of front pay because Dr. Edelman's salary at her new job is higher than what she earned at NYU; and (2) Dr. Edelman's damages are capped at $137,400, constitutes a waiver of these arguments which cannot now be considered on this motion.  *See Greenaway v. County of Nassau*, 327 F. Supp. 3d 552 (E.D.N.Y. 2018) (denying Rule 59(e) motion for remittitur of punitive damages award because they failed to raise the arguments in their Rule 50 motion, explaining "[a]lthough Rule 59(e) permits a court to alter or amend a judgment, it is not a mechanism to raise arguments or present evidence that could have been raised prior to the entry of judgment"); *E.J. Brooks Co. v Cambridge Sec. Seals*, 2015 U.S. Dist. LEXIS 174447 (S.D.N.Y. Dec. 23, 2015) (denying Rule 59(e) motion for remittitur where defendants failed to raise the arguments in their Rule 50 motion).

On the instant motion under Rule 59(e), Defendants are limited solely to the argument they made in their Rule 50(a) motion: that Dr. Edelman is not entitled to front pay because she failed to introduce sufficient "documents" concerning retirement benefits.  As outlined more fully below, this argument fails to meet the extremely high burden to alter the jury's verdict.  A lack of retirement "documents" as proof of damages does not "shock the judicial conscience and constitute a denial of justice" since the evidence provided multiple avenues for the jury to reach their verdict beyond the absence of retirement "documents."  The jury could have relied on (i) Dr Edelman's

testimony about the difference in her NYU and Florida retirement plans; (ii) the substantial

difference in her salary increases between NYU and Florida; (iii) the difference in her bonuses

between NYU and Florida; and (iv) the differences in her medical plans between NYU and Florida.

## C.  There Is No Manifest Injustice In Permitting The Jury Verdict of $700,000 to Stand

A jury verdict may not be disturbed under Rule 59(e) unless it "is so high as to shock the

judicial conscience and constitute a denial of justice."  *Ortiz*, 137 F.4th at 73.

"In its determination of whether the award is so excessive, the court must accord substantial

deference to the jury's determination of factual issues."  *Ojeda v Metro. Transp. Auth.*, 477 F. Supp.

3d 65 (S.D.N.Y. 2020)  (internal quotations omitted).  "In short, the court must be mindful of the

jury's 'broad discretion' in measuring damages, and discern an 'upper limit' to assess whether the

jury has surpassed it.  *Id*. quoting *Leo v. Long Island R.R. Co.*, 307 F.R.D. 314, 22 (S.D.N.Y.

2015).  "In making this determination, courts canvass the amounts awarded in 'comparable cases'

and determine whether the award falls within the 'reasonable range."  *Id; see also Graham v. City*

*of N.Y.*, 128 F. Supp. 3d 681, 713 (E.D.N.Y. 2015) ("[A] court should look to awards in comparable

cases, bearing in mind the unique facts and circumstances of each case.") "The key is

comparability: whether the counterpart cases involve analogous facts, similar measures of

damages, and are otherwise fairly congruent."  *Newton v. City of NY*, 171 F. Supp. 3d 156, 176

(S.D.N.Y. 2016).  The Second Circuit has "stress[ed], however, that [this] task is not [simply] to

balance the number of high and low awards and reject the verdict if the number of lower awards

is greater."  *Ismail v. Cohen*, 899 F.2d 183, 187 (2d Cir. 1990).[3]

---

[3] "Under New York law, an award is deemed excessive 'if it deviates materially from what would be reasonable compensation.'" *Id*. (quoting N.Y. C.P.L.R. § 5501(c)); *see also Okraynets v. Metro. Transp. Auth.*, 555 F. Supp. 2d 420, 439 (S.D.N.Y. 2008) ("[T]he standard under § 5501(c) is not whether an award deviates *at all* from past awards— it is whether an award deviates *materially* from *reasonable compensation*."). Under both standards, a court should look to awards in comparable cases, bearing in mind the unique facts and circumstances of each case. *Graham v City of NY*, 128 F. Supp. 3d 681, 713 (E.D.N.Y. 2015).  Importantly, "[w]here, as here, the jury's damages award was not

With respect to jury awards that are "intrinsically excessive," the Second Circuit has "applied the least intrusive standard for calculating remittitur, reducing the verdict 'only to the maximum that would be upheld by the trial court as not excessive.'" *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 337 (2d Cir. 1993) *quoting Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1330 (2d Cir. 1990).

In their motion, Defendants failed to argue or submit any comparable cases to allow the Court to determine whether the award falls within the reasonable range. This constitutes waiver.

As discussed below, viewing all evidence in the light most favorable to sustaining the jury's verdict, as the court must do (*Payne v. Jones*, 711 F.3d 85, 98 n.10 (2d Cir. 2012)), there were several pathways for the jury to award Dr. Edelman $700,000 in front pay. The $700,000 jury verdict is not "so high as to shock the judicial conscience and constitute a denial of justice." *Ortiz*, 137 F. 4th at 73.

**1. Front Pay Calculation Instructions**

Prior to rendering its verdict, the jury was instructed:

> Front pay damages, if any, represent a plaintiff's lost salary and benefits, caused by an unlawful discharge or other adverse action, accruing from the time of trial through some point in the future. If you find that Dr. Edelman will be unable to earn in the future what she would have earned at NYU, then you may award her, as additional compensation, the amount she would have earned during the time period between the date of your verdict and either: 1) the date you believe she would have worked at NYU absent any discriminatory conduct or 2) the date you can reasonably predict that she has a reasonable prospect of obtaining comparable employment. Factors to be considered in determining front pay include the age of the plaintiff and her reasonable prospects of obtaining comparable employment. In doing so, you should bear in mind that the purpose of front pay is to make a plaintiff whole -- that is, to put plaintiff in the position she would have been in if defendants had not discriminated against her.

---

segregated between the state and federal claims, courts typically adhere to the standard of review which provides the most complete recovery", e.g. the federal standard. *Id.* at 714.

*Tr*. 1473:24-1474:15.

The jury was also instructed that "[a]ny uncertainty about the amount of lost compensation to be awarded to Dr. Edelman should be resolved in her favor." *Tr*. 1473:18-20.

By its nature, front pay is not a fixed, precise amount; calculating front pay necessarily implicates predictions and assumptions about the future. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176 (2d Cir. 1992) (acknowledging that front pay awards always involve some degree of speculation and affirming a front pay award to the plaintiff based on evidence that he could have worked for the defendant for seventeen years had he not been terminated.)

"As the Court of Appeals has ruled, when calculating front pay, the Court should 'assume, absent evidence to the contrary, that the illegally discharged employee would have continued working for the employer until he or she reached normal retirement age.'" *Perez v. Progenics Pharms., Inc.*, 204 F. Supp. 3d 528 (S.D.N.Y. 2016) *quoting Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 742 (2d Cir. 1984). In *Perez*, following a jury verdict concerning a claim under Sarbanes-Oxley, the plaintiff requested that the Court reinstate plaintiff to employment with the defendant. The court concluded that was not feasible and that defendant should instead pay front pay to make the plaintiff whole. The court did not instruct the jury as to front pay. The court granted the plaintiff's motion for front pay. It concluded that the plaintiff, who was 58 years and 2 months of age, was entitled to front pay until a reasonable retirement age of 66 years and 6 months factoring in raises commensurate with previous pay increases, which amounted to $2,706,585.00. *Id*. at 551-552.

In *Ojeda*, the court denied defendants' Rule 59(e) motion for remittitur with regard to front pay for which the plaintiff was awarded $900,000. The defendant argued that the award for future lost wages should not have extended beyond February 16, 2016, the date on which the plaintiff

was terminated from the MTA.  The court explained that there was no discernable error in the jury's calculation of the plaintiff's award for future lost wages on this basis where the parties agreed to a jury instruction that "[i]n considering future lost earning capacity, it is assumed that if the plaintiff had not been injured, that he would have continued to work and receive wages for some period of time ...."  *Ojeda*, 477 F. Supp. 3d 65 at 82.

In *Shannon v. Fireman's Fund Ins. Co.*, 136 F. Supp. 2d 225, 234 (S.D.N.Y. 2001), the plaintiff was unlawfully terminated due to age discrimination.  The court awarded plaintiff front pay, including estimated wages, pension, 401(k), health insurance benefits, and social security benefits until his retirement age of 65.  *Id.* at 233.[4]

Courts routinely uphold front pay jury awards of up to twenty years.  *See Tyler*, 958 F.2d 1176 (2d Cir. 1992) (acknowledging that front pay awards always involve some degree of speculation and affirming a front pay award to the plaintiff based on evidence that he could have worked for the defendant for seventeen years had he not been terminated); *Stratton v. Dept. for the Aging*, 922 F. Supp. 857 (S.D.N.Y. 1996) (denying motion for remittitur of the front pay award where the jury awarded front pay until the plaintiff reached 70 years of age); *Padilla v. Metro-North Commuter R.R.*, 92 F.3d. 117, 126 (2d Cir. 1996) (affirming a jury verdict that awarded front pay for over 20 years); *Tanzini v. Mar. Midland Bank, N.A.*, 978 F. Supp. 70 (N.D.N.Y. 1997) (denying a motion for a new trial with regard to the jury's verdict awarding twenty years of backpay to the plaintiff); *Rees v. GE*, 144 F. Supp. 2d 138 (N.D.N.Y. 2001) (upholding the jury's verdict of more than seventeen years of front pay); *Vangas v. Montefiore Med. Ctr.*, 2015 U.S. Dist. LEXIS 44300 (S.D.N.Y. Apr. 3, 2015) (upholding verdict of eleven years of front pay).

## 2.  Retirement Benefits

---

[4] "During pre-trial proceedings, the parties agreed that in the event Shannon prevailed at trial, the Court would determine the amount of back and/or front pay to which Shannon is entitled."  *Id.* at 228.

As discussed *supra*, the only argument the Court may consider on this motion is that Dr. Edelman is not entitled to any front pay because Dr. Edelman failed to introduce sufficient "documents" concerning retirement benefits.  This argument is unavailing as there is no requirement that a plaintiff present "documents" concerning retirement benefits in order to be awarded compensatory damages[5].  Moreover, there was other evidence the jury may have used in awarding $700,000 in front pay.

At trial, Dr. Edelman presented evidence concerning benefits that Dr. Edelman received at NYU that she did not receive at Arthritis and Rheumatism Associates.  NYU offered a generous retirement plan. Unlike Arthritis and Rheumatism Associates who offered a <u>non-matching</u> 401(k) after her first year, NYU matched Plaintiff's retirement contributions up to 10% of her salary.  *Tr.* at 79:24-80:15; 210:15-21. This benefit amounted to additional earnings of $20,700.00 per year in 2015, 2016, and 2017, and $27,800.00 per year in 2018, 2019, and 2020 in retirement benefits directly contributed by NYU.  *See* Pl. Exs. 8 and 9.

 In addition, at NYU, Dr. Edelman was able to contribute approximately $18,000.00 per year towards her 401(d) retirement account, plus there was a 403(b) retirement account to which she had the ability to contribute monies.  *Id.*

Plaintiff also received $3,000 in expense reimbursements.  *Tr.* At 79:20-24.

---

[5] Indeed, oral testimony is admissible evidence.  *Scott v. Rosenthal*, 2001 U.S. Dist. LEXIS 12803, *7 (S.D.N.Y. Aug. 23, 2001) ("her testimony is evidence"); *Sass v. MTA Bus Co.*, 2012 U.S. Dist. LEXIS 142567, *13 (E.D.N.Y. Oct. 1, 2012)"(Since Plaintiff's testimony is evidence that can be considered by a jury, there is evidence in the record that Plaintiff did give Miller the roster in 2008"); *Bao v New A & N Food Mkt., Inc*, 2016 U.S. Dist. LEXIS 28248 (E.D.N.Y. Mar. 1, 2016) (collecting cases where compensatory damages were permitted based on the plaintiff's testimony); *Miner v. City of Glens Falls*, 999 F.2d 655, 663 (2d Cir. 1993) (upholding compensatory damages award for emotional distress based on testimony of plaintiff and his wife); *Cappiello v. ICD Publs., Inc.*, 458 F App'x 26 (2d Cir. 2012) (although analyzed under Illinois law, where no documents were admitted concerning benefits, crediting the plaintiff's detailed testimony as to the monies expended and to be expended for medical and dental insurance premiums).

Additionally, Dr. Edelman benefited from robust health insurance coverage through her employment at NYU Langone. However, upon relocating to Florida, the health insurance provided by Arthritis and Rheumatism Associates was substandard, forcing her to rely on her husband's employer-provided health insurance plan. This change in coverage subjected Dr. Edelman to high-deductible payments and limited coverage, inflicting undesired increased medical costs due to her job loss at NYU Langone. *Tr.* at 211:1-9. The jury may have reasonably inferred the value of this lost health benefit based on their common sense and life experiences. *See* https://www.kff.org/report-section/ehbs-2022-section-1-cost-of-health-insurance/ ("The average annual premiums in 2022 are … $22,463 for family coverage").

The evidence establishes that the benefits at Dr. Edelman's new practice in Florida pale in comparison to that of NYU's in every respect. Dr. Edelman lost those benefits from NYU upon being unlawfully terminated. This is especially true of retirement benefits, given their tax advantages and expected rates of return over the course of many years, and courts routinely award such benefits as part of a plaintiff's Title VII damages on the basis that such relief is "necessary to fulfill the court's duty to remedy the Defendants' proven past wrongs." *See Santiago v. Crown Heights Center for Nursing and Rehabilitation*, 2017 WL 9482107, at *20 (E.D.N.Y., 2017) (citing *United States v. City of N.Y.*, No. 07-CIV.-2067, 2015 WL 1800245, at *7 (E.D.N.Y. Apr. 16, 2015)). Courts have also awarded retirement benefits as part of a plaintiff's NYSHRL and NYCHRL damages. *See Sass v. MTA Bus Co.,* 6 F. Supp. 3d 238, 258 (E.D.N.Y. 2014) (ordering defendant to provide contributions to plaintiff's retirement plan as part of plaintiff's damages awarded under the NYCHRL).

Since that the jury was instructed to award front pay through "some point in the future," it was entirely within their discretion to determine an amount they deemed adequate. Based on the

evidence presented at trial regarding Dr. Edelman's projected salary[6] and benefits as a Rheumatologist at NYU Langone, the $700,000 front pay jury award does not "shock the judicial conscience to constitute a denial of justice." *See Tyler*, 958 F.2d 1176 (affirming a front pay award to the plaintiff based on evidence that he could have worked for the defendant for seventeen years had he not been terminated as it did not "shock the conscience" of the court); *Stratton*, 922 F. Supp. 857 (S.D.N.Y. 1996) (upholding jury verdict on award of front pay of salary until the plaintiff reached 70 years of age because it did not "shock the judicial conscience to constitute a denial of justice"); *Vangas v. Montefiore Med. Ctr.*, 2015 U.S. Dist. LEXIS 44300 (S.D.N.Y. Apr. 3, 2015) (upholding verdict of eleven years of front pay because it did not "shock the judicial conscience to constitute a denial of justice").

### 3. Wage Earnings

As discussed *supra*, Defendants are precluded from arguing now that the record lacks any evidence to support a finding of front pay because Plaintiff's salary at her new job is higher than what she earned at NYU. Even if the Court were to consider this belated argument, it must be rejected on the merits.

After relocating to Clearwater, Florida in 2021 for employment with Arthritis and Rheumatism Associates, Plaintiff entered a contract that provided a base salary of $300,000 for her first year, followed by $325,000 in 2022. *Tr.* at 230:1-4; *see also* Pl. Ex. 88. Plaintiff is not on a partnership track at Arthritis and Rheumatism Associates. *Tr.* 220:11-12.

---

[6] Because, as discussed *supra*, Defendants waived arguments that (i) the record lacks any evidence to support a finding of front pay because Plaintiff's salary at her new job is higher than what she earned at NYU; and (2) Plaintiff's damages are capped at $137,400, Defendants need not address these arguments herein, but will address them, in any event, below. Even if the Court deems these arguments not waived (which the Court must), Defendants fare no better on the merits as the verdict does not "shock the judicial conscience to constitute a denial of justice." *Ortiz*, 137 F4th at 73.

Here, as discussed *supra*, the jury was instructed that a front-pay award represents Plaintiff's lost salary and benefits through an unidentified point in the future, and any uncertainty about the amount of lost compensation to be awarded should be resolved in the favor of Dr. Edelman. *Tr*. at 1473:15-1474:2. Moreover, the jury was instructed:

> If you find that Dr. Edelman will be unable to earn in the future what she would have earned at NYU, then you may award her, as additional compensation, the amount she would have earned during the time period between the date of your verdict and either: 1) the date you believe she would have worked at NYU absent any discriminatory conduct or 2) the date you can reasonably predict that she has a reasonable prospect of obtaining comparable employment. Factors to be considered in determining front pay include the age of the plaintiff and her reasonable prospects of obtaining comparable employment. In doing so, you should bear in mind that the purpose of front pay is to make a plaintiff whole -- that is, to put plaintiff in the position she would have been in if defendants had not discriminated against her.

*Tr*. 1474:2-15.

Defendants did not object to these instructions, and it was reasonable for the jury to infer the value of Dr. Edelman's front pay totaled $700,000.00 based on what she could have expected to earn at NYU over the course of what the jury may reasonably conclude would have been at least an additional twenty or thirty years had she not been unlawfully terminated.[7]

Front pay awards may be sustained if they are based on instructions to "apply sound judgment [and] common sense in reaching the proper amount of damages" and that "there must be evidence to establish damages." *See Broadnax v. City of New Haven*, 141 Fed. Appx. 18, 23 (2d Cir. 2005). District courts in this Circuit have interpreted *Broadnax* to stand for the proposition that, as long as a court instructs a jury to tether its damages award to lost compensation, a front

---

[7] The jury may have easily inferred that Plaintiff is approximately forty-six years of age when she was terminated by NYU in 2020 based on her graduating college in 1996 (Tr. 50:10-16) and the juries' visual observation of Plaintiff.

pay award is proper. *Olaechea v. City of NY*, 2022 U.S. Dist. LEXIS 142037, *28 (S.D.N.Y. Aug. 9, 2022).[8]

Because, "in all cases, juries are presumed to follow the court's instructions," (*CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009)), the jury in this case is presumed to have found that Dr. Edelman lost $700,000.00 in wages and benefits if she was not retaliated against for engaging in protected activity. *See KT Group Limited v. NCR Corporation*, 412 F.Supp.3d 305, 327 (S.D.N.Y. 2019). The evidence adduced at trial showed that Dr. Edelman would have had a successful career at NYU were it not for Defendants' retaliatory conduct.

From 2014 to 2017, Plaintiff's NYU employment agreement provided her with a clinical compensation of $207,000 per year. *Tr.* at 81:8-9; *see also* Pl. Ex. 8. Under her subsequent contract from 2017 to 2020, Plaintiff earned annual clinical compensation of $278,000, representing roughly a 35% increase from her prior agreement. *Tr.* at 304:5-9; Pl. Ex. 9. At Dr. Edelman's sustained pattern of meeting or exceeding her wRVU targets, it is reasonable to expect that her next contract would have reflected a comparable 35% raise.

In line with this expectation, Plaintiff's projected annual clinical compensation under a renewed 2021 agreement could reasonably be estimated at $375,300. Additionally, Plaintiff was eligible for performance bonuses: for every percentage point she exceeded her wRVU target, she would earn a bonus equal to that same percentage of her clinical salary. *Tr.* at 88:13-19. There is no evidence that she would have received similar bonuses at Arthritis and Rheumatism Associates.

---

[8] Notwithstanding, Defendants rely on *Olaechea* for the proposition that front pay awarded based on speculation should be subject to remittitur. However, that court vacated the front pay jury award because there was *no evidence* the plaintiff there made any effort to mitigate her damages (and awarded front pay for five (5) years under Title VII). So *Olaechea* is inapposite. In any event, the trial record contains extensive evidence of Dr. Edelman's mitigation efforts and front pay damages. *Tr.* 145:5-14; *see also* Pl. Ex. 88.

The trajectory of the increases in her compensation – from $207,000.00 (2014-2017) to $278,000.00 (2018-2021) – suggests a similar large increase in 2021 but for Defendants' unlawful retaliation against her.  Indeed, because Dr. Edelman received an approximately thirty-five percent (35%) increase in salary following her first renewal at NYU, it would be reasonable for the jury to conclude that she would have received similar increases for her subsequent renewals, i.e., $349,000.00, $420,000, etc. which would justify the jury's proper front pay award.[9]

Thus, it is not at all speculative for the jury to award Dr. Edelman $700,000 for front pay for benefits and compensation. When considering the accrued compensation, salary, bonuses, insurance, and retirement benefits that Dr. Edelman would have received had she been permitted to continue her upward career trajectory at NYU Langone, it was entirely reasonable to conclude that the total value of that compensation and benefits over a 20-year or even a 30-year period would far exceed the $700,000 front-pay award. There is no evidence that this compensation is recoupable at Arthritis and Rheumatism Associates in Florida.

Dr. Edelman also engaged in extensive mitigation efforts to reduce the harm inflicted as a result of her adverse employment action.  *See* Pl. Ex. 88. Even so, she was unable to find substantially similar employment to her position at NYU. To be considered substantially similar, "the new position must afford [the plaintiff] virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status as the former position." *See Shannon*, 136 F. Supp. 2d at 229 *citing Reilly v. Cisneros*, 835 F. Supp. 96, 100 (W.D.N.Y. 1993), aff'd, 44 F.3d 140 (2d Cir. 1995)). Based on Plaintiff's six year-long positive employment relationship with NYU and reasonably expected upward trajectory of her promotional opportunities including substantial salary increases, it cannot be concluded that she would receive

---

[9] Dr. Edelman's renewed contract does not state a basis for the increase which the jury could reasonably infer was a merit increase.

the same promotional opportunities and substantial salary increases at Arthritis and Rheumatism Associates with no prior employment relationship there.  Therefore, her compensation and benefits at Arthritis and Rheumatism Associates could not be considered substantially similar to NYU.

The jury was instructed to "determine what damages, if any, Dr. Edelman has proved by a preponderance of the evidence for each claim that she has proven, if any".  *Tr.* at 1473:11-14.  In successfully adhering to these guidelines, the jury was required to determine the credibility of the information presented at trial by Dr. Edelman in order to come to their conclusion. This premise was reaffirmed by the Second Circuit in this case which held that the jury "alone were entitled to make credibility determinations. They were entitled to believe Dr. Edelman, and to discredit the testimony of Pacina and Antonik." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28 (2d Cir. 2025).   Since a "high degree of deference accorded to the jury's evaluation of witness credibility, and that jury verdicts should be disturbed with great infrequency," it would be inappropriate to grant Defendants' Rule 59(e) motion in this matter and attempt to tamper with the jury verdict. *See Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012).

Based on the evidence presented at trial regarding Dr. Edelman's projected salary and benefits as a Rheumatologist at NYU Langone, the $700,000 front pay jury award does not "shock the judicial conscience to constitute a denial of justice."  *See Tyler*, 958 F.2d 1176 (affirming a front pay award to the plaintiff based on evidence that he could have worked for the defendant for seventeen years had he not been terminated as it did not "shock the conscience" of the court); *Stratton*, 922 F. Supp. 857 (S.D.N.Y. 1996) (upholding jury verdict on award of front pay of salary until the plaintiff reached 70 years of age because it did not "shock the judicial conscience to constitute a denial of justice"); *Vangas v. Montefiore Med. Ctr.*, 2015 U.S. Dist. LEXIS 44300

(S.D.N.Y. Apr. 3, 2015) (upholding verdict of eleven years of front pay because it did not "shock the judicial conscience to constitute a denial of justice").

### 4. Initial Disclosures and Pre-Trial Order

As discussed *supra*, Defendants are also precluded from arguing now that Plaintiff's damages are capped at $137,400 because that is the amount she identified as her front pay damages in her Rule 26 disclosures[10] and in the joint pre-trial order.  Even if the Court were to consider this belated argument, it must be rejected on multiple grounds.

First, Defendants fail to cite any legal authority for their proposition (because there is none) that Dr. Edelman is limited to the amount she claimed in her initial disclosures and in the Joint Pre-Trial Order, warranting rejection of their argument.  In fact, a jury verdict is not limited to the amount a plaintiff seeks in pretrial filings.  *See Tamman v. Schinazi (In re Schinazi)*, 2010 Bankr. LEXIS 5111 (Bankr. S.D.N.Y. Feb. 23, 2010) (noting that "the jury's verdict substantially exceeded the damages requested by the Tammans"); *Childers v. TTI Consumer Power Tools, Inc.*, 2025 U.S. Dist. LEXIS 19496 (D. Or. Feb. 4, 2025) (denying motion to reduce $10,000,000 noneconomic damages verdict to no more than $4,500,000 which was in line with plaintiff's pretrial allegations because there was evidence in the record supporting an award of $10,000,000 in noneconomic damages).  Defendants did not appeal the denial of their motion and have now waived this argument. *Analytical Survs., Inc.,* 684 F.3d at 52.

Second, this Court already decided that Dr. Edelman is not limited to $137,400 in front pay based on her initial disclosure and JPTO.  Defendants filed a motion *in limine* prior to trial seeking to preclude Dr. Edelman from introducing evidence as to her damages because she failed to timely

---

[10] In her initial disclosures, Plaintiff sought "back pay and front pay <u>in an amount to be determined at trial</u>, but currently calculated at $137,400.00."  ECF Docket Entry <u>269-14</u>.

set forth a methodology for the computation of those damages and failed to produce documents supporting the damages.  This Court denied the motion.  *See Edelman v NYU Langone Health Sys.*, 2023 U.S. Dist. LEXIS 113626 (S.D.N.Y. June 30, 2023).  As this court explained in denying Defendants' motion *in limine* "Plaintiff [did not] have the documents with which to calculate the pay she lost as a result of being terminated or that she would have earned going forward had she not been terminated. Plaintiff has no documents of her own with respect to these categories of damages" and "a party would not be expected to provide a calculation of damages which . . . depends on information in the possession of another party or person."  Thus, the Court did not preclude or limit Plaintiff's front pay damages.  That decision is law of the case on this issue. *Freeman v. Giuliani*, 2024 U.S. Dist. LEXIS 233460 (S.D.N.Y. Dec. 27, 2024) (J. Liman) ("the law-of-the-case doctrine … holds that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case . . . unless cogent and compelling reasons militate otherwise.") (internal; citation omitted).

Third, because the Court concluded that Dr. Edelman is not precluded from introducing any evidence regarding her front pay damages, the jury was instructed with regard to front pay, that Dr. Edelman was entitled to not only benefits, but also lost wages:

> If Dr. Edelman has proved her claim for retaliation under the state human rights law or the city human rights law, she would be entitled to lost wages and benefits arising under such claim even if they were difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Dr. Edelman should be resolved in her favor.  Here, if you find for Dr. Edelman on her claims for retaliation under state human rights law or city human rights laws, you should consider her damages for front pay. Front pay damages, if any, represent a plaintiff's lost salary and benefits, caused by an unlawful discharge or other adverse  action, accruing from the time of trial through some point in the future. If you find that Dr. Edelman will be unable to earn in the future what she would have earned at NYU, then you may award her, as additional compensation, the amount she would have earned during the time period between the date of your verdict and either: 1) the date you believe she would have worked at NYU absent any

> discriminatory conduct or 2) the date you can reasonably predict that she
> has a reasonable prospect of obtaining comparable employment. Factors to
> be considered in determining front pay include the age of the plaintiff and
> her reasonable prospects of obtaining comparable employment. In doing so,
> you should bear in mind that the purpose of front pay is to make a plaintiff
> whole -- that is, to put plaintiff in the position she would have been in if
> defendants had not discriminated against her.

*Tr.* 1473:15-1474:15 (emphasis added).

If Dr. Edelman's damages for the retaliation claims were limited to benefits (and not future

lost wages), the jury would not have been instructed about future lost wages. Defendants did not

object to this instruction (nor did they appeal the issuance of this instruction) concerning future

lost wages as part of front pay damages. Following the Court's jury instruction, the jury concluded

that Plaintiff is entitled to front pay consisting of lost salary and benefits in the amount of $700,000.

As noted *supra*, front pay is intrinsically ambiguous and necessarily implicates predictions,

speculation and assumptions about the future because it deals with future earnings and promotions.

*See Tyler*, 958 F.2d at 1189 (2d Cir. 1992); *Tanzini*, 978 F. Supp. at 81; *Ward v. NY City Tr.*

*Auth.* 1999 U.S. Dist. LEXIS 9621, f.n. 8 (S.D.N.Y. June 24, 1999). As such, it would be more

appropriate for a jury as fact finders to calculate Dr. Edelman's front pay damages.

This Court aptly noted to the jury, front pay is for lost compensation "even if difficult to

calculate" and "[a]ny uncertainty about the amount of lost compensation to be awarded to Dr.

Edelman should be resolved in her favor." Moreover, front pay is awarded for compensation *after*

the jury verdict for *future* lost compensation which would be difficult to predict and impossible to

calculate in Rule 26 disclosures.

Accordingly, there is no basis to reduce the front pay award based on the initial disclosures

and joint pretrial order.

## POINT III

## JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANTS NYU LANGONE HEALTH SYSTEM, NYU LANGONE HOSPITALS, NYU LANGONE MEDICAL CENTER, NYU LANGONE NASSAU RHEUMATOLOGY, NYU SCHOOL OF MEDICINE, NYU GROSSMAN SCHOOL OF MEDICINE, NYU HOSPITALS CENTER AND ANTONIK IN FAVOR OF PLAINTIFF FOR $700,000 AND FOR COSTS AND REASONABLE ATTORNEYS' FEES[11]

Under Rule 54(b) of the Federal Rules of Civil Procedure, Edelman seeks this Court's determination that the claims against Antonik and NYU have been fully adjudicated and there is no just reason for delay in issuance and entry of judgment reflecting the jury verdict dated July 19, 2023. This case alleges multiple claims against multiple parties, specifically, claims of retaliation and discrimination against Defendants Antonik, NYU and Kaplan. Through Rule 50(a), this Court severed the causes of action brought against Kaplan from those brought against Antonik and NYU on which the jury returned a verdict and Edelman now seeks judgment. On appeal, the Second Circuit treated these severed causes of action separately, reinstating the jury verdict of $700,000 against Defendants Antonik and NYU while also remanding the causes of action against the remaining Defendant, Kaplan, for trial scheduled for November 17, 2025. Edelman seeks the relief granted her by the jury over two years ago, on July 19, 2023, following full adjudication of those claims, appellate review and reinstatement, and the current Rule 59(e) proceeding. With no just reason for delay, this Court is compelled to consider the injustice of requiring Edelman to wait to receive her judgment until full adjudication of the claims against Kaplan. The Kaplan trial will have no impact on the Antonik/ NYU jury verdict; the causes of action while similar are not dependent, as each proceeding is predicated on a unique set of facts.

---

[11] Upon entry of judgment, Plaintiff will file a motion for costs and attorneys' fees.

Rule 54(b) of the Federal Rules of Civil Procedure provides district courts discretion to enter a final judgment for "fewer than all" parties on actions such as this with multiple claims and parties. Fed. R. Civ. P. 54(b); *Curtiss-Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 8 (1980) ("Once having found finality, the district court must go on to determine whether there is any just reason for delay.... It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. Id., (vacating the appeals court judgment and remanding to district court to direct entry of final judgment as to fewer than all claims after the district court made an express determination there is no just reason for delay); Sears, Roebuck & Co. v. Mackey, 351 U.S. 427 (1956), (outlining the steps to be followed in making determinations under Rule 54 (b)). Upon resolution of Defendant's Rule 59(e) motion, all issues related to Edelman's claims against Antonik and NYU will be resolved and only issuance and entry of the judgment will remain. As such, Edelman requests that this Court expressly state a finding of "no just reason for delay" and grant the Rule 54(b) determination.

Rule 54(b) provides that a district court may issue a decree or Order directing entry of a final judgment if: (1) the case includes either multiple claims, multiple parties, or both and that one or more but fewer than all the claims have been finally decided or that all the rights and liabilities of at least one party have been adjudicated, and (2) a court has found expressly that there is no just reason to delay. Fed. R. Civ. P. Rule 54(b). Whether the decided claims are separate and independent from those still pending is based on the facts of the case and, as such, discretion lies with the District Court in making a Rule 54(b) determination because it is most familiar with those intimate facts. In exercising its discretion, the District Court evaluates "no just reason for delay" through a non-exhaustive list of considerations meant to further judicial efficiency and avoid

piecemeal appellate review. *Sears, Roebuck & Co. v. Mackey*, at 437 (affirming appellate jurisdiction where the district court dismissed two of four claims but left two remaining claims unadjudicated). Thus, Rule 54(b) provides district courts the opportunity to end litigation for parties who have fully adjudicated claims against them, regardless of the existence of additional claims or parties that survive and await future proceedings. Finding no just reason for delay in issuing a judgment requires consideration of factors such as: the relationship between adjudicated and unadjudicated claims, the impact of future developments in the case, frivolity of delay, and economic concerns. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. at 10-11, ("because the number of possible situations is large, we are reluctant either to fix or sanction narrow guidelines for the district courts to follow).

Through Rule 50(a) on July 18, 2023, Edelman's claims against Antonik and NYU were severed from the causes of action against other parties and submitted to the jury which rendered a verdict over two years ago. This Court issued a judgment against Antonik and NYU dated July 19, 2023. The Second Circuit addressed the verdict and its underlying claims against Antonik and NYU separate from claims against other parties, specifically Kaplan. This 54(b) motion seeks the same treatment of multiple claims against multiple parties with its request for finality regarding the jury verdict which is under yet another review via Defendants' 59(e) motion. In accordance with Rule 54(b), another Court within the Southern District of New York found no just reason for delay in finalizing adjudicated claims where separate, unadjudicated claims remained and there was no risk of piecemeal appeal. The Court explained that a finding of finality would not "go to the merits" of pending motions in the case nor "implicate the merits" of settlement. *Kers & Co. v. Bank of Am. Corp. (In re Bank of Am. Corp. Sec., Derivative, & Emple. Ret. Sec. Act (ERISA)) Litig.*, No. 09 MD 2058 (PKC), 2013 U.S. Dist. LEXIS 159132, at *32 (S.D.N.Y. Nov. 4, 2013).

Reserving the right to review Rule 54(b) determinations for judicial efficiency, the Second Circuit scrutinizes the express reason district courts give for finding no just reason for delay to protect against piecemeal appeals.  Here, the appeal on this Court's JNOV concerning Antonik and NYU has already occurred. There is no risk of piecemeal review from finalizing this judgment. The injustice from denying finality to the fully adjudicated claims addressed in the jury verdict is obvious. Dr. Edelman suffered retaliation nearly five years ago and has been waiting over two years for the monetary award the jury saw fit to make her whole. The Second Circuit has found Rule 54(b) determination on no just reason for delay "obvious" where a cause of action has been severed from undecided causes of action and a finding of finality furthers resolution of issues. *Fletcher v. Marino*, 882 F.2d 605, 610 (2d Cir. 1989) ("severed causes of action are independent from those left undecided,... and no purpose would be served by delaying an appeal of the issues until a final determination of plaintiffs' remaining claims"). Indeed, even where no reason is expressly stated for a Rule 54(b) determination, the Second Circuit has upheld the District Court's finding of finality where the basis is "obvious" and denial would result only in further unnecessary delay. *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 355 (2d Cir. 2011) ("a judgment expressly certified as final under Rule 54(b) is no less final for omitting a statement supporting a determination that there is no reason for delay"); *see also Mahon v. Ticor Title Ins. Co.,* 683 F.3d 59, 62 (2d Cir. 2012) (accepting district court's Rule 54(b) finding with no discussion; granting partial final judgment with no mention of hardship because the adjudicated claim would "not arise a second time on appeal" and final judgment would help avoid a duplicative trial). Weighing both the equities of this case and the judicial administrative interest in avoiding piecemeal appeals, this Court may expressly state a basis for finding no just reason for delay because the adjudicated

claims against Antonik and NYU have already been reviewed. The upcoming Kaplan trial will bring no risk of overlap or open the judgment up for further appeal.

Balancing the needs of Dr. Edelman and Defendants with judicial efficiency, this Court must consider that the potential for future motions stemming from the Kaplan trial does not outweigh the hardship imposed on Dr. Edelman should she be required to relitigate claims already decided against Antonik and NYU. Rule 54(b) in conjunction with the law of the case doctrine compels the district court to enter judgment on a jury award that has no opportunity to return to the district court under the same set of facts absent a change in controlling law or realization of new evidence. *See Vornado Realty Tr. v. Castlton Envtl. Contractors, LLC*, No. 08-CV-4823 (WFK) (JO), (E.D.N.Y. Oct. 18, 2013) ([D]istrict courts should generally only revisit earlier interlocutory orders if (1) there has been an intervening change in controlling law, (2) there is new evidence, or (3) there is a need to correct a clear error or to prevent manifest injustice.") *citing*, <u>*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*</u>, 956 F.2d 1245, 1255 (2d Cir. 1992) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again…. Even if Rule 54(b) allows parties to request district courts to revisit earlier rulings, the moving party must do so within the strictures of the law of the case doctrine."); and *citing*, *McGee v. Dunn*, No. 09 Civ. 6098, 940 F. Supp. 2d 93, 2013 U.S. Dist. LEXIS 55732, 2013 WL 1628604, at *3 (S.D.N.Y. Apr. 16, 2013) ("The objective of the law of the case doctrine includes promoting efficiency and avoiding endless litigation by allowing each stage of the litigation to build on the last and not afford an opportunity to reargue every previous ruling."). Dr. Edelman was awarded $700,000 by the jury in her trial against Antonik and NYU on July 19, 2023, over two years ago. Following Rule 50(b) and 59(e) motions and an appeal, this judgment will have undergone judicial review multiple times. Where, as here, the relationship

between the adjudicated and unadjudicated claims has been severed, a Rule 54(b) determination supports the Second Circuit's pursuit of judicial efficiency and complies with its historical adherence to the law of the case doctrine. Entering judgment at this time would forestall any duplicative and expensive proceedings erroneously triggered by the upcoming Kaplan trial and the facts unique to those causes of action. Nothing about entering judgment on the jury verdict now could impact the Kaplan trial or add efficiency to future proceedings. Indeed, prolonging entry of the judgment without reason would be frivolous as doing so would create no risk of "piecemeal appeals" because the verdict was already reviewed on appeal, reinstated, and subjected to a Rule 59(e) motion.  Moreover, the claims against Kaplan are not so interrelated as to form a single factual unit and foreclose this Court's latitude to enter judgment.

The Second Circuit's Order held that there was sufficient evidence to support the jury's verdicts in Dr. Edelman's favor, and that there was sufficient evidence to permit the retaliation claim against Kaplan to proceed to the jury. Edelman has been waiting years for the relief granted by the jury and requests that this Court issue and enter judgment on the jury award without further unnecessary delay.

## **CONCLUSION**

Based on the foregoing, Defendants' motion under Rule 59(e) must be denied.

Dated:    Lake Success, New York
          September 9, 2025                    Respectfully submitted,

                                     **MILMAN LABUDA LAW GROUP PLLC**

                                     By:_____/s/_____
                                          Joseph M. Labuda, Esq.
                                          Jamie S. Felsen, Esq.
                                          3000 Marcus Avenue, Suite 3W8
                                          Lake Success, New York 11042
                                          (516) 328-8899 (office)
                                          (516) 328-0082 (facsimile)

joe@mllaborlaw.com
jamie@mllaborlaw.com

*Attorneys for Plaintiff,Dr. Sari Edelman*