**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. SARI EDELMAN,<br><br>Plaintiff,<br><br>– against –<br><br>NYU LANGONE HEALTH SYSTEM, NYU LANGONE HOSPITALS, NYU LANGONE MEDICAL CENTER, NYU LANGONE NASSAU RHEUMATOLOGY, NYU SCHOOL OF MEDICINE, NYU GROSSMAN SCHOOL OF MEDICINE, NYU HOSPITALS CENTER, ANDREW T. RUBIN, DAVID KAPLAN, JOSEPH ANTONIK, and JOSHUA SWIRNOW,<br><br>Defendants. | Case No. 1:21-cv-502 (LJL)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANTS' RENEWED MOTION TO
ALTER OR AMEND THE JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e)
AND MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR ENTRY OF JUDGMENT UNDER FED. R. CIV. P. 54**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARGUMENT ........................................................................................................................ 2

I.    THE AWARD OF $700,000 IN FRONT PAY SHOULD BE
VACATED OR REDUCED .................................................................................. 2

    A.    Discussion .................................................................................................. 2

        1.    The Remittitur Motion Was Not Resolved by the Second
Circuit or Encompassed in the Mandate ............................................. 2

        2.    The Front Pay Award Should Be Vacated ............................................ 4

            a.    Plaintiff Misstates the Law to Obfuscate the Bases for
Remittitur .................................................................................. 4

            b.    Plaintiff Mischaracterizes and Distorts the Record in an Effort
to Disguise the Lack of Evidence Supporting $700,000 in
Front-Pay Damages ........................................................................ 7

            c.    Plaintiff's Damages Were Capped By Her Pretrial Filings ............ 10

            d.    Defendants Are Not Precluded From Raising Their Asserted
Arguments .................................................................................. 11

        3.    Plaintiff Has No Basis for Immediate Entry of Judgment Against
Specified Defendants ........................................................................ 13

CONCLUSION ................................................................................................................ 13

002528\5\180112770.v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. City of Syracuse,*
  673 F.3d 141 (2d Cir. 2012)................................................................2

*Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.,*
  824 F. Supp. 2d 573 (S.D.N.Y. 2011).......................................................10

*Dunlap-McCuller v. Riese Org.,*
  980 F.2d 153 (2d Cir. 1992)..........................................................4, 11

*E.J. Brooks Co. v. Cambridge Sec. Seals,*
  No. 12-CV-2937, 2015 WL 9704079 (S.D.N.Y. Dec. 23, 2015) ....................................11, 12

*Exxon Shipping Co. v. Baker,*
  554 U.S. 471 ..............................................................................12

*Garnett v. Undercover Officer C0039,*
  No. 1:13-cv-7083-GHW, 2015 WL 1539044 ...........................................................5

*Graham v. City of N.Y.,*
  128 F. Supp. 3d 681 (E.D.N.Y. 2015) ................................................................6

*Greenaway v. County of Nassau,*
  327 F. Supp. 3d 552 (S.D.N.Y. 2018).............................................................11, 12

*Greenway v. Buffalo Hilton Hotel,*
  143 F.3d 47 (2d Cir. 1988)..........................................................................4

*J.G. Peta, Inc. v. Club Protection, Inc.,*
  No. 99-CV-616, 2000 U.S. Dist. LEXIS 20313 (N.D.N.Y. Sep. 5, 2000) ..............................6

*Johnson v. Maximus Services LLC,*
  No. 23-7672, 2025 WL 1561819 (2d Cir. June 3, 2025) ............................................5

*Legg v. Ulster County,*
  979 F.3d 101 (2d Cir. 2020). (Opp..) ..............................................................3

*Leo v. Long Island R.R. Co.,*
  307 F.R.D. 314 (S.D.N.Y. 2015) ....................................................................6

*Luca v. Cnty. of Nassau,*
  No. 04-cv-4898, 2008 WL 2435569 (E.D.N.Y. June 16, 2008), *rev'd on other
  grounds,* 344 Fed. Appx. 637 (2d Cir. 2009)........................................................10

*McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*,
    293 F. Supp. 3d 394 (S.D.N.Y. 2018).........................................................5

*Newton v. City of New York*,
    171 F. Supp. 3d 156 (S.D.N.Y. 2016)...........................................2, 3, 4, 6

*Newton v. City of New York*,
    779 F.3d 140 (2d Cir. 2015)........................................................................2

*Ojeda v. Metro. Transp. Auth.*,
    477 F. Supp. 3d 65 (S.D.N.Y. 2020)..........................................................6

*Olaechea v. City of New York*,
    No. 17-cv-4797, 2022 WL 3211424 (S.D.N.Y. Aug. 9, 2022).............4, 6, 7

*Olivares v. Brentwood Indus.*,
    822 F.3d 426 (8th Cir. 2016)....................................................................10

*Press v. Concord Mortg. Corp.*,
    No. 08-cv-9497, 2010 WL 3199684 (S.D.N.Y. Aug. 11, 2010)................11

*SEC v. Collector's Coffee Inc.*,
    No. 19-CV-4355, 2025 WL 934842 (S.D.N.Y. Apr. 9, 2025) ....................5

*SEC v. Stewart*,
    No. 98-CV-02636, 2025 U.S. Dist. LEXIS 18909 (S.D.N.Y. Feb. 3, 2025)...........5

*Smith v. Farmstand*,
    No. 11-cv-9147, 2016 WL 5912886 (N.D. Ill. Oct. 11, 2016) ...................7

*Thomas v. iStar Fin., Inc.*,
    508 F. Supp. 2d 252 (S.D.N.Y. 2007).........................................................7

*Torres v. Metro-North Railroad Co.*,
    No. 20-cv-10782, 2023 WL 4487726 (S.D.N.Y. July 12, 2023)................7

*Tse v. UBS Fin. Servs., Inc.*,
    568 F. Supp. 2d 274 (S.D.N.Y. 2008).........................................................4

*Weinberg v. Vil. of Clayton*,
    No. 5:17-cv-00021, 2018 WL 5777292 (N.D.N.Y. Nov. 2, 2018)..............5

*Whittlesey v. Union Carbide Corp.*,
    742 F.2d 724 (2d Cir. 1984)...................................................................6, 7

iii

Defendants submit this reply memorandum of law in further support of their renewed motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 59(e) (the "Remittitur Motion") and in opposition to Plaintiff's cross-motion for entry of judgment. (ECF Doc. No. 316.)

Plaintiff's Memorandum of Law (ECF Doc. No. 317; "Opp.")[1] fails to adequately address and rebut the arguments set forth in Defendants' moving memorandum of law. (ECF Doc. No. 312.)  Plaintiff relies on analogies to unrelated cases, including those concerning non-remittitur motions pursuant to Rule 59(e) and remittitur motions tied to more subjective compensatory damages, which the jury declined to award to Plaintiff, to inaccurately claim what needs to be asserted and what needs to be satisfied for remittitur to be granted.  In truth, remittitur is available where the record and evidence do not support a damages award.  The record here does not support an award of $700,000 in front pay—a measure of damages designed solely to make the plaintiff "whole" and not put them in a better position—as Plaintiff immediately began working at a comparable position, making more money than she had while working at NYU.

Plaintiff's cross-motion for judgment fails for the same reason.  As the Remittitur Motion remains before this Court, there is no basis to enter judgment.

---

[1]    Plaintiff's Memorandum of Law in Support of her Cross Motion (ECF Doc. No. 317) and Plaintiff's Memorandum of Law in Opposition to Defendants' Renewed Motion to Alter or Amend the Judgment Pursuant to Fed. R. Civ. P. 59(e) (ECF Doc. No. 320), along with their respective filings are the same.

## ARGUMENT

## I.  THE AWARD OF $700,000 IN FRONT PAY SHOULD BE VACATED OR REDUCED

### A.    Discussion

#### 1.    The Remittitur Motion Was Not Resolved by the Second Circuit or Encompassed in the Mandate

Plaintiff fails to provide any substantive support for its contention that the Remittitur Motion was resolved by the scope of the Second Circuit mandate and fails to adequately distinguish *Newton v. City of New York*, an analogous case to this matter in which a district court granted a Rule 50(b) motion, the Second Circuit reversed, a remittitur motion was heard, and a damages award lowered.[2]

Plaintiff's entire argument amounts to claiming that instructions to reinstate a verdict necessarily resolve any pending but undecided remittitur motion.  (*See* Opp, p. 7 (stating that the mandate was to "reinstate the $700,000 jury verdict against Antonik and NYU").)  Plaintiff cites no case that says such an instruction prohibits consideration of a remittitur motion and mischaracterizes the mandate, which did not include a mention of the $700,000 figure.

The mandate only applies to "matters expressly decided by the appellate court [and] precludes re-litigation of issues impliedly resolved by the appellate court's mandate."  *Sompo Japan Ins. Co. of Am.*, 762 F.3d at 175 (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012) (internal quotation marks omitted)).  The Remittitur Motion was not addressed explicitly or implicitly by the Second Circuit.  It was not included in the parties' appellate briefs.  It was not discussed in the Second Circuit's decision.  Front pay itself was never mentioned in the Second Circuit's decision.  Indeed, damages—aside from punitive damages—are only mentioned several

---

[2]     *Newton v. City of New York*, 171 F. Supp. 3d 156 (S.D.N.Y. 2016); and *Newton v. City of New York*, 779 F.3d 140 (2d Cir. 2015).

times, as background, and incorrectly classified as "compensatory damages", demonstrating that the Second Circuit was not concerning itself with damages beyond the punitive damages analysis. (*See* Supp. Steer Decl., Ex. B, pp. 2, 5, 14.)  While Plaintiff repeatedly refers to "the $700,000 verdict" (*see, e.g.,* Opp., p. 9), that phrase is never used by the Second Circuit in its decision or the mandate.

Plaintiff's sole basis to claim that remittitur motions must be affirmatively named in a mandate to remain live is *Legg v. Ulster County*, 979 F.3d 101 (2d Cir. 2020).  (Opp., p. 15.)  *Legg* however, only mentions remittitur because the remittitur motion there had already been partially decided and was a topic of discussion on the appeal.  *See, e.g., Legg*, 979 F.3d at 106 (noting how the district court had already "entered orders reducing her Title VII award up to $75,000 and overturning the jury verdict in her favor on her §1983 claim for want of evidence[.]).  There is nothing in *Legg* supporting Plaintiff's contention that the Second Circuit must explicitly mention remittitur in a remand order for an undecided remittitur motion to remain live.

While Plaintiff cites no cases that require remittitur to be included in the circuit court's order, Judge Scheindlin's reasoning in *Newton v. City of New York*, demonstrates the validity of Defendants' position.  A mandate nearly identical to that in this litigation was found to have not foreclosed the pending and undecided remittitur motion.  *Newton*, 171 F. Supp. 3d at 169.  While Plaintiff attempts to distinguish *Newton* based solely on the fact that some additional proceedings involving the same defendants were contemplated in *Newton*, Plaintiff fails to address that (1) Judge Scheindlin refers only to there being "post-remand proceedings" without qualifying them in any way, and (2) <u>before</u> mentioning the existence of post-remand proceedings, Judge Scheindlin categorically states that a mandate and instructions nearly identical to those here cannot "be said

3

[to] address, even impliedly, any limitations on this Court's authority to adjudicate pending [new trial and remittitur] issues upon remand." (*Id.*)

Plaintiff's argument turns the mandate rule on its head. While a party would need to look for evidence that the circuit court had expressly or implicitly decided an issue to have it captured by the scope of a remand mandate, Plaintiff would have mere silence by the Second Circuit on a matter not on appeal, not briefed by the parties, and not addressed by the circuit court nevertheless implicitly resolve the issue. This backwards approach would prejudice a party victorious on a motion pursuant to Fed. R. Civ. P. 50(b) and should not be endorsed.

For this reason, the Remittitur Motion should be heard and decided.

### 2. The Front Pay Award Should Be Vacated

#### a. *Plaintiff Misstates the Law to Obfuscate the Bases for Remittitur*

Plaintiff resorts to referring to other Rule 59(e) motions, unrelated to remittitur, to hide the applicable law and incorrectly portray the standard needing to be met to satisfy the Remittitur Motion.

As explained by Defendants in the Remittitur Motion, the necessary standard to satisfy for remittitur based on the record is "that the jury awarded specific amounts of damages that were not supported by the record." *Olaechea v. City of New York*, No. 17-cv-4797, 2022 WL 3211424, at *8 (S.D.N.Y. Aug. 9, 2022) (citing *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 287 (S.D.N.Y. 2008). An award of front pay must not be "unduly speculative." *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992). And a plaintiff has a duty to mitigate any such damages. *See, e.g.*, *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 55 (2d Cir. 1988). In *Olaechea*, the court found "that the jury did not have sufficient evidence to award Plaintiff any amount of front pay[,]" leading the court to remit the jury's award of front pay in its entirety. *Olaechea*, 2022 WL 3211424, at *9. This is the argument made by Defendants here and supported by the record. Plaintiff failed

to submit evidence to support an award of $700,000 in front pay. As a result, the front pay award should be remitted in its entirety or, at a minimum, reduced to the number that Plaintiff herself calculated as being supported by her alleged evidence—$137,400.

Plaintiff first artificially inflates the standards that Defendants must meet in their Remittitur Motion. Plaintiff claims that Defendants needed to show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" in order to make its argument, citing a non-precedential summary order ruling by the Second Circuit. (Opp., p. 11 (citing *Johnson v. Maximus Services LLC*, No. 23-7672, 2025 WL 1561819 (2d Cir. June 3, 2025)).) But *Johnson* does not concern a remittitur motion <u>at all</u>, instead pertaining to a completely different motion under Rule 59(e) to set aside a grant of a motion to dismiss that had already been entered. *Johnson*, 2025 WL 1561819, at *1.[3]

Plaintiff includes yet another paragraph saying that the Remittitur Motion must be denied because Defendants "have not argued any basis under Rule 59(e) for altering or amending the instant judgment." (Opp, p. 12.) This too is false. Again, Plaintiff cites to a string cite of cases that do not discuss remittitur at all, including some cases that do not address any Rule 59(e) motion. *SEC v. Stewart*, No. 98-CV-02636, 2025 U.S. Dist. LEXIS 18909, *3 (S.D.N.Y. Feb. 3, 2025) (concerning a motion for reconsideration regarding the scope of testimony); *McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 396 (S.D.N.Y. 2018) (concerning a motion for reconsideration of a denied motion to dismiss); *Garnett v. Undercover Officer C0039*, No. 1:13-cv-7083-GHW, 2015 WL 1539044 (lacking any Rule 59(e) motion); *Weinberg v. Vil. of Clayton*,

---

[3] Even if the standard found in cases of motions for reconsideration, like *Johnson*, were to apply, courts have identified these as merely "[t]he **major grounds** justifying reconsideration", not the <u>only</u> grounds. *SEC v. Collector's Coffee Inc.*, No. 19-CV-4355, 2025 WL 934842, *1 (S.D.N.Y. Apr. 9, 2025) (emphasis added).

No. 5:17-cv-00021, 2018 WL 5777292, *5 (N.D.N.Y. Nov. 2, 2018) (discussing failure to analyze a due process claim under applicable factors); *J.G. Peta, Inc. v. Club Protection, Inc.*, No. 99-CV-616, 2000 U.S. Dist. LEXIS 20313, *15-16 (N.D.N.Y. Sep. 5, 2000) (discussing how Rule 11 sanctions require the opportunity to correct or withdraw a document).

Plaintiff continues her error in applying the wrong test and discussing the wrong issues when she claims that Defendants must have "comparable cases." (Opp., p. 16.) "Comparable cases" are not necessary when the argument being made is that the record does not support the award. Front Pay is designed to compensate a plaintiff to "mak[e] victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 729 (2d Cir. 1984). The answer is then inherently based on the facts of the case. In situations where the damages sought are more amorphous, and based upon less objective analyses, comparable cases will naturally play a more significant role. This is why the cases cited by Plaintiff for this point concern forms of <u>compensatory damages</u>, which the jury rejected here, not front pay. *See Ojeda v. Metro. Transp. Auth.*, 477 F. Supp. 3d 65, 84 (S.D.N.Y. 2020) (discussing comparable cases only in connection with portion of remittitur motion related to pain and suffering damages due to injuries); *Leo v. Long Island R.R. Co.*, 307 F.R.D. 314, 339 (S.D.N.Y. 2015) (discussing comparable cases only in connection with damages tied to a pain and suffering claim); *Graham v. City of N.Y.*, 128 F. Supp. 3d 681, 713-17 (E.D.N.Y. 2015) (discussing comparable cases when discussing damages for loss of liberty and physical and emotional distress); *Newton v. City of N.Y.*, 171 F. Supp. 3d 156, 176 (S.D.N.Y. 2016) (discussing comparable cases related to damages for wrongful imprisonment). This is not necessary when the challenge to a front pay award is that the record does not support the damages amount. *See, e.g., Oleachea*, 2022 WL 3211424, at *9

(remitting front pay award because the award was "impermissibly speculative" and unsupported by the record without mentioning comparable cases); *see also Torres v. Metro-North Railroad Co.*, No. 20-cv-10782, 2023 WL 4487726, *6, 13 (S.D.N.Y. July 12, 2023) (reducing award for front pay based on the award being "unduly speculative" while looking to comparable cases "with respect to a damages award for pain and suffering").

Plaintiff's arguments lack case law support. Defendants need only demonstrate that the record does not and cannot support Plaintiff being awarded $700,000 in front pay damages. As explained in the earlier Remittitur Motion filings and detailed further herein, the record lacks support for $700,000 in front pay damages.

        b.   *Plaintiff Mischaracterizes and Distorts the Record in an Effort to Disguise the Lack of Evidence Supporting $700,000 in Front-Pay Damages*

Defendants have demonstrated that the record does not include "sufficient evidence to award Plaintiff any amount of front pay", as stated in *Olaechea*. Plaintiff's opposition fails to adequately rebut this evidence, as it introduces information not in the record and resorts to misstatements of other information in the record in opposing the Remittitur Motion.

Front Pay is designed to compensate a plaintiff to "mak[e] victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." *Whittlesey*, 742 F.2d at 729. Furthermore, "[f]ront pay must consider the ability of the plaintiff to mitigate damages in the future[.]" *Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252, 260 (S.D.N.Y. 2007) (citation omitted). A plaintiff should not be put in a better position than if the plaintiff remained at the original job. *Olaechea*, at *8 (citation omitted); *see also Smith v. Farmstand*, No. 11-cv-9147, 2016 WL 5912886, at *24 (N.D. Ill. Oct. 11, 2016) (court concluded that plaintiff was not entitled to front pay because he had successfully mitigated damages where plaintiff maintained comparable job for more than 12

months that afforded him a salary equal or greater than what plaintiff was likely to earn at former employer).

The jury's instructions were clear. Plaintiff could be awarded damages through (1) "the date you believe she would have worked at NYU absent any discriminatory conduct" or, if she obtained comparable employment, (2) "the date you can reasonably predict that she has a reasonable prospect of obtaining comparable employment." (Steer Decl., Ex. G (ECF Doc. No. 269-7), at 1474:2-9.)

Unlike cases where there was doubt whether a former employee would find comparable employment, thereby permitting lengthy awards, the record here only supports a finding that Plaintiff had already found comparable employment. Plaintiff immediately began working at a comparable new job, earning more than at NYU and receiving a moving expense allowance. (Steer Decl., Ex. L (ECF Doc. No. 12), at 210:12-14; Ex. M (ECF Doc. No. 269-13), at P1-P13).) During her second year of employment, her salary increased to $325,000. (Steer Decl., Ex. L (ECF Doc. No. 269-12), at P4, Par. 14.) Plaintiff also received a 20% incentive compensation. (*Id.* at P4, Par. 15.)

Plaintiff, though, seeks an improper (and unsupported) windfall through front pay damage. Plaintiff lists a few purported bases for her inflated front pay award, none of which hold up to scrutiny.

Plaintiff's claim to lost retirement benefits relies upon citing only her Employment Agreement and Renewal of Employment Agreement. (*See* Opp., p. 20 (citing ECF Doc. No. 318-2) (employment agreement); ECF Doc. No. 318-3 (renewal)).) But these documents provide insufficient evidence for any finding of front pay. To the extent Plaintiff relies on these to show a retirement contribution of an amount equivalent to 10% of Plaintiff's income (Opp., p. 20),

8

Plaintiff's compensation at her new job is substantially more than her previous compensation plus this contribution.  (*Compare* Steer Decl., Exs. K (ECF Doc. No. 269-11), L (ECF Doc. No. 12), at 107:19-24 (showing compensation at time of termination as $278,000 *with* Steer Decl., Exs. M (ECF Doc. No. 269-13), at P4, Par. 14, L (ECF Doc. No. 12), at 210:12-14 (showing salary of $300,000 immediately after leaving NYU and $325,000 the following year.)  To the extent she discusses her own retirement contributions, she points to nothing in the record showing she ever made those contributions; indeed, in her opposition, Plaintiff uses language that only say she "was able" to contribute to a 401(d) account and that "there was" a 403(b) account.  (Opp., p. 20.)  This fails to support the award of $700,000 in front pay.

Plaintiff claims that she would be entitled to a "35% raise" in her contracts going forward, thereby providing a basis for the jury to award $700,000 in front pay.  (Opp., p. 24.)  This is a misstatement, telling because the supposed 35% "raise" was actually the result of Plaintiff negotiating a renewal (ECF Doc. No. 248, Tr. 302:22-24) and came with an increase of nearly 250 expected wRVUs.[4]  (*Compare* ECF Doc. No. 318-2, p. 8 (stating 4966 wRVU expectation) *with* ECF Doc. No. 318-3, p. 4 (stating 5200 wRVU expectation).)  There is nothing in the record to support any conjecture that Plaintiff would negotiate a similar increase in the future.  Additionally, given the accompanying increase in Plaintiff's wRVUs and Plaintiff's own arguments, there would be no basis for an increase in future compensation without wRVUs increasing as well.  Plaintiff cites no evidence in the record showing that her wRVUs were expected to increase in the next renewal, nevermind indefinitely.  It would therefore be unreasonable, and unduly speculative, to conclude that Plaintiff would receive any increase in compensation.

---

[4]     As the Court is aware from trial, wRVUs, or "work Relative Value Units", are a measure of production.  *See* ECF Doc. No. 197, p. 4.

9

Plaintiff further claims that it could be awarded because her "lost health benefit" due to the "substandard" plan at her new job that led "her to rely on her husband's employer-provided health insurance plan." (Opp., p. 26.) But the only purported "evidence" in the record are five lines of testimony from Plaintiff, with no numbers provided, no evidence submitted, and no quantification made. (Tr. 211:2-7.) This is insufficient. *Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 578 (S.D.N.Y. 2011) ("While a district court may consider lost pension benefits in calculating a front pay award, any such award must be supported by the evidence." (citing *Luca v. Cnty. of Nassau*, No. 04-cv-4898, 2008 WL 2435569, at *5 (E.D.N.Y. June 16, 2008), *rev'd on other grounds*, 344 Fed. Appx. 637 (2d Cir. 2009)); *see also Olivares v. Brentwood Indus.*, 822 F.3d 426, 430 (8th Cir. 2016) (district court declined to speculate about a front pay award solely on plaintiff's testimony). Furthermore, merely stating that "there were high out-of-pockets and deductibles" cannot support a claim for front pay, particularly where Plaintiff has a duty to mitigate and was using her husband's healthcare plan.

This is not a question of witness credibility or jury judgment. Plaintiff failed to introduce evidence to support her claim and is resorting to unsupported claims of "common sense" to overlook her insufficiently developed record. Such is the exact purpose of remittitur.

### c. *Plaintiff's Damages Were Capped By Her Pretrial Filings*

Plaintiff fails to provide facts or case law to supports her argument against her damages being capped at $137,400, the amount she herself alleged as her front-pay damages in both her First Amended Rule 26 Disclosures (Steer Decl., Ex. N (ECF Doc. No. 269-14), at 3, C(ii)) and in the Joint Final Pretrial Order (ECF Doc. No. 197).

Plaintiff does not deny that she identified $137,400 as her front-pay damages in each document. Even after the completion of discovery, Plaintiff maintained that her front-pay damages

were accurately calculated to equal $137,400.  Plaintiff calculated her front pay damages as "$27,800.00 per year in 2022, 2023, and 2024 for Defendants' 10% match into Plaintiff's retirement account, plus $18,000.00 per year in 2022, 2023, and 2024 for Plaintiff's deposit into her retirement account."  (Steer Decl., Ex. N, (ECF Doc. No. 269-14), at 3, n. 3).

As explained above, any award of front pay will result in a windfall to the Plaintiff.  But Plaintiff's own statements in these documents confirm her view that the evidence could only support an award of $137,400, making anything above that a windfall in Plaintiff's own estimation. Furthermore, as Plaintiff herself concluded the evidence could only support an award of $137,400, any higher award would be unduly speculative and improper for front pay.  *See Dunlap-McCuller*, 980 F.2d at 159 ("An award of front pay cannot be unduly speculative") (citing *Press v. Concord Mortg. Corp.*, No. 08-cv-9497, 2010 WL 3199684, at *2 (S.D.N.Y. Aug. 11, 2010)).[5]

Accordingly, the front pay award must at a minimum be remitted to no more than $137,400.

### d.  *Defendants Are Not Precluded From Raising Their Asserted Arguments*

Finally, Plaintiff incorrectly claims that Defendant are precluded from raising their arguments now because they were not previously raised.  To do this, Plaintiff relies on *Greenaway v. County of Nassau*, yet the case concerns both (1) punitive damages, not a front pay award, and (2) defendants that failed to preserve substantive arguments against punitive damages that it attempted to raise after trial.  *Greenaway v. County of Nassau*, 327 F. Supp. 3d 552, 562-63 (S.D.N.Y. 2018). Its other cited case, *E.J. Brooks Co. v. Cambridge Sec. Seals*, concerns a substantive argument regarding the duplicative nature of claims made by the plaintiff that the

---

[5]    Plaintiff's reference to the motion *in limine* is inapposite, as the motion is unrelated to Defendants' argument for remittitur.  During trial, after discovery, Plaintiff failed to create a record showing <u>any</u> basis for front pay.  Given Plaintiff's failure to introduce any evidence to support higher front pay numbers, at a minimum her award must be remitted to the $137,400 number.

defendants believed should lead to a reduction in the damages award. *E.J. Brooks Co. v. Cambridge Sec. Seals*, No. 12-CV-2937, 2015 WL 9704079, *12-13 (S.D.N.Y. Dec. 23, 2015). The instant litigation bears no resemblance to these situations.

Even if there were merit to Plaintiff's argument, Defendants <u>did</u> raise their arguments in their earlier motion; Plaintiff intentionally interprets the arguments made orally during Defendants' Rule 50(a) motion far too narrowly to cast them in a negative light. *Greenaway* explains that the relevant question is whether the "motion could have put Plaintiffs on notice" of the defendants' argument. *Greenaway*, 327 F. Supp. 3d at 562. There can be no reasonable argument that Defendants were not arguing that Plaintiff failed to introduce sufficient evidence to support an award of front pay damages. The reference made to "documents" is unambiguously referring to the lack of supporting evidence on the record. (Opp., p. 14.) Further, Plaintiff's only claimed basis for front pay, as found in both her First Amended Rule 26 Disclosures (Steer Decl., Ex. N (ECF Doc. No. 269-14), at 3, C(ii)) and in the Joint Final Pretrial Order (ECF Doc. No. 197), was her loss of alleged retirement benefits. Plaintiff made no other claim and introduced no other evidence to support a different basis for front pay damages, hence the statement that "the front pay, as I understand it, is based on retirement benefits." (Opp., p. 14.) Accordingly, Defendants raised the same arguments regarding the sufficiency of evidence during the Rule 50(a) motion argument.

Regardless, even if Defendants needed to raise their arguments during the Rule 50(a) motion and *even if* the arguments made by Defendants were not considered the same, Defendants' argument regarding the award being limited to $137,400 remains viable. *Greenaway* explains that any waiver argument applies only to "rais[ing] arguments or present[ing] evidence that could have been raised prior to the entry of judgment." *Greenaway*, 327 F. Supp. 3d at 563 (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n. 5) (2008)). Defendants could not raise Plaintiff's First

Amended Rule 26 Disclosure or Joint Final Pretrial Order until the jury award was disclosed, and the inflated nature of the number discovered.

For these reasons, Defendants' arguments in the Remittitur Motion are timely and viable.

### 3. Plaintiff Has No Basis for Immediate Entry of Judgment Against Specified Defendants

Plaintiff concludes by cross-moving for entry of judgment against defendants Antonik, NYU, and Kaplan. This cross-motion, however, is premature. For the reasons stated herein and in the earlier Remittitur Motion filings, Defendants have the Remittitur Motion left to be decided. As Defendants believe the case law and record establish their entitlement to remittitur, Plaintiff may wish to appeal such a change. If the Remittitur Motion is denied, Defendants may wish to appeal.

Either way, until the Remittitur Motion is decided and the parties have the opportunity to pursue any appeals, there is no basis to enter judgment against Antonik, NYU, and Kaplan.

## <u>CONCLUSION</u>

For the reasons set forth herein above, Defendants respectfully request that their Remittitur Motion be granted and Plaintiff's Motion for Entry of Judgment to be denied in its entirety.

Dated: New York, New York
September 16, 2025

> **TARTER KRINSKY & DROGIN LLP**
> *Attorneys for Defendants*
>
> By: _/s/ Richard L. Steer_
> Richard L. Steer
> Richard C. Schoenstein
> Ingrid J. Cardona
> 1350 Broadway, 11th Floor
> New York, New York 10018
> (212) 216-8000
> rsteer@tarterkrinsky.com
> rschoenstein@tarterkrinsky.com
> icardona@tarterkrinsky.com

13