**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DR. SARI EDELMAN,

        Plaintiff,

  – against –

DAVID KAPLAN,

        Defendant.

Case No. 1:21-cv-502 (LJL)

**ORAL ARGUMENT REQUESTED**

**DEFENDANT DAVID KAPLAN'S MOTIONS *IN LIMINE***

## <u>TABLE OF CONTENTS</u>

MOTION NO. 1:  EXCLUSION OF ARGUMENTS REGARDING DAMAGES ...................... 1

    A.    Plaintiff is Collaterally Estopped from Relitigating Damages ...................................1

    B.    Plaintiff's Damages Claims Must Be Reduced in Light of the Prior Trial .................4

    C.    Testimony or Evidence Related to Damages Should Be Limited Due to
          Lack of Production During Discovery .........................................................................5

    D.    Plaintiff Should Be Prohibited From Falsely Referring to Any Compensation
          Increase Associated with Past Contract Renewals or Allegedly Anticipated
          Compensation Increases as a "Raise" ......................................................................10

MOTION NO. 2:  EXCLUSION OF EXPERT TESTIMONY .................................................. 12

MOTION NO. 3:  EXCLUSION OF MEDICAL CONDITIONS OF PLAINTIFF'S
CHILDREN ...................................................................................................................... 13

MOTION NO. 4:  EXCLUSION OF PATIENT CORRESPONDENCE ................................... 15

MOTION NO. 5:  EXCLUSION OF MENTION OF PREVIOUS JUDGMENT ..................... 18

MOTION NO. 6:  LIMITATION OF RETALIATION CLAIMS TO PARTICIPATION IN NON-
RENEWAL OF EDELMAN CONTRACT ...................................................................... 20

002528\5\180189798.v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Bungee Intern. Mfg. Corp.*,
  44 F. Supp. 2d 534 (S.D.N.Y. 1999) .......................................................................................1

*Brown v. City of Syracuse*,
  673 F.3d 141 (2d Cir. 2012) ................................................................................................20

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006) ........................................................................................5, 6, 8, 9

*Enchante Accessories, Inc. v. Turko Textiles, Inc.*,
  2023 WL 395221 (S.D.N.Y. Jan. 25, 2023) ..........................................................................5

*Gelb v. Royal Globe Ins. Co.*,
  798 F.2d 38 (2d Cir. 1986) ....................................................................................................1

*Goldstein v. Cogswell*,
  No. 85-cv-9256, 1991 WL 60420 (S.D.N.Y. Apr. 11, 1991) ................................................3

*Highland Capital Management, L.P. v. Schneider*,
  551 F.Supp.2d 173 (S.D.N.Y. 2008) ....................................................................................11

*Jiang v. Town of Tonawanda*,
  2018 WL 3215575 (W.D.N.Y. July 2, 2018) ......................................................................6, 8

*Pilitz v. The Incorporated Village of Freeport*,
  2020 WL 6945927 (E.D.N.Y. Nov. 25, 2020) .....................................................................5, 7

*Sparaco v. Lawler, Matusky, Skelly Engineers LLP*,
  313 F. Supp. 2d 247 (S.D.N.Y. 2004) ...................................................................................4

*Tardif v. The City of New York*,
  991 F.3d 394 (2d Cir. 2021) .................................................................................................13

*Thompson v. The Jamaica Hospital Center*,
  2015 WL 7430806 (S.D.N.Y. Nov. 20, 2015) ......................................................................6

*United States v. Quattrone*,
  441 F.3d 153 (2d Cir. 2006) .................................................................................................19

*United States v. White*,
  692 F.3d 235 (2d Cir. 2012), *as amended* (Sept. 28, 2012) ...............................................13

**Statutes**

FED. R. EVID. 401 ................................................................................................................13

FED. R. EVID. 402 ....................................................................................................13, 16, 18

FED. R. EVID. 403 ................................................................................................................18

FED. R. EVID. 802 ................................................................................................................16

FED. R. EVID. 803(6) ...........................................................................................................16

002528\5\180189798.v1

## MOTION NO. 1
## EXCLUSION OF ARGUMENTS REGARDING DAMAGES

David Kaplan moves to exclude any effort to introduce any evidence on or seek any award of damages. All damages issues have been decided by the jury in the previous trial in this case (the "Prior Trial") against NYU Langone Health System, NYU Langone Hospitals, NYU Langone Medical Center, NYU Langone Nassau Rheumatology, NYU School of Medicine, NYU Grossman School of Medicine, NYU Hospitals Center, Andrew T. Rubin, Joseph Antonik, and Joshua Swirnow (collectively, the "Prior Defendants"). As a result, no damages issues remain to be decided. At a minimum, Plaintiff's efforts to seek damages need to be reduced to account for the award to Plaintiff in the Prior Trial and must be limited to both (1) avoid endorsing Plaintiff's failures to comply with her discovery obligations and (2) prevent Plaintiff from misleading the jury to artificially inflate any claim of damages, thereby prejudicing Kaplan.

### A.    Plaintiff is Collaterally Estopped from Relitigating Damages

In the Prior Trial, Plaintiff litigated, and it was decided, what damages Plaintiff suffered attributable to retaliation under the NYSHRL and NYCHRL leading to the non-renewal of Plaintiff's contract with her employer. Plaintiff is now bound by this and estopped from attempting to relitigate these findings from the Prior Trial.

"An issue determined in a prior federal proceeding is given preclusive effect in a subsequent federal proceeding if the issue is identical to the one involved in the prior proceeding, the issue in the prior proceeding was actually litigated and actually decided, there was a full and fair opportunity for litigation in the prior proceeding, and the issue previously litigated was necessary to support a valid and final judgment on the merits." *Anderson v. Bungee Intern. Mfg. Corp.*, 44 F. Supp. 2d 534, 538 (S.D.N.Y. 1999) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986).

In the Prior Trial, Plaintiff sought the damages she alleged were attributable to retaliation against her in violation of the NYSHRL and NYCHRL, including back pay, front pay, and compensatory damages including emotional distress.  *See* Plaintiff's Second Amended Complaint (ECF Doc. No. 170), p. 13 (identifying in prayer for relief that the damages sought included "past and future loss of wages and benefits" and "compensatory damages for emotional distress").  These retaliation claims, and the harm associated with them, are the same as those about to be tried against Kaplan.  Indeed, Plaintiff's own pleadings confirm that the already decided retaliation claims are based on the same factual underpinnings and gave rise to the same damages. *See id.,* at ¶¶ 71-77 (alleging retaliation in violation of NYSHRL against Kaplan and Prior Defendants collectively); *id.,* ¶¶ 78-84 (alleging retaliation in violation of NYCHRL against Kaplan and Prior Defendants collectively).  Indeed, Kaplan remained a co-defendant in the Prior Trial throughout the presentation of evidence and was only removed upon motion for judgment as a matter of law immediately before the case was presented to the jury.  July 18 Tr. 1342:21-25 (granting judgment as a matter of law for Kaplan on all claims of retaliation based on insufficient evidence.) Accordingly, Plaintiff presented her entire case and corresponding evidence, including any evidence related to retaliation claims against Kaplan, at the Prior Trial.

Any damages attributable to Plaintiff's retaliation claims under NYSHRL and NYCHRL have already been litigated and decided in the Prior Trial.

Plaintiff, despite seeking back pay for her retaliation claims, was faced with a motion for judgment as a matter of law from Defendants.  Defendants claimed in the motion that there was no evidence supporting back pay.  July 18 Tr. 1308:11-12.  Plaintiff conceded there was no evidence supporting back pay.  July 18 Tr. 1328:2-3 ("I think we can concede with respect to back pay.").  Even when the Court explicitly told Plaintiff's counsel that he was "not going to instruct

the jury with respect to back pay if there's no evidence with respect to back pay", Plaintiff's counsel confirmed, stating "[t]hat's fine, your Honor."  July 18 Tr. 1323:8-10.  As promised, the Court removed any instruction or mention of back pay from the jury instructions.  July 18 Tr. 1343:23-24.  The Court—in agreement with the Parties—has already ruled that there is no support for any claim for back pay, and Plaintiff should not be permitted to relitigate an issue about which they have been collaterally estopped.[1]  *See, e.g.*, *Goldstein v. Cogswell*, No. 85-cv-9256, 1991 WL 60420, at *14 (S.D.N.Y. Apr. 11, 1991) (finding previous determination of total damages associated with harm as giving rise to collateral estoppel.)

After hearing the evidence, the jury was instructed on Plaintiff's claims for lost salary and benefits (July 19 Tr., 1473:24-1474:1) and compensatory damages (July 19 Tr., 1474:21-25).  The jury found the corporate defendants and the individual defendant liable of retaliating against Plaintiff in violation of the NYSHRL and NYCHRL (ECF Doc. No. 243, p. 4) and determined the damages associated with those violations, awarding Plaintiff a total of $700,000 in front pay and zero dollars in compensatory damages (*Id.*, at 6-7).  But these findings and these damages awards represent the already-litigated questions of what harm (and what damages) are attributable to the same NYSHRL and NYCHRL retaliations claims on which Plaintiff is now beginning its trial against Kaplan.

Plaintiff is collaterally estopped from relitigating these issues, fully and fairly litigated at the Prior Trial.  There remain no damages left to award.  All that remains is whether Kaplan is liable for the alleged retaliation itself.  For this reason, Plaintiff should be precluded from addressing and/or seeking any damages as part of this trial.

---

[1]     To the extent that Plaintiff notes that "back pay" in the Kaplan trial would include a period (from mid-2023 through 2025) that was not part of back pay at that time, it would be addressed by "front pay" awarded in the Prior Trial.  *See also* Motion No. 1, Sec. B.

**B.      Plaintiff's Damages Claims Must Be Reduced in Light of the Prior Trial**

Even if the Court were to permit Plaintiff to seek further damages in this trial against Kaplan, Plaintiff's damages must be reduced due to the damages awarded in the Prior Trial to preclude Plaintiff from obtaining an improper double recovery.

Plaintiff seeks to recover $637,069.79 in "Lost wages (back pay), which Plaintiff explains as:

(1)    $487,069.79 in lost salary broken down as follows:
2021: $57,666.02 ($350,000-$292,333.98);
2022: $48,153.77 ($350,000-$301,846.23);
2023: $100,000 $425,000 - $325,000);
2024: $106,250 ($425,000 - $318,750);
2025: $175,000 ($500,000 - $325,000); and

(2)    $150,000 for lost 401K (calculated at $30,000 per year for 2021-2025) plus returns on investments.[2]

ECF Doc. No. 339, p, 24.  But, at a minimum, these damages explicitly include damages for 2023, 2024, and 2025 that were already accounted for in the front pay award from the Prior Trial.

Plaintiff sought front pay from "the time of trial" onward.  July 19 Tr., 1474:1.  As the trial was in July of 2023, any effort to seek "back pay" for 2023, 2024, and 2025 has already been accounted for in the earlier front pay award.  "A plaintiff is not entitled to recover twice for the same injury."  *Sparaco v. Lawler, Matusky, Skelly Engineers LLP*, 313 F. Supp. 2d 247, 250 (S.D.N.Y. 2004).  Even where "violation of two distinct rights results from the same conduct" multiple recoveries are only possible "to the extent that two different types of harm have been suffered."  *Id.* at 251.  The retaliation claims to be tried against Kaplan, however, are

---

[2]      Plaintiff produced no documents or other evidence concerning any alleged loss on return on investments. Further, any attempt to discern such a loss is inherently speculative and would depend, *inter alia*, on Plaintiff's investment strategy, the gains and losses resulting from such strategies, among other things, and would not be attributable to Kaplan.

indistinguishable from the retaliation claims already tried and decided against Prior Defendants, and the harm (and damages) associated with the claims to be tried against Kaplan are indistinguishable from those already addressed by the jury in the Prior Trial.  *See* ECF Doc. No. 170, ¶¶ 71-77 (alleging retaliation in violation of NYSHRL against Kaplan and Prior Defendants collectively); *id.*, ¶¶ 78-84 (alleging retaliation in violation of NYCHRL against Kaplan and Prior Defendants collectively).

Should the Plaintiff be permitted to seek further damages, they must be limited to exclude any recovery for the periods covered by the Prior Trial award.

### C.    Testimony or Evidence Related to Damages Should Be Limited Due to Lack of Production During Discovery

If the Court were to permit arguments and/or evidence on damages, Kaplan moves pursuant to FED. R. CIV. P. 37(c) to preclude Plaintiff from introducing evidence concerning certain damages for failure to comply with FED. R. CIV. P. 26(a)(1) and 34.  Plaintiff should be precluded from presenting evidence as to all categories of her damages on the grounds that she has (a) failed to produce in discovery the evidence necessary to support her claim for damages, and (b) admitted that she has no evidence to support her claim for damages.

Plaintiff's FED. R. CIV. P. 26(a)(1) initial disclosures failed to provide the required computation of her alleged damages.  Plaintiff's mere listing of the categories of damages, without providing a computation for each of those categories, does not satisfy the requirements of FED. R. CIV. P. 26(a)(1). She then compounded that failure by claiming not to have any documents supporting her claim for damages when defendants specifically requested such evidence. Therefore, Plaintiff should be precluded from introducing any evidence concerning her alleged damages.  *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006); *Enchante Accessories, Inc. v. Turko Textiles, Inc.*, 2023 WL 395221 (S.D.N.Y. Jan. 25, 2023); *Pilitz v. The Incorporated*

*Village of Freeport*, 2020 WL 6945927 (E.D.N.Y. Nov. 25, 2020); *Jiang v. Town of Tonawanda*, 2018 WL 3215575 (W.D.N.Y. July 2, 2018); *Thompson v. The Jamaica Hospital Center*, 2015 WL 7430806 (S.D.N.Y. Nov. 20, 2015).

As explained by the Second Circuit, "by its very terms Rule 26(a) requires more than providing – without explanation – undifferentiated financial statements; it requires a computation, supported by documents." *Design Strategy*, 469 F.3d at 295. Moreover, Rule 26(a) "requires a party to provide a computation of any category of damages voluntarily, *i.e.*, without awaiting a discovery request." *Id.* Rule 26(a) also requires that a "party claiming damages or other monetary relief must, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying as if a request for such material had been made under Rule 34." *Id.* Plaintiff has failed on all counts.

Plaintiff's initial disclosures pursuant to FED. R. CIV. P. 26(a)(1) dated April 1, 2021 set forth, in relevant part, that the damages she sought that overlap with those sought in the Kaplan trial were "(ii) back pay and front pay in an amount to be determined at trial; . . . (iv) compensatory damages for emotional distress in an amount to be determined at trial; [and] (vi) for attorneys' fees currently totaling $10,400.00 as well as costs currently totaling $959.50." *See* ECF Doc. No. 186-1, p. 2 (Exhibit 1-A). No supporting documents were provided with these disclosures. These disclosures completely fail to comply with FED. R. CIV. P. 26(a).

First, Plaintiff provided no computation and indeed no financial information whatsoever concerning damages for categories (ii) and (iv). She is therefore precluded from introducing evidence concerning (ii) front pay and back pay and (iv) compensatory damages for emotional distress. *See Design Strategy*, 469 F.3d at 295 (a computation of damages, together with supporting documents, is required by FED. R. CIV. P. 26(a)). Indeed, the Court, prior to the Prior

Trial, already recognized the lack of evidence supporting claims of compensatory damages and limiting the potential recovery to $50,000. ECF Doc. No. 225, p. 13-14 (granting motion to exclude evidence beyond $50,000 in "garden variety emotional distress damages" due to lack of evidence produced during discovery). At a minimum, the same limitation should apply here.

Her last category of damages, legal expenses, suffers from the same infirmity. The disclosure is without any reference to any evidence such as hourly rates charged by the attorney or the hours spent. *Pilitz*, 2020 WL 694592, at * 2; *Max Impact*, 2014 WL 902649, at *5.

In addition to these deficiencies, Plaintiff's initial disclosures also fail to identify any documents concerning her alleged damages. The only references to documents in the initial disclosures are "Plaintiff's agreement with Defendants, correspondence between the parties, and correspondence between Plaintiff and patients." *See* ECF Doc. No. 186-1, p. 2 (Exhibit 1-A). Plaintiff did not identify any documents concerning damages. *Id.*

Having failed to make the required calculation on damages and having failed to identify documents concerning damages in her initial disclosures, Plaintiff continued her failure to produce such documents despite Defendants' specific request to do so.

On May 17, 2021, Defendants served their First Request for the Production of Documents, which included several specific requests for documents concerning Plaintiff's alleged damages. On July 2, 2021, Plaintiff responded to the request and claimed that she has no responsive documents. For example, when asked to produced documents concerning her claims for and computation of damages alleged in the Complaint and her initial disclosures, she responded that she "is not in possession, custody, or control of any responsive documents."

> [Defendants' Request No. 14]: All documents concerning Plaintiff's claims for and computation of damages alleged in Plaintiff's Complaint and Rule 26 Disclosures.

> [Plaintiff's Response]:  Plaintiff objects to this request on the grounds that it is overly broad, vague and ambiguous, unduly burdensome, and not relevant to any claim or defense nor proportional to the needs of this case. Notwithstanding and without waiving the foregoing general and specific objections, Plaintiff is not in possession, custody, or control of any responsive documents.

(ECF Doc. No. 186-2, p. 3 (Exhibit 1-B) and ECF Doc. No. 186-3, p.8 (Exhibit 1-C.)

Plaintiff's response above, made six months after she had filed this action, that she had no evidence concerning damages is a further violation of her obligations under Rule 26(a)(1), which "imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under rule 34." *Design Strategy*, 469 F.3d 296; *Jiang*, 2018 WL 3215575, at *3.

Plaintiff thereafter failed to produce damages materials.  After the parties exchanged initial disclosures and document requests, the parties produced documents and took depositions during the period of April 21, 2021 through December 10, 2021.  Fact discovery closed on November 30, 2021, except for the limited purpose of conducting an additional deposition of a fact witness (*see* ECF Doc. Nos. 75 and 84), pursuant to the Third Amended Civil Case Management Plan and Scheduling Order. ECF Doc. No. 64.  Expert discovery subsequently closed on December 14, 2022. ECF Doc. No. 66.   Despite these further opportunities to produce any evidence of damages, Plaintiff still failed to do so.  For example, Plaintiff did not produced during discovery any evidence concerning her wages or benefits, any Form W-2 for wages, any of her tax returns, or any record of treatment by mental health professional.[3]  Plaintiff's First Amended Initial Disclosures, dated April 3, 2023 (ECF Doc. No. 202-1 (Exhibit A)) and her Second Amended Initial

---

[3]     In response to Defendants' subpoena, a social worker responded by writing an after-the-fact narrative of her alleged consultations with Plaintiff.  The social worker did not produce any contemporaneous record of any treatments of or consultations with Plaintiff. The narrative, written specifically in response to the subpoena, is inadmissible hearsay as it is not a business record.

Disclosures, dated July 16, 2023 (Exhibit A)[4] only accentuate Plaintiff's failures to meaningfully participate in discovery regarding damages. Both amended disclosures include slightly more information about how Plaintiff purportedly calculated damages for each but point to nothing produced or disclosed in discovery to support these claims. Moreover, as these amended disclosures were produced approximately a year and a half after fact discovery closed and months after expert discovery closed, the Prior Defendants then and Kaplan now never had the opportunity to receive allegedly supporting documentation or ask deponents about these documents at a deposition under oath. This is contrary to FED. R. CIV. P. 26(a). *See Design Strategy*, 469 F.3d at 295 (requiring supporting documentation for computations of damages).

Despite the fact that Plaintiff has failed to produce any supporting damages documents in discovery, Plaintiff nonetheless has selectively identified her "W2s 2020-2025" as an exhibit for trial.[5] ECF Doc. No. 339, p. 18. This belated inclusion is improper. Due to Plaintiff's obstructive conduct in discovery, Kaplan has not had the opportunity to inquire into these documents and their related documents, such as Plaintiff's tax returns, which would provide critical contextual information regarding Plaintiff's potential damages.

Plaintiff should not be permitted to introduce such evidence where she had refused and/or failed to produce the purported evidence during discovery. Kaplan has been deprived of key additional discovery—including Plaintiff's tax returns—and an opportunity to explore these documents.

---

[4] Plaintiff's Second Amended Initial Disclosures are annexed as Exhibits A to the Declaration of Richard L. Steer, Esq. executed October 22, 2025.

[5] Kaplan presumes that the reference to 2025 was included in error, as the calendar year has not yet concluded. In any event, Plaintiff has failed to provide any W-2s for 2025, even belated after discovery had concluded.

Plaintiff should therefore be precluded from presenting such damages evidence pursuant to FED. R. CIV. P. 37, so that Kaplan is not prejudiced as a result of Plaintiff's failures to produce evidence affirmatively required by the rules.

> **D.    Plaintiff Should Be Prohibited From Falsely Referring to Any Compensation Increase Associated with Past Contract Renewals or Allegedly Anticipated Compensation Increases as a "Raise"**

If Plaintiff is permitted to present evidence on damages, Plaintiff should be precluded from any reference to past or anticipated compensation increases from NYU as "raises." This falsely characterizes the compensation increase and misleads any jury into believing that compensation increases were regular, expected, and/or tied to satisfaction with performance.

In recent filings in this matter, Plaintiff has referred to the compensation increase she received in her 2017 renewal of employment as a "35% raise". ECF Doc. No. 317, p. 24. In truth, Plaintiff's past compensation increase was the result of negotiations between Plaintiff and her employer. (ECF Doc. No. 248, Tr. 302:22-24). The term "raise" gives a false impression of a compensation increase that could be expected regularly, simply as a condition of being employed. The only reason that Plaintiff was able to obtain any compensation increase was because she engaged in negotiations with her employer to renew her contract—a contract that, in addition to being the result of a negotiated back-and-forth also included an increase of nearly 250 expected wRVUs. (*Compare* ECF Doc. No. 318-2, p. 8 (stating 4966 wRVU expectation) *with* ECF Doc. No. 318-3, p. 4 (stating 5200 wRVU expectation).) Indeed, Plaintiff's compensation under the renewal contract she negotiated included the potential for reduction if her wRVU number was not met. ECF Doc. No. 136-13 (D000060)). This in no way can be described as a "raise", especially with the misleading connotation of the term that the jury would receive.

Courts can and do exclude the use of specific terms at trial when they would only serve to mislead and/or confuse the jury. *See, e.g., Highland Capital Management, L.P. v. Schneider*, 551 F.Supp.2d 173, 193 (S.D.N.Y. 2008) (granting motion in limine to prevent description of evidence using terms like "inside information" because it would mislead the jury).

Permitting Plaintiff to use the loaded and erroneous term "raise" when discussing any compensation increase will only serve to mislead the jury. For this reason, Plaintiff should not be permitted to mischaracterize her past compensation increase as a "raise" and argue for any future compensation increase using the same terminology.

**MOTION NO. 2**
**EXCLUSION OF EXPERT TESTIMONY**

On November 3, 2021, after extending the expert discovery deadline several times, the Court ordered the parties to produce their expert reports by November 24, 2021. ECF Doc. No. 66. Yet, despite the multiple extensions, Plaintiff failed to meet the November 24, 2021 deadline. Only after the November 24, 2021 deadline had passed did Plaintiff seek another extension and, without leave of the Court, belated identified a supposed expert. ECF Doc. No. 77. The Court therefore denied Plaintiff's request to file an expert report beyond the November 24, 2021 deadline. ECF Doc. No. 87. In denying Plaintiff's request, the Court held that Plaintiff failed to provide good cause for seeking an extension before the deadline and failed to provide good cause for failing to comply with the deadline. The Court also explained that all defendants, including Kaplan, would be prejudiced since they had been proceeding under the assumption that there would be no expert and, consequently, did not designate a counter expert. Plaintiff has never filed or served any expert report as required by FED. R. CIV. P. 26(a)(2). Therefore, Plaintiff should be precluded from introducing any expert testimony whatsoever.

To the extent that Plaintiff seeks to introduce expert evidence of any kind, they should all be excluded, but not limited to, the social worker Plaintiff allegedly consulted.

002528\5\180189798.v1

**MOTION NO. 3**
**EXCLUSION OF MEDICAL CONDITIONS OF PLAINTIFF'S CHILDREN**

Any evidence concerning Plaintiff's special needs child should be excluded because it is irrelevant and, even if relevant, it would unfairly prejudice Kaplan and confuse the jury.

First, evidence concerning her special needs child is irrelevant and should be excluded on the grounds that Plaintiff's remaining claims is for retaliation and in no way connected to the fact that she has a special needs child. There is no nexus between any conduct of Kaplan and Plaintiff's child. This evidence is therefore entirely irrelevant. As the Second Circuit explained, under FED. R. EVID. 401, "evidence is relevant when it has any tendency to make a material fact more or less probable than it would be without the evidence.'" *United States v. White,* 692 F.3d 235, 246 (2d Cir. 2012), *as amended* (Sept. 28, 2012). Irrelevant evidence is inadmissible. FED. R. EVID. 402. Any evidence concerning Plaintiff's child should be excluded as irrelevant.

Second, to the extent the Court determines the fact that Plaintiff has a special needs child is relevant to an issue to be tried, the evidence's probative value is far outweighed by the unfair prejudice to Defendant. Any probative value is outweighed by the danger of unfair prejudice to Defendant because of its potential appeal to the jury's sympathy. *Tardif v. The City of New York,* 991 F.3d 394, 409 (2d Cir. 2021) (excluding in a civil rights action plaintiff's personal background information of her "adoption of two refugee children, her own adoption as a child, and her work as a sign language interpreter for hearing impaired children" because the probative value of such testimony is "substantially outweighed by the danger of unfair prejudice to the defendants because of juror sympathy"). To the extent that Plaintiff's other child is alleged to also have certain medical issues, they too should be excluded for the same reasons.

To the extent Plaintiff contends that she suffered damages because she allegedly suffered additional stress because of the medical condition of her children, Plaintiff has not produced any

medical record of her children's medical conditions nor her medical record indicating such additional stress. To the extent that she now claims that she treated her staff rudely because of the medical conditions of her children, Plaintiff did not testify that was the cause of her rudeness. Importantly, any probative value of the medical conditions of Plaintiff's children is outweighed by the extreme prejudice to Defendant as such evidence may inflame the jury.

Indeed, when addressing this issue in the Prior Trial, the Court excluded testimony and evidence about Plaintiff's child because it "risks a side show, misleading the jury as to key issues, and unfair prejudice." ECF Doc. No. 225, p. 19. The Court further recognized how "Defendants would require, and are entitled to, significant additional discovery, lest they be prejudiced by reliance only on Plaintiff's testimony alone" and rejected Plaintiff's attempts to include damages based on her child. *Id.* at p. 14. The Court should adopt its prior decision.

**MOTION NO. 4**
**EXCLUSION OF PATIENT CORRESPONDENCE**

Plaintiff has listed as trial exhibits various letters, cards, and screenshots of correspondence with patients that they submitted through NYU's computer system, presumably to demonstrate that she was a good doctor.  As discussed below, these exhibits should be excluded because they are irrelevant, constitute hearsay evidence, and violate patient confidentiality.

*First*, these materials are irrelevant.  No one had contended that Plaintiff was an incompetent doctor.  Rather, NYU decided not to renew Plaintiff's contract because it was found after investigation that she ordered excessive and unnecessary x-rays and blood tests for patients and thereby was practicing in a manner inconsistent with NYU's standards of clinical practice. Moreover, it was also determined that her non-standard practices could not be remediated.  Indeed, as testified to by non-party witnesses Dr. Andrew Porges, the Medical Director of the Lake Success site, there were complaints from both patients and the x-ray team, including the chief x-ray technician, concerning Plaintiff.  ECF Doc. No. 186-12 (Exhibit 9-A (Porges Tr. 72:17-25; 73:2-20; 75:2-25; 76:20-25; 77:2-8; 78:10-25; 79:2-11; 114:23-25; 115:2-13).)

As made clear by the above, NYU's reasons for not renewing Plaintiff's contract had to do with the specific clinical practices of Plaintiff that are not in keeping the NYU's standard practice and not based on how popular or unpopular Plaintiff may have been with the patients. That evaluation was conducted by two non-party witnesses, one of whom was Dr. Avram Goldberg, who recruited Plaintiff to join NYU.  They gave their medical opinions to Mr. Rubin after conducting these independent reviews.   Based on the medical opinions of these managing physicians, Mr. Rubin made the decision not to renew Plaintiff's contract.  The correspondence that Plaintiff received from patients who may have expressed their appreciation for the care provided by Plaintiff is therefore irrelevant, nor are the patients qualified to give medical

15

evaluations. Correspondence with patients should therefore be excluded under FED. R. EVID. 402. Any probative value is outweighed by the potential for confusion, since NYU's decision regarding Plaintiff was based on the medical opinions of Drs. Porges and Goldberg, and not on whether Plaintiff received praises or complaints from patients.

*Second*, the correspondence with the patients also constitutes inadmissible hearsay under FED. R. EVID. 802. None of the patients have been listed as trial witnesses or deposed. Their statements concerning Plaintiff are therefore inadmissible. To the extent Plaintiff contends that such correspondence constitutes a "business record," it is contrary to the plain language of FED. R. EVID. 803(6). To qualify as business record as a hearsay exception, FED. R. EVID. 803(6) provides in relevant parts:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;

As the plain language of the rule made clear, the record must have been made by someone working at the business with knowledge. The fact the correspondence was kept by the business, while it may be a business record in the ordinary sense, is not that type of business record under the hearsay exception. For example, if someone working at the business recorded the receipt of the correspondence, the recording itself would be a business record to show that the correspondence was received, but the contents of the correspondence do not become business records under FED. R. EVID. 803(6) simply because it was received and kept by the business.

*Third*, using the correspondence from patients will be a violation of patient confidentiality under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). There is no

16

evidence that any of these patients have consented to the use of their correspondence in a public forum.

To the extent the Court might determine that the correspondence is admissible and probative, the Court should limit the admission of such evidence because it is cumulative and direct Plaintiff to redact all patient information.

17

**MOTION NO. 5**
**EXCLUSION OF MENTION OF PREVIOUS JUDGMENT**

Kaplan moves pursuant to FED. R. EVID. 402 AND FED. R. EVID. 403 to exclude any reference to a previous judgment being obtained against one or more of the Prior Defendants at the Prior Trial.

As an initial matter, the existence of the judgment against the Prior Defendants is not relevant evidence. Irrelevant evidence is inadmissible. FED. R. EVID. 402. The Second Circuit only reinstated the retaliation claim against Kaplan, remanding in relevant part with explicit instructions to "VACATE the District Court's decision granting judgment as a matter of law to Kaplan on Edelman's retaliation claims under the NYSHRL and the NYCHRL, and REMAND for a new trial on those claims." ECF Doc. No. 311-2, p. 50. The fact that a jury found the Prior Defendants liable on one or more claims has no bearing on whether Kaplan himself had retaliatory intent behind any of his actions or whether he engaged in any actions that would satisfy the elements of a retaliation claim under the NYSHRL or NYCHRL. Even if the Court were to define relevance maximally, the only potential relevance it would have is establishing that the ultimate non-renewal of Plaintiff's contract could constitute an adverse employment action. But this is not in dispute, as both parties' proposed jury instructions include that the jury is to consider the non-renewal as an adverse employment action.

Even if it were relevant, though, the existence and/or content of the Prior Judgment should not be admitted because any probative value it has is vastly outweighed by the unfair prejudice that would result to Kaplan. The Court can exclude even "relevant evidence if its probative value is substantially outweighed by a danger of one or more of . . . unfair prejudice, confusing the issues, [or] misleading the jury[.]" FED. R. EVID. 403. Unfair prejudice can be created "by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions

18

against the defendant." *Bryant v. City of Hartford*, F. Supp. 3d 179, 186 (D. Conn. 2022) (quoting *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) (citation omitted)). Here, despite the previous judgment not involving Kaplan, and despite the issues decided by the judgment not bearing on whether Kaplan and his conduct satisfy the elements of the retaliation claims asserted against him, the jury would be provided with information that Kaplan's co-workers and his employer were found liable of the same type of retaliation claims made against him. Reference to the Prior Trial and its judgment, then, would only serve to mislead the jury to conclude that Kaplan's own liability had already been resolved or that it could be proven in part by the mere fact that his co-workers and employer had been found liable.

Kaplan should not be subjected to such prejudice. Accordingly, any reference to the Prior Trial or its judgment should be excluded.

**MOTION NO. 6**
**LIMITATION OF RETALIATION CLAIMS TO PARTICIPATION IN NON-RENEWAL OF EDELMAN CONTRACT**

The Second Circuit remanded with explicit instructions that, per the Mandate Rule, must be followed when conducting this trial of Kaplan.

The Mandate Rule provides that "[w]hen an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue. . . .  This mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court mandate." *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012) (cleaned up).  The Second Circuit's mandate is limited to remanding for a new trial whether Kaplan had retaliatory intent and was part of the non-renewal of Edelman's contract.

The Second Circuit's mandate explicitly remanded "for further proceedings consistent with this Court's opinion." ECF Doc. No. 311-3.  The Second Circuit's opinion, in relevant part, makes two clear points.  First, the Second Circuit gave instructions to vacate the judgment as a matter of law in Kaplan's favor on the retaliation claims against him under the NYSHRL and the NYCHRL and to order a new trial on those claims.  ECF Doc. No. 311-2, p. 50.  Second, the retaliation claim remanded for a new trial was whether "a reasonable jury [could] conclude that Kaplan had retaliatory intent and that he participated in the nonrenewal of Edelman's contract." *Id.* at p. 47.

Accordingly, any argument against Kaplan is limited to the issues remanded by the Second Circuit—whether he had retaliatory intent, and whether he participated in the contract non-renewal.  Any novel argument creating a new basis for retaliation is foreclosed by the language in the Second Circuit's mandate.

Dated:  October 22, 2025
         New York, New York

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendants*

By:    */s/ Richard L. Steer*
         Richard C. Schoenstein
         Richard L. Steer
         William F. Schmedlin
         Ingrid J. Cardona
         1350 Broadway, 11th Floor
         New York, NY 10018
         (212) 216-8000
         rschoenstein@tarterkrinsky.com
         rsteer@tarterkrinsky.com
         wschmedlin@tarterkrinsky.com
         icardona@tarterkrinsky.com

21