UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/31/2025
```

------------------------------------------------------------------------X
                :

SARI EDELMAN,                :
                :
          Plaintiff,      :
                :          21-cv-502 (LJL)
        -v-           :
                :      OPINION AND ORDER

NYU LANGONE HEALTH SYSTEM, et al.,  :
                :
         Defendants.   :
                :

------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendants NYU Langone Health System, NYU Langone Hospitals, and NYU Grossman

School of Medicine, a Division of New York University, f/k/a "NYU Hospitals Center" s/b/a

"NYU Langone Medical Center," "NYU Langone Nassau Rheumatology," "NYU School of

Medicine," "NYU Grossman School of Medicine," and "NYU Hospital Center" (collectively,

"NYU") and Andrew T. Rubin ("Rubin"), David Kaplan ("Kaplan"), Joseph Antonik

("Antonik"), and Joshua Swirnow ("Swirnow") (collectively together with NYU, "Defendants")

move, pursuant to Federal Rule of Civil Procedure 59(e), for an order vacating the award of front

pay returned by a jury in this case on July 19, 2023 and granting a new trial, or alternatively,

granting remittitur and limiting the front pay award to the amount of $137,400.  Dkt. No. 310.

Plaintiff Dr. Sari Edelman ("Plaintiff") cross-moves, pursuant to Federal Rule of Civil Procedure

54, for an order entering judgment in favor of Plaintiff in the amount of $700,000 plus costs and

reasonable attorney's fees.  Dkt. No. 316.

      For the following reasons, the motion for a new trial is denied and the motion for an order

entering judgment in favor of Plaintiff is denied.

## BACKGROUND AND PROCEDURAL HISTORY

Familiarity with the prior proceedings in this case is presumed.  The Court describes only those events and facts necessary to address the motions before the Court.

Plaintiff is a rheumatologist who was hired by NYU in 2014 as part of an effort to expand NYU's rheumatology network to Long Island.  Transcript of Trial ("Trial Tr.") at 49:25, 68:9–11; 77:20, Dkt. Nos. 244–258.  Plaintiff entered into a three-year contract with NYU which established a yearly salary of $210,000, productivity target of 4966 relative value units (RVU), and a potential for a productivity-based bonus each year.  Dkt. No. 318-2.  Prior to the expiration of this contract, Plaintiff and NYU agreed to renew her contract for another three-year term beginning January 1, 2018.  Trial Tr. 107:14–21.  The renewed contract increased her salary to $278,000 and increased her productivity target to 5200 RVUs.  Dkt. No. 318-3.

On September 17, 2019, Plaintiff contacted Human Resources and described an incident with Antonik, an office manager.  Trial Tr. 110:2–5, 116:18–117:10.  Plaintiff continued to correspond with Human Resources regarding the incident, as well as regarding a related conversation with Kaplan, the senior site director, *id.* 110:16–17, throughout October and November of 2019.  *Id.* at 133:8–137:9.  In early December 2020, NYU sent Plaintiff a letter informing her that it would not renew her employment contract.  *Id.* at 147:23–148:5.  On February 16, 2021, prior to her termination date at NYU, Plaintiff accepted a position in Clearwater, Florida as a rheumatologist with Arthritis and Rheumatism Associates.  *Id.* 228:25–229:21.

Plaintiff commenced the instant suit against the Defendants on January 20, 2021 and filed a first amended complaint on January 22, 2022.  Dkt. Nos. 1, 96.  Plaintiff's operative complaint was filed on December 8, 2022.  Dkt. No. 170.  It alleges equal pay violations under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and the New York Labor Law ("NYLL") § 194, unlawful

retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296(1)(a), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(7), and gender discrimination under NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a).  Dkt. No. 170 at 1, 9–13.

The Court held an eight-day jury trial beginning on July 10, 2023.  At the close of Plaintiff's case on July 18, 2023, Defendants moved for judgment as a matter of law ("JMOL"), pursuant to Federal Rule of Civil Procedure 50(a).  Trial Tr. 1298:6–1309:13; Fed. R. Civ. P. 50(a).  Plaintiff opposed that motion.  Trial Tr. 1309:24–1330:3.  After taking the matter under advisement, the Court granted JMOL to Defendants on the willfullness of their alleged violations of federal and state equal pay laws.  *Id.* at 1342:7–20.  Additionally, the Court granted JMOL against Plaintiff on her retaliation claims against Kaplan, *id.* at 1342:21–22, explaining "[t]here is insufficient evidence in the record for a reasonable jury to conclude that Kaplan had any retaliatory intent or that he had involvement in any adverse action," *id.* at 1342:22–25.  The Court also granted JMOL in favor of Kaplan, Rubin, and Swirnow on Plaintiff's discrimination claims.  *Id.* at 1343:1–15.  Finally, the Court granted JMOL on punitive damages, as Plaintiff had adduced no evidence from which a reasonably jury could find Defendants engaged in sufficiently culpable misconduct.  *Id.* at 1343:16–22.

Following the close of evidence and the parties' summations, the Court charged the Jury on each of Plaintiff's remaining claims.  *Id.* at 1439:24–1446:21 (EPA), 1447:1–1450:13 (NYLL), 1450:14–1456:13 (Title VII retaliation), 1456:14–1463:3 (NYSHRL retaliation), 1463:4–1468:21 (NYCHRL retaliation), 1468:22–1470:10 (NYCHRL discrimination).

On July 19, 2023, the jury returned a verdict finding in favor of Defendants on Plaintiff's EPA, NYLL, and NYCHRL discrimination claims, but finding in favor of Plaintiff on her claim

that Defendants Antonik and NYU retaliated against her because of her protected conduct in violation of Title VII and the NYSHRL and NYCHRL.  Dkt. No. 243.  The jury awarded Plaintiff $700,000.00 in front pay but no compensatory damages.  *Id.*  The Court entered judgment in that amount on July 26, 2023.  Dkt. No. 260.

Defendants moved for judgment notwithstanding the verdict ("judgment n.o.v.") under Rule 50(b) of the Federal Rules of Civil Procedure with respect to the claim of retaliation and in the alternative for a new trial under Rule 59 of the Federal Rules of Civil Procedure.  Dkt. No. 267.  Plaintiff also moved for judgment n.o.v. or, in the alternative, a new trial with respect to the EPA and NYLL claims.  Dkt. No. 271.

On December 26, 2023, after hearing oral argument, the Court granted Defendants' motion for judgment n.o.v. under Rule 50 and denied Plaintiff's Rule 50 and Rule 59 motions.  Dkt. No. 292.  The Court held that Plaintiff was not entitled to relief under Rule 50(b) or Rule 59 with respect to her EPA and NYLL claim because she did not make a motion for judgment as a matter of law during trial, because the evidence at trial established that she did not perform equal work to an employee of the opposite sex who received higher pay, *id.* at 17–19, and because the differences between the pay she received and the pay received by male comparators was due to a factor other than sex, *id.* at 21.  The Court granted Defendants' Rule 50 motion, finding that there was an absence of evidence that the Defendants were aware of Plaintiff's alleged protected activity or that they had retaliatory intent.  *Id.* at 41–47.  The Court did not address Defendants' motion for remittitur.  *Id.* at 47.

Plaintiff appealed.  Dkt. No. 295.  On June 18, 2025, the Second Circuit issued an opinion, affirming this Court's judgment in part and denying it in part.  Dkt. No. 300.  The Second Circuit affirmed this Court's judgment denying Plaintiff relief with respect to her federal

and state equal pay claims. *Id.* at 5, 15–19.  The court reversed this Court's decisions to grant

judgment as a matter of law in favor of Kaplan on the retaliation claims under the NYSHRL and

NYCHRL and judgment n.o.v. in favor of Antonik and NYU.  *Id.* at 5, 20–49.[1]

> The court therefore issued an order to:
>
> VACATE the District Court's decision granting judgment notwithstanding the verdict as
> to Edelman's retaliation claims against Antonik under the NYSHRL and the NYCHRL,
> and against NYU under Title VII, the NYSHRL, and the NYCHRL, and REMAND with
> instructions to reinstate the jury's verdict on those claims

*Id.* at 50; *see also id.* at 5, 46.

> The court's mandate reads as follows:
>
> IT IS HEREBY ORDERED, ADJUDGED and DECREED that the district court's
> judgment is AFFIRMED in part and VACATED in part, and the case is
> REMANDED for further proceedings consistent with this Court's opinion.

Dkt. No. 302.

On July 8, 2025, Defendants filed a letter motion requesting that the Court

schedule a conference to discuss the Second Circuit decision, the procedure for renewing

Defendants' motion for remittitur, and next steps for the trial relating to Plaintiff's claims

against Kaplan.  Dkt. No. 301.  Plaintiff filed a letter on August 6, 2025 noting her

opposition to Defendants' request to renew their remittitur motion and requesting entry of

judgment.  Dkt. No. 306.  On August 12, 2025, following a conference with the parties,

this Court set a briefing schedule for Defendants' renewed remittitur motion and

Plaintiff's cross-motion for entry of judgment.  Dkt. No. 308.

Defendants filed the instant motion under Federal Rule of Civil Procedure 59 on

August 26, 2025, Dkt. No. 310, along with an accompanying memorandum of law and

---

[1] The court affirmed this Court's decision to grant judgment as a matter of law to Defendants on
Plaintiff's claim for punitive damages.  *Id.* at 20–22.

declaration, Dkt. Nos. 311–12.  Plaintiff filed a memorandum of law in opposition and a cross-motion for entry of judgment under Federal Rule of Civil Procedure 54 on September 9, 2025, Dkt. Nos. 316, 320, along with an accompanying memorandum of law and declarations, Dkt. No. 317–319.  The parties subsequently filed memoranda of law in reply.  Dkt. Nos. 322–323.

## LEGAL STANDARD

Defendants argue that there is an absence of evidence that would support the jury's $700,000 verdict and that, accordingly, the Court should grant a new trial on damages or a remittitur.  Plaintiff responds that Defendants' new trial motion is not cognizable because the Second Circuit reversed this Court's Rule 50 order with a mandate to reinstate the jury verdict and the new trial motion was abandoned.  In the alternative, Plaintiff argues that there is sufficient evidence to support the verdict.

Under Federal Rule of Civil Procedure 59(a)(1) the court may, on motion, grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  If a district court finds that a verdict is excessive, the court may order a new trial, a new trial limited to damages, or may, under the practice of remittitur, condition the denial of a new trial on the prevailing party's agreement to a reduction in the verdict.  *Tingley Sys. Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995).  The court may not, however, "simply [ ] reduce the damages without offering the prevailing party the option of a new trial."  *Zakre v. Norddeutsche Landesbank Girozentrale*, 541 F. Supp.2d 555, 560 (S.D.N.Y. 2008), *clarified on reconsideration*, 2008 WL 2557420 (S.D.N.Y. June 26, 2008), *aff'd*, 344 F. App'x 628 (2d Cir. 2009) (citing *Tingley Sys. Inc.*, 49 F.3d at 96).  A remittitur is authorized "(1) where the court can identify an error that caused the jury to include a quantifiable amount in the verdict that should be stricken and (2) where the

award is 'intrinsically excessive,' as it is greater than the amount a reasonable jury would have awarded." *Ojeda v. Metro. Transportation Auth.*, 477 F. Supp. 3d 65, 81 (S.D.N.Y. 2020), *aff'd*, 41 F.4th 56 (2d Cir. 2022). A court need not offer a remittitur, however, as "[i]t is well established that the trial judge enjoys 'discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence,' and that '[t]his discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification.'" *Lore v. City of Syracuse*, 670 F.3d 127, 176–77 (2d Cir. 2012) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996)).

    In determining whether to vacate the jury's award as excessive, the court must assess whether "the award is so high as to shock the judicial conscience and constitute a denial of justice." *Leo v. Long Island R.R. Co.*, 307 F.R.D. 314, 321–22 (S.D.N.Y. 2015) (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998)). Under New York law, applicable to recovery under the NYSHRL, an award is deemed excessive "if it deviates materially from what would be reasonable compensation."[2] N.Y. C.P.L.R. § 5501(c); *Lore*, 670 F.3d at 177. On a motion for a new trial, the court is not required to view all the facts in the light most favorable to the prevailing party, *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012), but must "accord substantial deference to the jury's determination of factual issues," *Frank Sloup and Crabs Unlimited, LLC v. Loeffler*, 745 F. Supp. 2d 115, 136 (E.D.N.Y. 2010) (quoting *Martell v. Boardwalk Enters.*, 748 F.2d 740, 750 (2d Cir. 1984)). The court may not substitute

---

[2] The Second Circuit has not decided whether a federal district court should apply the state law standard of review or the federal standard of review when reviewing jury awards that are based on both state law and federal law claims. *Restivo v. Hessemann*, 846 F.3d 547, 587 (2d Cir. 2017) (noting different approaches among the district courts in the circuit and declining to decide the issue). The New York standard of review is considered more exacting than the "shock the judicial conscience" standard applicable to federal claims, *id.*, and therefore the outcome here would remain the same, regardless of the standard applied.

its credibility judgment for that of the jury. *Raedle*, 670 F.3d at 418. However, in determining whether a jury award shocks the judicial conscience, the "upper limit" of a jury's verdict is a question of law, not a question of fact, within the sound discretion of the trial court. *Dagnello v. Long Island R.R.*, 289 F.2d 797, 806 (2d Cir. 1961).

The Court concludes that Defendants have abandoned their motion for a new trial and that the motion is precluded by the Second Circuit mandate. Because the issue is not free from doubt, the Court rules in the alternative and as a conditional matter that should the Second Circuit deem the motion not to be abandoned, the Court would grant Defendants a new trial on the issue of damages.

## DISCUSSION

Plaintiff argues as a threshold matter that the motion for a new trial has been abandoned and is precluded by the Second Circuit mandate. The Court turns to that issue before addressing the evidence supporting the jury verdict.

## I.    Defendants' Rule 59 Motion has been Abandoned

Federal Rule of Civil Procedure 50(c)(1) provides that "[i]f the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. P. 50(c)(1). "The court must state the grounds for conditionally granting or denying the motion for a new trial." *Id.*

Federal Rule of Civil Procedure 50(c)(2) addresses the effect of a conditional ruling. It provides:

> (2) *Effect of a Conditional Ruling*. Conditionally granting the motion for a new trial does not affect the judgment's finality; if the judgment is reversed, the new trial must proceed unless the appellate court orders otherwise. If the motion for a new trial is conditionally denied, the appellee may assert error in that denial; if the judgment is reversed, the case must proceed as the appellate court orders.

Fed. R. Civ. P. 50(c)(2).

The court's conditional ruling on the motion for a new trial "goes on the assumption that the motion for judgment n.o.v. was erroneously granted and will be reversed or vacated." Fed. R. Civ. P. 50 advisory committee's note to 1965 amendment; *cf. Hall v. Hall*, 584 U.S. 59, 74 (2018) (granting deference to views and proceedings of the Rules Advisory Committee). In that way, the Rule fosters the "just, speedy, and inexpensive" determination of the action. *See* Fed. R. Civ. P. 1. If the court conditionally denies the new trial motion, the "party in whose favor judgment n.o.v. was entered below may, as appellee, besides seeking to uphold that judgment, also urge on the appellate court that the trial court committed error in conditionally denying the new trial." Fed. R. Civ. P. 50 advisory committee's note to 1965 amendment. If the appellate court agrees and determines that "there was error in the conditional denial of the new trial, it may order a new trial in lieu of directing the entry of judgment upon the verdict." *Id.* And, if it disagrees and decides both that judgment n.o.v. was erroneously granted and that the new trial motion was properly denied, the parties achieve certainty and the prevailing party below receives her judgment. So too in the event of a conditional order granting a new trial, "[t]he party against whom the judgment n.o.v. was entered below may, as appellant, besides seeking to overthrow that judgment, also attack the conditional grant of the new trial." *Id.* If the appellate court determines that judgment n.o.v. and the new trial motion were both improperly granted, all that may remain below is the entry of judgment on the verdict. The appellate court needs review the trial record only once and the administration of justice is advanced as the parties avoid repeat trips to the court of appeals.

This Court thus erred when, in its December 26, 2023 Opinion and Order, it granted judgment n.o.v. for Defendants without ruling on the motion for a new trial. Dkt. No. 292. The

Court was of the view that because it directed a verdict in Defendants' favor on all of Plaintiff's retaliation claims and therefore vacated the award of compensatory damages, it need "not address Defendants' motion for remittitur." *Id.* at 47. That was error. Defendants joined their motion for judgment n.o.v. with a prayer for a new trial in the alternative. Dkt. No. 272. Defendants were entitled to a ruling on the new trial motion.

Defendants did not bring the provision of Rule 50(c)(1) to the Court's attention in their briefing on the motion for judgment n.o.v. or a new trial. *See* Dkt. Nos. 272 at 6 (noting that Defendants could move for a new trial under Rule 59 in the alternative without addressing the obligation for a conditional ruling); 281 at 10 (same). Defendants did not bring the Court's attention to the error in a motion for reconsideration. Defendants did not draw the Second Circuit's attention to the error in its briefing in that court or ask that the Second Circuit remand for this Court to consider the motion for a new trial. *See* Dkt. No. 312 at 10 (Defendants' admission that "the Remittitur Motion was not raised on appeal"). Indeed, Defendants did not mention to the Second Circuit that their motion for judgment n.o.v. was joined with a motion for a new trial. Brief of Defendant-Appellees at 21–23, *Edelman v. NYU Langone Health System et al.*, 141 F.4th 28 (2d Cir. 2025) (No. 24-251). Accordingly, in its Opinion and Order, the Second Circuit was silent with respect to the never ruled upon motion for remittitur or a new trial. Dkt. No. 302. The question before the Court then is whether Defendants have abandoned their motion for a new trial.

There is a split in authority on the question whether a party needs to raise on appeal a violation of Rule 50(c)(1) and whether the failure to raise that issue effects an abandonment.[3]

---

[3] Those circuit courts which have addressed the issue have held that the district court's failure to address a new trial motion at the time it grants judgment n.o.v. does not deprive the appellate court of jurisdiction. *See Jennings v. Jones*, 479 F.3d 110, 129 n.26  (1st Cir.), *reh'g granted*,

After reviewing the approaches taken by the circuit courts and a district court in this Circuit that squarely considered the issue, the Court concludes that Defendants have abandoned their motion and that to decide otherwise would counteract the aims of Rule 50(c).

The Court will first review the courts of appeals' approaches to the issue of 50(c) abandonment. *Oberman v. Dun & Bradstreet, Inc.*, 507 F.2d 349 (7th Cir. 1974) addressed the circumstance at issue here. The district court granted defendant's motion for j.n.o.v. without ruling on defendant's motion for a new trial. *Id.* at 353. The defendant failed to bring the Rule 50(c) violation to the district court's attention and on appeal argued only that the order granting judgment n.o.v. be sustained. *Id.* at 353. The court held that a "motion for a new trial is abandoned if not pressed on the trial court after the grant of judgment n.o.v." and that, accordingly, it need not remand for a ruling on that motion. *Id.*; *see also Vera Cruz v. Chesapeake & O. R. R.*, 312 F.2d 330, 332 (7th Cir. 1963) (holding that judgment should be entered for plaintiff where district court improperly granted judgment n.o.v. and "there [was no] sustained efforts to have the District Court rule on the alternative motion under Rule 50(b)"); *Henderson v. DeRobertis*, 940 F.2d 1055, 1057 n. 1 (7th Cir. 1991) (finding that defendants had abandoned their motion for a new trial by failing to pursue it with the district court after judgment n.o.v. or to raise the motion on appeal). *Edwards v. Bd. of Regents of the Univ. of Georgia*, 2 F.3d 382 (11th Cir. 1993) reached a similar conclusion. The Eleventh Circuit held that the motion for a new trial was abandoned because "[a]ppellee failed to pursue its motion for a new trial with the district court after the grant of j.n.o.v. and failed to argue for a ruling on that

---

*opinion withdrawn*, 499 F.3d 1 (1st Cir. 2007), and *on reh'g*, 499 F.3d 2 (1st Cir. 2007); *Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006); *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1458 (9th Cir. 1993). The Second Circuit here at least implicitly held that it was vested with jurisdiction notwithstanding the Court's Rule 50(c)(1) error.

motion on this appeal." *Id.* The Eleventh Circuit later clarified that if appellee raised the motion

for a new trial on appeal, the "default path is to remand for the district court to rule on the

motion." *Lopez v. Costco Wholesale Corp.*, 2025 WL 2254081, at *6 (11th Cir. Aug. 7, 2025)

(citing *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1264 (11th Cir. 2016);

*Chaney v. City of Orlando*, 483 F.3d 1221, 1229 (11th Cir. 2007)). Finally, in *Arenson v.*

*Southern University Law Center*, 43 F.3d 194 (5th Cir. 1995), *decision clarified on reh'g*, 53

F.3d 80 (5th Cir. 1995), the Fifth Circuit held that when defendants who had prevailed on a

motion for judgment n.o.v. "failed to seek a ruling from the district court on their motion for new

trial and failed to mention the new trial motion on appeal, they abandoned the motion." *Id.* at

196. The court reasoned:

> The rules governing the motions for judgment as a matter of law and,
> alternatively, for a conditional new trial effectively set up a 'use-it-or-lose-it'
> system requiring the movant to comply with several procedural burdens or lose
> the right to relief. One such requirement is that the movant must have sought a
> judgment as a matter of law at the close of all the evidence; another is the 10-day
> limit for seeking relief after the entry of judgment. Another such burden is that
> the party who would obtain judgment as a matter of law must request a new trial
> along with the motion for judgment as a matter of law and must obtain a ruling for
> the benefit of the appellate court in case the judgment as a matter of law is
> reversed, or otherwise lose the right to the new trial. The moving party is not
> disinterested in seeking the conditional grant of a new trial. If the trial court were
> not convinced by the movant's argument for judgment as a matter of law, the trial
> court might still set aside the jury verdict and order a new trial. And the new trial,
> if granted, would serve to protect the movant from the jury verdict in case the
> appellate court reverses a judgment as a matter of law.

*Id.* at 198. The court held that defendants had lost the right to seek a new trial after the

judgment as a matter of law was reversed because they "fail[ed] to note on appeal their

new trial motion." *Id.* The court specifically held that it was not incumbent on the

prevailing plaintiff to draw the Circuit Court's attention to the district court's failure to

rule on a new trial motion: "Where the defendants-movants neither pressed for a ruling

on the new trial motion in the trial court nor made mention of that issue on appeal, the motion was abandoned, and there was nothing [plaintiff] needed to argue to establish that fact." *Id.*

Other courts have reached a different result. In *Jennings v. Jones*, 499 F.3d 2 (1st Cir. 2007), the district court granted defendant's post-trial motion for judgment n.o.v. without ruling upon defendant's motions for a new trial and remittitur. *Id.* at 4. The defendant did not pursue the motion for a new trial before the district court or raise the issue on appeal. *See Jennings v. Jones*, 479 F.3d 110, 129 (1st Cir.), *reh'g granted, opinion withdrawn*, 499 F.3d 1 (1st Cir. 2007), *and on reh'g*, 499 F.3d 2 (1st Cir. 2007). The First Circuit recognized the Rule 50(c)(1) error and, without providing any reasoning, remanded the case to the district court "for a ruling on [the new trial and remittitur] motions," in effect determining that the issue was not abandoned by defendant's failure to raise the issue. *Id.* at 21. In *Rhone Poulenc Rorer Pharm. Inc. v. Newman Glass Works*, 112 F.3d 695 (3d Cir. 1997), the Third Circuit reversed the district court's grant of judgment n.o.v. and held that the district court erred in dismissing defendant's motion for a new trial as moot. Though defendant had not raised the failure to address the new trial motion "either in its brief or at oral argument," the court did not find the motion abandoned and instead remanded for the district court to consider the motion for a new trial. *Id.* at 698–99, 698 n.5. However, the court noted that no challenge had been made to the Circuit's consideration of the failure to address the new trial motion or its substance and it thus did not address the abandonment issue. *Id.* at 698 n.5.

In *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106 (4th Cir. 1974), the Fourth

Circuit reversed the district court's grant of judgment n.o.v., noted the Rule 50(c) error, and also decided, upon its own review of the trial record, that defendant was not entitled to a new trial.  *Id.* at 109–10.  The court contemplated the possibility that it could remand to the district court for its determination of a renewed motion for a new trial but ultimately held that such course was not necessary because the motion was without merit. *Id.* at 110.  The opinion does not state whether the new trial motion was raised on appeal or, if not, whether the failure to raise the issue on appeal would provide an alternative basis for the court's conclusion not to remand for consideration of the motion for a new trial.  In *Szekeres v. CSX Transportation, Inc.*, 731 F.3d 592 (6th Cir. 2013), the Sixth Circuit reversed judgment n.o.v. and denied defendant-appellee's undecided motion for a new trial, rather than remand to the trial court.  There, the parties explicitly raised on appeal the District Court's failure to conditionally rule on the new trial motion.[4]  *Id.* at 604–05; *see also Cranpark, Inc. v. Rogers Group, Inc.*, 821 F.3d 723, 737 (6th Cir. 2016) (Where district court failed to provide conditional ruling and parties agree that district court erred, "this Court has discretion to decide the motion itself or remand the case for the district court to decide").[5]

---

[4] Both parties in *Szekeres* raised the issue of failure to make a conditional ruling pursuant to Rule 50(c)(1).  Plaintiff-appellant urged the court to rule on and deny the motion for a new trial.  Brief of Plaintiff-Appellant at *48–49, *Szekeres*, 731 F.3d 592 (6th Cir. 2013) (No. 12-3689), 2012 WL 4901268.  Defendant-Appellee urged the court to remand and allow the district court to decide the motion in the first instance.  Brief of Defendant-Appellee at *24, *Szekeres*, 731 F.3d 592 (6th Cir. 2013) (No. 12-3689), 2012 WL 6211513.

[5] In *Freund v. Nycomed Amersham*, 347 F.3d 752 (9th Cir. 2003), the Ninth Circuit held that defendant had not "waived its right to a new trial by not drawing the district court's attention to the failure to make a conditional ruling as required by Rule 50(c)."  *Id.* at 765.  The decision is inapposite here where the question is whether defendants-appellees abandoned their Rule 50(c) argument and the right to make a renewed motion for a new trial by failing to raise the Court's Rule 50(c) violation on appeal as defendants-appellees in *Freund* had done.

The Second Circuit has not squarely addressed whether the failure to raise on appeal the motion for a new trial or the district court's failure to conditionally rule on that motion constitutes abandonment and thus precludes consideration of that motion on remand.[6]  In *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564 (2d Cir. 1989), the district court did not conditionally rule on defendant's motion for a new trial after granting judgment n.o.v., and defendant did not raise "any reason for a new trial on appeal."  *Id.* at 11571.  The court accordingly declined to remand the case to the district court for reconsideration of the motion for a new trial, noting that there was no reason to deprive the plaintiff-appellant "the benefit of the jury's verdict."  *Id.*  The court noted that "appellate courts often remand such cases to the trial court for reconsideration of the motion for a new trial," but it also cited with apparent approval *Oberman* for the proposition that a "motion for new trial is abandoned if not pursued following entry of judgment n.o.v."  *Id.*  It is unclear whether the result in *Grant* turned on the fact that the defendant-appellee did not raise the district court's Rule 50(c) error and therefore abandoned the motion, or on the fact that the issue, if it were to be raised, would lack merit.  In *Otero v. Bridgeport Housing Auth.*, 98 F. App'x 899 (2d Cir. 2004) (summary order), the Second Circuit, referencing its prior decision in the same case, noted that defendants-appellees "emphasized" in

---

[6] Federal Rule of Criminal Procedure 29 similarly requires the district court, after entering a judgment of acquittal after a guilty verdict, to "conditionally determine whether any motion for a new trial should also be granted if the judgment of acquittal is vacated or reversed." Fed. R. Crim. P. 29(d).  The Second Circuit has not squarely addressed the issue of abandonment in the context of the analogous criminal rule.  After reversing the district court's judgment of acquittal, the Circuit in *U.S. v. Jabar*, 19 F.4th 66 (2d Cir. 2021) determined that "[c]onsideration of a motion for a new trial is a matter best reserved to the district court's informed discretion."  *Id.* at 83.  Though "[n]either party on appeal challenge[d] the district court's failure to enter the conditional ruling," defendant raised the motion for a new trial on appeal.  *Id.*; Corrected Brief for Defendant-Appellee-Cross-Appellant Deborah Bowers at *55, 76, *Jabar*, 19 F.4th 66 (2d Cir. 2021) (Nos. 17-3514-(cr)(L), 18-1233-cr(CON), 18-1857-cr(CON)), 2020 WL 4201300.  Thus, the Second Circuit there did not need to address whether the motion for a new trial would be deemed abandoned if neither party raised the issue on appeal.

their arguments on appeal that the district court had violated Rule 50(c)(1) and "therefore requested that the Court 'remand the case for resolution of [defendants' alternative] motions'" in the Circuit's underlying decision. *Id.* at 900. The Second Circuit "granted that request and remanded rather than merely order[ed] the district court to reinstate the jury's verdict." *Id.* The case is silent as to whether, if defendants had not raised the violation of Rule 50(c)(1) on appeal, the Circuit Court would have deemed the issue to be abandoned.[7]

Defendants have identified a single district court opinion in this Circuit to address the issue. Dkt. No. 330 at 2. The court in *Newton v. City of New York*, 171 F. Supp. 3d 156 (S.D.N.Y. 2016) faced the same issue presented here: the district court granted judgment n.o.v. for defendants without conditionally ruling on defendants' Rule 59 motion. Defendants neither raised the issue with the district court nor on appeal, and the Second Circuit reversed the judgment n.o.v. without addressing the undecided motion for new trial. *Id.* at 159. On remand, the district court rejected plaintiff's argument that defendants had abandoned their motion for a new trial. *Id.* at 167. Recognizing both the split in the Circuits as to Rule 50(c)(1) abandonment and that "the Second Circuit has not directly addressed the question," *id.* at 167, the court held that defendants had not abandoned the motion for a new trial. Judge Scheindlin reasoned that Rule 50 was "silent as to litigants' obligations in the event that the trial court fails to make a conditional ruling," and that "other provisions of the Federal Rules of Civil Procedure" but not

---

[7] In *Newton v. City of New York*, 171 F. Supp. 3d 156 (S.D.N.Y. 2016), the court cited *Conte v. County of Nassau*, 596 F. App'x 1 (2d Cir. 2014) (summary order) as authority supportive of the conclusion that the failure to raise on appeal a Rule 50(c)(1) violation does not constitute an abandonment. 171 F. Supp. 3d at 168. *Conte* is not persuasive authority in support of Defendants. In that case, the District Court failed to rule upon plaintiff's motion for a new trial on damages on the theory that such motion was moot in light of its order granting defendants' j.n.o.v. *Conte*, 596 F. App'x at 6. But plaintiff in *Conte* reiterated his argument on appeal that he was entitled to a new damages trial and "thereby preserv[ed] this claim on appeal despite the district court's failure to make an alternative ruling." *Id.* at 6–7.

Rule 50 "expressly provide for waiver based on certain conduct by the parties." *Id.* at 168. The court also noted that the Second Circuit was on notice of the undecided motions for a new trial because they were included in the appellate record and referenced in defendants' opposition brief on appeal, and that "had the Second Circuit intended to deem defendants' Rule 59 motions abandoned, it would have done so." *Id.* at 168.

The Court concludes that *Oberman*, *Edwards* and *Arenson* have the better reasoned approach and that, when confronted squarely with the question, the Second Circuit is likely to side with the view of the law expressed in those opinions. The Rulemakers' decision to adopt Rule 50(c)(1) was considered. The Rule avoids the circumstance where the appellate court reviews a trial record on a first appeal to determine whether the evidence would support a jury verdict only to be forced to review the same record on a second appeal, and after a new trial with a new trial record, to determine whether the first verdict was against the weight of the evidence. *See* 9 Moore's Federal Practice § 50.90(1)(b) (3d. ed. 2025) (noting that conditional ruling on motion for a new trial creates a final appealable judgment but a non-conditional new trial order is not immediately appealable); *see also Binder v. Long Island Lighting Co.*, 57 F.3d 193, 201 n.2 (2d Cir. 1995) ("there is no appealable final judgment" where a court grants a motion for a new trial). To that end, the Rule requires a party who seeks a new trial after a jury verdict to make that motion at the same time as it makes a motion for judgment as a matter of law. *See* Fed. R. Civ. P. 50(b), 59. And, in mandatory not precatory terms, it requires the Court to rule on the Rule 59 motion, Fed. R. Civ. P. 50(c), and permits a party who obtained judgment n.o.v. but did not prevail on a motion for a new trial to raise the issue on appeal, Fed. R. Civ. P. 50 advisory committee's note to 1965 amendment. The purpose of the Rule is to prevent the "piecemeal litigation" that occurs when "the defendants receive[] two opportunities to overturn the adverse

judgment" and "the delay and waste of judicial resources that can occur if parties are allowed to resuscitate dormant motions for new trial after the appeals court has once considered a judgment." *Arenson*, 43 F.3d at 196. It would defeat the objective of Rule 50(c) to permit a party who prevailed on a motion for judgment n.o.v. but who did not obtain a favorable ruling on a motion for a new trial to sit on the district court's ruling only to raise the issue again on remand.

The only Circuit to have clearly adopted a contrary view is the First Circuit and that court did so without analysis and without addressing the abandonment issue. It simply *sua sponte* and *sub silentio* concluded that the appropriate result was to remand for a new trial. *Jennings*, 499 F.3d at 21. In *Rhone Poulenc Rorer Pharm.*, the Third Circuit expressly noted that no party had argued that the court lacked authority to remand for a new trial. 112 F.3d at 698 n.5. The other Circuit decisions that deemed the issue not abandoned, either by deciding the motion for new trial or ordering remand, are silent with respect to whether the Rule 50(c)(1) violation was raised or make clear, through the decision itself or underlying briefings, that the issue was raised. *Mays*, 502 F.2d at 110 (denying request for new trial without noting whether parties raised issue); *Szekeres*, 731 F.3d at 605 (denying request for new trial where parties raised the issue in briefing); *Cranpark*, 821 F.3d at 737 (denying request for new trial where parties agreed district court erred in not issuing a conditional ruling); *Freund*, 347 F.3d at 765 (remanding for district court to decide motion for new trial where defendants-appellees raised issue on appeal); *see also Lopez*, 2025 WL 2254081, at *6 (noting that default path in Eleventh Circuit is to remand where parties raise the issue on appeal). Obviously, authority for the proposition that an appellate court can remedy a Rule 50(c)(1) violation when that error or the unruled upon motion is brought to its attention provides but slight support for the notion that the

district court can, on remand, rule on the previously unruled upon motion when the issue had not been raised in the Circuit Court.   Indeed, the cases may suggest the contrary.   The reason why the parties raised the failure to rule on a new trial motion and requested remand is because, in the absence of a request, the court would not *sua sponte* grant such relief.

The reasoning of *Newton* is not persuasive.   The court in *Newton* concluded that "had the Second Circuit intended to deem defendants' Rule 59 motions abandoned, it would have done so."   *Newton*, 171 F. Supp. 3d. at 168.   This reasoning assumes more than the law permits from the Circuit's silence on the issue.   The Court cannot infer that the Circuit Court intended to remand for this Court to rule upon the Rule 59 motion solely from the fact that the Court stated, in its opinion granting judgment, that it was not ruling upon the motion.   Dkt. No. 292.   The Second Circuit "need not, and normally will not, decide issues that a party fails to raise in his or her appellate brief."   *Calizaire v. Mortgage Electronic Registration Systems, Inc.*, 763 F. App'x 124, 126 (2d Cir. 2019) (summary order) (quoting *Moates v. Barkley*, 147 F.3d 207, 209 (2d Cir. 1998)).   An issue is not properly raised on appeal if no supportive argument is made, *In re Grant*, 778 Fed. App'x 69, 70 (2d Cir. 2019) (summary order) (citing *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998)), or if the issue is solely mentioned in a footnote, *Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 182 n.5 (2d Cir. 2021).   An issue whose sole appearance in the appellate record is a sentence in the district court's opinion falls far below the requirement to be properly raised on appeal.   The appellate court, no less than the district court, is not required to search through the record on appeal and determine whether a new trial motion was made when counsel itself has not raised the issue in the appeals court.   The Court will not assume that the Circuit's silence on the motion indicates that the Circuit intended the motion to be decided on remand—such an assumption would defy well established principles of appellate procedure.   *See*

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004) ("When a party fails adequately to present arguments in an appellant's brief, we consider those arguments abandoned") (citing cases); *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004) ("It is well established that an argument not raised on appeal is deemed abandoned and lost") (quoting *United Stats v. Joyner*, 313 F.3d 40, 44 (2d Cir. 2002)).

*Newton* also reasoned that Rule 50(c)'s text does not provide for waiver and therefore counsels against finding abandonment.  171 F. Supp. 3d at 168.  That framing is similarly unpersuasive. Judge Scheindlin contrasted Rule 50's silence "as to litigants' obligations in the event that the trial court fails to make a conditional ruling" with rules such as Rule 12(h) that "expressly provide for waiver based on certain conduct by the parties" and concluded that reading Rule 50 to include an implied waiver would go against its plain meaning.  *Id.* at 168, 168 n.75; Fed. R. Civ. P. 12(h).  But that reasoning rests on a mistaken premise.  Defendants have not "waived" their Rule 50(c)(1) argument or their right to renew their Rule 59 motion on remand— they have instead abandoned the argument that the Court erred in failing to rule on the Rule 59 motion.  "Waiver requires the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable."  *Robinson v. De Niro*, 739 F. Supp. 3d 33, 142 (S.D.N.Y. 2023) (quoting *Lamaka v. Russian Desserts Inc.*, 2021 WL 2188280, at *11 (E.D.N.Y. Feb. 12, 2021), *report and recommendation adopted*, 2021 WL 2184870 (E.D.N.Y. May 28, 2021)).  In contrast, the "extinguishment of an argument by failure to timely raise the argument" is properly articulated as abandonment,[8] "since the extinguishment constitutes a failure to 'make the timely assertion' of their right, as opposed to a voluntary or intentional one."  *Miller Fam.*

---

[8] Courts often use the term "forfeiture" rather than "abandonment."  *See, e.g., Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999).  The Court will use the term "abandonment" to be consistent with the courts of appeals who have addressed the issue under Rule 50(c).

*Indus., Inc. v. Ives*, 2025 WL 1906059, at *2 n.2 (S.D.N.Y. July 10, 2025).  Put simply, "[t]he

term 'waiver' is best reserved for a litigant's intentional relinquishment of a known right.  Where

a litigant's action or inaction is deemed to incur the consequence of loss of a right . . . the term

[abandonment] is more appropriate."  *Hamilton v. Atlas Turner, Inc.,* 197 F.3d 58, 61 (2d Cir.

1999).  The Rulemakers did not need to specify that the failure to timely make an argument

results in an abandonment of that argument.  It is a general principle of law that a party is

deemed to have abandoned a claim that it could have made but did not timely make.  *See Hughes*

*v. Bricklayers and Allied Craftworkers Local No. 45*, 386 F.3d 101, 104 n.1 (2d Cir. 2004)

(parties "abandoned certain claims advanced below by not raising them in their brief to this

Court"); *cf. Asset Co. IM Rest, LLC v. Katzoff*, 2024 WL 167333, at *4 n.4 (S.D.N.Y. Jan. 16,

2024) (finding that party abandoned an issue by failing to "timely raise and fully address" the

issue); *Jackson v. Federal Express*, 766 F.3d 189, 196 (2d Cir. 2014) (finding an inference of

abandonment would be proper where brief argued that summary judgment should be denied only

as to one claim).

       Defendants could have raised in the Second Circuit the failure of this Court to rule on the

motion for a new trial and requested, in the alternative, that if the court reversed the judgment

n.o.v., it remand for a ruling on the motion for a new trial.  That is the course that the defendant-

appellee followed in *Otero*, 98 F. App'x 899, and *Legg v. Ulster Cnty.*, 979 F.3d 101, 118 (2d

Cir. 2020)[9].  It is the course that the winning party in the district court has followed in numerous

other appeals.  *See McGinnis,* 817 F.3d at 1264; *cf. Acosta v. City & Cnty. of San Francisco*, 83

---

[9] Defendants requested remittitur in the event that the Second Circuit reversed the district court's
decision.  Brief of Defendants-Appellees-Cross-Appellants County of Ulster and Paul J.
Vanblarcum at *98–99, *Legg*, 979 F.3d 101 (2d Cir. 2020) (Nos. 17-2861, 17-2863), 2018 WL
1608714.

F.3d 1143, 1148 (9th Cir. 1996), *as amended* (June 18, 1996) (addressing new trial motion when defendants raised on appeal the district court's failure to address new trial motion); *Cranpark*, 821 F.3d at 737 (noting that defendant raised its new trial motion on appeal). By failing to do so and now urging the Court to treat the Second Circuit's remand as license to consider the new trial motion, Defendants would have the Court adopt a rule that would create the precise evils that Rule 50(c)(1) was intended to prevent. *See Arenson*, 43 F.3d at 196. Defendants had their shot at a new trial motion. They did not take it—neither urging this Court to rule on the motion after it ruled on the motion for judgment n.o.v. nor raising the issue on appeal. To accept their argument now would be to render Rule 50(c)(1) a deadletter—a court would be required to issue an order on a conditional new trial motion, except when it did not issue an order on such a motion.

Defendants' remaining arguments are not convincing. They claim it is fundamentally unfair that they made a motion for a new trial that, as a result of this Court's decision to grant them greater relief in the form of judgment n.o.v., will never be decided. But there is no unfairness in holding Defendants to the consequences of their own decisions regarding what issues to raise on appeal and what issues not to raise. Indeed, the unfairness is to the other side. As Plaintiff's counsel has pointed out, Dr. Edelman has waited a long time to have her verdict converted into a judgment. Dkt. No. 317 at 34. Over two years after a jury verdict in her favor, Dkt. No. 260, Plaintiff has not received the benefit of the jury's award. Had Defendants raised the issue of the Court's failure to rule on the new trial motion in the Second Circuit, Plaintiff would have been able to urge on that Court the arguments she now makes—that there is no basis for a new trial—and the Circuit would have been able to rule on that motion. She, and this Court, would have the certainty of an appellate ruling. If she prevailed, there would have been

no further delay.  And if she lost, the issue would have been conclusively decided.  As it stands, if the Court were to rule on the motion and decline to enter judgment, Plaintiff may have to wait more years before achieving finality as the case winds its way through the appellate court.

Defendants also argue that if Plaintiff wanted to avoid this Court ruling on the new trial motion on remand Plaintiff should have raised on the Court's Rule 50(c) error on appeal.  But that gets it exactly backwards.  Plaintiff had no reason to raise the Court's failure to rule on the new trial motion.  She had lost on the motion for judgment n.o.v. and was seeking to have that judgment overturned.  Whether the Court ruled on the new trial motion was entirely irrelevant to her appeal.  It was Defendants—and Defendants alone—who had an interest in the fact that the Court had not ruled on the motion for a new trial.  In the absence of a conditional ruling, there was no order that there be a new trial if the Court's decision were reversed.  "Our adversarial system depends on each party, through counsel, zealously to pursue whatever arguments may entitle it to relief." *Arenson*, 43 F.3d at 197.  It was incumbent on Defendants, and not on Plaintiff, to raise the issue of the Court's failure to rule on the new trial motion if Defendants wanted the Court to rule on that motion.

Finally, Defendants suggest that the Second Circuit's mandate that this Court engage in "further proceedings consistent with th[e Second Circuit] opinion," Dkt. No. 302, contemplates the Court will review the new trial motion.  An order granting a new trial would not be inconsistent with the Second Circuit opinion.  But that is because Defendants did not raise the issue of a new trial and thus the Second Circuit had no occasion to address the motion or say something inconsistent with a new trial.  The Circuit remanded for "further proceedings" because, as made clear in other portions of its Opinion, it disagreed with this Court's decision to grant judgment in favor of Dr. Kaplan before submitting the case to the jury.  There would be

"further proceedings" because a new trial is necessary for Dr. Kaplan.

## II.    The Jury's Award for Front Pay Damages Would Be Vacated If The Motion Were Not Abandoned

Were the new trial motion not abandoned, the Court would grant it.[10]

Defendants argue that the verdict lacks evidentiary support because Plaintiff's salary at her new position was higher than her salary at NYU and she submitted no evidence of her retirement contributions other than her testimony.  Dkt. No. 312 at 10–13.  Defendants also argue that Plaintiff's damages were capped by her pretrial filings.  *Id.* at 14.  For her part, Plaintiff argues that the verdict can be supported by evidence of foregone salary, health insurance benefits, and retirement benefits that she lost when her employment contract was not renewed at NYU Langone and she assumed a position at Arthritis and Rheumatism Associates.[11]  Dkt. No. 317 at 19–26.  The evidence would not support those conclusions.

Plaintiff cannot support the jury verdict by reference to foregone salary or health insurance benefits.  In her Rule 26(a)(1) disclosures and in her joint pretrial order, she limited her

---

[10]  Both parties requested at oral argument that the Court conditionally indicate how it would rule on the new trial motion and the Court deems it prudent to do so.  Oct. 21, 2025 Tr. at 8:4–6, 11:7–9.  As noted, Rule 50 provides authority for the Court to issue "conditional" rulings.  A conditional ruling by this Court will give the Second Circuit the opportunity to consider the issue of "abandonment" against a record that includes this Court's views about whether the motion would have merit.

[11] Plaintiff also argues that Defendants are precluded from arguing that (1) the evidence reflects that she lost no compensation as a result of the end of her employment with NYU because she did not go a day unemployed and (2) Plaintiff's damages are capped at $137,000, because Defendants did not raise these issues in their Rule 50(a) motion for JMOL.  Dkt. No. 317 at 13–15.  In their Rule 50(a) motion, Defendants raised that Plaintiff did not "go a day unemployed," that "[t]here's no documentary proof" of her retirement benefits, and that she only offered "very short, unspecific testimony" regarding those benefits.  Trial Tr. 1308:11–20.  Based on Plaintiff's initial disclosures and the joint pretrial order, Defendants would not have known that Plaintiff had any theory of damages for front pay other than her retirement benefits.  Defendants challenged the sufficiency of the evidence for Plaintiff's claimed damages and therefore their arguments are not precluded.  *See Cruz v. Local Union No. 3 of Intern. Broth. Of Elec. Workers*, 34 F.3d 1148, 1155 (2d Cir. 1994) (noting that defendant should have challenged the sufficiency of the evidence for a damage award in their prior motion for a directed verdict).

claim for front pay to lost contributions to retirement accounts.  The Joint Final Pretrial Order

filed by the parties on April 3, 2023 contained a section that provided a statement regarding each

element of damages and the dollar amount.  Dkt. No. 197 at 48.  Plaintiff indicated that she was

seeking $137,400.00 in "Lost wages (back pay & front pay)."  *Id.*  Her amended initial

disclosures served the next day reiterated the $137,400.00 figure and explained how it was

calculated.  In the section headed **COMPUTATION OF DAMAGES**, Plaintiff stated in

pertinent part:

> Plaintiff claims damages for:
> …
> (ii) back pay and front pay in an amount to be determined at trial, but currently
> calculated at $137,400.00.

Dkt. No. 202-1 at 2-3.  A footnote to that paragraph stated:

> Calculated as $27,800.00 per year in 2022, 2023, and 2024 for Defendants' 10%
> match into Plaintiff's retirement account, plus $18,000.00 per year in 2022, 2023,
> and 2024 for Plaintiff's deposit into her retirement account.

*Id.* at 3 n.2.

The amended initial disclosures were served in response to the motion by Defendants *in

limine* to preclude Plaintiff from introducing evidence concerning damages for failure to comply

with Federal Rules of Civil Procedure 26(a)(1) and 34.  Dkt. No. 186 at 1–5.  Defendants argued

that Plaintiff failed to provide a "computation of her alleged damages," as required by Federal

Rule of Civil Procedure 26(a)(1), listing only categories of damages and "loss of good will and

loss of Plaintiff's medical practice" in an amount no less than $10 million, without providing any

computation of back pay or front pay beyond specifying "in an amount to be determined at trial."

*Id.* at 1–2 (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006)); *see* Fed. R.

Civ. P. 26(a)(1).  Plaintiff also failed to produce any responsive documents including documents

concerning her claim for and computation of damages.  *Id.* at 3–5.  Plaintiff responded on April

3, 2023, stating that "her damages were disclosed in the joint pretrial Order," and that in addition, Plaintiff served amended initial disclosures setting forth her calculation of damages. Dkt. No. 201 at 8; *see also* Dkt. No. 202-1.

After the case was reassigned to the undersigned on June 7, 2023, the Court held oral argument on the motion *in limine* on June 27, 2023. Dkt. No. 230. Defendants argued in relevant part as follows:

> The next category is $137,400 for front pay and back pay. Now, really there is no front pay and back pay in this case because she was employed continuously before NYU, while at NYU, and immediately after NYU.
> If you look at their disclosures, what they did, is they amended their Rule 26 disclosure after the motions *in limine* were filed as an answer to the motion *in limine*. And they in that disclosure have some argument having to do with her retirement account deposits. And we don't have any evidence in this case about what her retirement accounts are, how much is in them, what they're worth, when they were created. And you can't just lob in a new retirement account argument to make up a front pay or back pay claim that you don't otherwise have.

Dkt. No. 230 at 23:3–16.

Plaintiff reiterated that theory of damages in response to the Court's questions at argument. When asked for her theory of lost wages, counsel stated "it's the employer contribution, NYU's contribution under the plan that she had the benefit of, and now she no longer has that benefit." *Id.* at 30:18–20.

Plaintiff's statements in the joint pretrial order and in the initial disclosures are binding on her and, in the absence of an amendment, would preclude her from arguing at trial that she was entitled to a different measure of lost profits damages. *See Mull v. Ford Motor Co.*, 368 F.2d 713, 715 (2d Cir. 1966); *see e.g., Potthast v. Metro-N. R.R. Co.*, 400 F.3d 143, 154 (2d Cir. 2005) ("the district court may bar any issue that was foreseeable but not raised in a pretrial order or conference"); *Banks v. Yokemick*, 214 F. Supp. 2d 401, 405 (S.D.N.Y. 2002) (noting that statements within a pretrial order are examples of judicial admissions); *Rosen v. Brookhaven*

*Cap. Mgmt. Co.*, 194 F. Supp. 2d 224, 229 (S.D.N.Y. 2002) (same); *Concepts NREC, LLC. v. Qiu*, 662 F. Supp. 3d 496, 516 (D. Vt. 2023), *objections overruled*, 698 F. Supp. 3d 698 (D. Vt. 2023) (noting that prior initial disclosures cease to be judicial admissions once amended).  It thus follows that such a different measure of damages cannot be argued to support a jury verdict.

Moreover, even if Plaintiff could support the jury verdict based on evidence of lost salary and healthcare benefits, the Court would conclude that the award was unduly speculative.[12]  At the time of her termination, Plaintiff was receiving a salary of $278,000 at NYU under a three-year contract.  Dkt. No. 318-3.  Plaintiff began work at Arthritis and Rheumatism Associates on May 1, 2021 with a starting salary of $300,000, *i.e.* more than she was making a NYU.  Trial Tr. at 210:10-14.  In her second year, Plaintiff's salary increased to $325,000, *i.e.* $47,000 more than she was making at NYU during her last year of employment there.  Trial Tr. at 230:3-4.  Although Plaintiff testified that at NYU she had the opportunity to receive productivity-based bonuses, Trial Tr. at 88:13-23, she also had the opportunity to earn productivity-based bonuses at Arthritis and Rheumatism Associates, Trial Tr. at 230:5-7.  She offered no testimony to support that she would have received productivity-based bonuses at NYU.

Plaintiff argues that the jury could have reasonably inferred that Plaintiff would have received a 35% increase in salary in her next three-year contract, as Plaintiff's salary increased by 35% between her 2014 contract and her 2017 contract, and that the appropriate salary for comparison is $375,300, rather than $278,000.  Dkt. No. 317 at 24–25.  She further argues that the jury could have concluded that she would have received similar salary increases in future contracts.  *Id.*  However, Plaintiff's argument remains unduly speculative.  Plaintiff's salary

---

[12] The jury was instructed to consider broadly "plaintiff's lost salary and benefits" when determining damages for front pay.  Trial Tr. at 1473:24–25.

increase between her first and second contracts accompanied an increase in her expected productivity, Dkt. Nos. 318-2, 318-3, yet Plaintiff does not provide any information regarding productivity increases for future contracts, or whether such an increase in productivity would have been feasible. An award of front pay based solely on potential salary increases projected from one prior salary increase, absent any additional evidence regarding salary rates, is unduly speculative. *See Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 309–10 (S.D.N.Y. 2015) (finding front pay award based on legal recruiter testimony without inquiry into firm's pay structure, turnover rate, and future careers of former employees would be unduly speculative); *cf. Tanzini v. Marine Midland Bank*, 978 F. Supp. 70, 81 (N.D.N.Y. 1997) (affirming front pay award where jury had evidence of the current salary of plaintiff's replacement).

A front pay award based on Plaintiff's lost healthcare benefits, which Plaintiff newly presents as a theory of damages, Dkt. No. 317 at 21, would be similarly unduly speculative. Plaintiff testified broadly that NYU had "great health insurance" in contrast to Arthritis and Rheumatism Associates' health care which was "not a good plan, it was very expensive." Trial Tr. at 211:3–6. Plaintiff testified that she had to join her husband's health insurance and they struggled with "high out-of-pockets and deductibles." *Id.* Other than this testimony that NYU's health insurance was better, Plaintiff did not provide any evidence as to the increased cost of her new healthcare plan, instead relying on the jury's common knowledge of healthcare costs to estimate the front pay award. Dkt. 317 at 21. Such limited evidence in support of front pay would require the jury to impermissibly engage in undue speculation and guesswork.

That leaves the question whether the evidence at trial could support an award of front pay up to the $137,400 stipulated in the pretrial order based on Plaintiff's retirement benefits. Plaintiff's theory at trial was that, had she remained at NYU, NYU would have made retirement

contributions to her retirement account that matched the contributions that she made to that retirement account and that, as a result of her departure from NYU, she lost that benefit. Dkt. No. 202-1. However, at trial, though Plaintiff testified as to the existence of these retirement benefits, she did not testify that she had made or would make contributions to her retirement account that NYU would have matched. Trial Tr. 79:25–80:15 (testifying only that "if" Plaintiff put money into her retirement account, NYU would match her contribution up to ten percent of her salary). Further, Plaintiff did not provide any firm testimony as to the amount she could have contributed to the retirement accounts that were not eligible for matching contributions. Trial Tr. 80:4–8 ("could be $18,000 or whatever it was"). To the extent the jury's front pay award was based on Plaintiff's retirement benefits, the award was unduly speculative. *See, e.g.*, *Pogil v. KPMG L.L.P.*, 2024 WL 1208909, at *14 (S.D.N.Y. Mar. 21, 2024) (finding front pay award based, in part, on retirement benefits unduly speculative where there was no evidence as to how plaintiff would have invested in the account); *Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F.Supp.2d 573, 578 (S.D.N.Y. 2011) (holding that method for calculating lost pension benefits too speculative where calculation based on 2006 document projecting future benefits).

The evidence does not support the jury's award of $700,000 in front pay. As each of Plaintiff's theories of damages is speculative, if the motion for a new trial were not abandoned, the Court would order a new trial on the issue of damages, without a remittitur condition.

## III. Plaintiff's Motion for Entry of Judgment is Denied

Plaintiff moves for entry of judgment under Federal Rule of Civil Procedure 54(b), arguing that the claims against Antonik and NYU are finally decided, the remaining claims pertaining to Kaplan were severed through the Court's decision on Defendants' Rule 50(a) motion, and the Kaplan trial, scheduled for November 17, 2025, will have no impact on the July

19, 2023 jury verdict.  Dkt. No. 317 at 30–35.  Defendants argue that the cross-motion is premature.  Dkt. No. 322 at 13.

Federal Rule of Civil Procedure 54(b) allows entry of final judgment on fewer than all claims.  Fed. R. Civ. P. 54(b).  To permit entry of judgment, "three elements are required: (1) [there must be] multiple claims or multiple parties . . . , (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make an express determination that there is no just reason for delay."  *Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 352 (S.D.N.Y. 2013) (internal quotations omitted).  In deciding whether there is "just reason for delay," a court must consider whether final judgment would serve "the interests of sound judicial administration and efficiency" or "in the infrequent harsh case" if "there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal."  *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir. 1992) (internal citations and quotations omitted).  Entry of judgment should not be granted if "the same or closely related issues remain to be litigated."  *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir.1991).

Rule 54(b) is not intended to alter the general "historic federal policy against piecemeal appeals."  *Novick v. AXA Network, LLC*, 642 F.3d 304, 310–11 (2d Cir. 2011) (quoting *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980)).  Thus, "[t]he court's power under Rule 54(b) to enter final judgment before an entire case is concluded should be exercised 'sparingly.'"  *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997) (quoting *Cullen v. Margiotta*, 811 F.2d 698, 710 (2d Cir.), *cert. denied*, 483 U.S. 1021 (1987)).

Here, there are multiple parties.  In addition, the claims regarding Antonik and NYU are now finally decided—leaving only the claims pertaining to Kaplan pending adjudication. However, granting entry of judgment under Rule 54(b) would present "a substantial risk—really, a near-certainty—of contravening the historic federal policy against piecemeal appeals" and is therefore not appropriate.  *Kumaran v. National Futures Association*, 2023 WL 3160116 at *13 (S.D.N.Y. Apr. 28, 2023) (internal quotations omitted).  Defendants would have a right to appeal the judgment.  There will then likely be a subsequent appeal at the conclusion of the upcoming trial on the remaining claims against Kaplan, which is scheduled to begin less than three weeks after the issuance of this opinion.  Dkt. No. 313.  There is no efficiency to be gained from a final judgment, and immediate appeal, on the NYU and Antonik claims now and final judgment shortly thereafter on the remaining claims against Kaplan, leading to a second appeal.

Entry of judgment would also result in the Second Circuit considering substantially similar issues in successive appeals.  On appeal from this order, assuming all issues are raised, the Second Circuit will consider whether Defendants abandoned their motion for a new trial, and, if the Second Circuit deems the issue not abandoned, whether there was sufficient evidence at trial to support the jury's award.  The trial scheduled for November 17, 2025 concerns the remaining claims of retaliation under the NYSHRL and NYCHRL against Kaplan, which arise out of the same protected activity that formed the basis for the jury's verdict in favor of Plaintiff on her claims of retaliation against Antonik and NYU.  Dkt. No. 302.  Plaintiff's claims for damages against Kaplan mirror those at issue here—namely, lost wages and lost retirement funds following Plaintiff's end of employment at NYU and employment at Arthritis and Rheumatism Associates.  Dkt. No. 339 at 24–25.  If the Court enters judgment now and the jury finds in favor of Plaintiff at the trial on Kaplan's claims, Defendants would have a right to appeal that

judgment.  The Second Circuit would have to review similar issues arising all out of the same underlying set of claims.  *See Carpenter v. City of New York*, 984 F. Supp. 2d 255, 272 (S.D.N.Y. 2013) (finding entry of judgment not appropriate where "[p]ermitting appeal now would force the Court of Appeals to familiarize itself with the same incident in successive appeals").  This is precisely the circumstance where entry of judgment under Rule 54(b) should be denied.  10 Wright & Miller's Federal Practice & Procedure § 2659 (4th ed. 2025) ("It is uneconomical for an appellate court to review facts on an appeal following a Rule 54(b) certification that it is likely to be required to consider again when another appeal is brought" following adjudication of the remaining claims); *see Novik*, 642 F.3d at 314 (concluding that district court abused its discretion in entering judgment where doing so would require the Circuit to "consider many of the same issues that will need to be considered in any appeal from a final judgment adjudicating Novick's claims").

Plaintiff will suffer no great hardship from denial of partial entry of judgment.  Trial of the Kaplan case is scheduled for mere weeks from now.  Even assuming post-verdict motions, that case should be concluded by the end of the year or shortly thereafter.  *See L-7 Designs, Inc. v. Old Navy, LLC,* 964 F. Supp. 2d 299, 318 (S.D.N.Y. 2013) (declining to enter judgment when trial on the remaining issues is scheduled to begin within five months would not impose hardship or injustice).  By the time the parties had a schedule before the Second Circuit on the issues raised by this opinion, the Kaplan trial would have been concluded.  Instead of meaningfully advancing Plaintiff's receipt of her award, entry of judgment would require the parties to engage in successive appeals on similar issues, creating inefficiency and inhibiting sound judicial administration.

## CONCLUSION

The motion for an order vacating the award of front pay returned by the jury and for a new trial on damages is DENIED as abandoned.  The motion for entry of judgment is DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 310 and 316.

SO ORDERED.

Dated: October 31, 2025
      New York, New York

                                            LEWIS J. LIMAN
                                 United States District Judge