UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

DR. SARI EDELMAN,

                                    Plaintiff,

                                                        Case No.: 1:21-cv-502 (LJL) (GWG)

                -against-

NYU LANGONE HEALTH SYSTEM, NYU
LANGONE HOSPITALS, NYU LANGONE
MEDICAL CENTER, NYU LANGONE NASSAU
RHEUMATOLOGY, NYU SCHOOL OF
MEDICINE, NYU GROSSMAN SCHOOL OF
MEDICINE, NYU HOSPITALS CENTER,
ANDREW T. RUBIN, DAVID KAPLAN, JOSEPH
ANTONIK, and JOSHUA SWIRNOW,

                                    Defendants.

------------------------------------------------------------------X


**PLAINTIFF'S OPPOSITION TO KAPLAN'S MOTION IN LIMINE**


**MILMAN LABUDA LAW GROUP PLLC**
Joseph M. Labuda, Esq.
Jamie S. Felsen, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
joe@mllaborlaw.com
jamie@mllaborlaw.com

*Attorneys for Plaintiff*
*Dr. Sari Edelman*

## ARGUMENT

"The trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *HDI Global Ins. Co. v Kuehne + Nagel, Inc.*, 2024 U.S. Dist. LEXIS 233658 (S.D.N.Y. Dec. 30, 2024) (J. Liman).  As discussed below, each of Kaplan's motions in limine should be denied.

## I.    MOTION NO. 1 — KAPLAN'S MOTION TO EXCLUDE EVIDENCE REGARDING DAMAGES MUST BE DENIED

### A.  Plaintiff is Not Collaterally Estopped from Relitigating Damages

Kaplan's request to exclude any effort to introduce any evidence on or seek any award of damages because there are purportedly no damages left to award Dr. Edelman misstates both the scope of the prior verdict and the law of collateral estoppel.

The Second Circuit vacated the judgment as to Kaplan precisely so a jury could determine his liability and any resulting damages.  Specifically, the Second Circuit, in relevant part "VACATE[D] the District Court's decision granting judgment as a matter of law to Kaplan on Edelman's retaliation claims under the NYSHRL and the NYCHRL, and REMAND for a new trial on those claims." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28 (2d Cir. 2025).  The Second Circuit did not limit the trial to merely determine liability against Kaplan and not damages.  *Id*. Precluding any damages determination would directly contravene the appellate mandate.

Moreover, contrary to Kaplan's argument, Dr. Edelman is not collaterally estopped from seeking damages against Kaplan.

"Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel." *Commissioner v. Sunnen*, 333 U.S. 591, 598, 92 L. Ed. 898, 68 S. Ct. 715 (1948) (emphasis added).  "The doctrine of collateral estoppel precludes a party from relitigating in a subsequent proceeding an issue of law or fact that has already been decided in a

1

prior proceeding." *Burgos v Hopkins*, 14 F.3d 787 (2d Cir. 1994) (emphasis added). Under federal law, "a party is collaterally estopped from relitigating an issue if a four-part test is met: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the <u>party</u> had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Tese-Milner v. TPAC, LLC (In re Ticketplanet.com)*, 313 BR 46 (Bankr. S.D.N.Y. 2004) (emphasis added).[1] As explained below, collateral estoppel does not apply since Edelman has never had the full and fair opportunity to litigate the issue of Kaplan's liability and damages.

More than two (2) years ago, the jury awarded Dr. Edelman $700,000 against the NYU corporate defendants and Antonik. Upon his Rule 50(a) motion, Kaplan was dismissed from the trial before the jury deliberated. Thus, no finding of his liability or damages was ever made concerning Kaplan and Dr. Edelman did not have a full and fair opportunity to litigate her claims against Kaplan. The jury was not asked whether Kaplan retaliated against Dr. Edelman. (In fact, the jury specifically asked why Kaplan was not on the verdict sheet in an apparent sign that it wanted to reach a verdict as to Kaplan). The jury was not asked whether Kaplan caused Dr. Edelman to suffer emotional distress, and if so, the amount. The jury was not asked whether,

---

[1] Although a defendant who was not a party to a prior litigation can assert defensive collateral estoppel if that person was in privity with a party to the prior litigation, this exception does not apply here. Indeed, if Kaplan was in privity with the NYU corporate defendants and Antonik, the Second Circuit would not have remanded the case back to this Court for a trial against Kaplan as he would have already been found liable. A plaintiff asserting claim under NYSHRL and NYCHRL must prove liability and damages with respect to each and every defendant against whom she asserts claims. At the prior trial, Dr. Edelman proved Antonik was liable but did not prove that other individual defendants were liable. Kaplan cites no authority for the proposition that, where, as here, a plaintiff who sues her direct corporate employer and prevails at trial cannot later prevail in a trial and obtain damages in excess of what was obtained at the prior trial against an individual defendant related to facts arising out of the same discrimination where the individual defendant was improperly dismissed in a prior action against the direct corporate employer.

because of Kaplan's retaliatory acts, Dr. Edelman is entitled to entry of judgment against Kaplan for back pay and front pay. The jury was merely asked to determine whether the NYU corporate defendants and Antonik caused Dr. Edelman to suffer emotional distress damages and whether the NYU corporate defendants and Antonik were liable to Dr. Edelman for front pay. Dr. Edelman is not estopped from obtaining damages from Kaplan where the jury was never asked to decide damages that Kaplan caused. *See United States v. Orlofsky*, 538 F. Supp. 450 (S.D.N.Y. 1981) ("because the Government was not a party to the New York State Division of Human Rights determination, they did not have a "full and fair" opportunity to litigate their claims"); *Bauta v. Greyhound Lines, Inc.*, 2019 U.S. Dist. LEXIS 227933 (E.D.N.Y. Jan. 4, 2019) (plaintiff not bound by prior punitive damages awarded to other plaintiffs against defendant for same injury where liability was previously found as against the defendant and the plaintiff entitled to trial on her punitive damages).

Moreover, the jury rendered a verdict at the first trial based on damages that Dr. Edelman suffered due to the retaliation by the NYU corporate defendants and Antonik at the time the evidence was presented to the jury in July 2023. The jury, naturally, was not presented with evidence concerning Dr. Edelman's compensation post July-2023 or evidence concerning her emotional distress after July-2023. Indeed, there was no evidence presented, nor could there be, that since the July 2023 trial, Dr. Edelman's compensation has not increased, that her husband has lost his job twice, that her husband had to file for bankruptcy protection, and that her daughter continued to struggle following the move to Florida. This evidence, which did not exist at the first trial and which relates to back pay and emotional distress damages as these events exacerbated Dr. Edelman's emotional distress, will be presented at Mr. Kaplan's trial. There is no basis to exclude

this evidence nor is there any basis to preclude Dr. Edelman from seeking damages against Kaplan for back pay, front pay, and emotional distress damages.

The fact that the jury concluded that Dr. Edelman did not suffer emotional distress damages due to the retaliation by the corporate NYU defendants and Antonik as of July 2023 when the verdict was rendered does not mean that when a jury is presented with evidence related to Dr. Edelman's emotional distress – which will include additional emotional distress that she has suffered up through a verdict in November 2025 – that the jury will not conclude that Dr. Edelman suffered emotional distress due to Kaplan's retaliation.

Moreover, it is possible that if the jury was rendering a verdict against Kaplan when it rendered its verdict against the NYU corporate defendants and Antonik that the jury would have awarded Dr. Edelman greater damages than it awarded to her due to Kapana's retaliatory conduct.

Kaplan's reliance on *Goldstein v. Cogswell*, 1991 U.S. Dist. LEXIS 4793 (S.D.N.Y. Apr. 11, 1991) for the proposition that a previous determination of total damages associated with harm giving rise to collateral estoppel is distinguishable as the plaintiff in *Goldstein* sought to reassert the *same damages* against the *same defendant* after those issues had been conclusively decided. The case turned on the finality and identity of both the issues and parties.[2]

---

[2] In *Goldstein*, the parties agreed to bifurcate the case and first try their respective breach-of-contract claims first. Although the parties had stipulated to limit the issues at that trial, the defendants asked for damages that encompassed all money received by the defendant during the course of their relationship based on her alleged failure to comply with her fiduciary obligations, as well as an award of consequential damages in the form of out-of-pocket expenses and lost profits attributable to the plaintiff's alleged failure to carry out her responsibilities for the syndication of racehorses and for the preparation and supplying of financial documents needed in order to file tax returns for defendants. The court allowed the jury to consider each of these elements of damages except for lost profits and instructed the jurors on both the obligations of a fiduciary and the specific failings that defendants had sought to prove. The jury found that the plaintiff had been terminated for cause, that defendants had complied with their obligations under the contract, that the plaintiff had breached her contractual obligations, and that defendants should be awarded $85,750.00.

The plaintiff then moved for summary judgment on the defendants' remaining counterclaims for conversion, fraud, rescission, money had and received, accounting and negligence arguing that the jury verdict at the original trial is dispositive of these claims and that defendants are collaterally estopped from litigating them. The defendants argued that the verdict did not address these claims, that the measure of damages for these claims differs from the claims

By contrast, the circumstances here are materially different.  Unlike *Goldstein*, the present case involves Kaplan, <u>who was not a party</u> when the jury returned a verdict at the first trial. Collateral estoppel requires identity of parties or privity, which does not exist here. Kaplan was dismissed before verdict, and the jury made no findings regarding his conduct, intent, or liability. The *Goldstein* court applied estoppel only after the prior proceeding had actually and necessarily determined the quantum of damages attributable to the same wrong by the same actor. Here, the prior verdict did not determine any damages attributable to Kaplan, nor could it, given that the Court granted judgment as a matter of law in his favor before the case went to the jury. There was no factual or legal finding allocating any harm to Kaplan individually.

*Goldstein* rested on the plaintiff having a full and fair opportunity to litigate damages against *the same defendant*. Dr. Edelman never had such an opportunity as to Kaplan—he was dismissed before the jury could render a verdict as to him.

Thus, *Goldstein* – which involved the *same litigants* and a *final adjudication of damages between them*—does not apply.

Accordingly, there must be a full trial on liability and damages.

## B. Dr. Edelman's Damages Claim Should Not Be Reduced to Account for Damages Awarded to Her in the First Trial

Kaplan's alternative argument that Dr. Edelman's damages must be reduced to account for the damages awarded in the first trial must be rejected.  This is absurd as Kaplan wants to use his

---

submitted to the jury and that, in any event, since the parties stipulated to separate trials of the breach-of-contract claims and of the remaining claims, defendants cannot be deprived of a trial on the remaining claims.

The court concluded that the issues presented to the jury were in fact determinative of most of defendants' counterclaims and the jury's findings were preclusive against defendants since defendants had a full and fair opportunity to litigate these issues and there was no circumstance that suggested any unfairness in holding the defendants to the result of the first trial.

improperly decided Rule 50(a) motion as a ceiling on his damages and usurping the role of the jury.

The fact that Dr. Edelman was awarded $700,000 against the NYU corporate defendants and Antonik does not preclude Dr. Edelman from recovering damages from Kaplan. Indeed, if she prevails at trial against Kaplan, Dr. Edelman is entitled to a judgment against Kaplan regardless of the fact that Dr. Edelman has judgments against the NYU corporate defendants and Antonik. Any damages of front pay of $700,000 or less that may be awarded to Dr. Edelman at trial against Kaplan may be joint and several liability with the NYU corporate defendants and Antonik. *See Dodd v City Univ. of NY*, 541 F. Supp. 3d 318 (S.D.N.Y. 2021) (recognizing that courts often impose joint and several liability under NYSHRL and NYCHRL). At the first trial, if the claims against Kaplan were not improperly dismissed and the jury concluded that he was liable for $700,000, then a judgment would have been entered against him just like a judgment was entered against the NYU corporate entities and Antonik. Kaplan cites no legal basis, nor does any exist, that would allow him to escape judgment in any amount. Under Kaplan's preposterous theory, if Kaplan's co-defendants become judgment proof, Dr. Edelman would have no recourse against Kaplan. There is no basis to preclude a judgment from being entered against Kaplan if Dr. Edelman prevails against him.

Nor is there any basis to limit backpay damages based on Dr. Edelman's recovery in the first trial against completely separate defendants – the NYU corporate entities and Antonik. The immutable facts that he ignores is that the jury never rendered any verdict as to liability or damages as to Kaplan. The Second Circuit mandated such a trial and Kaplan may not handicap the appellate order.

Moreover, at the first trial, there was no evidence presented, nor could there be, that since the July 2023 trial, Dr. Edelman's compensation has not increased. This evidence, which did not exist at the first trial and which relates to back pay, will be presented at Mr. Kaplan's trial. There is no basis to exclude this evidence nor is there any basis to preclude Dr. Edelman from seeking damages against Kaplan for back pay.

The fact that Dr. Edelman was not claiming backpay in July 2023 does not preclude her from seeking backpay in November 2025 based on the lack of increases to her income during that time and the substantial increases she received at NYU which she no longer receives in Florida.

Kaplan relies on *Sparaco v. Lawler, Matusky, Skelly Engrs., LLP*, 313 F. Supp. 2d 247 (S.D.N.Y. 2004) to argue that Dr. Edelman's backpay award should be limited by the front pay award in the first trial because the retaliation claim tried in July 2023 is the same as the retaliation claim that will be tried against Kaplan. This argument improperly conflates back pay with front pay.[3] Back pay awards lost wages up through trial and is easily computed whereas by its nature, front pay is not a fixed, precise amount; calculating front pay necessarily implicates predictions and assumptions about the future. *See Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176 (2d Cir. 1992) (acknowledging that front pay awards always involve some degree of speculation and affirming a front pay award to the plaintiff based on evidence that he could have worked for the defendant for seventeen years had he not been terminated.)

Dr. Edelman did not recover any backpay at the first trial against the NYU corporate defendants and Antonik. Indeed, the verdict form did not contain an option for the jury to award

---

[3] *Sparaco* did not involve an employment discrimination claim. In *Sparaco*, the plaintiff settled his contract claim for what the court concluded were his actual damages, so had been fully compensated for his compensable harm as he had gotten everything he was entitled to get under Section 504 of the Copyright Act.

her backpay.  Dr. Edelman is entitled to back pay up through a judgment <u>against Kaplan</u> and Dr. Edelman is entitled to front pay for the period after the entry of judgment against Kaplan.

Moreover, as discussed *supra*, no evidence was introduced at the prior trial concerning Dr. Edelman's income after the first trial as that evidence did not exist at that time.  Therefore, Kaplan's argument must be rejected.

It is not Dr. Edelman's fault that Kaplan moved to dismiss the claims against him prior to the jury rendering a verdict concerning his claims.  Nor is it Dr. Edelman's fault that the retaliation claims against Kaplan were improperly dismissed and then reinstated by the Second Circuit and that a new trial is necessary.  Kaplan risked this outcome – a new trial more than two years later where new evidence could be introduced – when he chose to file a motion to dismiss the claims against him prior to a verdict being rendered against him.  He must now face the result of his decision to file that motion.

In the new trial, the jury may award Dr. Edelman damages against Kaplan and the amount of the damages must be decided by the jury – not by Kaplan.  The verdict in the first trial has absolutely no bearing on limit the amount of damages that Dr. Edelman can recover from Kaplan in the upcoming jury trial.

**C. The Court Previously Denied Defendants' Motion In Limine to Preclude Damages Under Fed. R. Civ. Proc. 37(c)**

On June 30, 2023, this Court denied Defendants' motion to preclude the same damages under Rule 37(c) that Kaplan now seeks to preclude.  Indeed, this Court previously rejected Defendants' argument when it concluded "[t]o the extent Defendants' motion seeks to preclude Plaintiff from offering evidence with respect to the wage differential, back pay and front pay, liquidated damages, and the $50,000 in emotional distress damages, the motion is denied."

*Edelman v NYU Langone Health Sys.*, 2023 U.S. Dist. LEXIS 113626, *9 (S.D.N.Y. June 30, 2023).  This decision is law of the case.

This Court also previously denied the same motion Kaplan asserts seeking to preclude attorneys' fees concluding that "[t]hose are questions for the Court under the statutes invoked, and not the jury. If Plaintiff prevails, Plaintiff may submit a separate application for fees."  *Id*. at fn 4.

In 2023, Dr. Edelman estimated that her emotional distress damages were $50,000.  She as permitted to provide an estimate because emotional distress damages are too nebulous to place a dollar amount on, so precision is not required by a plaintiff.  *Gatti v. Community Action Agency of Greene County, Inc.*, 263 F Supp 2d 496, 512 (N.D.N.Y. 2003) ("emotional distress is not easily quantifiable and can be nebulous and nearly speculative").  Accordingly, the Court did not instruct the jury on any limit for emotional distress damages and Dr. Edelman is not limited to $50,000 in emotional distress damages in the trial against Kaplan.

Moreover, as discussed *supra*, since the last trial, Dr. Edelman's emotional distress has been exacerbated by her husband's loss of jobs which culminated in Dr. Edelman's husband having to file for bankruptcy protection, and Dr. Edelman observing her daughter continuing to struggle following the move to Florida, all of which caused Dr. Edelman to suffer emotional distress.

### D.  Plaintiff Should Not Be Precluded From Referring to Compensation Increases as a Raise

Kaplan does not dispute that Dr. Edelman received compensation increases.  Nevertheless, he seeks to preclude Dr. Edelman from testifying that her compensation increases constituted a "raise" because, according to Kaplan, her compensation increases were the result of negotiations. He argues the term "raise" gives a false impression of a compensation increase that could be expected regularly and that she received compensation increases solely because she negotiated them.

"Raise" is defined as "increase the amount, level, or strength of."  what is the definition of a raise - Google Search.

Kaplan provides no basis for his conclusory assertion that the term "raise" gives a false impression of a compensation increase that could be expected regularly.  Kaplan can attempt to introduce testimony concerning the reason why Dr. Edelman's compensation increased and attempt to convince the jury that she would not have received regular compensation increases. There is no basis to preclude Dr. Edelman from using the term "raise."

## II.    MOTION NO. 2 — EXPERT TESTIMONY

Dr. Edelman will not be calling an expert at Kaplan's trial.

## III.    MOTION NO. 3 — EVIDENCE REGARDING PLAINTIFF'S CHILDREN IS RELEVANT AND ITS EXCLUSION WOULD UNFAIRLY LIMIT DAMAGES PROOF

Dr. Edelman respectfully refers the Court to her motion in limine seeking clarity for questioning of Dr. Edelman consistent with the Court's authority to manage the course of trial and rule in advance on the admissibility of forecasted evidence.  *See* ECF Docket Entry 341.

As explained therein, the Court previously expressly permitted Dr. Edelman to testify about her own emotional distress, including the impact of the non-renewal and the move on herself stating: "The Plaintiff may testify regarding the impact of the non-renewal on herself, e.g., did the move cause her any anxiety, sleeplessness, sorrow, despondency, humiliation, depression, and the like." ECF Docket Entry 342-1 at 46.  In its June 30, 2023 Memorandum & Order, the Court further recognized that "evidence of Plaintiff's background and personal circumstances may be admissible to show her mental state and the impact of the termination on her mental state." *Edelman v NYU Langone Health Sys.*, 2023 U.S. Dist. LEXIS 113626, *25 (S.D.N.Y. June 30, 2023).

As further explained in Dr. Edelman's motion in limine, Courts in this Circuit recognize that a plaintiff's testimony about her particular circumstances—including family and lifestyle facts that compound emotional distress—is relevant and admissible in support of garden variety emotional distress claims. *See Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59 (E.D.N.Y. 2002) (affirming damages where plaintiff's emotional distress was <u>compounded by family disruption</u> and inability to fulfill parental responsibilities); *Olsen v. County of Nassau,* 615 F. Supp. 2d 35 (E.D.N.Y. 2009) (upholding emotional distress awards where plaintiff's testimony described how workplace discrimination caused stress and anxiety that affected her relationships with spouse and children); *Figueroa v. KK Sub II, LLC*, 2019 U.S. Dist. LEXIS 38451 (W.D.N.Y. Mar. 11, 2019) (in determining emotional distress damages, considering financial restraints caused by discriminatory termination that changed plaintiff's living situation and family dynamic); *Caravantes v. 53rd Street Partners, LLC*, No. 09 Civ. 7821, 2012 U.S. Dist. LEXIS 120182 (S.D.N.Y. Aug. 23, 2012) (considering marital problems in determining emotional distress damages in sexual harassment case); *Martino v Chenel Capital, LLC*, 235 AD3d 498 (1st Dept 2025) (concluding that under NYSHRL and NYCHRL, the plaintiff was entitled to emotional distress damages in connection with a relationship strain impacted by the discrimination); *Fink v. City of New York*, 129 F.Supp.2d 511 (E.D.N.Y. 2001) (crediting testimony about sleeplessness, headaches, and marital problems as relevant to the extent and persistence of emotional distress); *Zinaman v. Kingston Reg'l Senior Living Corp.*, 2014 U.S. Dist. LEXIS 8776, at 5-6 (N.D.N.Y. Jan. 23, 2014) (permitting plaintiff to testify to all contributing nuances of her emotional distress, including lifestyle changes resulting from defendant's conduct).

## IV.    MOTION NO. 4 — PATIENT CORRESPONDENCE EVIDENCE IS RELEVANT AND ADMISSABLE

Kaplan moves to exclude patient communications from NYU's patient portal system and text-messages sent to Dr. Edelman by her patients. Kaplan contends these communications are irrelevant, constitute inadmissible hearsay, and violate patient confidentiality. These arguments are without merit. The communications are highly probative of pretext and credibility, are directly relevant to emotional-distress damages, and are admissible under multiple exceptions to the hearsay rule. Any confidentiality concerns can be addressed through redaction and limiting instructions.

Notably, at the first trial, Defendants moved *in limine* to exclude the same evidence, the Court reserved judgment, and when offered at trial, defense counsel said "no objection," resulting in admission. *See* Defendants' Motion in Limine, ECF No. 186, pp. 22-25; June 27 Tr., ECF No. 230, 48:19-21; July 11 Tr. 170:7-15. There is no basis to conclude that this evidence should now be excluded.

The same result—admission with appropriate safeguards—is warranted here.

## I.    Relevance to Pretext and Credibility

The patient communications are directly relevant to pretext under the NYSHRL and NYCHRL and credibility under FRE 401 and 402. Defendants claim their decision not to renew Dr. Edelman's contract was based solely on her alleged excessive ordering of x-rays and blood tests, which they assert was not remediable. Defendants further argue that patient feedback is irrelevant to clinical competence. This misses the mark: Plaintiff does not offer these communications to establish medical expertise, but to provide critical context for the jury's assessment of whether the stated reason for termination was genuine or pretextual.

The patient communications demonstrate a consistent and substantial pattern of patients expressing appreciation for Dr. Edelman's care, a strong desire to continue treatment with her, and distress surrounding her departure. Statements such as, "Can we go to where you are going to? Don't want to lose you as our doctor!!," "I am beyond devastated . . . I am at a loss for words," and "You have been an amazing doctor!" reflect patient loyalty and the absence of complaints regarding Dr. Edelman's clinical practices. Declaration of Jamie Felsen ("Felsen Decl.") Exhibit A (Plaintiff's proposed Exhibit 29), P389, P402, P449. The volume and consistency of positive feedback stand in stark contrast to Defendants' assertion that the non-renewal of Dr. Edelman's contract was warranted because she could not remediate her purported excessive test ordering.

In employment discrimination and retaliation cases, courts routinely admit circumstantial evidence bearing on the credibility of the employer's stated reason for adverse action. *See Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001) (a plaintiff may demonstrate pretext "through either direct or circumstantial evidence"); *Morris v. New York City Health & Hosp. Corp.*, 2018 U.S. Dist. LEXIS 136621, at *32 (E.D.N.Y. Aug. 10, 2018) ("A plaintiff may show pretext by illuminating such weaknesses, implausibilties, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons that would raise doubt in the factfinder's mind that the employer did not act for those reasons.") (internal quotations and citations omitted).

The absence of patient complaints in in the patient communications further undermines NYU's stated rationale and supports Plaintiff's claim that the proffered reason for termination is not credible. The jury is entitled to consider all evidence bearing on motive and credibility, and the exclusion of the patient communications would deprive the jury of necessary context to evaluate NYU and Kaplan's actions.

The probative value of these communications substantially outweighs any potential for prejudice or confusion under FRE 403.

## II.    Relevance of Communications to Damages

The patient communications are also directly relevant to Plaintiff's claim for emotional distress damages under FRE 401 and 402. These messages include numerous unsolicited, contemporaneous expressions from patients lamenting Dr. Edelman's departure, voicing their desire to continue under her care, and conveying the impact of her absence on their well-being. For example, patients wrote, "I'd love to follow you to another location," "you are one of the only doctors that actually listens to me, and follows through on things," "I am devastated and will miss you terribly," and "You literally saved my life". Felsen Decl. Ex. A, P404, P437, P439, P455. These heartfelt statements reflect genuine emotional reactions and underscore the depth of the relationships Dr. Edelman built with her patients.

Dr. Edelman's own contemporaneous responses further illustrate the emotional toll of NYU's actions. In one exchange, she wrote, "I am heartbroken over this . . . I built my practice over two decades. My patients are my [heart emoji]". Felsen Decl. Ex. A, P456. Such statements provide direct, real-time insight into the emotional consequences of Defendants' decision, both from the perspective of Dr. Edelman and her patients.

The emotional distress suffered by Dr. Edelman is grounded in part in the loss of longstanding patient relationships and the disruption of her professional identity. Excluding this evidence would deprive the jury of a critical means to assess the severity and credibility of Plaintiff's emotional distress damages.

### III.    Legal Basis for Admissibility: Hearsay and Business Records

Kaplan's hearsay objections are unfounded, as the patient communications and related text messages are admissible under multiple well-established exceptions to the hearsay rule.

First, many of the patient messages fall squarely within Federal Rule of Evidence 803(3), which permits the introduction of statements reflecting the declarant's then-existing state of mind, emotion, or physical condition. Messages such as those set forth above are classic examples of statements of present emotional condition, admissible to show the impact of Defendants' actions. *See Messer v. Bd. of Educ.*, 2007 U.S. Dist. LEXIS 3055, *23 (E.D.N.Y. Jan. 16, 2007) (admitting medical summary presented to show state of mind, not to prove legitimacy of medical claim under Rule 803(3)).

Second, these communications are admissible to show their effect on the listener—namely, Dr. Edelman. The fact that she received messages expressing distress, loyalty, and appreciation is directly relevant to her emotional state and the damages she claims, regardless of the truth of the underlying statements. Courts have consistently held that out-of-court statements offered to show their effect on the recipient are not hearsay. See *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("a statement offered to show its effect on the listener is not hearsay"). This is particularly pertinent here, where the communications are offered to demonstrate the emotional impact of Defendants' actions on Dr. Edelman, not to prove the truth of any medical diagnosis or opinion.

Third, the patient portal communications are admissible as business records under Federal Rule of Evidence 803(6). The NYU patient portal is maintained in the ordinary course of business, and the communications are recorded contemporaneously as part of NYU's regular medical practice. Importantly, Rule 803(6) does not require that the content be created by an employee; it

requires only that the record be kept in the regular course of business and that the entry be made by someone with knowledge of the event. In *United States v. Komasa*, 767 F.3d 151, 156–58 (2d Cir. 2014), the Second Circuit confirmed that records integrated into a business's regular recordkeeping system—including information transmitted by outsiders—qualify as business records so long as the business relies on and maintains them in the ordinary course. Here, patients are reporting their own experiences and reactions, and NYU's system preserves these communications as part of its standard recordkeeping. The patient communications contain numerous contemporaneous messages from patients expressing their desire to continue care with Dr. Edelman, appreciation for her diagnostic skill, and distress at her departure—statements that are routinely captured and maintained in NYU's patient portal.

To the extent Kaplan argues that the business records exception applies only to the record of receipt and not the content, that position is contrary to both the text of Rule 803(6) and controlling authority. The content is relevant to the patients' state of mind and the effect on Dr. Edelman as the listener, and is not offered for the truth of any medical diagnosis or to establish clinical competence. *See Messer*, 2007 U.S. Dist. LEXIS at *23.

In sum, the patient communications are admissible under Federal Rule of Evidence 803(3) (state of mind), as evidence of effect on listener, and under Rule 803(6) (business records). Any residual hearsay concerns can be addressed through limiting instructions or redaction of identifying information, as appropriate.

## IV.    Patient Confidentiality and HIPAA Concerns

Kaplan's argument that the patient communications should be excluded on the basis of patient confidentiality and HIPAA is unpersuasive. Courts routinely permit the use of patient

communications in litigation, provided that appropriate safeguards—such as redaction of names, contact information, and other personal identifiers—are implemented to protect patient privacy.

HIPAA expressly permits disclosure of patient information in judicial proceedings pursuant to a court order, subpoena, or other lawful process, subject to protective measures. *See* 45 C.F.R. § 164.512(e). Here, the Court may order redaction of all identifying information or entry of a protective order, as courts routinely do in similar cases. Kaplan acknowledges that, should the Court find the communications admissible, redaction is an appropriate remedy.

Moreover, the patients themselves initiated these communications, and their use is confined to the resolution of this dispute, not for public dissemination. Plaintiff will ensure all necessary redactions are made prior to admission.

## V.      Rule 403: Cumulative or Prejudicial

Kaplan's assertion that the patient communications are unduly cumulative or prejudicial under Rule 403 is without merit. The evidence consists of direct, contemporaneous, and varied expressions of patient sentiment and Dr. Edelman's emotional response, each providing unique insight into the impact of her termination.

Courts in employment discrimination and retaliation cases routinely admit similar evidence, recognizing that the probative value of contemporaneous documentary evidence not offered for the truth of the matter, especially when it bears on credibility and emotional impact, substantially outweighs any risk of unfair prejudice or confusion. *See Orsaio v. New York State Dep't of Corr. & Cmty. Supervision*, 2022 U.S. Dist. LEXIS 23646 (N.D.N.Y. Jan. 14, 2022) (denying motion to preclude Plaintiff's second DHR Complaint under Rule 403 where defendant's reaction to its filing was relevant to the issue of retaliatory motive, and any potential prejudice could be cured with a limiting instruction).

Any potential for prejudice or confusion can be mitigated by limiting instructions and redaction of identifying information. The communications are essential to providing the jury with a complete and accurate picture of the circumstances surrounding Dr. Edelman's termination and the resulting harm.

### Conclusion

For the foregoing reasons, Dr. Edelman respectfully requests that the Court deny Kaplan's Motion in Limine to Exclude Patient Communications. The patient communications are highly relevant, admissible under multiple exceptions to the hearsay rule, and can be appropriately redacted to protect patient privacy.  The admission of the patient communications, subject to reasonable safeguards, will allow the jury to fully and fairly assess the issues of pretext, credibility, and emotional distress damages.

## V.    MOTION NO. 5 — EXPLAINING THAT THERE WS A PREVIOUS JUDGMENT IS NECESSARY TO AVOID JURY CONFUSION

Plaintiff opposes Kaplan's Motion in Limine No. 5, which seeks to exclude all references to the prior judgment against the NYU corporate defendants and Antonik at the previous trial. Blanket exclusion is unwarranted. Limited reference to the prior judgment is necessary to provide the jury with essential procedural context to prevent prejudice to Dr. Edelman and jury confusion. A clear limiting instruction clarifying that the prior judgment is not evidence of Kaplan's liability and is offered solely for context can be issued.

Federal Rule of Evidence 402 permits admission of relevant evidence—i.e., evidence that has any tendency to make a fact of consequence more or less probable. Rule 403 allows exclusion of relevant evidence only if its probative value is substantially outweighed by a danger of unfair prejudice, confusion, or misleading the jury. Courts in this Circuit recognize that limited references to prior judgments may be admissible for contextual purposes, provided they are not used to prove

liability by association and the risk of prejudice is managed through appropriate instructions. *See City of Almaty v. Ablyazov*, 2022 U.S. Dist. LEXIS 205693, at \*11-\*12 (denying motion to exclude references to prior judgments and findings from other judicial proceedings against other defendants where the judgments were relevant to various issues at trial, their existence would not be admitted for the truth of the findings, and any prejudice could be resolved by appropriate limiting order explaining the purpose for which the evidence was being offered).

In this case, limited reference to the prior judgment is relevant to provide the jury with essential context regarding the procedural posture of this case, the sequence of events, and the environment in which the alleged retaliation occurred. The jury must evaluate Kaplan's conduct within the broader circumstances at NYU, and understanding that other defendants were previously found liable for similar conduct clarifies the interconnected nature of the allegations and why only Kaplan is now on trial.[4] This context helps prevent confusion and potential prejudice to Dr. Edelman about the scope of the proceedings and the absence of other parties, enabling the jury to accurately assess motive, intent, and causation. At a minimum, the jury must be informed that there was a previous trial against NYU and Antonik but due to legal issues Kaplan was not tried at that time necessitating the need for the instant trial.

Any risk of unfair prejudice or jury confusion from referencing the prior judgment can be effectively addressed by a clear limiting instruction. The Court can instruct the jury that the prior judgment is not evidence of Kaplan's liability and must not be considered for that purpose,

---

[4] Kaplan's current bid to exclude all reference is also at odds with his own earlier proposed instructions, which contemplated telling the jury to "assume that NYU as an employer retaliated against Dr. Edelman" for purposes of the individual-liability charge—implicitly recognizing the need for context to avoid confusion. *See* Felsen Decl. Exhibit B (Defendant's Proposed Draft Jury Instructions), at §2.1E ('Individual Liability') (language instructing the jury to assume NYU retaliated).

ensuring the jury evaluates Kaplan's conduct independently and solely on the evidence presented at trial. Excluding all reference risks confusion about the scope of the proceedings and the absence of other parties, while limited reference with a clear instruction promotes transparency and procedural clarity without unfair prejudice.

**Conclusion**

Plaintiff respectfully requests that the Court deny Kaplan's Motion in Limine No. 5 to the extent it seeks a blanket exclusion of any reference to the prior judgment. Allowing limited reference with proper instructions is consistent with the Federal Rules of Evidence and established case law, ensuring a fair and transparent trial.

## VI.    MOTION NO. 6 — THERE SHOULD BE NO LIMIT ON EVIDENCE RELATED TO RETALIATORY ACTS

Plaintiff opposes Kaplan's Motion in Limine No. 6, which seeks to limit the scope of the retaliation claims and the admissible evidence at trial. Defendant contends that, under the Second Circuit's remand order, only Kaplan's intent and participation in the nonrenewal of Dr. Edelman's contract may be litigated, and that all other evidence or argument is foreclosed. This interpretation is unduly restrictive and unsupported by the mandate.

The Mandate Order states the case is "REMANDED for further proceedings consistent with this Court's opinion." ECF Docket Entry 311-3.

As explained above, in its decision, the Second Circuit, in relevant part "VACATE[D] the District Court's decision granting judgment as a matter of law to Kaplan on Edelman's retaliation claims under the NYSHRL and the NYCHRL, and REMAND[ED] for a new trial on those claims." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28 (2d Cir. 2025). Kaplan relies upon the Second Circuit's conclusion that "there was sufficient evidence in the record for a reasonable jury to conclude that Kaplan had retaliatory intent and that he participated in the nonrenewal of Edelman's

contract" (*Id.* at 53) to argue that Dr. Edelman is limited to introducing evidence of non-renewal of Dr. Edelman's contract as the only adverse action taken against Dr. Edelman.

However, when this Court granted judgment as a matter of law for Kaplan, it stated "there is insufficient evidence in the record for a reasonable jury to conclude that Kaplan had any retaliatory intent or that he had *any* involvement in any adverse action." *Id.* at 53 (emphasis added). This Court did not limit the type of adverse actions that Dr. Edelman attempted to establish.

In analyzing the factors necessary to establish a retaliation claim, the Second Circuit concluded "[t]here is no dispute that Edelman was subjected to an adverse employment action when her employment was terminated by the failure to renew her contract."  The Second Circuit merely focused on the most obvious adverse action – non-renewal of Dr. Edelman's contract to conclude that Dr. Edelman satisfied the adverse action element of a prima facie retaliation claim. The fact that the Second Circuit did not address any other adverse actions does not mandate preclusion of evidence of additional adverse actions.

Accordingly, Dr. Edelman must not be precluded from offering evidence concerning adverse actions other than the non-renewal of her contract.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Kaplan's Motions in Limine Nos. 1 through 6 in their entirety and permit the evidence to be evaluated in the context of trial, with appropriate limiting instructions as necessary.

Dated: Lake Success, NY
      October 31, 2025

                         Respectfully submitted,

                         **MILMAN LABUDA LAW GROUP PLLC**

                         /s/ Joseph M. Labuda
                         Joseph M. Labuda, Esq.

Jamie S. Felsen, Esq.
Colleen O'Neil, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042