# EXHIBIT B

# D'S DRAFT JURY INSTRUCTIONS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DR. SARI EDELMAN,

              Plaintiff,

    – against –                         Case No.: 1:21-cv-502 (LJL)

~~NYU LANGONE HEALTH SYSTEM, NYU LANGONE HOSPITALS, NYU LANGONE MEDICAL CENTER, NYU LANGONE NASSAU RHEUMATOLOGY, NYU SCHOOL OF MEDICINE, NYU GROSSMAN SCHOOL OF MEDICINE, NYU HOSPITALS CENTER, ANDREW T. RUBIN,~~ DAVID KAPLAN, ~~JOSEPH ANTONIK, and JOSHUA SWIRNOW~~,

              Defendants.

**PROPOSED ~~DRAFT~~ JURY INSTRUCTIONS**

## **INTRODUCTION**

Members of the jury, you have now heard all of the evidence as to the claim by the Plaintiff, Sari Edelman, against the Defendant, David Kaplan.  Throughout the trial you will hear testimony regarding Plaintiff's former employer, which was NYU Grossman School of Medicine, which I will refer to from now on as "NYU" for short.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.  We are near the point where you will undertake your vital function as jurors of deliberating.  Now that the lawyers have made their closing arguments, I am going to instruct you about the law that governs the case.  There are two parts to these instructions:

*First*, I will provide you with some general instructions about your role and about how you are to decide the facts of the case.  These instructions would apply to just about any trial.

*Second*, I will give some specific instructions about the legal rules applicable to this particular case.

Then I will give you some final instructions before you begin your deliberations.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and that you concentrate.  I ask you for patient cooperation and attention.  You will notice that I am reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So when I tell you the law, it's critical that I use exactly the right words.

You will have copies of what I am reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.

1

I will also be distributing to you a verdict form in which to record your verdict. It will list the questions that you should consider, in the order you should consider them.

002528\5\180181890.v1

1. **GENERAL INSTRUCTIONS**

   *1.1. Role of the Court*

   I will now instruct you on the law.  It is my duty to do that, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.  It is your duty to accept my instructions on the law and to apply them to the facts as you determine them.

   On these legal matters, you must take the law as I give it to you.  You must not substitute your own notions or opinions of what the law is or ought to be.  You should not, any of you, be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law may be—or should be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

   If any attorney states or has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You should not single out any particular instruction alone as stating the law, and you should consider my instructions as a whole when you retire to deliberate in the jury room.

   You are not to infer from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case.  Any questions I asked were designed to make sure that the testimony was clear and to avoid confusion.  You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

3

### *1.2. Role of the Jury*

As members of the jury, you are the sole and exclusive judges of the facts. You pass judgment upon the evidence. You determine the credibility of the witnesses. You resolve any conflicts there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or other facts not in evidence to the other jurors during deliberations. You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or matters outside the case.

4

### *1.3. Role of Counsel / Objections and Sidebars*

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Therefore, you should draw no inference from the fact that an attorney objected to any evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

From time to time, the lawyers and I had conferences at sidebar, out of your hearing. These conferences involved procedural and other matters. None of the events relating to these conferences should enter into your deliberations at all.

Similarly, the personalities and the conduct of counsel in the courtroom are not in any way in issue. If you formed reactions of any kind to any of the lawyers, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

002528\5\180181890.v1

***1.4. Juror Oath / Sympathy or Bias***

I know you will try the issues that have been presented to you according to the oath that you have taken as jurors in which you promised that you would well and truly try the issues joined in this case and render a true verdict. If you follow that oath, and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict.

You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or any witness, or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community, and of equal worth. Both parties are entitled to the same fair trial at your hands. Both parties stand equal before the law, and are to be dealt with as equals in this Court.

002528\5\180181890.v1

***1.5. All Persons Equal Before the Law***

As noted, in reaching your verdict, you must remember that all parties stand equal before the law, and are to be dealt with as equals in this Court. The mere fact that some of the parties in this case are corporations does not mean they are entitled to any lesser consideration by you. All litigants are equal before the law. This means you must treat Sari Edelman and David Kaplan as equal under the law.

7

*1.6. Burden of Proof*

Because this is a civil case, the preponderance of the evidence standard applies to all disputed issues. Some of you may have heard of "proof beyond a reasonable doubt," which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this one, and you should put it out of your mind.

What does a "preponderance of the evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all the witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have offered or produced them.

If, after considering all of the testimony, you are satisfied that the Plaintiff, the party with the burden of proof, has carried her burden on each essential point of the claim where she bears the burden of proof, then you must find in the Plaintiff's favor on that claim. If, after such consideration, you find that the evidence produced by the Plaintiff is outweighed by the evidence against the Plaintiff's position, or that the credible evidence on a given issue is evenly divided between the parties—that it is as equally probable that one side is right as it is that the other side is right—then you must decide that issue against the Plaintiff. That is because the Plaintiff bears the burden of proof, and she must prove more than simple equality of evidence—she must prove the element by a preponderance of the evidence. On the other hand, the Plaintiff need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of

8

the Plaintiff—that what she claims is more likely true than not—then that element will have been

proven by a preponderance of the evidence.

002528\5\180181890.v1

### *1.7. What Is and Is Not Evidence*

I want to take a moment to describe to you what is and is not evidence in this case. As I have said, you may rely only on the evidence in your deliberations. The evidence in this case is the sworn testimony of the witnesses and the exhibits received in evidence. On the other hand, certain things are not evidence.

First, I will describe a list of examples of things that are not evidence:

A question by a lawyer is not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Similarly, arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said in their opening statements and in their closing statements was intended to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

Any dollar figure suggested by Plaintiff's counsel as appropriate relief in this case is only a comment on the evidence or a suggestion. Such a suggestion is not evidence, and you are free to disregard it.

Statements that I may have made concerning the evidence do not constitute evidence.

Testimony that has been stricken or excluded or that I have asked you to disregard is not evidence, and it may not be considered by you in rendering your verdict.

Anything you may have seen or heard outside the courtroom is not evidence.

10

Now, I will provide you with some things that you may consider as evidence.  As I have said, evidence may come in several forms:

The sworn testimony of witnesses, regardless of who called them, is evidence.  This is true of the witnesses' answers on both direct and cross-examination.  However, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given.

The exhibits that were admitted during the trial, regardless of who may have presented them, are evidence.

11

### *1.8. Direct and Circumstantial Evidence*

Generally, as I told you in my initial instructions, there are two types of evidence that you may consider in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses—something he or she has seen, felt, touched or heard. For example, if a witness testified that when she left her house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. To restate the example I gave you earlier this week, assume that when you came into the courthouse this morning, the sun was shining, and it was a nice day. Assume that the courtroom blinds were drawn, and you could not look outside. As you were sitting here, someone walked in with an umbrella, which was dripping wet. Then a few minutes later, another person entered with a wet raincoat. Now, you cannot look outside of the courtroom, and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact. Many facts, such as a person's state of mind, are rarely susceptible to proof by direct evidence. Usually, such facts are established by circumstantial evidence. Where circumstantial evidence is presented, it is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

12

For certain defenses and issues in this case, the Defendants have the burden of proof. I will explain those later in my instructions.

### 1.9. Inferences

During the trial, you may have heard the parties use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that you know exists.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. Plaintiff asks you to draw one set of inferences, while the Defendants ask you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience.

13

### 1.10.    *Witness Credibility*

You have had the opportunity to observe the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judge of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies?  You watched each witness testify.  Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did he or she appear to be frank, forthright, and candid?  Or was the witness evasive and edgy, as if hiding something?  How did the witness appear?  What was his or her demeanor— that is, the witness's carriage, behavior, bearing, manner and appearance while testifying?  Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which the witness testified, the accuracy of his or her memory, his or her candor or lack of candor, the witness's intelligence, the reasonableness and probability of the witness's testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

14

In other words, what you must try to do in deciding credibility is to size a witness up in light of the witness's demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

If you find that any witness has willfully testified falsely as to any material fact—that is, as to an important matter—the law permits you to disregard the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything. However, you are not required to consider such a witness as totally "unbelievable." You may accept so much of the witness's testimony as you deem true and disregard what you feel is false. By the processes which I have just described, you, as the sole judges of the facts, decide which of the witnesses you will believe, what portion of each witness's testimony you accept, and what weight you will give to it.

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness.

Evidence of a prior inconsistent statement was placed before you not because it is itself evidence of the Plaintiff's claim or defenses to the claim, but only for the purpose of helping you decide whether to believe the trial testimony of a witness who may have contradicted a prior statement. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an

15

important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all, or part of, the witness's testimony.

16

### *1.11.        Preparation of Witnesses*

You have heard evidence during the trial that certain witnesses discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.  Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.  In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

17

### 1.12.     *Interested Witnesses*

In deciding whether to believe a witness, you should take into account any evidence that shows that a witness may benefit in some way from the outcome of the case, such as a financial interest. Likewise, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. You should also consider any other interest or motive that the witness may have in cooperating with a particular party.

For example, in this case, the plaintiff, Sari Edelman, and defendant, David Kaplan testified before you. As parties to this action, they are, by definition, interested witnesses.

It is your duty to consider whether each witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

An interested witness is not necessarily less believable than a disinterested witness. The mere fact that a witness is interested in the outcome of the case does not mean the witness has not told the truth. It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned, whether the possible interest of any witness, or of any party, has intentionally or otherwise colored or distorted his or her testimony. You are not required to believe an interested witness; you may accept as much of the witness's testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

18

002528\5\180181890.v1

**2.  <u>SUBSTANTIVE INSTRUCTIONS</u>**

       With these instructions in mind, let us turn to the substantive law to be applied in this case.

In this case, Dr. Edelman asserts that David Kaplan retaliated against her because she complained

to NYU Human Resources about the way Mr. Kaplan spoke to her and made certain gestures.

       Dr. Edelman has the burden of proving this claim.  Mr. Kaplan denies that claim and asserts

that, at all times, he treated Dr. Edelman in accordance with the law.   Specifically, Mr.Kaplan

asserts that he was motivated only by legitimate non-retaliatory business reasons.

       I will explain the law that you are to apply with respect to her retaliation claim.

**2.1. *New York State Human Rights Law Retaliation Claim***

Dr. Edelman has brought a retaliation claim under the New York State Human Rights Law against David Kaplan. The State Human Rights Law prohibits employers from retaliating against an employee for the employee's opposition to unlawful discrimination.

In order to prove her retaliation claim under the State Human Rights Law, Dr. Edelman must prove each of the following four elements by a preponderance of the evidence:

1. that she engaged in a "protected activity," such as making a good faith complaint about unlawful discrimination;

2. that the "protected activity" Dr. Edelman engaged in was known to the Defendant;

3. that she suffered a "material adverse action;" and

4. that Defendant took the material adverse action because of Dr. Edelman's "protected activity."

I will now instruct you on each element.

**A. First Element: Protected Activity**

The first element of a retaliation claim under the State Human Rights Law is that the activity Plaintiff engaged in that resulted in retaliation against her was an activity protected by law.

In determining whether Defendant unlawfully retaliated against Plaintiff for making a complaint to Human Resources about the alleged discriminatory conduct by Mr. Kaplan, you must first decide whether Plaintiff engaged in protected activity. A "protected activity" includes the opposition of any unlawful employment practice or the participation in a legal proceeding against the Defendant.

Plaintiff's complaint to Human Resources would only be considered protected activity if she made her complaint concerning conduct that a reasonable person would have considered

20

discriminatory based on her sex.  Plaintiff must prove that she had a good faith, reasonable belief that NYU's conduct violated the laws forbidding gender discrimination.

To prove that she engaged in protected activity, Plaintiff need not establish that she was correct in her complaints or that there was indeed discrimination.  She need only show that she had a good faith, reasonable belief that the challenged actions by her employer violated the law.

You must decide whether Plaintiff reported Mr. Kaplan's alleged statements and alleged gestures to Human Resources in good faith or whether she did so to extract a benefit from NYU. If you find that Plaintiff did not report her alleged discrimination claims to Human Resources in good faith you must find for Defendant.

~~The standard for protected activity is the same as under Title VII and my instructions to you with respect to that element under Title VII also apply here.~~ An employee has a right to report and protest workplace discrimination where such discrimination has actually occurred, or where the employee reasonably believes in good faith that discrimination occurred.

"Protected activity" includes an employee's conduct in opposing in good faith unlawful discrimination by complaining about discrimination to the employer.

**B.  Second Element: Knowledge of Protected Activity**

The second element of a retaliation claim under the State Human Rights Law is that the Defendant whose conduct you are considering must have known that Dr. Edelman was engaging in protected activity.  ~~With respect to NYU, I instruct you that general corporate knowledge that Dr. Edelman engaged in a protected activity is sufficient to establish this element of a retaliation claim under the State Human Rights Law.  Thus, with respect to NYU, my instructions as to Title VII also apply here.~~ If you find that Plaintiff has proven the first element of her claim, you must also determine whether Mr. Kaplan knew that Dr. Edelman was engaged in protected

21

activity. ~~I direct you to also find that Plaintiff has satisfied the second element as to the NYU defendants.~~

**C.    Third Element: Material Adverse Action**

The third element of a retaliation claim under the State Human Rights Law is that Plaintiff suffered a material adverse action.  Here, Plaintiff contends that Defendant~~s~~ engaged in material adverse actions when NYU did not renew her employment agreement when it expired.  I instruct you that the non-renewal of Plaintiff's employment agreement is a material adverse action by NYU.  If you find that the ~~Individual~~ Defendant~~s , at issue—Mr. Rubin, Mr. Antonik, or Mr. Swirnow—~~ aided or abetted that decision, in that ~~he~~they actually participated in the decision to not renew Plaintiff's contract even if ~~t~~hey did not have hiring or firing authority, you should find in favor of the Plaintiff as to this element with respect to ~~that Defendant as well~~him.

**~~D.~~C.    Fourth Element: Retaliatory Motive**

The fourth element of retaliation under the State Human Rights Law that Plaintiff must prove by a preponderance of the evidence is that a material adverse action was taken against her because of her protected activity as I have defined that term.  For example, proximity in time between an employee's protected activity and an employer's alleged retaliation may, although does not necessarily, establish a causal link between the two.

In considering whether Plaintiff has proved that a material adverse action was taken against her because of protected activity she had engaged in, you must first decide whether Mr. Kaplan ~~the Defendant you are considering~~ was in fact motivated by a desire to retaliate against her because of her complaints to Human Resources.  If not, you must find in favor of Mr. Kaplan~~that Defendant~~.

~~Like under Title VII, NYU's retaliatory intent may be imputed from a subordinate under New York State Human Rights Law if NYU's decision to terminate was proximately caused by a~~

22

~~subordinate who had a retaliatory motive and intended to bring about the adverse employment action. The same standard applies here as under Title VII. NYU must have been negligent or reckless in giving effect to the retaliatory intent of its low-level employees, which requires NYU to have known or reasonably should have known about the retaliatory motivation. Again, you must also find that the false accusations themselves were the product of retaliatory intent.~~

~~Like under Title VII, an employer may not be held liable simply because it acts on information provided by a biased co-worker. Thus, if NYU, non-negligently and in good faith, relies on a false and malign report of an employee who acted out of an unlawful animus, it cannot be held accountable for or said to have been motivated by the employee's animus.~~

If you conclude that a Defendant was motivated by a desire to retaliate against Plaintiff for having engaged in protected activity, you must next consider whether that Defendant also had a non-retaliatory reason for the adverse action. If you decide that the Defendant had no non-retaliatory motive for the adverse action, and that the adverse action was solely motivated by retaliatory animus, then you must find for Plaintiff on this element as to ~~that~~ Defendant.

However, if a Defendant had both retaliatory and non-retaliatory motives for taking the adverse action against Plaintiff, then you must consider whether the retaliatory motive was the "but for" cause of the material adverse action taken against Plaintiff. In other words, you must consider whether the Defendant would have taken the adverse action against Plaintiff absent the retaliatory motive. If ~~a~~ Defendant would not have taken the material adverse action against Plaintiff absent a desire to retaliate against her for having engaged in protected activity, then retaliatory animus is the "but for" cause for the adverse action taken against Plaintiff, and you will find in her favor on this element. If, on the other hand, you decide that ~~that a~~ Defendant would have taken the material adverse action against Plaintiff even absent his ~~or its~~ retaliatory intent, or

if ~~that~~ Defendant had no retaliatory motive at all, then you must find for ~~that~~ Defendant on this claim.

When you consider the question of retaliatory motive, you are to decide whether the non-retaliatory reasons advanced by ~~a~~ Defendant were the actual reasons for the Defendant's actions. An employer or supervisor is entitled to make decisions for good reasons, bad reasons, or for no reason at all, so long as the decision is not motivated by unlawful retaliation. The issue in this case is not whether you would have taken any of the alleged adverse actions against Plaintiff if you were in charge. Rather, you are to determine whether ~~the~~ Defendant ~~you are considering~~ took the alleged adverse actions against Plaintiff because of non-retaliatory reasons, or because of her protected activity.

If you believe that the reasons offered by ~~a~~ Defendant for adverse actions taken against Plaintiff are false, you may infer that ~~that~~ Defendant acted out of a desire to retaliate against her. Here, temporal proximity, without more, is insufficient to satisfy the plaintiff's burden to bring forward some evidence of pretext. However, if you find that the reasons given by ~~a~~ Defendant for the alleged adverse actions are false, that does not necessarily mean that the true motive was the illegal, retaliatory motive argued by Plaintiff.

In determining whether Dr. Edelman has carried her burden of proving retaliatory intent, you will consider all the facts and circumstances that your common sense and good judgment tell you are relevant to deciding why someone acted as they did. The central question is whether the Defendant~~s~~ took the alleged adverse actions against Dr. Edelman at least in part because she engaged in a protected activity, and the burden is on Dr. Edelman to prove that.

**~~E.~~D.    Individual Liability**

24

002528\5\180181890.v1

~~Unlike her Title VII claim,~~ Plaintiff ~~also~~ seeks to hold ~~three of the Individual Defendants~~ ~~Mr. Rubin, Mr. Antonik, or~~ Mr. Kaplan~~Swirnow~~ liable for retaliation under New York State Human Rights Law.  Although New York State Human Rights Law does not allow employees to be liable as employers, you may find <u>a</u> ~~these~~ particular employee<u>s</u> nonetheless individually liable under an aiding and abetting theory to an employer who has retaliated in violation of New York State Human Rights Law. <u>Thus, for prupeses of this claim, I am instructing you to assume that NYU as an employer retaliated against Dr. Edelman.</u> ~~Therefore, to find that these individual defendants aided and abetted such a violation, you must first find that the employer, NYU, violated New York State Human Rights Law.  An individual defendant cannot aid and abet his own retaliatory conduct; he may only aid and abet another's violation of the law.  You may, however, find aiding and abetting liability based on the same conduct that serves as the predicate for NYU's liability, as long as you have found that NYU engaged in retaliatory conduct.~~  If you find that the ~~Individual~~ Defendant~~s~~ actually participated in the decision to not renew Plaintiff's contract and to terminate her employment, then you may find ~~them~~ <u>him</u> liable under an aider-and-abettor theory, even if <u>he</u>~~they~~ did not have hiring or firing authority.  Furthermore, you must also find that ~~they~~ <u>he</u> possessed <u>a</u> ~~the same~~ retaliatory motive or intent ~~as the employer~~.  In other words, <u>he</u>~~they~~ must have engaged in direct and purposeful participation in the retaliation.

25

### 2.2. *New York City Human Rights Law Retaliation Claim*

Plaintiff also asserts a retaliation claim under the New York City Human Rights Law against ~~NYU and three Individual Defendants—again, Mr. Rubin, Mr. Antonik, and Mr. Swirnow~~Mr. Kaplan.  The elements of a retaliation claim under the City Human Rights Law are similar to those under the State Human Rights Law, but there are some important differences, which I will explain.

To prevail on her retaliation claim under the City Human Rights Law, Plaintiff must prove each of the following four elements by a preponderance of the evidence:

1. that she engaged in protected activity, such as making a complaint to her employer about unlawful discrimination;

2. that the protected activity Plaintiff engaged in was known to the defendant ~~you are considering~~;

3. that the defendant ~~you are considering~~ engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity; and

4. that the defendant's conduct was motivated, at least in part, by Plaintiff's protected activity.

#### A. First Element: Protected Activity

In deciding whether Plaintiff engaged in protected activity under the City Human Rights Law, the instructions regarding protected activity set forth in connection with Plaintiff's State Human Rights Law retaliation claim apply with equal force.

#### B. Second Element: Knowledge of Protected Activity

In deciding whether Plaintiff has proved that the Defendant~~s wa~~sere aware that she had engaged in protected activity, the instructions on this issue given in connection with Plaintiff's

26

State Human Rights Law retaliation claim appl~~ies~~y with equal force to her City Human Rights Law retaliation claim.

### C.  Third Element: Conduct Reasonably Likely to Deter

The third element of a retaliation claim under the City Human Rights Law is that the Defendant ~~you are considering~~ engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity.  Here, Plaintiff contends that the non-renewal of her contract was reasonably likely to deter a person from engaging in protected activity.  In contrast ~~to Title VII and~~ New York State Human Rights Law, to constitute retaliatory conduct under the City Human Rights Law, a Defendant's conduct need not have resulted in an ultimate action with respect to Plaintiff's employment, or in a materially adverse change in the terms and conditions of her employment.  Instead, you need only find that the conduct at issue was reasonably likely to deter a person from engaging in protected activity.

The standard here is more lenient than that for a materially adverse action under New York State Human Rights law. I instruct you that the non-renewal of Plaintiff's employment agreement is conduct reasonably likely to deter by NYU.  If you find that ~~the Individual~~ Defendant~~s at issue — Mr. Rubin, Mr. Antonik, or Mr. Swirnow —~~ actually retaliated against Plaintiff or aided or abetted such retaliation, you should find in favor of the Plaintiff as to this element with respect to ~~that~~ Defendant ~~as well~~.

### D.  Fourth Element: Retaliatory Motive

The fourth element of retaliation under the City Human Rights Law that Plaintiff must prove by a preponderance of the evidence to succeed on her claim against ~~a particular~~ Defendant is that the desire of ~~that~~ Defendant to retaliate against her for engaging in a protected activity was a motivating factor in ~~that~~ Defendant's decision to engage in conduct that was reasonably likely to

deter a person from engaging in protected activity.  Plaintiff contends that ~~Mr. Rubin, Mr. Antonik,~~ Mr. Kaplan ~~Swirnow,~~ and NYU took action against her because she protested alleged discrimination by ~~Mr. Antonik and~~ Mr. Kaplan.  Defendant~~s, all~~ claim~~s~~ that the actions at issue were taken because of ~~their~~ legitimate concerns about Plaintiff's job performance and her alleged failure to meet NYU's clinical standards for rheumatology practice.

In order to carry her burden as to this element, Plaintiff need not establish that her protected activity was the sole or principal reason for any action that ~~the particular~~ Defendant allegedly ~~you are considering~~ took against her.  The City Human Rights Law is violated when retaliatory intent is a motivating factor for a Defendant's action, whether or not that retaliatory motive was the sole cause for the action.  If Plaintiff proves that ~~the Defendant~~Mr. Kaplan ~~you are considering~~ had a retaliatory motive for any action that he ~~or it~~ took against her that would be reasonably likely to deter a person from engaging in protected activity, this element is satisfied.  Plaintiff may show either that the individual or entity that made the decision to take such action was motivated in part by a desire to retaliate against her, or that an individual who was substantially motivated by retaliatory intent played a meaningful role in the decision.

The instructions I gave you in connection with Plaintiff's retaliation claim under the State Human Rights Law regarding non-retaliatory reasons apply with equal force to her retaliation claim under the City Human Rights Law.  ~~The instructions I have given with respect to imputing retaliatory intent based upon a subordinate with retaliatory motive, and NYU's negligence or recklessness in giving effect to that intent, also apply here.~~

### E. Affirmative Defense

If you find that Plaintiff has proved all the elements of her retaliation claim under the City Human Rights Law, you must then decide whether ~~the~~ Defendant ~~you are considering~~ has proved by a preponderance of the evidence that the action taken against Plaintiff would have been taken on the basis of non-retaliatory reasons alone.  Defendant~~s~~ here claim~~s~~ that any action taken against Plaintiff that was reasonably likely to deter a person from engaging in protected activity was taken for a non-retaliatory reason.

In deciding whether ~~the~~ Defendant ~~you are considering~~ has satisfied his ~~or its~~ burden on this issue, follow these steps:  Consider whether ~~the~~ Defendant has proved that the decision to take an action against Plaintiff that was reasonably likely to deter a person from engaging in protected activity was motivated by a non-retaliatory reason in addition to a retaliatory motive.  If you find that ~~the~~ Defendant ~~you are considering~~ was not motivated by any non-retaliatory reason, you must find for Plaintiff.  If, however, you find that ~~the~~ Defendant had non-retaliatory reasons for his ~~or its~~ action~~s~~, you must determine whether ~~the~~ Defendant has proved that he ~~or it~~ would have taken this action against Plaintiff based upon these non-retaliatory reasons alone.

### ~~F.~~E.     Individual Liability

Like her State Human Rights Law claim, Plaintiff also seeks to hold ~~three Individual Defendants—Mr. Rubin, Mr. Antonik, or~~ Mr. Kaplan~~Swirnow—~~ liable for retaliation under City Human Rights Law.  Unlike State Human Rights Law, however, you may find Mr. Kaplan ~~those employees~~ individually liable, both under a direct liability theory and an aiding and abetting theory.  The standards for an aiding and abetting theory are the same as those under State Human Rights Law.  The instructions that I gave you with respect to aiding and abetting under the State Human Rights Law also apply under the City Human Rights Law.  Therefore, to find ~~that the Individual~~

29

<u>that</u> Defendant~~s~~ aided and abetted retaliation, you must first find that the employer, NYU, retaliated in violation of City Human Rights Law. <u>For purposes of this charge, I am instructing you to assume that NYU retaliated against Dr. Edelman.</u> ~~You may find aiding and abetting liability based on the same conduct that serves as the predicate for NYU's liability, as long as you have found that NYU engaged in retaliatory conduct.~~  Again, if you find that ~~the Individual~~ Defendant~~s~~ actually participated in the decision to not renew Plaintiff's contract, then you may find ~~them~~ <u>him</u> liable under an aider-and-abettor theory, even if ~~he~~<u>they</u> did not have hiring or firing authority. Furthermore, you must also find that ~~they~~ <u>he</u> possessed <u>a</u> ~~the same~~ retaliatory motive or intent ~~as the employer~~.  In other words, ~~they~~<u>Mr. Kaplan –</u> must have engaged in direct and purposeful participation in the retaliation.  But in addition to an aiding-and-abetting theory, you may also find ~~the Individual~~ Defendant directly liable for retaliation under New York City Human Rights Law, without regard to whether ~~he~~<u>they</u> qualify as an employer or supervisor, and without regard to whether NYU has itself retaliated against Plaintiff, if you find that ~~the Individual~~ Defendant has retaliated against Plaintiff for her engagement in protected activity.

~~*2.3. New York City Human Rights Law Discrimination Claim*~~

~~Plaintiff brings a gender discrimination claim against Mr. Antonik and NYU under the New York City Human Rights Law based on certain remarks made to her by Mr. Antonik.  Under the City Human Rights Law, it is unlawful for an employer to discriminate against an employee because of gender.  It is sufficient to show that she suffered any adverse, differential, or unequal treatment at least in part based on her gender; Plaintiff does not need to identify a man who was treated more favorably.  Even a single comment, if made in circumstances where the comment would signal views about the role of women in the workplace, may be sufficient to give rise to a claim of gender discrimination.~~

002528\5\180181890.v1

~~To prove her gender discrimination claim under the City Human Rights Law, Plaintiff must prove by a preponderance of the evidence that she has been treated "less well" than other employees because of her gender. In determining whether a Defendant discriminated against Dr. Edelman because of her gender, you should consider the totality of the circumstances; that is, the overall context in which the disputed conduct occurred.~~

~~In evaluating whether Mr. Antonik's conduct was motivated at least in part by Plaintiff's gender, Plaintiff need only show that her gender was a motivating factor behind Mr. Antonik's conduct. It need not be the sole motivating factor. A motivating factor is a factor that made a difference or played a part in a decision. Stated another way, Plaintiff must prove by a preponderance of the evidence a causal connection between her gender and Mr. Antonik's conduct.~~

~~Further, keep in mind that the City Human Rights Law is not a general civility code. Plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive. It is not enough to show one has an overbearing or obnoxious boss. Plaintiff must show that she has been treated less well at least in part because of of her gender. Thus, even if Dr. Edelman establishes that allegedly sexist remarks were made to her, NYU and Mr. Antonik can still avoid liability by proving that the complained-of conduct at issue is nothing more than what a reasonable person would consider a "petty slight or trivial inconvenience."~~

**3.  <u>DAMAGES</u>**

My next instructions are on the law of damages.

You should consider the issue of damages only if you find that Dr. Edelman has established ~~any of~~ her claim~~s~~ by a preponderance of the evidence.

The fact that I charge you on the issue of damages does not mean that Dr. Edelman is entitled to prevail—that is for you to decide. I instruct you on this subject only in the event you

31

decide that Dr. Edelman has sustained her burden of proof as to to any of her claims.  If you decide that Dr. Edelman has not sustained her burden of proof as to any of her claims, you need not consider damages.

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, that the Plaintiff has suffered as a result of the actions of the Defendant you are considering.  The damages that you award must be fair and reasonable, and neither inadequate nor excessive.

In awarding damages, if you decide to award them, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require the Plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

If you make any award of damages, such award is not subject to federal income taxes and you should not consider such taxes in determining the amount of damages, if any.

The verdict form I will give you will assist you in recording the determinations, if any, that you make as to damages.

33

### 3.1. Damages Under the Equal Pay Act

If you decide in favor of Plaintiff on her Equal Pay Act claims, then you must award damages to Plaintiff. Plaintiff has the burden of proving the amount of those damages by a preponderance of the evidence. Damages must be awarded in an amount that compensates Plaintiff for the difference between the wages she was paid and the wages paid during her employment period to the male employees whom you have found to be appropriate comparators. To calculate this figure, you should first determine the salary that was paid to Defendants' male employees who you have found performed equal work to that performed by the Plaintiff during the relevant years. You should then calculate the difference between the salary Plaintiff earned during the relevant years and the salary of the men who you find were paid more money for equal work in violation of the Equal Pay Act. If you find that Plaintiff was paid less than several men for substantially equal work, you should calculate the difference using the salary of the man who performed equal work to that performed by Plaintiff who was paid the most during the relevant period. Do not simply add together the amounts paid to the relevant comparators. Do not add an amount for interest. This will be automatically calculated by the Court after you reach your verdict.

**Formatted:** Indent: Left: 0"

**Formatted:** Heading 2

34

*3.2. Damages Under New York Labor Law § 194*

*Like the Equal Pay Act, if you decide in favor of Plaintiff on her New York Labor Law Section 194 claims, then you must award damages to Plaintiff. Damages must be awarded in an amount that compensates Plaintiff for the difference between the wages she was paid and the wages the male employees to whom you have compared her were paid during her employment period. The same standards guide damages under New York Labor Law Section 194 as under the Equal Pay Act. The same definition of wages that I have given for the Equal Pay Act also applies under New York Labor Law Section 194.*

*3.3 Front Pay Under Title VII*

Plaintiff has sued for retaliation under Title VII against NYU. It is for this Court alone to determine any amount of front pay to be awarded, if any, for any violation of Title VII that you may have found was committed.

**3.4.** *[TO BE INSERTED]Front Pay Under New York State Human Rights Law and New York City Human Rights Law*

Dr. Edelman asserts that, because she made allegedly protected complaints of discrimination, Defendants did not renew her employment contract when it was expiring. Your job as the jury is to determine what damages, if any, Dr. Edelman has proved by a preponderance of the evidence for each claim that she has proven, if any.

If Dr. Edelman has proved her claim for retaliation under the State Human Rights Law or the City Human Rights Law, she would be entitled to lost wages and benefits arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Dr. Edelman should be resolved in her favor.

35

~~Here, if you find for Dr. Edelman on her claims for retaliation under State Human Rights Law or City Human Rights Law, you should consider her damages for front pay. Front pay damages, if any, represent a plaintiff's lost salary and benefits, caused by an unlawful discharge or other adverse action, accruing from the time of trial through some point in the future. If you find that Dr. Edelman will be unable to earn in the future what she would have earned at NYU, then you may award her, as additional compensation, the amount she would have earned during the time period between the date of your verdict and either: 1) the date you believe she would have worked at NYU absent any discriminatory conduct or 2) the date you can reasonably predict that she has a reasonable prospect of obtaining comparable employment. Factors to be considered in determining front pay include the age of the plaintiff and her reasonable prospects of obtaining comparable employment. In doing so, you should bear in mind that the purpose of front pay is to make a plaintiff whole—that is, to put Plaintiff in the position she would have been in if Defendants had not discriminated against her.~~

~~That said, Dr. Edelman has the burden of proving that she actually incurred a loss of front pay. Please note that Dr. Edelman is only entitled to be compensated once for any alleged front pay that arose from the retaliation claims that she has prevailed upon.~~

36

### *3.5. Compensatory Damages*

If you find that Dr. Edelman has established any of her claims of gender retaliation and discrimination, you may award her compensatory damages for injuries such as emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life. Compensatory damages are an amount that will fairly compensate her for any injury she actually sustained as a result of Defendant's conduct. There is no requirement that a claim of emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damages. No expert testimony is necessary to prove such harm, and you may rest your findings solely on Dr. Edelman's testimony.

No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Rather, you may issue an award of monetary damages based on the emotional harm you determine Dr. Edelman to have suffered, based on the evidence presented and your best judgment. Any award you make should be fair in light of the evidence presented at the trial.

37

4.  **FINAL INSTRUCTIONS**

*4.1 Right to See and Hear Exhibits and Testimony; Communications With Court*

You are now about to go into the jury room to begin your deliberations.  Before you do that, I will give you a few final instructions.

The parties have prepared a list of the exhibits that were received, listed by exhibit number. If you want a particular exhibit, or if you want any testimony sent or read back to you, you may request that.  Any communication with the Court should be made in writing, signed by your foreperson, and given to the court security officer, whom, as in all cases, I will swear to ensure that your deliberations may take place uninterrupted.

Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can.  If you want testimony read back to you, please try to be as specific as you possibly can because the court reporter will have to look through the transcript, and the parties will have to agree on what portions of testimony may be called for in response to your request, and if they disagree, I must resolve those disagreements.  If you want any further explanation of the law as I have explained it to you, you may also request that from the Court.  If there is any doubt or question about the meaning of any part of the instructions that I have given you during this trial, you should not hesitate to send me a note asking for clarification or for a further explanation.

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching this case.  There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me—to request testimony, or to request clarification on the law—you should send a note to me, in writing, signed by your foreperson, and given to one of the court security officers or to my deputy, Mr. Fishman.  No member of the jury should ever attempt to communicate with me except by a signed writing, and

38

I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing, or orally here in open court.  If you send any notes to the Court, do not disclose anything about your deliberations.  Specifically, do not disclose to anyone—not even to me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

39

*4.2 Notes*

Many of you have taken notes periodically throughout this trial. You should not show your notes to, or discuss your notes with, any other jurors during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.

I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

40

***4.3 Duty to Deliberate / Unanimous Verdict***

You will now retire to decide the questions I have described to you.  For the Plaintiff to prevail on the questions that you must answer, she must sustain her burden of proof.  Your verdict on each question must be unanimous.  Each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors.  This is the very essence of jury deliberation.  It is your duty to discuss the evidence.  If you have a point of view and after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience.  You are not to give up a point of view, however, that you conscientiously believe in simply because you are outnumbered or outweighed.  You should vote with the others only if you are convinced on the evidence, the facts, and the law that it is the correct way to decide the case.  You are not to discuss the case until all jurors are present.  Four or five jurors together is only a gathering of individuals.  Only when all the jurors are present do you constitute a jury, and only then may you deliberate.

41

### 4.4 Selecting a Foreperson and the Foreperson's Duties

The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson. The foreperson will send out any notes, and when the jury has reached a verdict, he or she will notify the court security officer that the jury has reached a verdict, and when you come into open court, the foreperson will be asked to state what the verdict is.

42

***4.5 Verdict Form and Return of Verdict***

Once you have made your verdict, you will record your decisions in a verdict form which I have prepared for you.  You should also proceed through the questions in the order in which they are listed, following the instructions on that form.

Once you have completed the form, the foreperson should then fill in the verdict sheet and date it, and each of you should sign it.  The foreperson should then give a note to the court security officer outside your door stating that you have reached a verdict.  Do not specify what the verdict is in your note.  I will stress that each of you must be in agreement with the verdict that is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

43

***4.6 Oath***

I remind you that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law.  Your oath sums up your duty.  I know that you will do your duty and reach a just and true verdict.

002528\5\180181890.v1

***4.7 Exceptions***

I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like to have given to you or if there is anything I may not have covered.  In this regard, I ask you not to discuss the case while seated in the box because the case has not yet been formally submitted to you.

#                    #                    #

Members of the jury, that concludes my instructions to you.  You may now retire to the jury room and begin this phase of your deliberations.  As a first matter of business, please select a foreperson and send me a note, signed, dated, and timed, through the court security officer or my deputy, Mr. Fishman, telling me whom you have elected as your foreperson.

002528\5\180181890.v1