**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. SARI EDELMAN, | |
| Plaintiff, | |
| – against – | Case No.: 1:21-cv-502 (LJL) |
| DAVID KAPLAN, | **JOINT PRETRIAL ORDER** |
| Defendants. | |

Sari Edelman ("Plaintiff") and David Kaplan ("Defendant"), through their undersigned counsel of record, having conferred among themselves pursuant to Rule 16 of the Federal Rules of Civil Procedure, state that the following statements, directions, and agreements are adopted as their Joint Pretrial Order.

**i.     The full caption of the action, as the parties wish it to appear on all trial documents.**

*Dr. Sari Edelman v. David Kaplan* (Case No. 21-CV-502 (LJL).

**ii.     The names, law firms, addresses, telephone numbers and email addresses of trial counsel.**

*Attorneys for Plaintiff*
MILMAN LABUDA LAW GROUP PLLC
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042

Joseph M. Labuda
(516) 303-1380
joe@mllaborlaw.com

Jamie Scott Felsen
T: (516) 303-1391
jamiefelsen@mllaborlaw.com

Colleen O'Neil
T: (516) 303-1395
colleen@mllaborlaw.com

*Attorneys for Defendants*
TARTER KRINSKY & DROGIN LLP
1350 Broadway, 11th Floor
New York, NY 10018

Richard C. Schoenstein
T: (212) 216-1120
rschoenstein@tarterkrinsky.com

Richard L. Steer
T: (212) 216-8070
rsteer@tarterkrinsky.com

Ingrid J. Cardona
T: (212) 216-8032
icardona@tarterkrinsky.com

**iii.     A brief statement by the plaintiff (or, in a removed case, by the defendant) as to the basis of subject matter jurisdiction, and a brief statement by each other party as to**

the presence or absence of subject matter jurisdiction. **Such statements shall include citations to all statutes relied on and any relevant facts as to citizenship and jurisdictional amount.**

The parties respectfully submit in the case prior to remand federal questions serve as the basis for subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because claims were raised under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. The parties further respectfully submit that this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 since Plaintiff's state and local retaliation claims allegedly arise out of the same common nucleus of operative facts as set forth in her Title VII claims. Those state and local claims fall under the New York State Human Rights Law ("NYSHRL") under New York Executive Law § 296(1)(a), and the New York City Human Rights Law ("NYCHRL") under New York City Administrative Code § 8-107(1)(a).

iv.   **A brief summary by each party of the claims and defenses that the party asserts remain to be tried, including citations to any statutes on which the party relies. Such summaries shall also identify all claims and defenses previously asserted which are not to be tried. The summaries should not recite any evidentiary matter.**

*Plaintiff*

The claim to be tried by Plaintiff consists of her alleged claim against Defendant solely for retaliation under the NYSHRL and NYCHRL pursuant to New York Executive Law § 296(1)(a) and  New York City Administrative Code § 8-107(1)(a).

*Defendant*

Defendant has raised the following defense to Plaintiff's claim:

1. **Retaliation Claims under New York State Human Rights, NY Executive Law § 296(1)(a), and New York City Human Rights Law, New York City Administrative Code § 8-107(1)(a)**

Defendant did not retaliate against Plaintiff.

The employment discrimination statutes do not create a general civility code.

Plaintiff was insubordinate in refusing a reasonable request to have another physician's use of her empty office assigned to her when she was working elsewhere.

Male physicians "shared" their empty offices with other physicians on days they worked elsewhere.

There is no evidence that David Kaplan did anything improper regarding Plaintiff or was uncivil to her when he advised her that the office assigned to her would be used by another physician when she worked elsewhere.  There was nothing wrong with David Kaplan allegedly calling Plaintiff "Doctor" when he tried to calm her when she got upset over being told she must allow another physician to use the empty office assigned to her when she was not there.

Documentary evidence of patient complaints and inability to work cooperatively by Plaintiff with co-workers existed before the alleged incident with Joseph Antonik, and she was counselled to try to get along better with her peers and staff.

NYU's HR representative to whom Plaintiff complained was not aware that Plaintiff was complaining about discrimination or retaliation. While Plaintiff used buzz words of discrimination/male chauvinism, she provided no facts to be investigated regarding such claim.

Dr. Porges had dealt with clinical issues concerning physicians before he dealt with the clinical issues involving Plaintiff's practice.

When Plaintiff alleged she was retaliated against, she failed to reach out to NYU's HR representative who had reached out to her.

Miriam Ruiz, a nonparty, office manager for the office in which Plaintiff worked, testified she maintained records of patient complaints and performance issues from the beginning of her employment with NYU.

Dr. Porges's and Dr. Goldberg's clinical conclusions in reviewing Plaintiff's clinical work was that Plaintiff, although not dangerous, did not meet NYU clinical standards for Rheumatology practice in light of her excessive testing, and could not be remediated.

Plaintiff's contract was not renewed, which resulted in her being given six months' notice. Plaintiff left her position with virtually no notice after five months.

Nothing required NYU to renew the contract of a physician at expiration of their contract, especially one who could not get along with her coworkers, and whose clinical practices were inconsistent with NYU's standards, and there was documentation that she was unresponsive to certain patients.

There is no evidence of pretext, i.e., that NYU's reasons for Plaintiff's nonrenewal were false and retaliation was a reason for her nonrenewal.

Retaliation was not a but for cause for Plaintiff's non-renewal of her contract.

Any allegation that Plaintiff lost her patients by virtue of the non-renewal of her contract arose from Plaintiff's failure to search for a position in New York City, Westchester, and other Metro New York areas and constitutes a failure to mitigate damages.

Plaintiff's damage claims are barred by her turning down an offer of employment in the New York Metropolitan area.

Defendant asserts the legal position taken in the pending remittitur motion, which is incorporated herein by reference.

Plaintiff should not recover duplicative damages.

Plaintiff is collaterally estopped from seeking any damages other than front pay.

Other defenses to be added subject to motion *in limine*.

v.    **A statement as to the number of trial days needed and whether the case is to be tried with or without a jury.**

It is anticipated that 5 trial days are needed, and the case is to be tried with a jury.

vi.   **A joint statement summarizing the nature of the case, to be read to potential jurors during jury selection.**

*See* Dkt. No. 335 Proposed Joint Voir Dire.

vii.  **A list of people, places, and institutions that are likely to be mentioned during the course of the trial, to be read to potential jurors during jury selection.**

*See* Dkt. No. 335 Proposed Joint Voir Dire.

viii. **A statement whether all parties have consented to trial by a magistrate judge, without identifying which parties do or do not consent. In a jury case, the parties should memorialize any such stipulations or agreed statements of fact or law in a standalone document that can be marked and admitted at trial.**

The parties have not consented to trial by a magistrate judge.

**Stipulations of uncontested facts.**

None.

4

002528\5\180183727.v1

ix.  **A list of trial witnesses, indicating whether such witnesses will testify in person or by deposition, whether such witnesses will require an interpreter (and, if so, which party will pay the costs for the interpreter), and a brief summary of the substance of each witness's testimony.**

*Plaintiff*

1.  **Witnesses to be called in Plaintiff's case in chief:**
    a.  Dr. Sari Edelman

        i.  Plaintiff will testify concerning her background, qualifications, experience in her private practice, decision to apply for employment with Defendants, negotiations with Defendants, working experience at NYU, renewal negotiations with Defendants, the discrimination and male chauvinism she experienced throughout her tenure at NYU, the discrimination and harassment she faced at the hands of Antonik and Kaplan due to her unwillingness to share her office space, the complaint she made to Human Resources about Antonik and Kaplan, the lack of any meaningful response or investigation by Human Resources despite repeatedly clarifying the nature of her complaint, the plot by Antonik and Kaplan to retaliate against her for having the temerity to file a complaint against Antonik and Kaplan, the attempt to cover the plot up by engaging Miriam Ruiz, Dr. Porges, Swirnow, and Rubin to conceal Antonik's involvement, the emotional distress Plaintiff suffered, the compensatory and incidental or consequential damages Plaintiff suffered, how Plaintiff was forced to move to Florida due to Defendants' unlawful conduct and the way it upended hers and her family's life.

        ii.  Will testify in person.

        iii.  Defendant objects and submits that Plaintiff's testimony must be related to the issues in this trial.

    b.  David Kaplan

        i.  David Kaplan will testify with regard to his background, experience, and duties, interactions with Joseph Antonik, HR, and Plaintiff; the conversation with Plaintiff concerning her complaint against Antonik; his role concerning requesting documentation regarding complaints about Plaintiff and her interactions with staff and peers at Marcus Avenue; interactions with Miriam Ruiz, Joseph Antonik, and Dr. Porges.

        ii.  Will testify in person.

   c.  Joseph Antonik

      i.  Joseph Antonik will testify concerning his background and experience, oversight of the day-to-day operations of the practices at the main location where Plaintiff worked; his conversation with Plaintiff concerning office space and her complaint to Human Resources against Joseph Antonik and David Kaplan; gathering documentation concerning complaints about Plaintiff and her interactions with staff and peers at Marcus Avenue; interactions with Miriam Ruiz, and Dr. Porges; his role in Plaintiff's non-renewal and attempt to cover up his role.

      ii.  Will testify in person.

   d.  Dr. Andrew J. Porges, M.D.

      i.  Dr. Porges will testify concerning his background and experience; his observations of Plaintiff's clinical practices; whether Plaintiff's practices could reasonably be remediated; his discussions concerning Plaintiff's clinical practices; the fact he has a lot to lose if he separates from employment with NYU; his professional obligation to report any risk to patients.

      ii.  Will testify in person.

   e.  Miriam Ruiz

      i.  Miriam Ruiz will testify concerning her background experience and duties at NYU; her resignation from NYU; her interactions with Joseph Antonik, her interactions with Dr. Porges; alleged complaints about Plaintiff; maintenance of records of issues/complaints about physicians, and derivation of same; gathering of information about Plaintiff; lack of input with regard to compensation and employment of physicians.

      ii.  Will testify by deposition and trial transcript designations.

   f.  Kathleen Pacina

      i.  Kathleen Pacina will testify concerning her background, experience and duties; her lack of knowledge of basic concepts related to her duties; receipt and documentation of Plaintiff's complaint; the substance of Plaintiff's complaint; her investigation into Plaintiff's complaint; her alleged lack of understanding concerning the nature of Plaintiff's complaint; conclusion of her investigation into Plaintiff's complaint; communications with Tisa Hall and with Claudia Rose.

002528\5\180183727.v1

    ii. Will testify in person.

  g. Dr. Avram Z. Goldberg, M.D.

    i. Dr. Goldberg will testify concerning his investigation into Plaintiff's performance; communications with Andrew Rubin and Joshua Swirnow; events leading up to Plaintiff's nonrenewal; that Plaintiff, although not dangerous, did not meet NYU's standards of clinical care; his professional obligation to report any risk to patients.

    ii. Will testify in person.

  h. Joshua Swirnow

    i. Joshua Swirnow is anticipated to testify concerning his background; operational responsibility for oversight of NYU Langone's Faculty Group Practices ("FGP"); interactions with David Kaplan and Joseph Antonik; Plaintiff's alleged performance issues; facts surrounding the non-renewal of Plaintiff's employment agreement; his role in negotiating the terms and conditions of employment of new ambulatory network physicians including Plaintiff; Plaintiff's alleged performance issues and related counselling; the non-renewal of Plaintiff's employment agreement.

    ii. Will testify in person.

    iii. Defendant objects to any testimony not relevant to this trial.

  i. Andrew T. Rubin

    i. Andrew Rubin will testify concerning his background; operational responsibility for oversight of NYU's Faculty Group Practices ("FGP"); Plaintiff's hiring and related negotiations; Plaintiff's alleged performance issues; the alleged counseling of Plaintiff; facts surrounding the non-renewal of Plaintiff's employment agreement; the roles of Joseph Antonik and David Kaplan and interactions with them; attempts to assist Plaintiff once her non- renewal was contemplated and put into effect.

    ii. Will testify in person.

Plaintiff reserves the right to supplement this list and/or call any of the above listed witnesses as rebuttal or impeachment witnesses, and to call other or additional rebuttal or impeachment witnesses as dictated by the testimony elicited at trial.

002528\S\180183727.v1

*Defendants*

1. **Witnesses to be called in Defendant's case in chief**:

   a. Andrew T. Rubin, Senior Vice President of Clinical Affairs and Ambulatory Care at NYU Langone Health

      i. Andrew Rubin will testify concerning his background; operational responsibility for oversight of NYU's Faculty Group Practices ("FGP"); Plaintiff's hiring; Plaintiff's performance issues; the counseling of Plaintiff; facts surrounding the non-renewal of Plaintiff's employment agreement; the roles of Joseph Antonik and David Kaplan and interactions with them, if any; attempts to assist Plaintiff once her non-renewal was contemplated and put into effect; that Defendant did not recklessly disregard Plaintiff's rights; that Defendant did not retaliate against Plaintiff; that Plaintiff was unreasonable and insubordinate.

      ii. Will testify in person.

   b. Joshua B. Swirnow, Vice President of Ambulatory Care and Business Strategy at NYU Langone Health

      i. Joshua Swirnow is anticipated to testify concerning his background; operational responsibility for oversight of NYU Langone's Faculty Group Practices ("FGP"); interactions with David Kaplan and Joseph Antonik, if any; Plaintiff's hiring; Plaintiff's performance issues; facts surrounding the non-renewal of Plaintiff's employment agreement; Plaintiff's performance issues and related counselling; the non-renewal of Plaintiff's employment agreement; that Defendant did not recklessly disregard Plaintiff's rights; that Defendant did not retaliate against Plaintiff; that Plaintiff did not have exclusive use of the office assigned to her; that Plaintiff was unreasonable and insubordinate; Mr. Swirnow's communications with David Kaplan concerning the need for information regarding Plaintiff.

      ii. Will testify in person.

   c. David Kaplan, Senior Director, Ambulatory Operations, at NYU Langone Health

      i. David Kaplan will testify with regard to his background, experience, and duties, interactions with Joseph Antonik, HR, and Plaintiff; use of physicians' offices assigned to other physicians due to lack of space; plans for new physicians needing offices at Marcus Avenue. The

conversation with Plaintiff concerning use of her empty office; Plaintiff did not have exclusive use of the office assigned to her; that he had no role or influence in HR investigation into Plaintiff's complaint; Plaintiff's decision to transition her patients from HMG to Marcus Avenue; his role concerning requesting documentation regarding complaints about Plaintiff and her interactions with staff and peers at Marcus Avenue; interactions with Miriam Ruiz, Dr. Porges, and Swirnow; David Kaplan's lack of any decision making role regarding Plaintiff's hiring, continued employment or the non-renewal of her contract; that Defendant did not retaliate against Plaintiff and that Defendant did not act in reckless disregard of Plaintiff's rights.

    ii. Will testify in person.

d. Joseph Antonik, Site Director of NYU Langone Health's Ambulatory Care site at Marcus Avenue

    i. Joseph Antonik will testify concerning his background and experience, oversight of the day-to-day operations of the practices at the main location where Plaintiff worked; the assignment of office space and coordination of use of same in the Marcus Avenue office; Plaintiff's in-office schedule; the "sharing of offices" by physicians on days their offices were empty; Plaintiff's refusal to permit another physician to use her empty office on days in which she was not in the office; his conversation with Plaintiff concerning use of her office when not there; Plaintiff's unreasonable position and insubordinate; that his actions and statements when meeting with Plaintiff about "sharing" her office; that Plaintiff did not have exclusive use of her office; the lack of space at Marcus Avenue; interactions with Miriam Ruiz and others at Marcus Avenue; gathering documentation concerning complaints about Plaintiff and her interactions with staff and peers at Marcus Avenue; interactions with Miriam Ruiz and Dr. Porges; his lack of a role in any decision making regarding renewal or non-renewal of physicians' employment agreements including Plaintiff's; that he did not have a role or influence with regard to any decision or action taken by Human Resources to address Plaintiff's complaints; that Defendant did not retaliate against Plaintiff; that Defendant did not act in reckless disregard of Plaintiff's rights.

    ii. Will testify in person.

e. Andrew J. Porges, M.D., Medical Director of NYU Langone Ambulatory Care – Lake Success and a Clinical Assistant Professor in the Department of Medicine at NYU Grossman School of Medicine

     i. Dr. Porges will testify concerning his background and experience; his private practices; the size, staffing and duration of his practice; his private practice research duties; appointment and duties as Medical Director during and prior to his official appointment; evaluation and treatment of Plaintiff's patients and review of her medical charts and Plaintiff's clinical practices; patient complaints concerning Plaintiff; his observations of Plaintiff's clinical practices; whether Plaintiff's practices could reasonably be remediated; his discussions concerning Plaintiff's clinical practices with Andrew Rubin, Joshua Swirnow, and Dr. Goldberg; his interactions with Defendant.

     ii. Will testify in person.

f. Avram Z. Goldberg, M.D., Clinical Director of NYU Langone Nassau Rheumatology and Clinical Assistant Professor in the Department of Medicine at NYU Grossman School of Medicine

     i. Dr. Goldberg will testify concerning his background experience and duties; his recruitment of Plaintiff; facts concerning his offices at Marcus Avenue; evaluation of Plaintiff's clinical practices; whether Plaintiff could be remediated; his investigation into Plaintiff's performance; communications with Andrew Rubin, Joshua Swirnow, and Dr. Goldberg; events leading up to Plaintiff's nonrenewal; that Plaintiff, although not dangerous, did not meet NYU's standards of clinical care.

     ii. Will testify in person.

g. Miriam Ruiz (non-party witness)
Formerly FGP Manager, Ambulatory Care Long Island, Department of Hematology/Oncology/Rheumatology/Dermatology/Podiatry
NYU Langone Health System

     i. Miriam Ruiz will testify concerning her background experience and duties at NYU; her resignation from NYU; facts concerning utilization of offices at Marcus Avenue; "sharing" of offices at Marcus Avenue; her interactions with Dr. Porges; complaints about Plaintiff; moving Plaintiff's patients from HMG to Marcus Avenue; complaints about Plaintiff; scheduling of patients; Plaintiff's interactions with physicians, staff and management; maintenance of records of issues/complaints about physicians, and derivation of same; gathering of information about Plaintiff for report to David Kaplan; lack of input with regard to compensation and employment of physicians; lack of discriminate and retaliation against Plaintiff.

     ii. Testify by deposition and trial transcript designations.

h. Kathleen Pacina
   HR Business Partner
   Formerly, Senior Manager Employee & Labor Relations
   NYU Langone Health

   i. Kathleen Pacina will testify concerning her background, experience and duties; receipt and documentation of Plaintiff's complaint; the substance of Plaintiff's complaint; her investigation into Plaintiff's complaint; conclusion of her investigation into Plaintiff's complaint; communications with Tisa Hall and with Claudia Rose; receipt of Plaintiff's complaint that she referred to Rashidat Ogbara, Employee & Labor Relations Manager; communications with Rashidat Ogbara.

   ii. Will testify in person.

Defendant reserves the right to change the order of witnesses, to decide not to call any witnesses listed herein, to call any witnesses listed by Plaintiff for her case-in-chief and/or to supplement this list based upon the testimony presented by Plaintiff in her case in chief. Defendant further reserves the right to call additional witnesses for rebuttal and/or impeachment in response to Plaintiff's case-in-chief and to call custodian(s) of records, if necessary, with respect to exhibits.

**x.    A designation by each party of deposition testimony to be offered in its case in chief and any counter-designations and objections by any other party.**

*Plaintiff's*

Miriam Ruiz's designated deposition and trial testimony is attached at **Exhibit A**.

Plaintiff reserves the right to introduce prior sworn testimony of any witness, including any Defendants, for impeachment pursuant to Rule 26(a)(3)(A), rebuttal, or any other purposes permitted by the Federal Rules of Evidence.

*Defendants'*

Miriam Ruiz's designated deposition and trial testimony is attached at **Exhibit B**.

002528\5\180183727.v1

Defendant reserves the right to introduce prior sworn testimony of Plaintiff or any other witness for impeachment, rebuttal, or any other purposes permitted by the Federal Rules of Evidence.

**xi.**    **A list by each party of exhibits to be offered in its case in chief, with one asterisk indicating exhibits to which no party objects on any ground. If a party objects to an exhibit, the objection should be noted by indicating the Federal Rule of Evidence that is the basis for the objection. If any party believes the Court should rule on such objection in advance of trial, that party should indicate a notation to that effect (e.g., "Advance Ruling Requested").**

*Plaintiff's*

Plaintiff designates the following as her proposed exhibits at trial and Defendant's objects ("Defendant's Objections") as follows:

002528\5\180183727.v1

| Exhibit Number | Bates Number | Description | Defendants' Objections<br>* = no objections<br>Advance Ruling Requested |
|---|---|---|---|
| 1 | D000038 | Plaintiff's 2020 resume | * |
| 2 | D000191 | Plaintiff's 2008 resume | * |
| 3 | D000045- D000056 | Plaintiff's original employment agreement (9/5/14) | * |
| 4 | D000174 | 10/3/14 Buyon letter to Abramson in support of Plaintiff's appointment | objects on the grounds of relevance (FRE 401, 402), probative value is substantially outweighed by the danger of unfair prejudice (FRE 403), no personal knowledge (FRE 602)<br>Advance Ruling Requested |
| 5 | D000948- D000968 | Defendants' employment policies | * |
| 6 | D000017-D000037 | NYU Faculty Handbook | D000017-D000028: objects on the grounds of relevance (FRE 401, 402), confusing or misleading (FRE 403), not NYU Langone policy.<br>Advance Ruling Requested<br>* D000029-D000034 |
| 7 | D000057- D000060 | Plaintiff's 2017 renewal employment agreement | * |

13

| 8 | D000556 | Defendants' internal call notes related to Plaintiff's Human Resources complaint | * |
|---|---|---|---|
| 9 | P676-P679 | Office Pictures | objects on the ground of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403). **Advance Ruling Requested** |
| 10 | D000042-D000044 | 9/17, 18/19 email thread with Pacina, Rose and Kaplan re Plaintiff's complaint | * |
| 11 | D001015 | 9/18/19 Pacina email exchange with Kaplan re Dr. Edelman | * |
| 12 | D000070 | 9/18/19 Kaplan/Swirnow email exchange re Plaintiff's complaint | * |
| 13 | D001050-D001051 | 9/25/19 P email complaint to Pacina; 9/26/19 Pacina confirming receipt | * |
| 14 | D001002 | 9/26/19 Pacina email to Hall forwarding  Plaintiff's request for HR Rep; 10/3/19 Hall email response to Pacina | * |
| 15 | D001040-D001042 | 9/26/19 Edelman email to Pacina  - Follow-up to complaint; request for HR rep;<br>10/8/19 Pacina response;<br>10/23/19 Edelman follow up; 11/1/19 Edelman follow up;<br>11/5/19 Pacina response;<br>11/12/19 Edelman response;<br>11/18/19 Pacina forward to Ogbara | * |

14

| 16 | D000995-D000996 | 9/26/19 Edelman email to Pacina  - Follow-up to complaint; request for HR rep;<br>10/8/19 Pacina response;<br>10/23/19 Edelman follow up;<br>11/1/19 Edelman follow up;<br>11/5/19 Pacina response;<br>11/18/19 Edelman follow up | * |
| --- | --- | --- | --- |
| 17 | D001090 | 11/18/19 Ogbara email to  Plaintiff | * |
| 18 | D000013 | 8/28/20 Edelman email to Ruiz, Antonik, Rubin re Patient Care Compromise | Objects on the grounds that this is not a complete record, relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403).<br>**Advance Ruling Requested** |
| 19 | D000015 | 9/18/20 Ruiz email to Antonik re Edelman Webex call | * |
| 20 | D001094-D001095 | 10/16/20 Incident tag- Physician not seeing messages | * |
| 21 | D000227-D000414 | Patient visit log for Plaintiff | Objects on the grounds that this is not a complete record, relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403).<br>**Advance Ruling Requested** |

002528\5\180183727.v1

| 22 | P611-P612 | Patient letter and card | Objects to Patient Names and patient information being disclosed pursuant to HIPAA, relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), and hearsay (FRE 801, 802).<br>**Advance Ruling Requested** |
|---|---|---|---|
| 23 | D001100- D001131 | Defendants' (Miriam Ruiz) spreadsheet of "issues" with Plaintiff w/ attachments | Objects on the grounds that this is an incomplete exhibit.<br>**Advance Ruling Requested** |
| 24 | D001192- D001195 | Antonik's 11/6/20 e-mail to Porges regarding support for Plaintiff's termination | * |
| 25 | D000003- D000011 | 11/6/20 e-mail from Dr. Porges regarding Plaintiff's alleged clinical issues, with follow-up correspondence between Swirnow & Kaplan | * |
| 26 | D000041 | Defendants' 12/1/20 notice of non-renewal of Plaintiff | * |
| 27 | D000039-D000040 | 12/2/20 Defendants' processing of non-renewal for P | * |
| 28 | D000061 | 4/21 Notice of Plaintiff's separation from NYU Langone Ambulatory Care Lake Success | * |

002528\5\180183727.v1

| 29 | P387-P456 | Patient emails etc. re Edelman leaving | Objects to Patient Names and patient information being disclosed pursuant to HIPAA, objects on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), and hearsay (FRE 801, 802) **Advance Ruling Requested** |
|----|-----------|----------------------------------------|------|
| 30 | D001493-D001494 | 12/4/20 Rubin email forwarding P's CV | * |
| 31 | P1-P289 | Plaintiff's mitigation efforts | Objects to P231 on the grounds of relevance (FRE 401, 402). **Advance Ruling Requested** |
| 32 | P485-P487 | Plaintiff's text messages with Porges | * |
| 33 | P517-P569 | Plaintiff's text messages with Ruiz | Objects on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), and hearsay (FRE 801, 802), needlessly presenting cumulative evidence (FRE 403) **Advance Ruling Requested** |

002528\5\180183727.v1

| 34 | P596-P599 | Plaintiff's text messages with K. Mehta | Objects on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), and hearsay (FRE 801, 802). **Advance Ruling Requested** |
| --- | --- | --- | --- |
| 35 | | Plaintiff's W2s 2020-2025 | Objects to this document because it was not produced in discovery; prejudice outweighs the probative value (FRE 401-403), Defendant would need to make additional requests in order for this self-serving record to be admitted into this trial; and precluded by the juries' determination in the previous trial. **Advance Ruling Requested** |

002528\5\180183727.v1

| 36 | | | Objects on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time (FRE 403), and hearsay (FRE 801, 802), precluded by the juries' determination in the previous trial. **Advance Ruling Requested** |
| | P604-606 | Plaintiff's e-mails with therapist | |

*Defendant's*

Defendant designates the following as his proposed exhibits at trial[1] and Plaintiff objects as follows:

---

[1]      Defendant reserves the right to introduce into evidence other documents for cross-examination, redirect, or for purposes of impeachment, and reserves the right to use any exhibit listed by Plaintiff.

| Exhibit Number | Bates Number/Trial Exhibit Number | Description | Plaintiff's Objections<br>* = no objections<br>Advance Ruling Requested |
|---|---|---|---|
| | P-1 (D000003-D000011) | November 6, 2020 e-mail from Dr. Porges regarding Plaintiff's alleged clinical issues, with follow-up correspondence between Swirnow & Kaplan | * |
| | P-5 (D000038) | Plaintiff's resume after her employment with NYU | * |
| | D000039 - D000041 | Defendants' notice of non-renewal of Plaintiff and email attaching same | * |
| | P-8 (D000045-D000056) | Plaintiff's initial employment agreement dated September 5, 2014 | * |
| | D000057-D000060 (P-9) | Plaintiff's renewal employment agreement dated November 17, 2017 | * |
| | D000556 (P-21) | 9/15/2019 Pacina Salesforce Notes/Comments | * |
| | D000799-D000801 (P-25) | Goldberg's First Amendment to Employment Agreement dated January 13, 2017 | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403) |
| | D000873-D000874 (P-33) | Porges' First Amendment to Employment Agreement dated March 20, 2018 | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403)<br>**Advance Ruling Requested** |

002528\5\180183727.v1

| | D0001495-D001500 | Dr. Goldberg's curriculum vitae | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403) **Advance Ruling Requested** |
| | D000948-D000968 (P-47) | NYU Human Resources Policies and Procedures – Chapter 4: Workplace Conduct - Revised 9/2020 | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403) **Advance Ruling Requested** |
| | D000969-D000971 (P-48) | Dr. Porges' curriculum vitae | * |
| | D000972-D000994 (P-49) | Defendants' e-mail correspondence concerning Plaintiff's complaint to Human Resources | * |
| | D001015 | 9/18/19 Pacina email exchange with Kaplan re Dr. Edelman | * |
| | D001132-D001175 | Email from Jessica Harley to Dr. Buyon; ARG Patient Record | * object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403), waste of time Hearsay (FRE 802) |

| | | | |
|---|---|---|---|
| | D001192-D001195 (P-86) | Email thread between Joseph Antonik, Dr. Porges, Ruiz, and Fesolowich re Kaplan requesting information re Edelman Issues dated Nov. 6, 2020 | * |
| | P1-P289 (P-88) | Plaintiff's employment contract with employer after NYU; emails between Plaintiff and recruiters/potential employers | * |
| | D001493-D001494 (P-123) | Email dated December 4, 2020 from Rubin to Abrahman (a contact Rubin had in Florida) passing Plaintiff's Resume | * |
| | D000062 (D-OO) | September 16, 2019 email thread regarding Rheum Consolidation Updated – Edelman Joe's interaction with Edelman re using her office on Thurs/Fri when she isn't there | * |
| | D000063 | September 25-26, 2019, email between Bryan Maguire and Swirnow regarding re Plaintiff office space in Huntington | * |
| | D000069 | September 26, 2019 email thread bwtn Kaplan and Swirnow Kaplan following up with Swirnow re office space | * |
| | D000042-D000044 (D-PP) | September 17-18, 2019, email regarding matter raised by Dr. Edelman re Dr. Edelman Contracts and space information in contract | * |
| | D000995-D001089 (D-QQ) | Email thread regarding space issue and Plaintiff's alleged discrimination complaint | * |
| | D000068 (D-RR) | September 18, 2019, email from Pacina regarding issue raised by Edelman re Antonik | * |

| | D000070 (D-SS) | September 18, 2019 email thread bwtn Kaplan and Swirnow regarding office space and Edelman filing complaint with ELR. | * |
| | D000064-D000065 (D-VV) | October 16-17, 2019, email thread re Dr. Sari Edelman's Hours re her move back to Marcus | * |
| | D000001 - D000002 (D-WW) | November 13, 2019, email thread re Ruiz conversation with Dr. Edelman re schedule at Marcus Avenue - Edelman was rude | * |
| | D001090 (D-XX) | November 18, 2019 email from Rashidat to Plaintiff following up with Plaintiff re investigating Plaintiff's concerns | * |
| | D000066-D000067 (D-YY) | March 11, 2020, email from Ruiz to Antonik and Lucca re Incident with Tiffany and Plaintiff | * |
| | D001196-D001485 (D-III) | 6 Patient Records (291 pages) reviewed by Dr. Porges | * |
| | D001096-D001131 (D-JJJ) | Complaint log created by Ruiz re Plaintiff's patient complaints, staff issues, etc. | * |
| | D000003-D000011 (D-KKK) | November 18, 2020, email thread re Dr. Edelman's performance, patient complaints, etc.submitted by Dr. Porges<br><br>This exhibit includes D001091-D001093 (Porges email to Kaplan re Dr. Edelman's performance, patient complaints, etc. (includes "TO" line)) | * |
| | P1-P13 | Plaintiff's Employment Agreement with Arthritis and Rheumatism Associates, PL dated February 16, 2021 | * |

| | P313-P315 | Email thread between Edelman, Ruiz, Antonik, and Rubin re Patient Care Compromise Needs Immediate Attention dated 8/28/2020 - 9/1/2020 | * |
|---|---|---|---|
| | ECF Doc. No. 269-14 | Plaintiff's First Amended Rule 26 Disclosures | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403) **Advance Ruling Requested** |
| | ECF Doc. No. 197 | Joint Final Pretrial Order | object on the grounds of relevance (FRE 401, 402), prejudice outweighs the probative value (FRE 401-403), confusing or misleading (FRE 403) **Advance Ruling Requested** |

xii.    **A statement of the damages claimed and any other relief sought, including the manner and method used to calculate any claimed damages and a breakdown of the elements of such claimed damages.**

*Plaintiff*

Lost wages (back pay):                $637,069.79 plus returns on investments [2]

---

[2] Calculated as follows:

    (1) $487,069.79 in lost salary broken down as follows:

        2021: $57,666.02 ($350,000 - $292,333.98);
        2022: $48,153.77 ($350,000 - $301,846.23);
        2023: $100,000 ($425,000 - $325,000);
        2024: $106,250 ($425,000 - $318,750);
        2025: $175,000 ($500,000 - $325,000); and

(2) $150,000 for lost 401K (calculated at $30,000 per year for 2021-2025) plus returns on investments.

| | |
|---|---|
| Front pay: | TBD by jury |
| Emotional distress damages: | $250,000 |
| Prejudgment interest: | TBD by court |
| Attorneys' fees: | TBD by court |

Plaintiff reserves the right to revise and/or supplement this portion of the joint pretrial Order.

*Defendant*

Defendant objects to Plaintiff's claimed damages as barred by collateral estoppel and beyond the scope of this trial on remand. Plaintiff's purported damages by virtue of not having her contract at NYU renewed were determined at the prior trial. While that determination remains subject to post-trial motions, Plaintiff is bound by the ultimate decision. She does not allege and did not suffer any additional damages by virtue of the alleged actions of Defendant, for which he is only liable if they resulted in the non-renewal of Plaintiff's contract.

Thus, even assuming *arguendo* the jury were to return a verdict in favor of Plaintiff against Defendant, there are no damages attributable to his acts separate and apart from any alleged damages against the named Defendants in the previous trial. Were Defendant to be found liable, Plaintiff's damages in this trial should be zero.

Accordingly, Defendant further objects to Plaintiff's admission of evidence concerning the above damage calculations on the basis of FRE 402, 403, and Defendant's motions *in limine*. In the alternative, Plaintiff's front pay damages, if any, should not exceed $137,400.00.

**xiii.**   **A statement of whether the parties consent to less than a unanimous verdict.**

The parties do not consent to less than a unanimous verdict.

002528\5\180183727.v1

## RESERVATION OF RIGHTS

Subject to the ruling of this Court, the parties, by and through counsel, reserve their respective rights, as follows:

1.      to amend and to supplement this Proposed Joint Pretrial Order based on this Court's decisions on motions in limine and remittitur;

2.      to use any relevant and admissible exhibit identified by the opposing party in their exhibits lists whether or not the opposing party actually offers such exhibit at the time of trial;

3.      to object to any of the opposing party's exhibits which have not been provided to the parties; and

4.      to object to the opposing party's exhibits based on relevancy or other evidentiary grounds regardless of whether a specific objection was listed in the JPTO.

Dated: October 17, 2025
       New York, New York

## APPROVED AS TO FORM AND SUBSTANCE

**MILMAN LABUDA LAW GROUP PLLC**       **TARTER KRINSKY & DROGIN LLP**
*Attorneys for Plaintiff*                           *Attorneys for Defendants*


By:____*/s/ Jaime Scott Felsen*_____      By:____*/s/ Richard L. Steer*_____
    Joseph M. Labuda                                 Richard C. Schoenstein
    Jamie Scott Felsen                                Richard L. Steer
    Colleen O'Neil                                     Ingrid J. Cardona
    Jeremy Michael Koufakis                            1350 Broadway, 11th Floor
    3000 Marcus Avenue, Suite 3W8                      New York, NY 10018
    Lake Success, NY 11042-1073                        (212) 216-8000
    (516) 328-8899                                     rschoenstein@tarterkrinsky.com
    joe@mllaborlaw.com                                 rsteer@tarterkrinsky.com
    jamiefelsen@mllaborlaw.com                         icardona@tarterkrinsky.com
    colleen@mllaborlaw.com


                                                  _____
                                                       **LEWIS J. LIMAN**
                                                  **UNITED STATES DISTRICT JUDGE**

                                                       November 5, 2025

26

002528\5\180183727.v1